IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill) | Magistrate Judge Jeffrey T. Gilbert |
| *Motor Vehicle Software Corp. v. CDK Global, et al.*, No. 1:18-cv-00865 (N.D. Ill.) | **PUBLIC – REDACTED VERSION** |

**REYNOLDS'S SURREPLY TO [DKT. 1231]
PLAINTIFFS' MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................... 1

    I.    Plaintiffs have not met their burden to show anticipation of litigation by Reynolds as of August 26, 2016. ........................................................................................ 2

        A.    Authenticom................................................................................................. 3

            1.    Plaintiffs apply the wrong legal standard for anticipation of litigation. ................................................................................... 3

            2.    Reynolds's offer to submit privileged documents *in camera* was proper. .............................................................................. 4

            3.    Plaintiffs have not proven anticipation of litigation based on Authenticom's April 2015 "threat". ............................................... 6

        B.    ▬▬▬▬▬ ............................................................................................. 7

    II.    Plaintiffs' reply ignores or mischaracterizes the key cases on Rule 37(e)(2) specific intent. ................................................................................................... 9

    III.    Plaintiffs' new "transferred intent" argument has no support in the case law, is totally inapplicable, and should be rejected. ...................................................... 12

**CONCLUSION** ..................................................................................................................... 14

## INTRODUCTION

Plaintiffs' reply brief (Dkt. 1277) attempts to turn their strict burden of proof on its head. The reply repeatedly asserts that Reynolds has admitted facts that it has not; assumes victory on other hotly disputed facts; and ignores recent, squarely applicable case law that mandates denial of the motion for sanctions.

By way of example, Plaintiffs represent in their reply that:

- Reynolds "confirmed" that "Brockman used Evidence Eliminator to destroy his emails" (Reply at 2 n.1);

    ⇒ To the contrary, Reynolds is aware of no evidence that Brockman used Evidence Eliminator to destroy a single email;

- Reynolds "confirmed Brockman used Evidence Eliminator . . . on the laptop where his emails were stored" (*id.* at 1);

    ⇒ To the contrary, Reynolds uncovered evidence (in 2020) only that ██████████████████████████████████████;

- Brockman had an "admitted intent to conceal evidence" (*id.*);

    ⇒ to the contrary, neither Brockman nor Reynolds has admitted any intent to conceal evidence;

- Reynolds "does not dispute" that Brockman's destruction "deprived Plaintiffs of those emails" (*id.*);

    ⇒ To the contrary, Reynolds's response brief details how Brockman's emails prior to August 2016 were produced to Plaintiffs through other custodians and parties;

- Reynolds "does not dispute" that Brockman's emails from that time period would have been "highly relevant" (*id.*);

    ⇒ Again, to the contrary, there is no basis to assume that Plaintiffs are missing "highly relevant" emails that resided in only Brockman's email files and none of the other myriad custodians, parties, and third parties in this MDL;

- Reynolds "does not contest the factual premise that Brockman intentionally destroyed his emails in August 2016 in an effort to conceal probative evidence" (*id.* at 2);

1

⇒ To the contrary, Reynolds's response brief explains that Plaintiffs have no admissible evidence of Brockman's intent and proceeds to show why Plaintiffs' motion fails even *assuming as true* the allegations that Brockman deleted documents to hide evidence of personal income tax evasion. *See*, *e.g.*, Dkt. 1268 at 15-16.

These misstatements of the factual record underscore Plaintiffs' failure to meet their burden for the severe sanctions sought in their motion. That failure is dispositive in light of Plaintiffs' express statement that they "do not seek an evidentiary hearing" on this matter. Reply at 14. Courts in this District have routinely held that where, as here, there are disputed issues of fact surrounding a motion for sanctions, "due process principles require [the Court] to hold an evidentiary hearing to resolve material factual disputes" before sanctions can be imposed. *Ramos v. Drews*, 2018 WL 5046087, at *11 (N.D. Ill. Oct. 16, 2018); *see also Linkepic Inc. v. Vyasil, LLC*, 2015 WL 13894836, *2 (N.D. Ill. Aug. 9, 2015).

