**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| *ALL CASES* | |

**INDIVIDUAL AND VENDOR CLASS PLAINTIFFS'
<u>SUPPLEMENTAL SUMMARY JUDGMENT BRIEF</u>**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................. 1

ARGUMENT ....................................................................................................... 4

I.     The *Daubert* Rulings Support Denial Of Summary Judgment On Plaintiffs' Section 1 Conspiracy Claim.................................................................. 4

     A.     The Direct Evidence Of Defendants' Agreement Is Sufficient To Deny Summary Judgment ............................................................. 4

     B.     Dr. Israel's Expert Testimony Further Supports Denying Summary Judgment.................................................................................. 5

II.     The *Daubert* Rulings Support Denial Of Summary Judgment On Plaintiffs' Exclusive Dealing And Monopolization Claims ...................................... 7

     A.     Dr. Israel's Expert Opinions Create a Genuine Issue of Fact .................... 7

     B.     The Court's Limited Exclusion Of Mr. Stejskal's Opinions Does Not Support Summary Judgment.................................................... 8

III.     The *Daubert* Rulings On Plaintiffs' Damages Experts Support Denial Of Summary Judgment On AutoLoop's And Authenticom's Claims ........................ 9

IV.     The *Daubert* Rulings With Respect To Dr. Israel And Prof. Klein Support Denial Of Summary Judgment On MVSC's Claims........................................ 13

V.     The *Daubert* Rulings Have No Material Effect On The Counterclaims Against AutoLoop And Authenticom ............................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blue Cross & Blue Shield of Wisconsin v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ........................................................................ 10

*In re Disposable Contact Lens Antitrust Litig.*,
  329 F.R.D. 336 (M.D. Fla. 2018) .................................................................... 6

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
  2019 WL 1515231 (E.D.N.Y. Feb. 21, 2019) ................................................. 6

*In re High Fructose Corn Syrup Antitrust Litig.*,
  295 F.3d 651 (7th Cir. 2002) ............................................................. 1, 5, 6, 12

*Kreg Therapeutics, Inc. v. VitalGo, Inc.*,
  2014 WL 1227311 (N.D. Ill. Mar. 25, 2014) ................................................. 5

*Manpower, Inc. v. Insurance Co. of Pennsylvania*,
  732 F.3d 796 (7th Cir. 2013) ........................................................................ 10

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010) ........................................................................ 18

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
  629 F.3d 697 (7th Cir. 2011) .......................................................................... 5

*Spirit Airlines, Inc. v. Nw. Airlines, Inc.*,
  431 F.3d 917 (6th Cir. 2005) .......................................................................... 6

*Stollings v. Ryobi Techs., Inc.*,
  725 F.3d 753 (7th Cir. 2013) ........................................................................ 10

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931)................................................................................... 10-11

*Toys "R" Us v. FTC*,
  221 F.3d 928 (2000)........................................................................................ 7

The Individual and Vendor Class Plaintiffs respectfully submit this supplemental brief to address the impact of this Court's *Daubert* rulings (Dkt. 1321) ("*Daubert* Opinion" or "Op.") on the following summary judgment motions: (1) The Reynolds and Reynolds Company's ("Reynolds") motion against Authenticom, Inc. ("Authenticom") on Authenticom's claims (Dkt. 964); (2) CDK Global, LLC's ("CDK") motion against Loop LLC d/b/a AutoLoop ("AutoLoop"), which is the class representative for the direct purchaser vendor class, on AutoLoop's claims (Dkt. 967); (3) Reynolds's motion against Motor Vehicle Software Corporation ("MVSC") on MVSC's claims (Dkt. 954); (4) AutoLoop's motion on CDK's breach-of-contract counterclaim (Dkt. 949); and (5) Reynolds's motion for partial summary judgment and Authenticom's motion for summary judgment on Reynolds's counterclaims (Dkts. 777, 976).

## SUMMARY OF ARGUMENT

For ease of the Court's reference, we summarize our position on the impact of the *Daubert* Opinion on each of the motions set forth above.

1.    **Reynolds's Motion on Authenticom's Claims.**  As explained in Authenticom's opposition brief, Reynolds's summary judgment motion on Authenticom's horizontal conspiracy claim – which is the central claim in all of the cases in this MDL – should be denied because there is direct evidence of the conspiracy's existence, including admissions by Defendants' own executives.  *See* Dkt. 1100, at 40-51.  As this Court held in the *Daubert* Opinion, such direct evidence is alone sufficient to support a jury verdict, even without Dr. Mark Israel's expert testimony.  *See* Op. at 12 (an "admission by the defendants that they agreed to fix their prices is all the proof a plaintiff needs") (quoting *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002)).  Summary judgment can be denied on that basis alone.  *See infra* Point I.A.

