**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817 Case No. 18-cv-00864 |
| **This Document Relates To:** | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

**DEALERSHIP CLASS PLAINTIFFS'
<u>SUPPLEMENTAL SUMMARY JUDGMENT BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    1.    Dr. Williams's Opinions Warrant Denial of CDK's
          Summary Judgment Motion ................................................................... 2

    2.    Dealers, as Direct Purchasers, are Entitled At Least to
          Nominal Damages Under Federal Law ................................................. 3

    3.    The *Daubert* Opinion Supports Plaintiffs' Liability Claims,
          and has No Bearing on Damages Claims Under State Law .................. 5

    4.    Any Potential "Duplication" Issues Do Not Warrant
          Summary Dismissal of the State Law Claims ....................................... 7

    5.    Dealers Were Damaged ........................................................................ 11

    6.    Recent Authority Supports the Inapplicability of
          State Class Action Bars ........................................................................ 12

    7.    CDK's Arguments Regarding State Notice Provisions are Meritless ................... 15

          A.  The State Notice Provisions are Inapplicable in Federal Court ..................... 15

          B.  In any Event, Dealers Satisfied the Notice Provisions and can Provide
              Additional Notice ......................................................................... 17

CONCLUSION .................................................................................................................. 18

# **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Albright v. Christensen*,
  – F.4th –, 2022 WL 278385 (6th Cir. July 21, 2022).............................................. 13, 14, 15, 16

*Am. Can Co. v. Ladoga Canning Co.*,
  44 F.2d 763 (7th Cir. 1930) ...................................................................................... 3

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
  537 F. Supp. 3d 273 (N.D.N.Y. 2021).......................................................................... 4

*Arandell Corp. v. Xcel Energy, Inc.*,
  2021 WL 5083974 (W.D. Wis. Nov. 2, 2021)........................................................... 11

*Bunker's Glass Co. v. Pilkington PLC*,
  75 P.3d 99 (Ariz. 2003)............................................................................................ 8

*California v. ARC America, Corp.*,
  490 U.S. 93 (1989).................................................................................................. 8

*Doe #4 v. Raleigh Gen'l Hosp., LLC*,
  2021 WL 4496230 (S.D. W. Va. Sept. 30, 2021) ....................................................... 16

*Emerson v. Aegis Lending Corp.*,
  2006 WL 8443514 (E.D. Wis. Aug. 17, 2006) ......................................................... 14

*Ford v. Johnson*,
  362 F.3d 395 (7th Cir. 2004) .................................................................................. 18

*Freeman Indus., LLC v. Eastman Chem. Co.*,
  172 S.W.3d 512 (Tenn. 2005).................................................................................. 8

*Hall v. Sprint Spectrum L.P.*,
  376 Ill. App. 3d 822 (5th Dist. 2007)......................................................................... 7

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  527 F. Supp. 2d 1084 (N.D. Cal. 2007) ...................................................................... 4

*Ill. ex rel. Burris v. Panhandle E Pipeline Co.*,
  935 F.2d 1469 (7th Cir. 1991) ................................................................................. 8

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ............................................................................................... 1

ii

*In re Asacol Antitrust Litig.*,
    2016 WL 4083333 (D. Mass. July 20, 2016)................................................................ 18

*In re Broiler Chicken Antitrust Litig.*,
    290 F. Supp. 3d 772 (N.D. Ill. 2017) ........................................................................ 5

*In re Dealer Mgmt. Sys. Anti. Litig.*,
    362 F. Supp. 3d 510 (N.D. Ill. 2019) ....................................................................... 13

*In re Humira (Adalimumab) Antitrust. Litig.*,
    465 F. Supp. 3d 811 (N.D. Ill. 2020) ....................................................................... 14

*In re Lipitor Antitrust Litig.*,
    336 F. Supp. 3d 395 (D.N.J. 2018) .......................................................................... 18

*In re Pork Antitrust Litig.*,
    495 F. Supp. 3d 753 (D. Minn. 2020) ................................................................... 5, 13

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    355 F. Supp. 3d 145 (E.D.N.Y. 2018) ...................................................................... 16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    2010 WL 5071694 (N.D. Cal. Dec. 7, 2010)............................................................. 4

*In re TikTok, Inc., Consumer Privacy Litig.*,
    2021 WL 4478403 (N.D. Ill. Sept. 30, 2021) ........................................................... 7

*Kleen Prods. LLC v. Int'l Paper Co.*,
    831 F.3d 919 (7th Cir. 2016) ................................................................................. 11

*Lessin v. Ford Motor Co.*,
    2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) .......................................................... 12

*Lisk v. Lumber One Wood Preserving, LLC*,
    792 F.3d 1331 (11th Cir. 2015) ............................................................................. 13

*Malik v. Falcon Holdings, LLC*,
    675 F.3d 646 (7th Cir. 2012) ................................................................................. 11

*Martin v. Heinold Commodities, Inc.*,
    117 Ill. 2d 67 (1987) .............................................................................................. 7

*Miami Prods. & Chem. Co. v. Olin Corp.*,
    2021 WL 2588090 (W.D.N.Y. June 24, 2021).......................................................... 12

*Murray v. GMAC Mortg. Corp.*,
    434 F.3d 948 (7th Cir. 2006) ................................................................................. 14

*Pac. Cycle, Inc. v. PowerGroup Int'l, LLC,*
  969 F. Supp. 2d 1098 (W.D. Wis. 2013) ........................................................... 10, 12

*Peoria Day Surgery Ctr. v. OSF Healthcare Sys.,*
  2009 WL 5217344 (C.D. Ill. Dec. 30, 2009) .......................................................... 2

