**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.); | Magistrate Judge Jeffrey T. Gilbert |
| *MVSC v. CDK Global, LLC*, No. 1:18-cv-865 (N.D. Ill.) | |

**THE REYNOLDS & REYNOLDS COMPANY'S
RESPONSE TO AUTHENTICOM AND MVSC'S FEBRUARY 25, 2022
SUPPLEMENTAL BRIEF (Dkt. 1329)**

## TABLE OF CONTENTS

Introduction .................................................................................................................. 1

Argument and Authorities ........................................................................................... 2

I.      Authenticom and MVSC Cannot Avoid the *Matsushita* Standard ........................... 2

II.     Mark Israel's Survival of *Daubert* Does Not Mean Plaintiffs Satisfy the Higher Bar of Summary Judgment ................................................................................ 3

III.    Reynolds's Motion for Partial Summary Judgment on its Counterclaims against Authenticom Should Be Granted ................................................................ 4

IV.    Authenticom's Non-Conspiracy Claims Still Fail ........................................................ 7

V.     Reynolds Remains Entitled to Summary Judgment on Authenticom's Damages and Antitrust Injury .................................................................................. 7

VI.    The Court's Daubert Ruling Does Not Help MVSC Survive Summary Judgment ........................................................................................................................ 8

VII.   Conclusion and Prayer ................................................................................................. 11

i

The Reynolds and Reynolds Company ("Reynolds") submits this response to the February 25, 2022 supplemental brief submitted by plaintiffs Authenticom and MVSC (as part of the Individual and Vendor Class Plaintiffs' Supplemental Summary Judgment Brief, Dkt. 1329).

## Introduction

Authenticom and MVSC ignore the Court's summary judgment mandate under *Matsushita* and hitch their wagon to an improper view of "direct evidence." The *Matsushita* standard is the correct standard as a matter of law. Authenticom's position that legally insignificant alleged "direct evidence" supplants the *Matsushita* standard is wrong. Authenticom and MVSC have no direct evidence of an *unlawful conspiracy*—and especially not of the alleged 2013 conspiracy that they pivoted to after the close of discovery. Under the mandatory framework of *Matsushita*, Reynolds is entitled to summary judgment.

In addition, Authenticom's supplemental brief does nothing to defeat Reynolds's entitlement to a partial summary judgment on liability for Authenticom's violations of the Digital Millennium Copyright Act (DMCA) and the Wisconsin Computer Crimes Act. The Court's *Daubert* order excluding significant portions of Nancy Miracle's proposed opinions removes that purported basis on which Authenticom sought to resist summary judgment on liability for those counterclaims. Authenticom is liable for its systematic unlawful access to the Reynolds systems and circumvention of the technological controls that protect Reynolds's intellectual property.

Finally, Reynolds's motion for summary judgment in MVSC is unaffected by any of MVSC's arguments. Indeed, although MVSC's damages expert survived a "close call" at the *Daubert* stage, at the summary judgment stage, Reynolds is entitled to summary judgment on MVSC's claims based on a straightforward analysis of law and undisputed facts that do not depend on expert analysis.

**Argument and Authorities**

I.  **Authenticom and MVSC Cannot Avoid the *Matsushita* Standard**

The summary judgment standard under *Matsushita* makes clear that a Section 1 plaintiff's burden is to "**exclude** the possibility" that Reynolds acted independently. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (emphasis added). Reynolds had every reason to independently exclude Authenticom and other hostile data extractors and all forms of unlawful activity from its systems when it made the decision to do so *years* before CDK made its own independent choice to do the same. There is a mountain of evidence in the record of Reynolds's and CDK's respective, independent reasons to reach their independent conclusions in a wholly disjunctive, not parallel, sequence. *E.g.,* Dkt. 974 at §§ II-VI. Consequently, Authenticom has not and cannot surmount its burden to show that its conclusion of conspiracy is more reasonable than a conclusion of independent action. *See Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 707 (7th Cir. 2011) (summary judgment warranted where "the inference of conspiracy is the less reasonable of the two"); *Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 935 (7th Cir. 2018) (evidence supporting "competing inferences" does not "tend to exclude the possibility of independent action"); *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1032 (8th Cir. 2000) (en banc) ("[*Matsushita*] requires that if it is as reasonable to infer from the evidence a price-fixing conspiracy as it is to infer permissible activity, the plaintiff's claim, without more, fails on summary judgment.").

Authenticom has no answer to this and therefore seeks to duck the *Matsushita* standard by falling back on "direct evidence." But this is not a direct evidence case. Direct evidence requires an unambiguous acknowledgement of guilt, *see In re High Fructose Corn Syrup Litig.*, 295 F.3d 651, 662 (7th Cir. 2002), and Authenticom has no such thing. Even crediting the contradictory,

self-serving statements from Authenticom CEO Steve Cottrell, that evidence has extensive gaps, and this Court is tasked with determining the scope of *permissible* inferences that can be drawn from that evidence. *Matsushita*, 475 U.S. at 588 (antitrust law "limits the range of permissible inferences from ambiguous evidence in a § 1 case"). The most natural and obvious reading of even Cottrell's version of his conversations with Schaefer and McCray is that each of them was independently informing him about the lawful, vertical, written February 2015 Agreements.[1] Indeed, according to Cottrell, these conversations consisted of little more than the "standard drumbeat" from Schaefer and an effort by McCray to convince Cottrell to sell his company to CDK—*i.e.* "take our deal"—not some secret, joint conspiracy to prohibit third-party integration beginning in September 2013 (or 2015). Dkt. 966 at § II(3) (citing Dkt. 974 ¶¶ 184-191). Authenticom's *ex post facto* attempt to spin those separate, almost a year apart, "standard drumbeat" conversations into an unambiguous confession of unlawful conspiracy should be rejected. Rather, his evidence should be viewed with the record as a whole as part of the standard *Matsushita* analysis to determine whether the entire record tends to rule out the possibility of independent conduct. *See Omnicare*, 629 F.3d at 707; *High Fructose*, 295 F.3d at 661. Authenticom and MVSC's failure to address the *Matsushita* standard is telling.

II.     **Mark Israel's Survival of *Daubert* Does Not Mean Plaintiffs Satisfy the Higher Bar of Summary Judgment**

As Reynolds detailed in its opening brief (Dkt. 1328 at § III), it is common in antitrust cases for a court to uphold the admissibility of a plaintiff's expert at the *Daubert* stage only to subsequently grant summary judgment against the very claims that expert was supporting. Authenticom pretends otherwise, acting as if the denial of *Daubert* renders the denial of summary

---

[1] *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017) ("Notably, nothing in any of the three agreements required either CDK or Reynolds to block third-party access to its own data management system.").

3

judgment a *fait accompli*. *See* Dkt. 1329 at 1-2, 5-7. That is incorrect, as both the Supreme Court and Seventh Circuit demonstrate. Cases like *Omnicare*, *Brooke Group*, and of course *Matsushita* itself all hold that admissible expert opinions were insufficient to defeat a motion for summary judgment in light of other record evidence and the more-exacting summary judgment inquiry. *Matsushita*, 475 U.S. 574, 594 n.19; *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242-43 (1993); *Omnicare*, 629 F.3d at 715.

Authenticom's cited cases (Dkt. 1329 at 6) are not to the contrary. Those cases simply affirm that where there is a specific economic fact for which the plaintiff has submitted reliable expert testimony, the court will weigh that fact in accordance with the normal summary judgment standards. In each of those cases, however, the courts did not simply accept the expert's testimony, hold there was a fact dispute, and go no further. Instead, the courts each undertook their own detailed analyses of the evidence, the economic incentives, and the record as a whole to determine what inferences the court found to be reasonable and permissible. *High Fructose*, 295 F.3d at 659-65; *Spirit Airlines*, *Inc. v. Nw. Airlines*, 431 F.3d 917, 932-52 (6th Cir. 2005); *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 2019 WL 1515231, at *12-17 (E.D.N.Y. Feb. 21, 2019). The courts then measured those inferences against the requirements for the substantive claims at issue. This Court's *Daubert* order correctly noted the expanded scope of the summary judgment inquiry to come, Dkt. 1321 at 15-16, and the Court should reject Authenticom's efforts to downgrade the Court's gatekeeping function under *Matsushita* to a repeat of *Daubert*'s more permissive standard.

### III. Reynolds's Motion for Partial Summary Judgment on its Counterclaims against Authenticom Should Be Granted

Reynolds's Motion for Partial Summary Judgment on its Counterclaims (Dkt. 777) is narrow and limited. And nothing in Authenticom's brief or the Court's *Daubert* decision calls into question that Authenticom has violated the DMCA and the Wisconsin Computer Crimes Act as a

4

matter of law. As noted in prior briefing (Dkt. 1328 at 2-4), under the Court's *Daubert* opinion, and the DMCA as properly construed, Authenticom's proposed "DMCA expert" Nancy Miracle has nothing to add. Authenticom attempts to rehabilitate its expert by regurgitating several of its summary judgment arguments (Dkt. 1329 at 17-18), none of which survive scrutiny. Reynolds responds briefly to point the Court to the relevant summary judgment briefing and correct certain misstatements by Authenticom.

First, the Court's rulings with respect to Miracle's opinions support Reynolds's motion for partial summary judgment, notwithstanding Authenticom's arguments (at 17) to the contrary. Miracle's copyrightability testimony measures Reynolds's graphical displays against Miracle's subjective understanding of "creativity," not the much lower threshold dictated by copyright law. *See* Dkt. 1061 at 34-35; Dkt. 1127 § IV.C (incorporating same by reference). The Court should accordingly disregard it, as prescribed by the Court's Order. Dkt. 1321 at 101 ("[T]he Court will disregard [Miracle's] testimony to the extent 'it is unreliable' or otherwise fails to satisfy *Daubert*."). Her opinion also ignores many of the Reynolds works at issue, any one of which is sufficient to uphold DMCA liability and grant the partial summary judgment. *See* Dkt. 785 at 7-8; Dkt. 1061 §§ II.C.1, II.C.2.

Miracle's "factual opinion" that Reynolds's code is accessed before the control measures take effect is (1) irrelevant as a matter of law and (2) conclusively rebutted by the undisputed summary judgment evidence, including the recitations in Miracle's own report. Dkt. 1061 § II.C.2. And for five independently sufficient reasons (recounted in detail in Section II.C.3 of Reynolds's MSJ opposition, *id.*), Miracle's copyrightability opinions do not advance Authenticom's position. All of those reasons apply with equal or greater force to Authenticom's own motion for summary judgment on the counterclaims, requiring denial of that motion. The final Miracle opinion that

5

Authenticom points to (Dkt. 1329, at 17), is ancillary to her excluded "expert interpretation" of the DMCA's text as requiring authorization-confirmation. Authenticom and Miracle are wrong on the law, Dkt. 1061 at 22-24, and in any instance, Reynolds's measures satisfy Authenticom's newly minted standards, *id.* at 24-25.

Authenticom's last-ditch effort (at 18) to convince the Court that its arguments survive without Miracle's "expert" redefinition of the statutory text fares no better. There can be no dispute that Reynolds's access-control measures protect a broad range of copyrightable aspects of the DMS—***including***, but not limited to, the executable code. *See* Dkt. 1061 §§ II.C.1 & C.2. While irrelevant for the reason just stated, Authenticom's argument from *MDY*'s holding as to visual elements generated by computer code fails for reasons already briefed: indeed, the reasoning of *MDY* itself compels the opposite result based on the facts and record here. *See id.* at 31-32; *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952-54 (9th Cir. 2010). Authenticom's final argument flatly mischaracterizes Reynolds's position: as already explained, Reynolds's access-control measures satisfy Authenticom's gerrymandered authorization-confirmation standard, as Authenticom's own Chief Operating Officer admitted. *Id.* at 24-25.

The Court correctly excluded Miracle's opinion purporting to interpret the DMCA. With Miracle properly removed from the statutory-interpretation debate, all that remains is a legal dispute about whether Authenticom's undisputed actions violate the relevant statutes. That interpretation should be resolved in Reynolds's favor. *See* Dkt. 785 at 4-19; Dkt. 1061 at 20-40; Dkt. 1127 at 7-8. Authenticom should be held liable for its unlawful circumvention and access to Reynolds's proprietary computer systems.

6

## IV. Authenticom's Non-Conspiracy Claims Still Fail

Authenticom briefly attempts to save itself from its failure to demonstrate Reynolds has any durable market power. *See* Dkt. 1329 at 7. Although Authenticom claims to rely on Dr. Israel and his "market effects" theory, that opinion does not change the uncontroverted facts that (i) the alleged price increase decisions by Reynolds did not occur in the alleged conspiracy time frame and (ii) the contracts challenged as exclusive dealing are not exclusive and are terminable at will on short notice. Dkt. 966 at 68; Dkt. 1120 at 34. That alone defeats Authenticom's exclusive dealing claim. *See, e.g.*, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 395 (7th Cir. 1984) (a non-exclusive and terminable-at-will contract cannot meaningfully foreclose competition); *see also Balaklaw v. Lovell*, 14 F.3d 793, 799 (2d Cir. 1994) ("[O]pportunities for competition remain, since the contract with Dr. King has a term of only three years and may be cancelled without cause upon six-months' notice."). Further, Dr. Israel's expert reports did not meaningfully address the exclusive dealing substantial-foreclosure analysis, *see* Dkt. 966 at 68-70, and thus his opinions should have no effect on the Court's summary judgment analysis.

Similarly, Authenticom's objections to Reynolds's market definition fail. Authenticom has no answer to the problem that it defines a market that it cannot and does not participate in (the market for complex integration) and refuses to include the market that it can and does participate in (the market that includes integration through manual dealer reporting functions). Nothing in Dr. Israel's evidence or the *Daubert* rulings saves Authenticom from this market definition failure.

## V. Reynolds Remains Entitled to Summary Judgment on Authenticom's Damages and Antitrust Injury

Authenticom's attempts to save its damages model also fail as a matter of law. With or without its expert Ms. Lawton, Authenticom has no evidence of damages from harm caused by Defendants' allegedly unlawful conduct. Authenticom puts great weight on the *Daubert* ruling in

7

its briefing. But surviving *Daubert* does not solve Authenticom's disaggregation problems. Because Authenticom boldly refuses to identify the source of its damages, like in *Marshfield Clinic* and *MCI*, the Court has "no rational basis" to determine that Authenticom has established evidence of damages. *See Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998); *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir. 1983); Dkt. 1328 § V.

Authenticom wants the Court to ignore that it is not a dealer or a vendor—it is an interloping intermediary whose entire business model is predicated on pirating data from proprietary systems without permission in order to sell it on to others. The antitrust laws do not protect a company's right to bootleg copies of software, to violate copyrights, to disregard a computer system owner's denial of access authorization, or to override the protective technical measures of that computer system for profit. *See* Dkt. 966 § III(A). *See also PharmacyChecker.com, LLC v. Nat'l Ass'n of Boards of Pharmacy*, 530 F. Supp. 3d 301, 329–30 (S.D.N.Y. 2021) (acknowledging that summary judgment would be warranted on antitrust injury grounds if "discovery support[ed] Defendants' claim that the primary purpose of Plaintiff's business is to facilitate unlawful [activity]").

## VI. The Court's Daubert Ruling Does Not Help MVSC Survive Summary Judgment

Contrary to MVSC's arguments, the Court's decision not to exclude Israel or Klein does not help MVSC survive summary judgment on the issues of conspiracy, causation, antitrust injury, or damages.

**Conspiracy.** MVSC lacks evidence of Reynolds's participation in an alleged conspiracy to block MVSC's access to DMS data. Contrary to MVSC's argument, there is no credible evidence, let alone "direct" evidence, of a conspiracy to block MVSC from access to DMS data, because

8

Reynolds's undisputed conduct was to *invite* MVSC into the RCI program (which would have given MVSC real-time access to Reynolds DMS data), at prices comparable to the prices Reynolds offered to other EVR providers.[2] *E.g.*, MVSC Resp. MSUF (Dkt. 1079) at ¶¶ 25-36. The Court's decision not to exclude Klein and Israel does not change the undisputed and dispositive nature of these facts.

**Causation.** Assuming the alleged conspiracy occurred, MVSC lacks evidence that it caused harm to MVSC. For example, it is undisputed that (1) MVSC's EVR market share in California grew from 36.8% in 2014 to 61.1% in 2019 (Dkt. 1079 ¶ 62); (2) MVSC successfully entered the Virginia market and increased prices by 70% (*id.* ¶ 64); and (3) The states of Wisconsin and Illinois, not Reynolds, imposed obstacles to MVSC's ability to enter the EVR markets there (*id.* ¶¶ 66-69). Again, the Court's decision not to exclude Klein or Israel does not change these undisputed and dispositive facts.

MVSC is wrong to suggest that the Court endorsed Klein's opinions regarding harm to MVSC in California. Far from it. The Court's ruling expressly only finds that Klein's California opinion "does not run afoul of *Daubert*." Dkt. 1321 at 68. MVSC also states that according to the Court, "there is evidence supporting" Klein. Dkt. 1329 at 14. But in the quoted excerpt, the Court is merely summarizing MVSC's allegations, as made clear by the word "allegedly," and by the sentence that precedes the block quote starting with "According to MVSC . . . ," (Dkt. 1321 at 63), which MVSC omits.

---

[2] MVSC, in its brief, also asserts that MVSC additionally alleges "the conspiracy common to every plaintiff in this MDL." Dkt. 1329 at 13. But MVSC's Second Amended Complaint plainly alleges a conspiracy to "completely block" MVSC specifically from access to DMS data, and MVSC's expert Klein only opines on causation and damages to MVSC resulting from an MVSC-specific blocking conspiracy. SAC (MVSC Dkt. 76) at ¶ 10; Klein Rpt. (Dkt. 957-4) at ¶¶ 17-18.

**Antitrust Injury.** In order to demonstrate antitrust injury, MVSC must point to evidence of harm to competition, as opposed to harm to itself. Dkt. 955 at 33 (quoting *Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*, 940 F.3d 971, 978 (7th Cir. 2019) (St. Eve, J.) (antitrust injury requires plaintiff to "allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself[.]")). The undisputed evidence establishes that EVR competition has not been harmed by defendants' conduct. Settling defendant CVR, the purported beneficiary of the conspiracy, has declined and lost market share during the alleged conspiracy period, while its competitors in multiple states, including MVSC, Dealertrack RTS, TitleTec, and DLRdmv, have all grown at CVR's expense. *E.g.*, Dkt. 1079 ¶¶ 24, 37, 39, 62. MVSC's own brief demonstrates that it cannot establish antitrust injury, because it only references harm to MVSC. Dkt. 1329 at 15 ("disabled MVSC"; "caused MVSC to suffer lost business"; "reduced the quality of MVSC's product"; "prevented MVSC from offering a competitive alternative"). MVSC's inability to achieve a dominant EVR market share in every state (60-70%, as estimated by Klein) and charge higher prices than other EVR providers (70% higher or more, according to Klein), (Dkt. 957-4 ¶¶ 100-102), is not harm that the antitrust laws are designed to address.

**Damages.** The Court notes in its *Daubert* ruling that "Defendants could potentially be entitled to summary judgment" due to Klein's failure to disaggregate. Dkt. 1321 at 66. As Reynolds has previously explained, if the Court grants summary judgment on even one aspect of MVSC's case, Klein's admitted failure to disaggregate calls for summary judgment. *E.g.*, Dkt. 955 at 36-37; Dkt. 1328 at 13-14.

MVSC is also wrong to suggest that Reynolds's summary judgment arguments regarding damages "explicitly depend" on the success of its *Daubert* motion and must be denied because the

10

*Daubert* motion was denied. Dkt. 1329 at 16. Only one of Reynolds's summary judgment arguments regarding damages was tied to the success of its *Daubert* motion. Dkt. 955 at 37. Reynolds also separately and independently argued that summary judgment should be granted because of Klein's failure to disaggregate "between harm caused by conspiracy and harm caused by either unilateral conduct or conduct not attributable to Reynolds." *Id.* at 36; *see also id.* at 28-32. Because Klein conceded that he did not provide a disaggregated damages estimate (*e.g.*, Klein Tr. (Dkt. 957-6) at 45:5-47:10), summary judgment is appropriate if the Court determines that any aspect of the "interference" for which Klein calculates damages is not unlawful.

**VII. Conclusion and Prayer**

The substantive *Matsushita* standard at summary judgment, and the "just and efficient" management of this MDL (*see* 28 U.S.C. § 1407(a)), call for summary judgment to be granted on Authenticom and MVSC's claims against Reynolds. Further, nothing in the *Daubert* rulings or Authenticom's briefing save Authenticom from a summary judgment finding on liability for its unlawful activities under the DMCA and Wisconsin Computer Crime Act.

Dated: March 11, 2022

    Respectfully submitted,

    /s/ *Aundrea K. Gulley*
    Aundrea K. Gulley
    Brian T. Ross
    Brice A. Wilkinson
    Ross M. MacDonald
    GIBBS & BRUNS LLP
    1100 Louisiana Street
    Suite 5300
    Houston, TX 77002
    (713) 650-8805
    agulley@gibbsbruns.com
    bross@gibbsbruns.com
    bwilkinson@gibbsbruns.com
    rmacdonald@gibbsbruns.com

    Leo D. Caseria
    SHEPPARD MULLIN RICHTER & HAMPTON, LLP
    2099 Pennsylvania Avenue NW, Suite 100
    Washington, DC 20006
    (202) 747-1900
    lcaseria@sheppardmullin.com

    COUNSEL FOR DEFENDANT
    THE REYNOLDS AND REYNOLDS COMPANY

## CERTIFICATE OF SERVICE

I, Aundrea K. Gulley, an attorney, hereby certify that on March 12, 2022, I caused a true and correct copy of the foregoing **The Reynolds & Reynolds Company's Response to Authenticom and MVSC's February 25, 2022 Supplemental Brief** to be served electronically on all counsel of record at the following email address:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com