PUBLIC – REDACTED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18-cv-00864 |
| **This Document Relates To:** | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

## DEALERSHIP CLASS PLAINTIFFS' RESPONSE TO
## CDK GLOBAL, LLC'S SUPPLEMENTAL SUMMARY JUDGMENT BRIEF

PUBLIC - REDACTED

## TABLE OF CONTENTS

1. CDK Is Not Entitled to Summary Judgment on the Conspiracy Claims…...…………..…1

2. Dealers Have Not Abandoned Their Exclusive Dealing Claim
   For Injunctive Relief……………………………………………………………………5

3. CDK's Summary Judgment Motion Should Be Denied…………………………………..7

   A. Dealers' Damages Model Sufficiently Calculates Damages…………………………7

   B. CDK's Disaggregation Argument Is Inappropriate…………………………………...8

        i.    Disaggregation is Not Required at this Stage
              of the Litigation…………………………………………………………………..8

        ii.   Dr. Williams's DiD Analysis Accounts for CDK's
              Unilateral Market Power………………………………………………….……10

        iii.  Dr. Williams's Benchmark Analysis is a Reliable
              Methodology to Determine Damages…………………………………..……11

   C. Dealers Will Provide Damage Calculations at Class Certification
      for their State Law Claims Consistent with Dr. Williams's
      Previous Nationwide Damages Claim…………………………….………………....12

4. Dealers Are Entitled to Judgment On The DMCA Counterclaim………………….…14

5. Supplemental Authority……………………………………………………....……..15

CONCLUSION……………………………………………………………………..…15

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Advanta-STAR Automotive Research Corp. of Am. v. DealerCMO, Inc.*,
  2022 WL 179466 (E.D. La. Jan. 20, 2022) ............................................................... 15

*Banks v. United States*,
  2021 WL 308807 (S.D. Ill. Jan. 29, 2021) ................................................................. 4

*Birch/Rea Partners, Inc. v. Regent Bank*,
  2022 WL 611491 (7th Cir. Mar. 2, 2022) .................................................................. 15

*Blue Cross & Blue Shield United of Wis. v Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995)........................................................................................ 8

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998).................................................................. 6, 7, 8, 12

*City of Tuscaloosa v. Harcros Chems., Inc.*,
  158 F.3d 548 (11th Cir. 1998)...................................................................................... 1

*Edwards v. Nat'l Milk Producers Fed'n*,
  2014 WL 4643639 (N.D. Cal. Sept. 16, 2014)......................................................... 13

*Godinez v. City of Chicago*,
  2019 WL 5597190 (N.D. Ill. Oct. 30, 2019)............................................................... 5

*Hampton v. City of Chicago*,
  2017 WL 2985743 (N.D. Ill. July 13, 2017) ............................................................... 7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5391159 (N.D. Cal. Sept. 24, 2013).......................................................... 13

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
  906 F.2d 432 (9th Cir. 1990) ........................................................................................ 3

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  60 F. Supp. 3d 914 (N.D. Ill. 2014)……………………………………………….…………2, 3

*In re High Fructose Corn Syrup Antitrust Litigation*,
  295 F.3d 651 (7th Cir. 2002) ....................................................................................... 3

*In re Loc. TV Advert. Antitrust Litig.*,
  2020 WL 6557665 (N.D. Ill. Nov. 6, 2020).................................................................. 1

*In re Packaged Seafood Prod. Antitrust Litig.*,
  332 F.R.D. 308 (S.D. Cal. 2019),
  *vacated on other grounds sub nom. Olean Wholesale Grocery Coop., Inc.*
  *v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021) .......................................................... 13

*In re Static Random Access memory (SRAM) Antitrust Litig.*,
  264 F.R.D. 603 (N.D. Cal. 2009) ................................................................................................. 13

*In re Text Messaging Antitrust Litig.*,
  46 F. Supp. 3d 788 (N.D. Ill. 2014), *aff'd*, 782 F.3d 867 (7th Cir. 2015) .................................. 3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) ................................................................................................. 13

*Kleen Prods. LLC v. Ga.-Pac. LLC*,
  910 F.3d 927 (7th Cir. 2018) ......................................................................................................... 1

*Kleen Prods. v. Int'l Paper*,
  276 F. Supp. 3d 811 (N.D. Ill. 2017),
  *aff'd sub nom. Kleen Prods. LLC v. Ga.-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) ................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)…………………………………………………………….………… 2

*MCI Commc'ns Corp. v Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) ....................................................................................................... 8

*Murphy Tugboat Co. v. Crowley*,
  658 F.2d 1256 (9th Cir. 1981) ..................................................................................................... 10

*Oak Indus., Inc. v. Zenith Elecs. Corp.*,
  726 F. Supp. 1525 (N.D. Ill. 1989) ............................................................................................. 14

*Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*,
  2009 WL 5217344 (C.D. Ill. Dec. 30, 2009) ................................................................................ 1

*Rossi v. Standard Roofing, Inc.*,
  156 F.3d 452 (3d Cir. 1998) ........................................................................................................... 3

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
  873 F.3d 185 (3d Cir. 2017) ........................................................................................................... 3

*Viamedia, Inc. v. Comcast Corp.*,
  951 F.3d 429 (7th Cir. 2020) ......................................................................................................... 9

Other Authority

Richard Schmalensee, *Another Look at Market Power*, Harv. L. Rev.,
   Vol. 95 at 1789-1816 (1982)………………………………………………………..………11
.

**ECF GLOSSARY**

| ECF No. | Document | Date of Filing |
|---|---|---|
| 166 | Case Management Order | May 7, 2018 |
| 176 | Memorandum Opinion and Order (Defendants' Motions to Dismiss Authenticom Complaint) | May 14, 2018 |
| 507 | Memorandum Opinion and Order (CDK's Motion to Compel Arbitration and Stay Claims, or, in the Alternative, to Dismiss Dealers' Complaint) | Jan. 25, 2019 |
| 889-7 | Expert Report of Michael A. Williams, Ph.D. (Aug. 26, 2019) | Feb. 28, 2020 |
| 889-8 | Expert Reply Report of Michael A. Williams, Ph.D. (Dec.19, 2019) | Feb. 28, 2020 |
| 973 | Memorandum in Support of CDK's Motion for Summary Judgment (Dealers) | May 20, 2020 |
| 975-78 | Expert Report of Michael D. Whinston, Ph.D (Nov. 15, 2019) | May 20, 2020 |
| 979-117 | Deposition of Dr. Michael Williams (Nov. 8, 2019) | May 20, 2020 |
| 992 | Dealers' Opposition to CDK's Motion to Exclude the Opinions and Testimony of Dr. Michael A. Williams | May 29, 2020 |
| 1060 | CDK's Responses to Dealer Counter-Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment on CDK's Counterclaims | July 28, 2020 |
| 1100 | Authenticom's Corrected Opposition to CDK's and Reynolds's Motion for Summary Judgment | Aug. 5, 2020 |
| 1101 | MDL Plaintiffs' Corrected Statement of Additional Material Facts in Opposition to Defendants' Motions for Summary Judgment | Aug. 5, 2020 |
| 1122 | CDK's Reply Memorandum in Support of Its Motion for Summary Judgment (AutoLoop) | Aug. 28, 2020 |
| 1123 | CDK's Reply Memorandum in Support of Its Motion for Summary Judgment Motion (Dealers) | Aug. 28, 2020 |
| 1158 | Corrected Dealers' Memorandum in Opposition to CDK's Motion for Summary Judgment | Sept. 8, 2020 |

| ECF No. | Document | Date of Filing |
|---|---|---|
| 1244 | Dealers' Notice of Supplemental Authority | Feb. 10, 2021 |
| 1315 | Dealers' Notice of Supplemental Authority | Oct. 29, 2021 |
| 1321 | Memorandum Opinion and Order (*Daubert* Decision) | Jan. 21, 2022 |
| 1327 | CDK's Supplemental Brief Regarding the Court's Jan. 21, 2022 Memorandum Opinion and Order | Feb. 25, 2022 |
| 1330 | Dealerships' Supplemental Summary Judgment Brief | Feb 25, 2022 |

**1.** **CDK Is Not Entitled To Summary Judgment On The Conspiracy Claims**

As shown in Dealers' supplemental brief, Dr. Williams's liability opinion warrants the denial of CDK's summary judgment with respect to the existence of the conspiracy. ECF 1330 at 2-3. Importantly, however, Dealers do not rely solely on that opinion to prove the conspiracy. Thus, whether his opinion *alone* can "carry the day" (ECF 1327 at 5) is academic.[1] *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) ("McClave's data and testimony need not prove the plaintiffs' case by themselves; they must merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble before the jury."); ECF 1321 at 30 ("[A]n economist may testify about factors supporting a finding of conspiracy, regardless of whether any of those factors (alone or in combination) 'tend to exclude' the possibility of independent action sufficient to defeat summary judgment.").

That conclusion is especially pertinent as this is one of the "quite rare" cases[2] that features *direct* evidence of the conspiracy.[3] Direct evidence includes admissions by senior executives of CDK (Dan McCray) and Reynolds (Robert Schaefer) to Authenticom's Stephen Cottrell. *See* ECF

---

[1] Although the Court need not decide the issue, Dealers submit that Dr. Williams's liability opinion – including that ███████████████████████████████████████ (ECF 889-8 at ¶ 7), and that ███████████████████████████████████████ *id.* at ¶ 66 – itself warrants the denial of CDK's summary judgment motion. *See* ECF 1321 at 30-31 (quoting *Kleen Prods, LLC v. Int'l Paper*, 2017 WL 2362567, at *14 (N.D. Ill. May 31, 2017): "Whether [the expert] has drawn a reasonable conclusion based on his analysis and actually made a prima facie case for conspiracy is a matter to be examined at summary judgment"); *Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, 2009 WL 5217344, at *6 (C.D. Ill. Dec. 30, 2009) (denying summary judgment motion where plaintiff "presented evidence, *particularly Dr. Dranove's expert opinions*, which present material questions of fact" concerning whether contract "led to anticompetitive effects.") (emphasis added). The Seventh Circuit's decision in *Kleen Prods. LLC v. Ga.-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018) (ECF 1327 at 2), does not suggest a contrary result. Although "[t]he [district] court largely denied the parties' cross-motions to exclude each other's experts," *id.* at 933, the Seventh Circuit did not assess the expert opinions or analyze how they impacted the summary judgment motions in that case.

[2] *In re Loc. TV Advert. Antitrust Litig.*, 2020 WL 6557665, at *7 (N.D. Ill. Nov. 6, 2020).

[3] Dealers incorporate Authenticom's briefing in ECF 1158 at 1 n.1, 2 (incorporating ECF 1100 "Background" Section and Section I of the Argument).

1100 at 30-31; and meetings beginning in September 2013 and an agreement to the conspiracy by senior executives at Reynolds and CDK. *Id.* at 13-17, 24-27. Importantly, Dealers' *direct* evidence suffices to defeat summary judgment, even *without* Dr. Williams's opinion and the overwhelming circumstantial evidence of conspiracy. *See* ECF 1321 at 12 citing *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002) ("[A]dmission by the defendants that they agreed to fix their prices is all the proof a plaintiff needs"); ECF 507 at 30 (referencing plaintiffs' "well-pleaded allegations that Defendant's executives admitted to the conspiracy," and explaining: "Such admissions are direct evidence of an illegal conspiracy") (citing *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010)). *See also* ECF 176 (denying motion to dismiss Authenticom complaint):

> These allegations straightforwardly suffice. They are, for one, direct-evidence allegations of the agreement: Taken as true, *the fact that two of Defendants' executives admitted an agreement to block Authenticom and other integrators from accessing dealer data shows directly the existence of such an agreement. No further inference is required* Indeed, such "admission[s] by [...] employee[s] . . . of the conspirators" are textbook examples of adequate direct-evidence allegations. Even if it were otherwise, and as Defendants assert, there was some ambiguity in the admissions, they are at a minimum "highly suggestive of the existence" agreement to block Authenticom from accessing dealer data and thus out of the market. (emphasis added, alterations in original, citations omitted).

*A fortiori*, Dealers' entire array of evidence, including Dr. Williams's opinion, suffices to defeat summary judgment. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 964 (N.D. Ill. 2014) (court "must assess the evidence in the aggregate") (citing *High Fructose*, 295 F.3d at 655).

Once again, CDK wrongly relies on the *Matsushita*[4] standard for summary judgment. ECF 1327 at 1, 4. That standard applies in cases where, unlike here, there is *no* direct evidence of

---

[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

conspiracy. *See* ECF 1158 at 1 n.1, 2; ECF 1100 at 41-42; *see also* ECF 1321 at 30 ("*Matsushita* sets a summary judgment standard for cases in which an antitrust plaintiff relies *solely on circumstantial evidence* to prove the existence of a collusive arrangement in violation of Sherman Act § 1.") (emphasis added); *High Fructose*, 295 F.3d at 654; *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 466 (3d Cir. 1998) ("[T]he *Matsushita* standard only applies when the plaintiff has failed to put forth direct evidence of conspiracy."); *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 906 F.2d 432, 441 (9th Cir. 1990) ("[T]he *Matsushita* standards do not apply when the plaintiff has offered direct evidence of conspiracy.").

CDK compounds its error by relying on cases (ECF 1327 at 2) that *lacked* direct evidence of a conspiracy. *See Kleen Prods. v. Int'l Paper*, 276 F. Supp. 3d 811, 822 (N.D. Ill. 2017) ("Plaintiffs concede[d] that they have uncovered no direct evidence of conspiracy."), *aff'd sub nom. Kleen Prods. LLC v. Ga.-Pac. LLC*, 910 F.3d 927, 933 (7th Cir. 2018); *Dairy Farmers*, 60 F. Supp. 3d at 949 ("Plaintiffs' case, like most in this vein, is 'constructed out of a tissue of [ambiguous] statements and other circumstantial evidence.'") (brackets in original, citations omitted), *aff'd*, 801 F.3d 758 (7th Cir. 2015); *In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 804 (N.D. Ill. 2014) ("Hurditch's e-mail is not direct evidence of a price-fixing conspiracy. *Thus, it is insufficient by itself* to create a genuine issue of material fact for trial and permit plaintiffs to avoid summary judgment.") (emphasis added), *aff'd*, 782 F.3d 867 (7th Cir. 2015); *Valspar Corp. v. E.I. Du Pont De Nemours & Co*., 873 F.3d 185, 192 n.2 (3d Cir. 2017) ("If a plaintiff provides direct evidence, then the 'strictures of *Matsushita* [do] not apply.") (brackets in original, citation omitted).

Furthermore, none of CDK's cases involved direct evidence of conspiracy coupled with an expert liability opinion that survived a *Daubert* challenge. Here, Dealers' direct evidence,

3

*combined* with their expert's liability opinion and the overwhelming, additional evidence of conspiracy, undoubtedly raise a material issue of fact for the jury – even under the inapplicable *Matsushita* standard.

CDK also takes considerable liberties with the record to suggest the absence of issues for the factfinder. But even under the *Matsushita* standard, CDK's argument fails. For example, CDK claims that Dr. Williams opined that CDK had "sufficient *unilateral* power to raise integration prices without a conspiracy." ECF 1327 at 5 (emphasis in original). In fact, Dr. Williams opined that ███████████████████████████████████████████████████████████████ ██████████████████████████ *See* ECF 889-7 at ¶ 176 (emphasis added). Indeed, in his "difference-in-differences" ("DiD") regression model, Dr. Williams *controlled* for unilateral power, and thus measured damages attributable to the *conspiracy*. *See* ECF 1158 at 20-22; *see also* ECF 1321 at 46-47 (denying CDK motion to exclude Dr. Williams's DiD model).

Additionally, CDK represents that Dr. Williams opined that Defendants "acknowledged that a controlled wind-down of CDK's hostile integration business" was in CDK's unilateral interest. ECF 1327 at 5 (emphasis in original, citing record). However, CDK's citations do not remotely support that statement. In any event, CDK's "unilateral power" thesis does not support summary judgment; if anything, it is an issue for cross-examination. *See* ECF 1321 at 34 ("Overall, Defendants' criticisms of Williams' report – including whether he characterizes particular emails and other pieces of evidence in the same manner as Defendants or takes into consideration each and every justification Defendants assert for taking particular actions, are ones suited for cross-examination, not reasons to exclude Williams' 'plus factor' analysis either in full or in part.") (internal citation omitted); *see generally Banks v. United States*, 2021 WL 308807, at *4 (S.D. Ill.

Jan. 29, 2021) ("battle of the experts" warranted denial of summary judgment); *Godinez v. City of Chicago*, 2019 WL 5597190, at *2 (N.D. Ill. Oct. 30, 2019) (same).

CDK also lists bullet-points containing alleged "undisputed" facts (ECF 1327 at 3) to argue (again, under the inapplicable *Matsushita* standard) that Defendants acted lawfully, and that CDK increased prices to "further[]system security and integrity." *Id.* But as the record demonstrates, CDK's "security" argument is pretextual. *See* ECF 1158 at 9-13 (citing record). Moreover, the bullet-pointed assertions listed by CDK in its supplemental brief are far from "undisputed," consisting of numerous vague statements CDK cobbled together from its summary judgment briefing.[5] The Court's *Daubert* opinion does not affect these factual disputes. At best, CDK's points raise issues for a jury to assess.

### 2. Dealers Have Not Abandoned Their Exclusive Dealing Claim For Injunctive Relief

CDK's allegation that Dealers "abandoned their exclusive-dealing claim entirely" (ECF 1327 at 6) is meritless. As to CDK's first argument (ECF 973 at 22) that exclusive dealing provisions should not be part of Dr. Williams's analysis, in its *Daubert* opinion, this Court agreed with Dealers that simply because a claim in a conspiracy has initially been dismissed on procedural grounds does not convert Defendants' conduct into lawful action.[6] Dealers expressly addressed this in their opposition to CDK's motion for summary judgment. ECF 1158 at 22-23.

---

[5] For example, CDK claims to have competed with Reynolds "[t]hroughout this period" without providing a date range. ECF 1327 at 3. In support, CDK cites the contents of fourteen pages of briefing, the underlying factual basis of which is mostly disputed in dozens of Plaintiffs' Responses to CDK and Reynolds Joint 56.1 Statement (ECF 1157) and Plaintiffs' Additional Statements of Material Fact (ECF 1101) as well as Plaintiffs' responsive briefing. *See* ECF 1158 at 1 n.1, 2 (incorporating by reference the "Background" Section and Section I of Argument in ECF 1100)*,*

[6] *See* ECF 1321 at 47. As noted in Dealers' *Daubert* opposition brief (ECF No. 992 at 7), "as Dr. Williams explains, a claim, as opposed to the conduct, may disappear for reasons other than a determination that such an antitrust claim constitutes legal conduct. Simply because a claim in a conspiracy has been dismissed at the initial litigation phase does not convert defendants' conduct (in this case, exclusive dealing contracts) into lawful action. *See Spray-Rite Serv. Corp.*, 684 F.2d at 1243."

As to CDK's second argument (ECF 973 at 22) that "CDK and Reynolds's vendor contracts have included the challenged [exclusive dealing] provisions since well before 2013 (the supposed conspiracy start date),"[7] this argument supports Dr. Williams DiD analysis which accounts for the effect of exclusive dealing provisions which are baked in to benchmark-period prices. Thus, any impact of those provisions on Defendants' Integration Services prices would already be baked into the prices in the benchmark pre-conspiracy period and cannot be the cause of any estimated overcharges. ECF 889-8 at ¶¶ 48-50, 62.

Finally, in response to CDK's argument (ECF 973 at 23) that the harm the Dealers incurred as a result of these provisions does not flow from these provisions, "but instead is the product of Defendants' unilateral decisions to secure the DMSs and prevent hostile integrators from accessing the system without authorization," Plaintiffs stated:

> Both CDK and Reynolds have imposed exclusive dealing requirement on vendors that participate in the 3PA and RCI programs. Those provisions are both anticompetitive in their own right and have facilitated Defendants' conspiracy . . . . Both CDK and Reynolds prohibit vendors that join the 3PA and RCI programs, respectively, from using any independent data integrator. PJ SAF 67. CDK's exclusive dealing provision never expires. When questioned on this point by Chief Judge Peterson at the Authenticom preliminary injunction hearing, CDK's Gardner could not offer any justification for a permanent exclusive dealing term.

*See* ECF 1100 at 32 and ECF 1158 at 1 n.1 (incorporating by reference the "Background" Section and Section I of Argument in ECF 1100) (citations omitted).

As the Court has acknowledged, Dealers' exclusive dealing claim is still active (ECF 1321 at 6) and CDK admits that Dealers may seek injunctive relief in reference to their Section 1 claim for exclusive dealing. *See* ECF 973 at 22 citing ECF 507 at 33. Further, the one case cited in CDK's

---

[7] *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998) ("A party can, in resisting summary judgment, rely on his opponent's evidence, theories, or arguments.").

reply (ECF 1123 at 9), *Hampton v. City of Chicago*, 2017 WL 2985743, at *26 (N.D. Ill. July 13, 2017) is distinguishable. In *Hampton*, the court concluded the plaintiff forfeited his claim for state law civil conspiracy because the plaintiff failed to respond to *any* of defendant's arguments on this claim. *Id.* While CDK may not agree with Dealers' arguments regarding their exclusive dealing claim, Dealers clearly have not abandoned their claim.[8]

### 3. **CDK's Summary Judgment Motion Should Be Denied**

#### A. **Dealers' Damages Model Sufficiently Calculates Damages**

CDK's argument (ECF 1327 at 7) that it is entitled to summary judgment since Dealers' expert's damages calculation does not separate the effects of CDK's lawful conduct from its unlawful conduct is without merit. CDK has not established the existence of any lawful conduct that should be disaggregated. *See Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 594 (7th Cir. 1998)) (observing that although multiple anticompetitive practices were alleged, after trial, the jury found "only one of the practices was illegal").

CDK's argument critically depends on an unstated, implicit assumption – that CDK or Reynolds had *more* unilateral market power in the damages period than in the benchmark period. If that were not true, then the but-for prices would not be higher than those in Dr. Williams's DiD model and no part of the estimated damages could be attributed to the exclusive-dealing provisions or unilateral conduct. There is no evidence – nor have CDK or Reynolds, or their experts, even claimed that such evidence exists – showing that CDK or Reynolds had *more* unilateral market power in the damages period than in the benchmark period. Thus, the critical, unstated assumption on which CDK's exclusive-dealing provision argument relies has no basis in the record.

---

[8] As Dealers have, in fact, responded to CDK's arguments on the exclusive dealing claim, they have not – as CDK alleges – "conced[ed] that the challenged provisions were lawful." ECF 1327 at 9.

### B. CDK's Disaggregation Argument Is Inappropriate

#### i. Disaggregation is Not Required at this Stage of the Litigation

CDK argues that "Dr. Williams's model improperly measures the purported price effects of the alleged exclusive-dealing provisions in CDK's contracts." ECF 1327 at 9.[9] Though conceding that the Court refused to exclude Dr. Williams's testimony on this basis, CDK argues – without citation to any cases – that summary judgment is appropriate since the Dealers' damages model cannot "isolate those elements of the plaintiff's damage that were caused by" unlawful conduct. *Id.* citing ECF 1321 at 47 (quoting Areeda & Hovenkamp ¶ 309c2). This disaggregation argument is misplaced at summary judgment, as CDK's exclusive dealing provisions have *not been* found to be lawful. Put differently, CDK's argument – even if valid (which it is not) – would become potentially relevant *only if* the exclusive dealing provisions are determined to be lawful.

The Seventh Circuit has addressed this scenario several times – ***post verdict***. *See MCI Commc'ns Corp. v Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1161-63 (7th Cir. 1983) (remanding for new trial on damages where jury found that some but not all of defendant's pricing policies were lawful);[10] *Blue Cross & Blue Shield United of Wis. v Marshfield Clinic*, 65 F.3d 1406, 1416 (7th Cir. 1995) (after jury trial, Seventh Circuit threw out all but one antitrust charge and ordered a new trial for damages on that claim); *Marshfield Clinic*, 152 F.3d at 593-94 (in the second trial, Seventh Circuit affirmed denial of damages due to expert's lack of analysis).

---

[9] CDK's argument regarding damages from CDK's exclusive dealing conduct misses the mark by criticizing Dr. Williams for "offer[ing] no way to separate the effects of" CDK's exclusive dealing conduct. ECF 1327 at 9. However, the impact of the provisions is accounted for in the DiD analysis. *See* ECF 1158 at 23.

[10] *See id.* at 1163 ("MCI assumed in the preparation of its damage study that all twenty-two of AT&T's acts charged were illegal. In fact, liability has now been established with respect to only seven of the twenty-two counts of alleged monopolization. MCI's lost profits study does not establish any variation in the outcome depending on which acts of AT&T were held to be legal and which illegal. On the contrary, the study was prepared well in advance of trial on the assumption that all of AT & T's actions constituted the willful maintenance of a monopoly.").

PUBLIC - REDACTED

CDK's argument also ignores Seventh Circuit law which has not supported disaggregation of damages in antitrust cases prior to a court or jury determination of whether alleged conduct is lawful – and only then considers how best (if at all) to address any potential concerns. As Judge Posner stated in *MCI*:

> Not requiring strict disaggregation of damages among the various unlawful acts of the defendant serves to prevent a defendant from profiting from his own wrongdoing and makes sense when damages arise from a series of unlawful acts intertwined with one another . . . . There is nothing inconsistent between requiring proof that damages were caused by illegal acts and the rule that a plaintiff need not disaggregate damages among those acts found to be unlawful.

708 F.2d at 1161-63 (internal citations omitted). Here, none of CDK's alleged conduct has been determined to be lawful. In fact, an antitrust plaintiff may recover damages for the same general course of conduct that can support two separate claims (e.g., refusal to deal and tying). *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 483 (7th Cir. 2020) (overruling district court ruling that Viamedia could not establish antitrust injury for tying claim because the injuries were the same as those alleged from Comcast's refusal-to-deal, and noting "[b]ecause the same general course of conduct supports both the refusal to deal and tying claims, the two theories necessarily allege similar injuries and damages"); *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1243 (7th Cir. 1982) ("We will not deprive Spray-Rite of this recovery merely because the jury may have found that Monsanto combined lawful conduct with unlawful conduct making it impossible to determine which portion of the total damages was caused by the unlawful conduct."), *aff'd on other grounds*, 465 U.S. 752 (1984). In contrast, Dr. Williams states specifically that the estimated overcharge reflects damages resulting only from Defendants' alleged conspiracy and controls for other potentially significant factors including unilateral conduct by Defendants. ECF 889-8 at ¶¶ 47-50. Accordingly, CDK's summary judgment motion on all damages claims should be denied.

### ii. Dr. Williams's DiD Analysis Accounts for CDK's Unilateral Market Power

CDK incorrectly asserts that Dr. Williams's DiD analysis does not take into account that CDK and Reynolds had some unilateral market power. ECF 1327 at 7-8. However, this Court recently recognized:

> Defendants argue that the fact that prices are elevated says nothing about whether Reynolds and CDK actually conspired, because Williams recognizes that each Defendant had unilateral power to increase prices without a conspiracy. Plaintiffs respond that Williams' use of a pre-conspiracy benchmark period controls for the impact of non-conspiratorial supply-and-demand factors, including any unilateral market power that CDK or Reynolds may have had. This is a battle of the experts issue that should be explored in cross-examination.

ECF 1321 at 34. CDK also incorrectly argues that "CDK and Reynolds did not exercise all their unilateral market power as of 2013." ECF 1327 at 8. In making this claim, CDK asserts that the company failed to take actions to maximize its profits, thereby violating its fiduciary duties. *See* ECF 889-8 at ¶ 25. CDK's expert, Dr. Whinston, made a similar claim in his report. ██████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████ ECF 975-78 at 121 n.500. As Dr. Williams correctly pointed out:

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████ ECF 889-8 at ¶ 25.[11]

---

[11] In support of another false claim, CDK cites *Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981). *See* ECF 1327 at 9-10. But *Murphy Tugboat* specifically states that: "[i]n a hypothetical economic construction, . . . economic rationality must be assumed for all competitors, absent the strongest evidence of chronic irrationality. Otherwise it will be impossible to keep speculation in check." 658 F.2d at 1262. CDK's assertion of its own economic irrationality should be rejected. The conclusion in *Murphy Tugboat*

CDK concludes with another incorrect claim: "Finally, if CDK in fact had no more unilateral market power to exercise after 2013 – if CDK could only raise integration prices through a conspiracy – then the damages on the plaintiffs' unilateral claims should be zero. Instead, they are the same." ECF 1327 at 8. With respect to Dealers, CDK's claim is clearly incorrect since neither Dealers, nor their experts, have ever made such a claim.

### iii. Dr. Williams's Benchmark Analysis is a Reliable Methodology to Determine Damages

CDK incorrectly asserts: "Neither of the benchmark firms used in the difference-in-differences models – the hostile integration vendors SIS and Authenticom – have market power, so those firms' failure to raise prices after September 2013 (as measured by Dr. Israel and Dr. Williams) does not predict how a firm with market power would have behaved absent the supposed conspiracy." ECF 1327 at 9. As a threshold matter, neither CDK nor its experts (nor Dealers' experts) have ever asserted – much less demonstrated – that "neither . . . SIS [or] Authenticom have market power." *Id.* Thus, CDK's assumption has no basis. This fact is not surprising. As Professor Schmalensee, a leading authority on industrial economics, notes: "Perfect competition is rarely encountered outside textbooks; almost all firms have some market power, though most have very little. Accordingly, the relevant question in antitrust cases is not whether market power is present, but whether it is important." Richard Schmalensee, *Another Look at Market Power*, HARV. L. REV., Vol. 95 at 1789-1816, at 1790 (1982).[12]

---

that "[a] reasonable jury could not . . . indulge in the assumption that a competitor would follow a course of behavior other than which it believed would maximize its profits" is entirely consistent with Dr. Williams's DiD model, which determines CDK's but-for prices based on the actual prices of for-profit maximizing firms: CDK, Reynolds, SIS, and Authenticom. *Id.*

[12] Even if SIS and Authenticom had no market power, or if CDK had more market power than SIS and Authenticom, CDK's assertion would still be wrong. CDK has completely misunderstood the DiD model used by Dr. Williams. The DiD model captures market power differences, if any, by accounting for the difference between (1) CDK's and Reynolds's prices; and (2) Authenticom's and SIS's prices in the

CDK next makes another false claim: "Additionally, both experts [Drs. Israel and Williams] use an exceptionally brief eight-month pre-conspiracy period to model over five years of prices in the but-for world." ECF 1327 at 9. Once again, CDK is incorrect. The CDK data used in the benchmark period of Dr. Williams's DiD model begins in January 2009, and the SIS data begins in January 2010. *See* ECF 889-7, Figure 2. Thus, the benchmark period is nearly *four years* (January 2010 through August 2013).

Lastly, CDK incorrectly states: "No reasonable jury could conclude that because CDK did not raise its prices for 8 months in 2013, CDK would not have raised prices one cent from 2014 onward, even after Reynolds raised its prices in 2013." ECF 1327 at 9. CDK's reference to "8 months" is fallacious. In fact, CDK had not raised its DIS prices at least since January 2009. *See* ECF 889-7, Figure 2. Moreover, CDK's reference to the fact that "Reynolds raised its prices in 2013" is specious because Dealers assert that price increase is part of the disputed conduct and, thus, would not have occurred in the but-for world.[13]

## C. Dealers Will Provide Damage Calculations at Class Certification for their State Law Claims Consistent with Dr. Williams's Previous Nationwide Damages Claim

CDK's insistence that Dealers have not provided evidence of damages for state law claims misses the mark. ECF 1327 at 10-11. CDK argues that Dealers' expert submitted "disguised pass-

---

benchmark period. That is, Dr. Williams' DiD model measures the *additional* price differences in the damages period beyond the price differences attributable to unilateral market power (and any other factors) in the benchmark period. *See* ECF 889-8 at ¶¶ 48-50.

[13] Furthermore, the Court has already determined that Dr. Williams's pre-conspiracy benchmark is a topic for cross examination. *See* ECF 1321 at 34. And while CDK cites *Marshfield Clinic*, it ignores that in that case, Blue Cross did not analyze any benchmark pricing data for defendant Marshfield. *See Marshfield Clinic*, 152 F.3d at 592 (noting that "[t]he usual way to measure damages in such a case would be to compare the prices that the Marshfield Clinic charged Blue Cross before and during the conspiracy"). The fact that Dr. Williams has created a model in precisely the "usual way" acknowledged by Judge Posner only lends validity to his analysis.

through overcharges" for its nationwide class. ECF 1327 at 10. Dealers' state class damages will, in fact, be based on overcharges. The allocation of state-by-state damages for each repealer state claim is a matter of arithmetic and an extension of Dr. Williams's methodology. CDK also ignores that Dealers will move to certify a nationwide class under Illinois state antitrust laws to recover damages in accordance with Dr. Williams's model. *See* ECF 1158 at 28; *see also* ECF 1330 at 5-7. Thus, CDK's assertion that Dealers are excluded from seeking Dr. Williams's full damages calculation is simply incorrect. *See* ECF 973 at 15-16. CDK's allegation that disclosure of state class damages calculations at class certification stage is prejudicial ignores the schedule set by this Court (*see* ECF 1327 at 10) as well as acceptable practice as evidenced by other cases.

As CDK has acknowledged, at the outset of this litigation, Judge St. Eve established a schedule that permits Dealers to "[defer] 'class certification' expert disclosures until after the Authenticom Trial." *See* ECF 973 at 13; *see also* ECF 166 at 3.[14] It is customary that state law damages and the methods of calculating them are offered at class certification in antitrust cases involving repealer states. *See, e.g., In re Packaged Seafood Prod. Antitrust Litig*., 332 F.R.D. 308, 346 (S.D. Cal. 2019) (evaluating damages calculations and certifying 32 statewide classes at class certification stage), *vacated on other grounds sub nom. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021).[15] To require otherwise would render the

---

[14] As Authenticom has settled all claims and counterclaims with CDK (ECF 1199), Dealers and Vendors are submitting a proposed revision to the class certification schedule, including expert disclosures, in the joint status report to be submitted to the Court on March 11, 2022.

[15] *See also e.g., Edwards v. Nat'l Milk Producers Fed'n*, 2014 WL 4643639, at *6-7 (N.D. Cal. Sept. 16, 2014) (certifying 14 states and Washington D.C. and evaluating class-wide damages); *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) (adopting *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5428139 (N.D. Cal. June 20, 2013)) (adopting recommendation to certify numerous repealer state classes after evaluating damages model); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-613 (N.D. Cal. 2010) (certifying 23 repealer state classes after evaluating class-wide damages); *In re Static Random Access memory (SRAM) Antitrust Litig.,* 264 F.R.D.

Court's approval of the Case Management Orders in this litigation meaningless. Furthermore, Dr. Williams would be required to disclose damages calculations for every state regardless of whether it was the subject of a summary judgment motion. The Court will evaluate CDK's challenge to certain state law claims at summary judgment.[16] In upcoming class certification disclosures, Dr. Williams can and will offer calculations for state class damages as appropriate. *See* ECF 889-7 at ¶ 171. Additionally, CDK has never addressed cases cited by Dealers in its opposition to CDK's motion for summary judgment (ECF 1158 at 26) which vitiates the need for exacting individual damages calculations.[17]

### 4. Dealers Are Entitled To Judgment On The DMCA Counterclaims

The parties agree that the *Daubert* ruling does not affect Dealers' summary judgment motion on CDK's counterclaims. *See* ECF 1327 at 11. CDK relies on its summary judgment briefing (ECF 1057 at 22) to argue that the DMCA allows for joint-and-several liability and that it was thus appropriate for its expert, Edward Stroz, to assess damages on a group level as opposed to an individual level for the Dealership Counter-Defendants. *See* ECF 1327 at 11.[18] Dealers have

---

603, 617-22 (N.D. Cal. 2009) (certifying 25 individual state classes and evaluating expert damages analysis).

[16] CDK argues without basis that the *Daubert* opinion disposes of Massachusetts and New Jersey consumer protection claims. *See* ECF 1327 at 10 n.6. However, this Court states that "Illinois Brick does not apply in many states" (ECF 1321 at 47) and Dealers respond to CDK's arguments regarding state law issues in summary judgment briefing. *See* ECF 1158 at 29-50; ECF 1330 at 12-18.

[17] The amount of individual damages is immaterial at the summary judgment stage, as there can be no dispute that each plaintiff sustained damages. *See Oak Indus., Inc. v. Zenith Elecs. Corp.,* 726 F. Supp. 1525, 1539 (N.D. Ill. 1989) ("While plaintiffs may require more evidence . . . to quantify damages if awarded, we believe plaintiffs have come forward with sufficient evidence to withstand a motion for summary judgment.").

[18] The two cases that CDK cites for this proposition are distinguishable (both imposed liability pursuant to a default judgment) and neither case analyzes whether joint-and-several liability is even permissible under the statutory framework of the DMCA. *See* ECF 1160 at 11 n.26.

shown that such grouping is improper and that there is insufficient evidence to assign liability on either a group *or* individual basis. *See* ECF 965 at 53-56; ECF 1160 at 10-13.

5. **Supplemental Authority**[19]

In its March 2, 2022 decision in *Birch/Rea Partners, Inc. v. Regent Bank*, 2022 WL 611491 (7th Cir. Mar. 2, 2022), the Seventh Circuit stated: "A federal court sitting in diversity applies state substantive law and federal procedural law. When a federal rule conflicts with a state law though, the federal rule governs." *Id.* at *4 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-400 (2010) (internal citations omitted). The Seventh Circuit thus continues to follow the plurality opinion in *Shady Grove*, further warranting denial of CDK's summary judgment motion with respect to Dealers' state law claims. *See* ECF 1158 at 43-48.

In *Advanta-STAR Automotive Research Corp. of Am. v. DealerCMO, Inc.*, 2022 WL 179466 (E.D. La. Jan. 20, 2022), the court granted the defendant's summary judgment motion, dismissing the DMCA claim and rejecting plaintiff's argument that the arrangement and selection of information contained original elements subject to copyright protection. *Id*. at *8-10. Like the plaintiff in *Advanta-STAR*, CDK argued that its copyright protection stems, in part, from how CDK organized the data housed on the DMS (ECF 1055 at 38-40; ECF 966 at 59-60). But CDK fails to establish that the material, allegedly accessed by Authenticom in circumvention of the DMCA, was sufficiently original or creative to have copyright protection – a necessary element of its DMCA claim. *See* ECF 965 at 33 n.70 (incorporating by reference the arguments made in ECF 978 at 46-49); *see also* ECF 1137 at 42-44.

## CONCLUSION

The Court's order (ECF 1321) supports denial of CDK's summary judgment motion.

---

[19] Dealers have submitted supplemental authority in previous filings: ECF 1244, 1315 and 1330.

DATED: March 11, 2022

Respectfully submitted,

*/s/ Peggy J. Wedgworth*

Peggy J. Wedgworth (*pro hac vice*)
Robert A. Wallner (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
John D. Hughes (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11350
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
rwallner@milberg.com
emckenna@milberg.com
jhughes@milberg.com

***MDL Co-Lead Counsel***

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com

***Dealership Class Plaintiffs' Steering Committee***

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

***Dealership Class Plaintiffs' Steering Committee***

16

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
**CLFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com

*MDL Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Peggy J. Wedgworth, an attorney, hereby certify that on March 12, 2022, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' RESPONSE TO CDK GLOBAL, LLC'S SUPPLEMENTAL SUMMARY JUDGMENT BRIEF** to be filed  and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth