# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP PUTATIVE CLASS ACTION | |

## CDK GLOBAL, LLC'S RESPONSE TO
## PLAINTIFFS' FEBRUARY 25, 2022 SUPPLEMENTAL BRIEFS

**TABLE OF CONTENTS**

Page

I. **The Dealers' Supplemental Arguments Are Meritless.** ................................................. 1

    A.    CDK is entitled to summary judgment on liability. ............................................... 1

        1.    There is no genuine dispute on the conspiracy claim. ............................... 1

        2.    There is no genuine dispute on the exclusive-dealing claim. .................... 2

    B.    CDK is entitled to summary judgment on damages. ............................................ 2

        1.    No rational jury could use the Dealers' overcharge damages model. ........ 2

        2.    The Dealers are not entitled to nominal damages. ..................................... 3

        3.    The Dealers do not have any other valid evidence of damages. ................ 4

        4.    The Dealers cannot bring a nationwide Illinois claim. .............................. 5

        5.    Arguments about duplication are premature. ............................................. 7

    C.    The Dealers' sur-reply on state law issues is improper and unavailing. ................ 7

        1.    Claim-specific class-action bars apply to several claims. .......................... 8

        2.    Pre-suit notice requirements apply to several claims. ................................ 9

II. **AutoLoop's Supplemental Arguments Are Also Meritless.** ....................................... 11

    A.    CDK is entitled to summary judgment on liability. ............................................. 11

        1.    There is no genuine dispute on the conspiracy claim. ............................. 11

        2.    There is no genuine dispute on the non-conspiracy claims. .................... 12

    B.    CDK is entitled to summary judgment on damages. .......................................... 13

        1.    No rational jury could use AutoLoop's overcharge damages model. ...... 13

        2.    No rational jury could use AutoLoop's switching damages model. ........ 14

**CONCLUSION** .................................................................................................................... 14

**RECORD CITATION FORMAT**

| Docket Number | Reference |
| --- | --- |
| Dkt. 966 | Memorandum in Support of Motion for Summary Judgment (Authenticom)* |
| Dkt. 969 | Memorandum in Support of Motion for Summary Judgment (AutoLoop) |
| Dkt. 973 | Memorandum in Support of Motion for Summary Judgment (Dealers) |
| Dkt. 974 | Defendants' Joint Statement of Common Undisputed Material Facts (All Cases) |
| Dkt. 1120 | Reply in Support of Motion for Summary Judgment (Authenticom)* |
| Dkt. 1122 | Reply in Support of Motion for Summary Judgment (AutoLoop) |
| Dkt. 1123 | Reply in Support of Motion for Summary Judgment (Dealers) |
| Dkt. 1321 | January 21, 2022 Mem. Opinion and Order ("Order") |
| Dkt. 1327 | CDK's Supplemental Brief Regarding Dkt. 1321 ("CDK Supp.") |
| Dkt. 1329 | Individual and Vendor Class Plaintiffs' Supplemental Brief Regarding Dkt. 1321 ("AutoLoop Supp.") |
| Dkt. 1330 | Dealers' Supplemental Brief Regarding Dkt. 1321 ("Dealers Supp.") |

\* CDK has settled all claims and counterclaims with Authenticom. *See* Dkt. 1199. However, CDK's summary judgment motions against AutoLoop and the Dealers incorporate arguments made more fully in the Authenticom briefing.

CDK Global, LLC ("CDK") respectfully submits this response to the February 25, 2022 supplemental briefs submitted by the Dealership Class Plaintiffs ("Dealers") (Dkt. 1330) and AutoLoop (along with the other Individual and Vendor Class Plaintiffs) (Dkt. 1329).

## I. THE DEALERS' SUPPLEMENTAL ARGUMENTS ARE MERITLESS.

Many of the arguments the Dealers advance in their supplemental brief go well beyond the Court's request for briefing on the impact of its *Daubert* rulings on the pending summary judgment motions. Dkt. 1322. Neither these improper sur-reply arguments (*see infra* pp. 7-11) nor those within the scope of the Court's order, however, save the Dealers' claims from summary judgment.

### A. CDK is entitled to summary judgment on liability.

#### 1. There is no genuine dispute on the conspiracy claim.

The Dealers assert that Dr. Williams's opinion that CDK and Reynolds "engaged in a number of actions contrary to their independent self-interests" will "permit a jury to find that the Defendants illegally conspired." Dealers Supp. 2-3. This perfunctory assertion ignores the distinction between admissibility and sufficiency that appears throughout the Court's Order. *See generally* CDK Supp. 1-5. As the Court stated, in antitrust cases courts often admit expert evidence on topics that "may be more appropriately left for summary judgment" because "[t]he cumulative nature of expert and non-expert testimony generally makes summary judgment . . . a much more practical vehicle" for resolving liability and damages issues. Order 15-16 (quoting Areeda & Hovenkamp); *see also id*. at 30 (distinguishing *Daubert* and summary judgment); *id*. at 33 (same).

The Dealers' assertion also ignores *Valspar Corp. v. E.I. Du Pont De Nemours*, 152 F. Supp. 3d 234 (D. Del. 2016), *aff'd*, 873 F.3d 185 (3d Cir. 2017). There, Dr. Williams opined that conduct by the defendants—including inter-company sales "attributable to a cross-licensing agreement reached to avoid litigation"—provided "evidence of conduct contrary to self-interest."

152 F. Supp. 3d at 243-44. The Third Circuit held that this opinion did not preclude summary judgment because, as here, the opinion was based on legally insufficient predicates:

> Valspar would have us give the expert's conclusion an outsized role in the summary judgment analysis. . . . Although Valspar's expert, Dr. Williams, concluded that its evidence excludes the inference that the competitors acted independently, that conclusion was based on predicates that are insufficient under our caselaw. . . . The District Court was correct to reject this line of argument.

873 F.3d at 197 n.9. CDK has explained why all the activity Dr. Williams identifies as purportedly "contrary" to independent self-interest—such as negotiating a wind-down of hostile integration on the Reynolds DMS to minimize operational and legal risks from that business—cannot show conspiracy as a matter of law. Dkt. 973 at 17-22; Dkt. 1123 at 8-9. Accordingly, as in *Valspar*, a jury could not rely on Dr. Williams's opinions to find that CDK conspired.[1]

### 2. There is no genuine dispute on the exclusive-dealing claim.

The Dealers do not mention their exclusive-dealing claim in their supplemental brief. This further confirms that the Dealers forfeited this claim at summary judgment. *See* CDK Supp. 6.

## B. CDK is entitled to summary judgment on damages.

### 1. No rational jury could use the Dealers' overcharge damages model.

In its *Daubert* Order, the Court decided to wait until summary judgment to decide whether Dr. Williams's "but-for" world provided a legally sufficient basis to award damages.[2] As CDK has explained, Dr. Williams's damages opinions do not allow the jury to separate lawful from unlawful conduct for the purpose of awarding damages. Indeed, his model incorporates the supposed

---

[1] The sole case the Dealers cite to explain why expert opinions may create a genuine dispute of fact is inapposite. In *Peoria Day Surgery Center v. OSF Healthcare Systems*, 2009 WL 5217344 (C.D. Ill. Dec. 30, 2009), the court denied summary judgment in a tying case based on an expert's opinion that the challenged arrangement had anticompetitive effects. But the Dealers do not bring tying claims, and tying claims are not subject to *Matsushita*'s summary judgment standard for a Section 1 conspiracy.

[2] *See* Order 46-47 (stating that the Court "finds this argument inappropriate for resolution on *Daubert* motions, for the same reasons explained above in relation to Israel"); *see also id*. at 26 ("Perhaps the framework of summary judgment will allow the Court to resolve the parties' arguments.").

"exclusive-dealing" provisions whose legality the Dealers no longer dispute. *See* CDK Supp. 7-9. The Dealers' supplemental brief notably does not discuss this issue. It is thus clear at summary judgment that no rational jury could use Dr. Williams's model to award damages.

### 2. The Dealers are not entitled to nominal damages.

The Court long ago made clear that the Dealers cannot seek damages under federal law for lost DMS "functionality" unless the Dealers can show harm separate from their alleged indirect injury from passed-on overcharges. Dkt. 507 at 20-21. The Dealers did not attempt such a showing. Instead, they sought to evade *Illinois Brick* by relabeling their indirect injury as a "direct" injury—a tactic this Court has now emphatically rejected as a matter of law. *See* Order 38-44.

Left with no theory of direct damages, the Dealers contend that they can still pursue nominal damages for their supposed "direct" harm. Dealers Supp. 4-5. The Dealers have a federal injunctive claim and state law claims, so whether they also seek $20 in nominal "direct" damages is not important as a practical matter. But because the Dealers never mentioned nominal damages in response to the motion to dismiss or the motions for summary judgment and exclusion under *Daubert*, they have forfeited even this minimal request. *See Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 909 (N.D. Ill. 2012) ("When Motorola filed a motion for summary judgment contending that Apple cannot establish 'any amount of damages arising from alleged infringement of' its patents, Apple did not respond that summary judgment should be denied because Apple could obtain nominal damages if it proved infringement; it responded that Motorola was wrong to think Apple couldn't establish substantial damages."); *ScentSational Techs. LLC v. PepsiCo., Inc.*, 773 F. App'x 607, 610 (Fed. Cir. 2019) (finding forfeiture where the plaintiff "made no reference at all to nominal damages" in its opposition to summary judgment).

Forfeiture aside, the request for nominal "direct" damages is déjà vu all over again. The Dealers cite Dr. Williams's report to show that Defendants "have damaged Dealers as direct

purchasers of Defendants' DMSs." Dealers Supp. 4. But the paragraph they cite asserts the same "direct" damages theory the Court held fails as a matter of law.[3] There is no basis to award nominal damages when the Dealers themselves continue to offer only invalid theories regarding their purported "direct" harm. *Cf. Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 980 F. Supp. 1298, 1300-1301 (W.D. Wis. 1997) (concluding that "Plaintiff is not entitled to an award of nominal damages because it cannot prove the prerequisites of antitrust liability (causation and damages) that would entitle it to such an award").

### 3. The Dealers do not have any other valid evidence of damages.

The Dealers state that they plan to move for class certification on their state law claims, which will allow them to "recover damages in accordance with Dr. Williams's model." Dealers Supp. 5-6, 11. However, Dr. Williams never disclosed a model to compute pass-through overcharge damages for any state law claims and never explained how he would do so. As discussed above, the only model he did disclose (purported pass-through damages for a nationwide damages class) is fatally flawed as a matter of law. The Dealers should not be allowed to use class certification as an opportunity to try to cure the flaws with Dr. Williams's earlier damages opinions, as their supplemental brief suggests they intend to do. *See* CDK Supp. 10.

Furthermore, this case is not at the class certification stage. It is at summary judgment. And at summary judgment, the Dealers *themselves* must provide evidence of damages. Dkt. 1123 at 7; CDK Supp. 10. The Dealers' supplemental brief confirms that they have not met this burden. *See* Dealers Supp. 11 n.14. As CDK previously explained, the supposed evidence of "damages" the Dealers cite—which was not part of the Dealers' Rule 26(a) disclosures, which Dr. Williams

---

[3] *See* Dkt. 975-79, Williams Rpt. ¶ 95 ("By taking away the DMS functionality that allowed dealers to choose vendors using lower-cost DIS services, . . . CDK and Reynolds forced dealers to choose vendors that used higher-cost DIS services" and "pay the portion of the 3PA and RCI overcharges that were passed through by vendors.").

did not consider, and which does not identify passed-on fees for any dealer—does not show any individual damages at summary judgment. *See* Dkt. 973 at 13-16; Dkt. 1123 at 6. The Dealers do not respond to these arguments.

All of the cases the Dealers cite as excusing their failure to adduce evidence of individual damages are unavailing. One case held that at class certification, plaintiffs do not need to estimate each absent class member's damages to satisfy Rule 23's requirements of predominance and commonality. *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 928-29 (7th Cir. 2016). That does not mean that a named plaintiff can ignore individual or claim-specific damages at summary judgment. Another case supports CDK, explaining that plaintiffs cannot "generally refer to the models used by their experts and the extensive disclosures and documents produced in the past 12 years" to show damages—similar to the Dealers here—and ordering disclosure of individual damages computations. *Arandell Corp. v. Xcel Energy, Inc.*, 2021 WL 5083974, at *2 (W.D. Wis. Nov. 2, 2021). Finally, *Malik v. Falcon Holdings, LLC*, 675 F.3d 646 (7th Cir. 2012), is inapposite for reasons CDK already explained. Far from being unduly prejudicial, summary judgment is *required* when a plaintiff does not come forward with evidence of damages, and the Dealers do not offer any excuse for their failure to do so here. Dkt. 1123 at 7.

### 4. The Dealers cannot bring a nationwide Illinois claim.

As a fallback, the Dealers contend that they will move to certify a nationwide class under the Illinois Antitrust Act ("IAA"). *See* Dealers Supp. 6-7. But the IAA does not permit *any* private indirect purchaser class claims, much less ones on behalf of a nationwide class. The IAA expressly provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act." 740 ILCS 10/7(2). The "*sole* exception" is for claims brought by *"*this State's Attorney General, who may maintain an action parens patriae as

provided in this subsection." *Id*. (emphasis added). But even the attorney general is authorized to bring these claims only on behalf of Illinois citizens (*i.e.*, "persons residing in this State"). *Id*.

CDK discussed this framework in its summary judgment reply brief. Dkt. 1123 at 15-16. Yet the Dealers offer no response. Instead, the Dealers cite inapposite cases certifying nationwide classes for non-IAA claims. In one, the Illinois claim arose under the Biometric Information Privacy Act, and the complaint sought to apply California law to the nationwide settlement class. *In re TikTok, Inc. Consumer Privacy Litig.*, 2021 WL 4478403, at *3 n.2 (N.D. Ill. Sept. 30, 2021). In the two others, the court certified classes for consumer fraud claims, *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 80-83 (1987); *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 823 (5th Dist. 2007), but Illinois does not let plaintiffs use consumer fraud claims to circumvent the IAA. *See Laughlin v. Evanston Hosp.*, 133 Ill.2d 374, 391 (1990) ("It would be inconsistent to provide that the very conduct which is not sufficient to state a cause of action under the Antitrust Act is sufficient to state a cause of action under the Consumer Fraud Act."). The failure to cite apposite authority is not surprising, since the IAA prohibits indirect-purchaser classes.

The Dealers admit that they did not plead a nationwide IAA class (Dealers Supp. 6 n.9) and are only resorting to the IAA because the federal class they did plead proved a nonstarter from a damages perspective. But as *In re Humira (Adalimumab) Antitrust Litigation* explains, plaintiffs cannot "bring a class action" in federal court in order to "make an 'end run around the Illinois legislature's determination' [in the IAA] that such actions should not be permitted" and "avoid a provision of Illinois law that would otherwise bar this particular type of suit." 465 F. Supp. 3d 811, 851 (N.D. Ill. 2020). The Dealers observe that the end-run in *Humira* involved a consumer fraud claim, Dealers Supp. 14 n.17, but that is a distinction without a difference. If anything, attempting an end-run with an IAA claim is even more obviously improper.

### 5. Arguments about duplication are premature.

The Dealers spend a significant portion of their supplemental brief addressing an illusory summary judgment argument: that "damages awarded to Dealers and Class Members would impermissibly 'duplicate' damages incurred by vendors." Dealers Supp. 7-11. While CDK expects to address duplication in the unlikely event this litigation proceeds to a damages phase, the Court does not need to address the question now. Potential duplication issues arise only if the Dealers can demonstrate that they are entitled to a damages award in the first place.

### C. The Dealers' sur-reply on state law issues is improper and unavailing.

The remainder of the Dealers' brief discusses recent decisions that reject application of certain state class-action bars and pre-suit notice requirements in federal court. Dealers Supp. 12-18.[4] This discussion exceeds the scope of the Court's request for supplemental briefing. The Court asked for briefing on how the *Daubert* rulings "may affect the pending summary judgment motions;" it did not invite general sur-replies and provided that supplemental authority should be addressed separately in the joint status report. Dkt. 1322.

Regardless, CDK has always acknowledged that courts have come to different conclusions about the enforceability of state class-action bars and pre-suit notice requirements. Although the weight of authority favors CDK, CDK's main argument rests on first principles—in particular, whether applying federal law would "displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 423 (2010) (Stevens, J., concurring). Under these principles, the class-action bars and pre-suit

---

[4] The Dealers do not address CDK's other independent grounds for dismissing certain state law claims: (1) lack of a sufficient state "nexus"; (2) failure to allege actionable conduct; and (3) failure to identify proper plaintiffs. *See* Dkt. 973 at 24-27; Dkt. 1123 at 10-15.

notice requirements at issue in this case are enforceable in federal court. *See* Dkt. 973 at 27-34; Dkt. 1123 at 15-19. The Dealers' new authority is not to the contrary.

### 1. Claim-specific class-action bars apply to several claims.

The principal cases the Dealers cite in their supplemental brief are *Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022), and *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021), which concluded that certain Michigan and West Virginia requirements for medical malpractice claims do not apply in federal court. Neither *Albright* nor *Pledger* addressed state antitrust class-action bars, and thus do not shed any light on the Illinois, Colorado, and South Carolina bars at issue in this case.

The new cases the Dealers cite that do discuss state class-action bars are unpersuasive. *Sandee's Catering v. Agri Stats, Inc.*, 2020 WL 6273477 (N.D. Ill. Oct. 26, 2020) (South Carolina), simply adopts *Broiler Chicken*, which is wrong for the reasons CDK has already explained. Dkt. 973 at 32. The two other cases—*Miami Products & Chemical Co. v. Olin Corp.*, 2021 WL 2588090 (W.D.N.Y. June 24, 2021) (Illinois), and *Lessin v. Ford Motor Co.*, 2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) (Colorado)—similarly misapply Justice Stevens's *Shady Grove* concurrence by concluding that it is enough that state class-action bars are "procedural," ignoring the separate intertwinement question that is dispositive here. Dkt. 973 at 32. Accordingly, none of the new cases materially change the legal landscape. To the extent nose-counting is relevant, moreover, other federal courts have recently ruled in CDK's favor.[5]

Importantly, *Miami Products* neither mentions the exception to the class-action bar for *parens patriae* claims by the attorney general on behalf of Illinois residents nor endorses the

---

[5] *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 2022 WL 551221, at *19 (E.D. Mich. Feb. 23, 2022) (applying South Carolina and other state class-action bars); *Murphy v. Toyota Motor Sales USA Inc.*, 2020 WL 10354129, at *6-7 (C.D. Cal. Nov. 24, 2020) (agreeing that "Colorado's limitation on class actions is intertwined with the state right").

Dealers' position that they may proceed as super-attorneys general, bringing nationwide claims that the only person the statute permits to sue on behalf of a class could never bring. See Dkt. 1123 at 15-17. These absurd consequences make it particularly clear that the IAA's class-action bar is intertwined with the scope of the substantive cause of action. The Dealers themselves recognize that Illinois's antitrust law "reflects *different judgments* about the feasibility of trying [indirect-purchaser] claims and the potential danger of duplicative recoveries." Dealers Supp. 8 (quoting *Ill. ex rel. Burris v. Panhandle E. Pipeline Co.*, 935 F.2d 1469, 1480 (7th Cir. 1991)) (emphasis added by the Dealers).[6] Under *Shady Grove*, federal courts should respect those judgments.

Finally, based on their erroneous assertion that federal courts are free to certify nationwide classes under the IAA, the Dealers urge the Court to wait to address these issues because a nationwide IAA class might "render unnecessary" a ruling about other state class-action bars. Dealers Supp. 14-15. But despite multiple opportunities, the Dealers have presented no authority for certifying *any* class under the IAA, let alone a nationwide one, and it is clear from the statute's text and federalism principles that such classes are barred. *See supra* pp. 5-6. Federal courts routinely dismiss class claims that are precluded by applicable state law. Nothing prevents this Court from deciding these fully briefed and purely legal questions at summary judgment.

## 2. Pre-suit notice requirements apply to several claims.

The Dealers failed to give pre-suit notice to state attorneys general or CDK before bringing their claims as required by Hawaii, New Jersey, Utah, and West Virginia. Indeed, the Dealers *still* have not provide noticed to the state attorneys general, resting instead on notice provided by Reynolds as part of an earlier class settlement. The Dealers make improper sur-reply arguments as

---

[6] *See also Henderson v. United States*, 517 U.S. 654, 671 (1996) ("who may sue" and "for what relief" are examples of "substantive matters"); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 416 (S.D.N.Y. 2011) (the IAA's "policy judgment" about who may sue is "substantive").

to whether this should suffice under the various statutes, but CDK is content to stand on its briefing with respect to these questions. *See* Dkt. 973 at 32-34; Dkt. 1123 at 18-19.

Here, CDK addresses the *Pledger* and *Albright* decisions, which the Dealers cite in an effort to show that the pre-suit notice requirements conflict with the Federal Rules and therefore do not apply at all in federal court. As an initial matter, *Pledger* and *Albright* are largely inapposite because they focus on different rules than the ones in this case. *Pledger* addressed West Virginia's requirement that a plaintiff provide a "certificate of merit" from an expert before filing a medical malpractice claim, mentioning notice only insofar as West Virginia law required notice of that certificate to be provided to the defendant. 5 F.4th at 518. The majority concluded that the certificate requirement conflicted with Federal Rules 8, 9, and 12 (addressing the detail that must be pled to state a claim) and Federal Rule 11 (addressing frivolous filings). *Id*. at 519-20. But this case involves just a notice requirement, and the Dealers do not claim that pre-suit notice conflicts with any of these Rules. The only purported conflict the Dealers identify is with Federal Rule 23(c), *see* Dealers Supp. 16, but Rule 23 addresses a wholly separate notice question—namely, the requirements for *post*-certification notice *to the class*. *See Ellis v. Salt River Project Agricultural Improvement & Power Dist.*, 24 F.4th 1262, 1269-70 (9th Cir. 2022) (finding no conflict between an Arizona notice-of-claim statute and Rule 23 and enforcing the Arizona rule).[7]

*Albright* is closer to on-point, but distinguishable and ultimately unpersuasive. It involved two Michigan requirements for medical malpractice suits: one requiring an affidavit-of-merit similar to *Pledger*, and another providing that "a person shall not commence an action" without pre-suit notice. 24 F.4th at 1043. *Albright* first concluded that the affidavit-of-merit requirement conflicted with the Federal Rules for reasons similar to *Pledger*. *Id*. at 1045-46. It then separately

---

[7] As the Dealers do not dispute, without a conflict between a pre-suit notice requirement and a Federal Rule, *Shady Grove* does not apply and the state law should control. *See* Dkt. 973 at 33-34; Dkt. 1123 at 18.

-10-

concluded that Michigan's pre-suit notification requirement conflicted with Federal Rule 3, which provides that "a civil action is *commenced* by filing a complaint with the court." *Id*. at 1047. Unlike the Michigan law in *Albright*, the notice statutes here do not make notice a prerequisite to "commencing" an action. The conflict the *Albright* majority identified therefore does not apply.

In any event, as the dissent in *Albright* persuasively explained, there is no conflict between Rule 3—which merely addresses *when* an action is "commenced"—and Michigan's pre-suit notice requirement. *Id*. at 1049-50 (Siler, J., dissenting in part). Prior to *Albright*, "no United States Court of Appeals circuit ha[d] ever found a conflict between Rule 3 and a similar pre-suit requirement," *id*. at 1050, and the Dealers did not cite Rule 3 as the basis for a conflict here.[8]

## II. AUTOLOOP'S SUPPLEMENTAL ARGUMENTS ARE ALSO MERITLESS.

CDK has moved for summary judgment on all of AutoLoop's claims. Dkt. 969 at 1-2. As with the Dealers' supplemental brief, AutoLoop fails to show why the Court's *Daubert* Order creates a genuine disputes of fact precluding summary judgment. Indeed, CDK has already addressed most of the issues AutoLoop raises in its own opening supplemental brief.

### A. CDK is entitled to summary judgment on liability.

#### 1. There is no genuine dispute on the conspiracy claim.

CDK's opening supplemental brief demonstrated why a few discrete, undisputed facts demonstrate that the evidence as a whole does not rule out that CDK acted independently in deciding to secure its DMS years after Reynolds did so, thus warranting summary judgment. *See* CDK Supp. 2-3. AutoLoop's lead argument—that it has "*direct* evidence of the alleged agreement"

---

[8] Even if Plaintiffs' analogy to medical malpractice rules applies here—it does not— the Dealers' failure to give the required notice still warrants summary judgment. The Seventh Circuit has held that Illinois's requirement that a certificate of merit be attached to the complaint in malpractice cases does not apply in federal court at the motion to dismiss stage, but that matters are different at summary judgment, where the "state substantive goal[s]" served by the certificate requirement and "the federal procedural system" can "exist harmoniously." *Young v. United States*, 942 F.3d 349, 351-52 (7th Cir. 2019).

making expert or circumstantial evidence unnecessary (AutoLoop Supp. 4-5)—fails as a matter of law. CDK Supp. 4 n.3. AutoLoop continues to advance an absurdly broad view of what constitutes "direct" evidence, reflecting a significant lack of confidence in its supposed blockbuster witness, Authenticom CEO Steve Cottrell. *See* Dkt. 1120 at 3-4.[9] And Cottrell's testimony has proved far from "direct," and is not enough to support a conspiracy given the abundant evidence of unilateral decision-making in the record as a whole. Dkt. 966 at 43-52; Dkt. 1120 at 4-6.

AutoLoop next contends that Dr. Israel's testimony provides a basis to deny summary judgment. AutoLoop Supp. 5-7. But again, this ignores the distinction between *Daubert* and *Matsushita* that the Court repeatedly emphasized in its Order. *See supra* p. 1; CDK Supp. 1-5.

### 2. There is no genuine dispute on the non-conspiracy claims.

AutoLoop argues that there are genuine disputes precluding summary judgment on the non-conspiracy claims because the Court's Order leaves it to the factfinder to assess Dr. Israel's contested market definition. AutoLoop Supp. 7-8. However, CDK has identified numerous grounds for summary judgment other than market definition. AutoLoop's unilateral claims hinge on the viability of AutoLoop's exclusive-dealing theory, which fails because AutoLoop has no antitrust injury or evidence of substantial foreclosure. Indeed, Dr. Israel did not even try to show that the supposed exclusive-dealing provisions alone are anticompetitive. CDK Supp. 6-7.

AutoLoop also argues that it can pursue an aftermarket monopolization claim despite the Court's exclusion of Allan Stejskal's switching opinions. AutoLoop Supp. 8-9. But AutoLoop had no hard evidence on this point well before the Court excluded Mr. Stejskal's opinion. *See* Dkt. 966

---

[9] For example, AutoLoop asserts as direct evidence that "senior Reynolds and CDK executives met in September 2013 and reached agreement on each of the objectives of the conspiracy." AutoLoop Supp. 5. This refers to the framework for negotiating *the 2015 Agreements*—which the Seventh Circuit has held do not restrict either Defendant from allowing or prohibiting hostile integration on its DMS. *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017) ("nothing in any of the three [2015 Agreements] required either CDK or Reynolds to block third-party access to its own data management system").

at 74-76; Dkt. 1120 at 37-38; Dkt. 1125 ¶¶ 2-7. Proving the point, among the evidence on which AutoLoop now relies is a single paragraph of Dr. Israel's report, AutoLoop Supp. 8, even though Dr. Israel "entirely disagree[d]" that this case should be analyzed using an aftermarket framework. Dkt. 966 at 71. The Court's Order simply makes the lack of evidence more clear. CDK Supp. 6.

### B. CDK is entitled to summary judgment on damages.

#### 1. No rational jury could use AutoLoop's overcharge damages model.

AutoLoop argues that the decision to admit Dr. Israel's testimony shows that any criticisms of his damages opinions are "at best fodder for cross-examination at trial." AutoLoop Supp. 9-11. But again, that ignores the Court's own words. As the Court stated, where an expert is unable "to isolate those elements of the plaintiff's damage that were caused by the antitrust violation," the "correct resolution is not exclusion of the testimony under *Daubert* but rather a summary judgment grant." Order 16. This does not "tak[e] away from the factfinder the determination of how defendants would have acted but-for the alleged conspiracy." AutoLoop Supp. 10-11. It simply reflects AutoLoop's failure to give the jury the tools to rationally assess damages in the first place.

AutoLoop also contends that summary judgment on damages is inappropriate given the conclusion that "Defendants have not developed a record suggesting that a hypothetical composition effects error [in Dr. Israel's analysis of Reynolds's prices] has skewed Israel's calculations in any material way." AutoLoop Supp. 10 (citing Order 24). But CDK's argument does not depend on composition effects. It relies on the fact that a unilateral decision by CDK to secure the DMS would be lawful; CDK's unilateral pricing power (as described by AutoLoop's own expert); and the absence of any genuine issues of fact regarding the legality of the challenged unilateral "exclusive-dealing" provisions. These unchallenged legal and factual propositions show that no rational jury could use Dr. Israel's model to award legally appropriate damages. *See* CDK Supp. 7-10. Under *Blue Cross & Blue Shield of Wisconsin v. Marshfield Clinic*, 152 F.3d 588 (7th

Cir. 1998), that is grounds for summary judgment. *See* Order 26 (the appropriate but-for world is "a question for the factfinder—unless the material facts are undisputed and there is only one reasonable inference to be drawn" at summary judgment).

### 2. No rational jury could use AutoLoop's switching damages model.

In addition to his overcharge model, Dr. Israel purports to calculate $22 million in "forced switching" damages. These damages represent the supposed harm that vendors incurred when they were "forced" to switch from hostile integration to the 3PA program, assuming that the vendors valued both options exactly the same. Dkt. 969 at 14-15. The Court did not address switching damages, let alone hold that Dr. Israel's analysis would allow a rational jury to award these "switching" costs as damages based on Dr. Israel's indifference assumption, in its Order.

As summary judgment, the crux of the problem with "forced switching" damages—which AutoLoop's supplemental brief ignores (AutoLoop Supp. 11)—is that Dr. Israel's assumption that vendors were indifferent between 3PA and hostile integration is not only facially nonsensical, but contrary to the record. Dkt. 969 at 14-16; Dkt 1122 at 10-11. Indeed, AutoLoop itself recognized that 3PA integration was superior to hostile integration. Dkt. 974 ¶ 26. In *Marshfield Clinic*, the Seventh Circuit granted summary judgment based on a similar expert failure to "correct for differences in the quality of the services rendered." 152 F.3d at 593. Despite this, Dr. Israel made no attempt to correct for the obvious differences in quality between hostile integration and the certified 3PA program. In fact, he admitted that he did not do so because it made his calculations easier. This warrants summary judgment as to "forced switching" damages. If a jury cannot "make a responsible estimate of damages" based on the evidence in the record, a judge should "throw out" the damages even if some other record might be sufficient. *Id*. at 594.

### CONCLUSION

The Court should grant CDK's pending motions for summary judgment.

Dated: March 12, 2022                              Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Matthew D. Provance
Daniel T. Fenske
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
mprovance@mayerbrown.com
dfenske@ mayerbrown.com
jglickstein@mayerbrown.com

*Counsel for Defendant
CDK Global, LLC*

## CERTIFICATE OF SERVICE

      I, Britt M. Miller, an attorney, hereby certify that on March 12, 2022, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S RESPONSE TO PLAINTIFFS' FEBRUARY 25, 2022 SUPPLEMENTAL BRIEFS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                      */s/ Britt M. Miller*
                                      Britt M. Miller
                                      MAYER BROWN LLP
                                      71 South Wacker Drive
                                      Chicago, IL 60606
                                      (312) 782-0600
                                      bmiller@mayebrown.com