**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To:<br><br>*ALL CASES* | Hon. Rebecca R. Pallmeyer<br>Magistrate Judge Jeffrey T. Gilbert |

**JOINT STATUS REPORT**

The Court has set a status hearing for July 28, 2023 (Dkt. 1385). The Parties[1] respectfully submit this joint status report on the following items that they wish to address at the hearing: (1) whether/when to remand the *AutoLoop* direct purchaser vendor class action to the Western District of Wisconsin for trial; (2) when to remand the *MVSC* action to the Central District of California for trial; (3) the *AutoLoop* order to show cause; (4) class certification briefing schedules for both the Dealer and Vendor class actions; and (5) Dealers' request for trial dates and structure.

**I.     Whether/When to Remand *AutoLoop* to the Western District of Wisconsin**

**AutoLoop Statement**

**A.**     Pursuant to 28 U.S.C. § 1407(a), the direct purchaser class action (*AutoLoop*) should be remanded to the Western District of Wisconsin for further proceedings. The Western District of Wisconsin is the transferor district for *AutoLoop* because, as Judge St. Eve directed when she presided over this MDL, the case was "deemed filed" in that district. *See* Dkt. 116 at 44-45 (4/6/18 Hrg. Tr.) (Judge St. Eve agreeing that AutoLoop "direct[ly] fil[ing]" in the MDL court but having the case "be deemed to have been filed in the Western District of Wisconsin"

---

[1] The Parties submitting this joint status report are Loop LLC d/b/a AutoLoop, as representative of the putative direct purchaser Vendor class ("AutoLoop" or "Vendors"), Motor Vehicle Software Corporation ("MVSC"), the putative Dealer class ("Dealers"), CDK Global, LLC ("CDK"), and The Reynolds and Reynolds Company ("Reynolds").

would "make[] the most sense from an efficiency and cost standpoint. So, yes, you may directly file that here."), attached hereto as Exhibit A. Pursuant to Judge St. Eve's direction, AutoLoop filed its class complaint directly in the MDL, but specified the Western District of Wisconsin as the transferor court. *See* Dkt. 194 (Am. Compl. ¶¶ 35-36, & n.4) (specifying W.D. Wisconsin as the venue and noting that "[p]ursuant to the Court's instructions at the April 6, 2018 status hearing in [this MDL], AutoLoop has filed this Complaint directly in the MDL court but requests that the Complaint be deemed filed in the Western District of Wisconsin and transferred [there] for trial.").

In *Looper v. Cook Inc.*, 20 F.4th 387 (7th Cir. 2021) – in an opinion joined by Judge St. Eve – the Seventh Circuit addressed this very situation, and held that "[d]irect-filing eliminates the need for plaintiffs to file their cases in their home jurisdictions (or other valid forums apart from the MDL court) and then wait for their cases to be tagged and later transferred to the MDL transferee court." *Id*. at 390. Thus, "once the transferee judge institutes direct filing" – which Judge St. Eve did here at the April 6, 2018 hearing – "foreign cases filed directly in a district court as a part of ongoing multidistrict litigation are treated as having originated outside of that district." *Id*. at 390, 392 (citation and quotation marks omitted).

Ignoring *Looper*, CDK argues that this action should remain in the Northern District of Illinois. But CDK has waived any such argument in two ways. First, at the April 6, 2018 status hearing where Judge St. Eve instituted direct filing, counsel for CDK stated that it "would not oppose" AutoLoop filing in the MDL while deeming the complaint as having been filed in the Western District of Wisconsin. *See* Dkt. 116 at 44 ("But we said if your Honor was inclined to allow a direct file, we would not oppose" it.). After CDK stated its non-opposition, Judge St. Eve affirmed that direct filing made "the most sense" and directed AutoLoop to do so. *Id*. Second, CDK has waived any Rule 12(b)(3) defense for improper venue by failing to assert it in its Rule

12(b) motion to dismiss.  *See* Fed. R. Civ. P. 12(h) ("improper venue" defense is waived if not asserted in Rule 12(b) motion).  In any event, the argument would have been meritless because, among other things, substantial events giving rise to the action – namely, CDK and Reynolds's efforts to eliminate the independent data integrator Authenticom (on which AutoLoop relied) – occurred in the Western District of Wisconsin because Authenticom resides there.  *See* Dkt. 194 (Am. Compl. ¶¶ 35-36).

B.     All coordinated and consolidated pretrial proceedings – including discovery, *Daubert* motions, and dispositive motions – have now been completed for *AutoLoop*, and it therefore can be remanded to the Western District of Wisconsin.  The only remaining pretrial motion for *AutoLoop* is class certification, but that motion is not a "coordinated or consolidated pretrial proceeding," 28 U.S.C. § 1407(a), because it does not overlap with any other pending case in the MDL: *AutoLoop* is the only putative class for direct purchasers.

CDK notes that the Parties previously contemplated that the MDL court would resolve class certification motions, but that was before the Court issued its summary judgment rulings (which highlight that the indirect purchaser dealer classes raise a host of issues not present in *AutoLoop*) and before CDK and the Dealer Class proposed their prejudicial class certification schedules that would extend the process into April 2024 so that they can, as CDK described it, deal with their "complicated issues as to class certification and *Daubert*."  *See infra* Part IV (CDK Statement).  AutoLoop's class certification motion, by contrast, is straightforward and can easily be handled by the Western District of Wisconsin.  *Id*. (AutoLoop Statement).

CDK argues that both the Vendor and Dealer classes pose the question whether the conspiracy and injury can be proved on a class-wide basis, but that will not be in serious dispute whether class certification is decided by this Court or the Western District of Wisconsin: AutoLoop

is seeking to certify a class of direct purchasers each injured by the same antitrust conspiracy – the prototypical case for class resolution. *See, e.g.*, 6 Newberg on Class Actions § 18.25 at 84 (5th ed.) ("common liability issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues").

In any event, the Judicial Panel of Multidistrict Litigation has held that multiple transferor courts can properly resolve class certification motions that have factual overlap (as here, given the common conspiracy) but no overlap in terms of class members (which cannot occur here given the difference in direct and indirect purchasers). *See In re Light Cigarettes Marketing & Sales Prac. Litig.*, 856 F. Supp. 2d 1330, 1331-32 (J.P.M.L. 2012) (ordering remand of actions prior to class certification where the putative classes were "non-overlapping"). Accordingly, this Court should recommend to the Judicial Panel on Multidistrict Litigation ("JPML") that the *AutoLoop* action be remanded to the Western District of Wisconsin pursuant to JPML Rules 10.1(b) and 10.2(a). *See generally Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, [coordinated or consolidated] pretrial proceedings have run their course").

## CDK Statement

**a. *As a Direct-filed Action, the Vendor Action is not eligible for remand.***
AutoLoop's action should not be transferred to the Western District of Wisconsin for trial; rather, it should remain before this Court. At an April 6, 2018 status conference, Judge St. Eve gave AutoLoop permission to directly file its complaint in the MDL, Dkt. 116 at 44-45, as contemplated by the court's Initial Status Order, Dkt. 10 at 1 (referring to actions "directly filed in the Northern District of Illinois"). At the status conference, CDK made clear that it did not concede that venue was proper in the Western District of Wisconsin. Dkt. 116 at 44-45. Nothing in the Court's Initial

Status Order provides that a direct-filed action shall be transferred to any particular court at the conclusion of pretrial proceedings. *See* Dkt. 10. Thereafter, AutoLoop directly filed its complaint in the MDL. *See* Dkt. 194.[2]

Transfer of AutoLoop's action is governed by 28 U.S.C. § 1404(a), not § 1407(a). Under 28 U.S.C. § 1407(a), each action transferred to the MDL "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred." By its terms, remand under § 1407(a) applies only to actions transferred to the MDL from a district court. Direct-filed actions are not within the JPML's remand authority under this section because they were not transferred to the MDL by a transferor court. Instead, direct-filed actions are subject to the transfer analysis under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented."

Under § 1404(a), the Court is to consider the convenience of the parties, including the availability of and access to witnesses, each party's access to and distance from resources in each forum, and the location of material events. *Network After Work, Inc. v. Zenvoy, LLC*, 2021 WL 2453068, at *4 (N.D. Ill. June 16, 2021). These factors favor the Northern District of Illinois over the Western District of Wisconsin: (1) at the relevant times, CDK was headquartered in the Northern District of Illinois; (2) AutoLoop is not a Wisconsin corporation and was not headquartered Wisconsin[3]; (3) at most, AutoLoop asserts that it "has served" some dealers in the

---

[2] In the complaint, AutoLoop requested that its complaint be deemed filed in the Western District of Wisconsin, *id.*, p. 4 n.4, and alleged that venue over its direct-filed action was proper in the that District.

[3] AutoLoop is represented by the same counsel as Authenticom, which was the first Plaintiff to file suit (in the Western District of Wisconsin). It is not at all clear that AutoLoop would have filed its case in that District had Authenticom not done so first.

Western District of Wisconsin; (4) the anti-competitive behavior by CDK that AutoLoop alleges arose in the Northern District of Illinois; (5) the sources of proof and witnesses are unlikely to be located in the Western District of Wisconsin; and (6) Illinois has a greater interest in the controversy because it concerns a company that was at relevant times based in Illinois. The Northern District of Illinois has a stronger connection to the alleged conduct and is more convenient to the parties. Therefore, AutoLoop's action should not be transferred to the Western District of Wisconsin for trial.

AutoLoop's reliance on *Looper v. Cook Inc.*, 20 F.4th 387 (7th 2021), is misplaced. First, *Looper* did not hold that a direct-filed action was subject to remand under § 1407. Second, *Looper*'s choice-of-law analysis says nothing about the application of the § 1404(a) factors to determine where, if anywhere, a direct-filed action should be transferred after consolidated pretrial proceedings in an MDL have concluded. The § 1404(a) analysis is used to determine to which of multiple potentially permissible venues an action should be transferred. In a direct-filed case, there is no opportunity to contest venue at the time of filing; instead, the § 1404(a) inquiry is to be conducted now, and the relevant factors plainly favor the Northern District of Illinois over the Western District of Wisconsin for the reasons explained.

The Vendor Class claims that CDK "waived" its opposition to remand to the Western District of Wisconsin based on statements made at a status conference in 2018. Dkt. 116 at 44. But the very statements Plaintiffs cite make clear that CDK wasn't "going to stipulate" to a direct filing, but that "if your Honor was inclined to allow a direct file, we would not oppose." *Id.* The issue here, however, is not if the Vendor Class should be permitted to directly file in this Court— it already has—but what the consequences of that direct filing are on its ability to remand to the Western District of Wisconsin.

6

CDK requests the opportunity to fully brief this issue.

**b. *Class Certification Should be Decided by the MDL Court.*[4]** Additionally, even if transfer to the Western District of Wisconsin were appropriate—which it is not—this Court should decide the Vendors' forthcoming class-certification motion prior to remand. Cases are consolidated within an MDL to conserve judicial resources, "avoid[] duplicative rulings," *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996), and ensure "consistency" when the same legal or factual questions are presented by multiple cases, *Johnson v. AMR Corp.*, 1996 WL 164415, at *3 (N.D. Ill. Apr. 3, 1996). Transferee courts thus routinely decide motions for class certification because doing so achieves the judicial economy and consistency goals of the MDL statute. *See, e.g.*, Wright & Miller, *Federal Practice & Procedure* § 3866 ("Indeed, class action certification rulings seem especially well-suited for decision by the transferee court because the transferee judge has an overall view of the litigation."); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2012 WL 1015806, at *1 (N.D. Ill. Mar. 22, 2012) (transferee court deciding class-certification motion); *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 185, 191 (S.D.N.Y. 2007) (same); *In re Voxx Prods. Liab. Litig.*, 239 F.R.D. 450, 453-54 (E.D. La. 2006) (same). These considerations mean that centralized treatment in an MDL is appropriate even if the prospective classes are "carefully defined so that no overlap exists" between

---

[4] As discussed *infra* in Section IV, the Vendors have consistently acknowledged that class certification should be resolved by the MDL Court and even did so as recently as last week during the parties' meet-and-confer related to the instant Status Report. The Court's Orders have always contemplated that it would hear class certification in these matters and there is no compelling reason for the Court to reverse course at this point in the proceedings.

the classes because it ensures "consistent application of Rule 23." *Multidistrict Litigation Manual* § 5:24 (2023) (internal quotation marks omitted).

Those considerations equally dictate that this Court should decide the Vendors' class certification motion here. While *AutoLoop* is the only pending case addressing a direct purchaser class, the Vendors' claims are inescapably intertwined with the claims of the Dealers. All Plaintiffs allege that the same conspiracy harmed them, and the Dealers' alleged injury is derivative of any alleged injury experienced by the Vendors, because the Dealers assert that they were injured only by passed-on costs experienced by the Vendors. *See* Dkt. 1381, at 67. The same court should decide whether the proposed Dealer class and any proposed Vendor class will be certified, because the question whether either class can establish proof of injury on a class-wide basis—thus satisfying the commonality and predominance requirements of Rule 23—will be very similar if not essentially the same as to both classes. *See, e.g.*, *In re Bank of Am. Wage & Hour Employment Practices Litig.*, 706 F. Supp. 2d 1369, 1370 (J.P.M.L. 2010) (transferring cases to MDL where all plaintiffs' "basic allegations mirrors those in other actions," namely that Bank of America "systematically" failed to pay for certain overtime work, in order "to prevent inconsistent pretrial rulings, including with respect to class certification"). AutoLoop's sole response to the fact that these class certification motions will present similar legal questions is a bald assertion that the class certification question is not "in serious dispute" and that alleged antitrust conspiracies are regularly subjected to resolution on a class-wide basis—and so purportedly this one should be as well. But the outcome of the Vendors' and Dealers' class certification motions is hardly a foregone conclusion. MDL courts routinely address class certification motions in cases alleging antitrust conspiracies and routinely deny certification because the plaintiffs cannot establish injury on a class-wide basis. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 934 F.3d 619, 620

8

(D.C. Cir. 2019) (affirming district court's denial of class certification because plaintiffs were unable to prove injury on a class-wide basis). Because different courts may reach different conclusions regarding the issues of commonality and predominance in this case, as they have in others, the class certification motions should be decided by this Court to ensure uniformity in the application of Rule 23.

## II.    When to Remand *MVSC* to the Central District of California

### MVSC Statement

With the denial of Reynolds's motion for summary judgment, the *MVSC* case is ready to be remanded to the transferor court (the Central District of California) for trial. All coordinated or consolidated pretrial proceedings are complete for MVSC. The only pending motion is MVSC's motion for sanctions against Reynolds. *See* Dkt. 1231. That motion was originally filed in the MDL jointly by MVSC and Authenticom instead of later in the transferor districts because the motion overlapped between multiple actions and to avoid any arguments regarding timeliness of the motion. However, with the resolution of the *Authenticom* action, that motion is now case-specific to *MVSC* and should be addressed by the transferor court. The motion also seeks relief "related to the administration of individual trials" – namely, precluding certain arguments by Reynolds and adverse-inference instructions, *see* Dkt. 1233, at 16-22 – that "should be decided by the court that will actually conduct the trial." *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 276 F.R.D. 336, 339 (W.D. Mo. 2011). As for CDK's concern about a forthcoming AutoLoop spoliation motion, AutoLoop will file any such motion only after remand at which point CDK will have an opportunity to oppose.

If the Court has already begun its consideration of the sanctions motion, then MVSC of course does not oppose the Court completing its work. But in the interest of getting *MVSC* back

to the transferor court and scheduled for trial, if the Court has yet to begin its consideration of the motion, then MVSC requests that *MVSC* be remanded for trial along with the pending motion for sanctions.

**Reynolds Statement**

MVSC's February 8, 2021 motion for sanctions against Reynolds (ECF No. 1231) should be decided by this Court before the case is remanded to the Central District of California for trial. That motion – like the summary judgment motions the Court recently ruled on – was fully briefed by June 2021. Just and efficient adjudication of the case favors this Court deciding a fully briefed pretrial motion. *See, e.g., In re Denture Cream Products Liability Litig.*, 204 F.Supp.3d 1348, 1353 (S.D. Fla. 2016) (holding that it would be more efficient for the transferee court to rule on pending motions rather than ask transferor courts "to learn the tortured factual and procedural histories from scratch."); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) (holding that it would be more efficient for the transferee court to rule on pending motions "rather than to ask the transferor court to play catch-up.").

MVSC argues that its motion raises trial administration issues that should be resolved by the trial court. MVSC waived this argument over two years ago when it made the decision to file its motion before this Court. In that motion, MVSC took the opposite position, explaining that it was appropriate for an MDL court to resolve the issues presented by MVSC "because they concern 'pretrial proceedings.'" *See* ECF No. 1233, at 17, citing 28 U.S.C. § 1407(a); *see also In re Korean Airlines Co.*, 642 F.3d 685, 699 (9th Cir. 2011) ("[Transferee court] may handle and resolve discovery motions, including those involving . . . appropriateness of . . . sanctions.") (also cited by MVSC in ECF No. 1233, at 17). MVSC relies on *In re Bisphenol-A (BPA) Polycarbonate Plastic Prod. Liab. Litig.*, 276 F.R.D. 336, 339 (W.D. Mo. 2011), but that case is inapposite -- the court

there denied plaintiffs' request to certify individual state classes; it did not remand anything. That case also did not involve a motion that had been pending for over two years.

Once the pending motion for sanctions is resolved, Reynolds agrees that what remains of *MVSC's* case following summary judgment can be remanded to the Central District of California for trial.

### CDK Statement

The Court should not remand *MVSC* until after it has decided the sanctions motion. The pending sanctions motion against Reynolds, Dkt. 1231, does not allege that CDK facilitated or encouraged any alleged spoliation. Despite that, AutoLoop—which is represented by the same counsel as MVSC—has stated that it "intends to move for a jury instruction" related to alleged spoliation in its case against CDK at some later date. Dkt. 1233, at 17 n.11. CDK has already responded to that argument in a brief submitted in this Court. *See* Dkt. 1270. That motion should not be decided in the Central District of California in a case in which CDK is not a party and so will have no opportunity to defend itself. Because the ruling on the motion for sanctions will affect other litigation in this MDL, this Court should decide the sanctions motion itself to ensure consistent ruling across the cases in this MDL, the very purpose of an MDL.

### III.    *AutoLoop* Order to Show Cause

### AutoLoop Statement

In its summary judgment ruling, the Court ordered "AutoLoop to show cause why the court should not dismiss AutoLoop's monopolization claim, as proving that claim to a jury would require proving the § 1 conspiracy yet would yield no additional damages." Dkt. 1381 at 79. For two reasons, AutoLoop has elected not to file a motion in response to the order to show cause, despite the merits of AutoLoop's § 2 monopolization claim: (1) The briefing on the order to show cause

11

would delay the remand of *AutoLoop* to the W.D. of Wisconsin, and AutoLoop's primary interest is to proceed to trial on behalf of the class it represents as expeditiously as possible; and (2) AutoLoop will be able to streamline its trial presentation by focusing on the § 1 conspiracy claim. Accordingly, in order to proceed directly to class certification and trial, AutoLoop will not file a motion on its § 2 monopolization claim in response to the Court's order to show cause.

### CDK Statement

As discussed above, CDK does not believe that the *AutoLoop* is eligible to be remanded to the W.D. of Wisconsin. Regardless, as AutoLoop has elected not to pursue its § 2 monopolization claim, CDK asks that the Court enter summary judgment in its favor on that claim.

## IV. Class Certification Schedule

The Parties previously submitted their positions on class certification briefing (*see* Dkt. 1364), but with the Court's issuance of summary judgment opinions, it is necessary to set a schedule for this briefing.[5] The Parties' positions are set forth in the chart below:

---

[5] The initial class certification briefing dates were tied to the *Authenticom* trial (21 days after conclusion of *Authenticom* trial) (*See* Dkt 1364), and are no longer applicable due to Authenticom's settlements with CDK and Reynolds.

| Event | Plaintiffs' Positions on Class Cert. Date | CDK's Position on Class Cert. Date |
|---|---|---|
| Deadline for Motions, Plaintiffs' Designation of Experts and Accompanying Expert Reports | Direct Purchaser Vendor Class: N/A due to remand.  If not remanded, August 28, 2023 (60 days after summary judgment rulings).  Dealer Class[6]: October 25, 2023 (90 days after July 28, 2023 Court conference) | Both Vendor and Dealer cases: October 25, 2023 |
| Deadline for Oppositions, Defendants' Designation of Experts, Accompanying Expert Reports, and Defendants' *Daubert* challenges to Plaintiffs' experts | Direct Purchaser Class:  N/A due to remand.  If not remanded, October 9, 2023 (6 weeks after service of motion for Class Certification).  Dealer Class:  December 6, 2023 (6 weeks after service of motion for Class Certification). | Both Vendor and Dealer cases: December 6, 2023 |
| Deadline for Replies in Support of Class Certification; oppositions to *Daubert* challenges to Plaintiffs' experts; and Plaintiffs' *Daubert* Challenges to Defendants' experts. | Direct Purchaser Class:  N/A due to remand.  If not remanded, November 6, 2023 (4 weeks after date above).  Dealer Class: January 17, 2024 (6 weeks after service of Oppositions). | Both Vendor and Dealer cases: January 17, 2024 |
| Deadline for replies in support of Defendants' *Daubert* challenges to Plaintiffs' experts, and oppositions to Plaintiffs' *Daubert* challenges to Defendants' experts | Direct Purchaser Class:  N/A due to remand.  If not remanded, December 4, 2023 (4 weeks after date above).  Dealer Class: February 14, 2024.[7] | Both Vendor and Dealer cases: February 28, 2024 |

---

[6] Both Dealer and Vendor Classes are pursuing, *inter alia*, Sherman Act claims based upon the same set of facts.  While both the Dealers and the Vendors seek injunctive relief under the Sherman Act, the injunction sought by the Dealers is necessarily *broader* than that sought by the Vendors, given that Cox (the largest Vendor) has settled its claims against CDK. In addition, both Dealer and Vendor Classes are pursuing claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) under the same set of facts. (Dkt. 1381 at 79).

[7] *Daubert* briefing may not be necessary; however, to the extent it is, the Dealer Class has proposed dates in the chart for those potential motions.

| Event | Plaintiffs' Positions on Class Cert. Date | CDK's Position on Class Cert. Date |
|---|---|---|
| Deadline for replies in support of Plaintiffs' *Daubert* challenges to Defendants' experts | Direct Purchaser Class:  N/A due to remand.  If not remanded, December 22, 2023 (3 weeks after date above).<br><br>Dealer Class: March 13, 2024 | Both Vendor and Dealer cases: March 20, 2024 |
| Deadline to Complete Class Certification Process | Direct Purchaser Class:  N/A due to remand.  If not remanded, unncessary.<br><br>Dealer Class: Unnecessary | Both Vendor and Dealer cases: April 3, 2024 |
| Hearing on class certification motions and related *Daubert* challenges | Direct Purchaser Class:  N/A due to remand.  If not remanded, a hearing only if the Court calls for one.<br><br>Dealer Class: March 21, 2024 if the Court requires a hearing. | Both Vendor and Dealer cases: at the Court's convenience after April 3, 2024 |

### *AutoLoop* Vendor Class Statement

As noted above, AutoLoop's position is that its case should be remanded to Wisconsin for class certification and then trial.  If the Court decides to keep *AutoLoop* for class certification, then AutoLoop respectfully requests that its class certification motion be due on August 28, 2023 (60 days after the ruling on summary judgment), with all other dates largely remaining the same from the existing case management order (Dkt. 166).  AutoLoop's motion for class certification is straightforward and follows directly from the Court's summary judgment ruling, which demonstrated that common issues predominate as to both liability (the evidence of the § 1 conspiracy is common to the class) and damages (Dr. Israel has already calculated damages for each vendor class member, and the Court rejected CDK's challenges to his methodology at both *Daubert* and summary judgment).  And the Rule 23(a) factors are not seriously in

dispute. AutoLoop will be ready to file its class certification motion and Dr. Israel's accompanying expert report on August 28, 2023.

The indirect purchaser dealer classes want an additional two months to file their class certification papers, and CDK supports an even longer schedule. This disagreement serves to highlight the differences between the vendors and dealers. Among other things, the dealers need to have their expert (Dr. Williams) calculate damages for their claims still in the case after the Court rejected his nationwide calculation under *Daubert*, and CDK will challenge those new calculations and methodology at the class certification stage. The dealers also need to find class representatives for most of the states with claims still in the case, and CDK will almost certainly seek discovery from these new named plaintiffs. The vendors have none of these issues. This is yet another reason why *AutoLoop* should be sent back to Wisconsin while the dealers and CDK sort through the thorny issues presented by the indirect classes.

Indeed, now that it has defeated summary judgment, AutoLoop's primary interest is to get to trial and recover damages for the putative class of vendors it represents. But tying *AutoLoop* to the schedules proposed by CDK and the Dealer Class would lead to intolerable delay: *AutoLoop* cannot get a trial date in the Western District of Wisconsin until it is remanded – which under *Looper* it must be – and per AutoLoop's local Wisconsin counsel, the court there is currently scheduling trials nine months to a year out. That puts *AutoLoop* going to trial in mid-2025 at the earliest, which is highly prejudicial for a meritorious case that has already been litigated for over five years. The better and more efficient course is to remand the case now so that the Wisconsin court can set a trial date while it adjudicates AutoLoop's straightforward class certification motion.

Barring that, AutoLoop respectfully requests that the Court set a class certification schedule that does not delay the resolution of AutoLoop's motion so that it can be remanded as soon as possible to the Western District of Wisconsin for trial.

**Dealer Class Statement**

On June 4, 2018, Dealers filed their Consolidated Class Action Complaint on behalf of a nationwide class of car dealerships alleging antitrust allegations against both CDK and Reynolds (Dkt. 184). On January 23, 2019, the Court approved a settlement between the Dealers and Reynolds for $29.5 million (Dkt. 502). Over the past five years, Dealers have continued to pursue claims against the remaining defendant, CDK. The Dealers' proposed schedule above provides sufficient time for class certification to go forward. Given that the Dealer Class has waited five years to proceed to class certification and trial, we urge the Court to accept this schedule with no additional delays.

The Dealer Class may include additional plaintiffs to represent certain state class claims. There is legal support, however, that additional plaintiffs are unnecessary for the Court to certify Dealers' proposed classes. *See, e.g.*, *In re Pork Antitrust Litig.*, 2023 WL 2696497, at *17-18 (D. Minn. Mar. 29, 2023) (granting class certification where named plaintiffs resided in only 11 of 28 states); *Hospital Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta Pharms.,* 333 F.R.D. 390, 414 (M.D. Tenn. 2019) (rejecting contention that indirect purchasers were required for every state at class certification stage); *see also Muir v. Nature's Bounty (DE), Inc.,* 2018 WL 3647115, at *8 (N.D. Ill. Aug. 1, 2018) (Pallmeyer, J.) (differences between a class representatives' claims and those of absent class members will be analyzed under Rule 23).

However, if additional class representatives are added, Dealers anticipate filing a motion under Fed. R. Civ. P. Rules 15 and/or 21 for this purpose ***without asserting new claims***.[8]

Adding plaintiffs to a case does not necessarily require amending a complaint. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 n.97 (S.D.N.Y. 2004) (holding that an individual who is not a named plaintiff in the complaint can serve as a class representative); *see also Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, 328 F.R.D. 255, 268 (D. Alaska 2018) (footnotes omitted):

> As Plaintiffs correctly point out, "Rule 23(a) does not explicitly require that a class representative must be a named plaintiff in the action." Courts that have considered the rare circumstance of whether to appoint a non-named plaintiff as an additional class representative have not undertaken a Rule 15 or Rule 16 analysis, nor have they required the pleadings be amended to include class representatives as a named plaintiff in the action. The Court thus declines both to undertake an analysis under Rule 16 that it is not required to do or to require Plaintiffs to amend the First Amended Complaint to add Hubbs and Shephard as named plaintiffs.

Accordingly, to add new named representatives in this case, the operative pleadings need not be amended, and courts do not require that Rules 15 or 16 be satisfied.

If the Court requires Dealers to amend their complaint, however, courts in the Seventh Circuit, and elsewhere, permit the addition of new class plaintiffs at the class certification stage with claims that relate to the same acts and occurrences. *See T.S. v. Twentieth Century Fox Television*, 548 F.Supp.3d 749, 791-92 (N.D. Ill. 2021) (Pallmeyer, J.) (plaintiff satisfied Rule 15 in amending complaint for the purpose of adding class representative), *rev'd on other grounds*, 67 F.4th 884 (7th Cir. 2023).

The Dealer Class (which includes a proposed nationwide class of car dealerships for injunctive relief under the Sherman Act, a proposed nationwide class for damages under the Illinois

---

[8] In addition to federal antitrust claims, Dealers' Complaint (Dkt. 184) contains, *inter alia*, state repealer claims which CDK has already had the opportunity to challenge at both the motion to dismiss and summary judgment stage.

17

antitrust law, and 26 repealer state claims for damages) has proposed a class certification schedule that will be fully briefed by February 14, 2024.

In characterizing a *proposed* two-month timing difference as a "disagreement", the Vendor Class fails to point out how after over five years of litigation, this timing difference immediately or ultimately presents any specific challenges. Dr. Michael Williams will include damages calculations for the class(es) with the filing of the Dealers' class certification brief on the proposed date of October 25, 2023. Any discovery needed regarding class claims and damages will be addressed during the proposed class certification briefing schedule. In addition, Dr. Williams' methodology (like Dr. Israel's) has been unsuccessfully challenged by CDK in its *Daubert* challenges and at summary judgment. Finally, Dr. Williams has testified that the exact methodology used in his prior calculations could be easily applied to individual state claims if needed.

Vendor Class counsel's speculation on alleged issues that *may* arise regarding additional Dealer Class representatives is an attempted distraction. Regardless of the specific steps and procedural mechanism, as discussed above (including whether additional plaintiffs are even necessary for the Court to certify Dealers' proposed classes), those steps will be taken in the proposed class certification briefing time frame. Though Vendor Class counsel claim they have "none of these issues", they must still file a motion for class certification, complete discovery of the named representative, file a new expert report and complete additional expert depositions and briefing. At the end of the day, the supposed two-month difference may not exist. These two cases have been litigated together for five years efficiently and effectively by all parties. To argue to the Court now that huge differences exist is self-serving. Any "issues" raised by Vendor Class counsel will be addressed within the proposed schedule.

CDK suggests that the Dealer's potential addition of new class representatives as to particular state law claims will require additional briefing in spite of two separate opportunities (Motion to Dismiss and Summary Judgment) for CDK to challenge any state law issues. As the Dealer Class stated, no new substantive claims will be alleged by simply adding additional class representatives. Therefore, CDK's request for full briefing on this issue is unnecessary. As discussed above, the Dealer Class will add any new class representatives by motion simultaneously with the filing of their Motion for Class Certification.

The "Deadline for Completion of Class Certification Process" is no longer needed as CDK's proposal regarding potential Daubert briefing as to class certification experts has eliminated any additional litigation on the issues. Although Daubert motions may not be necessary, the Dealer Class has inserted potential dates for those motions if needed.

**CDK Statement**

*Vendor Class*. The Vendor Class's proposal that this Court remand or transfer the vendor case to the Western District of Wisconsin is inconsistent with the parties' prior submissions and this Court's orders. The Court's initial case management order made clear the same deadlines would apply to all class certification motions, disclosures of class expert reports, and related class proceedings. *See* Dkt. 166 at 3 (§ D). Since then, the parties have agreed to amend, and the Court has amended, the case management order on multiple occasions, but has never altered the requirement in the initial case management order that class certification in the Vendor and Dealer Class cases be litigated simultaneously. *See, e.g.*, Dkts. 616, 769, 799, 800, 856.

The Vendor Class's new position that class certification should be decided in the transferor court is also inconsistent with positions the Vendor Class took very recently. In a status report filed on December 5, 2022 upon reassignment to this Court, the Vendor Class argued that the Court

should impose the *same* class certification deadline for both the Vendor and Dealer classes *in this Court*, never suggesting that the Western District of Wisconsin should decide class certification. Dkt. 1364 at 4-5. On July 7, 2023—just under three weeks ago—the Vendor Class sent Defendants a proposal for class certification briefing that would have had *this Court* decide class certification in *both* the Vendor and Dealer classes. Ex. B, 7/7/2023 M. Nemelka Email. And the Vendor Class's counsel repeated that position during a meet-and-confer on July 17, 2023. The Vendor Class did not reverse position until July 21, 2023 when they sent a draft of this Joint Status Report.

The Vendor Class's consistent position until now—that *this Court* should decide class certification—was plainly correct. CDK addresses this question in detail above. Beyond that remand is *impermissible* here and transfer is *inappropriate, see supra* 3-4, it makes eminent sense for this Court to resolve class certification in both cases. The alleged conspiracy is the same in both cases, and both Classes' damages claims start from the same asserted injury (that is, the Dealer Class seeks damages for the very same overcharges for which the Vendor Class seeks compensation). Given that, it makes no sense for those cases to proceed on separate tracks. That would require the same issues to be litigated multiple times, and increases the risk of inconsistent decisions.

**Dealer Case**: The Dealer Class suggests that it will bring claims on behalf of new class representatives as to particular state-law claims. CDK requests full briefing on that question if and when the Dealers assert claims by new class representatives. But CDK agrees that the Court can consider that issue in the timeframe CDK suggests in its proposed case schedule, discussed next.

**Case Timing.** As to timing, CDK proposes a schedule that would have class certification in both the Vendor Class and Dealer Class cases ripe for decision by April 3, 2024. Notably, the

schedule CDK proposes includes necessary *Daubert* briefing as to class certification experts, which Plaintiffs' proposal ignores. And the overall difference in the case schedules proposed by the Dealer Class and CDK (a little less than two months), is immaterial and justified by the need for the parties to brief and the Court to resolve what we expect to be complicated issues as to class certification and *Daubert.*

While the Vendor Class claims that a few months of additional time to resolve class certification would create "intolerable delay," that is not credible in light of the nature of this case, which has been pending since 2018 and involves complicated class certification issues that necessarily will take time to resolve. The cost of a few additional months to complete class certification, moreover, pales in comparison to the inefficiency and burden the Vendor Class would foist on CDK, who would be forced under the Vendor Class's proposal to litigate overlapping class certification issues in multiple courts at different times, with the risk of inconsistent outcomes.

## V.     Trial Dates

### AutoLoop and MVSC Statement

This Court need not address trial structure for *AutoLoop* and *MVSC* because those actions will be tried by their respective transferor courts (the Western District of Wisconsin and the Central District of California).

### Dealer Class Statement

The Dealer Class requests a trial date as soon as possible after class certification. Notice will need to be sent to class members once a class is certified (the same will be true for the Vendor Class as well). Based upon the settlement with Reynolds, the Dealer Class estimates that two months are needed for notice to be complete. Dealers therefore request a trial date no later than August 2024.

The Dealer Class reserves the right to oppose CDK's motion, discussed in their Statement below, and file a cross-motion under § 1292(b) with respect to the Court's dismissal of the Dealers' direct purchaser claim for damages.

### CDK Statement

The scope of the issues to be tried (class certification) and which cases will be tried in this District (remand) are threshold issues that the Court needs to resolve before setting any trial date. As such, the Dealers' request for a trial date—particularly one in July 2024 (only a short while after class certification is fully briefed, much less decided)—is premature. Moreover, CDK believes that both the Vendor and the Dealer cases should be tried together given the substantial overlap in the issues, potential witnesses, and the efficiencies gained by proceeding in a single consolidated trial such that selecting a trial date before fully considering the *AutoLoop* remand issue would be ill-advised.

In addition, in short order, CDK will file a motion under 28 U.S.C. § 1292(b) to certify for interlocutory appeal the portion of this Court's summary judgment decision applying *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to certain of the Dealers' putative state-law claims. *See* Dkt. 1381, pp. 88-96. This gatekeeping issue should be decided before any trial is set; CDK notes, however, that it will not move to stay other proceedings before this Court if the application for interlocutory appeal is allowed, including proceedings related to class certification, so any delay caused by the Court's consideration of this issue will be minimal.

As CDK will detail in its forthcoming filing, interlocutory appeal is appropriate under this section when the Court "is of the opinion that [an] order involves a controlling question of law as

to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation."

The Court's application of *Shady Grove* to allow Dealers to seek to certify a class of indirect purchasers under Illinois' Antitrust Act, notwithstanding the Act's express prohibition on private indirect-purchaser class actions, *see* 740 ILCS § 10/7(2), easily satisfies the § 1292(b) criteria. Among other factors, this Court expressly recognized that its holding conflicts with the rulings of many, if not most, other courts. Dkt. 1381, p. 91 ("[M]any courts—perhaps a majority— have concluded that Rule 23 must give way to the [Illinois Antitrust Act's] class action bar."). The South Carolina and Colorado statutes "are effectively identical" to Illinois', and will likewise be the subject of CDK's request for interlocutory appeal. Dkt. 1381, p. 92; *see also id.*, pp. 92-93 (citing conflicting decision applying South Carolina law to bar class actions).

CDK's request will also encompass the Court's related application of *Shady Grove* to class action notice requirements under Hawaii, Utah, and New Jersey law. Doc. *See* Dkt. 1381, pp. 93- 95. On this issue, "[a]s with the class-action bars, the parties agree there is no binding Seventh Circuit law, and each side presents district court opinions in their favor." *Id.*, p. 94. CDK will argue that the application of *Shady Grove* to these state laws easily satisfies the § 1292(b) criteria.

**Reynolds Statement**

The trial structure and schedule for the MVSC case should be reserved for the transferor court after this Court rules on MVSC's pending motion for sanctions (Dkt. 1231), as discussed above in Section II (Reynolds Statement).

Dated:  July 27, 2023                                      Respectfully submitted,

*/s/ Derek T. Ho*                                          */s/ Peggy J. Wedgworth*
Derek T. Ho                                                Peggy J. Wedgworth
Michael N. Nemelka                                         Elizabeth McKenna
Aaron M. Panner                                            **MILBERG COLEMAN BRYSON**
Daniel V. Dorris                                           **PHILLIPS GROSSMAN, PLLC**
Bethan R. Jones                                            100 Garden City Plaza, Suite 500
**KELLOGG, HANSEN, TODD,**                                 Garden City, New York 11350
   **FIGEL & FREDERICK, PLLC**               Tel: (212) 594-5300
1615 M Street, N.W., Suite 400                             Fax: (212) 868-1229
(202) 326-7900                                             pwedgworth@milberg.com
Washington, D.C. 20036                                     emckenna@milberg.com
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com                                  *MDL Co-Lead Counsel representing the*
ddorris@kellogghansen.com                                  *Dealership Class Plaintiffs*
bjones@kellogghansen.com

*MDL Co-Lead Counsel representing Loop,*
*LLC, d/b/a AutoLoop on behalf of itself and*
*all others similarly situated; and*
*Motor Vehicle Software Corp.*


*/s/ Britt M. Miller*                                      */s/ Aundrea K. Gulley*
Britt M. Miller                                            Aundrea K. Gulley
Michael A. Scodro                                          Brian T. Ross
Matthew D. Provance                                        **GIBBS & BRUNS LLP**
Daniel T. Fenske                                           1100 Louisiana Street, Suite 5300
Jed W. Glickstein                                          Houston, TX 77002
**MAYER BROWN LLP**                                        (713) 751-5258
71 South Wacker Drive                                      agulley@gibbsbruns.com
Chicago, IL 60606                                          bross@gibbsbruns.com
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com                                     Leo D. Caseria
mprovance@mayerbrown.com                                   **SHEPPARD MULLIN RICHTER &**
dfenske@mayerbrown.com                                     **HAMPTON, LLP**
jglickstein@mayerbrown.com                                 2099 Pennsylvania Ave., NW, Suite 100
                                                           Washington, DC 20006
                                                           (202) 747-1900
*Counsel for Defendant CDK Global, LLC*                    lcaseria@sheppardmullin.com

                                                           *Counsel for Defendant The Reynolds and*
                                                           *Reynolds Company*

**CERTIFICATE OF SERVICE**

I, Derek T. Ho, an attorney, hereby certify that on July 27 2023, I caused a true and correct copy of the foregoing **JOINT STATUS REPORT** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com