```
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3

 4    IN RE:                        )
                                    )
 5    DEALER MANAGEMENT SYSTEMS     )   Docket No. 18 C 864
      ANTITRUST LITIGATION.         )
 6                                  )
                                    )
 7                                  )   Chicago, Illinois
                                    )   July 28, 2023
 8                                  )   10:02 a.m.

 9
                       TRANSCRIPT OF PROCEEDINGS - Status
10         BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER

11
      APPEARANCES:
12

13    For the Plaintiffs:      MR. SAMUEL ISSACHAROFF
                               40 Washington Square South
14                             New York, New York  10012

15
                               KELLOGG HANSEN TODD FIGEL
16                                & FREDERICK, PLLC
                               BY:  MR. MICHAEL N. NEMELKA
17                                   MS. BETHAN JONES
                                     MR. DANIEL V. DORRIS
18                             1615 M Street NW, Suite 400
                               Washington, DC  20036
19
                               MILBERG COLEMAN BRYSON PHILLIPS
20                                GROSSMAN, PLLC
                               BY:  MS. PEGGY J. WEDGWORTH
21                             100 Garden City Plaza
                               Garden City, New York  11530
22

23    For the Defendants:      MAYER BROWN, LLP
                               BY:  MS. BRITT M. MILLER
24                             71 South Wacker Drive
                               Chicago, Illinois  60606
25
```

1    APPEARANCES (Continued:)

2

3                                  SHEPPARD MULLIN RICHTER & HAMPTON LLP
                                   BY:  MR. LEO CASERIA

4                                  333 South Hope Street
                                   Los Angeles, California  90071

5                                  GIBBS & BRUNS, LLP
                                   BY:  MS. AUNDREA K. GULLEY

6                                  1100 Louisiana, Suite 5300
                                   Houston, Texas  77002

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    Court Reporter:              FRANCES WARD, CSR, RPR, RMR, FCRR
                                   Official Court Reporter

24                                 219 S. Dearborn Street, Suite 2524A
                                   Chicago, Illinois  60604

25                                 (312) 435-5561
                                   frances_ward@ilnd.uscourts.gov

1          (The following proceedings were had in open court:)

2          THE CLERK:  18 CV 864, In Re:  Dealer Management

3    Systems Antitrust Litigation.

4          THE COURT:  You may be seated.

5          Good morning.

6          MULTIPLE SPEAKERS:  Good morning.

7          THE COURT:  I wonder if I can get your appearances

8    for the record.

9          We will begin with plaintiffs' counsel.

10         MS. WEDGWORTH:  Good morning, your Honor.

11         Peggy Wedgworth from Milberg on behalf of the

12   Dealer class plaintiffs.

13         MR. NEMELKA:  Good morning, your Honor.

14         Mike Nemelka on behalf of the Auto Vendor Class and

15   MVSC.

16         And on behalf of Derek Ho, he is not here.  He is

17   at trial currently, and he did not want to have to move

18   this -- or request to move this hearing on his account.  He

19   apologizes for not being here.

20         MR. ISSACHAROFF:  Samuel Issacharoff for the same

21   parties as Mr. Nemelka.

22         MR. DORRIS:  Dan Dorris for the same parties as

23   Mr. Nemelka.

24         MS. JONES:  And Bethan Jones for the same parties.

25         THE COURT:  All right.  Thank you.

1              And for the defendants.

2              MS. GULLEY:  Good morning, your Honor.

3              Aundrea Gulley for the Reynolds and Reynolds

4    Company.

5              I'm also here with Leo Caseria, as well for the

6    Reynolds and Reynolds Company.

7              And also present in the courtroom are Rick Rauch

8    and Scott Cherry, who are client representatives.

9              MS. MILLER:  Good morning, your Honor.

10             Britt Miller on behalf of the CDK.  I came alone.

11             THE COURT:  Okay.

12             Well, I want to say first, welcome to this

13   courtroom.  I know you have been in this court since the case

14   was originally assigned to Judge St. Eve, who has now gone on

15   to greener pastures.

16             I'm happy to have the case before me, and I'm sorry

17   that it has taken me so long to get my arms around it, but I

18   do feel I'm there now.

19             And I appreciate the status report that was

20   submitted yesterday.  I had a chance to review that, not in

21   complete detail, but I have certainly read it, and I

22   understand your positions on various things.

23             Let me just give you maybe a quick advance on where

24   I think I am on some of the issues, but I certainly am open

25   to your suggestions or arguments about how I might

1    misunderstand some of this.

2           With respect to AutoLoop in the Western District of

3    Wisconsin, my inclination there is to agree with AutoLoop

4    that the case belongs in Wisconsin for trial.  I know that

5    there is a dispute about whether or not the defendant

6    actually agreed to that venue at the time of the case's

7    initiation.

8           This is one of the reasons that, unlike many of my

9    colleagues in this court, I really don't like direct filing

10   orders.  I have entered them in at least one MDL.  But in

11   general, I'd prefer for cases to be filed in the venue where

12   they are going to be tried and then reassigned by -- through

13   the JPML.

14          That didn't happen in this case.  It wasn't my

15   decision in the first place.  But my best read on what

16   happened in this case is that the assumption was that the

17   Western District of Wisconsin was the venue for the AutoLoop

18   case.

19          There is also a matter of whether or not this court

20   or the Wisconsin court should decide the class certification

21   motion.

22          On that issue, it seems to me that the expectation

23   on the part of the court and certainly my own willingness

24   would be to handle the class cert. motions before the cases

25   get reassigned.

1          A little bit the same kind of reaction I have

2     got -- and, again, these are my tentative views as opposed to

3     what I might come up with after you argue -- would be, on

4     MVSC and the *Reynolds* case, it looks as though everybody has

5     agreed there that the case should be remanded to the Central

6     District of California.  And the only dispute remaining is

7     whether this court or that court should be deciding the

8     sanctions motion.

9          For reasons that elude me, that case -- that motion

10    has not been ruled on or was not ruled on before the case

11    came to me, but I certainly am willing to handle that.

12         So my thought would be that I will handle that and

13    then send the panel, the JPML, this case for reassignment to

14    the Central District of California.  Again, that's sort of a

15    first-cut inclination.

16         Then there are disputes about the timing of class

17    cert. motions with respect to the other classes or potential

18    classes and whether those motions should be filed as early as

19    late August of this year or really whether October makes more

20    sense.   Call me Solomon here, but I'm likely to suggest a

21    September date.

22         That's the total of my -- of the inclinations that

23    I have got up until now.  I know that there are other issues

24    that are presented in the joint status report.  You are

25    welcome to argue those to me, as well as tell me where I'm

1   wrong or misunderstand what you have told us already about

2   what should happen next.

3           We can begin with the plaintiffs on this as well.

4           MR. ISSACHAROFF:  Your Honor, Samuel Issacharoff

5   for the plaintiffs.

6           I have been serving as coordinating counsel for the

7   MDL, meaning that I just try to keep tabs of who has got what

8   and at what point.

9           We are fine with the Court's rendition of where

10  it's inclined to go.

11          We think that there is a misunderstanding that the

12  defendants consented to the direct filing here.  They don't

13  have the option to consent to venue.  That's the plaintiffs'

14  call, where we file it.  So we agree with the Court that this

15  case belongs in the Western District of Wisconsin.

16          There is one quirk that -- MDLs are difficult, and

17  there is always technical issues.

18          Because it was directly filed here, it's not

19  before -- it doesn't have a case number or anything in the

20  Western District of Wisconsin.

21          THE COURT:  Right.

22          MR. ISSACHAROFF:  Which means we can't get a trial

23  date until we can go back to that court in some fashion,

24  which was the reason that we were urging the class

25  certification be handled there rather than here, so we could

1    get it moving more quickly.

2            But if it's a September date, we are fine with

3    that.  We think that, with regard to the Vendor Class, the

4    AutoLoop side of the equation, that this Court's summary

5    judgment opinion basically addressed all the issues that are

6    going to be presented on class certification, including

7    through *Daubert*, the admissibility of the evidence on how

8    damages would be calculated on a class-wide basis.

9            So we don't really see that it's a big issue.  I

10    mean, the defense may take a 23(f) appeal, as is, of course,

11    their right.

12            THE COURT:  Sure.

13            MR. ISSACHAROFF:  But we are basically fine with

14    how the Court is going to do it.

15            We might urge a little consideration to try to get

16    us to Wisconsin as quickly as possible.  We have been under

17    sort of a mandate from the Seventh Circuit to get this case

18    moving.  I think it's been five years now that we have been

19    trying to get it moving.  So we are at the stage where we are

20    ready.  We could go to trial tomorrow either on behalf of

21    AutoLoop individually or on behalf of the class.  Everything

22    is completed in this case.

23            So that's all we have really.

24            THE COURT:  You are, of course, welcome to withdraw

25    the motion for class cert.

1          MR. ISSACHAROFF:  Yes, we would be welcome to do

2     that.  I think we might -- I would have to confer with my

3     clients, but I suspect not, your Honor.

4          THE COURT:  Note that whichever -- obviously, an

5     earlier number gives you a better chance at an early trial

6     date in any venue.  So if this case were to be tried by me,

7     an 18 C case is likely to get bumped up ahead of a 22 C case.

8          With respect to class cert. and the potential

9     appeal, as it works out, same Court of Appeals.  So, I mean,

10    that kind of helps.

11          If there is a way we can expedite this, I can

12    certainly consider that.

13          You know, while I have got you here,

14    Mr. Issacharoff, one thing I didn't mention when I was giving

15    you my rough -- here is my rough sense of where we are --

16    *Shady Grove*, we didn't talk about that.

17          My thought there -- I realize there is no motion

18    right now for interlocutory appeal, but my inclination would

19    be to grant that -- such a motion, such that it looks as

20    though everybody agrees the case can proceed in the meantime,

21    but you would have a chance to get the Court of Appeals'

22    views on what I think really is a contested issue and as to

23    which reasonable minds can and have differed.

24          So that's just -- I wanted to add that to the

25    comments I made earlier.

1      Okay.  Any other comments you wanted to make?

2      MR. ISSACHAROFF:  No, your Honor.

3      Again, we had a fallback position in our papers

4  that, if the Court would entertain severing the two class

5  certifications, ours could go forward even earlier.

6      I think Ms. Wedgworth might have reasons that she

7  might need more time.  We really don't see them as

8  symmetrical issues because of the direct/indirect purchaser

9  sides of the equation.

10     So if the Court were inclined, as it obviously is,

11  to handle the class certification motion, again, our only

12  request is to have ours move forward as quickly as possible.

13  But that's been our request in this case for a very long time

14  now.

15     THE COURT:  Right.

16     You know, I think my sense of the history here was

17  the expectation was this court would handle the class cert.

18  motions.  By "this court" I mean the Northern District of

19  Illinois.  That's my read of the record.  It's a massive

20  record.  You people are more familiar with it than I am, but

21  that was my sense.  And I would not -- I'm not trying to duck

22  the responsibility here.  I wouldn't mind ruling on the class

23  cert. motions on either of these motions.

24     MR. ISSACHAROFF:  The only thing I would say about

25  that, your Honor, is that that expectation was, in fact, the

1    case, but it was formed at a time when *Daubert* and summary

2    judgment hadn't been addressed yet.

3              In light of the two -- your extensive ruling on

4    summary judgment and then the earlier rulings on *Daubert*, we

5    think that that's basically been resolved to the point that

6    it's a pretty mechanical act by the trial court.  That's the

7    reason we are now urging that it go back.

8              But, again, we are perfectly prepared to have it

9    handled in this court.  We just hope that it's not a source

10   of delay.

11             THE COURT:  Thank you.

12             MR. ISSACHAROFF:  You are welcome.

13             MS. MILLER:  Good morning, your Honor.

14             Britt Miller on behalf of CDK.

15             THE COURT:  Good morning.

16             MS. MILLER:  We are the only defendant in the class

17   actions for these purposes.  So I don't believe Ms. Gulley or

18   Mr. Caseria will be speaking on this.

19             THE COURT:  Okay.

20             MS. MILLER:  On the question of class

21   certification, we obviously agree with your Honor that class

22   certification in both classes should be decided here.

23             You are correct in your reading of the extensive

24   record in this case in terms of where we believe the Court

25   has always expected class certification was going to be done

1   and where the parties have always expected the class

2   certification was going to be handled.

3          As we noted in the submission that we gave to your

4   Honor yesterday, the plaintiffs, including Mr. Nemelka and

5   their clients, were expecting that it was going to be in

6   front of your Honor.  And their original proposal to us was a

7   briefing schedule that it appear in front of your Honor.  It

8   was only last week that we learned that they wanted it to go

9   back to the Western District -- I shouldn't say "go back" --

10  go to the Western District of Wisconsin for a resolution of

11  the class proceedings.

12         From our standpoint, we believe that they should be

13  both here.  That's part of the pretrial proceedings that the

14  MDL, the court, traditionally expects are going to be handled

15  by the MDL transferee court because of the need to have these

16  things coordinated and the need for the rulings to be

17  consistent.

18         With respect to timing, the reality is, the

19  schedules that we have proposed, which is very close to what

20  the Dealers have proposed and only a few months off of what

21  the Vendors have proposed.

22         CDK is the only defendant in both of these.  Part

23  of the goal of the MDL process is to have the efficiencies

24  addressed by one court and not put in a situation where one

25  party's interests are put above that of another.

1          We appreciate that the Vendors would like to go to

2  trial as soon as they can or have their motion decided as

3  soon as they can, but that can't be at the expense of the

4  Court or at the expense of CDK.

5          The most fair thing, and what we believe is

6  contemplated by the MDL process and contemplated by the

7  rules, is that your Honor will consider both.  In all of the

8  cases that I have litigated over the past 25 years that are

9  antitrust cases I have never had the two decided differently.

10          I'm sure plaintiffs will find one or two where it

11  has been, but traditionally in these antitrust cases class

12  certification of both the indirect and the direct are done

13  together because there is overlap.  They are going to be

14  relying on common proof as to what they say forms the portion

15  of the class.

16          They both submitted overcharge analyses with

17  respect to certain aspects of their damages models that are

18  going -- that are very similar.  So that court is going to

19  have to consider those as part of its assessment of whether

20  or not class is appropriate here.

21          Given that, and so as to not overly burden CDK so

22  it's briefing two very similar -- not identical, but very

23  similar -- briefs on different schedules before this Court,

24  we would ask that the Court set everyone on the same

25  schedule.

14

1    Obviously, given how long this case has sat, there

2    is a certain amount of time that the parties and their

3    counsel and, quite frankly, their experts, who have gone off

4    and started to do other cases, need to get to get back

5    involved in this case, which is why we asked for a modest

6    extension to October.  If your Honor believes that September

7    is appropriate, we will, of course, abide by that decision.

8         But it is more important, from our standpoint, that

9    the cases and the briefing move in tandem.  There is going to

10   be *Daubert* briefing on these things.  We suspect that some of

11   the grounds, if we move for a *Daubert* exclusion, are going to

12   be apply to the Vendors' experts and the Dealers' experts.

13        So keeping these moving in tandem is the most

14   important thing from CDK's perspective, second only to the

15   question of -- that it should be tried here -- the class

16   certification should be done here.

17        THE COURT:  Okay.  Just before I hear from anybody

18   else, tell me about the *Daubert* issues that you anticipate in

19   class cert.

20        MS. MILLER:  The answer is, I don't -- as I sit

21   here, your Honor, it may be that we don't have any.  I don't

22   know yet until I see some of the -- inevitably they are going

23   to be updating their damages model and updating their expert

24   reports that were submitted on summary judgment.

25        Until I have seen those and had an opportunity to

1    look at what those look like, I don't know which ones I have,

2    but I need to preserve the possibility of --

3                 THE COURT:  That they're --

4                 MS. MILLER:  -- having those and submitting those.

5                 THE COURT:  Right.

6                 Anybody else from the defense side want to weigh in

7    on this?  It sounds as though Ms. Miller has covered the --

8                 MS. GULLEY:  Not on that issue, your Honor.  Thank

9    you.

10                THE COURT:  All right.

11                Reply at all on this issue, or are we ready to just

12   move on?

13                MR. ISSACHAROFF:  I would just say, your Honor,

14   that we have no experts in the class certification who have

15   not been through *Daubert* already.

16                Our expert damages model is current through the

17   beginning of July, so it needs to be updated for whatever the

18   months are going forward.

19                THE COURT:  Right.

20                MR. ISSACHAROFF:  But that methodology and that

21   expert has been through *Daubert* and was the subject of

22   extensive discussion in your Honor's summary judgment

23   opinion.

24                THE COURT:  All right.  You know, again, I don't

25   want to be completely arbitrary here, but I'm going to

1    suggest that we can resolve this by saying that the class

2    cert. motion should be filed by September 29th, and then we

3    can add appropriate time for -- about six weeks for a

4    response, and another -- it looks like it's about six weeks

5    for reply.

6              And then there was a suggestion that we also set a

7    date for replies in support of any *Daubert* challenges.  I can

8    suggest that one would be six weeks out as well, with the

9    understanding that it may or may not happen.

10             All right.  And I will do the math.  I don't have

11   my calendar right here, but I will do the math, but if you

12   can just recognize that that's what it's likely to be.

13             MS. MILLER:  Your Honor, with apologies, if I could

14   ask for a slight change on the date?

15             That date is -- I hate to admit this on the

16   record -- is my 50th birthday, and I will not be in town.

17             THE COURT:  Well, happy birthday.  Okay.

18             MS. MILLER:  If we could move that --

19             THE COURT:  Wait.  Which date is that?

20             MS. MILLER:  September 29th date.

21             THE COURT:  Now you are going to get flowers and

22   candy.

23             MS. MILLER:  Flowers and candy, all of those are

24   welcome.

25             THE COURT:  All right.  Should we do it a little

 1   before or after?

 2        MS. MILLER:  If you can give me a couple days after

 3   so I can --

 4        THE COURT:  Sure.  The 29th is a Friday.  So why

 5   don't we say October 3rd.

 6        MS. MILLER:  Thank you, your Honor.

 7        THE COURT:  And then same with -- the rest of the

 8   dates would get pushed as well.

 9        All right.  What's our next issue?

10        MS. MILLER:  On the remand issue, your Honor, I

11   appreciate that you have indicated your initial thought is to

12   agree with AutoLoop.

13        As we said in our brief, we would like the

14   opportunity to put it before you in a full briefing.  We

15   wouldn't hold up any of the proceedings, but we don't think

16   that it's properly -- it should be under 1407.  We think it's

17   a 1404 analysis.  And we would like the opportunity to submit

18   those papers to your Honor.

19        Again, we won't ask that any of the other deadlines

20   be held up.  But now that your Honor has ruled that we are

21   doing class certification here, it shouldn't hold up the

22   class issue.

23        THE COURT:  Right.

24        I don't have a problem with considering a brief on

25   this issue.

1          I guess -- backing up from the specifics of this

2     case, I guess my sense is, it just can't be that the MDL

3     process was intended to bring a merits decision before the

4     transferee judge.

5          In actual practice, that's what happens most of the

6     time.  But in actual practice, most cases are resolved by the

7     transferee judge.  But the model was that the transferee

8     judge handles matters up until time for trial, and then it's

9     returned whence it came.

10         In this case, in your view, where would venue

11    properly be, assuming there were no MDL process in place?

12         MS. MILLER:  From our standpoint, we think they

13    filed here.  They should be here.  The artifice of putting in

14    a footnote and saying, we are not going to go file in the

15    Western District of Wisconsin -- it was never in the Western

16    District of Wisconsin.  It was only ever filed here.

17         THE COURT:  But, again, assuming there were no

18    MDL process and no direct filing order -- again, I don't --

19    personal preference.  I don't like them.  I inherited this

20    case from two colleagues.  I abide by their processes.

21         But in general, I like -- I resist direct filing

22    orders, because I don't want someone later on to say, no, the

23    case belongs here.  No, the case belongs there.  And that's

24    what we're dealing with.

25         So you are saying to me that, had there been no MDL

19

1    process in place, the case would properly have been venued

2    here.

3         Why did the plaintiffs choose Wisconsin, then?

4         MS. MILLER:  I suspect they chose Wisconsin because

5    the first filed case was a case called *Authenticom v. CDK and*

6    *Reynolds*, which is a Wisconsin company.  AutoLoop is not.  I

7    don't remember where they were incorporated.  I want to say

8    it was Texas or somewhere in the south.  But they have since

9    been bought, and I believe their new company is based,

10   actually, here in Chicago.

11        But I suspect they wanted to be in the Western

12   District of Wisconsin because Authenticom, which was the

13   first filed case and which has been resolved -- Authenticom

14   has settled all of its claims as against both CDK and

15   Reynolds.  So it is no longer there.

16        So there have been no proceedings vis-à-vis

17   AutoLoop in the Western District of Wisconsin.  But they are

18   represented by the same counsel as Authenticom, and I suspect

19   they wanted it tried up there because that's where the

20   initial Authenticom preliminary injunction hearing was held.

21        THE COURT:  Okay.  Well, that doesn't -- okay.

22   That's interesting.  That doesn't sound like judge shopping.

23        MS. MILLER:  I'm not accusing them of judge

24   shopping.  I'm saying it has no -- there is no reason it

25   needs to go to the Western District of Wisconsin.  It has no

1    connection to there.

2              Again, we take the position that they filed here.

3    They should be here regardless of whether or not the MDL

4    existed.

5              Now, if they had filed in the Western District of

6    Wisconsin without the MDL, we would be in the Western

7    District of Wisconsin.  If they had filed in Texas, we would

8    be there.

9              THE COURT:  But isn't it true that they filed here

10   because there was a direct filing order?

11             MS. MILLER:  I don't know that we characterize

12   Judge St. Eve's order in that way.  She said, go ahead and

13   file your complaint.  I don't think she made an affirmative

14   ruling.

15             THE COURT:  Okay.

16             MS. MILLER:  That's one of the reasons we wanted

17   to -- although we appreciate your Honor has taken the time to

18   read the status report, it's not the full sort of history of

19   what has happened here.  We didn't want to do a full briefing

20   before your Honor before this morning's hearing.

21             THE COURT:  It's always scary to know that 25 pages

22   is not the full briefing.

23             MS. MILLER:  There are a lot of issues in here.

24             THE COURT:  Right.  That's true.

25             MR. ISSACHAROFF:  Your Honor --

1        THE COURT:  Mr. Issacharoff.

2        MR. ISSACHAROFF:  -- we think that this is squarely

3    controlled by *Looper*.  Judge Hamilton's opinion with

4    Judge St. Eve on the panel -- who was reflecting, no doubt,

5    on her experience in this case -- takes the position that

6    where there is a direct filing capability, the cases retain

7    the character of where they would have been filed.

8        And in *Looper,* the connection was even more

9    extenuated than it is here, because here we had ongoing

10   litigation in Wisconsin.  We were hoping to go to trial soon

11   in Wisconsin.  AutoLoop wanted to be part of that same

12   proceeding.

13       So we were under a direct -- there is a direct

14   colloquy with Judge St. Eve in this court that says that we

15   preserve the character of it as the Western District.  We put

16   that in a footnote in the complaint and in the amended

17   complaint.  And I think that *Looper* controls.

18       As for the 1404 analysis, my view is that that's

19   squarely foreclosed by *Lexecon*, that *Lexecon* takes away from

20   a transferee court the ability to issue 1404 orders into

21   itself.

22       The only way for this court to use 1404 would be if

23   the Wisconsin court were to transfer it here, and there is no

24   request for that to be done.

25       So under *Looper*, we think the issue is squarely

1  foreclosed.

2        And it would be -- there is sort of an estoppel or

3  prejudice issue here, because we did so in discussion with

4  the Court, that we are preserving our rights.  Judge St. Eve

5  said, yes, you are preserving your rights.

6        It would be astounding for us to be now in the

7  position that we lost our rights by relying on the

8  representation of the Court.

9        This is exactly what the *Cook* defendants argued in

10  *Looper*, and Judge Hamilton said, no, you can't have it both

11  ways.  You can't both induce a direct filing and then try to

12  claim that it has no effect.

13        THE COURT:  With respect to preserving your rights,

14  it is a right under the *Lexecon* issue.  There is also the

15  possibility of a *Lexecon* waiver.  And I'm hearing from

16  plaintiff how badly they want an early trial date and the

17  concern about getting a 23 case number on it or maybe even

18  24, God forbid.

19        It's just a comment.

20        MR. ISSACHAROFF:  Yes, there are many ways that

21  this could be handled.  But our view is, as of this moment,

22  our client wants to go to trial in Wisconsin.

23        And we have preserved that issue squarely from the

24  very beginning of the filing of the *Looper* -- AutoLoop case.

25  We have never wavered on that position.

1          THE COURT:  Well, I am going to allow Ms. Miller to

2     submit a brief.

3          Tell me how much time you need for that,

4     recognizing that it's not going to slow down the class cert.

5     proceeding.

6          MS. MILLER:  Can I get three weeks, your Honor?

7          THE COURT:  Twenty-one days is fine.

8          MS. MILLER:  Thank you.

9          THE COURT:  And response from the plaintiff.

10          MR. ISSACHAROFF:  We just need a week, your Honor.

11          THE COURT:  Okay.  Seven days for a response, and

12     seven days for a reply.

13          MR. ISSACHAROFF:  And how long are these briefs,

14     your Honor?

15          THE COURT:  They are absolutely no more than

16     15 pages.

17          MS. MILLER:  I assume the district limits.

18          THE COURT:  Right.

19          MR. ISSACHAROFF:  I was hoping for less, your

20     Honor, but --

21          THE COURT:  Well, I am happy to make it 10.

22          MR. ISSACHAROFF:  I think that's more than

23     appropriate for this.

24          MS. MILLER:  I would ask for 15, your Honor.

25          THE COURT:  Fifteen is good.  We will stick with

1    15.

2              I mean, one of the reasons -- the key reason that

3    it took months and months for you to get a ruling from me is,

4    a judge left.  I had to start all over.  I didn't really know

5    anything about the case.  We have got a big court.  I didn't

6    know anything about it.

7              Starting from scratch, I ended up issuing an

8    opinion that, from my perspective, is really long, but there

9    were a lot of issues and a lot of motions that were addressed

10   there.  So I would like to bring us back to a more reasonable

11   length of everything.

12             Anyway -- okay.  So we have got a briefing schedule

13   on the 1404 versus 1407 issue.

14             We have got tentative dates on the class cert.

15   issue.

16             What is our next matter to resolve?

17             MS. MILLER:  I think the next issue, your Honor,

18   would be the 1292(b).

19             THE COURT:  Got it.

20             MS. WEDGWORTH:  Your Honor --

21             MS. MILLER:  We are the one that raised it.  I am

22   happy to tee the issue up, your Honor.

23             As we said in the status report, and as your Honor

24   has already said, you are inclined to allow that briefing.

25   We appreciate that opportunity to address the *Shady Grove*

25

1   opinion.

2           As we committed in the status report, we would not

3   take the position that that has to hold up the other

4   proceedings as well, but we would like the opportunity for

5   the Seventh Circuit to consider that issue.

6           MS. WEDGWORTH:  Your Honor, I'm aware of your

7   opinion and your comments there concerning the *Shady Grove*

8   issue.

9           However, even if this went to the Seventh Circuit

10  now, if you were inclined to 1292(b) it, as Judge Posner has

11  said, the resolution of this issue, 1292(b), will not in any

12  way advance the litigation.

13          There will still be 20 states going forward.  At

14  most, six states might drop out -- might.  So instead of

15  26 states pursuing it, there will be 20.

16          We also have a nationwide class of dealers who are

17  still pursuing injunctive relief under the Sherman Act.  That

18  will still go forward.

19          So those claims will not go away.  The litigation

20  will not change.  There is good case law on this, *Brodsky v.*

21  *Humana*.  You may be familiar with some of it as well.

22          THE COURT:  Sure.

23          MS. WEDGWORTH:  Judge Holderman wrote the *Brodsky*

24  opinion and Posner wrote the opinion in the *Richardson v.*

25  *Panache* case that I am referring to, where he quoted it.

1       There is also the issue of the 23(f).  As you know,

2   if a class cert. opinion comes out, a 23(f) appeal is

3   possible.

4       So there have been opinions -- Posner being one of

5   them -- to say some of this movement of 1292(b) really is

6   premature when you have a class cert. opinion coming and

7   there is the possibility of 23(f).

8       So on several grounds, the 1292(b) issue would not

9   resolve or in any way speed up the completion of this

10  litigation.

11      THE COURT:  It wouldn't speed things up.  I think

12  you are right about that.

13      I guess my thinking is -- and this is kind of where

14  I always am in cases of this magnitude.  You have to think

15  about what the result is going to be and whether or not there

16  is going to be a big damages award and what size and maybe

17  the case can be settled and maybe it can't be settled because

18  of the status of the law in one state versus another.

19      So if there is a reason to believe that early

20  resolution of the *Shady Grove* issue might clarify the amount

21  of money involved here, I think that's worthwhile.

22      The other thing is, the cases -- that issue is not

23  going away.  So that case -- that issue might very well get

24  appealed one way or another.  And it is disputed.

25      I think I'm right, but I recognize that not every

1    court has seen it that way.  So it might really be worth

2    getting the Court of Appeals to address it when it's going to

3    be pretty effectively briefed and already has been.  So it

4    would be a matter of brushing up and maybe bringing your past

5    briefs on the issue up to speed if there is anything new.  I

6    don't know.

7              I will take a look -- obviously you are going to

8    resist the 1292 motion, but that hasn't been made yet.  So

9    once it is, I can take your briefs on that.

10             Maybe I should ask.  Are we on kind of a similar

11   schedule there?

12             MS. MILLER:  Yeah.  Your Honor, to your point,

13   that's why we want to brief it now.  We may not have to brief

14   certain things on class certification.  Your Honor may not

15   have to decide them if they are resolved by the *Shady Grove*.

16   I mean, going into trial, we may want to know what it is.  We

17   think it's beneficial to have this issue resolved now.

18             In terms of filing, yes, we can get our brief on

19   file within three weeks, on the same schedule, if your Honor

20   would like it.

21             THE COURT:  I don't anticipate that I will get

22   guidance from the Court of Appeals on this issue before class

23   cert. ruling.

24             MS. MILLER:  Depending on which panel, we may or we

25   may not.  But I appreciate that it will be -- to your point,

1    it will be instructive to the parties going forward whether

2    or not certain claims are in or certain claims are not in.

3                THE COURT:  Remember, even if I certify something

4    for appeal, I have been told before by the people upstairs,

5    no.

6                MS. MILLER:  They may not want it.

7                THE COURT:  Right.

8                MS. WEDGWORTH:  Just two extra points.

9                We are reserving our right, if you do, in fact,

10   grant the 1292(b), that we may also cross-appeal with regard

11   to the issue of the direct damages that our expert,

12   Mr. Williams, calculated on behalf of direct purchasers,

13   which led into the preclusion of that, both at the *Daubert*

14   motion, and then your opinion as well carried that out

15   further.

16               So we would certainly consider that, if you are

17   going to go forward, that we would take up that issue as

18   well.

19               Again, we do believe that the timing issue, as you

20   just pointed out, will not resolve what's going to go on in

21   class certification.  That may very well be complete long

22   before the Seventh Circuit rules on this issue.

23               And at that point, it's really too late.  We are

24   going to be at 23(f).  Again, 23(f) is that opportunity again

25   for those types of things, as Posner had laid out in that

1    case.

2           MS. MILLER:  Also, your Honor, if she is going to

3    raise 1292 on the class that is currently not there, that may

4    introduce all sorts of all new things that we have to

5    address, because suddenly that's a class that we are

6    currently not addressing in class certification because those

7    claims are gone.

8           So if Ms. -- of course she can preserve whatever

9    rights she would like to.  But if that issue is going to be

10   briefed on 1292, that could have an impact on class cert.

11   certainly.

12          MS. WEDGWORTH:  We are entitled to, and we are

13   certainly considering that.

14          THE COURT:  It's complicated.

15          I will consider the briefs when I get them, the

16   schedule that you have proposed, assuming that that's

17   acceptable to the plaintiffs, the three weeks and then seven

18   days, seven days.

19          MS. WEDGWORTH:  Actually, we would want longer than

20   seven days.  We don't know the full extent of everything they

21   are arguing.  So we are going to ask for three weeks as well.

22          THE COURT:  All right.  So 21 days for the 1292(b)

23   motion, and then -- I am writing this down.  Hold on.

24          MS. MILLER:  And I'm sorry.  Is that both -- if

25   Ms. Wedgworth is going to raise her issue, that they are both

1    going to be due on that 21 days?

2           THE COURT:  No.  I was expecting that that would be

3    maybe a -- well, I don't know.

4           How do you feel about that?

5           MS. WEDGWORTH:  Your Honor, to fully understand the

6    motion, we would like to file it -- if we are going to file

7    our own cross 1292(b), to at least have a week to evaluate

8    the 1292(b) motion filed by CDK.

9           THE COURT:  Okay.  We will say 21 days would be

10   CDK's -- a date for CDK's 1292(b) motion.

11          Twenty-one days would be the date for plaintiffs'

12   response and potential cross-motion.

13          Fourteen days for a reply/response, if there is a

14   counter 1292(b) motion.

15          And if that has been filed, then seven days for a

16   reply in support of plaintiffs' 1292(b) motion.

17          That's now as clear as mud, right?

18          MS. MILLER:  I followed it.

19          MS. WEDGWORTH:  Thank you, your Honor.

20          THE COURT:  Good.

21          What other matters do we need to address this

22   morning?

23          MS. WEDGWORTH:  Your Honor, for Dealers, I think I

24   may be the only one who hasn't commented on the timing of the

25   class cert. schedule.

1     So your proposed class cert. schedule, I do

2  believe, where you are indicating the end of September as

3  class cert. motion filing works for us as well.

4     THE COURT:  Well, it's now October 3rd.

5     MS. WEDGWORTH:  Due to birthday celebrations, we're

6  happy to go with --

7     MS. MILLER:  I truly do appreciate it.

8     THE COURT:  She is getting cake.  She's getting --

9     MS. WEDGWORTH:  So October 3rd, once the

10  celebration has died down, we will be filing.

11     THE COURT:  Thank you.

12     MS. GULLEY:  Thank you, your Honor.

13     I don't actually have anything to add on the

14  merits, but just to come back to MVSC, just to put on the

15  record that Reynolds appreciates your Honor taking on the

16  discovery motion.  Thank you.

17     THE COURT:  And then, Reynolds and Reynolds, I'm

18  going to be doing that.  That's a sanction issue.  That's

19  what you meant?

20     MS. GULLEY:  The discovery motions, yes, where they

21  have requested sanctions.

22     THE COURT:  All right.

23     MS. WEDGWORTH:  And I do have one final issue, your

24  Honor.

25     A trial date.  We, too, have been litigating since

1    2018.  And as I frequently speak to dealers, they keep asking

2    me, "When will we have a trial date?"

3            And I think in our papers last round -- of course,

4    it was a flurry to get it out yesterday -- I've asked for

5    August of this year.

6            So we would like to have a trial date locked in.

7    Happy to do what needs to be done to get that trial date.

8            MS. MILLER:  I think she means August of next year.

9            You said August --

10            MS. WEDGWORTH:  Fair point.  Fair point.

11            THE COURT:  I was going to say, I don't see how you

12    can be ready in August.

13            MS. MILLER:  I know you are good, but, I mean, come

14    on.

15            MS. WEDGWORTH:  Fair point.  Fair point.

16            THE COURT:  August 2024 is fine.

17            MS. MILLER:  Your Honor, if we can respond to that?

18            THE COURT:  Sure.

19            MS. MILLER:  We are concerned -- well, obviously,

20    your Honor will address the remand issue with respect to

21    AutoLoop, because we think, obviously, the cases should be

22    tried here and both of them should be tried together.

23            But we don't -- we think it's premature at this

24    point to set a trial date until we are a little farther down

25    in the process on class certification and the like.  So

1    August '24 is not something we are prepared to agree to.

2              We are happy to have a conversation with

3    Ms. Wedgworth and have that conversation.

4              We also -- if, in fact, your Honor ultimately rules

5    that the case is going to go back to the Western -- I

6    shouldn't say -- I have to stop saying "going back" -- going

7    to the Western District of Wisconsin, we will potentially

8    have two competing trials.

9              So we would ask your Honor to wait a bit to figure

10   out whether or not this is going to actually get remanded and

11   what the scope of the claims are.  If we are successful on

12   class certification on some or all of the classes that are

13   being proposed, then how we prepare for that trial is going

14   to be markedly different.

15             MS. WEDGWORTH:  Remanding or scope shouldn't affect

16   the trial date at all.  Once class cert. is complete and once

17   notice goes out, a trial date is set.

18             August 2024 will be six years -- over six years

19   from the filing of this complaint.

20             Many dealers keep asking me, "Is there going to be

21   a trial?" and, "What is the date?"

22             August 2024, given -- no matter what the scope is,

23   no matter what the remand is, the trial date for our case can

24   be set.

25             THE COURT:  I am guessing -- what are we talking

34

1    about?  Two weeks?  How long a trial are you talking about?

2              MS. WEDGWORTH:  Certainly two weeks.

3              MS. MILLER:  We think probably longer than that.

4    We are thinking somewhere between three, three and a half.

5              THE COURT:  Okay.  That seems very reasonable to

6    me, and that's the reason I think we do need to get a date on

7    the calendar, because what happens, if not, is it gets

8    pushed.

9              I won't be impossible with you if we are not able

10   to proceed on a date in August 2024, but I really do want to

11   put it on the calendar, because otherwise you are going to

12   lose that sense of urgency, and I might -- I really might not

13   have time.

14             Let's look at --

15             MS. MILLER:  Your Honor, we would ask for at least

16   another month or two to account for other trial obligations

17   that we have.  But if your Honor rules August 2024, then we

18   will abide by it.

19             THE COURT:  Okay.  Let me tell you that -- and I am

20   revealing to my staff for the first time -- I am hoping to

21   take a pretty extended vacation in August 2024.  So why don't

22   we -- and they are thrilled, of course.

23        (Laughter.)

24             MS. WEDGWORTH:  That's a positive announcement.

25             THE COURT:  But I think we could look at September

1    of that year or October.

2              MS. WEDGWORTH:  So the Tuesday after Labor Day,

3    perhaps?

4              MS. MILLER:  October would be preferable.

5              THE COURT:  How about the middle of September 2024?

6              MS. MILLER:  You all can celebrate my 51st.

7         (Laughter.)

8              THE COURT:  We are looking forward to that.

9              Why don't we take a look at the 18th or the 25th of

10   September.

11             MS. MILLER:  May I grab my calendar, your Honor?

12             THE COURT:  Sure.

13             MS. MILLER:  Thanks.

14        (Brief pause.)

15             MS. WEDGWORTH:  So September 24 is a Wednesday.

16   The 18th is --

17             THE COURT:  Oh, 24 is a --

18             MS. MILLER:  September -- I'm sorry.  What were the

19   dates you were looking at, your Honor?

20             THE COURT:  Maybe this is wrong.

21             THE CLERK:  What day do you want --

22             MS. WEDGWORTH:  The 18th appears to be a Wednesday.

23             MS. MILLER:  The 18th is a Wednesday.

24             THE COURT:  Oh, then this is -- these are wrong.

25   This must be wrong.

1       Okay.  I will tell you what.  The 18th is a

2  Wednesday.  In that case, what I would propose -- this is a

3  jury, right?  Or is it?

4       MS. WEDGWORTH:  Yes.

5       THE COURT:  Okay.  What I would propose is that we

6  start on the 20th.  And the reason I suggest that is, I like

7  to pick a jury on a Thursday or a Friday for a couple of

8  reasons.

9       One, the other judges don't like those dates.  So

10  we generally get the jury pool to ourselves, which is really

11  helpful.

12       The other thing is, if we can pick the jury -- it

13  takes the better part of a morning in a day.  I like for

14  people to come in on Monday morning and not have that on

15  their plate.  In other words, they come in and they are ready

16  to do their openings or ready to call their first witness or

17  whatever it is, as opposed to thinking about, how long is it

18  going to take me to get my jury picked?

19       So I would like to start on, maybe, the 20th.

20       MS. WEDGWORTH:  That works.

21       THE COURT:  All right.  We will set it for

22  September 20th with the understanding it's at least three

23  weeks, maybe even a little longer.  And that way, if I -- you

24  know, I will have that time set aside.

25       Okay.  Recognizing, Ms. Miller, that that date

1    might ultimately not work or might conflict with anything

2    that Judge Peterson, or whoever it is in Wisconsin, does,

3    assuming the AutoLoop case is going there, I can certainly

4    revisit this if that's appropriate.

5             What other issues do we have?

6             MS. MILLER:  I believe that's the list.

7             MS. WEDGWORTH:  None here.

8             THE COURT:  I do want to ask, have you talked about

9    settlement before, during, or after my ruling?  Is that

10   something that we ought to be talking about now?

11            MS. WEDGWORTH:  We certainly can make those

12   efforts, your Honor.

13            THE COURT:  Okay.  I'm going to suggest that you do

14   you that.  And I'm going to also suggest that you let me know

15   if you are interested in dealing with a magistrate judge on

16   that or if you think it would make sense to talk to a

17   mediator of some kind.  And if you have a dispute about that,

18   if that's something I can help you resolve, I am open to it.

19            I realize there is more than one -- technically

20   more than one case we are talking about here.  So there are

21   several moving parts.  But I think it makes sense to explore

22   the possibility, especially because the case has been, from

23   your perspective, dormant for quite a while.  But now it's

24   back in action, and it's going to mean a lot of work for all

25   of us and uncertainty -- ongoing uncertainty for your

1   clients, including, as you mentioned, a bunch of dealers who

2   keep wondering what's going on.

3           All right.  So I'm going to ask that you let me

4   know in about 14 days whether you would like the court's

5   involvement or assistance in that process.  I will take

6   whatever steps you request or that I think are appropriate at

7   that point.

8           Any other issues?

9           MS. MILLER:  No, your Honor.

10          MS. WEDGWORTH:  No, your Honor.  Thank you.

11          MR. NEMELKA:  Your Honor, we just wanted to thank

12  you for your efforts on the summary judgment ruling, starting

13  from scratch on that.  We understand the work that was

14  involved.

15          THE COURT:  I had terrific assistance from my team

16  of law clerks.

17          MR. NEMELKA:  Thank you.

18          MS. MILLER:  Thank you, your Honor.

19          THE COURT:  Thank you.

20          (An adjournment was taken at 10:43 a.m.)

21                      *   *   *   *   *

22  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
23

24  /s/ Frances Ward_____August 4, 2023.
    Official Court Reporter
25  F/j