**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer Magistrate Judge Jeffrey T. Gilbert |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 | |

## CDK'S BRIEF IN SUPPORT OF RETAINING THE *AUTOLOOP* MATTER IN THE NORTHERN DISTRICT OF ILLINOIS FOR TRIAL

Pursuant to 28 U.S.C. § 1404(a), CDK requests that this Court retain the *AutoLoop* direct vendor action in the Northern District of Illinois. Because *AutoLoop* was direct-filed in the MDL, there is no transferor court to which the JPML has authority to remand the matter under 28 U.S.C. § 1407. Therefore, 28 U.S.C. § 1404(a) controls and provides the proper analysis to determine where *AutoLoop* should proceed once pretrial proceedings are complete. Under this standard, the Court considers the convenience of the parties and witnesses and the interests of justice. While AutoLoop would prefer to see the matter transferred to the Western District of Wisconsin, that venue is neither convenient to the parties nor justified by the interests of justice. There is no meaningful connection between AutoLoop's claims against CDK and that district. Any hypothetical injury AutoLoop suffered from CDK's alleged conduct occurred at AutoLoop's headquarters and principal place of business, previously in Florida and now in Chicago. Although some car dealers who bought AutoLoop software were in the Western District of Wisconsin, and Authenticom, one of the third-party data integrators AutoLoop describes in its complaint, is based there, those forum connections are insignificant to the claims AutoLoop brings.

1

The Northern District of Illinois is the more convenient forum, where CDK maintains its largest corporate offices, and where AutoLoop is now headquartered. Insofar as location of car dealerships is relevant, there are more car dealerships using a CDK DMS in the Northern District of Illinois than in the Western District of Wisconsin. And Illinois has a significant interest in resolving claims between two companies with strong local ties. Additionally, after conducting the MDL proceedings and issuing complex rulings on numerous summary judgment motions, this Court's advanced understanding of and familiarity with the case further counsels in favor of retaining *AutoLoop* in this district. Retaining *AutoLoop* would allow this matter and the Dealers' action, which is pending in this district, to be tried together—a standard practice for direct and indirect purchaser claims. That would allow a single jury to decide the Sherman Act Section 1 conspiracy claim and would permit the single jury or a single judge to ensure that no duplicative damages are awarded.

In short, because there has been no transfer to this Court, this is not a transferee Court, and therefore neither Section 1407 nor *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), applies. Rather, Section 1404 controls, and application of that section strongly favors the Northern District of Illinois over the Western District of Wisconsin.

## BACKGROUND

At an April 6, 2018 status conference, Judge St. Eve gave AutoLoop permission to directly file its complaint, alleging a putative class action on behalf of automotive software application vendors, in the MDL, Dkt. 116 at 44-45, as contemplated by the court's Initial Status Order, Dkt. 10 at 1 (referring to actions "directly filed in the Northern District of Illinois"). At the status conference, CDK made clear that it did not concede that venue was proper in the Western District of Wisconsin, Dkt. 116 at 44-45, and nothing in the Court's Initial Status Order (nor in any subsequent order pertaining to the MDL) provides that a direct-filed action shall be transferred to

any particular court at the conclusion of pretrial proceedings. *See* Dkt. 10. Thereafter, AutoLoop directly filed its complaint in the MDL. *See* Dkt. 191.

In the complaint, AutoLoop requested that its complaint be deemed filed in the Western District of Wisconsin, *id.*, ¶ 35 n.4, and alleged that venue over its direct-filed action was proper in that district. AutoLoop describes itself as "an automotive software products and services company, providing integrated software solutions for car dealers." *Id.*, ¶ 6. According to its complaint, AutoLoop provides software "to more than 2,000 dealers across the country." *Id.*, ¶ 7. AutoLoop alleges that car dealers traditionally store their data on a database within their dealer management system ("DMS"), and that CDK, along with non-party Reynolds and Reynolds Company ("Reynolds"), sell most of the DMSs in the country. AutoLoop alleges that CDK and Reynolds engaged in anticompetitive conduct that raised the cost that software vendors like AutoLoop must pay for access to the data on auto dealers' DMS, and that AutoLoop passed price increases on to its dealer customers. *Id.*, ¶¶ 127-128.

At the time it filed its complaint, AutoLoop was a private Florida limited liability company headquartered in Clearwater, Florida. *Id.*, ¶ 30. While the action has been pending, AutoLoop merged with Affinitiv, Inc. and is now headquartered in Chicago. https://affinitiv.com/2019/09/04/affinitiv-and-autoloop-complete-merger. AutoLoop alleged that at the relevant times, CDK's headquarters and principal place of business was in Hoffman Estates, Illinois. Dkt. 191 at ¶ 31. AutoLoop alleged that it has "served dealers in Wisconsin that use a CDK" dealer management system. *Id.*, ¶ 36. AutoLoop further alleged that "[m]any dealers in Wisconsin use CDK's DMS and/or its applications." *Id.*, ¶ 35.

**ARGUMENT**

I. **The Court should determine the proper venue for the *AutoLoop* matter under 28 U.S.C. § 1404(a).**

Generally, at the conclusion of consolidated pretrial proceedings in a multidistrict litigation, the JPML remands transferred actions—that is, actions filed in other jurisdictions before being transferred to the MDL—to the transferor court. 28 U.S.C. § 1407(a) ("Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."). But in a case such as *AutoLoop*, which was directly filed in the MDL, the remand provision of Section 1407(a) is inoperative because, by its plain terms, that section provides for remand only of an "action so transferred" "for coordinated or consolidated pretrial proceedings." *Id.*

By definition, a direct-filed action has never been transferred from another court—there is no transferor court that has assumed jurisdiction over and docketed the matter, etc. Accordingly, the venue where the action is directly filed—here the Northern District of Illinois—is not "a transferee court," as AutoLoop has mistakenly argued, July 28, 2023 Tr. 21, for again, the case was never transferred.[1] *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 2011 WL 1232352, at *4 (S.D. Tex. Mar. 31, 2011) ("The JPML's rules expressly provide for joining direct filings with the MDL cases under a court's local rules without transferring through the JPML."). Indeed, the efficiency provided by cutting out the transferor court at the beginning of the litigation is a primary reason why direct-filing is often permitted in MDLs. *See Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021) ("[O]nce the transferee judge institutes direct filing

---

[1] The April 8, 2018, status conference did nothing to change this reality (nor could it). Again, CDK made clear at the conference that it was not agreeing that venue was proper in the Western District of Wisconsin. Dkt. 116 at 44-45. And the Court's Initial Status Order said nothing about where a direct-filed action will be transferred after pretrial proceedings. *See* Dkt. 10.

. . . plaintiffs can file directly in the MDL court, avoiding the delays of the tag-along process."); *id*. ("Direct filing can be a useful tool in managing multidistrict litigation because it eliminates the judicial inefficiency that results from two separate clerk's offices having to docket and maintain the same case and three separate courts (the transferor court, the MDL Panel, and the transferee court) having to preside over the same matter.") (internal quotation marks omitted).

AutoLoop principally relies on *Looper* to support its argument that remand to the Western District of Wisconsin was required under Section 1407(a). Dkt. 1387 at 2. But *Looper* says nothing about the proper venue for direct-filed cases after coordinated pretrial proceedings have come to a close. Instead, the court explained that its "focus here is on the choice of law when direct filing is used." 20 F.4th at 391. Indeed, the court recognized that different considerations come into play when assessing the choice-of-law and proper venue for direct-filed cases. With regard to the issue presented here—whether parties retain a right to transfer to the putative originating State in direct-filed cases—the court "expess[ed] no views . . . on that issue, which may present considerations quite different from the statute-of-limitations defenses [that differed based on choice of law] in these appeals." *Id*. at 397 n.3.

Further, AutoLoop's reading of *Looper* cannot be correct because Section 1407(a)—which allows the JPML to remand to a transferor court—by its plain terms does not apply when there is no transferor court, as is the case when a case is direct-filed in an MDL.

In these circumstances, at the conclusion of pretrial proceedings, the MDL court "must transfer [the] action 'to a federal district court of proper venue for trial' pursuant to 28 U.S.C. § 1404(a)." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 10404496, at *1 (M.D. Ga. Dec. 30, 2016) (quoting 28 U.S.C. § 1404(a)); *see also In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1345 (S.D. Fla. 2019) (court will transfer direct-

5

filed actions "'to a federal district court of proper venue as defined by 28 U.S.C. § 1391,' pursuant to the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1404(a)") (quoting *In re Incretin Mimetics prod. Liab. Litig.*, 2013 WL 12171761, at *1 & n.1 (S.D. Cal. Nov. 13, 2013)): *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2017 WL 5895483, at *1-2 (W.D. La. Nov. 28, 2017) (permitting direct-filing in MDL and providing that "[u]pon the completion of pretrial proceedings consistent with this Transfer Order, this Court, pursuant to 28 U.S.C. 1404(a) will transfer Direct-Filed Cases to the federal district where the plaintiff allegedly was injured by use of Actos, or where the plaintiff resides at the time of such transfer, subject to severance of multi-plaintiff actions, if necessary").[2]

## II. The *AutoLoop* action should remain in the Northern District of Illinois.

Under 28 U.S.C. § 1404(a), the Northern District of Illinois is a more suitable forum than the Western District of Wisconsin. That section states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* Generally, to establish that a district is a proper venue under § 1404(a), a party must establish that (1) venue is proper in the transferor district; (2) venue and jurisdiction would be proper in the transferee district; and (3) "the transfer will serve the convenience of the parties and witnesses, and is in the interest of justice." *Dela Torre v. Nippon Life Ins. Co. of Am.*, 2023 WL 2868058, at *2 (N.D. Ill. Apr. 10, 2023) (Pallmeyer, J.) (internal quotation marks omitted). The hallmark of the Section 1404(a) analysis is flexibility: "When hearing § 1404(a) motions, courts engage in a 'flexible and individualized analysis and look beyond a narrow or rigid set of

---

[2] In the event that the Court finds that Section 1407 applies to the *AutoLoop* action, which CDK respectfully submits is inappropriate for the reasons set forth herein, CDK asks that the ruling be without prejudice to CDK's right to seek transfer of this matter to this Court before the Western District of Wisconsin pursuant to Section 1404(a).

considerations' in order to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Id.* (internal quotation marks omitted); *see Gierwatowski v. Trader Joe's Co.*, 2021 WL 2660760, at *1 (N.D. Ill. June 29, 2021) ("District courts have discretion in evaluating motions to transfer after considering, on a case-by-case basis, convenience and fairness.").

As applied to actions directly filed in an MDL, the first element—that venue is proper in the transferor district—is irrelevant because there is no transferor district. Turning to the second element, jurisdiction and venue are proper in this district. This Court has subject matter jurisdiction over AutoLoop's federal claims under the Sherman and Clayton Acts pursuant to 28 U.S.C. §§ 1331 and 1337. And the Court has supplemental jurisdiction over AutoLoop's state-law claims pursuant to 28 U.S.C. § 1367. Venue is proper in the Northern District of Illinois because at the relevant times, CDK was headquartered and had its principal place of business in the district, CDK maintains its largest office in the district, events from which the suit arose occurred in the district, and CDK transacts business in the district. 28 U.S.C. § 1391(b), (c); 15 U.S.C. § 22.

The rest of this argument will address the third element, which is focused on convenience and the interests of justice.

**A. Venue in the Northern District of Illinois is convenient to the parties.**

To determine whether a venue is convenient under Section 1404(a), courts consider (1) the availability of and access to witnesses; (2) each party's access to and distance from resources in each forum; (3) the location of material events; and (4) the relative ease of access to sources of proof. *Gierwatowski*, 2021 WL 2660760, at *1. These factors favor the Northern District of Illinois over the Western District of Wisconsin.

### 1. AutoLoop's choice of forum is not entitled to deference.

AutoLoop prefers its action to be deemed filed in the Western District of Wisconsin. Dkt. 191, ¶ 35 n.4; Dkt. 1387 at 1-4. However, a plaintiff's chosen forum is not entitled to deference when it is not the plaintiff's home forum. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 806 (7th Cir. 2016) ("[I]f the plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one.") (internal quotation marks omitted). AutoLoop's choice of forum is not entitled to deference because the Western District of Wisconsin is far from Clearwater, Florida, where AutoLoop was headquartered and maintained its principal place of business when it brought this action and is farther away than its current home forum, the Northern District of Illinois.

Additionally, a plaintiff's choice of forum "deserve[s] no special deference," even when certain events took place in the forum, if "it is undisputed that these events took place, regardless whether the events are 'material' to the lawsuit." *D&G Inc. v. Supervalu, Inc.*, 2009 WL 1110412, at *4 (W.D. Wis. Apr. 24, 2009) (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). AutoLoop alleges that it provided software to some car dealers in the Western District of Wisconsin. Dkt. 191 at ¶ 36. AutoLoop also insists that "CDK and Reynolds's efforts to eliminate the independent data integrator Authenticom (on which AutoLoop relied) . . . occurred in the Western District of Wisconsin because Authenticom resides there." Dkt. 1387 at 3. But there is no factual dispute that AutoLoop provided software to car dealers in the district or that CDK applied its access policies to Authenticom and other data integrators that AutoLoop cites in its complaint. AutoLoop does not contend that material events such as CDK's alleged decision-making, which actually would have given rise to AutoLoop's claims and caused any injury to AutoLoop, occurred in the district, where neither company had its headquarters or maintained any physical office space. *See D&G Inc.*, 2009 WL 1110412, at *4 (plaintiff's choice of forum not

entitled to deference when plaintiff "fail[ed] to make a persuasive showing of the materiality of events that occurred in this district").

### 2.   The Northern District of Illinois is closer to each party's resources.

In considering the convenience of the forums, the Court should examine the "parties' access to the forum." *Timaero Ireland, Ltd. v. Boeing Co.*, 2021 WL 963815, at *11 (N.D. Ill. Mar. 15, 2021) (Pallmeyer, J.). AutoLoop has superior access to the Northern District of Illinois because that is where the company is now headquartered. Similarly, CDK has long maintained its largest and primary corporate office in the Northern District of Illinois.

Further, AutoLoop has brought a putative nationwide class action. The Court has recognized that "unnamed class members presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel." *AL & PO Corp. v. Am. Healthcare Cap., Inc.*, 2015 WL 738694, at *3 (N.D. Ill. Feb. 19, 2015) (Pallmeyer, J.). Here, in the event that a class may be certified in the *AutoLoop* matter, the unnamed class members should benefit from AutoLoop, their named representative, litigating in its home forum of the Northern District of Illinois.

### 3.   The convenience of the witnesses strongly favors the Northern District of Illinois.

The Northern District of Illinois is more convenient to the witnesses. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973 (7th Cir. 2010). The Court "should examine the nature and quality of each witness's testimony," and typically "more weight is afforded non-party witnesses than witnesses within the control of the parties." *Timaero*, 2021 WL 963815, at *10 (internal quotation marks omitted). CDK intends to call certain non-employee witnesses located in the district, such as Steve Anenen, CDK's former CEO who would testify

about CDK's February 2015 agreements with Reynolds, the reasons CDK needed to secure its DMS, and its decision to do so.

Other non-party witnesses who may testify at trial are located across the county, such as (for example) Bob Schaefer, Jon Martin, and Ron Lamb, who are all located in Ohio and would testify about Reynolds' decision to secure its DMS and that company's February 2015 agreements with CDK; former CDK employee Howard Gardner of Austin, Texas, who would testify about CDK's February 2015 agreements and CDK's decision to secure its DMS; Dan McCray of Ladera Ranch, California, who would testify about CDK's effort to secure its DMS; Alan Andreu, VP of Product Management at Dominion Enterprises, who is located in Plant City, Florida, and who would testify about a former data integrator owned by Dominion; and Phil Battista, CEO at Superior Integrated Solutions, who is located in South Plainfield, New Jersey, and would testify about his company's data integration services. The Northern District of Illinois will likely be more convenient to those witnesses than the Western District of Wisconsin because Chicago is a major transportation hub and is easier to travel to directly from around the country.

### 4. The location of material events favors the Northern District of Illinois.

The plaintiff's choice of forum "has minimal value when the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum." *Timaero*, 2021 WL 963815, at *10; *see also F.T.C. v. Acquinty Interactive, LLC*, 2014 WL 37808, at *2 (N.D. Ill. Jan. 6, 2014). This case involves corporate-level decision-making regarding policies governing access to dealer management systems and application of those policies to third-party software vendors seeking access to those systems. Those decisions were not formulated or implemented in the Western District of Wisconsin, but rather at the DMS providers' headquarters and principal places of business. For CDK, that was in the Northern District of Illinois.

10

And while AutoLoop alleges that it provided software services to some car dealerships located in the Western District of Wisconsin, Dkt. 191, at ¶ 36, application of CDK's DMS-access policy to AutoLoop did not occur there, nor was AutoLoop injured in that district by any effects it felt from CDK's efforts to secure its DMS. And even if the location of car dealerships served by AutoLoop is relevant, there are more dealers using a CDK DMS located in the Northern District of Illinois than the Western District of Wisconsin. Likewise, AutoLoop names Wisconsin-based Authenticom as an independent data integrator purportedly harmed by CDK's alleged anticompetitive conduct. Dkt. 1387 at 3. But again, the CDK decisions that AutoLoop challenges would have been made at CDK's headquarters in the Northern District of Illinois, and those decisions would have affected AutoLoop at its base in Florida. In any event, Authenticom is just one of "approximately a dozen" data integrators referenced in the complaint, Dkt. 191, at ¶ 69, and SIS is the integrator AutoLoop contends it used to obtain DMS data. *Id*., ¶¶ 88 (noting that AutoLoop used SIS before CDK allegedly closed its DMS), 156 (alleging that CDK continued to permit AutoLoop to use SIS); 69 (discussing SIS and SelectQu), 81 (same), 143 (discussing SIS), 149 (same).

At the end of the day, the best explanation for AutoLoop's focus on the Western District of Wisconsin may be the simple fact that "AutoLoop is represented by the same counsel as Authenticom, which was the first Plaintiff to file suit (in the Western District of Wisconsin)." Dkt. 1387 at 5 n.3; *see also* July 28, 2023 Tr. 19. That coincidence is not a "material event" warranting transfer to the Western District of Wisconsin. *See Body Science LLC v. Boston Scientific Corp.*, 846 F Supp. 2d 980, 993 (N.D. Ill. 2012) ("It is well-settled . . . that consideration of the convenience of Plaintiff's counsel is not an appropriate factor to consider when evaluating

transfer."). Moreover, Authenticom's action has since been settled and dismissed with prejudice, so there will be no trial of Authenticom's claims in the Western District of Wisconsin.

### 5. The relative ease of access to information favors neither forum.

"In this day and age, transferring documents from one district to another is commonplace and . . . no more costly than transferring them across town." *Timaero*, 2021 WL 963815, at *11 (internal quotation marks omitted). Thus, the "ready availability of photocopying and the relative ease with which documents may be selectively shipped renders this consideration insignificant." *AL & PO Corp.*, 2015 WL 738694, at *3 (internal quotation marks omitted). Further, most pretrial proceedings in this matter are complete. Thus, access to documents is not a relevant consideration.

### B. The interests of justice favor the Northern District of Illinois.

In addition to the convenience of the parties, the Court is to consider which forum will serve the interests of justice. *Gierwatowski*, 2021 WL 2660760, at *1. Courts consider (1) "docket congestion and the likely speed to trial in the transferor and potential transferee forums"; (2) "each court's relative familiarity with the relevant law"; (3) "the respective desirability of resolving controversies in each locale"; and (4) "the relationship of each community to the controversy." *Id.* (citing *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020)). This element "relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978. "[T]he interest of justice element may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Aliano v. Quaker Oats Co.*, 2017 WL 56638, at *2 (N.D. Ill. Jan. 4, 2017) (Pallmeyer, J.).

### 1. The Northern District of Illinois is not appreciably more congested than the Western District of Wisconsin.

"[T]he concept of docket congestion invites a certain amount of generalization based on how 'backed up' each court is." *Edke v. Belden Inc.*, 2021 WL 3022322, at *6 (N.D. Ill. July 16,

2021). The Statistical Tables for the Federal Judiciary provide that for the 12-month period ending December 31, 2021, the median time from filing to disposition after trial in the Northern District of Illinois was 42.8 months, while it was 21.3 months in the Western District of Wisconsin. *U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District & Method of Disposition, During the 12-Month Period Ending December 31, 2021*, United States Courts, https://uscourts.gov/statistics/table/c-5/statistical-tables-federaljudiciary/2021/12/31. But those statistics measuring the time from filing to trial "shed little light on the likely speed with which any particular case will be resolved." *Edke*, 2021 WL 3022322, at *6. Further, those statistics are not particularly useful here, because the *AutoLoop* matter will be ready for trial once the class certification issue is resolved. Further, this Court already has experience with and advanced knowledge of this case and has set the Dealers' action for trial on September 24, 2024. *See In re Ryze*, 968 F.3d at 710 (in considering congestion, relevant question is "the speed with which a case can come to trial and be resolved") (emphasis omitted). There is nothing to suggest that the Western District of Wisconsin will offer an earlier trial date or the efficiencies to be found by keeping the Dealer and *AutoLoop* cases in the same district.

### 2. The Northern District of Illinois is more familiar with the action.

Over the last five years, this Court has overseen pretrial proceedings in the *AutoLoop* action, has issued a lengthy decision on the dispositive motions filed in this matter, and will presumably rule on class certification. This Court therefore has substantial and superior familiarity with the law, facts, and application of law to fact in this matter.

### 3. The Northern District of Illinois has a greater relationship to the controversy, and it is more desirable to resolve the controversy here.

The other two considerations of the "interest of justice" prong of the Section 1404(a) analysis examine "the respective desirability of resolving controversies in each locale" and "the

13

relationship of each community to the controversy." *Gierwatowski*, 2021 WL 2660760, at *1. Both of those considerations strongly favor the Northern District of Illinois. That district is the current home of AutoLoop and at the relevant times was the headquarters and principal place of business of CDK and is whether CDK maintains its largest corporate office. Further, to the extent that the presence of individual car dealerships is relevant, there are more dealers using a CDK DMS in this district than in the Western District of Wisconsin. Illinois, and thus this district has a signfcantly greater interest than Wisconsin in resolving this dispute between two companies with strong ties to Illinois, where there are also more car dealers affected by CDK's alleged conduct.

Further, the Dealers' indirect purchaser case will be tried in the Northern District of Illinois. If the *AutoLoop* direct purchaser case remains in the Northern District of Illinois, some or all of the Dealers' case could be tried with the *AutoLoop* action to achieve important judicial economies. For instance, consolidated trial of the Sherman Act Section 1 conspiracy claim before a single jury would be efficient and protect against duplicative proceedings and inconsistent verdicts.

And a single jury or judge will be most able to ensure against duplicative damages awards in the Dealers' and *AutoLoop* actions. The imperative to avoid the risk that a single antitrust defendant could be forced to pay damages twice for the same conduct as the result of direct and indirect purchaser suits has been the focus of both courts and legislators. Indeed, the *Illinois Brick* rule was motivated by the "serious risk of multiple liability for defendants." *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 730 (1977). This Court has recognized the need to guard against the possibility of double recovery across these cases. *E.g.*, Dkt. 507 at 46. And States that have enacted *Illinois Brick* repealer statutes have acknowledged the need to avoid requiring a defendant to pay for the same injury twice. The Arizona Supreme Court thus has noted "most of the *Illinois Brick* repealer statutes leave the solution to the double-recovery problem to the courts" to avoid duplicate

14

liability for the same injury. *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 108 (Ariz. 2003); *see also Comes v. Microsoft Corp.*, 646 N.W.2d 440, 449-50 (Iowa 2002) ("[T]he district courts are fully capable of ensuring antitrust defendants are not forced to pay more in damages than amounts to which the injured parties are entitled."). The Illinois Antitrust Act makes the directive to avoid double recovery explicit: "[I]n any case in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability for the same injury *including transfer and consolidation of all actions*." 740 ILCS 10/7(2) (emphasis added); *see also Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 520 (Tenn. 2005) ("[M]any *Illinois Brick Co.* repealer statutes leave the solution of the risk of multiple liability to the trial courts."). Questions about trial structure and allocation of damages (if any) between the direct and indirect purchaser classes need not be resolved by the Court now. At this juncture, however, the best and most efficient way for trial courts to fairly and effectively manage these issues is for a single judge to oversee and a single jury to hear the trials of the direct and indirect purchaser actions.

Additionally, consolidation of the two matters for trial on some or all issues would undoubtedly serve the convenience of the parties and witnesses—the ultimate touchstone of the Section 1404(a) inquiry—by conserving resources associated with trials in two different venues and saving travel, especially for witnesses who would testify in both trials. These considerations strongly favor retaining the *AutoLoop* matter in the Northern District of Illinois.

## CONCLUSION

For these reasons, this Court should order that the *AutoLoop* action remain in the Northern District of Illinois.

Dated: August 18, 2023                    Respectfully submitted,


                                          /s/ *Britt M. Miller*
                                          Britt M. Miller
                                          Matthew D. Provance
                                          Michael A. Scodro
                                          Daniel T. Fenske
                                          MAYER BROWN LLP
                                          71 South Wacker Drive
                                          Chicago, IL 60606
                                          (312) 782-0600
                                          bmiller@mayerbrown.com
                                          mprovance@mayerbrown.com
                                          mscodro@mayerbrown.com
                                          dfenske@mayerbrown.com

                                          *Counsel for Defendant CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on August 18, 2023, I caused a true and correct copy of the foregoing **CDK'S BRIEF IN SUPPORT OF RETAINING THE AUTOLOOP MATTER IN THE NORTHERN DISTRICT OF ILLINOIS FOR TRIAL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayebrown.com