**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To:<br><br>*Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 | Hon. Rebecca R. Pallmeyer |

**PLAINTIFF AUTOLOOP'S OPPOSITION TO DEFENDANT CDK'S
BRIEF IN SUPPORT OF RETAINING THE AUTOLOOP MATTER
<u>IN THE NORTHERN DISTRICT OF ILLINOIS FOR TRIAL</u>**

## INTRODUCTION

Under the MDL statute, 28 U.S.C. § 1407, and Supreme Court precedent, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998), this Court *must* transfer MDL cases back to the transferor court once consolidated pretrial proceedings end, unless the plaintiff waives that remand right. In the teeth of what should be a straightforward application of settled MDL procedure, CDK argues that this Court should retain this case – over AutoLoop's objection – because § 1407(a) is "inoperative" in light of AutoLoop's direct filing in this MDL. In CDK's view, AutoLoop should be treated as if it waived its *Lexecon* rights by doing so.

That is revisionist history. Worse, it reneges on CDK's prior agreement that AutoLoop could file directly in this Court *without* waiving its *Lexecon* rights. Here is what happened: At the April 6, 2018 status hearing, Judge St. Eve – who originally presided over this MDL – authorized AutoLoop to file directly in the MDL while still having the case treated as if it had been filed in the Western District of Wisconsin for purposes of § 1407. The colloquy was crystal clear: AutoLoop proposed to "direct file in this district, *but the case would be deemed to have been filed in the Western District of Wisconsin*." *See* Ex. 1 (Apr. 6, 2018 Hr'g Tr.) at 44:9-12 (emphasis added). Judge St. Eve agreed: "That makes the most sense. . . . It makes the most sense from an efficiency and cost standpoint. So, yes, you may directly file that here." *Id.* 44:13, 20-23. And CDK affirmed that it did "not oppose" the procedure. *Id.* 44:17-19. Then, in reliance on the Court's authorization and CDK's commitment, AutoLoop filed its Complaint in this District with an express reservation of its *Lexecon* rights: "Pursuant to the Court's instructions at the April 6, 2018 status hearing . . . AutoLoop has filed this Complaint directly in the MDL court but requests that the Complaint be deemed filed in the Western District of Wisconsin and transferred to the Western District of Wisconsin for trial." Compl. ¶ 36 n.3, *Loop, LLC v. CDK Glob., LLC*, No. 18-cv-2521, Dkt. 1 (N.D. Ill. Apr. 9, 2018) ("*AutoLoop* Compl.").

1

There can be no doubt about the propriety of the direct-filing procedure used by Judge St. Eve. Experienced MDL judges routinely use it. Moreover, the Seventh Circuit has repeatedly approved of it, recently in *Looper v. Cook Inc.*, 20 F.4th 387 (7th Cir. 2021) – a case on which Judge St. Eve served on the panel. *See id.* at 392 ("'[F]oreign cases filed directly in a district court as a part of ongoing multidistrict litigation *are treated as having originated outside of that district*.'") (quoting *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016)) (emphasis added). Indeed, given CDK's explicit *agreement* to the direct-filing procedure, including the preservation of AutoLoop's *Lexecon* rights, it has waived any right to challenge it now. Similar to the defendant in *Looper*, CDK's attempted about-face smacks of "playing fast and loose with the courts" by attempting to "justify a retroactive 180-degree turn on a decisive procedural issue." *Id.* at 397-98. This Court should not sanction CDK's inequitable tactics.

CDK hangs its hat (at 2) on its statement at the April 2018 hearing that "it did not concede that venue was proper in the Western District of Wisconsin." As an initial matter, CDK later waived that improper-venue objection by failing to raise it in its motion to dismiss, as required by Rule 12. *See* Fed. R. Civ. P. 12(b)(3), (h)(1). More important for these purposes, that statement cannot help CDK avoid remand under § 1407. Section 1407 does not give the defendant (here, CDK) a right to object that the transferor court is an improper venue: unless *the plaintiff* waives it, transfer is automatic under § 1407. Thus, CDK reserved, at most, the right to seek transfer to a different venue *after remand* to Wisconsin. That is consistent with the operation of 28 U.S.C. § 1404(a), which allows a party to move to transfer a case to a *different* district – not, as CDK is trying to do here, move to *retain* a case in the transferee court contrary to § 1407.

Because CDK's specific arguments regarding venue under § 1404(a) are irrelevant under § 1407 and not properly directed to this Court, we address them only briefly. Suffice to say that a focal point of Defendants' conspiracy was the elimination of competition from rival data integrator

Authenticom, Inc., which was and remains headquartered in the Western District of Wisconsin. Authenticom personnel – including its CEO Steve Cottrell – will be key witnesses at trial on the conspiracy's existence (CDK and Reynolds executives admitted it to Mr. Cottrell) and its effects on Authenticom and vendors that used its services. By contrast, CDK cites only a single witness located in the Northern District of Illinois – its former CEO. The Western District of Wisconsin is also familiar with this litigation, having previously held a three-day preliminary injunction hearing at which key witnesses testified. So while CDK would prefer to have a jury trial in its own backyard, it will be a tall order for CDK to convince the Western District of Wisconsin that transfer is appropriate. In all events, that is a matter for another judge and another day. Under § 1407, *Lexecon*, and this MDL's direct-filing procedure, this case must be remanded to the Western District of Wisconsin after the Court rules on class certification.

## FACTUAL BACKGROUND

### I. The *Authenticom* Action

On May 1, 2017, Authenticom filed the action that ultimately led to this MDL in the Western District of Wisconsin, its home court (Authenticom is based in La Crosse, Wisconsin). *See Authenticom, Inc. v. CDK Glob., LLC*, No. 17-cv-318, Dkt. 1.[1] Shortly thereafter, Chief Judge Peterson held a three-day hearing on Authenticom's motion for a preliminary injunction and heard testimony from key witnesses from CDK, Reynolds, Authenticom (including from Steve Cottrell), dealers, vendors, and experts. *See Authenticom, Inc. v. CDK Glob., LLC*, 2017 WL 3017048, at *1 (W.D. Wis. July 14, 2017). Chief Judge Peterson granted Authenticom's motion, holding that

---

[1] Motor Vehicle Software Corporation ("MVSC") filed suit first against CDK and Reynolds (on February 3, 2017), but its complaint initially focused on Defendants' separate conspiracy to exclude MVSC from their certified data integration programs.

3

Authenticom had "adduced evidence that could establish the existence" of an "illegal horizontal conspiracy," and thus had "made the requisite likelihood of success showing." *Id*. at *6, *8.

## II.     Formation of the MDL

After the *Authenticom* preliminary-injunction proceeding, vendors and dealers harmed by the conspiracy filed more than a dozen actions across the country, including in the Western District of Wisconsin. *See, e.g.*, Compl., *Cox Auto., Inc. v. CDK Glob., LLC*, No. 17-cv-925, Dkt. 1 (W.D. Wis. Dec. 11, 2017) (app vendor).  CDK and Reynolds sought consolidation of these actions in an MDL, and, on February 1, 2018, the JPML consolidated them in this Court, appointing Judge St. Eve to preside.  *See In re DMS Antitrust Litig.*, 291 F. Supp. 3d 1367 (J.P.M.L. 2018).

## III.    AutoLoop Complaint

Judge St. Eve held an initial MDL hearing on March 12, 2018.  Undersigned counsel informed the Court that his firm anticipated filing an action on behalf of another app vendor (AutoLoop).  *See* Ex. 2 (Mar. 12, 2018 Hr'g Tr.) at 18:7-10.  Judge St. Eve advised that "it might make sense, rather than filing it in some other state and going through the process of coming here, that you file it directly here."  *Id.* 18:16-19.  Directly filing in the MDL would eliminate the delay from filing in the Western District of Wisconsin and awaiting transfer by the JPML – an important consideration because the proposed MDL schedule at the time had fact discovery beginning imminently, *see* Dkt. 64, at 6, 9, consistent with the Seventh Circuit's guidance to "expedite" the litigation, *see Authenticom, Inc. v. CDK Glob., LLC*, 874 F.3d 1019, 1021 (7th Cir. 2017).

Accordingly, on April 4, 2018, AutoLoop informed CDK that it would be filing suit with the Western District of Wisconsin as the trial venue, but that it wanted to heed the Court's guidance to file directly in the MDL.  *See* Ex. 3 at 2 (Email chain).  AutoLoop thus proposed that it would file directly in the MDL, but that the Complaint would be deemed to have been filed in the Western District of Wisconsin for trial purposes.  *Id.*  In response, CDK stated that it was "mindful of the

4

Court's preference and thus, if you were to move the Court for the relief requested in your stipulation, you could represent that although CDK does not consent and reserves all of its rights (including as to venue), *it will not oppose the motion*." *Id*. at 1 (emphasis added).

At the April 6, 2018 status hearing, counsel for AutoLoop stated that it had "been working with the defendants on a stipulation by which the parties would agree – or at least the defendants would not oppose – a process where we would direct file in this district, but the case would be deemed to have been filed in the Western District of Wisconsin, preserving their right to object to venue." Ex. 1 at 44:4-12. In response, the Court stated: "That makes the most sense." *Id*. 44:13. Counsel for CDK then stated: "[W]e said if your Honor was inclined to allow a direct file, *we would not oppose the motion*, but we weren't going to stipulate to its filing." *Id*. 44:17-19 (emphasis added). Judge St. Eve then directed AutoLoop to file its Complaint directly in the MDL: "It makes the most sense from an efficiency and cost standpoint. So, yes, you may directly file that here." *Id*. 44:20-23. CDK's counsel then asked whether any further order or motion was needed: "Do we need a proposed order or do they just have to file?" *Id*. 45:3-4. The Court's clerk answered: "Just file and just mention on the civil cover sheet the MDL," which the Court affirmed. *Id*. 45:5-6, 9-15. Counsel for CDK and AutoLoop both responded, "Okay." *Id*. 45:7-8.

Three days later, on April 9, 2018 – consistent with the Court's direct-filing instruction, CDK's statement of non-opposition, and the clarification that no further order or motion was needed – AutoLoop filed the class-action Complaint in this District on behalf of the vendors. In it, AutoLoop expressly reserved its right to remand: "Pursuant to the Court's instructions at the April 6, 2018 status hearing . . . , AutoLoop has filed this Complaint directly in the MDL court but requests that the Complaint be deemed filed in the Western District of Wisconsin and transferred to the Western District of Wisconsin for trial." *AutoLoop* Compl. ¶ 36 n.3.

5

# ARGUMENT

**I.      Under Section 1407 and *Lexecon*, *AutoLoop* Must Be Remanded to the Western District of Wisconsin for Trial**

**A.      Section 1407 and *Lexecon* Require Remand to the Transferor Court for Trial**

Section 1407(a) of the MDL statute requires that each action consolidated in the MDL for pretrial proceedings "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred." 28 U.S.C. § 1407(a). In *Lexecon*, the Court squarely (and unanimously) held that an MDL transferee court has no authority under the general transfer of venue statute, 28 U.S.C. § 1404(a), to transfer the case to itself for trial. As the Court said: "The issue here is whether a district court conducting such 'pretrial proceedings' may invoke § 1404(a) to assign a transferred case to itself for trial. We hold it has no such authority." *Lexecon*, 523 U.S. at 28. Accordingly, unless the plaintiff waives its right to remand, *Lexecon* holds that § 1407 "*obligates* the [JPML] to remand any pending case to its originating court." *Id.* at 34 (emphasis added); *see also id.* at 41-42 (holding that § 1407(a) "categorically limits the authority of courts (and special panels) to override a plaintiff's choice [of forum]"). The Court further explained that any objection to venue in the originating court must be addressed by the defendant to that court. *See id.* at 39 ("[I]f an order may be made under § 1404(a), it may be made after remand of the case to the originating district court."). Under a straightforward application of § 1407 and *Lexecon*, this Court must remand for trial; it has no discretion to entertain a § 1404(a) transfer motion, which must be addressed to the Western District of Wisconsin.

**B.      The Court's Direct-Filing Procedure Preserved AutoLoop's Right to Automatic Remand**

CDK's argument hinges on the contention that § 1407 is "inoperative" because AutoLoop directly filed in this Court. But as the colloquy with Judge St. Eve made perfectly clear, AutoLoop was authorized to – and did – file in this Court with the express acknowledgment that its case

6

would be treated as having been filed in the Western District of Wisconsin. Under § 1407 and *Lexecon*, that means that – absent waiver by AutoLoop – remand to that district is required. Contrary to CDK's contention, the direct filing here preserved the operation of § 1407. The Western District of Wisconsin is the transferor court, and remand to that court remains mandatory.

The Seventh Circuit has made clear that the direct-filing procedure approved by Judge St. Eve preserves the operation of § 1407 by treating the case as having been filed in the originating court designated by the plaintiff. As the Court stated in *Dobbs*, "district courts in our circuit have taken that approach: foreign cases filed directly in a district court as a part of ongoing multidistrict litigation *are treated as having originated outside of that district*." 842 F.3d at 1049 (emphasis added). The Seventh Circuit recently reaffirmed the same point in *Looper*. As the court explained, "[d]irect filing eliminates the need for plaintiffs to file their cases in their home jurisdictions (or other valid forums apart from the MDL court) and then wait for their cases to be tagged and later transferred to the MDL transferee court. Instead, once the transferee judge institutes direct filing[,] . . . plaintiffs can file directly in the MDL court, avoiding the delays in the tag-along process." *Looper*, 20 F.4th at 390. Direct filing does not render § 1407 "inoperative," contrary to CDK's contention (at 4). In such situations, "'foreign cases filed directly in a district court as a part of ongoing multidistrict litigation *are treated as having originated outside of that district*.'" *Id*. at 392 (quoting *Dobbs*, 842 F.3d at 1049) (emphasis added). Under *Lexecon*, those "foreign cases" remain subject to § 1407's mandatory transfer obligation.[2]

Incredibly, CDK asserts (at 5) that *Looper* addressed only choice-of-law in direct-filed cases and "says nothing about the proper venue for direct-filed cases after coordinated pretrial

---

[2] The Seventh Circuit reaffirmed *Looper* just two months ago, in *Sykes v. Cook Inc.*, 72 F.4th 195, 202 (7th Cir. 2023) (St. Eve, J.) ("A common MDL procedure is direct filing, which offers plaintiffs a more efficient route into an MDL.") (citing *Looper*, 20 F.4th at 390-91).

7

proceedings have come to a close." But CDK's blinkered reading ignores the Seventh Circuit's repeated explanation of the purpose and operation of the direct-filing procedure. As the court of appeals recognized, direct filing skips the transfer step – "eliminat[ing] the judicial inefficiency" that results from the need for multiple cases pending in multiple courts and the JPML – but *preserves* the right to remand. *Looper*, 20 F.4th at 390-91; *see id.* (direct filing "skip[s] the transfer step, while preserving [plaintiffs'] prerogative to return to a more convenient forum if and when pretrial proceedings conclude") (citations omitted). Indeed, direct filing would not "benefit all parties" if it meant that the plaintiff had to waive its right to remand under *Lexecon*. *Id.* Judge St. Eve's colloquy with the parties made clear that AutoLoop was *not* waiving its *Lexecon* rights.

CDK's reliance on footnote 3 of *Looper* is also misplaced. In footnote 3, the court reaffirmed that, under *Lexecon*, "[p]arties can consent to having the MDL court retain such cases for trial, but without consent, the right to re-transfer remains." *Id.* at 397 n.3. In that case, however, the district court held that, *because there was no direct-filing order*, the plaintiff's direct filing in that court waived its *Lexecon* rights. *See id*. The court of appeals expressed no view on that issue, *see id.*, but that issue is not presented in this case, because here there *was* a direct-filing order. Thus, AutoLoop did not waive its right to remand by following this Court's direct-filing instruction, which explicitly preserved AutoLoop's right to have its case treated as having been filed in the Western District of Wisconsin.

CDK argues (at 5) that AutoLoop's reading of *Looper* contradicts the language of § 1407(a). That is wrong. Nothing in § 1407 precludes courts from allowing direct filing while also allowing plaintiffs to preserve their right to remand under § 1407(a) and *Lexecon*. Indeed, that procedure not only has been endorsed by *Dobbs* and *Looper* but also has been used routinely by experienced MDL judges across the country, including recently by this Court. *See* Case

8

Management Order No. 11 at 2, *In re Abbott Labs., et al., Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22-cv-00071, Dkt. 296 (N.D. Ill. Jan. 6, 2023) (Pallmeyer, J.) (providing that direct filing involves "[n]o *Lexecon* [w]aiver").[3] And it is widely accepted among MDL practitioners and scholars. *See Looper*, 20 F.4th at 390-91 (citing scholarly literature).

> **C. CDK Consented to the Direct-Filing Procedure Instituted by the Court and Should Be Estopped from Objecting Now**

In all events, principles of waiver and estoppel preclude CDK from now challenging the propriety of the direct-filing procedure in this case. As explained above, CDK consented to the procedure instituted by Judge St. Eve, in which AutoLoop clearly stated – and Judge St. Eve agreed – that AutoLoop's case would be treated as originating in the Western District of Wisconsin and therefore subject to remand there. CDK also made representations to AutoLoop in correspondence leading up to that hearing that it would not oppose that procedure. *See supra* pp. 4-5 (CDK writing to AutoLoop that "it will not oppose" the requested relief). In fact, once Judge St. Eve instituted the direct-filing-and-then-remand procedure, counsel for CDK confirmed that *nothing else was needed* – no written order from the Court or motion from AutoLoop. *See supra* p. 5. CDK thus clearly waived any argument that § 1407 precludes the Court's direct-filing procedure. *See Looper*, 20 F.4th at 391 ("The parties' consent to the procedure [of direct filing] and agreement on its consequences should remove the risk of later objections.").

CDK now opposes the consequences of the direct-filing procedure, but that "unfair reversal of course should not stand." *Id.* at 398. As the Seventh Circuit explained, "[w]e know of no prior multidistrict litigation that allowed one party to withdraw its consent – retroactively – to the

---

[3] *See also*, *e.g.*, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013); Sixth Am. Case Mgmt. Order, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Relevant Prods. Liab. Litig.*, MDL No. 09-2100, Dkt. 3171 (S.D. Ill. Dec. 20, 2013); Pretrial Order No. 37, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, MDL No. 07-1873 (E.D. La. Apr. 29, 2009) (allowing express designation of originating venue for direct-filed cases).

9

treatment of direct-filed cases halfway through the MDL, springing a trap shut on parties who complied with the law of the case." *Id*. Indeed, if CDK had opposed the procedure established by Judge St. Eve, then either the Court could have overruled CDK's objection or AutoLoop could have filed its case in Wisconsin and waited for the tag-along process.

As with the defendant in *Looper*, CDK's "about-face looks like an example of a party playing fast and loose with the courts," and it should be estopped from objecting to remand now. *Id*.; *cf. New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (judicial estoppel "protect[s] the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment"), *cited in Looper*, 20 F.4th at 398. "Having lulled both plaintiff and the Court into believing they had no objection" to the direct-filing and remand procedure instituted by Judge St. Eve, CDK "cannot object to it now." *Paradigm Equip. Fin., Inc. v. Peterson Med. Surgi-Ctr., S.C.*, 2019 WL 339596, at *2 (N.D. Ill. Jan. 28, 2019) (applying equitable estoppel to bar venue objection); *see also J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 651 (7th Cir. 2014) ("In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.") (citation omitted).

CDK argues (at 2, 4 n.1) that it never agreed to remand to the Western District of Wisconsin because it stated at the April 6, 2018 status hearing that "it did not concede that venue was proper" there. But that improper-venue objection cannot save CDK's day, for two reasons. First, CDK's reservation cannot abridge CDK's clear and unequivocal statements of non-opposition to the direct-filing and remand procedure instituted by Judge St. Eve. As explained above, under § 1407 and *Lexecon*, the legal consequence of a case being treated as filed in the Western District of Wisconsin is that – absent waiver by plaintiff – remand to that district is mandatory. The Court authorized that treatment, and CDK expressly stated that it did not oppose it. CDK's statement about improper venue was simply a reservation of its right to object to venue in its responsive

10

pleadings or possibly in the Western District of Wisconsin in the manner otherwise provided for by the rules. Given its express *consent* to the direct-filing procedure, letting CDK recast its improper-venue objection as an objection to plaintiff's right to remand under § 1407 and *Lexecon* would be utterly inequitable. *See Looper*, 20 F.4th at 397 (party should not be able to reverse its position to "justify a retroactive 180-degree turn on a decisive procedural issue").

Second, CDK has waived any argument that venue is improper in the Western District of Wisconsin. *See* Fed. R. Civ. P. 12(b)(3), (h)(1) ("improper venue" defense "waive[d]" by not asserting it in a Rule 12(b) motion or responsive pleading); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). CDK did not assert improper venue under Rule 12(b)(3) in its Motions To Dismiss, *see* Dkts. 172, 261, or in its Answer, *see* Dkt. 515, at 87-90 (defenses in answer). Even in the current briefing, CDK does not contend that venue would be *improper* in the Western District of Wisconsin; rather, CDK affirmatively invokes § 1404(a), which it acknowledges (at 6) governs transfer between two districts where venue is *proper*. And, as discussed below, that argument is for the Western District of Wisconsin *after* mandatory remand.

Finally, CDK attempts (at 5-6) to mischaracterize other direct-filing cases as saying that direct filing overrides plaintiff's *Lexecon* rights, requiring the plaintiff to satisfy the standards of § 1404(a) in order to obtain remand. That is not accurate. Those cases recognize that direct filing generally preserves plaintiff's *Lexecon* rights. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 10404496, at *1 (M.D. Ga. Dec. 30, 2016) (direct filing did not waive *Lexecon* rights). While the MDL court may have a choice among venues for remand where the direct-filing procedure does not specify a single originating court, *see In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1345 (S.D. Fla. 2019) (reserving question of where to transfer case after pretrial proceedings because there had been no specification on that point); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2017 WL 5895483, at *2 (W.D. La. Nov. 28, 2017)

(direct-filing order providing that remand would be either to the district where the plaintiff resides or was injured), that is not the situation here. In this case, as explained above, the Court instructed and CDK agreed that AutoLoop's case would be treated as having been filed in a specific court: the Western District of Wisconsin. Accordingly, remand to that court is required.[4]

## II. CDK's Arguments Under § 1404(a) Do Not Justify Refusal To Remand

### A. CDK's Arguments Are Directed to the Wrong Forum

As *Lexecon* makes clear, CDK's attempt to use § 1404(a) to override mandatory remand under § 1407 is directed to the wrong forum; any motion to transfer must be made to the Western District of Wisconsin *after* mandatory remand. *See Lexecon*, 523 U.S. at 39 ("[I]f an order may be made under § 1404(a), it may be made after remand of the case to the originating district court."). CDK argues (at 15) that § 1404(a) justifies "retaining the *AutoLoop* matter" in this District. But § 1404(a) provides that "a district court may *transfer* any civil action to any other district or division where it might have been brought" – it says nothing about *retaining* a case. 28 U.S.C. § 1404(a) (emphasis added). CDK also contends (at 7) that, "[a]s applied to actions directly filed in an MDL, the first element – that venue is proper in the transferor district – is irrelevant because there is no transferor district." That argument, too, demonstrates the fundamental flaw in CDK's argument, because § 1404(a) requires a transferor court. CDK's § 1404(a) arguments are thus procedurally improper; they are for the Western District of Wisconsin to consider on remand.

---

[4] Some courts use § 1404(a) to transfer direct-filed cases back to the originating court without the need for a suggestion of remand to the JPML. Like direct *filing*, direct *remand* achieves judicial efficiencies because it obviates the need for transfer through the JPML. But the use of § 1404(a) in those cases does not mean that the plaintiff must satisfy § 1404(a) to obtain remand in direct-filed cases. Section 1404(a) is used simply as a mechanism for transfer that remains *mandatory* under § 1407 and *Lexecon*. Here, the Court provided that AutoLoop could directly file while preserving its *Lexecon* rights, without requiring a formal motion and order. As a result, the parties never raised – and the Court never indicated its view on – direct remand as opposed to remand through the JPML. But whether transfer is achieved through the JPML under § 1407 or directly using § 1404(a), the key point is that remand to the Western District of Wisconsin is mandatory because AutoLoop's direct filing in this Court – pursuant to the Court's order and with CDK's consent – preserved its right to remand under § 1407 and *Lexecon*.

12

## B. CDK's § 1404(a) Arguments Are Meritless

1. Even if this Court were the proper forum to entertain CDK's § 1404(a) motion (it is not), CDK's position (at 12) that the interests of justice warrant transfer lacks merit. That is a demanding standard, requiring proof that this Court "is clearly more convenient" than AutoLoop's forum, *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986), a "heavy burden" that cannot be met if transfer "merely shifts the burden from one party to the other," *Camy v. Triple-S Propiedad, Inc.*, 2015 WL 3856097, at *4 (N.D. Ill. June 19, 2015). CDK cannot meet that burden.

As CDK notes (at 12), "most pretrial proceedings in this matter are complete," so the paramount consideration is the convenience for trial and, specifically, "the convenience of the witnesses." *Bland v. Edward D. Jones & Co.*, 2020 WL 7027595, at *10 (N.D. Ill. Nov. 30, 2020). Moreover, "the convenience of non-party witnesses" is "far [more] important" than "the convenience of witnesses who are within a party's control, such as a party's employees." *Id.* The Western District of Wisconsin is where key nonparty witnesses from Authenticom are located, including its CEO Steve Cottrell, who will testify to his first-hand knowledge of CDK and Reynolds's conspiracy. Authenticom's presence also makes the Western District of Wisconsin the location of material events: CDK and Reynolds's conspiracy sought to destroy Authenticom, which harmed other app vendors. CDK's attempt (at 11) to dismiss Authenticom as "just one" of many data integrators belies the record, as demonstrated by this Court's recent summary-judgment ruling mentioning Authenticom nearly 200 times. And CDK's claim (at 8-9) that there is "no factual dispute . . . that CDK applied its access policies to Authenticom" is misguided. There is a dispute about whether those policies were part of an unlawful conspiracy with Reynolds and the effects of that conspiracy – which Authenticom witnesses will testify about.

AutoLoop chose the Western District of Wisconsin because it is where Authenticom is located and where the antitrust litigation began. That reasonable choice is entitled to "substantial

13

weight." *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 902 (N.D. Ill. 2001) (noting that plaintiffs' chosen forum is entitled to lesser deference only where it "is not the plaintiffs' home forum *or* lacks significant contact with the litigation") (emphasis added). "[W]hen a plaintiff is suing far from home," courts can be wary of the "risk that the chosen forum . . . has little connection to the litigation." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 806 (7th Cir. 2016) (citation omitted). But that risk is not present here.

CDK states (at 9-10) that it "intends to call certain non-employee witnesses located in th[is] district," but it names only one: Steve Anenen, its former CEO. The other potential witnesses named by CDK are in Ohio, Texas, California, Florida, and New Jersey. As to Mr. Anenen, his convenience – as a former employee of CDK – is "far less important" than nonparty witnesses from Authenticom. *Bland*, 2020 WL 7027595, at *10. CDK also incorrectly asserts (at 9) that the Northern District of Illinois will be more convenient because it is AutoLoop's home forum. AutoLoop was acquired by Affinitiv – a company with headquarters in this District – but the AutoLoop employees with relevant knowledge remain in Clearwater, Florida.

**2.** CDK also has not shown that retaining AutoLoop's suit here is clearly in the interests of justice. With respect to court congestion, CDK concedes (at 12-13) that the Northern District of Illinois is the more congested of the two courts – with double the time to trial (21.3 to 42.8 months). The Courts' relative familiarity with the law is neutral. This case concerns the application of federal antitrust law (not state law), and "both courts are familiar with such law." *SRAM Corp. v. SunRace Roots Enter. Co.*, 953 F. Supp. 257, 260 (N.D. Ill. 1997). To the extent familiarity with the facts matters, both Courts are well-versed in them – this Court by its recent rulings and the Western District of Wisconsin by presiding over a three-day hearing. Finally, given the connection between the Western District of Wisconsin and this litigation, *see supra* pp. 3-4, the Northern District of Illinois does not clearly have a greater interest in trying this case.

CDK's argument (at 14-15) that it would be "efficient" for this Court to consolidate both the direct purchaser and the indirect purchaser cases for trial fares no better. There is a reason CDK cites nothing to support the notion (at 2; *see also id.* at 14-15) that it is "standard practice" to consolidate indirect and direct purchaser class cases for trial over a plaintiff's objection. On the contrary, courts regularly refuse to do so because such consolidated trials risk juror confusion and error with respect to damages, state-law claims, and differing experts, among other issues.[5] At any rate, because § 1407 entitles AutoLoop to remand to the Western District of Wisconsin, consolidation cannot be a basis for this Court to retain jurisdiction.

## CONCLUSION

This Court should issue a suggestion of remand to the Western District of Wisconsin to the JPML pursuant to § 1407 or, alternatively, transfer this suit to that court pursuant to § 1404(a).

---

[5] *See, e.g.*, Order at 3, *In re Polyurethane Foam Antitrust Litig.*, MDL No. 10-2196, Dkt. 1272 (N.D. Ohio July 3, 2014) (rejecting consolidation to avoid "passthrough issues"); Order at 2, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 02-1486, Dkt. 1042 (N.D. Cal. Aug. 29, 2006); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 399684, at *2 (N.D. Ill. July 7, 1995).

Dated:  August 25, 2023

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
Collin R. White
Bethan R. Jones
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
(202) 326-7900
Washington, D.C. 20036
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com
cwhite@kellogghansen.com
bjones@kellogghansen.com

*MDL Co-Lead Counsel and Interim Class Counsel representing Loop, LLC, d/b/a AutoLoop on behalf of itself and all others similarly situated*

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
si13@nyu.edu

*MDL Coordinating Counsel*

16

## CERTIFICATE OF SERVICE

      I, Derek T. Ho, an attorney, hereby certify that on August 25 2023, I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S OPPOSITION TO DEFENDANT CDK'S BRIEF IN SUPPORT OF RETAINING THE AUTOLOOP MATTER IN THE NORTHERN DISTRICT OF ILLINOIS FOR TRIAL** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      */s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com