**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer<br>Magistrate Judge Jeffrey T. Gilbert |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 | |

## CDK'S REPLY BRIEF IN SUPPORT OF RETAINING THE *AUTOLOOP* MATTER IN THE NORTHERN DISTRICT OF ILLINOIS FOR TRIAL

This Court should determine that, under Section 1404(a), the *AutoLoop* matter should remain in the Northern District of Illinois for trial. As CDK explained in its opening brief (at 4-5), Section 1407(a) by its plain terms does not apply in this context because that provision permits the Judicial Panel on Multidistrict Litigation (JPML) to *remand* a case to a *transferor* court, but there is no transferor court to remand to when a case is direct-filed in the MDL. For that reason, when pretrial proceedings are concluded, MDL courts decide whether direct-filed cases should be transferred—as opposed to remanded—under Section 1404(a). *See* CDK Br. at 5-6. In cases such as this where there is no case management order stating where the trial will occur, MDL courts engage in the analysis under Section 1404(a), and under that analysis the Northern District of Illinois's connection to this case is far stronger than the Western District of Wisconsin's. *Id.* at 6-15.

In response, AutoLoop ignores the threshold plain-language issue that precludes remand under Section 1407(a) and engages in a contorted narrative claiming that CDK somehow conceded that this case belongs in the Western District of Wisconsin. Nothing could be further from the truth. As AutoLoop's discussion makes clear, CDK did not stipulate that remand under Section

1407(a) was proper at the conclusion of pretrial proceedings or that the venue decision under Section 1404(a) should be resolved in that district's favor. At most, CDK stated that it would not oppose direct-filing, but the venue consequences of that direct-filing remain to be determined. AutoLoop virtually ignores the Section 1404(a) factors, largely basing its brief analysis on its claim that the litigation that led to the MDL was initiated (by AutoLoop's counsel) in the Western District of Wisconsin in a lawsuit brought by a different plaintiff, Authenticom, that has since settled its claims. Where Authenticom filed suit or the appropriate venue for Authenticom's hypothetical trial, had it not settled, has little to do with where AutoLoop's trial should occur. AutoLoop has no meaningful response to the fact that the Northern District of Illinois has a greater interest in the matter: AutoLoop's headquarters are now located in this District, CDK's largest corporate office is in this District, relevant actions by CDK occurred in this District, key witnesses are located in this District, this District is more convenient for other witnesses, and there is significant convenience and judicial economy to be gained by trying AutoLoop's direct-purchaser action with the Dealers' indirect purchaser action before the same jury in this District.

## I.       Section 1407(a) has no application to this case.

AutoLoop spends most of its brief arguing that this case "must be remanded to the Western District of Wisconsin" under Section 1407(a). But as CDK explained, that provision allows the JPML to "remand . . . to the district *from which it was transferred.*" 28 U.S.C. 1407(a) (emphasis added). When a case is direct-filed, it has not been transferred from a district. *See* J.P.M.L. R.1.1(j) (defining "transferor district" as "the federal district court where an action was *pending prior to its transfer*") (emphasis added). Indeed, that is the point of direct-filing: to forego the extra steps required by filing the case elsewhere and then asking the JPML to transfer the case to the MDL

court. *See Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021) (Direct-filing "eliminates the judicial inefficiency" of "three separate courts . . . having to preside over the same matter.").

If a case has not been transferred to the MDL court, there is no court to which the case can be remanded. *See, e.g.*, *21 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1251 (S.D. Fla. 2022) ("direct-filed cases do not have a transferor 'home' court to which the transferee court can remand them"). The term "remand" itself makes this clear: it means "the act or instance of sending something (such as a case, claim, or person) *back* for further action." Black's Law Dict. (11th ed. 2019) (emphasis added). A direct-filed case cannot be sent *back* anywhere because it has been nowhere else. When the JPML remands a case, the case is returned to a court that has already exercised jurisdiction over the case—a court that has accepted a filing fee, docketed the case, assigned the matter a case number and a judge, and so forth. Here, the *AutoLoop* action has never been docketed by the Western District of Wisconsin.

Ignoring this dispositive plain language, AutoLoop argues that, under Section 1407(a) and *Lexecon, Inc. v. Milberg Weiss Bershad Hayes & Lerach*, 523 U.S. 26, 34 (1988), this Court "*must* transfer MDL cases back to the transferor court" and "*Lexecon* holds that § 1407 '*obligates* the [JPML] to remand any pending case to its originating court.'" AutoLoop Br. (Dkt. 1399) at 2, 6 (emphasis in original). All of that may be true of cases that were originally filed in a transferor court before they were sent to an MDL pursuant to Section 1407. But again, in direct-filed actions, there is no "originating" or "transferor" court to which a case can be remanded. *Lexecon* did not involve the question of proper venue for direct-filed cases.

While AutoLoop asserts (at 7) that the Seventh Circuit has approved direct-filing, the use of the direct-filing procedure is not in question here. And the Seventh Circuit cases on which AutoLoop relies, *Looper* and *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016),

simply answered the choice of law questions raised by direct-filed cases. *See* 842 F.3d at 1048-49. As *Looper* acknowledged, the question of proper venue for direct-filed cases raises "quite different" considerations that the Seventh Circuit explicitly declined to address. 20 F.4th at 397 n.3.

The plain language of Section 1407(a) aside, AutoLoop concedes (at 11) that "the MDL court may have a choice among venues for remand where the direct-filing procedure does not specify a single originating court" and cites several such MDLs where the transfer of direct-filed cases was governed by Section 1404(a). *See id.* at 10-11 (citing *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 10404496, at *1 (M.D. Ga. Dec. 30, 2016); *In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1345 (S.D. Fla. 2019); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 2017 WL 5895483, at *1-2 (W.D. La. Nov. 28, 2017)). As the court in *In re Takata Airbag Prods. Liab. Litig.* explained: "Without a stipulation by the parties as to where these [direct-filed] actions should be transferred, the Court will transfer them 'to a federal district court of proper venue as defined by 28 U.S.C. § 1391,' 'pursuant to the Rules of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. § 1404(a).'" 379 F. Supp. 3d at 1345 (quoting *In re Incretin Mimetics Prod. Liab. Litig.*, 2013 WL 12171761, at *1 & n.1 (S.D. Cal. Nov. 13, 2013)). Thus, in cases like this one, where there is no stipulation between the parties or court order that explicitly resolves the venue question for a direct-filed case, the court must determine the proper venue under the Section 1404(a) analysis, as these and other courts have held.[1]

AutoLoop's attempt (at 11-12) to distinguish CDK's authority is unpersuasive. AutoLoop asserts that *In re Mentor Corp.* recognized that "direct filing generally preserves plaintiff's

---

[1] *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-02543 (S.D.N.Y.), ECF No. 19 at 2 ("[U]pon completion of all pretrial proceedings applicable to a case directly filed in this Court . . . this Court, pursuant to 28 U.S.C. § 1404(a), will transfer that case to a federal district court of proper venue, as defined in 28 U.S.C. § 1391, after considering the recommendations of the parties to that case.").

*Lexecon* rights." AutoLoop Br. at 11. But the court in *In re Mentor Corp.* explained that where the parties in a direct-filed action had not waived their *Lexecon* rights, "the Court must transfer this action 'to a federal district court of proper venue for trial' pursuant to 28 U.S.C. 1404(a)." 2016 WL 10404496, at *1. *In re Mentor Corp.* thus establishes that when a case is directly filed in the MDL and when the filing party has not waived its *Lexecon* rights, Section 1404(a) and not Section 1407(a) applies.

AutoLoop asserts (at 11-12) that *In re Takata Airbag* and *In re Actos* are inapplicable because in those cases the MDL court had "a choice among venues for remand where the direct-filing procedure does not specify a single originating court." But that is the same situation here. While AutoLoop expressed its desire that its case should be sent to the Western District of Wisconsin, no court order stated that the case would be transferred to that district at the conclusion of pretrial proceedings. Therefore, under Section 1404(a), this Court must weigh the interests of different forums for conducting the trial.[2]

Finally, AutoLoop contends (at 9-12) that CDK should be estopped "from now challenging the propriety of the direct-filing procedure in this case." CDK is not challenging whether the *AutoLoop* case was properly *filed* in this Court five years ago. But that does not answer the venue question before the Court; the question now is where the case should be *tried*. AutoLoop focuses on a colloquy during a hearing where *AutoLoop's counsel* said that the parties were working on a stipulation in which (1) AutoLoop would directly file the action, (2) the case would be "deemed to have been filed in the Western District of Wisconsin," and (3) CDK would "preserv[e] their right to object to venue." Dkt. 1399-1at 44:4-12. No such stipulation was ever entered or filed.

---

[2] AutoLoop argues (at 11) that "CDK has waived any argument that venue is improper in the Western District of Wisconsin." But CDK is not asserting that venue would be improper in the Western District of Wisconsin. Instead, CDK's point is that under the required Section 1404(a) analysis, the Northern District of Illinois is the more convenient venue.

And contrary to AutoLoop's misreading of the transcript, CDK did not make a "clear and unequivocal statement of non-opposition to the direct-filing and remand procedure instated by Judge St. Eve." AutoLoop Br. at 10. For starters, Judge St. Eve made no comment on any "remand procedure"—she simply authorized direct-filing. Dkt. 1399-1 at 44:4-23 (the Court stated "yes, you may directly file that [case] here."). And CDK did not agree to AutoLoop's remand proposal, stating only that CDK would not oppose direct-filing. *Id*. at 44:14-19 ("We said, you Honor, we would not—we weren't sure why the Western District of Wisconsin. It's a Florida company, at least from what we can tell, not registered in Wisconsin. But we said if your Honor was inclined to allow a direct file, we would not oppose the motion, but we weren't going to stipulate to its filing.").

In short, although the Court permitted AutoLoop to directly file its action, the parties never agreed (and the Court never ruled) that the case would be transferred to the Western District of Wisconsin—or transferred at all—at the conclusion of pretrial proceedings. Therefore, the Court must undertake the Section 1404(a) analysis. *See supra* at 4; CDK Br. at 5-6 (collecting cases).

## II.    Under Section 1404(a), the Northern District of Illinois is the proper venue for trial.

As CDK argued (at 8-15), the Northern District of Illinois is the proper venue for trial. As an initial matter, AutoLoop's choice of forum is not entitled to deference because the Western District of Wisconsin is not AutoLoop's home forum and no disputed fact related to the *AutoLoop* case occurred there. Conversely, the Northern District of Illinois is home to AutoLoop's headquarters, the location of CDK's largest corporate office and headquarters at all relevant times, the location of material events, and more convenient for witnesses. Additionally, the interests of justice favor the Northern District of Illinois because this Court is more familiar with the facts of

the case, Illinois has a greater relationship to the controversy, and it would be convenient and efficient to conduct the *AutoLoop* trial with the Dealers' indirect purchaser action.

AutoLoop gives short shrift to the Section 1404(a) analysis and fails to meaningfully respond to many of the points CDK raises. Instead, AutoLoop asserts that "any motion to transfer must be made to the Western District of Wisconsin *after* mandatory remand." AutoLoop Br. at 12 (emphasis in original). But as discussed, there is no "mandatory remand" for this case and, instead, the Court must conduct the Section 1404(a) analysis to determine whether the matter should be tried. AutoLoop's remaining arguments are unpersuasive.

AutoLoop also asserts that it chose the Western District of Wisconsin "because it is where Authenticom is located and where the antitrust litigation began." *Id*. But that does not entitle AutoLoop's venue preference to any deference because the Western District of Wisconsin is not AutoLoop's home and there are no controverted facts regarding AutoLoop arising from that venue. *See* CDK Br. at 8-9. AutoLoop tries to get around this by arguing that there are disputed facts regarding CDK's conduct towards Authenticom, and that those facts will be relevant to AutoLoop's case, but that tenuous connection does not entitle AutoLoop's venue choice to deference. *See Deb v. SIRVA, Inc.*, 832 F.3d 800, 806 (7th Cir. 2016).

Relatedly, AutoLoop claims that the Western District of Wisconsin is superior because that is "where key nonparty witnesses from Authenticom are located." AutoLoop Br. at 13. But AutoLoop identifies only one such witness: Steve Cottrell. In any event, Mr. Cottrell is also expected to testify in any trial of the Dealers' indirect purchaser action in this District. Transferring AutoLoop's case to the Western District of Wisconsin would not spare Mr. Cottrell from having to travel to this District in order to testify at trial; if anything, it would require him to testify twice at two different trials instead of once in a consolidated trial on liability issues.

AutoLoop also concedes that many nonparty witnesses are located outside both the Western District of Wisconsin and the Northern District of Illinois. AutoLoop Br. at 14. But it offers no response to CDK's point that in light of the fact that witnesses are scattered across the country, the Northern District of Illinois is more convenient for all such witnesses because it is a major travel hub. AutoLoop also concedes that its headquarters is located in the Northern District of Illinois. AutoLoop attempts to downplay the clear significance of this fact to the Section 1404(a) analysis by claiming that "the AutoLoop employees with relevant knowledge remain in Clearwater, Florida." *Id.* But that fact does not favor the Western District of Wisconsin as the more convenient forum; if anything, it cuts the other way.

Turning to the interests of justice, AutoLoop argues that "the Courts' relative familiarity with the law is neutral" because a court within the Western District of Wisconsin "presid[ed] over a three-day hearing" in the *Authenticom* case more than six years ago. AutoLoop Br. at 14. Balanced against that hearing in a different case years ago, this Court recently issued lengthy and complex decisions on issues in the *AutoLoop* case and unquestionably has greater knowledge of and superior familiarity with the case. Further, AutoLoop has no response to the point that this case would likely be tried more quickly in the Northern District of Illinois, where the Dealers' case already has a trial date, than in the Western District of Wisconsin under a new case number.

Finally, AutoLoop argues (at 15) that "courts regularly refuse" to consolidate indirect and direct purchaser class cases for trial. As an initial point, AutoLoop does not contest that there is a clear need for one court, located in a single district, to preside over direct and indirect purchaser cases to properly address *whether* some or all parts of the cases should be tried together as well as deal with issues surrounding the potential for double recovery. CDK Br. at 14-15. Indeed, courts routinely preside over both direct and indirect purchaser cases. *See, e.g.*, *In re Remicade Antitrust*

*Litig.*, 345 F. Supp. 3d 566, 573 (E.D. Pa. 2018); *In re: Domestic Drywall Antitrust Litig. Civ. Action*, 2016 WL 3769680, at *1 (E.D. Pa. July 13, 2016); *In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *1 (D.N.J. Oct. 20, 2011); *Champion Labs., Inc. v. Am. Home Assur. Co.*, 2010 WL 2649848, at *1 (N.D. Ill. June 30, 2010); *In re Fla. Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1296–97 (S.D. Fla. 2010); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1015–16 (N.D. Cal. 2010); *In re Aftermarket Filters Antitrust Litig.*, 2009 WL 3754041, at *1 (N.D. Ill. Nov. 5, 2009). And those courts often find it appropriate to consolidate direct and indirect purchaser cases for trial. *See, e.g.*, *In re Lower Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1151, 1155 (3d Cir. 1993); *In re HIV Antitrust Litig.*, No. 19-cv-02573 (N.D. Cal.), ECF No. 1712 at 63-65; *In re Nexium*, No. 1:12-md-02409 (D. Mass), ECF No. 846; *Orangeburg Milling Co., Inc. v. Premier Chems., L.L.C.*, No. 2:10-cv-05943 (D.N.J.), ECF No. 16; *In re Florida Cement & Concrete Antitrust Litig.*, No. 1:09-cv-23187 (S.D. Fla.), ECF No. 251. Further, the JPML has already held that determination of the best venue under Section 1404(a) is the proper course to consolidate direct and indirect purchaser cases. *In re Capacitors Antitrust Litig.*, 223 F. Supp. 3d 1340, 1342 (JPML 2016).

In sum, Section 1407(a) does not apply and this Court must determine the proper venue under the test set out in Section 1404(a). Under that section, AutoLoop's preference for the Western District of Wisconsin is not entitled to deference because that district is not its home forum and the district has at best a tenuous factual connection to the *AutoLoop* matter. The Northern District of Illinois is more convenient to nonparty witnesses, both those located in the District and those located elsewhere around the country. The Northern District of Illinois is the location of AutoLoop's headquarters and CDK's largest corporate office. The relevant facts—CDK's decisions regarding access to its DMS and the effect of those decisions on AutoLoop—

9

occurred either in the Northern District of Illinois, where CDK made the decisions, or in AutoLoop's home, which was Florida and now is the Northern District of Illinois. Additionally, this Court has superior familiarity with the facts of the *AutoLoop* case, it is likely that the case will go to trial more quickly in this District, and fairness and efficiency strongly favor conducting the *AutoLoop* and Dealers' trials together.

## CONCLUSION

For these reasons, this Court should order that the *AutoLoop* action remain in the Northern District of Illinois.


Dated:  September 5, 2023                    Respectfully submitted,


                                             /s/ *Britt M. Miller*
                                             Britt M. Miller
                                             Matthew D. Provance
                                             Michael A. Scodro
                                             Daniel T. Fenske
                                             MAYER BROWN LLP
                                             71 South Wacker Drive
                                             Chicago, IL 60606
                                             (312) 782-0600
                                             bmiller@mayerbrown.com
                                             mprovance@mayerbrown.com
                                             mscodro@mayerbrown.com
                                             dfenske@mayerbrown.com

                                             *Counsel for Defendant CDK Global, LLC*