IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>**This Document Relates To:**<br>THE DEALERSHIP CLASS ACTION | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Rebecca R. Pallmeyer<br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OF LAW IN OPPOSITION TO CDK'S MOTION FOR 28 U.S.C. §1292(B) CERTIFICATION OF A PORTION OF THE COURT'S ORDER DENYING <u>SUMMARY JUDGMENT</u>**

Dealership Class Plaintiffs ("Dealers") respectfully submit this memorandum in opposition to the motion by CDK Global, LLC ("CDK") for 28 U.S.C. §1292(b) certification of a portion of this Court's order denying summary judgment (Dkt. 1397) ("Mot.").

**BACKGROUND**

Dealers filed their consolidated class action complaint in June 2018 (Dkt. 198), alleging that Defendants CDK and Reynolds entered an illegal conspiracy to eliminate competition in the Data Integration Services and Dealer Management Systems markets, causing Dealers to pay supracompeitive prices to access their own data. Among the claims in the Complaint were a series of state law antitrust (Counts VI-XXXI) and state law consumer-protection claims (Counts XXXII-L).

In July 2018, CDK moved to dismiss (Dkt. 262) ("MTD") arguing, among other things, that the Illinois Antitrust Act (Count XI) and the South Carolina Unfair Trade Practices Act (SCUTPA) (Count XLVII) contain provisions that preclude Dealers from pursuing a class action under those state laws. *See* Dkt. 265 at 30, 43.[1] CDK also argued that Dealers were required to and failed to satisfactorily fulfill the notice provisions of Hawaii's Antitrust Act (Count X) and New Jersey's consumer protection statute (Count XLIV). *See* Dkt. 265 at 41.[2]

On January 25, 2019, the Court ruled on CDK's MTD. *See* Dkt. 507. As to the argument regarding the class action bars of Illinois and South Carolina, the Court held that a *Shady Grove*[3] analysis was necessary. *Id*. at 59. The Court concluded that although the Seventh Circuit has "not squarely addressed which opinion [in *Shady Grove*] controls, it otherwise has indicated that Justice

---

[1] CDK did not argue in its MTD that Colorado's Consumer Protection Act (Count XXXV) contains a similar class action bar, although it included that argument on summary judgment. *See* Dkt. 973 at 27-32.

[2] CDK did not argue in its MTD that Utah's Antitrust Act (Count XXVIII) contains a similar notice requirement, although it included that argument on summary judgment. *See* Dkt. 973 at 32-34.

[3] *Shady Grove Orthopedic v. Allstate Ins. Co.*, 559 U.S. 393 (2010).

1

Scalia's plurality sets forth the controlling legal standard"; nonetheless, the Court did not decide which opinion controls. *Id*. The Court then denied CDK's MTD, whether analyzed under the Scalia plurality or the Stevens concurrence. *Id*. As to CDK's arguments regarding insufficient notice, the Court noted that more extensive briefing would be needed and declined to rule on that basis, thus allowing Dealers' Hawaii and New Jersey claims to proceed. *Id*. at 61-62.

On May 20, 2020, CDK moved for summary judgment against Dealers. *See* Dkt. 970. CDK again argued, among other things, that *Shady Grove* should be interpreted such that: (1) the state laws of Colorado, Illinois, and South Carolina barred Dealers from bringing class actions for those claims in federal court (*see* Dkt. 973 at 27-32); and (2) the Dealers were required to (and failed to) meet the requirements for providing notice under the state laws of Hawaii, New Jersey, and Utah (*see* Dkt. 973 at 32-34).

This Court rejected CDK's arguments and denied summary judgement for CDK on both issues. *See* Dkt. 1381 at 88-95. The Court first concluded that the Seventh Circuit has not decided which *Shady Grove* opinion controls, and then it concluded that Justice Stevens' opinion should be applied. Applying that concurrence, the Court concluded that the class action bars of Colorado, Illinois, and South Carolina were analogous to the New York class action bar at issue in *Shady Grove*; thus, if New York's bar was not so intertwined with that state's substantive body of law as to override Rule 23, then neither were those three states' laws. *Id*. at 92-93. As to the notice requirement, the Court concluded that *Shady Grove* (both the plurality and concurrence) made it clear that the state notice requirements "conflicted" with Federal Rule 23. *See id.* at 94. And then the Court concluded that the notice requirements were clearly procedural and not substantive under the Stevens concurrence, so that they could not apply in the teeth of Rule 23.

After the Court's ruling on summary judgment, the following claims by Dealers—which

2

represent the heart of the case—remain against defendant CDK: (1) Dealers' nationwide class claim for injunctive relief under § 1 of the Sherman Act; and (2) Dealers' twenty-six claims for injunctive relief and damages, each one under the law of a different state's antitrust or unfair competition law. CDK now moves under 28 U.S.C. §1292(b) for certification of an interlocutory appeal to the Seventh Circuit of this Court's application of *Shady Grove*.

## ARGUMENT

To certify a question for interlocutory appeal under 28 U.S.C. §1292(b), the movant must show that: (1) there is a question of law, (2) the question is controlling, (3) there exists substantial grounds for difference of opinion so that the question is "contestable," and (4) immediate appeal would materially advance the ultimate termination of the litigation. *See Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000). Each of these requirements must be satisfied. *Id.* at 676.

"Judges have been stingy in accepting interlocutory appeals by certification under 28 U.S.C. §1292(b), because that procedure interrupts the progress of a case and prolongs its disposition. That bogey is a principal reason why interlocutory appeals are so disfavored in the federal system." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999). Section 1292(b) must be used sparingly "lest interlocutory review increase the time and expense required for litigation." *Asher v. Baxter Int'l., Inc.*, 505 F.3d 736, 741 (7th Cir. 2007). Interlocutory appeals are "frowned on in the federal judicial system," *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012), because they "too frequently cause unnecessary delays in lower court proceedings and waste the resources of an already overburdened judicial system," *Herdrich v. Pegram*, 154 F.3d 362, 368 (7th Cir. 1998), *rev'd on other grounds*, 530 U.S. 211 (2000). And all of that is why §1292(b) is "not intended merely to provide review of difficult rulings in hard cases."

3

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 WL 13209677, at *1 (N.D. Ill. Dec. 10, 2012) (quotation marks and citations omitted).

The party seeking certification under §1292(b) bears the burden of persuading the court that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Powell v. Illinois*, 2019 WL 10349404, at *1 (N.D. Ill. Nov. 5, 2019) (citation omitted). And even if the movant has satisfied the statutory requirements of §1292(b) and the district court certifies an order, the court of appeals has discretion to accept or reject such an appeal. *See* 28 U.S.C. §1292(b).

Here, CDK seeks immediate appeal of the two *Shady Grove* issues. CDK's motion should be denied because (1) immediate appeal would not materially advance the ultimate termination of the litigation; and (2) the question at issue is neither controlling nor "contestable" for purposes of §1292(b).

### I. Immediate Appeal Would Not Materially Advance the Ultimate Termination of the Litigation

CDK has failed to show that an immediate appeal would advance the ultimate termination of the litigation. That fact alone dooms its motion.

An immediate appeal "materially advances the ultimate termination of the litigation" usually when a reversal on appeal would dispose of the case – or occasionally and at a minimum, when it would result in a significant shortening of the case. *See, e.g., Curry v. Chateau del Mar, Inc.*, 2008 WL 5387118, at *3 (N.D. Ill. Dec. 22, 2008) (Pallmeyer, J.) (noting that certification allows "for prompt resolution of purely legal questions that may dispose of the case," and denying certification because even with a reversal on the disputed legal issue the case would proceed as to another defendant); *Norfolk S. Ry. Co. v. Gee Co.*, 158 F. Supp. 2d 878, 883 (N.D. Ill. 2001) (Pallmeyer, J.) (denying certification because even if hotly-contested CERCLA claim was

4

dismissed on appeal, related state law claims would survive); *State Farm Mut. Auto. Ins. Co. v. Abrams*, 2000 WL 152143, at *5 (N.D. Ill. Feb. 4, 2000) (Pallmeyer, J.) (granting certification because reversal on appeal would entirely end the main claim, which involved a "threshold issue" about whether the plaintiff had standing under RICO, while noting that the court "may well" dismiss the related state law claims as well if the RICO claim was dismissed on appeal, because of a specific and fatal problem with the state law claims); *T.S. v. Cnty. of Cook, Illinois*, 568 F. Supp. 3d 940, 942 (N.D. Ill. 2021) (Pallmeyer, J.) (denying certification of one issue in part because there would likely be an appeal after final judgment, and granting certification of second issue because, if the Court of Appeals reversed on that issue, "then there is no need for this case to proceed to trial"); *see also Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991) (holding that the fact that an interlocutory ruling under §1292(b) "may later be discovered not to have been dispositive, would permit us to dismiss the appeal as having been improvidently granted"); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (noting that the "materially advance" requirement means that "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation," and quoting "particularly persuasive" legislative history behind §1292(b) noting that the statute "will be used only in exceptional cases where a decision of the appeal may avoid protracted and expensive litigation, as in antitrust and similar protracted cases, where a question which would be dispositive of the litigation is raised"); *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir. 1974) (recognizing that the "clear intention" of the sponsors of §1292(b) was "to avoid a wasted trial"); *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438 (Table), 1989 WL 42583 (4th Cir. Apr. 26,1989) ("Certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical

matter, whichever way it goes," and noting that "[t]he mere fact that…resolution [of a non-dispositive question] at this time *may* save pre-trial and trial effort and expense is not determinative; that of course can be said of any interlocutory appeal").

Here, even if the Seventh Circuit reversed the entirety of this Court's two holdings concerning *Shady Grove*, that would not be dispositive of the case – or even close to dispositive. In fact, the majority of the case would remain and would be entirely unaffected by such a ruling, and class certification and a trial would still proceed. First, Dealers' claim for nationwide injunctive relief under § 1 of the Sherman Act would remain, and that claim – which asserts that CDK and Reynolds engaged in an unlawful conspiracy – is central to the case. Indeed, that claim is the broadest claim as to defendants' challenged misconduct, geography, numbers of class members, and the effect and importance of the relief sought; an injunction is not just some ancillary remedy in this case. This Court has denied §1292(b) motions on precisely the grounds that even though an appeal might resolve all damages issues in a class action (a situation not present here), claims for injunctive relief and attorneys' fees would remain. *See, e.g.*, *Brodsky v. HumanaDental Ins. Co.*, 2011 WL 4842541, at *2 (N.D. Ill. Oct. 12, 2011).

Second, only six of the twenty-six state law claims are affected by the *Shady Grove* issues; the other twenty state law claims will move forward regardless of what the Seventh Circuit does. Thus, an immediate appeal here will not speed up the case. *See*, *e.g., Flynn v. Exelon Corp.*, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022) (denying §1292(b) motion even though appeal could fundamentally alter the plaintiff's burden about reliance in a securities case and streamline class certification, because only "one part" of the overarching litigation would potentially be resolved and plaintiffs could still prevail under a different albeit more difficult theory).

Furthermore, nothing about the Seventh Circuit's opinion would materially shorten the

6

remainder of the case in any other way. That is because no ruling by the Seventh Circuit would clarify the remaining issues in any material regard or otherwise make this Court's upcoming tasks and rulings any easier or quicker. On an immediate appeal, the Seventh Circuit would be tasked with looking only at a narrow and discrete issue – whether the claims in the six states can move forward at all under *Shady Grove* – that has no effect on the rest of the case. Nothing in the Seventh Circuit's opinion would materially impact anything at class certification or trial, about liability or damages or otherwise, except to possibly remove claims related to the six states. This is thus not a case where an immediate appellate opinion about one issue may shed light on other, related issues. (And even when an immediate appellate opinion about one issue can shed light on remaining issues, that still is not enough. *See, e.g., Flynn,* 2022 WL 267915, at *3.)

In its brief, CDK tries but fails to show that an immediate appeal will speed up this case. CDK first argues that the Seventh Circuit's decision "may restrict the number of causes of action at issue by eliminating up to six state-law claims" (Mot. at 10), but that's just an admission that *only* six out of the remaining twenty-six state claims are even at issue under *Shady Grove*.

CDK next argues that removing those six state-law claims "would accelerate the ultimate resolution of the case" because "getting a definitive ruling now on these legal issues will avoid the parties consuming resources on potentially wasteful class certification fact and expert discovery…." (Mot. at 10). That makes little sense. First, class certification briefing opens on October 3, 2023, and closes on January 4, 2024. During this time, expert discovery related to class certification will be ongoing, including any additional *Daubert* challenges by CDK being filed by November 14, 2023, and responses by Dealers on January 4, 2024 (CDK's *Daubert* reply is due on February 6, 2024). In addition, CDK has already indicated that it will not be moving for a stay on any of these proceedings during the interlocutory appeal, if granted (*see* Dkt. 1387 at 22) so all

7

or almost all of the effort related to both issues has already been expended or will be very soon; thus, any immediate appeal now won't save any time or money about those issues. The Court recognized as much at the recent status conference hearing. (Dkt. 1394, Jul. 28, 2023, Hr'g Tr. at 27). Second, this case is unique because any appellate decision on the *Shady Grove* issues will not conserve the substantial resources of the parties and the Court which have already been expended at the summary judgment stage and the *Daubert* challenges.

CDK next notes that a class could possibly have to be decertified or a class notice amended if, ultimately, the six state-law claims were dismissed. (Mot. at 10). But the possibility of a class decertification and class notice requirements exist in every class action; the mere prospect that a district court may ultimately decertify a class (a possibility that exists in every certified class action) is no basis for an immediate appeal. Furthermore, to the extent that there is a significant risk of anything like that here, that would be a basis for a petition to immediately appeal under Fed. R. Civ. P. 23(f), which specifically governs immediate appeals of class certification. *See Richardson Elecs., Ltd. v. Panache Broad. of Pa., Inc.*, 202 F.3d 957, 959 (7th Cir. 2000) (discussing the relationship between §1292 and Rule 23(f) and noting that Rule 23(f) should be used to address any class certification issues). If CDK loses class certification and wants to seek an immediate appeal under Rule 23(f), it is free to do so, including raising issues that might implicate *Shady Grove*.

Finally, CDK argues that "having guidance from the Court of Appeals now could drastically narrow the claims left for trial subject to resolution of class certification." (Mot. at 10). The argument fails. Removing six out of twenty-six state law claims is far from "drastic." What's more, as explained above, the theories of the case for both sides are set so that adding or removing a few states would not materially change anything. Dealers' case at trial, like CDK's case, will not

8

meaningfully change based on the applicability of *Shady Grove* to six state law claims.

Dealers appreciate that, at the recent hearing, the Court indicated that it might grant a §1292(b) motion. (Dkt. 1394, Jul. 28, 2023, Hr'g Tr. at 9). But the Court also stated that an immediate appeal "wouldn't speed things up. I think you are right about that," suggesting instead that knowing for certain the damages numbers at issue might be useful. (Id. at 26). Respectfully, the Court's acknowledgement that an immediate appeal wouldn't speed things up is what matters here.

## II.    For Similar Reasons, the Question is Not Controlling

Under §1292(b), "[a] question of law is controlling if its resolution is likely to affect the course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 658 (7th Cir. 1996)). The issue must be "serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)).

Here, the question at issue is not "controlling" as its resolution is not "likely to affect the course of the litigation," for the reasons explained above. In other words, not only will an immediate appeal not speed up this case, but an immediate appeal will not even "control" the outcome of the majority of the case – for example, any appellate ruling will have absolutely no effect on Dealers' nationwide class for injunctive relief under the Sherman Act.

## III.    The Question is Not "Contestable" for Purposes of §1292(B)

The question at hand is also not "contestable" for purposes of §1292(b). A district court's order is contestable "if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Calvin v. Sheriff of Will Cty.*,

9

2006 WL 1005141, at *4 (N.D. Ill. Apr. 14, 2006) (quoting *United States v. Moglia*, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004)). CDK has not met this heavy burden here.

Although district courts have differed on the application of *Shady Grove*, this Court's ruling is firmly supported by Seventh Circuit decisions; as such, the likelihood of an appellate reversal is *not* "substantial."[4] *See, e.g.*, *Flynn*, 2022 WL 267915, at *3 (holding exactly that with a lengthy explanation); *Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510 (S.D. Ind. Feb. 20, 2019) (denying §1292(b) motion even though the Seventh Circuit hadn't addressed the issue and there were district courts going various ways, and concluding that the Seventh Circuit would "likely" adopt what it thought was the "more persuasive" side of the split). And CDK has failed to show that "a 'substantial likelihood' exists that the district court ruling will be reversed if appealed." *Feit Electric Co., Inc., v. CFL Techs., LLC*, 2019 WL 7020496, at *2 (N.D. Ill. Dec. 20, 2019); 16 Charles A. Wright, et al., Federal Practice and Procedure § 3930 (2d ed. rev.2011) ("District judges have not been bashful about refusing to find substantial reason to question a ruling of law, even in matters of first impression."). In short, this Court got it right, and the mere fact that some other courts disagree does not make the issue "contestable" for purposes of §1292(b).

Moreover, even if the *Shady Grove* Stevens concurrence controls, that would change nothing. CDK cites a host of cases showing that there is a circuit split about which *Shady Grove* opinion to apply(Mot. at 6-7), but that mere split is not enough, as explained above. Perhaps even

---

[4] In its summary judgment order, this Court noted that, although the Seventh Circuit has cited Justice Scalia's plurality opinion, neither of the two Seventh Circuit opinions cited by Dealers actually "considered" which opinion controls or "addressed" the state class action bar arguably preempted by Rule 23. *See* Dkt. 1381 at 89-90 n.24. The Dealers respectfully disagree and contend that the Seventh Circuit has held that the plurality opinion controls such that the state class action bars here cannot be applied, as other courts have recognized. Since the briefing was submitted on summary judgment, the Seventh Circuit has applied the plurality opinion a *third* time. *See Newson v. Oakton Cmty. Coll.*, 2023 WL 355190, at *2 (7th Cir. Jan. 23, 2023); *see also In re Vascepa Antitrust Litig. Indirect Purchaser Plaintiffs*, 2023 WL 2182046, at *5 (D.N.J. Feb. 23, 2023) ("In contrast, the Seventh Circuit—home to Illinois—appears to have embraced Justice Scalia's opinion.").

10

more importantly, CDK can win the battle of which opinion applies but would still lose the war; indeed, as this Court found, even under the concurrence, CDK's arguments fail. *See* Dkt. 1381 at 90-93. As such, this case does not meaningfully turn on *which* of the *Shady Grove* opinions applies. In that way, the circuit split about which opinion to apply is academic at best; in fact, it matters mainly in that it provides an independent and sufficient basis for affirming this Court's order.

CDK then cites cases showing that there is a district court split as to whether, under the concurrence in *Shady Grove*, statutes like those at issue can apply in the teeth of Rule 23. (Mot. at 7-9). Yet again, that split is not enough, as explained above. And when it comes to that issue, there is not even a circuit court split, there are merely district courts coming out on both sides. This Court did on summary judgment exactly what all of those district courts did – rule on a tough issue as best it can – and the fact that it was a tough issue is simply not enough. None of those courts appeared to have entertained a §1292(b) motion, and this Court should deny the §1292(b) motion here.

## CONCLUSION

For the foregoing reasons, the Court should deny CDK's motion.[5]

---

[5] If this Court grants CDK's motion to immediately appeal the *Shady Grove* portion of this Court's summary judgment order and then CDK files a petition for such an appeal in the Seventh Circuit, Dealers will oppose that petition and file a conditional cross petition (to be considered if and only if CDK's petition is granted) seeking to immediately appeal the portion of this Court's order rejecting Dealers' § 1 Sherman Act horizontal conspiracy claim for damages, Dkt. 1381 at 67, under Fed. R. App. P. 5(b)(2). *See* Dkt. 1381 at 67; Dkt. 1394, Jul. 28, 2023 Hr'g Tr. at 28 (Dealers reserving their right to cross petition on that basis); *Edwardsville Nat'l Bank and Trust Co. v. Marion Laboratories, Inc.*, 808 F.2d 648, 650-51 (7th Cir. 1987) (noting that §1292(b) is about certifying orders, not questions, for immediate appeal, so that a district court's order on a §1292(b) motion cannot limit the issues that the appellate court can review on appeal). Dealers are not required to file a cross-motion now under §1292(b) to preserve that right.

DATED: September 8, 2023         Respectfully submitted,

/s/ *Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY 11530
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676

jbarz@rgrdlaw.com
frichter@rgrdlaw.com

***Dealership Class Plaintiffs' Steering Committee***

Robert A. Clifford
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com

***MDL Liaison Counsel***

13

**CERTIFICATE OF SERVICE**

    I, Peggy J. Wedgworth, an attorney, hereby certify that on September 8, 2023, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO CDK'S MOTION FOR 28 U.S.C. §1292(B) CERTIFICATION OF A PORTION OF THE COURT'S ORDER DENYING SUMMARY JUDGMENT** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    */s/ Peggy J. Wedgworth*