**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer<br>Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP PUTATIVE CLASS ACTION | |

**REPLY IN SUPPORT OF CDK'S MOTION FOR
28 U.S.C. § 1292(B) CERTIFICATION OF A PORTION
OF THE COURT'S ORDER DENYING SUMMARY JUDGMENT**

CDK respectfully requests that the Court exercise its discretion and certify that portion of its June 29, 2023 Memorandum Opinion and Order applying *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to certain of the putative dealership class's ("Dealers'") state-law claims for interlocutory appeal. *See* Dkt. 1381 at 88-96.

The crux of the Dealers' opposition is that resolution of the certified questions would not resolve the litigation in its entirety—because, regardless of an immediate appeal, some claims will necessarily proceed to class certification and, if a class is certified, trial. But that is not the test: Section 1292(b) asks only whether an interlocutory appeal "may materially advance the ultimate termination of the litigation"—not whether the appeal in fact would end the case.

Here, an interlocutory appeal could be transformative. Not only could certification dispose of a quarter of the Dealers' remaining claims (*i.e.*, claims in six of the 26 remaining states), but it could also shut the door, once and for all, on the Dealers' proposed *nationwide* damages class. Having no recourse under federal law, the Dealers have confirmed their intent to seek nationwide damages under the Illinois Antitrust Act, one of the state laws that is subject to the Court's *Shady Grove* ruling. That means, if the Seventh Circuit held that the Dealers cannot proceed under Illinois

law (because of the statutory bar that is at issue in CDK's petition), the Dealers would be limited to seeking damages, state-by-state, in just half the country—at most.

That makes an enormous difference: according to Plaintiffs' own model, there is a delta of *hundreds of millions of dollars* between (1) nationwide damages and (2) damages limited to the 26 remaining states. On that scale, uncertainty as to potential exposure is a serious impediment to settlement. Moreover, if the Illinois claim remains in the case, the parties and the Court will need to address the many other substantial flaws in the Dealers' "nationwide" proposal—*e.g.*, their proposal to apply Illinois law to transactions in states that have no *Illinois Brick* repealer statute.

In short, permitting an interlocutory appeal could materially advance the resolution of the case in several ways—by enabling more productive settlement discussions, by narrowing the issues for this Court to resolve before trial, or both. And granting CDK's petition could have benefits far beyond this litigation. Although the Court permitted the Dealers' claims to proceed, it acknowledged there was no appellate guidance on the matter and that many—if not most—district court had ruled the other way. Thus, the Court advised the parties that it was inclined to allow an interlocutory appeal "to get the Court of Appeals' views on what I think really is a contested issue and as to which reasonable minds can and have differed." *See* July 28, 2023 Tr. 9. The Court's instinct is correct.

## ARGUMENT

As CDK explained in its opening memorandum, the Court's application of *Shady Grove* to allow the Dealers to seek to certify putative nationwide and statewide classes of indirect purchasers under the Illinois, South Carolina, and Colorado antitrust statutes satisfies the criteria for interlocutory appeal. *See* Dkt. 1397 ("CDK Br.") 3-10. The same is true of *Shady Grove*'s application to class-action notice requirements under Hawaii, Utah, and West Virginia law. *See id.*

The Dealers' arguments (Dkt. 1410 ("Dealers Br.")) in response do not meaningfully challenge the most important considerations for purposes of § 1292(b) certification—that the legal questions CDK seeks to certify are subject to deep splits across the federal courts and certification may speed the conclusion of this litigation by, among other things, resolving whether the Dealers can seek to certify a nationwide damages class. This, in turn, will further define the possible stakes of the case (to the tune of hundreds of millions of dollars) and thus aid in potential settlement.

The Dealers do not contest that the questions to be certified are purely legal in nature. Nor do they dispute that district courts across the country have certified questions related to the application of *Shady Grove* on numerous occasions. *See, e.g.*, *Canela v. Costco Wholesale Corp.*, 2018 WL 3008532 (C.D. Cal. June 15, 2018); *Odle v. Wal-Mart Stores Inc.*, 2013 WL 66035 (Jan. 7, 2013); *Am. Copper & Brass, Inc. v. Lake City Indus. Prods.*, 2010 WL 11463986 (W.D. Mich. Sept. 22, 2010). Instead, the Dealers contend that the questions CDK proposes are not controlling or contestable and that their resolution will not materially advance the ultimate termination of this litigation. Each of these arguments fails.

## I.     The questions of law are controlling.

The questions CDK seeks to certify will determine whether the Dealers may advance several causes of action at all and what notice must be provided to class members or state attorneys general before other claims may proceed as class actions. These questions are controlling because they will define whether certain claims, including (according to the Dealers) a proposed nationwide damages class under Illinois law, can even go forward. The questions, therefore, are important to upcoming proceedings in the case, will likely affect the course of the litigation, and their resolution now will save the parties and the Court time, expense, and burden.

The Dealers concede (at 9) that a question of law is "controlling" for purposes of § 1292(b) if "its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). The question must be "serious to the litigation" and may be deemed controlling "'if interlocutory reversal might save time for the district court, and time and expense for the litigants.'" *Feit Elec. Co., Inc. v. CFL Techs. LLC*, 2019 WL 7020496, at *2 (N.D. Ill. Dec. 20, 2019) (quoting *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)).

The Dealers argue that the questions will not affect the course of the litigation because an immediate appeal will not control "the outcome of the majority of the case," including the "Dealers' nationwide class for injunctive relief under the Sherman Act." Dealers Br. 9. But to be controlling, a question need not dispose "of the majority of the case," as the Dealers claim. *See Feit*, 2019 WL 7020496, at *2 (finding question controlling even though it did not apply to more than half of the claims in the litigation). Indeed, "the issue need not affect the litigation's outcome to be controlling—it need only be 'serious to the conduct of the litigation,' even if only in a practical sense." *In re Lion Air Flight JT 610 Crash*, 2023 WL 3653217, at *3 (N.D. Ill. May 25, 2023) (quoting *Johnson*, 930 F.2d at 1206). Here, as a practical matter, the questions presented for certification are serious to the conduct of the litigation because they will determine whether half a dozen state law antitrust claims may be maintained as class actions in this litigation. Even more significantly, the *Shady Grove* rulings will decide whether the Dealers can attempt to certify a nationwide damages class under the Illinois antitrust law—the only law under which they seek to do so—the possibility of which allows them to roughly *double* their alleged damages. Thus, the Dealers' attempt to minimize the import to the broader litigation of the six claims at issue in the challenged rulings is a charade. A decision barring the Dealers from seeking to certify those classes

in the first place would dramatically change the amount of damages at stake, would provide significantly more certainty to the parties pretrial about possible relief, and will unquestionably affect the future proceedings and resolution of this case.

## II. The questions are contestable.

An issue is contestable for purposes of the § 1292(b) analysis when there is substantial ground for difference of opinion, including when the Circuit court has not decided the issue. *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1007-08 (7th Cir. 2002); *Thrasher-Lyon v. CCS Commercial, LLC*, 2012 WL 5389722, at *3 (N.D. Ill. Nov. 2, 2012); *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013).

As CDK argued in its opening memorandum, the first issue over which there is substantial ground for difference of opinion is which opinion from *Shady Grove* governs under the analysis from *Marks v. United States*, 430 U.S. 188, 193 (1977). The Dealers argue that this Court's decision "is firmly supported by Seventh Circuit decisions" and that there is no "substantial" likelihood of reversal by the Circuit court. Dealers Br. 10. At the same time, the Dealers spend a lengthy footnote explaining why they believe this Court's reasoning is wrong—they assert that, contrary to this Court's decision, the Seventh Circuit has resolved the issue by applying Justice Scalia's plurality rather than Justice Stevens's opinion, which this Court applied. *Id*. at 10 n.4. Clearly, the dispute over which *Shady Grove* opinion controls—which persists even between the Dealers and this Court—establishes that this issue is contestable. *See In re Lion Air*, 2023 WL 3653217, at *6 (question is contestable when subject to uncertainty created by differences of opinion).

The Dealers also assert that the mere fact that there is a split in authority over which *Shady Grove* opinion controls does not make the issue contestable. Dealers Br. 10-11. In support, the

Dealers cite *Flynn v. Exelon Corporation*, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022), which stated that "[t]he fact that there is a circuit split on the matter does not necessarily make it contestable" and held that the question there was not contestable because one side of the split was better reasoned. The Dealers also cite *Shah v. Zimmer Biomet Holdings, Inc.*, 2019 WL 762510, at *8 (S.D. Ind. Feb. 20, 2019), which noted a split in authority but determined the question at issue was not contestable because "the clear weight of authority and holding[s] from cases which have fully analyzed the issue" establishes that one side of the alleged split was clearly correct. But other than reciting the general rule that a split in authority does not automatically mean that an issue is contestable, the Dealers offer no meaningful analysis as to why there are not reasonable grounds for a difference of opinion about which *Shady Grove* opinion is controlling. The issue is plainly contestable: different courts have applied sound reasoning to reach different conclusions on which *Shady Grove* opinion is controlling—and the Dealers themselves claim that the Seventh Circuit has reached a different conclusion on the issue than this Court reached.

The other key question at issue—whether limits on class actions in state antitrust statutes like the ones here survive Rule 23 under the proper *Shady Grove* analysis—is also contestable. For instance, this Court recognized that its holding that Rule 23 displaces anti-class-action provisions in the state antitrust laws conflicts with the rulings of many, if not most, other courts. Dkt. 1381 at 91. And CDK provided a detailed list of the district court cases on each side of the split. CDK Br. 7-9. The Dealers' only response is their own say-so that when "there are merely district courts coming out on both sides" of an issue, that "is not enough." Dealer Br. 11. But this sidesteps the relevant inquiry, which is whether there is a "difficult central question of law which is not settled by controlling authority." *Feit*, 2019 WL 7020496, at *2. The Dealers admit that the question presents "a tough issue" and do not dispute that there is no controlling authority. Dealers Br. 12.

They also ignore the rule that, where there is no controlling authority, and interlocutory appeal is often warranted "if there are a substantial number of decisions conflicting with the district court's order regarding the controlling question of law." *Feit*, 2019 WL 7020496, at *2 (citing *In re Kmart Corp.*, 2004 WL 2222265, at *2 (N.D. Ill. Oct. 1, 2004)). Given the federal courts are split on this issue, as this Court recognized (July 28, 2023 Tr. 9), the Court can and should certify CDK's questions for interlocutory appeal.

### III. Interlocutory appeal would resolve threshold issues, likely speed up the resolution of this case, and narrow the claims going forward.

Resolution of an issue "may materially advance" the litigation if it will "speed up the litigation" by "narrow[ing] the issues moving forward" or resolving a threshold question. *Boone v. Ill. Dep't of Corrs.*, 71 F.4th 622, 625 (7th Cir. 2023); *Johnson*, 930 F.2d at 1205. In other words, as the Seventh Circuit has held, the test is not whether the interlocutory appeal could "end" the litigation "then and there, with no further proceedings in the district court." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Rather, "'it is sufficient that an interlocutory appeal would remove uncertainty about the status of a claim that might delay settlement or resolution.'" *Feit*, 2019 WL 7020496, at *2 (quoting *F.D.I.C. v. Mahajan*, 2013 WL 3771419, at *3 (N.D. Ill. July 16, 2013)).

As CDK argued, a decision from the Seventh Circuit on the legal questions here would address threshold issues as to the viability of a substantial portion of the Dealers' remaining claims and may well speed up the litigation and narrow the litigation moving forward. As this Court noted, although other claims will remain, the potential elimination of several state claims (especially a putative nationwide claim) will provide certainty, which "might clarify the amount of money involved here." July 28, 2023 Tr. 26. The Court was exactly right: hundreds of millions of dollars hinge on resolution of the certified questions. And resolving the nationwide class issue in CDK's

favor would likely speed up resolution of the litigation by substantially narrowing the scope of the Dealers' case. *See Sterk*, 672 F.3d at 536; *Feit*, 2019 WL 7020496, at *2; *Mahajan*, 2013 WL 3771419, at *3.

Significantly, although they argue (at 7) that this appeal will not "speed up this case," the Dealers do not challenge CDK's central point that resolution of the certified questions would provide additional certainty over the status of multiple class action claims, including a proposed nationwide damages class claim that would double the Dealers' total claimed damages. *See Sterk*, 672 F.3d at 536. As the Seventh Circuit explained, "uncertainty about the status of [a putative class action claim] may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation." *Id*. Resolving certified questions to provide certainty about class claims "is enough to satisfy the 'may materially advance' clause of section 1292(b)." *Id.* Here, resolution of the threshold *Shady Grove* issues would provide exactly the type of certainty in the litigation that *Sterk* held satisfies the § 1292(b) standard.

The Dealers cite *Flynn*, 2022 WL 267915, at *3, arguing that resolution of the certified questions will not have any "effect on the rest of the case" because the decision would not "materially impact anything at class certification or trial, about liability or damages or otherwise, *except to possibly remove claims related to the six states*." Dealers Br. 7 (emphasis added). But removing claims under six state laws *does* materially affect class certification and trial because it limits the number of possible classes to certify (by removing potential classes under six states' laws) and could eliminate the only potential nationwide damages class. In *Flynn*, the certified questions "could bear upon class certification," but there were "still other arguments under which Plaintiffs could proceed toward the same end." 2022 WL 267915, at *4. Here, on the other hand,

resolution of the certified questions could be dispositive of whether the Dealers may seek class certification under six states' laws at all.

The Dealers also cite *Brodsky v. HumanaDental Insurance Co.*, 2011 WL 4842541, at *2 (N.D. Ill. Oct. 12, 2011), which denied a § 1292(b) motion in part because resolution of the question presented would not resolve the entire action. The *Brodsky* decision, however, did not articulate a standard to determine whether resolution of a certified question would materially advance the litigation, nor did it engage in any detailed analysis. That decision cannot be squared with the plain rule, set forth in *Sterk*, that the certified question need not end the litigation or even dispositively resolve any issues to materially advance the litigation for purposes of § 1292(b), as the Dealers' other authority expressly recognizes, *Flynn*, 2022 WL 267915, at *4.

For this reason, contrary to the Dealers' claim (at 7-8), it does not matter that interlocutory appeal would not prevent class certification altogether. Even if the court needs to resolve *other* class claims, eliminating six such claims (including the only nationwide damages claim) would limit the expense and burden of resolving the remaining claims and provide needed certainty as to how many potential class claims will remain in the case. And while the Dealers note (at 8) that CDK could always try to appeal class certification under one of the challenged six state laws under Rule 23(f), that would have been true in *Sterk* or in any other proposed class action where interlocutory appeal was allowed pursuant to § 1292(b). In short, nothing that the Dealers put forward comes close to undermining the Court's initial instinct to grant CDK's motion.[1]

---

[1] In a footnote, the Dealers also threaten to file a "conditional cross petition (to be considered if and only if CDK's petition is granted) seeking to immediately appeal the portion of this Court's order rejecting Dealers' §1 Sherman Act horizontal conspiracy claim for damages." Dealers Br. 11 n.5. CDK believes that such a petition would be improper and is likely to be rejected by the Seventh Circuit—the Court's ruling was a straightforward application of *Illinois Brick* as well as the Court's prior *Daubert* decision issued more than 18 months ago excluding the Dealers' expert's damages opinion—but CDK will address that with the Seventh Circuit at the appropriate time. It has no bearing on the issues presently before the Court.

## CONCLUSION

For these reasons, CDK respectfully seeks certification of two questions for interlocutory appeal under 28 U.S.C. § 1292(b): whether, under *Shady Grove*, (1) Rule 23 displaces the anti-class-action provisions of Illinois's, South Carolina's, and Colorado's state antitrust laws, and (2) Rule 23 displaces the class action notice provisions of Hawaii's, Utah's, and West Virginia's state antitrust laws.

Dated:  September 29, 2023                         Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
Michael A. Scodro
Daniel T. Fenske
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com

*Counsel for Defendant CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on September 29, 2023, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF CDK'S MOTION FOR 28 U.S.C. § 1292(B) CERTIFICATION OF A PORTION OF THE COURT'S ORDER DENYING SUMMARY JUDGMENT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

 _/s/ Britt M. Miller_
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayebrown.com