**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 | **PUBLIC-REDACTED** |

**PLAINTIFF AUTOLOOP'S MEMORANDUM
<u>IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND .......................................................................................................................... 1

    I.    The Proposed Vendor Class and Its Remaining Claims ......................................... 1

    II.    Dr. Mark Israel's Opinions and This Court's *Daubert* Ruling .............................. 2

    III.    This Court's Summary Judgment Decision ........................................................... 3

    IV.    Dr. Israel's Supplemental Report .......................................................................... 7

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT ................................................................................................................................ 8

    I.    The Proposed Vendor Class Satisfies Rule 23(a) .................................................. 8

        A.    Numerosity / Ascertainability .................................................................... 8

        B.    Commonality ................................................................................................ 8

        C.    Typicality .................................................................................................... 9

        D.    AutoLoop and Class Counsel Will Adequately Represent the Vendor Class .. 9

    II.    The Vendor Class Satisfies Rule 23(b)(3) ........................................................... 10

        A.    Common Questions of Law and Fact Predominate ....................................... 10

        B.    A Class Action Is Superior To Other Methods of Adjudication .................... 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .............................................................1, 10

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ................................................10, 11

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...................................................15

*Chi. Teachers Union, Local No. 1. v. Bd. of Educ. of City of Chi.*, 797 F.3d 426 (7th Cir. 2015) ..............................................................................................13

*Hansen v. Country Mut. Ins. Co.*, 2023 WL 6291629 (N.D. Ill. Sept. 25, 2023) .........................13

*Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831 (N.D. Ill. 2021) ..............................13, 15

*In re Steel Antitrust Litig.*, 2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) .............8, 9, 10, 11, 13, 14

*In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) ...................................................12

*Jackson v. Nat'l Action Fin. Servs.*, 227 F.R.D. 284 (N.D. Ill. 2005) ..........................................14

*Johnson v. Tellabs, Inc.*, 214 F.R.D. 225 (N.D. Ill. 2002) ...............................................................9

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ...............................................................................9

*Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016)............................11, 12, 13, 14

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ............8, 10, 11, 12, 13

*Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ...............8, 11, 14

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)....................................................8, 15

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)................................................ 14-15

*Neil v. Zell*, 275 F.R.D. 256 (N.D. Ill. 2011) ..................................................................................8

*Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) ....................................................................5, 11

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014)......................................................13

*Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016) ..........................................................10, 13, 14

*United Nat'l Recs., Inc. v. MCA, Inc.*, 101 F.R.D. 323 (N.D. Ill. 1984).......................................14

**STATUTES AND RULES**

15 U.S.C. § 1 ................................................................................................................. 1-2, 3

Fed. R. Civ. P. 23 ................................................................................................. 1, 7, 8, 9, 10, 15

**OTHER AUTHORITIES**

6 *Newberg on Class Actions* § 18.25 (4th ed.) ............................................................. 11

7B Wright & Miller, *Federal Practice & Procedure* § 1781 ........................................ 11

## INTRODUCTION

Rule 23's requirements for class certification are "readily met" in most cases alleging "violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Class certification is clearly appropriate here because this Court's determination that AutoLoop has sufficient evidence to go to trial likewise demonstrates that the class can establish each element of its claims through common proof. This Court considered a mountain of evidence regarding: (1) the existence of an agreement by Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") to coordinate their data access policies and "'destroy' independent data integrators like Authenticom and drive them from the market"; (2) the agreement's impact in "eliminat[ing] competition for data integration services" ("DIS"), thus forcing DIS purchasers (i.e., the proposed Vendor Class) to pay prices "much higher" than they would have otherwise; and (3) the resulting damages suffered by the class. Dkt. 1381 ("SJ Op.") at 4-5. All of that evidence is common to the class; every class member could use that same record to establish its own *prima facie* case at trial. Multiple trials would thus be senseless: one classwide trial can resolve those questions in a single stroke. AutoLoop's motion should be granted.

## BACKGROUND

Having issued summary judgment and *Daubert* opinions of over 100 pages each, the Court is intimately familiar with the extensive record in this case. AutoLoop focuses here on the key evidence showing that Rule 23(b)(3) is satisfied.[1]

## I.    The Proposed Vendor Class and Its Remaining Claims

AutoLoop's claims for trial are conspiracy to restrain trade in violation of § 1 of the

---

[1] When quoting from the Court's opinions, we omit internal quotations to briefing (but not record evidence). Also, although the Court's rulings are law of the case, AutoLoop incorporates the following Rule 56.1 statements so the summary judgment evidence is in the record on this motion: Dkts. 950, 977, and 1101.

Sherman Act, 15 U.S.C. § 1, and parallel Florida state-law claims. SJ Op. 79, 126. As to the federal claim, AutoLoop seeks to represent the proposed Vendor Class, defined as follows:

> All automotive software vendors (i.e., persons or entities engaged in the sale of software solutions to automotive dealerships) located in the United States that, at any time since October 1, 2013, have purchased data integration services from CDK or Reynolds.[2]

Excluded from the class are (1) CDK, Reynolds, and any of their officers, directors, employees, subsidiaries, and affiliates; and (2) Cox Automotive, Inc. and its subsidiaries and affiliates.

To establish liability, plaintiffs must prove that: (1) CDK and Reynolds reached an agreement; (2) the agreement unreasonably restrained trade in a relevant market; and (3) plaintiffs suffered antitrust injury. *Id.* at 48, 64. As for damages, plaintiffs must prove that their injuries "were caused by the unlawful acts of the defendant[s]." *Id.* at 66. Once causation is established, "[t]he amount of damages may be determined by a just and reasonable estimate." *See id.*

## II.     Dr. Mark Israel's Opinions and This Court's *Daubert* Ruling

Dr. Mark Israel offered expert opinions probative of each element of AutoLoop's § 1 claim. *See* Dkt. 889-1 ("Israel Rep."); Dkt. 889-2 ("Israel Reply Rep."); Dkt. 889-3 (deposition testimony). *First*, "the economic and non-economic evidence . . . supports the conclusion that Defendants' conduct was not equally consistent with their permissible independent interests as it was with improper [agreement]." Dkt. 1321 ("*Daubert* Op.") at 21. *Second*, Defendants' agreement "harmed competitors, competition, and consumers in DIS markets and App markets and . . . harmed competition and consumers in the DMS market." *Id.* at 17. Among other things, members of the proposed Vendor Class paid "integration prices substantially above competitive levels" after Defendants excluded independent data integrators from the market. SJ Op. 41. *Third*,

---

[2] AutoLoop will pursue its Florida-law claims exclusively on an individual basis.

as to damages, Dr. Israel estimated the damages suffered – both by the entire class and by each class member – "from overcharges due to DIS price elevation, forced switching to CDK or Reynolds' DIS services, and in total." *Daubert* Op. 17.[3] Dr. Israel estimated damages through December 2019 of approximately ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮. *See* Israel Reply Rep. tbl. 8 (▮▮▮▮▮▮▮▮▮▮▮). ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮. *See id.* Dr. Israel also used several alternative models to confirm the robustness of his base analysis. *See* Israel Rep. ¶¶ 203-04 & tbl. 5; Israel Reply Rep. tbl. 5. In its *Daubert* ruling, Dkt. 1321, the Court denied Defendants' motion to exclude Dr. Israel's opinions.

## III. This Court's Summary Judgment Decision

This Court has ruled that the record evidence is sufficient for a reasonable jury to find all of the elements of a violation of Sherman Act § 1. That evidence is common to the class.

*Element 1: Agreement.* The Court found that the "most illuminating evidence" of unlawful agreement consisted of Defendants' actions and communications. SJ Op. 50. A reasonable jury could conclude that in September 2013, CDK and Reynolds agreed to a "classic quid pro quo": "CDK agreed to abandon its competitive advantage in the DMS market by refraining from marketing its open DMS (and ultimately closing its DMS), and [i]n return, Reynolds would give CDK's data integration businesses guaranteed access to the Reynolds DMS, exempting them from its blocking measures against other data integrators. And the parties would

---

[3] Dr. Israel's model includes two categories of harm. The first "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " by "▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " Israel Rep. ¶¶ 213-14. For vendors that were "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Dr. Israel

estimated an additional quantum of damages using the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "

*Id.* ¶¶ 217-19.

cooperate by giving each others' apps reciprocal access to their respective systems." *Id.* at 52.

Subsequent events bolster the existence of that agreement. "[A]fter the September [2013] meeting, CDK implemented an unwritten deal to stop competing on the issue of openness." *Id.* at 53 (detailing internal CDK emails and CDK-Reynolds communications evidencing what CDK called "the companies' new collaborative relationship"). "Similarly, at the January 2014 NADA conference, CDK—which had previously touted open access to its system—shifted course." *Id.* at 54 (detailing CDK's "Data Security Workshop" and "letters to dealers and OEMs").

"[T]here is also evidence that CDK and Reynolds saw the 2015 Agreements as implementing a prior commitment to close their respective systems to data integrators." *Id.* Among the evidence – all of which comes from CDK's and Reynolds's files – is Howard Gardner's notes, which "stated clearly: 'We have an agreement. *We are locking down our DMS.*'" *Id.* at 55 (emphasis by the Court). "Plaintiffs also point to evidence that CDK took action to secure its DMS very soon after signing the 2015 Agreements. The timing supports a reasonable inference that CDK and Reynolds did more than just 'agree[] to joint messaging'; indeed, a reasonable jury could find they also conspired over their underlying data access policies." *Id.* at 55-57 (citing record).

"Perhaps most damning to CDK's position is Authenticom CEO [Steve] Cottrell's testimony about the conversations he had with Defendants' executives in 2015 and 2016." *Id.* at 56. Cottrell testified to a "May 2015 phone conversation with [Reynolds's] Schaefer," in which Schaefer "told him that CDK and Reynolds 'had an agreement to support each other's 3PA and RCI programs and therefore block competitors like Authenticom from pulling dealer data.'" *Id.* (quoting Cottrell testimony). At the April 2016 NADA convention, moreover, "CDK's [Daniel] McCray pulled Cottrell aside and told him that the 'major DMS companies' were 'working

collaboratively to remove all hostile integrators from our DMS system.'" *Id.* (same); *see also id.* at 39-40 (describing conversations).

Relying on Dr. Israel's expert opinions, the Court found that the economic evidence also supports the existence of an unlawful conspiracy. *See id.* at 57. The Court then rejected CDK's economic and non-economic arguments against the existence of an agreement: that each Defendant acted consistent with its unilateral economic interests; that Defendants lacked an economic motive to conspire; that the agreement lacked a sufficient enforcement mechanism; and that the data regarding customer switching and Authenticom connections rebutted the existence of an agreement. *See id.* at 58-60 (finding arguments disputed at summary judgment).

***Element 2: Unreasonable Restraint.*** Applying the "rule of reason," the Court found sufficient evidence to show that Defendants' agreement unreasonably restrained trade.[4] Crediting Dr. Israel's testimony, the Court found sufficient evidence that "after excluding competition from independent integrators, Reynolds and CDK raised their certified integration prices substantially above competitive levels." *Id.* at 41. The Court also found that it was "disputed" whether Defendants offered any "quality improvements in return for the increased prices." *Id.* at 41-42. Thus, the evidence supports a jury finding that Defendants' agreement had a "substantial anticompetitive effect that harm[ed] consumers in the relevant market" and lacked procompetitive justification. *Id.* at 61 (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)).

***Element 3: Antitrust Injury.*** CDK does not and could not deny that supracompetitive prices fall squarely within the definition of antitrust injury. *See, e.g.*, *Am. Express*, 138 S. Ct. at 2284. CDK instead argued that AutoLoop could not establish antitrust injury because

---

[4] The Court stated that it "will instruct the jury on rule-of-reason analysis at trial." SJ Op. at 64. As explained in AutoLoop's opposition to CDK's motion to retain jurisdiction, Dkt. 1399, however, trial in this matter should occur in the Western District of Wisconsin.

Authenticom's "access to its DMS violated the CFAA, the Copyright Act, and the DMCA." SJ Op. 64. The Court rejected that argument, however, because "there is a material factual dispute about whether Authenticom was authorized to access CDK's DMS." *Id*. at 65.

*Damages.* At summary judgment, CDK challenged the sufficiency of AutoLoop's damages evidence by again attacking the reliability of Dr. Israel's regression methodology. *See id.* at 68 (noting that CDK's arguments "mirror" its *Daubert* arguments). While recognizing the stricter standards applicable to summary judgment, this Court again rejected those arguments. *See id.* at 69; *see also Daubert* Op. 15-17. *First*, the Court rejected CDK's contention that Dr. Israel failed to "measure the harm caused solely by Defendants' allegedly unlawful conduct." SJ Op. 69 (again noting that "a jury could reasonably conclude that any supposed improvements to 3PA were not valued by app vendors or did not exist and thus had no effect on 3PA's prices"). *Second*, the Court rejected CDK's argument that Dr. Israel failed to account for CDK's unilateral market power. *See id.* at 69-71 (finding that Dr. Israel "explained how his 'differences-in-differences' model accounts for unilateral market power by comparing 3PA's prices against various benchmarks before and after the conspiracy"). *Third*, the Court rejected CDK's argument that Dr. Israel's regression did not reliably estimate the impact of Defendants' conspiracy on Reynolds RCI prices because he failed to account for possible "composition effects." As the Court held, Dr. Israel's "robustness check" shows that "composition effects are not driving the price increases he observed." *Id.* at 73. *Fourth*, the Court rejected CDK's contention that Dr. Israel could not include "damages incurred by vendors who demonstrated a preference for lower-priced integrators SIS and Authenticom but were forced to switch" to 3PA or RCI. *Id.* at 73-74 (finding that Dr. Israel "provided a reasonable explanation and factual basis" why those vendors received no benefit from

switching – namely, statements ████████████████████████ that 3PA was

not superior in quality to independent data integration) (citing Israel Reply Rep. ¶¶ 150-54).[5]

## IV.    Dr. Israel's Supplemental Report

As Dr. Israel explains in his supplemental class-certification expert report, his merits expert

opinions, which the Court deemed reliable at *Daubert* and summary judgment, "apply equally to

all class members, and do not require inquiry into issues particular to any class member."  Israel

Suppl. Rep. ¶ 13 (attached as Exhibit A).  Dr. Israel's analysis "was entirely done on a common

basis, evaluating the alleged conduct as a whole and its impact on a market-wide basis, without

the need to evaluate issues particular to individual class members."  *Id.*

████████████████████████████████████████████████

████████████████████████████████████████████████

████  *See id.* ¶ 44 & Ex. C.  Those new data do not alter Dr. Israel's opinions on liability and

antitrust injury.  *See id.*  Nor do they alter his opinion that his damages models reliably estimate

both aggregate and individual damages using classwide proof and methods.  In fact, Dr. Israel uses

those models and the updated data to calculate interim damages through December 2023, which

confirms that damages can be computed on a common basis.  *See* Israel Suppl. Rep. tbls. 2, 3.[6]

## LEGAL STANDARD

Rule 23(a) requires the Court to find that "(1) the class is so numerous that joinder of all

members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class."  Rule

---

[5] This Court agreed with CDK only insofar as it directed Dr. Israel to omit Cox Automotive's damages from his trial testimony because it had settled its separate lawsuit against CDK.  *See id.* at 72.

[6] At trial, Dr. Israel will compute damages using the most up-to-date data then available.

23(b)(3) requires that (1) the common questions "predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  AutoLoop bears the burden to show those elements by a preponderance of the evidence.  *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

**ARGUMENT**

The proposed Vendor Class clearly satisfies Rule 23(a) and Rule 23(b)(3).  Every element of plaintiffs' claims, including damages, can be established at trial based on the classwide proof summarized above and carefully considered at summary judgment.  Every class member's claim will rise or fall based on that common evidence.  This is a paradigmatic case under Rule 23(b)(3).

## I.    The Proposed Vendor Class Satisfies Rule 23(a)

### A.    Numerosity / Ascertainability

As Dr. Israel's reports show, *see supra* p. 3 & n. 3, there are ███████ members of the proposed Vendor Class – far more than needed to satisfy numerosity.  *See, e.g.*, *Neil v. Zell*, 275 F.R.D. 256, 260 (N.D. Ill. 2011) (Pallmeyer, J.) (40 class members sufficient).  Joinder of so many entities scattered across the country is clearly impracticable.  The class is also ascertainable; indeed, Dr. Israel has already ascertained its members ██████████████  *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

### B.    Commonality

Rule 23(a)(2) requires just one question of law or fact common to the class.  *See, e.g.*, *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *11 (N.D. Ill. Mar. 29, 2023).  The existence of Defendants' conspiracy is such a question.  *See, e.g.*, *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *3 (N.D. Ill. Sept. 9, 2015).

## C.      Typicality

Rule 23(a)(3)'s typicality requirement is satisfied because AutoLoop's antitrust claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and [its] claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The members of the class are – like AutoLoop – purchasers of DIS that were harmed by Defendants' conspiracy to eliminate competition in the data integration market. Each class member shares AutoLoop's claims. Also, because AutoLoop prevailed at summary judgment on CDK's counterclaims, *see* Dkt. 1383, the trial will involve only AutoLoop's affirmative claims, which are typical of the class.

## D.      AutoLoop and Class Counsel Will Adequately Represent the Vendor Class

AutoLoop and its counsel "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). AutoLoop's claims do not "conflict with those of the class," AutoLoop has "a substantial interest in the outcome of this case," and class counsel are "experienced" and "competent." *Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228-229 (N.D. Ill. 2002). *First*, AutoLoop's claims are typical of those of the class, and its interests "are aligned [with the class] in establishing [CDK's] liability under the antitrust laws and maximizing class-wide damages." *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *4. *Second*, AutoLoop's individual damages – ████, *see* Israel Suppl. Rep. tbls. 2, 3 – give it a significant interest in the successful outcome of the case. Moreover, AutoLoop has shown its interest by vigorously pursuing this litigation through discovery, *Daubert*, and summary judgment, including by producing 26,014 documents (of 91,553 pages), and presenting four witnesses for deposition during fact discovery. *Third*, AutoLoop's counsel are highly experienced and capable. This Court appointed Kellogg Hansen as interim

class counsel based on its experience in litigating antitrust and class-action cases and its work in developing the facts and legal theories central to this MDL. *See* Dkt. 91. The firm has served as co-lead MDL counsel since 2018, along with Prof. Samuel Issacharoff. As the Court recognized, AutoLoop has been "well represented." Dkt. 1343.

## II.    The Vendor Class Satisfies Rule 23(b)(3)

The Vendor Class also meets Rule 23(b)(3)'s predominance and superiority requirements. "When 'common questions represent a significant aspect of [a] case and . . . [they] can be resolved for all members of [a] class in a single adjudication,'" "there is clear justification for handling the dispute on a representative rather than on an individual basis." *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *5 (quoting *Messner*, 669 F.3d at 815). That is true here.

### A.    Common Questions of Law and Fact Predominate

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Individual questions need not be absent." *Messner*, 669 F.3d at 815. The rule requires only that such questions not "overwhelm" questions common to the class. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). That rule is "readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem*, 521 U.S. at 625. That statement is not just idle chatter; it reflects decades of judicial experience. Here, as chronicled in the Court's prior opinions, AutoLoop can prove its case using classwide proof. Indeed, predominance is clearly satisfied because any class member could use that same record to establish all the elements of its claims in an individual trial. *See Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 455 (2016) (class can proceed using common evidence if "each class member could have relied on [that evidence] . . . if he or she had brought an individual action"); *Messner*, 669 F.3d at 815 (same).

**Element 1: Agreement.** "[T]rial in this matter will focus overwhelmingly on common proof of conspiracy—witness testimony, documents, email . . . , economic evidence, and other evidence relating to Defendants' conduct." *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *6. That is sufficient to establish predominance. *See Messner*, 669 F.3d at 815 (common question that is a "significant aspect" of the trial); *Butler*, 727 F.3d at 801 (common question that is "central to the validity" of each of the claims) (internal quotations omitted); 6 *Newberg on Class Actions* § 18.25 (4th ed.) ("[C]ommon liability issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues."); 7B Wright & Miller, *Federal Practice & Procedure* § 1781 ("[W]hether a conspiracy exists is a common question that is thought to predominate over the other issues in the case.").

**Element 2: Unreasonable Restraint.** Defendants' agreement to destroy independent data integrators is unreasonable if it had anticompetitive effects – *i.e.*, if it harmed competition in the "market as a whole." *Am. Express*, 138 S. Ct. at 2287. That is also a common question, not one that varies from vendor to vendor. *See, e.g., Moehrl*, 2023 WL 2683199, at *14 & n.6 (unreasonableness of restraint is common question under either *per se* rule or Rule of Reason). Indeed, Dr. Israel's opinion that the conspiracy eliminated competition in the DIS market (and thus caused DIS prices to skyrocket) would establish anticompetitive effects for *all* class members. Likewise, CDK's asserted procompetitive justifications apply classwide. *See* SJ Op. 61-64 (citing CDK's procompetitive justifications). A single class trial can thus resolve the reasonableness of the agreement for the entire class.

**Element 3: Antitrust Injury.** Dr. Israel's testimony regarding harm to competition in the DIS market also constitutes "common evidence" that "show[s] the fact of injury on a classwide basis." *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 927 (7th Cir. 2016); *Messner*, 669 F.3d

at 819 ("ability to use [] common evidence and common methodology to prove a class's claims is sufficient to support a finding of predominance on the issue of antitrust impact"). As the Seventh Circuit has held, classwide evidence of "cartel pricing" in the relevant market – *i.e.*, "overcharges that resulted from Defendants' collusive practices" – establishes that antitrust injury is a common question. *Kleen*, 831 F.3d at 927-28. In this case, the Court has already held that Dr. Israel reliably opined that Defendants' conspiracy to eliminate independent DIS providers reduced competition in the DIS market, and thus resulted in substantial classwide DIS overcharges. *See* SJ Op. 68-74; *Daubert* Op. 16-17, 22-29; Israel Rep. ¶¶ 110-72. Indeed, it is "the most fundamental tenet of antitrust economics that, all else equal, a loss of competition has a market-wide effect harming all buyers." Israel Suppl. Rep. ¶ 31; *accord Kleen*, 831 F.3d at 928-929; *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254-55 (10th Cir. 2014).

Dr. Israel's DID regression model bears out that unsurprising conclusion empirically. He compares the 3PA and RCI prices affected by the conspiracy to prices for a benchmark set of data integrators before and during the conspiracy. *See* Israel Rep. ¶¶ 193-204 (explaining methodology). He thus "isolate[s] the effect of [] CDK['s] and Reynolds' agreement . . . from other factors affecting [DIS] prices over time or across DMS[-]App combinations." *Id.* ¶ 198. Dr. Israel also runs several alternative models to confirm the robustness of his results. *See id.* ¶¶ 203-04. As with his original results, which the Court reviewed at the *Daubert* stage, Dr. Israel's supplemental analyses – ███████████████████████████████████████████████████
███████ . *See* Israel Suppl. Rep. tbls. 1-3.

Dr. Israel's opinions rest on common evidence, and they hold true for all class members. *See* Israel Suppl. Rep. ¶ 13. His opinions thus show that antitrust injury is a common question that predominates. *See, e.g.*, *Kleen*, 831 F.3d at 929; *Messner*, 669 F.3d at 818 (expert's DID model

showing price increases caused by defendant's conduct established that antitrust injury was common question); *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *7 (same).[7]

**Damages.** "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815; *accord Tyson Foods*, 577 U.S. at 453. "[W]hen adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Chi. Teachers Union, Local No. 1. v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 443-44 (7th Cir. 2015); *see also Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 849 (N.D. Ill. 2021) (Pallmeyer, J.) (same).

In any event, damages questions *support* certification in this case, because AutoLoop *has* "a reliable method of measuring classwide damages based on common proof." *Kleen*, 831 F.3d at 926. In his merits-phase reports, Dr. Israel offered several models, including his DID model, to estimate aggregate damages as of December 2019 based on common evidence and methods. The Court has already found those opinions reliable at *Daubert* and summary judgment. Dr. Israel's supplemental report uses those same models ███████████████████████████ to offer interim classwide damages calculations through December 2023, further showing that AutoLoop has reliable, common methods of computing damages at the time of trial.

Dr. Israel's analyses also generate estimates of *each plaintiff's* damages using common evidence. *See supra* p. 3; Israel Suppl. Rep. ¶ 12. But the Court need not consider plaintiff's

---

[7] The Seventh Circuit repeatedly has held that predominance does not require a showing of impact on every class member. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 757 (7th Cir. 2014) ("If the [district] court thought that no class can be certified until proof exists that every member has been harmed, it was wrong."); *Kleen*, 831 F.3d at 927 (citing additional cases). In any event, Dr. Israel's analysis also shows that ██████████████████. *See supra* p.3; *cf. Hansen v. Country Mut. Ins. Co.*, 2023 WL 6291629, at *28 (N.D. Ill. Sept. 25, 2023) (Pallmeyer, J.) ("a high number of uninjured class-members" that cannot readily be identified might preclude certification). Again, all that is proved by the same body of evidence and the same expert methodology.

methodology for *individual* damages on this motion, because "at the class certification stage, plaintiffs are not obliged to drill down and estimate each individual class member's damages." *Kleen*, 831 F.3d at 929. Rather, the allocation of aggregate damages to individual class members can be resolved after the class trial. *See id.* ("The determination of the aggregate classwide damages is something that can be handled most efficiently as a class action, and the allocation of that total sum among the class members can be managed individually, should the case ever reach that point."); *Tyson Foods*, 577 U.S. at 460-61 (reaching same conclusion).

## B. A Class Action Is Superior To Other Methods of Adjudication

When common questions predominate, courts also generally find superiority satisfied. *See, e.g.*, *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *5; *Moehrl*, 2023 WL 2683199, at *22. For good reason. Without a class action, every plaintiff would need to pursue a separate trial, which would require needless repetition of the same evidence on all of the common issues addressed by the Court at summary judgment: the existence of Defendants' conspiracy, its impact on competition and DIS prices, CDK's alleged procompetitive justifications, and Dr. Israel's damages model. That would be a "gross waste of the Court's and the parties' time and effort." *United Nat'l Recs., Inc. v. MCA, Inc.*, 101 F.R.D. 323, 329 (N.D. Ill. 1984).

Moreover, "[a] class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Jackson v. Nat'l Action Fin. Servs.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005)). Here, the cost of a separate federal jury trial against a multi-billion-dollar multi-national Defendant would be prohibitive for most class members, which ███████████████████████████████████████████████. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury

is substantial in the aggregate."); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all.").

All the Rule 23(b)(3) factors support certification.[8]  As to the first two factors, absent class members have had years to file direct-action cases if they wished to control their own litigation. Only Cox Automotive elected to do so (and thus was excluded from the class definition from the start).  That confirms that AutoLoop's class action is a superior means to obtain relief for the class. As to the remaining factors, the desirability of concentrating the litigation in a particular forum and manageability considerations clearly favor class certification.  A single class trial in one forum is far more manageable than individual trials across the country on the very same issues.  There are no administrative manageability concerns – much less "insurmountable" ones – given that Dr. Israel has identified all class members individually.  *Heard*, 524 F. Supp. 3d at 848; *see Mullins*, 795 F.3d at 664 ("refusing to certify on manageability grounds alone should be the last resort").

## CONCLUSION

AutoLoop respectfully requests that the Court grant class certification, appoint AutoLoop as class representative, and appoint Kellogg Hansen and Prof. Samuel Issacharoff as class counsel.

---

[8] Rule 23(b)(3) lists (1) the interest of class members in individually controlling the litigation; (2) the extent to which litigation already has been commenced by or against other class members; (3) the desirability of concentrating the litigation in a particular forum; and (4) any management difficulties.

Dated:  November 21, 2023          Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
Collin R. White
Bethan R. Jones
Ana N. Paul
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
(202) 326-7900
Washington, D.C. 20036
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com
cwhite@kellogghansen.com
bjones@kellogghansen.com
apaul@kellogghansen.com

*MDL Co-Lead Counsel and Interim Class Counsel
representing Loop, LLC, d/b/a AutoLoop on behalf
of itself and all others similarly situated*

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
si13@nyu.edu

*MDL Coordinating Counsel*

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on November 21, 2023, I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION** to be filed and served electronically via the Court's CM/ECF system.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com