**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817 |
| | Case No. 18-cv-00864 |
| **This Document Relates to:** | |
| **The Dealership Class Action** | Hon. Rebecca R. Pallmeyer |

**MEMORANDUM OF LAW IN SUPPORT OF DEALERSHIP CLASS
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 1

III.  ARGUMENT ....................................................................................................... 2

   A.   Legal Standard for Class Certification ....................................................... 2

   B.   The Dealer Classes Satisfy the Requirements of Rule 23(a) ..................... 3

     1.   The Classes are Sufficiently Numerous ............................................. 3

     2.   Questions of Law and Fact are Common to the Classes ..................... 4

     3.   Class Representatives' Claims are Typical of the Classes' Claims ..... 5

     4.   Class Representatives and Lead Counsel are Adequate ..................... 6

   C.   Rule 23(b)(2) is Satisfied ........................................................................... 8

   D.   Rule 23(b)(3) is Satisfied ........................................................................... 9

     1.   Defendants' Conspiracy Can Be Proven by Common Evidence ....... 10

     2.   Antitrust Impact and Damages Can be Presented on a Classwide Basis Using Common Evidence .................................................................................... 10

     3.   The Class Action Device is Superior ............................................... 11

   E.   Ascertainability is Satisfied ...................................................................... 12

   F.   Certification of a Nationwide Damages Class Under The Illinois Antitrust Act is Appropriate .................................................................... 12

IV.  CONCLUSION ................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Council of Blind of Metro. Chicago v. City of Chicago,*
  589 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................................................5

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................................. 2, 3, 11

*Avery v. State Farm Mutual Automobile Ins.,*
  216 Ill. 2d 100 (2005) .............................................................................................13

*Barnes v. Air Line Pilots Ass'n, Int'l,*
  310 F.R.D. 551 (N.D. Ill. 2015) ...........................................................................3

*Bell v. PNC Bank, Nat. Ass'n,*
  800 F.3d 360 (7th Cir. 2015) ................................................................................3

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
  532 U.S. 598 (2001) ...............................................................................................9

*Clearing Corp. v. Fin'l and Energy Exchange Ltd.,*
  2010 WL 2836717 (N.D. Ill. July 17, 2010) ......................................................13

*Curran v. Kwon,*
  153 F.3d 481 (7th Cir. 1998) ................................................................................14

*Day v. Check Brokerage Corp.,*
  240 F.R.D. 414 (N.D. Ill. 2007) ...........................................................................3

*Fond Du Lac v. Jui Li,*
  2017 WL 4457515 (E.D. Wis. Aug. 8, 2017) .......................................................8

*Gordon v. Boden,*
  224 Ill. App. 3d 195 (Ill. App. Ct. 1991) ..............................................................15

*Gunn v. Cont'l Cas. Co.,*
  968 F.3d 802 (7th Cir. 2020) ................................................................................14

*Hospital Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta Pharms., Inc.,*
  333 F.R.D. 390 (M.D. Tenn. 2019) .................................................................. 7, 11

*In re Allstate Corp. Sec. Litig.,*
  966 F.3d 595 (7th Cir. 2020) ................................................................................9

*In re AT & T Mobility Wireless Data Servs. Sales Litig.,*
  270 F.R.D. 330 (N.D. Ill. 2010) ...........................................................................6

*In re Automotive Parts Antitrust Litig.,*
2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ...................................................................14

*In re Broiler Chicken Antitrust Litig.,*
2022 WL 1720468 (N.D. Ill. May 27, 2022) ...................................................4, 5, 9, 12

*In re Evanston Nw. Corp. Antitrust Litig.,*
2013 WL 6490152 (N.D. Ill. Dec. 10, 2013) ....................................................................11

*In re First Farmers Fin'l Litig.,*
2016 WL 6647923 (N.D. Ill. Nov. 10, 2016) ...................................................................14

*In re Flat Glass Antitrust Litig.,*
191 F.R.D. 472 (W.D. Pa. 1999) .......................................................................................10

*In re NorthShore Univ. HealthSystem Antitrust Litig.,*
2018 WL 2383098 (N.D. Ill. Mar. 31, 2018) .....................................................................6

*In re Pork Antitrust Litig.,*
2023 WL 2696497 (D. Minn. Mar. 29, 2023) .....................................................................7

*In re Ready-Mixed Concrete Antitrust Litig.,*
261 F.R.D. 154 (S.D. Ind. 2009) .....................................................................................4, 5

*In re Relafen Antitrust Litig.,*
221 F.R.D 260 (D. Mass. 2004) ........................................................................................10

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
264 F.R.D. 603 (N.D. Cal. 2009) .......................................................................................8

*In re Steel Antitrust Litig.,*
2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ..................................................................5, 11

*In re Sulfuric Acid Antitrust Litig.,*
2007 WL 898600 (N.D. Ill. Mar. 21, 2007) .......................................................................5

*In re Telectronics Pacing Sys., Inc,*
172 F.R.D. 271 (S.D. Ohio 1997) .......................................................................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
267 F.R.D. 583 (N.D. Cal. 2010) .......................................................................................8

*In re Vitamin C Antitrust Litig.,*
279 F.R.D. 90 (E.D.N.Y. 2012) .........................................................................................8

*Kalow & Springut, LLP v. Commence Corp.,*
2012 WL 6093876 (D.N.J. Dec. 7, 2012) .........................................................................14

*Klaxon Co. v. Stentor Co.*,
   313 U.S. 487 (1941) ...................................................................................................14

*Kleen Prod. LLC v. Int'l Paper Co.*,
   831 F.3d 919 (7th Cir. 2016) ......................................................................................9

*Kleen Prods. LLC v. Int'l Paper*,
   306 F.R.D. 585 (N.D. Ill. 2015) ..................................................................................9

*Kohen v. Pacific Inv. Mgmt. Co. LLC*,
   244 F.R.D. 469 (N.D. Ill. 2007) ..................................................................................4

*Martin v. Heinold Commodities, Inc.*,
   117 Ill. 2d 67 (Ill. 1987) ...........................................................................................13

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ................................................................................2, 10

*Miller UK Ltd. v. Caterpillar Inc.*,
   2017 WL 1196963 (N.D. Ill. Mar. 31, 2017) ............................................................14

*Moehrl v. Nat'l Assoc. of Realtors*,
   2023 WL 2683199 (N.D. Ill Mar. 29, 2023) .....................................................4, 5, 8, 9

*Monroy v. Shutterfly, Inc.*,
   2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ...........................................................13

*Morrison v. YTB Int'l, Inc.*,
   649 F.3d 533 (7th Cir. 2011) ....................................................................................14

*Muir v. Nature's Bounty (DE), Inc.*,
   2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) .................................................................7

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ....................................................................................12

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ..................................................................................6

*Orr v. Shicker*,
   953 F.3d 490 (7th Cir. 2020) ......................................................................................3

*Peterson v. Alaska Commc'ns Sys. Grp., Inc.*,
   328 F.R.D. 255 (D. Alaska 2018), *amended*, 2019 WL 6331355 (D. Alaska Nov. 26, 2019) ...............6

*Quinn v. Specialized Loan Servicing, LLC*,
   331 F.R.D. 126 (N.D. Ill. 2019) ................................................................................11

*Randall v. Rolls-Royce Corp.,*
    637 F.3d 818 (7th Cir. 2011) ...................................................................................9

*Reed v. Advocate Health Care,*
    268 F.R.D. 573 (N.D. Ill. 2009) ............................................................................10

*Reiter v. Sonotone Corp.,*
    442 U.S. 330 (1979) ................................................................................................2

*Renaissance Cruises, Inc. v. Glassman,*
    738 So.2d 436 (Fla. Dist. Ct. App. 1999) .............................................................13

*Sadler v. Midland Credit Mgmt., Inc.,*
    2009 WL 901479 (N.D. Ill. Mar. 31, 2009) .........................................................12

*Smith v. Family Video Movie Club, Inc.,*
    311 F.R.D. 469 (N.D. Ill. 2015) ...........................................................................12

*Smith v. Sprint Comm. Co., L.P.,*
    387 F.3d 612 (7th Cir. 2004) ..................................................................................3

*Tatz v. Nanophase Techs. Corp.,*
    2003 WL 21372471 (N.D. Ill. June 13, 2003) .......................................................5

*TFT-LCD I,*
    267 F.R.D. 291 (N.D. Cal. 2010)
    abrogated on other grounds by *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012)...........10

*Trotter v. Klincar,*
    748 F.2d 1177 (7th Cir. 1984) ................................................................................2

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.,*
    395 U.S. 100 (1965) ................................................................................................8

*Zollicoffer v. Gold Standard Baking, Inc.,*
    335 F.R.D. 126 (N.D. Ill. 2020) .............................................................................6

**Statutes**
740 ILCS § 10/1, *et seq* ..............................................................................................12

**Other Authorities**
7AA Charles Alan Wright et al., Federal Practice & Procedure § 1781 (3d ed. 2021)........................11

Restatement (Second) of Conflict of Laws ...................................................................14

**Rules**
Fed. R. Civ. P. 23 ................................................................................................passim

## GLOSSARY OF TERMS AND REFERENCES

The following is a list of defined terms and references used in the memorandum

| TERM | DEFINITION |
|---|---|
| 3PA | CDK's Third Party Access Program |
| Appendix A | Class Representative and State |
| Appendix B | State Antitrust Claims & Harmonization Provisions |
| Appendix C | Consumer Protection Claims & Harmonization Provisions |
| CDK | CDK Global, LLC (including CDK's corporate predecessor, the ADP Dealer Services division, prior to being spun-off as an independent corporation in late 2014). |
| Class Representatives | *See* Appendix A |
| DIS | Data Integration Services (DIS) are services, offered by Defendants or through independent data integrators, used by a third-party software application vendor to access, manipulate, extract, and update a Dealer's data, including customer information; human resources; inventory; marketing; payroll; and vehicle repair and service, within the DMS in order for a Dealer to utilize a vendor's software application. |
| DMS | Dealer Management Systems (DMS) are a combination of hardware and software computer tools that allow retail automotive dealers to integrate various aspects of their business into a single, interactive platform by consolidating data, including customer information, human resources, inventory, marketing, payroll, and vehicle repair and service. |
| Exh. | Exhibit attached to the accompanying Declaration of Peggy J. Wedgworth |

| TERM | DEFINITION |
|---|---|
| RCI | Reynolds Certified Interface program |
| Reynolds | The Reynolds and Reynolds Company |
| Independent Data Integrators | Data integrators, other than CDK and Reynolds, that process, standardize, and export data from the DMS to Vendors' platforms to make it usable by Vendors' apps. |
| Vendors | Third-party developers known as "Vendors" that create useful apps for dealerships |
| Williams Rpt. | The November 21, 2023 Expert Class Certification Report of Michael A. Williams. Ph.D. |

## I.     INTRODUCTION

Dealership Class Plaintiffs (collectively "Dealers" or "Plaintiffs") respectfully submit their Motion for Class Certification, seeking certification of the proposed classes (collectively, "Dealer Classes") of automobile dealerships for injunctive relief under Fed. R. Civ. P. 23(b)(2) and for monetary damages under Fed. R. Civ. P. 23(b) as set forth in Plaintiffs' accompanying motion for class certification.

## II.     FACTUAL BACKGROUND

The facts of this case are summarized in the Court's numerous opinions, including its recent June 2023 decision largely denying CDK's summary judgment motion. *See* ECF 1381 at 1. Defendants "are the two largest DMS providers, who together control 70 percent of the U.S. franchise dealership market" (*Id.* at 15). Defendants conspired to restrain competition in the DMS market and block third party integrators from competing in the market for DIS. *See id.* at 57 ("a jury could reasonably conclude that CDK conspired with Reynolds."). Defendants' conspiracy thereby deprived the Dealers of a low-cost alternative to Defendants' DIS, reducing the functionality of the CDK and Reynolds DMS they purchased. Dealers were forced to pay inflated fees to access their own data. *See* Exhibit B to the Declaration of Peggy J. Wedgworth ("Exh."), Williams Rpt. ¶¶185-189.

Beginning in 2013, CDK abandoned its previously permissive policies regarding DIS, and engaged in conspiratorial and anticompetitive conduct with Reynolds to drive out other data integrators and raise DIS prices. *Id.* at 28-34. The Defendants continued their conspiracy through the use of, among other things, *written agreements* signed in February 2015. *See id.* at 34-37. The effects of the conspiracy continue today as neither Defendant has resumed competition on the basis of openness of its DMS.[1]

---

[1] Plaintiffs previously settled their claims against Reynolds on a class-wide basis for $29.5 million. *Id.* at 5 n. 6; ECF Nos. 427, 502.

1

As demonstrated by Dealers' expert Dr. Michael A. Williams, common economic evidence supports the existence of the conspiracy between CDK and Reynolds. Williams Rpt. ¶¶ 20, 153-227. Utilizing well-accepted economic methodologies, Dr. Williams also concludes that common evidence can be used to determine whether the alleged conspiracy caused all or virtually all Dealership Plaintiff Class Members to pay supra-competitive prices for DIS within the United States, i.e., whether "common impact" can be established. Further, he concludes that well-accepted economic methodologies utilizing common evidence can be used reliably to quantify damages, if any, resulting from the alleged conduct. Williams Rpt. ¶¶ 54-146, 152.

The record leaves no doubt that CDK and Reynolds engaged in a conspiracy in violation of antitrust laws that resulted in driving competitors in the DIS market out thereby forcing vendors to use the Defendants' DIS which caused dealers to experience decreased functionality in the DMS and pay vendors supracompetitive prices making this a textbook case for class certification.

## III. ARGUMENT

### A. Legal Standard for Class Certification

Antitrust class actions play a crucial role in enforcing the antitrust laws. *See, e.g.*, *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979). "[I]in antitrust cases, 'Rule 23, when applied rigorously, will frequently lead to certification'" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). Class certification is appropriate when a definable class satisfies Rule 23(a) requirements of numerosity, commonality, typicality and adequacy, as well as one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

The party seeking class certification has the burden to show, by a preponderance of the evidence, that Rule 23's requirements are satisfied. *Messner*, 669 F.3d at 811 (citing *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984)). Merits questions need be addressed "only to the extent … that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

*Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015) (citation omitted). Any doubts should be resolved in favor of certification. *See Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 417 (N.D. Ill. 2007) (citation omitted).

Importantly, claims on behalf of Dealers have already been found suitable for class certification in the settlement context. *See* ECF 502 (final approval order and judgment for settlement between Dealers and Reynolds), further supporting certification here. *See Amchem*, 521 U.S. at 620 (for settlement-only class certification, Rule 23's requirements must be satisfied under a "heightened" standard, and the Court need not consider manageability); *Smith v. Sprint Comm. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004). As shown below, Rule 23(a)'s requirements are easily satisfied here:(1) the proposed Dealer Classes number in the thousands; (2) there are multiple questions of law and fact common to the Classes, including whether Defendants' unlawful conduct enabled them to artificially inflate DIS prices to Vendors, an overcharge that was passed along to Dealers; (3) the named Plaintiffs and class members, paid more for DIS resulting from Defendants' anticompetitive conduct; (4) the named Plaintiffs and their counsel have and will vigorously pursue and protect the interests of the Class; and (5) the claims of the named Plaintiffs are typical of the class members.

## B.    The Dealer Classes Satisfy the Requirements of Rule 23(a)

### 1.    The Classes are Sufficiently Numerous

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." "[A] forty–member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker,* 953 F.3d 490, 498 (7th Cir. 2020) (citation omitted). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1),... and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015).

Dealers' Nationwide Injunctive and Damages Classes clearly meet the numerosity

requirement, as they consist of thousands of dealerships located across the United States. Public information released by NADA indicates that as of June 2023 there are over 16,839 franchised new car dealerships in the United States.[2] That number has remained largely static from 2009 to present, during which time CDK and Reynolds provided DMS/DIS to between 70 and 80 percent of new car dealers.[3] Likewise, the Dealer Classes each consist of thousands of dealerships located in at least twenty-six states.[4] Accordingly, the numerosity requirement is satisfied.

Joinder of all these class members, either nationwide or on a state-by-state-basis, would be impracticable. *See In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *3 (N.D. Ill. May 27, 2022) (joinder of thousands of plaintiffs is impractical). Accordingly, for each of the proposed Dealer Classes, the numerosity requirement is satisfied.

### 2. Questions of Law and Fact are Common to the Classes

Rule 23(a)(2) requires "questions of law or fact common to the class." *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). "'A common nucleus of operative facts is usually enough to satisfy the commonality requirement ….'" *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 476 (N.D. Ill. 2007) (citation omitted). Accordingly, the commonality requirement is "a low hurdle, easily surmounted." *Moehrl v. Nat'l Assoc. of Realtors*, 2023 WL 2683199, at *11 (N.D. Ill Mar. 29, 2023) (citation omitted).

Commonality "is 'typically manifest where … the defendants have engaged in standardized conduct towards members of the proposed class.'" *Am. Council of Blind of Metro. Chicago v. City of*

---

[2] Exh. C, *NADA Data 2023: Midyear Report, Annual Financial Profile of America's Franchised New-Car Dealerships* at 3, NATIONAL AUTOMOBILE DEALERS ASSOCIATION, https://www.nada.org/media/4694/download?inline (last visited Nov. 20, 2023).

[3] *See also* ECF 1381. at 45-46 (citing Defendants' own chart regarding approximate share of franchised dealer rooftops).

[4] *See* Exh. D, *NADA Data 2022, Annual Financial Profile of America's Franchised New-Car Dealerships* at 2 , NATIONAL AUTOMOBILE DEALERS ASSOCIATION, https://www.nada.org/media/4695/download?inline (last visited Nov. 20, 2023) (providing total number of new-car dealerships at national and state levels).

*Chicago*, 589 F. Supp. 3d 904, 908 (N.D. Ill. 2022) (citations omitted). Relevant here, courts "have held that 'the question of the existence of a conspiracy in restraint of trade is one that is common to all potential plaintiffs, and the importance of this question usually warrants treating them as a class.'" *Ready-Mixed Concrete*, 261 F.R.D. at 167 (citation omitted); *see also In re Sulfuric Acid Antitrust Litig.*, 2007 WL 898600, at *4 (N.D. Ill. Mar. 21, 2007) ("whether or not that conspiracy existed-i.e., whether or not Defendants' [sic] practiced 'standardized conduct' toward all parties-is one that is common to all Defendants."); *Moehrl*, 2023 WL 2683199, at *11.

Plaintiffs easily satisfy the commonality standard. The central common issues include whether Defendants engaged in the alleged conspiracy; whether Defendants' unlawful conduct enabled them to artificially inflate prices for DIS to Vendors and pass along the overcharge to Dealers, whether that same conduct caused decreased functionality in the Dealers' DMS -- and, if so, the appropriate measure of damages; and whether injunctive relief is appropriate.

### 3. Class Representatives' Claims are Typical of the Classes' Claims

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). This requirement is satisfied where the named plaintiffs' claims "arise[] from the same … practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Ready-Mixed Concrete*, 261 F.R.D. at 167-68 (citation omitted). In the antitrust context, typicality is shown where the defendants' antitrust violation causes injury to both the representative and the class.[5] *See id.* at 168; *see also In re Broiler Chicken*, 2022 WL 1720468, at *5 (typicality found where plaintiffs alleged defendants engaged in a common scheme relative to all members of the class to restrict supply).

---

[5] "The Rule does not require that each member of a class suffer exactly the same injury as the named class representative." *Tatz v. Nanophase Techs. Corp.*, 2003 WL 21372471, at *6 (N.D. Ill. June 13, 2003) (citation omitted). "The issue of typicality is closely related to commonality and should be liberally construed." *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *3 (N.D. Ill. Sept. 9, 2015) (citation omitted).

Common record evidence shows that the named Plaintiffs' claims are typical of the Class members' claims, because, based on the same legal theories, all have been damaged in the same manner by the same misconduct. The proposed Class representatives possess the same interests and seek relief for the same injuries as the other Class members and all are entitled to injunctive and monetary relief as a result of Defendants' collusive conduct. Accordingly, Dealers satisfy typicality.

### 4. Class Representatives and Lead Counsel are Adequate

Rule 23(a)(4) requires Class Representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Plaintiffs must show that: 1) they do not have interests that conflict with the class as a whole, 2) they are 'sufficiently interested in the case outcome to ensure vigorous advocacy,' and 3) class counsel is competent and willing to vigorously litigate the case." *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 158 (N.D. Ill. 2020) (citation omitted). The requirement is easily satisfied here.

Here, the Class Representatives have the incentive to vigorously represent the claims of the Dealer Classes, their interests are aligned (and do not conflict) with the other Class members. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010). Additionally, although many courts, including this Court, have found that class representatives are not required for every state, Dealers have selected and retained Class Representatives from the majority of the States where claims remain.[6] *See* Appendix A (listing proposed Class Representatives and proposed additional Class Representatives); *In re Pork Antitrust Litig.*, 2023 WL 2696497, at *17-18 (D. Minn.

---

[6] Adding class representatives at the class certification stage is commonplace. *See Peterson v. Alaska Commc'ns Sys. Grp., Inc.,* 328 F.R.D. 255, 268 (D. Alaska 2018), *amended,* 2019 WL 6331355 (D. Alaska Nov. 26, 2019) (allowing appointment of class representatives who were previously unnamed class members at class certification). Indeed, there is no requirement that a class representative be a named plaintiff who has sued the defendant individually. *See Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 343 n.97 (S.D.N.Y. 2004); *see also In re Telectronics Pacing Sys., Inc.,* 172 F.R.D. 271, 283 (S.D. Ohio 1997). If this Court finds that an additional or alternative class representative is necessary, Dealers request leave to propose other representatives. *See, e.g., In re NorthShore Univ. HealthSystem Antitrust Litig.,* 2018 WL 2383098, at *1 (N.D. Ill. Mar. 31, 2018) (permitting substitution).

Mar. 29, 2023) (granting class certification where named plaintiffs resided in only 11 of 28 states); *Hospital Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta Pharms., Inc.,* 333 F.R.D. 390, 414 (M.D. Tenn. 2019) (rejecting contention that indirect purchasers were required for every state at class certification stage); *see generally Muir v. Nature's Bounty (DE), Inc.,* 2018 WL 3647115, at *8 (N.D. Ill. Aug. 1, 2018) (Pallmeyer, J.) (differences among applicable state laws may not foreclose certification of a multi-state class under Rule 23). The vast majority of the antitrust and consumer protection laws in the relevant 26 states are harmonized with federal law, and materially uniform across jurisdictions. *See* Appendix B and Appendix C hereto.

The previously-named Class Representatives have demonstrated their commitment to this lengthy and highly complex litigation. They have reviewed and approved pleadings, responded to interrogatories, searched for, collected and produced documents, and sat for depositions. The proposed additional Class Representatives likewise are committed to the prosecution of this action. Thus, all Class Representatives satisfy the adequacy requirement.

Finally, "[a]n order that certifies a class action … must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23 (c)(1)(B). As this Court recognized when it appointed Peggy J. Wedgworth and Milberg to lead the Dealer case on an interim basis, Plaintiffs' counsel has extensive experience in prosecuting antitrust cases, class actions, and other complex cases to successful resolution. *See* Order Appointing Dealership Interim Lead Class Counsel (ECF Nos. 122, 123) and annual reappointments through 2023 (ECF Nos. 644, 944, 1285, 1343, 1379).

As Dealership Interim Lead Class Counsel, Milberg has dedicated substantial time and resources to prosecute named Plaintiffs and the proposed Dealer Classes' claims, demonstrating their adequacy through years of effective litigation on behalf of the Dealers including, most recently, their

successful summary judgment briefing. *See* Fed. R. Civ. P. 23(g)(1)(A).[7] Dealership Interim Lead Class Counsel respectfully requests permanent appointment of lawyers from Bellavia Blatt, PC; Gustafson Gluek, PLLC; Robbins Geller Rudman & Dowd LLP as Dealer Plaintiffs' Steering Committee; and Clifford Law Offices, P.C. as Liaison Counsel, who have been litigating this case since 2018.

### C.    Rule 23(b)(2) is Satisfied

Plaintiffs seek certification of a Nationwide Injunction Class under Rule 23(b)(2), protecting them from CDK's ongoing anticompetitive conduct, which will benefit "the class as a whole." Fed. R. Civ. P. 23(b)(2). It is common to certify a 23(b)(2) Injunction Class where Plaintiffs seek injunctive relief to prevent an antitrust violation such as defendants' future anticompetitive acts . *See, e.g.*, *Fond Du Lac v. Jui Li*, 2017 WL 4457515, at *6 (E.D. Wis. Aug. 8, 2017) (certifying nationwide indirect purchaser injunctive relief class); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 597 (N.D. Cal. 2010) (same); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 611 (N.D. Cal. 2009) (same); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 112-13 (E.D.N.Y. 2012) (finding indirect purchaser injunctive relief class "easily met" factors for certification). "To obtain injunctive relief, [], an antitrust plaintiff "need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *22 (N.D. Ill. Mar. 29, 2023)(quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1965))

All requirements for certification of a 23(b)(2) Class are satisfied. The interests of proposed Class Representatives and Class members are closely aligned due to their shared current use of the CDK and Reynolds DMS products and the continued impact of Defendants' acts. *See Randall v. Rolls-*

---

[7] Dealer Interim Lead Counsel and members of the team outlined their experience and expertise in their motion for appointment as class counsel (*see* ECF Nos. 94, 96-98). *See* Exh. E for Milberg firm resume and attorney biographies.

*Royce Corp.*, 637 F.3d 818, 826 (7th Cir. 2011) (Defendants "act[ed] on grounds that apply generally to the class."). The Nationwide Injunction class seeks non-monetary, final injunctive relief against CDK's ongoing anticompetitive conduct, a request that survives until Defendants establish that the alleged misconduct will not recur. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001).

### D.  Rule 23(b)(3) is Satisfied

Under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Predominance is satisfied when common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication." *Broiler Chicken*, 2022 WL 1720468, at *6 (citing *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016)).

"[T]he existence of a conspiracy in violation of antitrust laws 'is the prototypical example of an issue where common questions predominate'" particularly in the context of a conspiracy to fix prices. *Moehrl*, 2023 WL 2683199, at *13 (citing *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 594 (N.D. Ill. 2015)); *see also In re Allstate Corp. Sec. Litig.,* 966 F.3d 595, 603 (7th Cir. 2020) (predominance requirement "readily met" in antitrust cases). Any prospect of individual issues does not militate against certification. *Moehrl*, 2023 WL 2683199, at *12 ("classes are routinely certified under Rule 23(b)(3) where common questions exist and predominate, even though other individual issues will remain after the class phase.").

In addition to their federal antitrust claim, the Plaintiffs seek certification under the antitrust and consumer protection statutes of twenty-six states. The essential similarities of those statutes and proof requirements are far more significant than the slight variations. *See* Appendices B and C. In fact, at the summary judgment stage, "identifying authority from every relevant state, CDK explained that the vast majority of these claims track the substantive standards applicable to the federal antitrust

9

claims." *See* CDK Reply in Support of Motion for Summary Judgment (ECF 1131) at 10-11.

### 1. Defendants' Conspiracy Can Be Proven by Common Evidence

At summary judgment the Court ruled, "a jury could reasonably conclude that CDK conspired with Reynolds." ECF 1381 at 57; *see also* Section II above. As such, the existence of Defendants' alleged conspiracy clearly predominates over any individual issue. *See TFT-LCD I*, 267 F.R.D. 291, 310 (N.D. Cal. 2010) (certifying class where main questions in dispute involved "what defendants did, rather than what plaintiffs did."), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 755 n.7 (9th Cir. 2012); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 488 (W.D. Pa. 1999); *In re Relafen Antitrust Litig.*, 221 F.R.D 260, 275 (D. Mass. 2004). Although Plaintiffs need not prove the existence of the conspiracy now, the evidence in this case (*see* Section II above) is nothing short of overwhelming. *See Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009) ("[W]hether plaintiffs can prove that a conspiracy existed is not an issue that we consider on class certification; rather, the question is whether plaintiffs can prove a conspiracy with common proof.").

### 2. Antitrust Impact and Damages Can be Presented on a Classwide Basis Using Common Evidence

Common evidence in the form of expert testimony demonstrates classwide antitrust impact and damages. *Messner*, 669 F.3d 802, 817–18 (discussing the role of expert testimony in proving common impact). As this Court previously acknowledged, Dr. Williams's model establishes the theory advanced by Dealers, estimating "how much the Vendors were overcharged by RCI and 3PA and what percentage was passed along to the Dealers." ECF 1381 at 81. The model analyzed data produced by CDK and Reynolds, as well as numerous Vendors, producing a measurement of antitrust impact upon dealerships nationwide. *Id.* The model estimates the aggregate impact of Defendants' anticompetitive conduct using changes between the benchmark period and the damages period. ECF 1321 at 29-48 (rejecting *Daubert* challenge). The damages model, applied at a national level, is "enough

to establish that the Dealers suffered some damages" without measuring impact to plaintiffs on a state-by-state basis. ECF 1381 at 80-81. *See id.* at 81 (model "fits well with the indirect damages classes the dealers will seek to certify under state law"). Dr Williams' damages model also permits apportionment on a state-wide basis. *Id.*; Williams Rpt. ¶¶128-29, Table A11. Individual damage issues, if any, can await further proceedings. *Hospital Auth. of Metro. Gov't of Nashville & Davidson Cty. v. Momenta Pharms., Inc.,* 333 F.R.D. 390, 413 (M.D. Tenn. 2019).

### 3.     The Class Action Device is Superior

Rule 23(b)(3) requires that the class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he predominance and superiority inquiry are intertwined: generally, the more that common issues predominate, the more likely that a class action is the superior vehicle for deciding the controversy." *In re Evanston Nw. Corp. Antitrust Litig.*, 2013 WL 6490152, at *3 (N.D. Ill. Dec. 10, 2013). Where, as here, common issues predominate, "courts generally have ruled that the superiority [requirement] is satisfied." 7AA Charles Alan Wright et al., Federal Practice & Procedure § 1781 (3d ed. 2021). Moreover, as previously outlined, each of the proposed Dealer Classes contains thousands of potential Class members, interspersed throughout at least twenty-six states in the Damages Class. *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *12 ("the more claimants there are" the more "a class action is superior to other methods for fairly and efficiently adjudicating a controversy"). The adjudication of the common issue of Defendants' liability in a single trial achieves economies of time and expense for all Class members and is doubtless more efficient than trying the same case hundreds or thousands of times in courts throughout the country. *Quinn v. Specialized Loan Servicing, LLC*, 331 F.R.D. 126, 134 (N.D. Ill. 2019) (quoting *Amchem,* 521 U.S. at 615) ("Class actions are also desirable where collective treatment 'would achieve economies of time , effort, and expense, and promote . . .uniformity of decisions as to persons similarly situated.'"). For these reasons, a class action is superior to other methods to resolve the

proposed Dealer Classes' claims.

### E.    Ascertainability is Satisfied

The Seventh Circuit requires a movant to meet an "ascertainability" standard (albeit a "weak version"), showing that the proposed classes are clearly defined. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658-59 (7th Cir. 2015). The standard is met if the proposed class definitions are precise, defined by objective criteria, and are not defined by success on the merits (*i.e.*, "fail-safe classes"). *Id.* at 659-60. *See Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 475 (N.D. Ill. 2015) ("the ascertainability requirement is not about evidence; it is about whether the proposed class definitions are based on objective criteria"); *In re Broiler Chicken*, 2022 WL 1720468, at *21 (same). Here, the proposed Classes are defined by objective criteria, and Class membership does not depend upon the outcome of the case. In addition, once certification is granted, Class member contact information is readily available and accessible from Defendants' own transactional records showing addresses for the invoiced dealers. *See Sadler v. Midland Credit Mgmt., Inc.*, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009) (Pallmeyer, J.) (holding class was ascertainable where defendants' own database provided the means of identifying class members).

### F.    Certification of a Nationwide Damages Class Under The Illinois Antitrust Act is Appropriate

Certification of a nationwide class of Dealers under the Illinois Antitrust Act ("IAA"), 740 ILCS § 10/1, *et seq.* is appropriate. The IAA permits suits by all purchasers, including indirect purchasers. *See id.* § 10/7(2). Nationwide application of the IAA is constitutionally permissible given the Class's significant contacts with Illinois. In *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67 (Ill. 1987), the Illinois Supreme Court held that the Illinois Consumer Fraud Act ("CFA") can be constitutionally applied to a nationwide class action where the challenged conduct "implicates the legitimate interests of the State of Illinois in insuring that persons and entities within its jurisdiction,

insofar as they undertake to act as agents, do so in accordance with its law." *Id.* at 82 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985)). *See also Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436, 439 (Fla. Dist. Ct. App. 1999) (affirming certification of nationwide class under Florida law) (citing *Martin*).

The fact that numerous Dealers are located outside Illinois does not bar application of Illinois law. *See Avery v. State Farm Mutual Automobile Ins.*, 216 Ill. 2d 100, 186 (2005) (CFA can be applied in favor of non-Illinois residents "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois"). *See also Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *5-6 (N.D. Ill. Sept. 15, 2017) (denying motion to dismiss non-resident's Illinois Biometric Information Privacy Act claim where alleged violation occurred in Illinois); *Clearing Corp. v. Fin'l and Energy Exchange Ltd.*, 2010 WL 2836717, at *5-6 (N.D. Ill. July 17, 2010) (denying motion to dismiss non-resident's CFA claim where several of the challenged misrepresentations were made in Illinois).

Here, application of the IAA to all Dealers is warranted given, among other things, that CDK maintained its headquarters and principal place of business in Illinois and engaged in its challenged conduct in Illinois. As CDK has told this Court:

- "[T]he anti-competitive behavior by CDK that [vendor class plaintiff] AutoLoop alleges *arose in the Northern District of Illinois.*" *See* ECF 1387 at 5-6 (Joint Status Report (CDK's statement), filed July 27, 2023) (emphasis added);

- The *Autoloop* case "involves *corporate-level decision-making regarding policies governing access to dealer management systems* and application of those policies to third-party software Vendors seeking access to those systems. Those decisions were not formulated or implemented in the Western District of Wisconsin, but rather at the DMS providers' headquarters and principal places of business. *For CDK, that was in the Northern District of Illinois.*" *See* ECF 1398 at 10 (emphasis added);

- "[A]t the relevant times, CDK was headquartered and had its principal place of business in the district, *CDK maintains its largest office in the district, events from which the [Autoloop] suit arose occurred in the district*, and CDK transacts business in the district." *Id.* at 7 (emphasis added);

- This district has a "greater relationship to the controversy" than the District of Wisconsin, *id.* at 13, even though "Wisconsin-based Authenticom," a "third-party data integrator[]," was a principal target of the alleged conspiracy. *See id.* at 1, 8, 11.[8]

- "CDK's decisions regarding access to its DMS" were made in N.D. Ill. ECF 1408 at 9-10.

Finally, any argument that differing state laws preclude a nationwide class must fail. This Court properly follows the law of the forum state (Illinois), including its choice-of-law rules. *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 491 (1941). Illinois applies the "most significant relationship" test to resolve choice-of-law issues. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808-09 (7th Cir. 2020); *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998); *In re First Farmers Fin'l Litig.*, 2016 WL 6647923, at *3 (N.D. Ill. Nov. 10, 2016) (St. Eve, J.) ("Where the parties have not specified which state's law applies to a particular contract, Illinois courts apply the 'most significant contacts' test …."); Restatement (Second) of Conflict of Laws § 6.

Illinois' significant relationship to this case -- including the facts that CDK's challenged conduct "arose" and was "implemented" in Illinois, and that CDK's DMS contract features an Illinois choice-of-law clause -- warrant applying the IAA to the national Dealer class. *See In re Automotive Parts Antitrust Litig.*, 2019 WL 7877812, at *2 (E.D. Mich. Dec. 20, 2019) ("In appropriate circumstances, based on applicable choice-of-law rules, the laws of a single 'repealer' state may also be applied on a nationwide basis to all purchasers, regardless of where they reside or where they made their purchases.")(addressing settlement allocation); *Kalow & Springut, LLP v. Commence Corp.*, 2012 WL 6093876, at *1, 3 (D.N.J. Dec. 7, 2012) (in case alleging that software defect required users "to purchase a software fix or upgrade their software to resume normal functionality," certifying

---

[8] CDK's form Master Services Agreement with dealers, dated July 1, 2015, is expressly governed by Illinois substantive law, *see* ECF 975-64, ¶ 18(I), and contains an Illinois forum-selection clause, *id.*, further supporting application of the IAA. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 537 (7th Cir. 2011) (construing *Martin*); *Miller UK Ltd. v. Caterpillar Inc.*, 2017 WL 1196963, at *7 (N.D. Ill. Mar. 31, 2017).

nationwide class under New Jersey Consumer Fraud Act where New Jersey was defendant's principal of business and the software was written in New Jersey); *Gordon v. Boden*, 224 Ill. App. 3d 195, 202 (Ill. App. Ct. 1991) ("[I]f the trial court found that Illinois has significant contact to the claims asserted by each class member, the court could apply Illinois substantive law to this multistate class action.").

## IV.     CONCLUSION

For the foregoing reasons, Dealers respectfully request that the Court grant their motion to certify the Classes, appoint the proposed Dealer Class Representatives, and appoint Peggy J. Wedgworth and Milberg as Lead Class Counsel and Leonard A. Bellavia and Bellavia Blatt, PC, Daniel Hedlund and Michelle Looby and Gustafson Gluek, PLLC, and James Barz and Frank Richter and Robbins Geller Rudman & Dowd LLP as the Dealership Class Plaintiffs' Steering Committee, and Robert A. Clifford and Clifford Law Offices as Liaison Counsel.


Dated:  November 21, 2023              Respectfully submitted,

<div style="margin-left:40%">

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY 11530
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Class Counsel for Dealership Class Plaintiffs*

</div>

15

## CERTIFICATE OF SERVICE

I, Peggy J. Wedgworth, an attorney, hereby certify that on November 21, 2023, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEALERSHIP CLASS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth