# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To: The Dealership Class Action | MDL No. 2817<br>Case No. 18-cv-00864<br>Hon. Rebecca R. Pallmeyer |

**DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF CLASS
CERTIFICATION REQUESTS FOR THE PRODUCTION OF
<u>DOCUMENTS TO DEFENDANT CDK GLOBAL, LLC</u>**

Pursuant to Rules 23, 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Baystate Ford Inc.; Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville; JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra; John O'Neil Johnson Toyota, LLC; Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota; Marshall Chrysler Jeep Dodge, LLC; Patchogue 112 Motors LLC d/b/a Stevens Ford; Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC; Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram; Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram; and Warrensburg Chrysler Dodge Jeep, L.L.C. ("Dealership Class Plaintiffs") request that The Reynolds and Reynolds Company ("Reynolds") produce all documents in its actual or constructive possession, custody, or control related directly or indirectly to any of the matters described below, subject to the Definitions and Instructions set forth herein. All documents and tangible things responsive hereto shall be produced to the undersigned counsel, or at such other location as is mutually acceptable to the parties, within thirty (30) days of service of these requests, or at such other time and place as the parties mutually agree.

**I.     DEFINITIONS**

This section sets forth specific definitions applicable to certain words and terms used herein. Unless words or terms have been given a specific definition in this section or in a specific Request, each word or term shall be given its usual and customary dictionary definition, except where a word or term has a specific customary and usage definition in your trade and industry. In that case, the word or term shall be interpreted in accordance with the specific customary and usage definition.

1. "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

3. "CDK" shall mean CDK Global, LLC., a Delaware corporation with its corporate headquarters and principal place of business located at 1950 Hassell Road, Hoffman Estates, Illinois, formerly a publicly traded Delaware corporation with the same corporate headquarters and principal place of business. "CDK" shall include the Dealer Services business of Automatic Data Processing Inc. ("ADP"), or any other predecessor to CDK. "CDK" shall also include its present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants, including those of ADP's Dealer Services business or any other predecessor to CDK. "CDK" shall also include Brookfield Business Partners and any of its subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants which serve or have served in a successor capacity to CDK. "CDK" shall also include all entities and affiliates identified in CDK Global, LLC's Amended Corporate

Disclosure filed on July 21, 2023 (ECF No. 1386).

4. "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

5. "Data integrator(s)" shall refer to any service provider(s) that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both. For the avoidance of doubt, "data integrator(s)" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

6. "Data Integration Services" or "DIS" shall refer to the extracting, transforming, integrating, and/or organizing of data house on dealer data management systems.

7. "Dealers" or "Dealerships" shall refer to businesses engaged in retail automobile sales, including but not limited to the Dealership Class Plaintiffs in this litigation.

8. "Dealership Rooftop" shall mean a unique automobile retail location, identifiable by a separate street address, whether such location is the sole location of any business engaged in retail automobile sales or one of many locations.

9. "DMI" shall mean Digital Motorworks, Inc., a data integrator and wholly owned subsidiary of CDK. "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

10. "DMS" shall mean Dealer Management System, the mission-critical enterprise software that manages nearly every function of a dealer's business. DMS software handles and integrates the critical business functions of a car dealership, including sales, financing, inventory management (both vehicle and parts), repair and service, accounting, payroll, human resources,

marketing, and more. The DMS also operates as a database, housing dealer data related to inventory, customer, sales, and service information.

11. The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers.

12. "Document" and "documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure Rule 34(a) and shall include, but not be limited to any original, reproduction or copy, and/or non-identical copy (i.e., copy with marginal notes, deletions, etc.) of any kind of writings, drawings, graphs, charts, photographs, videos or sound recordings, images, data or data compilations, and/or documentary material, including but not limited to emails, letters, text messages, press releases, postings, instructions, memoranda, notes, diaries, journals, calendars, contract documents, publications, advertisements, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, photographs, negatives, slide decks or slides, dictation belts, voice tapes, and telegrams. This includes any materials documenting, reflecting, or relating to discussions, conversations, telephone calls, meetings, presentations, conferences, seminars, and/or other spoken or oral communications. Drafts or non-identical copies of, and amendments or supplements to, any of the foregoing are separate documents within the meaning of this term.

13. "Including" (in addition to its usual meanings) shall mean including but not limited to.

14. "Person" or "persons" shall mean, without limitation, any individual, corporation, partnership or any variation thereof (*e.g.*, limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, government entity, group or other form of legal entity.

15. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16. "Reynolds" shall mean The Reynolds & Reynolds Company, an Ohio corporation with its corporate headquarters and principal place of business located at One Reynolds Way, Kettering, Ohio. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17. "Vendors" or "application providers" shall mean Vendors who provide software applications that perform operations functions for dealerships, such as inventory management, customer relationship management, and electronic vehicle registration and titling, among other functions.

18. "You," "Your" or "Your Company" mean the responding party, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding defendant.

19. Any term stated in the singular includes the plural and vice versa.

20. The use of any tense of any word includes all other tenses.

II. INSTRUCTIONS

1. All documents shall be produced as they are maintained in the ordinary course of

business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.

2. In responding to these Requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

3. Each Request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever and created or used for any purpose, including, without limitation, the making of notes thereon. You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

4. To the extent that there are documents containing information relevant to these Requests that are currently in electronic format, the documents are to be produced in their native format.

5. Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege. No generalized claims of privilege or work-product protection shall be permitted. With respect to each document or communication for which a claim of privilege or work product is made, the asserting party must at the time of assertion identify:

  (a) The exact basis for withholding or redacting the document or communication;

  (b) The medium of such document or communication;

  (c) The general subject matter of such document or communication (such description shall not be considered a waiver of Your claimed privilege);

  (d) Any document that was the subject of such document or communication and the present location of any such document;

  (e) All persons making or receiving the privileged or protected document or communication; and

  (f) Any document which records, refers, or relates to such document or communication and the present location of any such document; and

  (g) The steps taken to ensure the confidentiality of the documents or communication, including affirmation that no unauthorized persons have received the document or communication.

6. If a portion of any document responsive to these Requests is withheld under claim of privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7. The log should also indicate, as stated above, the location where the document was found.

8. You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

9. Documents attached to one another should not be separated. If any portion of any document is responsive to any portion of the document Requests below, then the entire document,

including any attachments to the document, must be produced.

10. Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

11. If a document responsive to these Requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

    (a) Whether the document is missing or lost;

    (b) Whether it has been destroyed;

    (c) Whether the document has been transferred or delivered to another person, and, if so, at whose request;

    (d) Whether the document has been otherwise disposed of; and

    (e) A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

12. References to specific portions of your contracts with Dealers, Vendors, and others are provided solely as a convenience – to assist you in understanding the relevance or the types of documents sought – and are not intended to, and do not, narrow or otherwise limit the scope of the Request.

13. A Request to produce "all documents" means you must produce every non-identical document responsive to the subject matter of the Request. A Request to produce "documents sufficient to" identify or describe certain facts means you may select which documents to produce in response to the Request so long as you reasonably believe they include all of the information

relating to the subject matter of the Request that would be reflected in all of the documents responsive to the Request. In lieu of producing "documents sufficient to" identify or describe certain facts, you may produce "all documents" relating to the subject matter of the Request. In that event, you should state that you have produced "all documents" relating to the Request in your written response to these Requests.

14. Provide a source list that clearly identifies who maintained the document and the location from where it was collected.

15. Each Request herein shall be construed independently. No Request shall be construed by reference to any other Request for the purpose of limiting the scope of the answers to such Request.

16. If no document responsive to a Request exists, or if the only documents responsive to a Request are not within your possession, custody or control, please so state in your written response to the Request.

17. These Requests shall be deemed continuing Requests so as to require supplemental responses if You obtain or discover additional documents between the time of initial production and the time of the trial. Such supplemental documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary responses and the additional supplementary production of documents before trial.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents regarding transactional sales information for CDK's Dealership customers for the period May 1, 2019 to present, including but not limited to data supplementing the invoice data previously produced by CDK as CDK-3112783, CDK-3112784, CDK-3112785, CDK-3112786, CDK-3112787, CDK-3112788, CDK-3112789, CDK-3112790, CDK-3112791, CDK-3116422 and CDK-3116424. All additional sales transaction information for the period May 1, 2019 to present, shall be in the same format and include all fields of data present in the aforementioned previously produced documents.

**REQUEST NO. 2:**

Documents sufficient to show CDK's total revenue from DIS broken out by state, including but not limited to the sum of CDK's DIS revenue for all Dealership Rooftops in any and all states, at the most granular level available (*i.e.*, monthly or annually) for the period May 1, 2019 to present.

**REQUEST NO. 3:**

Documents sufficient to show CDK's total revenue from DMS fees broken out by state, including but not limited to the sum of CDK's DMS fees for all Dealership Rooftops in any and all states, at the most granular level available (*i.e.*, monthly or annually) for the period May 1, 2019 to present.

**REQUEST NO. 4:**

Documents sufficient to show the total number of operating CDK Dealership Customers at the most granular level available (*i.e.*, monthly or annually) in each state for the period September 1, 2013 to present.

**REQUEST NO. 5:**

Documents sufficient to show the total number of operating CDK Dealership Rooftops at the most granular level available (*i.e.*, monthly or annually) in each state for the period September 1, 2013 to present.

**REQUEST NO. 6:**

All Documents providing information necessary to interpret the Documents and data produced by CDK pursuant to Request Nos. 1-5, including but not limited to data dictionaries describing the content, format, structure and/or relationships between data in such productions.

Dated: August 8, 2023    Respectfully submitted,

/s/ *Peggy J. Wedgworth*
Peggy J. Wedgworth
Elizabeth McKenna
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11350
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*MDL Co-Lead Counsel representing the Dealership Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, I caused a true and correct copy of the foregoing Dealership Class Plaintiffs' First Set of Class Certification Requests for the Production of Documents for Defendant CDK Global, LLC to be served by email upon the following individuals:

Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
bmiller@mayerbrown.com
mprovance@mayerbrown.com

CC: reynoldsteam@gibbsbruns.com
reynolds-smrh-pldg@sheppardmullin.com
service-external-dms-mdl@lists.kellogghansen.com

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth