```
 1                 IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3

 4    IN RE:                         )
                                     )
 5    DEALER MANAGEMENT SYSTEMS      )    Docket No. 18 C 864
      ANTITRUST LITIGATION.          )
 6                                   )
                                     )
 7                                   )    Chicago, Illinois
                                     )    December 14, 2023
 8                                   )    3:00 p.m.

 9
                     TRANSCRIPT OF PROCEEDINGS - Status
10       BEFORE THE HONORABLE CHIEF JUDGE REBECCA R. PALLMEYER

11
      APPEARANCES:
12

13    For the Plaintiffs:     MR. SAMUEL ISSACHAROFF
                              40 Washington Square South
14                            New York, New York 10012

15                            KELLOGG HANSEN TODD FIGEL
                                & FREDERICK, PLLC
16                            BY:  MR. DEREK HO
                                   MR. MICHAEL N. NEMELKA
17                                 MR. DANIEL V. DORRIS
                              1615 M Street NW, Suite 400
18                            Washington, DC 20036

19                            MILBERG COLEMAN BRYSON PHILLIPS
                                GROSSMAN, PLLC
20                            BY:  MS. PEGGY J. WEDGWORTH
                              100 Garden City Plaza
21                            Garden City, New York 11530

22
      For the Defendants:     KIRKLAND & ELLIS LLP
23                            BY:  MS. KATHERINE KATZ
                                   MR. CRAIG S. PRIMIS
24                                 MS. EMILY LONG
                              1301 Pennsylvania Avenue, N.W.
25                            Washington, DC  20004
```

1    APPEARANCES (Continued:)

2
                              KIRKLAND & ELLIS LLP
3                             BY:   MR. KEVIN M. JONKE
                              300 North LaSalle
4                             Chicago, Illinois  60654

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22
     Court Reporter:         FRANCES WARD, CSR, RPR, RMR, FCRR
23                           Official Court Reporter
                             219 S. Dearborn Street, Suite 2524A
24                           Chicago, Illinois 60604
                             (312) 435-5561
25                           frances_ward@ilnd.uscourts.gov

1      (The following proceedings were had telephonically:)

2          THE CLERK:  18 CV 864, In Re:  Dealer Management

3   Systems Antitrust MDL for a motion hearing.

4          THE COURT:  Good afternoon.

5          This is Judge Pallmeyer.

6          I wonder if I can get your appearances for the

7   record.  We will begin with counsel for the plaintiff.

8          MS. WEDGWORTH:  Good afternoon, your Honor.

9          Peggy Wedgworth from Milberg.

10         THE COURT:  Good afternoon.

11         MR. HO:  Good afternoon, your Honor.

12         Derek Ho from Kellogg Hansen in Washington, D.C. on

13  behalf of the Vendor Class.  And with me are Michael Nemelka

14  and Daniel Dorris, also from Kellogg Hansen.

15         MR. ISSACHAROFF:  Good morning, your Honor.  Good

16  afternoon, rather.

17         Samuel Issacharoff.  I am with Mr. Ho as well.

18         THE COURT:  Okay.  Good afternoon, Mr. Issacharoff.

19         Other plaintiffs' lawyers?

20      (No response.)

21         THE COURT:  All right.  How about for the defense

22  or CDK?

23         MS. KATZ:  Good afternoon, your Honor.

24         This is Katherine Katz from Kirkland & Ellis on

25  behalf of CDK.

1        And I have with me Craig Primis, Emily Long, and

2    Kevin Jonke.

3        THE COURT:  Okay.  Good afternoon to all of you.

4        We have cross-motions with respect to discovery

5    issues.  As I understand it, there are three issues.

6        One is relating to the plaintiff class' compliance

7    with written discovery requests that have been made; second,

8    a dispute about the scope of the depositions of the 17 new

9    Dealer Class representatives who have been identified -- or

10   Dealer Class members who have been identified; and then,

11   third, a request on the part of CDK for a four-week extension

12   of the class certification schedule.

13       I have got thoughts about all three of these, but

14   let me just ask this first question relating to the first

15   issue, and that is, additional discovery requests -- pending

16   discovery requests that I believe CDK has alleged -- for

17   which CDK has alleged the responses are overdue.

18       Can I hear from plaintiffs on that?

19       MS. WEDGWORTH:  Yes, your Honor.

20       We have produced all documents for 15 to 17.  I

21   think we made a production today.  We are short one or two

22   productions in there to complete them.  But as to all the

23   others, we are complete.  Like I said, I think we still have

24   three that may not be complete, but they may be complete by

25   the end of today.  But everything else is complete.

1          THE COURT:  Okay.  Is there general agreement on

2    that with respect to -- from the standpoint of CDK?

3          MS. KATZ:  Your Honor, this is Katherine Katz on

4    behalf of CDK.

5          As Ms. Wedgworth said, the plaintiffs have been

6    produced -- or the dealership plaintiffs have been producing

7    documents.

8          I just want to note for the record that those

9    documents were due, pursuant to the parties' agreement, on

10   November 21st, 2023.  As Ms. Wedgworth said, we have received

11   productions last week, this week, today.

12         We haven't had an opportunity to fully review the

13   productions we received this week.  We are seeing some

14   deficiencies in the prior production.

15         And with respect to the interrogatories they agreed

16   to produce, they have not yet produced any responses to those

17   interrogatories.

18         THE COURT:  Let me ask --

19         MS. WEDGWORTH:  Your Honor --

20         THE COURT:  Go ahead.

21         MS. WEDGWORTH:  Just on that point of interrogatory

22   responses, there is no deadline with regard to those.  So to

23   the extent there are any due, there is no deadline on them.

24   So we are not deficient on that at all.

25         THE COURT:  When were they served?

1           MS. WEDGWORTH:  Actually, they weren't -- I guess

2     you might say some were served in 2018.  Those we have to

3     update for what I would call legacy plaintiffs.

4           As to the newly added plaintiffs, they came

5     attached to the notice of 30(b)(6) deposition, which we say

6     is not applicable to the newly added claims.

7           MS. KATZ:  Your Honor, for CDK -- I'm sorry.

8           MS. WEDGWORTH:  I just have one final point on

9     that.

10          The notice of 30(b)(6) came in on December 11th --

11    I'm sorry -- December -- November 28th, I do believe.

12          THE COURT:  Okay.  So what would be the -- from

13    defendants' perspective, what's the trigger date on the

14    interrogatories?

15          MS. KATZ:  Your Honor, it was our understanding

16    that those would be updated by November 21st, 2023, the date

17    the plaintiffs filed their class certification dates.

18          To the extent it's their position that that wasn't

19    the deadline, we need those interrogatories in order to take

20    the depositions that we have noticed here.  Those issues are

21    central to class certification -- those issues in their

22    interrogatories, and they really frame up the depositions

23    here.  We haven't received any of those responses to date.

24    And there are, as I think you saw in the papers, 17

25    depositions that we are trying to schedule.

1    MS. WEDGWORTH:  Your Honor, if I may respond to

2    that?

3           THE COURT:  Sure.

4           MS. WEDGWORTH:  In the agreement that we have of

5    September 27, 2023, specifically it says:  Dealers agree to

6    serve updated responses to Interrogatories 2 and 3.  There is

7    no time requirement.  So we are not in any way deficient.

8           As to Ms. Katz's point that they are needed for the

9    depositions, I think, in fact, the depositions may resolve a

10   lot of the topics there that we would not even have to

11   respond.  They would be duplicative perhaps.

12          And to the extent the deposition will not be

13   duplicative of rogs 2 and 3, we would obviously update them

14   and respond to that as needed.

15          THE COURT:  Okay.  It just can't be that there is

16   no time frame for compliance with an interrogatory.  Maybe

17   none was actually set, but it can't be that interrogatories

18   are served and there is really no time frame in which they

19   have to be answered.

20          So we will need to set a date, and I will be

21   arbitrary about it, unless you want to agree.  Given the

22   holidays, I would say those interrogatories should all be

23   answered no later than January 5th.

24          MS. WEDGWORTH:  Well, actually, your Honor, as to

25   certain class reps, we didn't agree to do the rogs on some of

1    them.  Some of the class reps, we did.

2              THE COURT:  But you are telling me that for none of

3    them, are the answers actually due, because there is no due

4    date.

5              MS. WEDGWORTH:  That is correct.  That is correct.

6              THE COURT:  Okay.  I am saying, from my

7    perspective, that's not correct.  We have to have a due date.

8              So I'm going to tell you -- I will just say that

9    it's going to be January 5th that we have to have answers to

10   the interrogatories.

11             Now, with respect to the issue -- let's talk about

12   the depositions.

13             As I understand it, 17 new dealers have been

14   identified.  And the dispute is whether or not the

15   depositions of those witnesses can explore matters relating

16   to the Vendor Class.  Is that right?

17             MR. HO:  Good afternoon, your Honor.

18             Derek Ho for the Vendor Class.

19             Yes.  Our position -- just to be clear, the first

20   issue, the colloquy between -- Ms. Katz and Ms. Wedgworth was

21   just addressing about written discovery, that has nothing to

22   do with the Vendor Class.  There has been no deficiency in

23   discovery alleged of the Vendor Class.

24             And as to your Honor's question, yes, our position

25   is that any depositions of the new dealer named plaintiffs

1    should be limited to the Dealer Class case.  They are not

2    appropriate discovery on class certification in the vendor

3    case, which is the only issue left before that case is

4    remanded for trial.

5          So whatever happens between CDK and the dealers

6    with respect to these disputes that your Honor is hearing

7    about today, our position is that the existing briefing

8    schedule for the Vendor Class and CDK in Docket 1428 should

9    not be derailed.

10          THE COURT:  Okay.  Well, let me ask this question:

11   Assuming that the plaintiffs prevail on this issue and I bar

12   the -- bar CDK from asking any questions about the Vendor

13   Class, will you, Mr. Ho, not be attending those depositions

14   of the 17 witnesses?

15          MR. HO:  Correct, your Honor.

16          THE COURT:  And nobody from your office will be; is

17   that right?

18          MR. HO:  Correct, your Honor.

19          MS. KATZ:  Your Honor, may I respond on behalf of

20   CDK?

21          THE COURT:  Sure.

22          MS. KATZ:  Your Honor, there is a deposition

23   protocol order in this case that says that depositions in the

24   dealer case can be used in the vendor case and vice versa.

25   It is the way the parties have always operated in this case.

1          The vendors have cited dealer deposition testimony

2   at summary judgment.  They recently cited dealer deposition

3   testimony in their class certification papers.

4          The agreement to reopen discovery applied to all

5   parties.  In fact, the plaintiffs first sought additional

6   discovery in this case from CDK and Reynolds.

7          We then entered into an agreement that you saw

8   referenced in these motions, whereby all parties would update

9   discovery.

10          The dealers agreed to produce any new class

11   representatives for depositions, and the vendors never made

12   any suggestion that the deposition protocol order in this

13   case wouldn't apply through the course of negotiating that

14   agreement.

15          So it's CDK's position that those depositions

16   should go forward in full and that the testimony should be

17   available across cases.

18          The period for damages and, frankly, merits -- all

19   merits issues have been expanded significantly in this case,

20   your Honor.

21          Fact discovery, as the plaintiffs mentioned, closed

22   in 2019, and then summary judgment was briefed.  But since

23   summary judgment was briefed, almost four years have gone by.

24   And now both the vendors and the dealers claim that they are

25   entitled to damages for that four-year period up to present.

1    And the market has changed significantly in that

2    period.  It's CDK's position that there is no continuing

3    conspiracy or continuing damages that these plaintiffs are

4    entitled to.

5    So we are entitled to explore the changing market

6    dynamics, the changing agreements between the dealers and

7    their vendors that relate to class certification and other

8    issues in this case, given that both the vendors and dealers

9    are claiming extended damages periods.

10    These questions that we are going to ask at the

11    dealer deps directly impact vendor issues and impact our

12    depositions of the vendor's expert.  The vendor's expert

13    analysis relates to a lot of the issues teed up for these

14    depositions.

15    MR. HO:  Your Honor, may I respond?

16    This is Derek Ho from --

17    THE COURT:  Sure.  Sure.  Go ahead.

18    MR. HO:  Ms. Katz made basically two points.

19    One is that we had an agreement in the past that

20    depositions could be used across cases in the MDL.  But what

21    Ms. Katz is referring to is the deposition protocol order,

22    which applied only to the merits phase of the case.

23    How do we know that?  Because the Case Management

24    Order, Docket 166, didn't even contemplate that there would

25    be discovery in the class certification phase of the case.

1       So there was an agreement in the merits stage that

2   depositions would be used across cases.  But now we are in

3   class certification, and we never agreed that that would be

4   an appropriate protocol in the situation where you have two

5   separate motions for class certification, one by our clients,

6   who are the direct purchasers, and one by Ms. Wedgworth's

7   clients, who are the indirect purchasers.  They are separate

8   motions.  They raise separate issues.  And the dealer-named

9   plaintiffs' depositions, while they may be routine for the

10  Dealer Class case because they are the named plaintiffs, they

11  have nothing to do with the Vendor Class case.

12      I would also point out that with respect to the

13  relevance issue, which was the second point that Ms. Katz

14  raised, I would invite the Court to look at CDK's own

15  behavior with respect to depositions of dealership

16  plaintiffs.

17      In the merits phase of the case there were

18  25 dealership plaintiffs, of which 13 were named plaintiffs.

19  CDK chose to depose exactly two of those dealerships.  That

20  shows that these dealerships are not central to the merits.

21  They are barely even relevant to the merits.

22      Fast-forward to after the summary judgment ruling.

23  CDK never came to us and said, now that we are in the class

24  certification stage of the case, we want to subpoena

25  dealerships in order to develop our arguments as to why class

1    certification shouldn't be granted in the vendor case.

2            The whole notion of depositions of the dealership

3    plaintiffs only arose after Ms. Wedgworth filed her class

4    certification motion and put forward new dealership-named

5    plaintiffs in the Dealership Class case.

6            So all that's going on here, your Honor, is that

7    CDK is trying to leverage routine named plaintiff discovery

8    in the Dealership Class case in order to try to develop some

9    additional arguments in opposition to the Vendor Class case

10   and, frankly, simply to try to bog down the vendor class

11   certification motion, delay it, complicate it with all of

12   these discovery disputes that your Honor is hearing about.

13   And that simply isn't appropriate.

14           This is a long-running case.  We have been at this

15   for five years.  We have a very straightforward class

16   certification motion on behalf of direct purchasers in a

17   Section 1 Sherman Act conspiracy case, the kind of case that

18   the Supreme Court has said is the quintessential case for

19   class certification.

20           Our position is that we shouldn't be bogged down by

21   all this fighting between CDK and the dealers.  We should

22   move expeditiously toward a resolution of the class

23   certification motion and a remand for trial.

24           THE COURT:  What information will the dealer -- the

25   17 dealers have that is relevant to Vendor Class

14

1    certification?

2              MS. KATZ:  Thank you, your Honor.

3              This is Katherine Katz on behalf of CDK.

4              We have had discussions with the vendors.  They

5    specifically acknowledge in those discussions that there is

6    relevant information that these dealers have related to the

7    vendor case.  And I'll note that the vendors actually cited

8    dealer testimony in their class certification brief.

9              But I want to give you an example of exactly what

10   we are talking about here, your Honor.

11             Starting in 2019, CDK negotiated fee waivers with

12   certain of their dealers.  So those fee waivers applied to

13   the integration fees that CDK charged to vendors.

14             So when CDK negotiated these fee waivers in

15   particular, they were memorialized in contracts between CDK

16   and the dealers, and then those fee waivers applied to the

17   dealers' vendors.

18             So effectively, to the extent there is a fee

19   waiver, the vendors are not being charged integration fees in

20   some cases.  Sometimes those didn't end up being applied.

21   It's all over the map.

22             So to the extent there is a fee waiver and the

23   vendors were not charged integration fees, they have no claim

24   for overcharge or injury related to those purchases from 2019

25   forward.  And those are the types of issues we need to have

15

1     the ability to explore, given both sets of plaintiffs are

2     claiming damages now go forward from 2019 to the present.

3     And those are the exact type of issues that are central to

4     our class certification motion oppositions and also to our

5     arguments with respect to these new damages models that both

6     sets of plaintiffs are putting forward.

7                THE COURT:  Okay.  Of the 17 newly identified

8     dealers, how many of them are subject to these fee waivers

9     that then carry through to the vendors?

10               MS. KATZ:  To be honest, your Honor, we are trying

11    to desperately to figure this out.  We weren't aware of these

12    new reps, as you know, until weeks ago.  We didn't receive

13    the discovery from them until some of them -- some of this

14    discovery is coming in today, yesterday.

15               We are seeing -- you know, we know of at least

16    three from the digging we have been doing.  And some of this

17    involved having to go to our client to get the information

18    since the productions are deficient.  We don't know the exact

19    number, but we are working to figure that out as we receive

20    discovery.

21               THE COURT:  Okay.  And when you say that there is

22    references in the vendors' class papers -- I think you said

23    this -- to dealer testimony, are those references to any

24    dealers that do not have fee waivers?

25               MS. KATZ:  I am not entirely sure of the answer to

1    that question, your Honor.

2              Again, we are scrambling to figure out who had fee

3    waivers, who didn't have fee waivers, especially a

4    significant focus on the new reps we are trying to depose.

5              MS. WEDGWORTH:  Your Honor, if I may respond?

6              This is Peggy Wedgworth for the dealers.

7              Ms. Katz represents CDK.  CDK has the very

8    information she is discussing.  She can, in fact, find it out

9    herself with her own documents.  It's not necessary that our

10   documents confirm or deny that.  She has the information

11   herself.

12             MS. KATZ:  We are --

13             MR. HO:  Your Honor, this is Derek Ho -- I'm sorry.

14   Go ahead, Ms. Katz.

15             MS. KATZ:  That's okay, Mr. Ho.  Go ahead.

16             MR. HO:  Your Honor, it's Derek Ho from Kellogg

17   Hansen.

18             I just want to underscore one thing about this

19   issue of fee waivers.

20             CDK has argued that these fee waivers are relevant

21   to Dr. Israel's updated damages figures for the Vendor Class.

22             To begin, the quantification of damages is a

23   question for the merits.  It's not a question for class

24   certification for reasons that we set out in our motion for

25   class certification.

1       But more to the point for this hearing, we have not

2   disputed that when -- that these fee waivers exist.

3       In fact, Dr. Israel in his supplemental report

4   says, I see that there are more zeros in the sales data, the

5   data that shows what the prices were for the data integration

6   services.  And when I see a zero, I treat it as a zero.  In

7   other words, I treat it as zero integration fee.

8       So this question of whether there is a fee waiver

9   is not a question that's actually in dispute in the

10  litigation between us, at least, and CDK, because our expert

11  treats those as zero integration charges when he sees them in

12  the data.

13      So this isn't a question in dispute.  There is no

14  need for dealer discovery on this question.

15      THE COURT:  I'm just trying to assess the argument

16  Ms. Katz has made that, because there is a fee waiver, the

17  testimony from the dealers is relevant to vendor class

18  certification.

19      And one of the arguments she has made is that,

20  look, the Vendor Class itself has made reference to dealer

21  testimony, and it seems to me that that argument might have

22  some merit.  If it turns out that -- to the extent the

23  vendors rely on dealer testimony, they are doing so because

24  of this fee waiver issue.

25      I don't know the precise relationship between the

1    vendor class certification motion and any dealer testimony.

2             My ordinary inclination when people ask me for a

3    limitation on depositions is:  To actually draw a bright

4    line, a subject matter bright line, in a deposition from

5    30,000 feet is all but impossible.

6             What is possible to do is to say:  Tell how much

7    time these depositions are going to take.

8             When I hear how much time -- and I will ask

9    Ms. Katz that.  How much time do you expect these dealer

10   depositions will take?

11            MS. KATZ:  We were expecting that they would take

12   between five and seven hours, your Honor.

13            THE COURT:  Five and seven hours.

14            All right.  So what I ordinarily do in a situation

15   like this is say, I'm going to give you six hours, and you

16   just ask whatever you want.

17            And, yes, I know it's going to over -- you know,

18   might overstep the subject matter bounds, but at least then I

19   won't have that situation where I have to make the call:  Is

20   this related to vendor class certification?  Is it really not

21   related to vendor class certification?  Is it related more

22   directly to dealer class certification?  Those questions are

23   very hard to answer from outside when you get pulled into it.

24            The reason I hesitate to actually make that

25   determination in this case is the one that I explored at the

1    beginning, which was -- when I asked Mr. Ho, Would you really
2    not be attending these depositions at all? and he's telling
3    told me, No.
4           I find that a little dubious, but I'm going to take
5    his word for it, that this is so unrelated to the Vendor
6    Class certification that he would not even come to hear what
7    CDK has to ask the dealers.
8           Then I do wonder, what was it, Mr. Ho, that you
9    cited in your class certification papers on behalf of the
10   Vendor Class that relates to dealer testimony?
11          MR. HO:  Ms. Katz can point me to something
12   specific, but I am not aware of specific dealer testimony
13   being cited in our motion for class certification.
14          Dr. Israel's supplemental expert report is very
15   straightforward.  All he says is that the merits opinions
16   that he gave on the existence of the conspiracy, on antitrust
17   injury, and on damages are all based on common evidence and
18   therefore raise common questions for the class.  And then he
19   updates the damages figures based on the supplemental data
20   that was produced by the defendant.
21          Again, if there is testimony from the dealers that
22   he cites, it would have been only from his merits report from
23   back in 2019, nothing specific to the class certification
24   issue.
25          Again, Ms. Katz can point me to something specific

1    if she has something in mind.

2           MS. KATZ:  Your Honor, we have looked at these

3    cites.  Like I said, I don't have those in front of me at the

4    moment.  We are trying to pull that up.

5           But I will say, your Honor, that, on behalf of CDK,

6    we did attempt to compromise along the lines of what your

7    Honor suggested.  And we offered to the vendors that we would

8    go forward with the depositions.

9           And then, of course, if the testimony that is

10    elicited isn't relevant to their case, then it simply won't

11    come up in their case.

12           We tried to keep a schedule by making that offer a

13    couple of weeks ago.  We thought that made the most sense

14    because we don't have the deposition testimony right now.

15           Your Honor, as Mr. Ho said, they are -- the Vendor

16    Class is seeking damages from 2019 forward at this point,

17    including through updating their experts' entire model of

18    damages.

19           So we do need this new discovery in order to

20    challenge both the class -- Vendor Class on this fee waiver

21    issue but also the damages model itself.

22           These zeros that Mr. Ho is describing don't

23    actually tell the whole story with respect to fee waivers.

24    There are nuances to the fee waiver story, including when,

25    for instance, there was an agreed fee waiver that maybe

1    wasn't applied or applied in full.  But these are the types

2    of issues that we need to explore with these witnesses, and

3    that will be important in both rebutting their class

4    certification motion but also this new damages model that

5    they have.

6              So it simply can't be the case that we are

7    prevented from using this testimony to the extent relevant to

8    attack this new damages model they put forward.

9              MR. HO:  Your Honor, this is Derek Ho from Kellogg

10   Hansen.

11             May I respond?

12             THE COURT:  Sure.

13             MR. HO:  We have been looking at the class

14   certification motion and Dr. Israel's supplemental report.

15   We don't see any testimony from the dealer cited.  Again, if

16   Ms. Katz comes up with something, we can respond to that.

17             But I want to just underscore that what Ms. Katz is

18   basically saying is that we should be going backwards in this

19   case, not forwards.

20             Because things have happened since 2019, when

21   summary judgment was fully briefed, Ms. Katz is saying that

22   merits discovery should now be reopened.  And that is really

23   just a recipe for bogging this case down even further and for

24   preventing the final resolution of the few remaining issues

25   in this MDL.  We would urge the Court not to reopen merits

1   discovery and to permit the parties to proceed forward with

2   class certification and to have these cases remanded for

3   trial.

4         MS. KATZ:  Your Honor, may I respond briefly,

5   because we did find -- this is Katherine Katz on behalf of

6   CDK.  I know we are on the phone, so (unintelligible).  We

7   did find the citation we were referring to in our briefing.

8         So the vendors in their class certification

9   briefing incorporate various summary judgment statements,

10  Rule 56 statements, including Dockets 950, 977, and 1101, all

11  of which include dealer testimony.  That has been

12  incorporated into their class certification motion that way.

13        But, your Honor, at the end of the day, I hear

14  Mr. Ho saying that they want to move forward on simple issues

15  remaining in this case.  But, your Honor, the vendors and the

16  dealers have significantly complicated this case by seeking

17  ongoing damages for what they allege to be an ongoing

18  conspiracy for four years beyond the discovery cutoff.

19        They are adding hundreds of millions of dollars to

20  their damages claims in this case.  And their damages models

21  have been reworked to show that there are hundreds of

22  millions of dollars in additional damages that our client

23  owes.

24        And given the significance of that, we are entitled

25  to discovery into these issues:  The 2019 forward market,

1    agreements between dealers and CDK and Reynolds in that time

2    frame, and the impact of those agreements on vendor charges

3    and overcharges.

4            MS. WEDGWORTH:  Your Honor, this is Peggy

5    Wedgworth.  May I respond on behalf of dealers on the scope

6    of the deposition?

7            THE COURT:  Yes.

8            MS. WEDGWORTH:  Your Honor, the dealers agreed to,

9    in fact, produce newly added plaintiffs for class

10   certification depositions.  Dealers never agreed to any

11   merits discovery on class cert.  And had CDK indicated or

12   proposed or mentioned anywhere or at any time that they

13   planned to include merits discovery, I would not have agreed

14   to the stipulation that was signed in 1413.

15           So now for CDK to basically do somewhat of a

16   bait-and-switch where they say, we don't like the terms of

17   the stipulation that we signed, which is Docket 1413; to say,

18   we now need the term in there that we have merits discovery,

19   when everyone who signed that understood it was class

20   certification discovery -- to now allow CDK to go back in and

21   do merits discovery four and a half years later, summary

22   judgment later, *Daubert* later would reward CDK's failure to

23   negotiate the very term into this class certification

24   schedule we put forward.

25           THE COURT:  I am not reopening fact discovery.  The

24

1    deposition of the 17 witnesses can go forward.

2         What I am going to suggest is this:  I will impose

3    on the first three depositions a six-hour time limit.  I'm

4    not -- I won't impose on the first three of the

5    17 depositions a subject matter restriction.  That may mean

6    that we will have to have lawyers from Mr. Ho's offices at

7    the deposition just to listen and see what happens.

8         At the end of those three depositions, if it really

9    appears that there is significant information relating to the

10   dealer class -- I'm sorry -- relating to the Vendor Class

11   that is coming in through the dealers, we can revisit this.

12        But I don't want to reopen discovery -- merits

13   discovery.  This ought to be limited to the issues of class

14   -- I'm sorry -- of class certification for the Dealer Class.

15        And, again, if some of those questions really do

16   bleed into the issues that relate to vendor class

17   certification, it may be that we will expand this to all 17.

18        But for now, I'm just going to say, no subject

19   matter limitations for the first three depositions only, and

20   then I'm going to ask that you contact me again and tell me

21   what's going on.

22             MS. KATZ:  Thank you, your Honor.

23             MR. HO:  Thank you, your Honor.

24             MS. KATZ:  Can I get a clarification just with

25   respect to our motion to compel the deposition --

1      THE COURT:  Your motion to compel is granted with

2    respect to the interrogatory answers.  I'm going to direct

3    that those be responded to no later than the 5th of January.

4      Otherwise -- go ahead.  Go ahead, Ms. Katz.  What

5    other request did you have?

6      MS. KATZ:  Thank you.

7      On the depositions, it's our position that it would

8    be unfair and impossible to parse the deposition topics the

9    way Ms. Wedgworth is describing through her objections.  All

10   of these --

11     THE COURT:  That's why I'm going to allow the first

12   three depositions to proceed with no holds barred in that

13   regard.  I understand your position that it's not possible to

14   parse this way.  And I'm going to say, you don't have to

15   parse for the first three depositions.

16     MS. KATZ:  Understood.  Thank you, your Honor.

17     THE COURT:  All right.  And then the only other

18   issue we have is the time frame.

19     One of the arguments that's been made by CDK is

20   that CDK should be entitled to an additional four weeks

21   because -- in part, because -- well, of the very recent

22   document discovery that's been had.  And I would note in

23   addition that the interrogatories have yet been answered.

24     Mr. Ho argues it has nothing to do with the vendor

25   class, in any event.  So the briefing schedule on vendor

1    class certification should proceed as scheduled.

2            What's CDK's response on that issue?

3            MS. KATZ:  Your Honor, we agree with the vendors

4    that these witnesses should have been disclosed before so

5    that we could all maintain the current schedule.

6            We even tried to move forward after the 20 new reps

7    were disclosed.  But at this point, the schedule just isn't

8    feasible.  The dealers have proceeded in an unfair way here.

9            And our briefing on class certification has issues

10   that cross both plaintiff groups.  And we have been -- and

11   your Honor had ordered that we are entitled to file an

12   omnibus brief.

13           We think that both briefing schedules should be

14   maintained on the same schedule, including -- because there

15   is testimony from these dealer depositions, as I said, that

16   is relevant to vendor issues.  And we also need the dealer

17   deposition testimony, the dealer discovery, in order to

18   prepare for the deposition of Mr. Israel's vendor expert.

19           So all of these issues are intertwined is our

20   position, your Honor.

21           We have one class certification opposition brief.

22   The delays in discovery are unfortunate.  You provided your

23   summary judgment opinion five months ago.  So had we had

24   disclosure of these new reps months ago, this wouldn't be an

25   issue for the schedule.

27

1    But given where we stand, fairness requires that

2  this all be pushed by four weeks.  It's a modest amount of

3  time given all that has occurred over the past few weeks,

4  your Honor, including the fact that vendors just raised this

5  objection last week, filed their motion on Friday.  CDK has

6  been distracted from all of the efforts on class

7  certification to respond on these issues.

8    We just think fairness requires that we build in

9  some modest time -- a minimum four weeks of time, so that we

10  can proceed in an orderly fashion and have all the

11  information that we need to incorporate into our class

12  certification opposition and take productive depositions of

13  the experts.

14    THE COURT:  I don't like discovery extensions,

15  because I know that one of the things that happens in federal

16  court is an enormous amount of money and time is spent on

17  discovery, and it can really be prohibitive.  But I think the

18  four weeks that's being requested here is reasonable.

19    I will ask that you submit a revised schedule along

20  those lines.

21    MS. KATZ:  Thank you, your Honor.

22    THE COURT:  All right.  Thank you.

23    I will be hearing from you after the first three

24  depositions of the 17.

25    Anything further this afternoon?

1        MS. WEDGWORTH:  No, your Honor.  Thank you.

2        THE COURT:  All right.  Thank you.

3        MR. HO:  Not on behalf of the Vendor Class.  Thank

4  you, your Honor.

5        MS. KATZ:  Thank you, your Honor.

6     (An adjournment was taken at 3:41 p.m.)

7                  *   *   *   *   *

8  I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.

9

10  /s/ Frances Ward_____December 19, 2023._
    Official Court Reporter

11  F/j

12

13

14

15

16

17

18

19

20

21

22

23

24

25