Because Plaintiffs' chosen sanctions theory expressly relies on an alleged scheme by Brockman to conceal personal income tax fraud—a motive having nothing to do with the antitrust claims in this case—the Court can deny the motion for that reason alone. But even setting that contradiction aside, on Plaintiffs' best day there are multiple disputed issues of fact. Plaintiffs have chosen to rest on their papers, well short of satisfying their burden of proof.

In short, Plaintiffs' motion for sanctions must be denied, for the reasons set forth in Reynolds's response and the additional brief points in response to Plaintiffs' reply brief.

**I.      Plaintiffs have not met their burden to show anticipation of litigation by Reynolds as of August 26, 2016.**

Reynolds's response brief established that whether Reynolds anticipated litigation as of August 26, 2016—and if so, what kind of litigation—is, on Plaintiffs' best day, a hotly disputed issue of fact. Dkt. 1268 at 3-5, 10-15. Relying primarily on out-of-context excerpts from

Reynolds's privilege log, Plaintiffs' reply argues that Reynolds must have "reasonably anticipated" this antitrust litigation when Brockman allegedly deleted his emails on or about that date. Plaintiffs have not met that burden. Reynolds will briefly address Plaintiffs' reply arguments regarding alleged anticipation of litigation between Reynolds and (a) Authenticom; or (b) ▮.[1]

A.  **Authenticom**

   1.  **Plaintiffs apply the wrong legal standard for anticipation of litigation.**

Plaintiffs apply the wrong legal standard when they argue that Reynolds "reasonably anticipated" litigation with Authenticom in August 2016 and therefore had a duty to preserve documents as of that date. *See* Reply at 4-5, 9. A duty to preserve is not triggered merely because a party knows, or should know, that litigation is *possible* or even *foreseeable*; the duty to preserve is triggered only when a party "knew, or should have known, that litigation was *imminent*." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (emphasis added); *see also Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 429 (7th Cir. 2010) (rejecting adverse inference where documents were lost before [defendant] knew or should have known that litigation was imminent").[2] Plaintiffs cannot demonstrate Reynolds should have known antitrust litigation was imminent in August 2016 and cannot meet the standard required.

---

[1] Plaintiffs also refer briefly (at 8-9) to supposed potential litigation against (i) SIS, which Reynolds has already addressed (*see* Dkt. 1268 at 15 n.9); and (ii) certain car dealerships, based on a communication that post-dates the alleged document destruction and thus does not require a response.

[2] The court in *In re Pradaxa* addressed this very question, explaining that the parties "proffered two standards for assessing when the duty to preserve" and concluding that "the Seventh Circuit's decision in *Norman–Nunnery*, tips the balance in favor of applying the standard … that the duty to preserve is triggered only when a litigant knew or should have known that litigation was imminent (at least in the Seventh Circuit)." *In re Pradaxa Prods. Liab. Litig.*, 2013 WL 5377164, at *10 (S.D. Ill. Sept. 25, 2013).

### 2. Reynolds's offer to submit privileged documents *in camera* was proper.

In response to Plaintiffs' opening brief alleging that Reynolds anticipated a potential suit against Authenticom in August 2016, Reynolds explained in its response that it made a firm decision in July 2015 not to pursue that course of action. Dkt. 1268 at 11 (also offering to submit *in camera* contemporaneous, internal documents referenced in its privilege log in support). Plaintiffs' reply challenges Reynolds's proposed *in camera* submission, claiming that Reynolds cannot rely on documents it withheld from discovery on privilege grounds "while keeping them outside of Plaintiffs' view." Reply at 4-5.[3]

But that cannot be right. The documents were properly withheld from discovery because they are privileged. An *in camera* review would be appropriate because Plaintiffs, not Reynolds, have premised their sanctions motion on the issue of anticipation of litigation and on specific privilege log entries—both of which inherently implicate privileged materials.

Courts recognize that defense of spoliation motions may involve privileged matters, and such matters are appropriately reviewed *in camera*. The court in *In re Pradaxa*, for example, conducted an *in camera* review of documents referenced on defendant's privilege log, which plaintiffs cited as evidence that defendant anticipated litigation as of the date certain data was destroyed, and concluded that the documents did not support a duty to preserve before that date). 2013 WL 5377164, at *11-14. *See also Constantine v. Teachers College*, 2011 WL 4509542, at *3 (2d Cir. Sept. 30, 2011) (affirming district court's denial of spoliation sanctions in case where district court conducted *in camera* review of privileged documents, in response to plaintiff's allegations of spoliation); *Constantine v. Teachers College*, 2010 WL 3260164, *1 (S.D.N.Y. Aug. 6, 2010) (Rakoff, J.).

---

[3] In the alternative, Plaintiffs baldly urge the Court to order a broad subject-matter waiver of Reynolds's privilege spanning two years. Reply at 4, 5 n.4.

4

According to Plaintiffs, Reynolds (and the Court) must either accept Plaintiffs' inaccurate portrayal of Reynolds's internal view regarding anticipation of litigation, based on cherry-picked excerpts from the privilege log, or find that Reynolds broadly waives privilege over its confidential attorney-client communications. That cannot be the case. If it were, then parties could routinely put litigants to a Hobson's choice by disputing the date on which they anticipated litigation.

This Court has broad discretion over discovery matters and may review documents *in camera* to decide whether the standard to trigger a duty to preserve was met as of August 2016. *See United States v. Zolin*, 491 U.S. 554, 572 (1989) (holding in the crime-fraud context that, after a threshold showing, "*in camera* review rests in the sound discretion of the district court"); *Allegheny Ludlum Corp. v. Nippon Steel Corp.*, 1990 WL 9837, at *1-*2 (E.D. Pa. Feb. 1, 1990) (rejecting argument that it is "fundamentally unfair" to permit *in camera* submission of evidence to sustain privilege when that evidence also contains privileged information and conducting *in camera* review under court's broad authority over discovery matters).

Requiring Reynolds to waive its privilege would be particularly unfair here, in light of the due process concerns expressed in cases like *Ramos*. 2018 WL 5046087, at *11; *see also Fuery v. City of Chicago*, 900 F.3d 450, 464-65 (7th. Cir. 2008) (emphasizing the importance of due process where sanctions involve alleged "out-of-court conduct" as opposed to "direct contempts in the presence of the court."). In short, Plaintiffs have not shown that Reynolds anticipated suit against Authenticom at the critical time, and their attempt to force a broad, 2-year privilege waiver should be rejected.[4]

---

[4] Plaintiffs' characterization (at 7-8) of Reynolds's one-off dispute against eLead as a broader dispute with Authenticom fails. The proof is in the pudding: Plaintiffs have not pointed to a single letter, email, or any other communication—because none exists—that Reynolds ever provided Authenticom about eLead.

5

### 3. Plaintiffs have not proven anticipation of litigation based on Authenticom's April 2015 "threat".

Contrary to Plaintiffs' reply argument (at 5-6), Authenticom's own vague, single-sentence reference to potential claims *against* Reynolds in April 2015 did not establish a duty to preserve at the time that purported threat was made, let alone 16 months later in August 2016.

First, the proof that Authenticom's April 2015 letter did not give rise to reasonable anticipation of "imminent" litigation (or even an expectation that litigation was "probable" as opposed to merely "possible") is the more than *two-year delay* between that April 2015 letter and Authenticom's May 2017 lawsuit. *See Price v. Peerson*, 2014 WL 12558253, at *8 (C.D. Cal. April 23, 2014) ("What's more, Plaintiff waited nearly two years after filing his September 21, 2011 letter of administrative complaint to bring the instant lawsuit. That delay, paired with the nebulous nature of Plaintiff's letters of administrative complaint, deracinates Plaintiff's contention that Defendant, the Department of Justice, or the USMS should have anticipated litigation as early as September 2011, and thus had a duty to preserve the video recordings as of that date."); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 623 (D. Colo. 2007) ("In fact, Cache La Poudre waited nearly two years after Anderson-Siler's April 4, 2002 telephone conference with Peter Janzen to bring the instant lawsuit. That delay, coupled with the less-than adamant tone of Cache La Poudre's letters belies Plaintiff's contention that Land O'Lakes should have anticipated litigation as early as April 4, 2002, and therefore had a duty to preserve evidence as of that date.").

Second, Plaintiffs' reply argument (at 6) that Reynolds's expectations of a potential lawsuit by Authenticom would have been colored by its previous lawsuit against Superior Integrated Solutions ("SIS") undermines, rather than supports, Plaintiffs' motion. SIS had indeed asserted antitrust counterclaims against Reynolds in a lawsuit years earlier, but those claims were promptly

dismissed by the federal district court presiding over that action. *See The Reynolds & Reynolds Co. v. Superior Integrated Solutions, Inc.*, 2013 WL 2456093, *5-10 (S.D. Ohio June 6, 2013) (dismissing SIS's antitrust claims under Fed. R. Civ. P. 12(b)(6)); *see also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (holding an internal investigation did not give rise to a reasonable anticipation of litigation where "the result of this investigation was an opinion from outside legal counsel that there were no bases for fraud"). Reynolds had no reason to expect another plaintiff would attempt similar, futile claims—let alone that such a case was "imminent." Indeed, the claims Authenticom ultimately filed (in May 2017) were substantially different from the SIS case. *See* Dkt. 1268 at 20.

Finally, Plaintiffs have not pointed to any evidence suggesting that Authenticom itself even anticipated litigation based on its purported threat against Reynolds in April 2015. While Authenticom claimed a work product privilege over certain communications from this time period, Judge Gilbert overruled Authenticom's work product claims as to all communications that were challenged from 2015. Ex. 1 (August 4, 2020 Letter from Judge Gilbert) at Tabs 16, 29. As Judge Gilbert noted, the documents from that time period reflected that "litigation [was] not necessarily anticipated at this point. It could happen in the future, but this is—this is two years before anything happens and many, many—and at least a year or more before anybody has really taken any steps." Ex. 2 (August 14, 2020 Hearing Tr.) (Gilbert, J.) at 45:23-46:4.

███████████████

For the first time on reply, Plaintiffs claim that Reynolds was "actively contemplating litigation" against ███████████ in 2016. Reply at 8. That is wrong, continues to ignore the "imminent litigation" standard, and in any event, comes nowhere close to satisfying Plaintiffs' burden of proof.

7

First, while Reynolds and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ had been working through a longstanding renegotiation and audit of ▓▓▓▓▓▓▓▓▓▓▓▓ RCI contract compliance dating back to 2014, Plaintiffs have pointed to no evidence that Reynolds or ▓▓▓▓▓▓▓▓▓▓▓▓ ever threatened each other with arbitration or litigation in 2016 (or earlier), and Reynolds is aware of no such evidence.

Such negotiations, even where there is a possibility of litigation if the negotiations are unsuccessful, are not sufficient to trigger a duty to preserve. *See*, *e.g.*, *Stevenson v. City & County of San Francisco*, 2015 WL 6177363, at *4 (N.D. Cal. Oct. 21, 2015) ("Communications that identify a dispute but seek a resolution thereof by means other than by litigation have been held insufficient to reasonably place the receiver on notice of future litigation."); *Largan Precision Co. v. Genius Optical Co.*, 2014 WL 12643367, at *1 (N.D. Cal. Dec. 21, 2014) ("But a standard patent infringement notice letter, on its own, generally does not cause its recipient to reasonably anticipate litigation. The whole purpose of sending a letter, rather than a summons, is to allow for resolution outside the courthouse."); *Cache La Poudre Feeds*, 244 F.R.D. at 622 ("Rather than threatening impending litigation, Ms. Anderson-Siler's June 5th letter implied that her client preferred and was willing to explore a negotiated resolution.").

Second, any friction during the audit and negotiation process related entirely to *Reynolds's* concerns about ▓▓▓▓▓▓▓▓▓▓▓▓s contractual compliance. Despite being represented by the same counsel as ▓▓▓▓▓▓▓▓▓▓▓▓, Plaintiffs are unable to point to a single communication where ▓▓ ▓▓▓▓▓▓▓▓ affirmatively suggested any antitrust or related claim against Reynolds until well after this litigation began in 2017. Indeed, in the arbitration demand ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ alleged that its claims "were not known to ▓▓▓▓▓▓▓▓▓▓▓▓ until May 1, 2017,

8

when Authenticom filed its complaint against Reynolds and CDK in the Western District of Wisconsin." Arbitration Demand ¶ 130.

Third, on the rare occasion Reynolds's "security policies" came up during the audit and negotiation process, it was in the context of ▮▮▮▮ wanting to ensure that Reynolds was *doing enough* to restrict unauthorized third-party access. *See* Ex. 3 (Dec. 12, 2014 Letter ▮▮▮▮) at 2 (▮▮▮▮). Indeed, well into the next year, ▮▮ internal documents reflect its view that Reynolds can and should do "▮▮▮▮" Ex. 4 (▮▮▮▮).

Contrary to Plaintiffs' new reply argument, nothing about Reynolds's history with ▮▮ supports a "swirl of brewing litigation" in August 2016. ▮▮▮▮ is simply a counterparty that wanted a better contract and piled onto this antitrust case after it began in 2017.

## II. Plaintiffs' reply ignores or mischaracterizes the key cases on Rule 37(e)(2) specific intent.

The Federal Rules are clear: enhanced spoliation sanctions, like those Plaintiffs seek here, are available "*only* upon finding that the party acted with the intent to deprive *another party* of the information's use *in the litigation*." Fed. R. Civ. P. 37(e)(2) (emphasis added). It is not enough to show that the alleged spoliator knew or should have known he had a duty to preserve evidence. It is not enough to show that the alleged spoliator deleted evidence with generally bad intentions, or even that he consciously intended to deprive *someone* of the use of that evidence. A movant under Rule 37(e)(2) has the burden to prove not just that spoliation was intentional, but that the intent was specifically to deprive an adverse party in the litigation in which sanctions are being sought.

9

The case law confirms that common sense reading, including in a recent decision two weeks before Plaintiffs filed their reply. In that case, which Plaintiffs fail to address, a defendant destroyed encryption keys to a "shadow accounting system" in the face of a criminal investigation. *Doubleline Capital LP v. Odebrecht Fin., Ltd.*, 2021 WL 1191527, *2 (S.D.N.Y. Mar. 30, 2021). The defendant pled guilty, and the plaintiffs in a follow-on civil lawsuit regarding the same subject matter moved for sanctions based on the defendant's spoliation of the encryption keys. *Id.* at *3. Though the destruction in *Doubleline* was undisputedly intentional, the court properly denied all sanctions requested under Rule 37(e)(2) because the plaintiffs failed to show "that defendants destroyed the physical encryption keys with the intent of depriving *plaintiffs in this litigation* of that evidence." *Id.* at *8 (emphasis in original).[5]

In addition to ignoring the recent *Doubleline* decision—and the key cases *Doubleline* relies upon, all of which make clear any intent must be specific to *this* case—Plaintiffs mischaracterize the facts in *Borum v. Brentwood Vill., LLC*, the primary case cited in Reynolds's response brief on this issue. *See* Dkt. 1268 at 18. In *Borum*, as the Court will recall, a party's key employee left the company during the pendency of litigation, and in doing so intentionally deleted all of her emails. 332 F.R.D. 38, 42 (D.D.C. 2019). The court denied the request for Rule 37(e)(2) death-penalty sanctions because the movants could not show the requisite "intent to deprive another party of the information's use in the litigation." *Id.* at 46, 48.

In their reply, Plaintiffs attempt to distinguish *Borum* by asserting that there was "no evidence" that the employee in *Borum* who destroyed emails "did so with knowledge of anticipated

---

[5] In rejecting Rule 37(e)(2) sanctions, the *Doubleline* court summarized and relied on an extensive body of cases focusing on the specific intent element of Rule 37(e)(2), after its amendment in 2015. *See, e.g., id.* at *6, 8 (citing *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *8 (S.D.N.Y. Dec. 19, 2017); *Rhoda v. Rhoda*, 2017 WL 4712419, at *2 (S.D.N.Y. Oct. 3, 2017); *Johnson v. L'Oreal USA*, 2020 WL 5530022, at *4 (S.D.N.Y. Sept. 15, 2020); *In re Aluminum Warehousing Antitrust Litig.*, 2016 WL 11727416, at *5 (S.D.N.Y. May 19, 2016); *Learning Care Grp., Inc. v. Armetta*, 315 F.R.D. 433, 440 (D. Conn. 2016)).

litigation." Reply at 10 n.9. But Plaintiffs are wrong. That employee was "One DC's primary organizer at Brookland Manor"—the subject of the *Borum* litigation—for almost two years during the litigation. 332 F.R.D. at 42. "***During the litigation***, she . . . serv[ed] as the main point of contact between Brookland Manor residents and One DC." *Id*. (emphasis added). The employee ultimately left the organization, and deleted her emails, during the pendency of the litigation. *Id*. In sum, the employee in *Borum* plainly had notice of the litigation in which sanctions were sought. The court simply denied Rule 37(e)(2) sanctions because, like here, the movants failed to show that the employee's motivation was anything other than a separate, personal dispute. *See id*. at 48.

Unable to respond to cases like *Borum* and *Doubleline*, Plaintiffs pivot in their reply to a line of cases they contend supports a finding of intent to deprive based entirely on knowledge (or constructive knowledge) of the duty to preserve, and the lack of an alternative explanation for the loss of evidence. *See* Reply at 10 n.8. Plaintiffs' argument fails legally and factually—assuming for the sake of argument that Reynolds had a duty to preserve as of August 26, 2016, which it did not. Their argument fails legally because the cases string-cited in Plaintiffs' reply (at 10 n.8) rely directly or indirectly on pre-2015 case law and therefore effectively read the "intent to deprive" requirement out of the current Rule 37(e)(2).[6]

---

[6] *See*, e.g., *Alabama Aircraft Indus., Inc. v. Boeing Co*., 319 F.R.D. 730, 746 (N.D. Ala. 2017) (disregarding heightened intent requirements of 2015 Amendments to Rule 37(e)(2) and instead relying on pre-2015 test for "circumstantial evidence of bad faith"); *Moody v. CSX Transp., Inc*., 271 F. Supp. 3d. 410, 431 (W.D.N.Y. 2017) (same, relying on *Alabama Aircraft*); *Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019) (same, relying on *Moody*); *Ottoson v. SMBC v. Leasing & Finance, Inc.*, 268 F. Supp. 3d 570, 581, 583, (disregarding 2015 Amendments to Rule 37(e)(2) and relying on pre-2015 case law for "bad faith" and "gross negligence" analysis); *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018) (relying on Moody and Ottoson for outdated formulation of Rule 37(e)(2) intent, though ultimately denying any sanctions); *Capricorn Mgmt. Sys., Inc. v. Gov't Emps.' Ins. Co*., 2019 WL 5694256, at *11 (relying on *Ungar* and *Moody* for outdated formulation of Rule 37(e)(2) intent, though ultimately denying any sanctions).

11

Plaintiffs' argument also fails factually because the circumstantial evidence in those cases, unlike here, include the lack of any explanation for document deletion other than depriving the movant of the evidence. *See*, *e.g.*, *Alabama Aircraft*, 319 F.R.D. at 746 (Boeing's "**unexplained**, blatantly irresponsible behavior leads the court to conclude that Boeing acted with the intent to deprive Pemco") (emphasis added); *Moody*, 271 F. Supp. 3d at 431 (relying on *Alabama Aircraft* and other cases finding that lack of plausible alternative explanation supported inference of intent to deprive). To the contrary, the Court here need not look further than the very indictment upon which Plaintiffs rely to find the alternative explanation: Mr. Brockman was trying to avoid detection for alleged tax crimes having nothing to do with this case or these plaintiffs.

At bottom, there is no dispute that Rule 37(e)(2) applies to the kind of sanctions Plaintiffs seek against Reynolds. Plaintiffs, and the handful of cases they rely upon, simply ignore the 2015 amendments to Rule 37(e)(2), as well as the recent case law rigorously applying the rule in its current form. There is no reason for the Court to relax the stringent standards of Rule 37(e)(2) as amended. Under the plain language of the Rule, the *Doubleline*, *Borum*, *Leidig*, and many other decisions, Plaintiffs' request for sanctions must be denied on this record.

### III. Plaintiffs' new "transferred intent" argument has no support in the case law, is totally inapplicable, and should be rejected.

Ultimately, Plaintiffs are forced to come to grips with the fact that if they have shown Brockman intended to deprive anyone of evidence, it was the federal government, not Plaintiffs. Reply at 12-13. Plaintiffs then resort to the new, wholly meritless argument that Brockman's alleged intent to deprive the government "transfers" to Plaintiffs based on various inapplicable sections of the Restatement (Second) of Torts.

Without citing a single case even mentioning "transferred intent" in the discovery or spoliation context, Plaintiffs rely entirely on Restatement sections regarding "harmful or offensive

12

bodily contact" and "false imprisonment," and argue that the doctrine "applies straightforwardly here." Reply at 12 (citing Restatement (Second) of Torts §§ 16(2), 20, 32(2), 43). Nonsense. What is straightforward is the text of Rule 37(e)(2), which provides that enhanced sanctions are available "***only*** upon finding that the party acted with the intent to deprive ***another party*** of the information's use ***in the litigation***." Fed. R. Civ. P. 37(e)(2) (emphasis added); *see also Doubleline*, 2021 WL 1191527 at *8; *Borum*, 332 F.R.D. at 42. No case has ever suggested that plain language can be rewritten using the "transferred intent doctrine"—indeed, Reynolds's research did not reveal a single party to have even made that argument.

Even if those Restatement sections on bodily contact and false imprisonment could theoretically be applied to a motion for discovery sanctions, a specific Federal Rule trumps any preexisting common law concepts on that subject. *See, e.g., Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993) (holding preexisting common law on expert admissibility to be inapplicable because there is now "a specific Rule that speaks to the contested issue" and no "clear indication" that the Rule was intended to incorporate the common law standard); *see also*, *Hispec Wheel & Tire, Inc. v. Tredit Tire & Wheel Co., Inc.*, 2007 WL 101827, *6 (N.D. Ind. Jan. 8, 2007) ("The Federal Rules of Civil Procedure . . . superseded common law pleading[.]"); 2015 Advisory Cmte. Notes on Rule 37 ("[Rule 37] forecloses reliance on inherent authority or state law to determine when certain measures should be used.").

As the 2015 Advisory Committee further explained, adverse inference instructions are premised on the concept that a party's intent to deprive another party in the litigation from evidence gives rise to a reasonable inference that the evidence was unfavorable to the responsible party. *See* Dkt. 1268 at 19. That inference is not reasonable if the alleged destruction was intended to deprive

13

an unrelated party in an unrelated proceeding. Plaintiffs' reply has no answer for this principle, which is fatal to its "transferred intent" argument.

*Safeco*, which Plaintiffs cite for the general proposition that a common law term generally comes with its common law meaning, includes a glaring exception that Plaintiffs ignore: "…the general rule that a common law term in a statute comes with a common law meaning, ***absent anything pointing another way***[.]" *Safeco Ins. Co. of America v. Burr*, 551 U.S. 57, 58 (2007). Thus, even if one were to accept Plaintiffs' tortured premise that the term "intent" is generally transferrable from victim to victim as a result of Restatement provisions regarding bodily contact and false imprisonment, Rule 37(e)(2) "points the other way" by expressly requiring proof of intent to deprive "another party" in "the litigation."

Plaintiffs' "transferred intent" argument is unsupported by any case law, illogical, and contrary to the plain language of Rule 37(e)(2). Plaintiffs' reliance on a narrative that Brockman destroyed evidence "all in connection with a scheme to evade paying federal taxes," Mot. at 6, not to deprive any litigant of relevant information in this case, is dispositive against their motion.

## CONCLUSION

For all of these reasons and those set forth in Reynolds's previous response, Plaintiffs' motion should be denied.

14

Dated: June 8, 2021

Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
2099 Pennsylvania Avenue NW,
Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds*
*Company*

15

**CERTIFICATE OF SERVICE**

   I, Brian T. Ross, an attorney, hereby certify that on June 8, 2021, I caused a true and correct copy of the foregoing **[PUBLIC – REDACTED VERSION] REYNOLDS'S SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** to be served electronically on all counsel of record at the following email address:

   SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

             */s/ Brian T. Ross*
             Brian T. Ross
             GIBBS & BRUNS LLP
             1100 Louisiana Street
             Suite 5300
             Houston, TX 77002
             (713)751-5286
             bross@gibbsbruns.com