Dr. Israel's expert testimony – which "synthesizes the economic and non-economic evidence and opines that it supports the conclusion that Defendants' conduct was not equally consistent with their permissible independent interests as it was with improper activity," Op. at 21 – provides further evidence on which a reasonable jury could find the existence of the conspiracy. *See* Dkt. 1100, at 51-60. The Court's *Daubert* ruling that Dr. Israel's testimony is admissible thus further supports denial of summary judgment. *See infra* Point I.B.

Likewise, Dr. Israel's testimony, if credited by the jury, would be sufficient to establish the elements of Authenticom's exclusive dealing and monopolization claims. *See* Dkt. 1100, at 67-77. *See infra* Point II.A. The limited portions of the expert opinions of Allan Stejskal that were excluded by the *Daubert* Opinion are not necessary to create a genuine issue of material fact on these claims, and there is other expert testimony and record evidence establishing the same facts. *See infra* Point II.B.

Finally, the Court's rejection of Reynolds's challenge to Catharine Lawton's testimony disposes of Reynolds's argument that Authenticom lacks admissible evidence of damages. *See* Dkt. 1100, at 79-80. *See infra* Point III.B.

**2.     CDK's Motion on AutoLoop's Claims.** To the extent CDK moves for summary judgment on liability on AutoLoop's antitrust claims, the Court's *Daubert* rulings support denial of that motion for the reasons set forth in connection with Reynolds's motion against Authenticom. *See infra* Points I & II. CDK's only separate summary judgment argument against AutoLoop is that AutoLoop's evidence of damages is insufficient for the same reasons set forth in CDK's *Daubert* challenge to Dr. Israel's expert damages opinions – namely, that he did not reliably account for the "but for" world, measure RCI prices, or account for differences among types of integration. *See* Dkt. 969, at 5-15. The *Daubert* ruling addressed all of those criticisms (*see* Op.

at 22-29) and concluded that they raise, at most, "question[s] for the factfinder." Summary judgment should be denied for the same reason. *See infra* Point III.A.

3. **Reynolds's Motion on MVSC's Claims.** Reynolds's motion against MVSC asserts that MVSC lacks sufficient evidence on four elements: (1) Reynolds's participation in an antitrust conspiracy; (2) causation; (3) antitrust injury; and (4) damages. As to the first element, MVSC alleges the existence of two conspiracies: (1) the conspiracy between CDK and Reynolds that is common to all cases in this MDL; and (2) a group boycott by CDK and Reynolds to deny MVSC access to their respective certified data integration programs. The Court's denial of Reynolds's motion to exclude Dr. Israel's testimony warrants denial of summary judgment as to the existence of the first of the two conspiracies. *See infra* Point I. As to the second conspiracy, MVSC's opposition brief (Dkt. 1073, at 17-22) recounts the ample evidence that CDK and Reynolds acted in concert to deny MVSC access to their respective DIS services. *See also* Op. at 5, 63 (recounting facts). Dr. Israel's admissible expert testimony – while, again, not necessary for MVSC to prevail at trial – bolsters this evidence by explaining why such a conspiracy makes economic sense. *See infra* Point IV.A. With respect to the remaining elements (causation, antitrust injury, and damages), Prof. Gordon Klein's admissible expert testimony regarding the damages caused by Defendants' exclusion of MVSC is sufficient for the jury to find for MVSC and, thus, warrants denial of summary judgment. *See infra* Point IV.B.-IV.D.

4. **AutoLoop's Motion on CDK's Breach-of-Contract Counterclaim.** AutoLoop's motion asserts that CDK has failed to establish essential elements of its claim for contract breach. Because neither party's argument relies on expert testimony, *see* Dkts. 950, 1059 (Rule 56.1 statements), the *Daubert* Opinion does not affect AutoLoop's motion. *See infra* Point V.A.

3

5.      **Cross-Motions on Reynolds's Counterclaims Against Authenticom.**  Insofar as the *Daubert* Opinion denied Authenticom's motion to exclude the portions of Prof. Daniel Rubinfeld's testimony regarding Reynolds's damages, that ruling negates the last argument that Authenticom raised in its motion for summary judgment regarding the admissibility of Prof. Rubinfeld's testimony on damages.  The Court's *Daubert* ruling does not otherwise affect the arguments in the parties' cross-motions.  *See infra* Part V.B.

## ARGUMENT

**I.      The *Daubert* Rulings Support Denial Of Summary Judgment On Plaintiffs' Section 1 Conspiracy Claim**

The conspiracy claim common to each case in this MDL is, as the Court summarized, "that CDK agreed to stop criticizing Reynolds' blocking policies in the DMS market; Reynolds agreed to favor CDK's DIS provider; and the parties agreed to adopt a common marketing message with respect to data security and to cooperate in targeting independent DIS providers."  Op. at 19.  The *Daubert* Opinion strongly supports rejection of Defendants' argument that Plaintiffs lack sufficient evidence of the existence of that conspiracy.

**A.      The Direct Evidence Of Defendants' Agreement Is Sufficient To Deny Summary Judgment**

As the Court stated in its *Daubert* Opinion:

> Allegations concerning the existence of an agreement usually take one of two forms: (1) direct allegations of an agreement, like an admission by a defendant that the parties conspired; or (2) more often, circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed.

> Op. at 11 (internal quotation marks and citation omitted).

As Plaintiffs explained in their summary judgment opposition briefs, there is *direct* evidence of the alleged agreement.  Without recounting all the evidence in detail, that direct evidence includes admissions by senior executives of both CDK (Dan McCray) and Reynolds

4

(Bob Schaefer).  *See* Dkt. 1100, at 30-33.  It also includes direct evidence that senior Reynolds and CDK executives met in September 2013 and reached agreement on each of the objectives of the conspiracy.  *Id.* at 13-17.  Voluminous additional evidence demonstrates that the two companies coordinated the implementation of their agreement.  *Id.* at 17-30.  As this Court stated, this direct evidence is "all the proof a plaintiff needs."  Op. at 12 (quoting *High Fructose Corn Syrup*, 295 F.3d at 654); *compare id.* at 30 ("As Plaintiffs point out, *Matsushita* sets a summary judgment standard for cases in which an antitrust plaintiff relies *solely* on circumstantial evidence" – unlike here, where there is direct evidence – "to prove the existence of a collusive arrangement in violation of Sherman Act § 1.") (emphasis added).  The legal framework set forth in the *Daubert* Opinion, as applied to the record evidence in this case, supports Plaintiffs' argument that they have sufficient evidence for trial even without Dr. Israel's expert testimony.  *See* Dkt. 1100, at 40-45. And as this Court has held in other cases, in evaluating that record, "'[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury.'"  *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 2014 WL 1227311, at *7 (N.D. Ill. Mar. 25, 2014) (Dow, J.) (alteration in original) (quoting *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011)).

### B.    Dr. Israel's Expert Testimony Further Supports Denying Summary Judgment

The Court's ruling that Dr. Israel's expert testimony is admissible is a further basis to deny summary judgment.  As the Court explained, Dr. Israel "synthesize[d]" the non-economic evidence – including the direct evidence of agreement summarized above – with the economic evidence and opined that the totality of the evidence is "indicative of collusion."  Op. at 19, 21.  Defendants made their criticisms of Dr. Israel a central focus of their summary judgment argument.  In their 83-page opening brief, Defendants reference Dr. Israel and his report *126* times.  *See* Dkt. 966. Defendants focused their aim on the "sufficiency of the evidence relied on by Israel" for his

opinions on collusion. Op. at 21. But challenges to the "sufficiency of the basis for Israel's opinion" on collusion are properly "'explore[d] on cross examination and argument *for the benefit of the trier of fact*.'" *Id.* at 19 (quoting *In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336, 372 (M.D. Fla. 2018)) (emphasis added); *id.* at 21 ("The sufficiency of the evidence relied on by Israel will be left to a battle of the experts."). Summary judgment is warranted only if "the material facts are undisputed and there is only one reasonable inference to be drawn from them." *Id.* at 26.

That is not the case here, as the *Daubert* Opinion explains. Dr. Israel's opinions rest on a careful examination of the voluminous economic and non-economic evidence supporting the conclusion that Defendants conspired rather than acted independently. Defendants' experts reviewed the evidence and offered contrary opinions. The existence of a "battle of the experts" based on a "reasonable" "disagree[ment] on the underlying facts, their relevance, and the inferences that should be drawn from them," *id.* at 26, means that the competing expert opinions create a genuine factual dispute. *See also id.* (holding that both sides' experts had sufficient facts and data for their opinions). Because the *jury* ultimately must decide which facts to credit, summary judgment is inappropriate in these circumstances. *See*, *e.g.*, *High Fructose Corn Syrup*, 295 F.3d at 659-60, 666 (reversing summary judgment in part because dueling expert opinions created factual dispute for trial); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 2019 WL 1515231, at *16 (E.D.N.Y. Feb. 21, 2019) ("battle of the experts" over whether the evidence supported an "inference of conspiracy" created "obvious material dispute of fact" warranting denial of summary judgment); *see also Spirit Airlines, Inc. v. Nw. Airlines, Inc.*, 431 F.3d 917, 931 (6th Cir. 2005) ("Our precedents hold that if the opposing party's expert provides a reliable and reasonable opinion with factual support, summary judgment is inappropriate.").

In short, the Court's conclusion that Dr. Israel's analysis reliably shows that Defendants' conduct was indicative of collusion is sufficient to create a jury question, especially when that opinion is coupled with the rest of the record evidence.

## II. The *Daubert* Rulings Support Denial Of Summary Judgment On Plaintiffs' Exclusive Dealing And Monopolization Claims

### A. Dr. Israel's Expert Opinions Create a Genuine Issue of Fact

As Authenticom demonstrated in its summary judgment opposition brief, a reasonable jury could find in its favor on both its Section 1 exclusive dealing and its Section 2 monopolization claims. *See* Dkt. 1100, at 67-77. The Court's rejection of Defendants' *Daubert* challenges to Dr. Israel's testimony reinforces those conclusions in at least two respects.

*First*, the contention that Plaintiffs cannot prove that Reynolds has market power is now untenable. As Authenticom explained, *see id.* at 67, it can prove that by mustering either "direct evidence of anticompetitive effects" or proof of a high share in a relevant market. *See Toys "R" Us v. FTC*, 221 F.3d 928, 937 (2000). Even setting aside the latter method (on which Plaintiffs have sufficient evidence as well, *see* Dkt. 1100, at 68-69), Dr. Israel showed that Reynolds had "raised prices vastly above competitive levels, in some cases tripling RCI prices in a single year without any corresponding improvements in quality." *Id.* at 67. Reynolds's single-sentence summary judgment argument on that issue relied entirely on the criticisms of Dr. Israel's overcharge model in its *Daubert* motion. *See* Dkt. 966, at 66. The Court's rejection of those arguments, Op. at 23-27, confirms that Plaintiffs have made a sufficient showing of "direct evidence of anticompetitive effects" to dispose of Reynolds's market-power argument. *See Toys "R" Us*, 221 F.3d at 937.

*Second*, as noted above, the Court's *Daubert* ruling disposes of Reynolds's challenges to the existence and definition of the DIS market, which is the market at issue in Plaintiffs' exclusive

dealing and monopolization claims.  Reynolds's summary judgment brief recycled its *Daubert* attacks on Dr. Israel's opinions on the DIS market, *see* Dkt. 966, at 66-68, but the Court has rejected those challenges and held that "the proper treatment of particular DIS providers is a battle of the experts that should be left to the factfinder," Op. at 28.  Summary judgment on that issue for purposes of Plaintiffs' exclusive dealing and monopolization claims should therefore be denied.[1]

### B.     The Court's Limited Exclusion Of Mr. Stejskal's Opinions Does Not Support Summary Judgment

The Court excluded the opinions of industry expert Allan Stejskal on DMS switching and the security of independent data integrators.  Op. at 71-77.  On DMS switching, the Court held that Mr. Stejskal may testify on the "various ways that DMS switching may be difficult and disruptive for dealers," Op. at 73, but not on "how frequently switching costs dissuade dealers from changing DMS vendors," Op. at 74.  On that latter point, the record contains other evidence of the tiny percentage of dealers that actually switch DMS providers each year, *see* Dkt. 977-153 (Israel Report ¶ 76), and direct testimony from dealers (and Reynolds's former President, Ron Lamb) explaining how high costs inhibit switching DMSs, *see* Dkt. 1101 ¶¶ 2-7 (Plaintiffs' 56.1 statement).  That evidence is more than sufficient on this point.

On the security of independent data integrators, Plaintiffs have the expert opinion of Peter Swire, one of the nation's pre-eminent cybersecurity experts, on the security of independent data integrators and data access in the DIS market.  *See* Dkt. 977-158 (Swire rebuttal report).  In addition, Plaintiffs intend to offer the opinion of cybersecurity expert Adam Shostack, who evaluated Authenticom's security in particular.  *See* Dkt. 977-156 (Shostack rebuttal report).

---

[1] To the extent that CDK can be understood to have incorporated these same arguments in moving for summary judgment as to AutoLoop (*see* Dkt. 967, at 18), the same consequences follow for that case.

Those opinions, the admissibility of which Defendants did not challenge – in addition to the other extensive evidence in the record on the security of independent integrators – are more than sufficient to rebut Defendants' security arguments.

### III.     The *Daubert* Rulings On Plaintiffs' Damages Experts Support Denial Of Summary Judgment On AutoLoop's And Authenticom's Claims

The Court's rulings that Plaintiffs' expert damages testimony is admissible means that AutoLoop and Authenticom have sufficient proof of damages for trial on this record, and that Defendants cannot obtain summary judgment on that issue.  Indeed, Defendants' own briefs make this point.  *See* Dkt. 1061, at 71 (Reynolds argument that "Authenticom's challenge to Reynolds's damages proof should be rejected because Professor Rubinfeld's damages opinions are admissible.").  With that basic principle in mind, we go through the Court's analysis of each damages expert in turn.

A.     **Dr. Israel (AutoLoop / Vendor Class).**  The Court rejected each of Defendants' criticisms of Dr. Israel's analysis measuring the damages to AutoLoop and the direct purchaser vendor class from Defendants' collusion – namely, that Dr. Israel improperly measured Reynolds's DIS prices (the so-called "'composition effects' error"), Op. at 22-24; that he did not assume the proper "but for" world, *id.* at 24-27; and that he did not properly define the DIS market, *id.* at 27-29.  CDK's summary judgment motion against AutoLoop reprises the "composition effects" critique, Dkt. 969, at 13-14, and the "but-for" world critique, *id.* at 5-12.  As to both, the Court's *Daubert* Opinion concluded that Dr. Israel's opinions were supported by record evidence and that these criticisms were at best fodder for cross-examination at trial.  Op. at 22-27.  The Court's denial of Defendants' *Daubert* motion thus warrants denial of CDK's summary judgment motion as well.

*First*, as to Dr. Israel's supposed composition-effects error, the Court held that Defendants' criticisms must be addressed to the jury.  Because both parties' experts used an accepted

methodology, any disagreement over "the best inputs to use" "go[es] to the weight rather than the admissibility of Israel's damages opinion." *Id.* at 23. Indeed, the Seventh Circuit cases on which this Court relied hold that debates over selection of inputs cannot be resolved at summary judgment. *See*, *e.g.*, *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) ("The district court *usurps the role of the jury*, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed.") (emphasis added); *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 767 (7th Cir. 2013) ("The judge *should have let the jury* determine how the uncertainty about [the accuracy of the data input] affected the weight of [the expert's] testimony.") (emphasis added). Moreover, here, Defendants' composition-effects criticism cannot justify summary judgment in their favor because, as the Court held, "Defendants have not developed a record suggesting that a hypothetical composition effects error has skewed Israel's calculations in any material way." Op. at 24 (distinguishing *Blue Cross & Blue Shield of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 594 (7th Cir. 1998)).

*Second*, on Dr. Israel's construction of the "but-for world" – and Defendants' competing version – the Court held that "[t]he experts on both sides have asserted at least some factual basis for their views" and "both offer a 'rational connection between the data and the opinion.'" Op. at 26. Accordingly, this is not a situation where "the material facts are undisputed and there is only one reasonable inference to be drawn from them." *Id*. Rather, as the Court recognized: The parties' "competing arguments" on the but-for world "highlight the extent to which they disagree on the underlying facts, their relevance, and the inferences that should be drawn from them." *Id*. Indeed, as the Court emphasized, the Supreme Court's decision in "*Story Parchment* cautions against taking away from the factfinder the determination of how defendants would have

acted but-for the alleged conspiracy and what damages are attributable to the conspiracy." Op. at 51 (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)). The resolution of these contested facts must be left to the fact-finder. *See id.* at 52 ("[I]t is up to the factfinder to decide which expert's 'but for' world is the more convincing one in consideration of the facts in the record.").

CDK's summary judgment motion also argues that Dr. Israel's "forced switching" damages calculations are flawed because he "chose not to account for the added value vendors received from certified integration." Dkt. 969, at 15-16. To the extent that argument is a challenge to the admissibility of Dr. Israel's testimony, CDK has waived it, because it failed to make that argument in its *Daubert* motion. *See* Dkt. 878. Given that the admissibility of Dr. Israel's forced-switching damages opinions is unchallenged, Plaintiffs have sufficient record evidence to sustain their burden of proof. CDK's criticisms at best create a factual dispute and go to the weight to be given by the jury to Dr. Israel's opinions. At any rate, for the reasons given in AutoLoop's opposition brief, CDK's criticisms are misplaced, and thus should not be credited at summary judgment even if the issue were properly for the court. *See* Dkt. 1075, at 13-14.

**B.      Catharine Lawton (Authenticom).** Ms. Lawton calculated Authenticom's lost profits damages using a well-accepted "yardstick" methodology. Op. at 55. Reynolds sought to exclude Ms. Lawton's testimony on several grounds, but the Court rejected each argument. Reynolds's arguments that Ms. Lawton's damages opinions "fail[] as a matter of law" (Dkt. 966, at 82) deserve the same fate because they are just the same *Daubert* arguments dressed in summary judgment clothes.

*First*, this Court already addressed – and rejected – Defendants' contention that Ms. Lawton's "damages model fails to isolate damages caused by alleged illegal conduct." Op. at 59-

60. The Court likewise addressed – and rejected – Defendants' "related[]" argument that Ms. Lawton failed to account for Defendants' unilateral power to raise prices. *Id.* at 59; *compare* Dkt. 966, at 81-83 (summary judgment argument that Lawton's damages testimony fails to "segregate" lawful from unlawful conduct), *with* Dkt. 880, at 20-23 (same *Daubert* argument). As the Court concluded, Ms. Lawton and Prof. Rubinfeld reasonably disagree "concerning what actions Defendants could or would have undertaken independently 'but for' the alleged conspiracy." Op. at 59. At summary judgment, the Court must make all reasonable inferences in Plaintiffs' favor. *See High Fructose Corn Syrup*, 295 F.3d at 666. It is ultimately for the jury to decide which expert's account of the but-for world is more persuasive.

*Second*, Reynolds's criticisms of Ms. Lawton's application of the yardstick methodology to the facts of this case are admittedly nothing more than a reprise of Defendants' parallel arguments for exclusion under *Daubert*. *See* Dkt. 966, at 82 (incorporating Defendants' *Daubert* arguments by reference). As the Court held, the "fundamental[]" problem with those criticisms – equally applicable to summary judgment as to *Daubert* – is that they go to the weight of her testimony and are thus properly for the jury. Op. at 58. Even putting that problem aside, moreover, the *Daubert* Opinion pointed out three additional flaws in those criticisms: (1) "Defendants have not pointed to concrete evidence that competition to Authenticom for 'other connections' has, in fact, decreased substantially since the beginning of the alleged conspiracy"; (2) "while a number of DIS providers have exited the market, several others continue to offer DIS today—especially to customers that do not depend on CDK and Reynolds DMSs"; and (3) Reynolds and Prof. Rubinfeld failed to "suggest what adjustments should have been, but were not, made to Lawton's yardstick." *Id.* at 58. Those flaws make Reynolds's reliance on those criticisms equally unpersuasive as grounds for summary judgment.

12

## IV. The *Daubert* Rulings With Respect To Dr. Israel And Prof. Klein Support Denial Of Summary Judgment On MVSC's Claims

Reynolds asserts that it is entitled to summary judgment because MVSC lacks adequate evidence of the existence of a conspiracy, causation, antitrust injury, and damages. *See* Dkt. 955. The Court's denial of Reynolds's motion to exclude the expert testimony of Dr. Israel and Prof. Klein supports denial of summary judgment to Reynolds on each of those elements.

**A. Conspiracy.** MVSC asserts the existence of both the conspiracy common to every plaintiff in this MDL, addressed in Point I above, and a related conspiracy directed specifically at its business: a concerted refusal by CDK and Reynolds to allow MVSC to participate in their respective certified data integration programs (known as 3PA and RCI). As explained in MVSC's summary judgment opposition brief (Dkt. 1073, at 16-20), MVSC is entitled to trial based on the direct evidence that CDK and Reynolds conspired to block MVSC from participating in their 3PA and RCI programs. Furthermore, while not necessary to defeat Reynolds's motion, Dr. Israel's expert testimony explains why that conspiracy makes economic sense. *See* Dkt. 1073, at 24. Dr. Israel's explanation of the economic rationale for the group boycott provides an additional reason for the Court to reject Reynolds's summary judgment contention that the undisputed evidence shows "there was no conspiracy." Dkt. 955, at 10; *see also id.* at 20-24 (arguing that the conspiracy "makes no sense" but ignoring Dr. Israel's opinions).

**B. Causation.** Reynolds contends that MVSC cannot show causation, because (1) MVSC had access to manual reporting, which was an adequate alternative to automated data access; (2) Defendants' interference could not have harmed MVSC in California because its business grew; and (3) MVSC's failures in other states were caused by other factors, such as state regulation. *See id.* at 24-32. The Court's rejection of those same arguments in connection with Prof. Klein's expert opinions warrants the same result at summary judgment. Reynolds's various

13

challenges focused on its contrary interpretation of the evidence that Prof. Klein relied on in forming his opinions, but the Court again held that such challenges raise factual disputes that should be resolved by the jury after "vigorous cross-examination." Op. at 68.

As to manual reporting, the Court stated that there is evidence supporting Prof. Klein's opinion that manual reporting is *not* an adequate alternative:

> The absence of automated real-time data access allegedly put MVSC at a competitive disadvantage, particularly in states such as Illinois and Virginia that require EVR transactions to be completed at the point of sale. While MVSC has developed certain manual "workarounds," it remains at a competitive disadvantage because the workarounds require dealership employees to expend time and effort in performing manual tasks and learning workaround procedures. Manual workarounds also increase the risk of errors and developing them imposes substantial financial costs o[n] MVSC.
>
> *Id.* at 63.

Reynolds's contrary arguments merely raise factual disputes for the jury. *See also* Dkt. 1101, ¶ 111 (statement of facts compiling evidence that manual reporting is inferior and inadequate).

The Court likewise concluded that Prof. Klein's opinion that Defendants' interference caused MVSC harm in California was reliable. Specifically, the Court held that Prof. Klein had done a reliable "before and after" growth model showing that MVSC's growth rate in California slowed. Op. at 68. And the Court held that Prof. Klein properly relied on data provided by MVSC that specific dealers had refused to use MVSC's services because MVSC lacked real-time access to data on Defendants' DMSs. *Id.* As the Court held, Reynolds's effort to "point to some contrary evidence" was insufficient to justify exclusion under *Daubert*, because "experts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence." *Id.* at 69 (citation omitted). That same effort must likewise fail at summary judgment, because it merely raises a genuine factual dispute that must be resolved through trial. *See* Dkt. 1073, at 25-27.

14

*Finally*, the Court's rejection of the *Daubert* challenge to Prof. Klein's damages opinions for Illinois, Wisconsin, and Virginia also warrants denial of summary judgment with respect to the element of causation. As with California, Reynolds's summary judgment arguments merely invite the Court to adopt its version of disputed facts. The Court's recognition that there are factual disputes foreclosing Reynolds's *Daubert* arguments is no less applicable to its summary judgment arguments. *See* Op. at 71 ("The Court finds it appropriate to leave the resolution of the competing experts' testimony" regarding the Wisconsin geographic market "to the factfinder.").

**C.    Antitrust Injury.** The expert opinions of Prof. Klein and Dr. Israel create a genuine issue of fact regarding MVSC's antitrust injury. Antitrust injury is injury that the antitrust laws were designed to prevent because it flows from the unlawful aspects of Defendants' anticompetitive behavior – here, their conspiracy to block MVSC from access to dealer data on their DMSs. As Prof. Klein explains, that "interference" disabled MVSC from competing as effectively in the EVR market, and thus caused MVSC to suffer lost business and to incur additional expenses in trying to mitigate the effects of the interference. *See* Dkt. 1073, at 33-34. Such harm is straightforward antitrust injury.

Dr. Israel's expert testimony provides further evidence that Defendants' conspiracy harmed competition in the EVR market. As Dr. Israel explains, by impeding access to an indispensable input (dealer data), Defendants reduced the quality of MVSC's product to the detriment of consumers. Dkt. 977-153, Israel Report ¶ 192 ("From an economic perspective, reductions in consumer choice and reductions in product quality may result in competitive harm."). Indeed, in Illinois, "CDK's and Reynolds' actions have prevented MVSC from offering a competitive alternative . . . and have allowed [] CVR to maintain its dominant position." *Id.* ¶ 188; *see also id.*

¶ 191.  Between the testimony of Prof. Klein and Dr. Israel, MVSC has ample evidence of antitrust injury.

**D.      Damages.**  Reynolds's summary judgment argument on damages explicitly depends on its *Daubert* arguments, and thus can be rejected for the reasons given in the Court's *Daubert* Opinion.  *See* Op. at 62-71; *see also* Dkt. 955, at 37 ("As set forth in Reynolds's pending *Daubert* Motion to Exclude Klein (Dkt. 865), MVSC's damages analysis fails as a matter of law for a number of reasons.  To the extent Mr. Klein's opinions are excluded, summary judgment should be granted on the grounds that MVSC cannot establish damages.").

**V.      The *Daubert* Rulings Have No Material Effect On The Counterclaims Against AutoLoop And Authenticom**

The *Daubert* rulings have no impact on CDK's counterclaim against AutoLoop, and limited effect on Reynolds's counterclaims against Authenticom.  (There are no counterclaims against MVSC.)

**A.      CDK's Counterclaim Against AutoLoop.**  CDK has brought a single breach-of-contract counterclaim against AutoLoop – the putative class representative for the direct purchaser vendor class – and AutoLoop has moved for summary judgment on that counterclaim.  *See* Dkt. 951.  The *Daubert* ruling has no effect on that motion because neither side disclosed any expert opinions relevant to CDK's counterclaim against AutoLoop.  Indeed, one of the fatal deficiencies of CDK's counterclaim is that it has no evidence – expert or otherwise – of damages, which CDK concedes limits recovery to nominal damages at best.  *See* Dkt. 951, at 8-10; Dkt. 1135, at 4-6.

**B.      Reynolds's Counterclaims Against Authenticom.**  Reynolds has brought counterclaims against Authenticom concerning Authenticom's access to dealer data on Reynolds's DMS.  Authenticom has moved for summary judgment on those counterclaims (Dkt. 978), and Reynolds has moved for partial summary judgment on certain liability issues (Dkt. 777).

16

The Court rejected Authenticom's motion to exclude the opinion of Prof. Rubinfeld measuring Reynolds's damages from Authenticom's allegedly unlawful conduct, *see* Op. at 104-106, effectively rejecting as well Authenticom's final argument in its summary judgment brief (that Reynolds cannot prove damages through Prof. Rubinfeld's testimony). *See* Dkt. 978, at 78-79.[2]

The Court's rulings with respect to Nancy Miracle do not affect the parties' summary judgment motions. The Court held that Ms. Miracle may not opine on the legal interpretation of terms in the DMCA – something Authenticom had conceded that it would not have Ms. Miracle do. *See* Op. at 96-100. The Court deferred ruling on whether Ms. Miracle could offer factual testimony regarding the operation of Reynolds's systems to aid in the evaluation of whether Reynolds's technological measures satisfy the DMCA's requirements. *See id.* at 100-01.

That testimony should be considered at summary judgment because it helps to disprove Reynolds's counterclaims. Ms. Miracle opined that Reynolds's technological measures "appeared only *after* the executable code had been accessed and run" and that the "visual elements" of Reynolds's DMS that were protected by the technological measures were not copyrightable. *See* Dkt. 978, at 46-47; Dkt. 1081, at 16-17. Ms. Miracle also opined that the technological measures used by Reynolds were incapable of distinguishing authorized from unauthorized users. *See* Dkt. 978, at 50-51; Dkt. 1081, at 17. These opinions support Authenticom's summary judgment

---

[2] The Court declined to exclude Prof. Rubinfeld's calculation of damages for *CDK's* counterclaims against Authenticom. *See* Op. at 102-06. The Court also declined to exclude the opinion of CDK's expert Edward Stroz. *See id.* at 81-95. Stroz's opinion concerned only CDK's counterclaims against Authenticom. *See id.* at 82-83; *see also*, *e.g.*, *id.* at 89-93. Those opinions are no longer relevant to this MDL because CDK and Authenticom have settled their claims against one another. *See* Dkt. 1199. To the extent the Court referenced the DMCA in ruling on the admissibility of Stroz's opinions, the Court did not resolve any of the legal issues regarding the proper interpretation of the DMCA that are presented in the summary judgment briefing, *see* Op. at 100 (noting the need to construe the DMCA in resolving the summary judgment motions), and did not address the sufficiency (or lack thereof) of the evidence supporting *Reynolds's* counterclaims.

argument that Reynolds's technological measures did not control access to any copyrightable work. At the very least, summary judgment must be denied to Reynolds because a reasonable jury could agree with Ms. Miracle's opinion (and Authenticom's position).

In any event, summary judgment on each of these issues does not depend on Ms. Miracle's opinions. Reynolds has presented no evidence that its technological measures prevented access to its executable code – a fact that is fatal to Reynolds's DMCA claims under the precedent from courts in three circuits. *See* Dkt. 1137, at 39-41. Further, Reynolds conceded in its opposition brief that the remaining "visual elements" at issue in its DMCA claim were merely the visual manifestation of the unprotected executable code, and hence, that the "visual elements" were not protected by the technological measures. *See id.* at 41-42. Addressing indistinguishable facts, the Ninth Circuit has held that a DMCA claim must therefore fail as a matter of law. *See id.* (citing *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952 (9th Cir. 2010)). Finally, Reynolds does not contest that its technological measures were incapable of distinguishing between authorized and unauthorized users. Reynolds merely argues (incorrectly) that the issue is irrelevant under the DMCA. *See* Dkt. 1137, at 47. Properly interpreted, the DMCA does not apply to such meaningless measures that provide no protection at all.

Dated: February 25, 2022          Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

18

## <u>CERTIFICATE OF SERVICE</u>

I, Derek T. Ho, an attorney, hereby certify that on February 25, 2022 I caused a true and correct copy of the foregoing **INDIVIDUAL AND VENDOR CLASS PLAINTIFFS' SUPPLEMENTAL SUMMARY JUDGMENT BRIEF** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

_/s/ Derek T. Ho_
Derek T. Ho
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com