*Pledger v. Lynch,*
  5 F.4th 511 (4th Cir. 2021) ....................................................... 13, 14, 15, 16

*Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n,*
  666 F.2d 1130 (8th Cir. 1981) ................................................................ 3

*Sandee's Catering v. Agric. Stats, Inc.,*
  2020 WL 6273477 (N.D. Ill. Oct. 26, 2020)....................................................... 12,13

*Sciambra v. Graham News,*
  892 F.2d 411 (5th Cir. 1990) ................................................................ 3

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010)............................................................ 2, 12, 15, 16

*Stanley v. Huntington Nat. Bank,*
  492 Fed.Appx. 456 (2012) ................................................................ 16

*U.S. Football League v. Nat'l Football League,*
  842 F.2d 1335 (2d Cir. 1988)............................................................ 3

*U.S. Gypsum Co. v. Ind. Gas Co., Inc.,*
  350 F.3d 623 (7th Cir. 2003) ................................................................ 5

*Wood v. Capital Vision Servs., LLC,*
  2021 WL 5280938 (N.D. Ill. Nov. 12, 2021) ...................................................... 6

**Statutes**

Ariz. Rev. Stat. § 44-1415(A) ................................................................ 15

Haw. Rev. Stat. § 480-13.3 ................................................................ 15

N.J. Stat. § 56:8-20 ................................................................ 15, 17

Utah Code § 76-10-3109(9) ................................................................ 15, 17

W. Va. Code § 46A-6-106(c)................................................................ 15

iv

**Other Authorities**

Gary A. Winters, *Trial Issues in Consolidated Direct and Indirect Purchaser Cases: Lessons from the SRAM Litigation*, Mayer Brown, at 9 (Spring 2011), https://www.mayerbrown.com/public_docs/trialissues.pdf......................................................9

J. Thomas Prud'homme, Jr. & Ellen S. Cooper, *One More Challenge for the AMC: Repairing the Legacy of Illinois Brick*, 40 U.S.F. L. Rev. 675, 684 (Spring 2006)..................7

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 12, 16

## INTRODUCTION

In accordance with the Court's Minute Entry dated January 21, 2022,[1] Dealership Plaintiffs ("Dealers") respectfully submit this memorandum to address the impact of the recent Memorandum Opinion and Order, ECF No. 1321 ("*Daubert* Opinion") on the pending summary judgment motions. As shown below, the ruling strongly supports the denial of CDK Global, LLC's ("CDK") Motion for Summary Judgment against Dealership Class Plaintiffs' (ECF No. 970). The Court rejected CDK's motion to exclude the liability opinion of Dealers' expert economist, Dr. Michael Williams. *See Daubert* Opinion at 29-37. That opinion – including that the evidence supports a finding that CDK and The Reynolds and Reynolds Co. ("Reynolds") conspired to restrain competition – warrants the denial of CDK's summary judgment motion under both federal and state law.

The Court also ruled that Dr. Williams's damages model cannot be used to measure Dealers' damages under *federal* law, reasoning that the model measured data integration services ("DIS") damages and that Dealers, although direct purchasers of Dealer Management Systems ("DMS"), were indirect purchasers of DIS and thus could not recover such damages against CDK. *See id.* at 38-44 (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)). Importantly, however, the ruling does not affect Dealers' *other* federal remedies, including nominal damages and injunctive relief. Nor does it restrict Dealers' ability to recover damages, as calculated by Dr. Williams, under state law.[2]

---

[1] ECF No. 1322; *see also* ECF Nos. 1323; 1326.

[2] Dealers submit that, except as otherwise noted herein, the remainder of the *Daubert* Opinion (including the exclusion of certain of Allan Stejskal's opinions, *see Daubert* Opinion at 71-77) does not affect the pending summary judgment motions.

Finally, as shown below, recent caselaw applying *Shady Grove*[3] supports Dealers' state law claims, further warranting denial of CDK's motion.[4]

## ARGUMENT

### 1. Dr. Williams's Opinions Warrant Denial of CDK's Summary Judgment Motion

The Court's *Daubert* Opinion warrants denial of CDK's motion for claims under *both* federal and state law. In its *Daubert* Opinion, the Court granted CDK's motion to exclude Dr. Michael Williams's damages model for Dealers' direct purchaser claim under *federal* law; however, the Court *otherwise denied CDK's motion to exclude Dr. Williams's testimony –* including his opinions that "Defendants engaged in a number of actions contrary to their independent self-interests but-for the existence of a conspiracy," *Daubert* Opinion, ECF No. 1321 at 31.

According to CDK, the requirements for proving a conspiracy are identical under federal and state law. *See* CDK's Reply Memorandum in Support of its Motion for Summary Judgment, ECF No. 1123 at 10 ("CDK Reply") ("every one of the Dealers' state claims is *factually* inseparable from their alleged conspiracy . . . .") (emphasis in original). Because the Court denied CDK's motion to exclude Dr. Williams's liability opinion, his testimony will permit a jury to find that the Defendants illegally conspired, further warranting denial of CDK's motion with respect to Dealers' federal *and* state claims. *See Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, 2009 WL 5217344, at *6 (C.D. Ill. Dec. 30, 2009) (denying summary judgment motion to dismiss claims under Sherman Act and Illinois Antitrust Act, where plaintiff "presented evidence, *particularly*

---

[3] *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

[4] *See also* Dealers' Notice of Supplemental Authority, filed with the Court on February 10, 2021 (ECF No. 1244), supporting Dealers' arguments with respect to certain state law claims.

*Dr. Dranove's expert opinions*, which present material questions of fact" concerning whether contract "led to anticompetitive effects.") (emphasis added); *see also Daubert* Opinion, ECF No. 1321 at 34 ("Defendants' criticisms of Williams' report . . . are ones suited for cross-examination").

### 2. Dealers, as Direct Purchasers, are Entitled At Least to Nominal Damages Under Federal Law

Although the Court has excluded, under *Illinois Brick*,[5] Dr. Williams's direct damage measure based on increased DIS prices, Dealers are entitled, at a minimum, to nominal damages as a result of Defendants' violations of federal antitrust law.

Legal precedent holds that, even absent proof of the *amount* of damages, federal antitrust plaintiffs – like Dealers, who have sustained damages due to Defendants' conspiracy and the resulting decreased functionality of their DMSs – are entitled at least to nominal damages. *See Am. Can Co. v. Ladoga Canning Co.*, 44 F.2d 763, 769 (7th Cir. 1930) (antitrust plaintiff "entitled to recover at least nominal damages"); *see also Sciambra v. Graham News*, 892 F.2d 411, 415 (5th Cir. 1990) ("Even if there is insufficient proof of the amount of damages, however, proof of an antitrust violation and the fact of damage is a sufficient basis for an award of nominal damages.") (citations omitted); *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1377 (2d Cir. 1988) ("We also reject the [U.S. Football League's] claim that the award of nominal damages in antitrust cases is somehow 'suspect.' Other courts routinely approve the award of such damages"); *Rosebrough Monument Co. v. Memorial Park Cemetery Ass'n*, 666 F.2d 1130, 1147 (8th Cir. 1981) (remanding for award of nominal damages where "[plaintiff's] evidence was insufficient

---

[5] The Court "suppresse[d] no opinion . . . as to whether Dr. Williams can offer the same opinion in support of a claim for damages under the antitrust laws of one or more states . . . ." *Daubert* Opinion, ECF No. 1321 at 43.

only as to the measurement of damages."); *AngioDynamics, Inc. v. C.R. Bard, Inc.,* 537 F. Supp. 3d 273, 344 (N.D.N.Y. 2021) ("Where, as here, 'there is insufficient proof of the amount of damages . . . proof of an antitrust violation and the fact of damage is a sufficient basis for an award of nominal damages' under Section 4.") (citation omitted); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 2010 WL 5071694, at \*10 (N.D. Cal. Dec. 7, 2010) ("[Indirect Purchaser] and [Direct Purchaser] Plaintiffs … have sufficient evidence of injury, even if ultimately some may be unable to recover any more than nominal damages.").[6]

Here, Defendants' violations of federal antitrust law have damaged Dealers as direct purchasers of Defendants' DMSs including by reducing their DMSs' functionality. *See* Expert Report of Michael A. Williams, Ph.D. (August 26, 2019) ("Williams Report"), ECF No. 889-7 at ¶ 95; Expert Reply Report of Michael A. Williams, Ph.D. (December 19, 2019) ("Williams Reply"), ECF No. 889-8 at ¶ 106. CDK's expert economist, Dr. Michael Whinston, agrees that "[t]he ability to integrate, and the cost of integration, is *fundamental to the value of the DMS itself.*" *See* Expert Report of Michael D. Whinston, Ph.D., (August 26, 2019) ("Whinston Report"), ECF No. 977-155 at ¶ 330 (emphasis added) (quoting Dr. Williams's opening report).[7] And, despite the reduced functionality, Defendants did not lower their DMS prices – just the opposite, they increased them. Williams Reply, ECF No. 889-8 at ¶ 113 & Fig. 27. For present purposes, it

---

[6] Plaintiffs' Prayer for Relief includes a request for "[s]uch other and further relief as the Court deems just and proper." Dealership Plaintiffs' Consolidated Class Action Complaint ("Complaint"), ECF No. 198 at 167, Prayer for Relief ¶ (l). That language suffices here. *See Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 11 n.5 (N.D. Cal. 2007) (request for "'such other and further relief as the Court may deem appropriate.' … suffices here to provide for nominal damages, if proven at trial.") (citing *Basista v. Weir*, 340 F.2d 74, 87-88 (3d Cir. 1965)). Dealers referenced the Complaint at ECF No. 184 in prior summary judgment briefing (the redacted version). ECF No. 198 is the sealed version of the Complaint.

[7] This is also available at FEX 78, Exhibit to the Declaration of Daniel T. Fenske dated May 20, 2020 (ECF No. 975-78) submitted in the prior summary judgment briefing. Where relevant, terms have been made consistent with those in the Glossary of Terms and References in Dealers' summary judgment briefing (ECF Nos. 1158, 1160).

suffices that a jury could reasonably find that the reduced functionality damaged Dealer Plaintiffs as direct purchasers of DMSs.

In sum, even without Dr. Williams's damage model, Dealers are entitled at least to nominal damages under federal antitrust law. Accordingly, there is no basis to dismiss Dealers' damage claims under federal law.[8]

### 3. The *Daubert* Opinion Supports Plaintiffs' Liability Claims, and has No Bearing on Damages Claims Under State Law

In its recent ruling, the Court found that Dr. Williams's expert opinion on liability satisfied *Daubert* requirements. *Daubert* Opinion, ECF No. 1321 at 29-37 (denying CDK's motion to exclude Dr. Williams's liability opinion, including his analysis of "plus factors" supporting existence of the alleged conspiracy). Dr. Williams's liability opinion supports Dealers' claims under both federal and state law.

The Court also ruled that Dr. Williams's damages model cannot be used to calculate Dealers' *direct* claims under federal law (*id.* at 39 (citing *Illinois Brick*)); however, that ruling has no bearing on Dealers' claims under state law.

At the class certification stage – which currently is set to occur following the yet-to-be-scheduled *Authenticom* trial (*see* May 7, 2018 Case Management Order, ECF No. 166 at 3), Dealers will demonstrate, *inter alia*, that class certification should be granted for Dealers' state law claims. As those laws permit recoveries on behalf of both direct and indirect purchasers,

---

[8] Dealers also are entitled to injunctive relief against CDK for violations of federal law including, *inter alia*, enjoining it from maintaining the conspiracy. *See, e.g.*, Complaint, ECF No. 198 at Count II; Prayer for Relief ¶ (g). *See U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir. 2003) ("[T]he direct-purchaser doctrine does not foreclose equitable relief"); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 765 n.2 (D. Minn. 2020) (quoting *U.S. Gypsum*, 350 F.3d at 627); *see also In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 813 (N.D. Ill. 2017) ("Applying the *relevant AGC* factors – i.e., those factors that do not concern damages – it is clear that the Indirect Plaintiffs have standing to seek an *injunction* under the Sherman Act.") (emphasis in original).

Dealers will be entitled to recover damages in accordance with Dr. Williams's model. *See* Williams Report, ECF No. 889-7 at ¶ 171 ("The methodologies and models used in my analysis would permit me to [calculate damages for a subset of States]").

Moreover, Dealers will demonstrate that certification of a nationwide class is warranted under the Illinois Antitrust Act ("IAA"); accordingly, Dr. Williams's model showing damages of $339 million (before trebling) may be used to quantify damages under the IAA.[9] As Dealers will show, a nationwide class is appropriate for several reasons. For example, it is undisputed that CDK is headquartered in Illinois. *See* DJ SUF,[10] ECF No. 974 at ¶ 16. Additionally, CDK's form Master Service Agreement ("MSA") with Dealers (which has been used following CDK's spinoff from ADP) features an Illinois choice-of-law provision. *See* Opinion and Order on Authenticom's Motion to Dismiss Reynolds and CDK's Counterclaims, ECF No. 506 at 13 n.4 ("[W]hether Authenticom is an agent of the dealers under the MSA . . . is governed by Illinois law."); PSUMF,[11] ECF No. 968-9, Ex. RRR at CHERRYHILL_0001086, ¶ 18.I ("This Agreement shall be governed in all respects by the laws of the State of Illinois, without giving effect to principles of conflicts of law."). It also designates this District or Cook County as "the exclusive forum for any action against CDK," *see id*. at CHERRYHILL_0001086-07, ¶ 18.I, and requires that all notices by the dealer shall be sent to CDK's address in Hoffman Estates, Illinois or such other place thereafter selected by CDK. *See id*. at CHERRY_HILL0001072, 1086, ¶ 18.E.

---

[9] Although the Complaint (ECF No. 198) does not specify a nationwide class under the IAA, Dealers may seek certification of that class in their class certification motion. *See Wood v. Capital Vision Servs., LLC*, 2021 WL 5280938, at *5 (N.D. Ill. Nov. 12, 2021) ("Plaintiff may amend his class definition . . . when he moves for class certification").

[10] DJ SUF refers to Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Joint Statement of Common Undisputed Material Facts in Support of Their Motions For Summary Judgment.

[11] PSUMF refers to Dealership Counter-Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment on CDK Global, LLC's Counterclaims.

These factors support certification of a nationwide class under Illinois law, and the use of Dr. Williams's model to establish damages of $339 million (before trebling). *See In re TikTok, Inc., Consumer Privacy Litig.*, 2021 WL 4478403, at *3 & n.2, 6-8 (N.D. Ill. Sept. 30, 2021) (in action against California-based company, preliminarily approving nationwide settlement alleging violations of, *inter alia*, California's unfair competition law, and explaining that the Court "will likely be able to certify the proposed Nationwide Class and Illinois Subclass"); *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 80-83 (1987) (certifying nationwide class under Illinois consumer fraud act); *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822 (5th Dist. 2007) (affirming certification of 48-state class to pursue claims under Kansas consumer protection law where, *inter alia*, defendant was based in Kansas and contract contained Kansas choice-of-law provision).

For present purposes, it suffices that Dr. Williams's model calculates nationwide damages and, if necessary, can be used to calculate damages on an individual state or plaintiff basis. Accordingly, the Court's exclusion of the model for purposes of Dealers' *federal* claims has no bearing on their state law claims.

### 4. Any Potential "Duplication" Issues Do Not Warrant Summary Dismissal of the State Law Claims

Dealers anticipate that CDK will argue that damages awarded to Dealers and Class members would impermissibly "duplicate" damages incurred by vendors. However, at the summary judgment stage, any concern about "duplicative" damages is unfounded.[12]

---

[12] Dealers do not concede that their damages "duplicate" those sought by vendors. From a practical perspective, however, and as further developed below, any risk of "duplication" is speculative at best. *See* J. Thomas Prud'homme, Jr. & Ellen S. Cooper, *One More Challenge for the AMC: Repairing the Legacy of Illinois Brick*, 40 U.S.F. L. REV. 675, 684 (Spring 2006) ("To the Authors' knowledge, there has not been a single documented instance where a defendant has been subject to suit by direct and indirect purchasers and been required to pay more than treble damages.").

7

Tellingly, CDK's summary judgment motion fails to argue that Dealers' state law claims should be dismissed due to speculation concerning any "duplication" of the vendors' damages. Nor could it. As this Court explained, "there are many state law antitrust claims still pending, [and] *Illinois Brick* does not apply in many states . . . ." *Daubert* Opinion, ECF No. 1321 at 47; *see also California v. ARC America, Corp.*, 490 U.S. 93, 105 (1989) (*Illinois Brick* construed federal law, and did not "identify a federal policy against States imposing liability in addition to that imposed by federal law."); *Ill. ex rel. Burris v. Panhandle E Pipeline Co.*, 935 F.2d 1469, 1480 (7th Cir. 1991) ("Illinois law does permit indirect purchaser suits while federal law does not, but that difference reflects *different judgments* about the feasibility of trying such claims and the potential danger of duplicative recoveries . . . .") (emphasis added).

Any issue concerning "duplicative" recoveries can be addressed, if necessary, following trial, and certainly provides no basis to dismiss Dealers' claims at the summary judgment stage. The Arizona Supreme Court's ruling in *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003) is instructive. Citing the IAA (and other state statutes), the court explained that the "risk of multiple liability"

> is not . . . a problem that our trial courts are incompetent to handle. Indeed, most of the *Illinois Brick* repealer statutes leave the solution to the double-recovery problem to the courts. *E.g.*, 740 Ill. Comp. Stat. 10/7(2) ("[I]n any case in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability for the same injury including transfer and consolidation of all actions.")

*Id.* at 108. *See also* Memorandum, Opinion and Order on Defendants' Motion to Dismiss ("MTD Order"), ECF No. 507 at 46 (addressing *AGC*'s "risk of duplicative recovery" factor: "[T]he Court finds it likely that damages can reasonably be apportioned among [dealer] Plaintiffs and others more directly harmed."); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 520 (Tenn.

2005) ("many *Illinois Brick Co.* repealer statutes leave the solution of the risk of multiple liability to the trial courts."); Gary A. Winters, *Trial Issues in Consolidated Direct and Indirect Purchaser Cases: Lessons from the SRAM Litigation*, MAYER BROWN, at 9 (Spring 2011), https://www.mayerbrown.com/public_docs/trialissues.pdf ("Few state statutes expressly set forth procedures for apportionment; instead, the matter typically has been placed within the discretion of state courts.").

Moreover, any supposed "duplication" on account of the Dealers' damages could occur only if, among other things, the vendors obtained full recoveries for Defendants' DIS overcharges – and did so *before* the Dealers' trial. As the Court knows, CDK previously settled the antitrust claims asserted by the largest vendor: Cox Automotive, Inc., including its subsidiaries ("Cox"). *See* Stipulation of Dismissal of Cox Complaint and CDK Counterclaim Against Cox Plaintiffs, ECF No. 723; DJ SUF, ECF No. 974 at ¶ 178 (describing Cox as "the largest provider of third-party software applications in the United States"). Promptly following announcement of the settlement, the Dealers moved to compel disclosure of the settlement agreement (*see* Motion to Compel Settlement Agreement, ECF No. 736), but CDK opposed the motion (CDK Response, ECF No. 744), and the motion was denied (Order, ECF No. 748).

According to CDK, Cox's damages represent the lion's share of damages sustained by *all* vendors, *see* Memorandum in Support of CDK's Motion for Summary Judgment against Loop, LLC d/b/a AutoLoop, ECF No. 969 at 12 ("the Cox Vendors' alleged damages total just over $134 million, or nearly *half* of the claimed [vendor] class-wide damages.") (emphasis in original), and that, because of the settlement, the vendors' damage estimate is "drastically overstate[d]." *Id*. at 2. To allay CDK's concern, the named vendor plaintiff (Autoloop) has represented that "as putative

class representative [it] will not seek damages based on harm suffered by Cox Automotive."
Autoloop's Opposition to CDK's Motion for Summary Judgment, ECF No. 1075 at 15.

Any hypothetical "duplication" here based on DIS overcharges by CDK to Cox would
depend, at a minimum, on an analysis of the amount of CDK's payment to Cox (if any) pursuant
to the settlement. But CDK has kept those terms secret. Thus, it should be barred from claiming
duplication on account of any recoveries by Cox under the settlement. *See Pac. Cycle, Inc. v.
PowerGroup Int'l, LLC*, 969 F. Supp. 2d 1098, 1117 (W.D. Wis. 2013) (cited in CDK Reply, ECF
No. 1123 at 7) (awarding summary judgment against party seeking damages offset, where it
provided "no particularized evidence" of any costs and expenses to support the offset).[13]

Finally, any potential "duplication" here assumes, *inter alia*, that the vendors (i) try their
case before the Dealers' trial; (ii) win their trial, including damages in the amount estimated by
their expert's damages model; (iii) sustain the win on appeal; *and* (iv) collect damages in an
amount equal to Dealers' damages. This outcome is obviously uncertain. CDK's own submissions
underscore the point.

For example, CDK has asserted affirmative defenses to the vendors' claims that, if proved,
could preclude vendors' damages altogether, thus eliminating or reducing any supposed
"duplication" of damages. CDK claims that "[s]ome or all of [the vendor] Plaintiff's and the
putative classes' claims are subject to valid and enforceable contractual limitations on liability and
damages." CDK's Answer and Affirmative and Additional Defenses and Counterclaims (*Autoloop*
action), (Fourth Defense), ECF No. 514. CDK also claims that the vendors failed to mitigate

---

[13] To take one example, assume that Cox incurred DIS overcharge damages of $134 million, but received
$5 million under the CDK settlement. In that case, any "duplication" on account of the Dealers' damages
would represent, at most, $5 million – i.e., *less than 1.5%* of the Dealers' damages ($339 million), before
trebling.

damages. *Id*. (Eleventh Defense). A CDK win on *either* defense would eliminate or sharply reduce any hypothetical "duplication" of damages.

Accordingly, any supposed duplication of damages sought in the vendor and Dealer actions does not warrant summary dismissal of Dealers' state law claims.

### 5.      Dealers Were Damaged

Dr. Williams's model calculates damages of over $339 million in increased DIS fees passed onto the Dealers. Because the Dealer Plaintiffs paid integration fees,[14] they sustained actual damages. At this juncture, it does not matter whether their damages are $10, $100, or some other amount. If necessary, additional information can be addressed at the class certification stage, at trial or in post-trial procedures. *See Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) ("[A]t the class certification stage, plaintiffs are not obliged to drill down and estimate each individual class member's damages. The determination of the aggregate classwide damages is something that can be handled most efficiently as a class action, and the allocation of that total sum among the class members can be managed individually, should the case ever reach that point."); *Arandell Corp. v. Xcel Energy, Inc.*, 2021 WL 5083974, at *2 (W.D. Wis. Nov. 2, 2021) (granting and denying in part antitrust defendants' motion to compel Rule 26(a) supplemental disclosures, and explaining that further issues concerning named plaintiff's damages can be addressed following ruling on class certification). Summary dismissal based upon any supposed lack of further damage details would be unduly prejudicial and unwarranted. *See Malik v. Falcon Holdings, LLC*, 675 F.3d 646, 649-50 (7th Cir. 2012).

---

[14] *See* Dealership Class Plaintiffs' Amended Objections and Responses to CDK's First Interrogatories, ECF No. 1083-41, Ex. 188, at Responses 2 and 3, Exhibits A-Y (plaintiffs' identification of their DMS providers and apps purchased). *See also* ECF Nos. 1089-72, 1089-177, 1089-191, and 1089-192 (Dealers' invoices showing paid integration fees to vendors).

*Pac. Cycle, Inc.*, 969 F. Supp. 2d 1098 (CDK Reply, ECF No. 1123 at 7), does not suggest a contrary result. That case was *not* a class action; thus, there was no class certification motion practice during which individual damages (if even then necessary) could be addressed. Additionally, the plaintiff obtained summary judgment for its contract claim, including a quantification of the *amount* of damages, but the defendant, seeking an "offset," provided "no particularized evidence" of any costs and expenses to support the offset. *Id.* at 1117. Here, by contrast, Dealers have presented a reliable model prepared by an expert economist demonstrating that they and other Class members collectively sustained damages measuring over $339 million, reflecting increased DIS fees that were paid by the Dealers. Nothing more is required at this stage.

### 6. Recent Authority Supports the Inapplicability of State Class Action Bars

Dealers' Memorandum in Opposition to CDK's Motion for Summary Judgment, ECF No. 1158 at 43-46 ("*Dealers'* Opp.") established that the Supreme Court's decision in *Shady Grove*[15] renders class action bars under Illinois, Colorado, and South Carolina statutes inapplicable in federal court. Recent decisions confirm that Fed. R. Civ. P. 23 ("Rule 23"), not state law, governs the issue. *See Miami Prods. & Chem. Co. v. Olin Corp*., 2021 WL 2588090, at *12 (W.D.N.Y. June 24, 2021) ("the [Illinois Antitrust Act's] indirect class action bar is procedural"; it "does not limit the substantive rights of an injured party in an individual action and were the IAA to prohibit class actions altogether, the statute would read no differently than the New York class actions bar at issue in *Shady Grove*.") (citation and internal quotation marks omitted); *Lessin v. Ford Motor Co.*, 2021 WL 3810584, at *13-15 (S.D. Cal. Aug. 25, 2021) (ruling that Colorado Consumer Protection Act's class action bar is inapplicable in federal court, explaining that "state law class action bars are procedural"); *Sandee's Catering v. Agric. Stats, Inc.*, 2020 WL 6273477, at *11

---

[15] *See supra* n.3.

(N.D. Ill. Oct. 26, 2020) (South Carolina Unfair Trade Practices Act's class action bar) (citing *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d  772, 818 (N.D. Ill. 2017).[16] Recent Circuit Court decisions have applied *Shady Grove* to other state law provisions as well. *Albright v. Christensen*, – F.4th –, 2022 WL 278385, at *5 (6th Cir. July 21, 2022) (Michigan's affidavit-of-merit and pre-suit notification requirements for medical malpractice claims inapplicable in federal court); *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (West Virginia's pre-suit notification and expert-certification requirements inapplicable in federal court).

CDK argues that Dealers have failed to respond to its argument that the concurring opinion controls. CDK Reply, ECF No. 1123 at 15 n.7. This is not so. *See Dealers'* Opp., ECF No. 1158 at 44. CDK's analysis fails under *both* the plurality and concurring opinions. *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336-37 (11th Cir. 2015) (Alabama Deceptive Trade Practice Act's private class action bar inapplicable under *Shady Grove*, regardless of whether plurality or concurring opinion controls); MTD Order, ECF No. 507 at 59 n.23 (denying CDK's motion to dismiss claims based on states law class action bars: "Because the Court would reach the same conclusion under the standards set forth in the plurality and in the concurrence, the Court need not address which standard applies.").

CDK's reliance on the *Erie* doctrine (CDK Reply, ECF No. 1123 at 16-17 n.8) is misplaced. As the Fourth Circuit recently held in a case concerning West Virginia's Medical Professional Liability Act ("MPLA"), the Federal Rules supplant the MPLA's requirement that a plaintiff serve a certificate of merit prior to commencing medical malpractice suit, explaining: "if

---

[16] Dealers previously submitted the *Sandee's* decision (ECF No. 1244) as supplemental authority for a separate point. The submission also included the *In re Pork Antitrust Litig.* decision, now reported at 495 F. Supp. 3d 753 (D. Minn. 2020), which held that class action bars in the IAA and South Carolina Unfair Trade Practices Act do not apply in federal court. *See* 495 F. Supp. 3d at 778 (IAA's class action bar is "purely . . . procedural"); *id.* at 790 ("Rule 23 supplants the state procedural rules").

there is a valid Federal Rule that answers the 'same question' as the [MPLA], then our work is done, and we apply the Federal Rules without wading into the 'murky waters' of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its distinct choice-of-law rules." *Pledger*, 5 F.4th at 519 (citing *Shady Grove*, 559 U.S. at 398-99); *see id*. at 521 ("if a valid Federal Rule answers the question at issue, then the 'relatively unguided' *Erie* analysis is beside the point") (emphasis in original). *See also Albright*, 2022 WL 278385, at *6 ("We invoke *Erie* only if no on-point, valid Federal Rule of Civil or Appellate Procedure exists.") (citing *Shady Grove*, 559 U.S. at 398).[17]

Finally, determination whether any class action bars apply is appropriately decided at the class certification stage, especially since Dealers intend to seek certification of a nationwide class under the IAA. *See supra* 6-7. Certification of such a class could render unnecessary a ruling under *other* states' statutes. CDK's expressed concern that certification of a nationwide class would create settlement pressure (CDK Reply, ECF No. 1123 at 18) is of no moment. Dealers have sought certification of a nationwide class all along (*see* Complaint, ECF No. 198 at ¶ 17); certification of the class under state law does not change the calculus. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (billions of dollars of potential liability did not warrant district court's denial of class certification, explaining: "[t]he reason that damages can be substantial . . . does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person" for violations of Fair Credit Reporting Act); *Emerson v. Aegis Lending Corp.*, 2006 WL 8443514, at *7 (E.D. Wis. Aug. 17, 2006) (granting class certification, even though defendant would "feel pressure to settle") (citing *Murray*). Whether the Court should

---

[17] *In re Humira (Adalimumab) Antitrust. Litig*., 465 F. Supp.3d 811 (N.D. Ill. 2020) (CDK Reply, ECF No. 1123 at 16), does not suggest a contrary result. *Humira* expressed concern that the plaintiffs' claim was brought under the Illinois Consumer Fraud and Deceptive Business Practices Act, instead of the applicable antitrust law. 465 F. Supp. 3d at 851. The decision did not cite *Shady Grove*.

certify a nationwide class under Illinois law, or separate classes under individual state laws, is properly addressed at the class certification stage.

### 7.  CDK's Arguments Regarding State Notice Provisions are Meritless

Summary judgment should be denied with respect to CDK's arguments under the notice provisions of Arizona (Ariz. Rev. Stat. § 44-1415(A));[18] Hawaii (Haw. Rev. Stat. § 480-13.3); New Jersey (N.J. Stat. § 56:8-20); Utah (Utah Code § 76-10-3109(9)); and West Virginia (W. Va. Code § 46A-6-106(c)) for the reasons set forth below and in the Dealerships' opposition brief. *See Dealers' Opp.* ECF No. 1158 at 46-50.

The Fourth and Sixth Circuits' recent decisions in *Pledger* and *Albright* further support denial of summary judgment. *See Pledger*, 5 F.4th at 518, 520-21 (West Virginia's 30-day pre-suit notice requirement for malpractice claims inapplicable under *Shady Grove*); *Albright*, 2022 WL 278385, at *4 (Michigan's 182-day pre-suit notice requirement inapplicable under *Shady Grove*) (citing *Pledger*).

### A.  The State Notice Provisions are Inapplicable in Federal Court

Under *Shady Grove*, the state notice provisions are inapplicable in federal court as they conflict with the Federal Rules of Civil Procedure. *See Shady Grove*, 559 U.S. at 410 (Scalia, J.) (plurality opinion). The Federal Rules establish pleading requirements for federal lawsuits, and the requirements for class actions; none of which mandate a pre-suit notice. As such, the states' pre-suit notice provisions conflict with the Federal Rules, and thus are inapplicable here under Justice Scalia's plurality opinion. *See* MTD Order, ECF No. 507 at 59 ("Although the Seventh Circuit has

---

[18] CDK previously argued for dismissal of the Dealers' claim under Arizona law for failure to satisfy a state notice provision (Ariz. Rev. Stat. § 44-1415(A)), but now concedes that the notice was provided, *see* ECF No. 1123 at 19 ("CDK agrees that the Dealers' recently disclosed June 2018 letter satisfies Arizona's notice requirement."), thus mooting the argument.

not squarely addressed which opinion controls, it otherwise has indicated that Justice Scalia's plurality sets forth the controlling legal standard."). Under Justice Stevens' concurring opinion, too, the state provisions do not apply, as they are not "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *See* 559 U.S. at 423.

CDK's argument that Rule 23 does not "address notice," (CDK Reply, ECF No. 1123 at 18) misses the mark. As the Fourth Circuit recently explained, "the Federal Rules may 'answer' a question without speaking to it expressly; if the scope of a Rule (or Rules) is 'sufficiently broad' either to 'cause a direct collision' with [the state law] or 'implicitly, to control the issue,' then the Federal Rules govern notwithstanding state law." *Pledger*, 5 F.4th at 519 (citations omitted). Rule 23 establishes the requirements – including class notice requirements – for class actions in federal court; *see* Fed. R. Civ. P. 23(c)(2); there is no required notice to State AGs. *See also Shady Grove*, 559 U.S. at 398 (Rule 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action."). Nor do the other Federal Rules require pre-suit notice to AGs or anyone else. *See Pledger*, 5 F.4th at 520 ("Rule 12 is . . . 'sufficiently broad' to control a question that the [state law], too, seeks to answer: what defects in a complaint mandate dismissal."); *Albright*, 2022 WL 278385, at *5 (Michigan law's pre-suit notice requirement "conflict[s] with [Federal] Rule 3"); *Doe #4 v. Raleigh Gen'l Hosp., LLC,* 2021 WL 4496230, at *3, 4 (S.D. W. Va. Sept. 30, 2021) (citing *Pledger*).[19]

---

[19] Applying *Shady Grove*, the court in *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145 (E.D.N.Y. 2018), found that "Rule 23 and state notice provisions conflict," *see* MTD Order, ECF No. 507 at 62 (construing *Restasis*); and that, accordingly, Hawaii's pre-suit notice provision was inapplicable in federal court. *See* 355 F. Supp. 3d at 156. CDK argues that *Restasis* is unpersuasive, citing the Fourth Circuit's unpublished decision in *Stanley v. Huntington Nat. Bank*, 492 Fed.Appx. 456 (2012) (per curiam). *See* CDK Memorandum in Support of Summary Judgment (Dealership Action) ("CDK Opening SJ Brief"), ECF No. 973 at 34. But *Stanley* did not address *Shady Grove*. *Pledger*, not *Stanley*, articulates the Fourth Circuit's most recent analysis under *Shady Grove*.

## B.  In any Event, Dealers Satisfied the Notice Provisions and can Provide Additional Notice

Even if the Court finds the notice provisions applicable, CDK's motion for summary judgment should be denied because CDK obtained notice when this litigation began, and state AGs received notice in accordance with federal law (the Class Action Fairness Act ("CAFA")) in October 2018 – i.e., only a few months after the consolidated complaint was filed and *before* the Motion to Dismiss was decided.

CDK cites no authority that the AGs' receipt of actual notice under CAFA was somehow insufficient to satisfy state law[20] – even assuming that notice under state law was required.[21] State AGs could have intervened or objected to the Reynolds settlement – they did neither. Thus, any concern of "belated" notice is misplaced. *See Dealers'* Opp., ECF No. 1158 at 47 (citing cases).[22]

Finally, CDK is wrong to suggest that Dealers propose to give notice "at or after summary judgment, years after the case began." CDK Reply, ECF No. 1123 at 19. Notice was given to the AGs years ago – and none complained of any belated notice or took any steps to participate in this litigation.[23] And, when CDK received notice of this litigation (at the time of filing), it did nothing to cure its violations. Nonetheless, if any claims are dismissed for lack of timely notice, the

---

[20] Notice to the Utah AG cannot be deemed untimely, as the Utah provisions specifies no particular time for notice. *See* Utah Code § 76-10-3109(9).

[21] CDK's criticism that Reynolds (instead of Dealers) sent notice to the AGs (CDK Reply, ECF No. 1123 at 19) is misplaced. It should not matter who stamps the envelope or takes it to the post office.

[22] The express language of the Utah and New Jersey provisions underscores the point. *See* Utah Code § 76-10-3109(9) (notice provision, followed by the statement: "The attorney general may, in his or her discretion, intervene or file amicus briefs in the case, and may be heard on the question of the fairness and appropriateness of any proposed settlement agreement."); N.J. Stat. § 56:8-20 (notice provision, followed by the statement: "Upon application to the court wherein the matter is pending, the Attorney General shall be permitted to intervene or to appear in any status appropriate to the matter.").

[23] Notably, CDK cannot show that *it* has been affected by the AGs' supposed lack of timely notice.

dismissal should be without prejudice.[24] In such a case, Dealers could file new complaints and send out the notices that CDK contends are necessary.[25]

## CONCLUSION

The Court should deny CDK's motion for summary judgment.

DATED: February 25, 2022                    Respectfully submitted,

*/s/ Peggy J. Wedgworth*

Peggy J. Wedgworth (*pro hac vice*)
Robert A. Wallner (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
John D. Hughes (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11350
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
rwallner@milberg.com
emckenna@milberg.com
jhughes@milberg.com

***MDL Co-Lead Counsel***

---

[24] CDK's own cases establish that any dismissal should be "without prejudice." *See In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416 (D.N.J. 2018) (cited in CDK Opening SJ Brief, ECF No. 973 at 33); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *15 (D. Mass. July 20, 2016) (same); *see generally Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*all* dismissals" for pre-suit failure to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e(a), "should be without prejudice"; explaining that "dismissal with prejudice blocks what may be an appropriate suit") (citations omitted, emphasis in original).

[25] To conserve the Court's and the parties' resources, the far better course is to deny CDK's motion, especially given that the AGs (and CDK) received notice years ago.

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
**CLFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com

*MDL Liaison Counsel*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Peggy J. Wedgworth, an attorney, hereby certify that on February 25, 2022, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' SUPPLEMENTAL SUMMARY JUDGMENT BRIEF** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth