# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE: DEALER MANAGEMENT
SYSTEMS ANTITRUST LITIGATION

**This Document Relates:**
**THE DEALERSHIP CLASS ACTION**

MDL No. 2817
Case No. 18-cv-00864

Hon. Rebecca R. Pallmeyer

PUBLIC REDACTED
VERSION

## DEALERSHIP CLASS PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

GLOSSARY OF TERMS ..................................................................................................................... x

PRELIMINARY STATEMENT ........................................................................................................... 1

BACKGROUND .................................................................................................................................. 2

   1.   Dealer Classes ....................................................................................................................... 2

   2.   Developments During the Class Period ................................................................................ 4

ARGUMENT ....................................................................................................................................... 6

   1.   CDK's Class Action Waiver Provision Is Unenforceable .................................................... 6

        A.  CDK's Class Action Waiver is Inapplicable ................................................................ 7

        B.  Rule 23 Bars CDK's Class Action Waiver ................................................................... 8

        C.  CDK Has Waived the Class Action Waiver .................................................................. 9

        D.  The Class Action Waiver Resulted from CDK's Improper Communication ................ 10

        E.  The Class Action Waiver is Unconscionable ............................................................... 11

   2.   Dr. Williams' Models Reliably Address Injury And Damages On A Classwide Basis ........... 12

        A.  Dr. Williams' Overcharge Models Establish Classwide Injury and Damages ............. 13

        B.  Dr. Williams' Pass-Through Models Establish Classwide Injury and Damages ......... 14

        C.  Common Impact Regressions Successfully Demonstrate Classwide Injury ................. 16

   3.   CDK's Arguments Concerning Proposed Dealer Classes Are Baseless .................................. 16

        A.  The Court Should Certify a Nationwide Class Under Illinois Antitrust Act ................. 17

        B.  Dealers' State Law Damages Class Should be Certified .............................................. 19

        C.  In the Alternative, Individual State Law Classes Should be Certified .......................... 25

        D.  The Injunctive Relief Class Should be Certified .......................................................... 28

   4.   The Proposed Class Period is Appropriate ............................................................................ 29

CONCLUSION .................................................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Nestle Purina Petcare Co.,*
   973 F. Supp. 2d 905 (N.D. Ill. 2013) ........................................................................ 18

*AlliedSignal, Inc. v. B.F. Goodrich Co.,*
   183 F.3d 568 (7th Cir. 1999) ...................................................................................... 8

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................. 25

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
   568 U.S. 455 (2013) ................................................................................................. 25

*AT&T Mobility v. Concepcion,*
   563 U.S. 333 (2011) ................................................................................................... 2

*Beach v. JP Morgan Chase Bank, Nat'l Ass'n,*
   2019 WL 2428631 (S.D.N.Y. 2019) ....................................................................... 26

*Brickstructures, Inc. v. Coaster Dynamix, Inc.,*
   952 F.3d 887 (7th Cir. 2020) .................................................................................... 10

*Carbajal v. Capital One, F.S.B.,*
   219 F.R.D. 437 (N.D. Ill. 2004) ............................................................................... 22

*Clark v. Bumbo Int'l. Trust,*
   2017 WL 3704825 (N.D. Ill. Aug. 28, 2017) .......................................................... 28

*Clayworth v. Pfizer,*
   233 P.3d 1066 (Cal. 2010) ........................................................................................ 21

*County of San Mateo v. CSL Ltd.,*
   2014 WL 4100602 (N.D. Cal. Aug. 20, 2014) ........................................................ 21

*Cruz v. Alexander,*
   477 F. Supp. 516 (S.D.N.Y. 1979) ............................................................................. 7

*Cunningham Charter Corp. v. Learjet, Inc.,*
   258 F.R.D. 320 (S.D. Ill. 2009) ............................................................................... 25

*Daly v. Glanbia Performance Nutrition, Inc.,*
   2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) .......................................................... 18

*Disposable Contact Lens Antitrust Litig.,*
   329 F.R.D. 336 (M.D. Fla. Dec. 4, 2018) ................................................................ 14

*Drug Mart Pharmacy Corp. v. Am. Home Prod. Corp.,*
  288 F. Supp .2d 325 (E.D.N.Y. Oct. 23, 2003) ...................................................... 30

*Esser v. McIntyre,*
  661 N.E.2d 1138 (Ill. 1996) ................................................................................. 17, 18

*Fischer v. Instant Checkmate LLC,*
  2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ........................................................... 7

*Hansen v. Country Mutual Ins. Co.,*
  2023 WL 6291629 (N.D. Ill. Sept. 25, 2023) ....................................................... 15

*Hess v. Inland Asphalt Co.,*
  1990 WL 51164 (E.D. Wash. Feb. 20, 1990) ...................................................... 29

*In Re Air Crash Disaster Near Chicago, Illinois, on May 25, 1979,*
  644 F.2d 524 (7th Cir. 1981) ............................................................................... 18

*In re Aluminum Warehousing Antitrust Litig.,*
  336 F.R.D. 5 (S.D.N.Y. 2020) .............................................................................. 16

*In re Automotive Parts Antitrust Litig.,*
  2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ................................................... 17

*In re Bridgestone/Firestone, Inc.,*
  288 F.3d 1012 (7th Cir. 2002) ............................................................................. 17

*In re Broiler Chicken Antitrust Litig.,*
  2018 WL 999899 (N.D. Ill. Feb. 21, 2018) ......................................................... 21

*In re Broiler Chicken Antitrust Litig.,*
  2022 WL 1720468 (N.D. Ill. May 27, 2022) .......................................... 14, 16, 20, 24

*In re Capacitors Antitrust Litig.,*
  2021 WL 5407452 (N.D. Cal. Nov. 18, 2021) ..................................................... 13

*In re Currency Conversion Fee Antitrust Litig.,*
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ............................................................. 11, 12

*In re Data Access Sys. Sec. Litig.,*
  103 F.R.D. 130 (D.N.J. 1984) .............................................................................. 30

*In re Flash Memory Antitrust Litig.,*
  2010 WL 2332081 (N.D. Cal. June 9, 2010) ....................................................... 15

*In re Fluidmaster, Inc., Water Connector Components Prod. Liability Litig.,*
  2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ................................................... 25, 26

*In re High-Tech Employee,*
    985 F. Supp. 2d 1167 (N.D. Cal. 2013) ............................................................ 26

*In re HIV Antitrust Litig.,*
    19-cv-02573-EMC (N.D. Cal. Sept. 27, 2022) ............................................ 22, 23, 26

*In re Korean Ramen Antitrust Litig.,*
    2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ...................................................... 14

*In re Lidoderm Antitrust Litig.,*
    2017 WL 679367 (N.D. Cal. Feb. 21, 2017) .................................................. 20, 23

*In re Linerboard Antitrust Litig.,*
    305 F.3d 145 (3d Cir. 2002) ............................................................................ 22

*In re Linerboard Antitrust Litig.,*
    504 F. Supp. 2d 38 (E.D. Pa. 2007) ................................................................ 29

*In re Liquid Aluminum Sulfate Antitrust Litig.,*
    2017 WL 3131977 (D.N.J. July 20, 2017) ........................................................ 24

*In re Marriott Int'l Customer Data Sec. Breach Litig.,*
    345 F.R.D. 137 (D. Md. 2023) ...................................................................... 9, 10

*In re Namenda Indirect Purchaser Antitrust Litig.,*
    2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022) .................................................. 22

*In re Namenda Indirect Purchaser Antitrust Litig.,*
    338 F.R.D. 527 (S.D.N.Y. 2021) ................................................................ 20, 22

*In re Nexium (Esomeprazole) Antitrust Litig.,*
    297 F.R.D. 168 (D. Mass. 2013),
    *aff'd,* 777 F.3d 9 (1st Cir. 2015) .................................................................. 20

*In re Niaspan Antitrust Litig.,*
    464 F.Supp.3d 678 (E.D. Pa. 2020) ................................................................ 20

*In re Packaged Ice Antitrust Litig.,*
    779 F. Supp. 2d 642 (E.D. Mich. 2011) .......................................................... 22

*In re Plastics Additives,*
    2010 WL 3431837 (E.D. Pa. Aug. 31, 2010) .................................................... 16

*In re Polyurethane Foam Antitrust Litig.,*
    314 F.R.D. 226 (N.D. Ohio 2014) .................................................................. 23

*In re Pork Antitrust Litig.,*
   2023 WL 2696497 (D. Minn. Mar 29, 2023) ................................................ 13, 16, 26
*In re Pork Antitrust Litig.,*
   665 F. Supp. 3d 967 (D. Minn. 2023) .................................................................. 22, 23

*In re Processed Eggs Prods. Antitrust Litig.,*
   312 F.R.D. 124 (E.D. Pa. 2015) ............................................................................. 15

*In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II),*
   2020 WL 5016922 (D.D.C. Aug. 25, 2020) ........................................................... 29

*In re Relafen Antitrust Litig.,*
   221 F.R.D. 260 (D. Mass. 2004) ............................................................................ 26

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,*
   335 F.R.D. 1 (E.D.N.Y. 2020) ......................................................................... 20, 24

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.,*
   2017 WL 4621777 (D. Mass. Oct. 16, 2017) ........................................................ 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   2014 WL 1395733 (N.D. Cal. Apr. 10, 2014) ......................................................... 8

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   267 F.R.D. 583 (N.D. Cal. 2010),
   *amended in part by* 2011 WL 3268649 (N.D. Cal. Jul. 28, 2011) ........................... 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
   2012 WL 6709621 (N.D. Cal. Dec. 26, 2012) ....................................................... 21

*In re Uber Techs., Inc., Passenger Sexual Assault Litig.,*
   2024 WL 41889 (JPML Jan. 4, 2024) ..................................................................... 9

*In re Urethane Antitrust Litig.,*
   768 F.3d 1245 (10th Cir. 2014) ............................................................................. 30

*In re Vitamins Antitrust Litig.,*
   259 F. Supp. 2d 1 (D.D.C. 2003) .......................................................................... 21

*In re Zetia (Ezetimibe) Antitrust Litig.,*
   2023 WL 3064462 (E.C. Va. Apr. 18, 2023) ......................................................... 21

*Ingersoll v. Klein,*
   262 N.E.2d 593 (Ill. 1970) .................................................................................... 18

*Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.,*
   660 F.3d 988 (7th Cir. 2011) .................................................................................. 9

*Kinkel v. Cingular Wireless, LLC,*
    828 N.E.2d 812 (Ill. App. Ct. 2005), aff'd, 857 N.E.2d 250 (Ill. 2006) ........................ 12

*Kinkel v. Cingular Wireless, LLC,*
    857 N.E.2d 250 (Ill. 2006) .............................................................................. 11, 12

*Krukas v. AARP, Inc.,*
    376 F. Supp. 3d 1 (D.D.C. 2019) ............................................................................ 19

*Lawson v. Grubhub, Inc.,*
    13 F.4th 908 (9th Cir. 2021) .................................................................................. 11

*Lorix v. Crompton Corp.,*
    736 N.W.2d 619 (Minn.2007) ................................................................................ 21

*Maher v. Int'l. Broth. of Elec. Workers/6th Dist.,*
    1991 WL 268657 (N.D. Ill. Dec. 3, 1991) .............................................................. 28

*Martrano v. Quizno's Franchise Co.,*
    2009 WL 1704469 (W.D. Pa. June 15, 2009) ............................................................ 9

*Matter of Rhone-Poulenc Rorer, Inc.,*
    51 F.3d 1293 (7th Cir. 1995) ................................................................................... 2

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012) ................................................................................. 23

*McGlenn v. Driveline Retail,*
    2021 WL 165121 (C.D. Ill. Jan. 19, 2021) ................................................................ 2

*Messner v. Northshore University HealthSystem,*
    669 F.3d 802 (7th Cir. 2012) ................................................................................. 25

*Micro Data Base Systems, Inc. v. Dharma Systems, Inc.,*
    148 F.3d 649 (7th Cir. 1998) ................................................................................. 19

*Miller UK Ltd. v. Caterpillar Inc.,*
    2017 WL 1196963 (N.D. Ill. Mar. 31, 2017) ........................................................... 19

*Morrison v. YTB Int'l, Inc.,*
    649 F.3d 533 (7th Cir. 2011) ................................................................................. 19

*Mouloki v. Epee,*
    262 F. Supp. 3d 684 (N.D. Ill. 2017) ..................................................................... 10

*Muir v. Nature's Bounty (DE), Inc.,*
    2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ............................................................. 20

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) .................................................................................................. 23

*Nelson v. Lusterstone Surfacing Co.*,
   605 N.W.2d 136 (Neb. 2000) ................................................................................................ 24

*Niiranen v. Carrier One, Inc.*,
   2022 WL 103722 (N.D. Ill. Jan. 11, 2022) ......................................................................... 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022),
   *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022) ............. 16

*Oliver v. American Express Co.*,
   2024 WL 100848 (E.D.N.Y. Jan. 9, 2024) ......................................................................... 15

*Paper Sys. Inc. v. Mitsubishi Corp.*,
   193 F.R.D. 601 (E.D. Wis. 2000) ........................................................................................ 27

*Pella Corp. v. Saltzman*,
   606 F.3d 391 (7th Cir. 2010) ................................................................................................ 26

*Piekarski v. Amedisys Ill., LLC*,
   4 F. Supp. 3d 952 (N.D. Ill. 2013) ...................................................................................... 10

*Pittway Corp. v. Lockheed Aircraft Corp.*,
   641 F.2d 524 (7th Cir. 1981) ................................................................................................ 18

*Ploss as Trustee for Harry Ploss Trust DTD 8/16/1993 v. Kraft Foods Group, Inc.*,
   431 F.Supp.3d 1003 (N.D. Ill. 2020) .................................................................................. 22

*Rhino Linings USA v. Rocky Mountain Rhino Lining*,
   62 P.3d 142 (Colo. 2003) ...................................................................................................... 24

*Robinson v. Virginia Coll. LLC*,
   2019 WL 1903405 (N.D. Ala. Apr. 29, 2019),
   *aff'd*, 788 F. App'x 697 (11th Cir. 2019) ............................................................................... 7

*S&S Forage & Equip. Co. v. Up N. Plastics*,
   2002 WL 31718409 (D. Minn. Nov. 21, 2002) ................................................................. 27

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009) .................................................................................... 25, 26

*Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................................................................ 9

*Sidibe v. Sutter Health*,
333 F.R.D. 463 (N.D. Cal. 2019) ................................................................. 3

*Siegel v. Shell Oil Co.*,
256 F.R.D. 580 (N.D. Ill. 2008) ......................................................... 18, 23

*Silverman v. Motorola, Inc.*,
259 F.R.D. 163 (N.D. Ill. 2009) ............................................................... 19

*Simmons v. Ford Motor Co.*,
592 F.Supp.3d 1262 (S.D. Fla. 2022) ...................................................... 10

*Sperry v. Crompton*,
863 N.E.2d 102 (N.Y. 2007) ..................................................................... 22

*State by Humphrey v. Phillip Morris, Inc.*,
551 N.W.2d 490 (Minn. 1996) ................................................................. 21

*Stromberg v. Qualcomm Inc.*,
14 F.4th 1059 (9th Cir. 2021) ........................................................... 17, 20

*Stuart v. State Farm Fire & Cas. Co.*,
910 F.3d 371 (8th Cir. 2018) .................................................................... 22

*Sultanis v. Champion Petfood USA, Inc.*
2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) ........................................... 26

*Tech Data Corp. v. AU Optronics Corp.*,
2012 WL 3236065 (N.D. Cal. Aug. 6, 2012) ............................................. 8

*U.S. v. Oregon State Medical Soc'y*,
343 U.S. 326 (1952) ................................................................................. 28

*U.S. v. U.S. Gypsum Co.*,
328 U.S. 422 (1978) ................................................................................. 30

*Veridian Credit Union v. Eddie Bauer*, LLC,
295 F. Supp. 3d 1140 (W.D. Wash. 2017) ............................................... 18

*W. Virginia Pipe Trades Health & Welfare Fund*,
325 F.R.D 280 (D. Minn. 2018) .............................................................. 30

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................... 26, 29

*Warren v. Meijer*,
2017 WL 3087724 (N.D. Ill. July 20, 2017) .............................................. 7

*Weiglus v. Ryobi Techs., Inc.,*
  2012 WL 1853090 (N.D. Ill. May 21, 2012) .................................................................. 23

*Wettersten v. Fox,*
  412 F. Supp. 3d 921 (N.D. Ill. 2019) ............................................................................ 7

*Wilk v. Am. Medical Ass'n,*
  895 F.2d 352 (7th Cir. 1990) ...................................................................................... 28

**Statutes**

740 Ill. Comp. Stat. Ann. 10/7 ........................................................................... 21, 23
9 U.S.C. § 1 .................................................................................................................. 8
Colo. Rev. Stat. Ann. § 6-1-113 ................................................................................. 22
Haw. Rev. Stat. § 480-13 ............................................................................................ 21
Iowa Code Ann. § 553.12 ........................................................................................... 22
Mich. Comp. Law § 445.778 ...................................................................................... 21
Minn. Stat. § 325D ...................................................................................................... 21
N.M. Stat. Ann. § 57-1-3 ............................................................................................ 21
N.Y. Gen. Bus. Law § 340 .................................................................................... 21, 22
Neb. Rev. Stat. § 59-821.01 ....................................................................................... 21
Utah Code § 76-10-3109 ............................................................................................ 21

**Other Authorities**

Restatement (Second) of Conflict of Laws (1971) ...................................................... 18

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 10

## GLOSSARY OF TERMS

| Term | Document |
|---|---|
| Conver Decl. | Declaration of Leigh Ann Conver attached as Ex. 11 to the Omnibus Declaration of Katherine R. Katz ("Katz Decl.") in Support of CDK Global, LLC's Opposition to Class Cert and Motions to Exclude Expert Opinions and Testimony (ECF No. 1460-11) (Feb. 23, 2024) |
| Dealer Br. | Memorandum of Law in Support of Dealership Class Plaintiffs' Motion for Class Certification (ECF No. 1425) (Nov. 21, 2023) |
| Dealer Mot. | Dealership Class Plaintiffs' Motion for Class Certification (ECF No. 1424) (Nov. 21, 2023) |
| Ex. __ | All Exhibits referenced herein are appended to the accompanying Wedgworth Decl. unless indicated otherwise. |
| Haider *Daubert* | Dealership Class Plaintiffs' Memorandum of Law in Support of Motion to Exclude the Expert Testimony of Dr. Laila Haider (Apr. 12, 2024) |
| Haider Rpt. | Expert Rebuttal Report of Dr. Laila Haider attached as Ex. 1 to the Katz Decl. (ECF No. 1460-1) (Feb. 23, 2024) |
| Katz Decl. | Omnibus Declaration of Katherine R. Katz in Support of CDK Global, LLC's Opposition to Class Cert and Motions to Exclude Expert Opinions and Testimony (ECF No. 1462) (Feb. 23, 2024) |
| Opp. | CDK Global, LLC's Opposition to Motions for Class Certification (ECF No. 1456) (Feb. 23, 2024) |
| Wedgworth Decl. | Omnibus Declaration of Peggy J. Wedgworth (Apr. 12, 2024) |
| Williams Rpt. | Expert Class Certification Report of Dr. Michael A. Williams, Ph.D. (ECF No. 1426) (Nov. 21, 2023) |
| Williams Reply Rpt. | Expert Class Certification Reply Report of Michael A. Williams, Ph.D. (Ex. A to Wedgworth Decl.) (Apr. 12, 2024) |
| Williams *Daubert* Opp. | Dealership Class Plaintiffs' Opposition to CDK's Motion to Exclude Testimony of Dr. Michael A. Williams, Ph.D. (Apr. 12, 2024) |
| ECF No. 64 | Parties (Corrected) Joint Initial Status Report (Mar. 15, 2018) |
| ECF No. 198 | Consolidated Class Action Complaint in Dealership Class Action (June 4, 2018) |
| ECF No. 427-2 | Settlement Agreement Between the Dealership Class and Reynolds (Oct. 23, 2018) |
| ECF No. 507 | Memorandum Opinion and Order on CDK's Motion to Dismiss Dealership Class Action (Jan. 25, 2019) |

| Term | Document |
|------|----------|
| ECF No. 522 | Defendant CDK Global, LLC's Answer and Affirmative And Addition Defenses to the Dealership Consolidated Class Action Complaint and CDK Global, LLC's Counterclaims (Feb. 22, 2019) |
| ECF No. 889-12 | Expert Report of Allan Stejskal (Aug. 26, 2019) |
| ECF No. 973 | CDK Memorandum In Support Of Summary Judgment Motion in Dealership Class Action (May 20, 2020) |
| ECF No. 1123 | CDK Reply Memorandum In Support Of Summary Judgment Motion in Dealership Class Action (Aug. 28, 2020) |
| ECF No. 1321 | Memorandum Opinion and Order on Daubert Motions (Jan. 21, 2022) |
| ECF No. 1381 | Memorandum Opinion and Order on Defendants' Motions for Summary Judgment (June 29, 2023) |
| ECF No. 1398 | CDK Brief in Support of Retaining the *Autoloop* Matter in the Northern District of Illinois for Trial (Aug. 18, 2023) |
| ECF No. 1410 | Memorandum of Law in Opposition to CDK's Motion for 28 U.S.C. §1292(B) Certification of a Portion of the Court's Order Denying Summary Judgment (Sept. 8, 2023) |

## PRELIMINARY STATEMENT

This Court should grant Dealership Class Plaintiffs (collectively, "Dealers" or "Plaintiffs") Motion for Class Certification (ECF No. 1424) because Dealers have satisfied all requirements of Fed. R. Civ. P. 23(a) and (b)(2) & (3). In response, CDK Global, LLC ("CDK") has cobbled together random arguments, often untethered to specific criticism of a Rule 23 factor. While CDK focuses primarily on predominance, and superficially addresses typicality and adequacy, it fails to address numerosity (Dealer Br. at 3-4), superiority (*id.* at 11-12), and ascertainability (*id.* at 12), thus conceding those points. Regardless, none of CDK's arguments undermine certification of the Dealer Classes.

*First,* CDK's class action waiver – inserted in some of its Master Services Agreements with Dealers *after this litigation commenced* – is unenforceable because it is inapplicable to the claims at issue; is barred by and conflicts with Rule 23; is waived due to CDK's failure to raise the issue until *six years* after this case began; is an improper communication with Class members; and is substantively unconscionable under Illinois law. *See* Sections 1.A-E below.

*Second,* Dealers' expert, Dr. Williams, employed reliable methodologies to demonstrate classwide injury and damages. CDK's allegation there is a "high number" of uninjured Class members is simply incorrect, based on faulty arithmetic and cherry-picked data. *See* Williams Reply Rpt. ¶¶ 135-44. Dr. Williams' overcharge model uses proper independent control variables and has been updated with additional data; his pass-through model's use of average pass-through rates is appropriate in indirect purchaser cases; and his common impact regression analysis demonstrates classwide impact using well-accepted practices. *See* Sections 2.A-C below.

*Third,* CDK's purported "fatal" conflict of repealer laws with Dealers' Nationwide Damages Class is moot if that Class is certified under the Illinois Antitrust Act. Relevant factors under the "most significant relationship test," including CDK's business locale and admissions regarding the import of Illinois to this case, shows that Illinois law should apply on a nationwide basis. *See* Section 3.A.

***Fourth,*** Minor differences in state laws are acceptable in antitrust, multi-state classes where there are common proof elements under federal law. CDK fails to show that *any* differences predominate over common questions of liability. Alternatively, individual state law damages classes – as to which CDK makes unsupported and meritless arguments – are appropriate. *See* Sections 3.B-C.

***Fifth***, the Court should reject CDK's efforts to limit the Class Period to the date of Reynolds' settlement or any other arbitrary period. The conspiracy is either ongoing or has ended but its effects are still felt by Dealers, both of which warrant not just the injunctive relief sought, but also an award of damages to the present. *See* Sections 3.D & 4.

***Lastly***, CDK alleges that the damage estimates, which were calculated by an expert economist and are supported by an avalanche of evidence – are an "overreach" by Dealers to increase settlement leverage.[1] This unwarranted attack should be rejected as a desperate attempt to avoid class certification.

## BACKGROUND

### 1. Dealer Classes

CDK employs a scattershot approach in its "Background" section, alleging that Dealers' exposure to DIS fees is a "highly individualized" inquiry undermining predominance, with DMS and DIS market "evolutions" the supposed lynchpin of its argument. CDK's allegations are baseless.

CDK contends (Opp. at 6) that Dealers purchased different apps, with different integration requirements, at different times, from different Vendors.[2] These variables, however, were considered

---

[1] CDK's cases (Opp. at 3-4) are unavailing. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 350 (2011) (Dealers' claims are anything but "questionable" having survived summary judgment); *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1299 (7th Cir. 1995) ("We do not want to be misunderstood as saying that class actions are bad because they place pressure on defendants to settle. That pressure is a reality, but it must be balanced against the undoubted benefits of the class action ….."); *McGlenn v. Driveline Retail*, 2021 WL 165121 at *9 (C.D. Ill. Jan. 19, 2021) (risk of huge liability associated with class definition which included large number of uninjured class members, but that is not the case here (*see* Sections 2.B-C)).

[2] CDK argues that Dr. Williams fails to account for the amount, type, and timing of DIS purchases. Opp. at 26. When CDK's expert looked at amount and type, it revealed huge overcharge amounts and thus

by Dr. Williams in analyzing the relevant markets. *See* Williams Rpt. ¶¶ 18, 21-52; Williams Reply Rpt. ¶¶ 6; 12-13. The same is true for CDK's criticism regarding differences in pass-through rates which are accounted for by Dr. Williams (Williams Rpt. ¶¶ 99-107; Williams Reply Rpt. § IV.B), and which were already found acceptable by this Court. *See* ECF No. 1321 at 54; ECF No. 1381 at 82 ("Williams's [indirect purchaser] methodology is sound enough for a jury.").[3] More importantly, these differences do not predominate over common injury to the Classes via common impact arising from the overcharges to DIS, and that resulting damages can be calculated on a classwide basis. *See* Williams Rpt. § IV.E; Williams Reply Rpt. § IV.C.

CDK also incorrectly suggests that OEMs often negotiated better prices for apps or covered data integration fees for Dealers by misconstruing multiple Dealers' testimony. For example, CDK cites (Opp. at 6) the testimony of



. *See* accompanying Wedgworth Decl. Ex. 1 at 319:1-15. CDK also cites (Opp. at 6) the testimony of

*See* Ex. 2 at 232:17-233:17 (emphasis added).

---

common impact to Dealers. *See* Haider Rpt. at Tables 24 & 25. Timing of DIS purchases refers to Dr. Haiders Fig. 24 which is misleading because: (1) Dr. Williams' use of the Fisher Price Index takes into account *all Vendors* in Haider's Fig. 24 (*see* Williams Reply Rpt. § IV.A.vii); and (2) Dr. Williams measures the *number of Dealers* who purchased from Vendors (*id. at* ¶¶ 55-59), as opposed to the *number of Vendors* (as Haider did), resulting in nearly all Dealers experiencing an overcharge. *Id.* at ¶¶ 76-84.

[3] *See also Sidibe v. Sutter Health*, 333 F.R.D. 463, 495 (N.D. Cal. 2019) ("Courts in indirect-purchaser antitrust cases have recognized the use of averaging in calculating passthrough rates where experts have shown the sound methodological steps through which they calculated their averages.").

██████████ l. *See* Ex. 3 at 220:7-223:10 ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████[4]

Finally, CDK attempts (Opp. at 6) to show alleged "variance" among the proposed Class representatives. *See* Opp. App'x A. For example, CDK includes whether a Dealer ever switched DMS's; the number of Vendors used by a Dealer; and the number of rooftops associated with a Dealer group. But such purported distinctions are simply about the Dealers and their businesses – factors all untethered to *any* class certification issue.

## 2. Developments During the Class Period

CDK wrongly alleges (Opp. at 6-9) that developments in the DMS and DIS markets since the Reynolds settlement[5] create individualized issues which undermine predominance.

**Competition in the DMS Market:** CDK argues that recent increased competition in the DMS market has diminished CDK's and Reynolds' market shares. *Id.* at 7. Not only is this assertion contradicted by evidence of stagnant competition in the DMS market since 2010 (*see* Williams Reply. Rpt. ¶¶ 235-40 & Fig. 39), but Dr. Williams' DID regression model also accounts for this factor (*see* Williams Reply Rpt. ¶¶ 78-80 & 89-90). Indeed, even CDK acknowledges that several DMS providers

---

[4] CDK's expert's evidence on this point (Opp. at 6 citing Haider Rpt. ¶¶ 69-70 n.146) is also misleading. For example, Dr. Haider cites ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

[5] CDK incorrectly suggests that the date of Dealers' settlement with Reynolds in October 2018 ended the conspiracy. *See, e.g.*, Opp. at 3, 36, 37-40. *See* discussion of this issue in Sections 3.D & 4 below.

since 2010 have attempted to gain market share. *See* Opp. App'x F █████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████.[6] Moreover, assuming *arguendo* that competition in the DMS market has

increased, then prices should be *lower than* but-for prices. Therefore, purported intensified competition

would imply that Dr. Williams' estimated overcharges are conservative. Williams Reply Rpt. ¶¶ 85-90.

**Enhanced Security Requirements:** CDK fails to explain how a 2018 update from the FTC

or CDK's own security guide for Dealers affects predominance. Opp. at 7. CDK is silent on how

these create any individualized questions for Dealers. In fact, ███████████████████████████

████████████████████████████ *see e.g.,* Ex. 8 at 183:12-19; Ex. 9 at 159:10-160:12) – which weighs in

favor of commonality on this issue.

**DIS Fee Waivers:** CDK alleges that starting in 2019 – six years into the conspiracy – it

launched "aggressive new initiatives" such as waiving data integration fees. Opp. at 7. CDK has since

ended this practice. Conver Decl. ¶ 34.[7] CDK argues that the fee waiver program ████████████

████████████ and varied among Dealers. *Id.* ¶¶ 26-29. But any variation among Class members is

entirely manufactured by CDK through its clumsy rollout of the initiative.[8] CDK also fails to show

---

[6] Importantly, both CDK and Dr. Haider ignore competition in the third-party application market, which, as Dr. Williams opines, is the important focus for his pass-through analysis because economic literature suggests that competitive markets lead to a pass-through of costs. *See* Williams Rpt. ¶¶ 138-45.

[7] CDK relies heavily on a declaration from CDK's Sr. Director of Data Services, Leigh Ann Conver. Her declaration includes many unsupported statements regarding ████████████████████████ Conver Decl. ¶ 22.

[8] The fee waiver program was not a global initiative; it was only offered to Dealers in order to retain them as DMS customers. *See* Ex. 10 ███████████████████████████████████████████████████



how fee waivers create predominance issues, simply stating: "Class members who did not have fee waivers face injuries different from those who did." *See* Opp. at 9. *See* Section 2.A below.

**Fortellis:** CDK touts Fortellis as another recent "major competitive change." Opp. at 8. However, it is a change Dealers have never heard of (*see* Ex. 4 at 171:2-5; Ex. 12 at 122:20-22; Ex. 8 at 174:25-175:13; Ex. 9 at 156:15-17; Ex. 13 at 257:20-21; Ex. 14 at 162:1-3) or do not understand (*see* Ex. 10 at 246:18-247:2; Ex. 3 at 210:1-212:1; Ex. 15 at 248:21-249:11; Ex. 11 at 254:12-256:8). Moreover, ██████████████████████████████████████████████████████ *See* Conver Decl. ¶ 37. Thus, Dealers still incur and pay monthly DIS fees related to 3PA.[9]

**Data Your Way:** "Data Your Way" (Opp. at 8-9) is nothing but a glorified way for Dealers to manually extract and import their DMS data (*see* Conver. Decl. ¶¶ 48-52) – it is not an adequate substitute for automated DIS. *See* Williams Rpt. ¶ 41 (citing Expert Report of Allan Stejskal[10] (ECF No. 889-12) ¶ 66) ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████ (*see* Ex. 11 at 241:23-242:1; 243:3-12; Ex. 5 at 137:5-14; Ex. 3 at 203:22-204:2; 207:22-208:2; Ex. 10 at 242:18-243:3, or never utilized it (*see* Ex. 15 at 246:7-10; Ex. 7 at 210:2-19).

## **ARGUMENT**

### 1. **CDK's Class Action Waiver Provision Is Unenforceable**

███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████

---

[9] CDK also criticizes Dealers' expert for not considering the impact of Fortellis on the DIS products offered by Defendants. Opp. at 8. *See* Williams Reply Rpt. ¶¶ 89, 92; *see also* Williams *Daubert* Opp. at Section I.D-E.

[10] CDK did not contest Stejskal's testimony concerning his "qualifications or his opinions concerning the DMS market, third party software applications, or data integration services." *See* ECF No. 1321 at 72 n.2.

CDK asserts that a class action waiver ("CAW") inserted in its Master Services Agreements ("MSA") with Dealers during this litigation precludes class certification. Opp. at 23-24 citing Katz Decl. Ex. 20. CDK's argument fails for the reasons set forth below.

### A. CDK's Class Action Waiver is Inapplicable

CDK states that, ██████████████████████████████████████████████████

██████████████████████████████████████████████ █ ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ █ ████

████████████████████████. *See Fischer v. Instant Checkmate LLC*, 2022 WL 971479, at *5 (N.D. Ill. Mar. 31, 2022). Moreover, CDK drafted the agreement (*see* Conver Decl. ¶ 8), so any ambiguities must be resolved against it. *See Wettersten v. Fox*, 412 F. Supp. 3d 921, 937 (N.D. Ill. 2019); *Warren v. Meijer*, 2017 WL 3087724, at *4 (N.D. Ill. July 20, 2017).[13]

Here, CDK's own brief establishes that Plaintiffs' claims ██████████████, and thus are *not*

---

[11] CDK relies on an employee's statement that █████████████████████████████████████ ███████████████ *See* Conver Decl. ¶ 8 (emphasis added). The Court should not rely on such "qualified and conditional" language. *See Cruz v. Alexander*, 477 F. Supp. 516, 526 (S.D.N.Y. 1979). CDK never quantifies the number of Dealers purportedly affected by this issue. ████████████████████████████████ ██████████████████ Dealers that signed CAWs are ascertainable and, if warranted (it is not), could be removed from the Class.

[12] ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ *See* Katz Decl. Ex. 36 at -151.

[13] ████████████████████████████████████████████████████████████████████ *See Robinson v. Virginia Coll. LLC*, 2019 WL 1903405, at *5 (N.D. Ala. Apr. 29, 2019), *aff'd*, 788 F. App'x 697 (11th Cir. 2019).



██████████████████████████████████████

██████████████████████████████████████

█████████████████ Opp. at 33-34. *Id.* at 33 █████████████████████

█████████████████████████████████████████

████████. CDK's admission destroys its argument. *See AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 573 (7th Cir. 1999) (denying arbitration: "AlliedSignal's antitrust claims do not arise under the [agreement]"; "B.F. Goodrich-Coltec could fully comply with the [agreement] and still cause AlliedSignal antitrust injury by charging uncompetitive prices."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 1395733, at *3 (N.D. Cal. Apr. 10, 2014) ("[O]nly claims arising out of the parties' business relationship – that is, claims based upon *purchases made directly from the defendant* – may be submitted to arbitration …. To the extent Gateway's claims are based on *indirect purchases* or co-conspirator liability, such claims are *not subject to arbitration*.") (emphasis added); *Tech Data Corp. v. AU Optronics Corp.*, 2012 WL 3236065, at *4 (N.D. Cal. Aug. 6, 2012) (agreements governing "'any action in any form arising out of' the agreements" …. "do not reach [plaintiff's] indirect-purchaser claims").[14]

Even if the CAWs apply to Dealers' claims here (they do not), ████████████████████

█████████████████████████████████████████

███████████" *In re TFT-LCD*, 2014 WL 1395733, at *2. As all CAWs CDK exhibited (*see* Opp. App'x A at 2) and potentially ███████████████████████████████ *after* the first complaint was filed, they do not apply.

### B. Rule 23 Bars CDK's Class Action Waiver

The CAW is also unenforceable because it conflicts with and is barred by Fed. R. Civ. P. 23.

---

[14] Cases denying arbitration despite the presence of arbitration clauses are instructive because, unlike a class action waiver, federal policy strongly *favors* arbitration, as reflected in the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq. See* ECF No. 507 at 11 (discussing "federal policy favoring arbitration").

*See Shady Grove Orthopedic Associates, P. A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010);[15] ECF No. 1381 at 93 (state law class action bars "preempted by Rule 23"); *In re Marriott*, 345 F.R.D. at 145 (rejecting CAW: "The parties cannot by agreement dictate that a district court must ignore the provisions of Rule 23 ….."); *Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *21 (W.D. Pa. June 15, 2009) ("[A]s a matter of federal law" CAW "ineffective to override the court's discretion to certify a class under Rule 23"); *see also In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, 2024 WL 41889, at *4 (J.P.M.L. Jan. 4, 2024). Rule 23 ensures an action will proceed as a class action if the court (not the defendant) so determines. CDK may not employ a CAW to conduct a broadside attack on a class action or categorically "opt out" Dealers from a certified class. And the CAW, if enforced, "could potentially force this and other courts to hold separate trials of dozens, or hundreds, or even thousands of cases involving extensively overlapping issues." *Martrano*, 2009 WL 1704469, at *21. CDK, by a purported waiver clause, may not undermine the Rules and disrupt the judicial process.

## C. CDK Has Waived the Class Action Waiver

CDK waived its CAW argument by waiting *six years* to first raise it. *See Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 994 (7th Cir. 2011) ("While several factors are considered in the waiver analysis, diligence or the lack thereof should weigh heavily in the decision.").

As early as November 2017, when CDK sought (MDL No. 2817, ECF No. 1-1) and obtained (MDL No. 2817, ECF No. 63) an MDL consolidation order, CDK not only failed to reserve any purported rights under the CAW,[16] but it pursued consolidated litigation in open conflict with the

---

[15] In *Shady Grove*, the Supreme Court blocked enforcement of a New York statutory class action bar. *See generally* ECF No. 1381 at 88-92. Like that statutory bar, the CAW fundamentally conflicts with Rule 23 and is invalid under the reasoning of both the plurality and concurring opinions in that decision. *See generally In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137, 144 (D. Md. 2023) (citing *Shady Grove*).

[16] In contrast, Reynolds reserved its rights to arbitration in its joint JPML filings with CDK. *See* MDL No. 2817, ECF 1-1 at 1. This Court found that CDK had waived its right to arbitrate by failing to reserve any such rights. *See* ECF 507 at 18-19. The same is true for the CAW.

9

CAW. *See* Katz Decl. Ex. 20 at 9 ██████████████████████████████

████████████████████████████████████████████████████████████████

██████████████ (emphasis added). *See In re Marriott*, 345 F.R.D. at 142-43 (defendant waived CAW

that "prohibit[ed] any collective handling of the claims, including by class action": "[a]n MDL is the

antithesis of handling each claim on an individual basis"). CDK's CAW also is an affirmative defense

that CDK failed to raise in its Answer (*see* ECF No. 522 at 235-38) and never pursued at the motion

to dismiss stage. *See Mouloki v. Epee*, 262 F. Supp. 3d 684, 694 (N.D. Ill. 2017) ("[a]s a general matter,

an affirmative defense that is not timely pleaded is waived.") (citation omitted); *Simmons v. Ford Motor

Co.*, 592 F.Supp.3d 1262, 1282 (S.D. Fla. 2022) ("[t]he enforceability of a procedural device, like a class

action waiver, should be resolved at [the pre-discovery] stage of the litigation by way of a motion to

dismiss.") (citation omitted); *cf. Niiranen v. Carrier One, Inc.*, 2022 WL 103722, at *1 (N.D. Ill. Jan. 11,

2022) (Opp. at 24 n.10) (defendant raised CAW issue in motion to dismiss).

 In May 2020, when CDK moved for summary judgment, one of its principal arguments was

that certain state laws precluded class actions. *See* ECF No. 973 at 27; ECF No. 1123 at 28. But CDK

made no mention of the CAW. Even if CDK had not previously waived its CAW, the time for CDK

to raise it was certainly no later than summary judgment when it argued for a class action bar. Having

failed to do so, CDK waived it. *See Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 892 (7th Cir.

2020). Therefore, the CAW is unenforceable and no bar to class certification.

### D. The Class Action Waiver Resulted from CDK's Improper Communication

 A court's authority over a defendant's communications with class members (*see* Fed. R. Civ.

P. 23(d)) has been used to bar or invalidate class action waivers, particularly where, as here, the

defendant and class members have an ongoing business relationship. *See Piekarski v. Amedisys Ill., LLC*,

4 F. Supp. 3d 952, 955 (N.D. Ill. 2013) ("where there is an ongoing business … relationship between

the class and the class opponent, communications may be inherently coercive.") (collecting cases). For

example, in *In re Currency Conversion Fee Antitrust Litig.*, the court refused to enforce arbitration clauses obtained *after litigation began*, concluding they were "potentially coercive and improper" because "the potential class consisted of cardholders who depended on defendants for their credit needs." 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005); *see id.* ("when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization.") (citations omitted).

CDK's conduct here demands the same result. Soon after this litigation started,[17] CDK began adding CAWs to its MSAs. *See* Conver Decl. ¶ 8. Where, as here, CDK Dealers rely on CDK for their "central nervous system" (*see* ECF 507 at 2), CDK's conduct is patently coercive. Indeed, given CDK's failure to notify Dealers about the litigation and the CAW's purported effect on their ability to participate, the conclusion is inescapable that CDK improperly "sought to eliminate putative class members' rights in this litigation." *Currency Conversion*, 361 F. Supp. 2d at 254 (collecting cases). CDK's conduct is egregious; accordingly, the CAW should not be enforced.

### E. The Class Action Waiver is Unconscionable

The CAW is also substantively unconscionable under Illinois law. *See Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250, 263 (Ill. 2006); Katz Decl. Ex. 20, ████████████████████████. *First*, ████████████████████████████████████████ (Opp. at 25), ███████ ████████████████████████.[18] Under both theories, the "cost of litigating" individually substantially exceeds the likely recovery. And this ignores litigation expenses. *E.g.*, Ex. 19 at 275:7-12

---

[17] The first Dealer case, *Teterboro Automall*, was filed on Oct. 19, 2017. *See* ECF No. 64 at Ex. A. CDK started adding CAWs to MSAs *after* those filings. *Compare* Ex. 16 (Landmark Ford MSA signed Oct. 13, 2017, lacking CAW) *with* Katz Decl. Ex. 37 at -891 (Tony Group MSA signed Dec. 21, 2017, containing CAW). *Lawson v. Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021) (Opp. at 1) is inapposite since the class action waiver in that case was instituted in contracts *long before* that case was filed.

[18] *See* ECF No. 973 at 2 ("millions of pages and scores of depositions have not yielded any evidence of an antitrust conspiracy").

(█████████████████████████████████████████).[19] *See Kinkel*, 857 N.E.2d at 278 (finding provision barring class arbitration unconscionable).

**Second**, the CAW is grossly "one-sided" – ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ *See Kinkel v. Cingular Wireless, LLC*, 828 N.E.2d 812, 818, 821 (Ill. App. Ct. 2005) ("A provision is substantively unconscionable if it is … one-sided" (citation omitted); "[C]ellular telephone service providers typically do not sue their customers in class action lawsuits."), *aff'd*, 857 N.E.2d 250 (Ill. 2006).

**Third,** CDK added the CAW to MSAs without disclosing that this class action was ongoing or its (purported) impact on Dealers, thereby depriving them of pertinent information. *See Currency Conversion*, 361 F. Supp. 2d at 251 ("A party acts unconscionably when it omits material information from a contract regarding the consumers' forfeiture of important protections.") (collecting cases).

## 2. Dr. Williams' Models Reliably Address Injury And Damages On A Classwide Basis

Contrary to CDK's contentions (Opp. at 10, 25-30), Dr. Williams' methodology – already subjected to *Daubert* motions and found admissible for the purpose of proving indirect damages (ECF No. 1321 at 46-47, 53-54) – is reliable to demonstrate classwide injury and damages. Dr. Williams presents models which measure overcharge to Vendors, pass-through to Dealers, and common impact to Class members. *See* Williams Rpt. §§ IV.C, D & E; Williams Reply Rpt. §§ IV.A, B, & C. *See also* App'x A annexed hereto responding to CDK's Opp. App'x C. The "averages" referred to by CDK (Opp. at 25, 27, 29) are a frequent and accepted facet of antitrust damages calculations, especially with respect to indirect purchaser plaintiffs.[20] *See* Williams *Daubert* Opp. filed contemporaneously herewith

---

[19] Dr. Haider is just one of the experts in this case. Others include CDK's experts, Murphy, Stroz and Whinston, and Plaintiffs' experts, Williams, Nielson and Stejskal.

[20] *See* Sections 2.B-C below and Williams *Daubert* Opp., Section II.B & III.

and incorporated in its entirety herein.

### A. Dr. Williams' Overcharge Models Establish Classwide Injury and Damages

CDK's criticism (Opp. at 26 & App'x C) of Dr. Williams' use of Fisher Price Indices ignores that the Court found this reliable for the purposes of Rule 702. ECF No. 1321 at 46-47. The use of a Fisher Price Index as a dependent variable in regression analysis is well within the range of accepted methodology in econometrics. *See In re Capacitors Antitrust Litig.*, 2021 WL 5407452, at *2-3 (N.D. Cal. Nov. 18, 2021) (rejecting argument of defense experts, including Dr. Haider, that analysis using Fisher Price Index not sufficiently reliable). ███████████████ (Opp. at 26), ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Williams Reply Rpt. ¶¶ 165-68.

Importantly, Dr. Williams' updated damages models ██████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████ ¶[1] *See* Williams Reply Rpt. § VIII.[22]

CDK's second criticism (Opp. at 26-27), ██████████████████████████ ████████████████████████████████████████████████████████. *See* Williams *Daubert* Opp. at Section I.A. ██████████████████████████████████████.

---

[21] ████████████████████████████████████████████████████████████ ██████████████████████████ *See* Williams Reply Rpt. ¶¶ 76-84. *In re Pork Antitrust Litig.*, 2023 WL 2696497, at *12 (D. Minn. Mar 29, 2023) (applying new variables to account for factors that "Dr. Haider believe[d] Dr. Williams erred in excluding" yielded almost the same results, confirming reliability).

[22] CDK's criticism that Dr. Williams' dummy variable model does not "control for time-varying economic factors" (Opp. at 26 n.14) is a red herring because ████████████████████████████ ██████████



*See* Williams *Daubert* Opp. at Section I.A; Williams Reply Rpt. ¶¶ 15-26. Neither Dealers nor CDK assert the fee waiver program as a part of the alleged antitrust activity, so "zero dollar transactions" caused by the fee waiver program are properly held constant for the calculation of damages. *See In re Disposable Contact Lens Antitrust.*, 329 F.R.D. 336, 386 (M.D. Fla. 2018) (finding no error in Dr. Williams' consideration of price reductions as a constant in both his "but-for" and actual world calculations); *see also* ECF No. 1321 at 52 ("it is up to the factfinder to decide which expert's 'but for' world is the more convincing one in consideration of the facts in the record.").[24] Therefore, even if included in Dr. Williams' models, CDK's fee waivers do not affect a correctly performed damages analysis. *See* Williams Reply Rpt. ¶¶ 15-26 & Table 1.

## B. Dr. Williams' Pass-Through Models Establish Classwide Injury and Damages

Each of CDK's criticisms of Dr. Williams' pass-through models relate generally to the selection or availability of data used. *See* Opp. at 27-28.[25] However, the analysis of subsets of direct purchaser data for pass-through analysis is commonly used to prove classwide injury. *See In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *19 (N.D. Ill. May 27, 2022) (certifying indirect purchaser class based on pass-through analysis of only 22 of 540 direct purchasers); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *19-20 (N.D. Cal. Jan. 19, 2017) (assumption of classwide 100% pass-through permitted despite varying pass-through rates and use of limited data). Dr. Williams'

---

23 ███████████████████████████████████████████

24 ███████████████████████████████████████████

25 ███████████ *See* Williams *Daubert* Opp. at Section II.B; *see also* Williams Rpt. ¶ 102; Williams Reply Rpt. ¶ 133.

calculation of pass-through, which CDK asserts should be calculated on the basis of individual Dealerships (Opp. at 27).



. *See* Williams Daubert Opp. at Section II.A. CDK's claim that

is based on the extremely flawed assumption that

Reply Rpt. ¶¶ 135-47.

CDK's citation (Opp. at 27) to *In re Processed Eggs Prods. Antitrust Litig.*, 312 F.R.D. 124, 159-60 (E.D. Pa. 2015) is also inapposite. The experts' model was rejected "not based on averaging as a rule, but because plaintiffs were seeking to certify multiple state classes without accounting for demonstrated regional variation in egg prices." *Oliver v. Am. Express Co.* 2024 WL 100848, at *10 (E.D.N.Y. Jan. 9, 2024). "[I]f antitrust plaintiffs can calculate damages on a class-wide basis, then they are not required to estimate the pass-through rate for each retailer." *Id.* DIS pricing is parallel on a state-by-state basis and Dr. Williams calculates classwide damages for each proposed Class. *See* Williams Rpt. ¶¶ 128-29, Table 5 & Fig. 8; Williams Reply Rpt. ¶¶ 282-86, Tables 14, 15, and A19.[28]

---

[26] *See e.g.* Ex. 17,



[27] Williams Reply Rpt. ¶¶ 135-47. *Hansen v. Country Mutual Ins. Co.*, 2023 WL 6291629 at *28 (N.D. Ill. Sept. 25, 2023) (Opp. at 28) in which plaintiff's *own* calculations revealed 44% uninjured class members, is therefore inapposite.

[28] Likewise, in *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *11 (N.D. Cal. June 9, 2010) (Opp. at 28), the rejected pass-through analysis included only one defendant, one OEM, and two resellers for a market with "thousands of differentiated products with diverse price points …. sold at hundreds of

### C. Common Impact Regressions Successfully Demonstrate Classwide Injury

Dr. Williams' common impact regression analysis is the same methodology used to successfully demonstrate common impact in at least nine different antitrust class action cases. *See* Williams *Daubert* Opp. Section III. Cases cited by CDK[29] are both inapplicable to the opinions offered by Dr. Williams and inconsistent with subsequent caselaw in this district. *See Broiler Chicken*, 2022 WL 1720468, at *15 (permitting averaging methodology).

Averaging assumptions are permissible because regression methodologies (as employed by Dr. Williams) are a "generally reliable econometric technique to control for the effects of the differences among class members and isolate the impact of the alleged antitrust violations on the prices paid by class members." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 677 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022); *see In re Pork Antitrust Litig.*, 2023 WL 2696497, at *23 (certifying class of indirect purchasers using Dr. Williams' methodology, despite similar criticism from Dr. Haider). CDK's assertion that this method is based on "unreliable and circular analyses" (Opp. at 30) reveals a misreading of Dr. Williams' method and the employment of unreliable analysis by CDK's proposed expert. *See* Williams *Daubert* Opp. at Section III; Haider *Daubert* at 3-6.

### 3. CDK's Arguments Concerning Proposed Dealer Classes Are Baseless

---

different retailer suppliers" where "[t]he price of any given product can vary across retailers, and differ even for a single retailer at a given point in time." These more difficult issues of proof are not present here. *See Broiler Chicken*, 2022 WL 1720468, at *18. The market for DIS is far less complicated, and CDK's own transactional data describes integration fees attributed to each Dealer, removed by only one step.

[29] The regressions employed by Dr Williams provide evidence of integration fees applied by CDK and Reynolds to multiple Vendors where Dealerships themselves are affected by integration fees paid indirectly through at least one but likely numerous applications. They do not simply calculate industry-wide averages for a single product as done in *In re Plastics Additives*, 2010 WL 3431837, at *15 (E.D. Pa. Aug. 31, 2010) (Opp. at 29). The facts of *In re Aluminum Warehousing Antitrust Litig.* (*id.* at 30) bear no resemblance to this case and suggest that plaintiffs' averaging mechanism must show that, "'more often than not, they can provide common answers.'" 336 F.R.D. at 57 (S.D.N.Y. 2020) (citing cases) (quoting *In re Petrobas Securities*, 862 F.3d 250, 273 (2d Cir. 2017).

### A. The Court Should Certify a Nationwide Class Under Illinois Antitrust Act

A nationwide class under the Illinois Antitrust Act ("IAA") is warranted because under Illinois law, choice-of-law determinations are made using the "most significant relationship test" and Illinois, unquestionably, has the "most significant relationship" here.[30] *See In re Automotive Parts Antitrust Litig.*, 2019 WL 7877812, at *2 (E.D. Mich. Dec. 20, 2019) ("In appropriate circumstances, based on applicable choice-of-law rules, the laws of a single 'repealer' state may also be applied on a nationwide basis to all purchasers, regardless of where they reside or where they made their purchases."). CDK has admitted that (i) it is headquartered in Illinois; (ii) its challenged conduct "arose" here; (iii) its decisions regarding access to its DMS were made in *this* District; and (iv) this District has a "greater relationship to the controversy" than the district where Authenticom (a principal target of the alleged conspiracy) is located.[31] *See* ECF No. 1398 at 7, 10, 13-14 (ignored by CDK).

The "most significant relationship test" weighs several factors: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996). It has also been stated that "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.* (citation omitted). Accordingly, all factors, not just the place of injury, come into play. *See In Re Air Crash Disaster Near Chicago, Illinois, on May 25,*

---

[30] *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) (Opp. at 30-32, 34) does not suggest a contrary result. That case, regarding allegedly defective tire sales, applied Indiana's *lex loci delicti* choice-of-law rule (288 F.3d at 1016) not the "most significant interest test." Similarly inapposite is *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1068 (9th Cir. 2021) (Opp. at 30, 33), which applied California's "governmental interest" rule.

[31] CDK made these representations in connection with its efforts to maintain the Vendor class action in this District. ECF No. 1398 at 13-15. Similarly, in connection with its MDL Petition, CDK urged transfer of the underlying cases to this District stating that, for each defendant, the alleged conspiracy presumably "was conceived and put into action" at its corporate headquarters. *See In re: Dealer Mgmt. Sys. Antitrust Litig.*, MDL 2817 (J.P.M.L. Dec. 5, 2017) ("MDL 2817"), ECF 38 at 7. *See generally* MDL 2817, ECF 1-1 at 2 (describing CDK's principal place of business in Hoffman Estates, Illinois.).

*1979*, 644 F.2d 594, 610 (7th Cir. 1981) ("application of choice of law rules is not a mechanical process of cranking various factors through a formula."); *Esser*, 661 N.E.2d at 1141 (applying Illinois law, even though plaintiff slipped on popcorn in Mexico); *Ingersoll v. Klein*, 262 N.E.2d 593, 594-95, 597 (Ill. 1970) (applying Illinois law even though drowning occurred in Indiana).

Here, the "place of injury" is not a Dealer's location and, in any event, is not dispositive. *See Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 527-29 (7th Cir. 1981) (although plaintiff paid to fix airplane defect in Illinois where it was based, "place of injury" was "indeterminate"; Georgia had "most significant relationship" because plane's designer and manufacturer had its principal place of business in Georgia where the "conduct causing the injury occurred", and that business was "intended to be protected" by Georgia law); *Veridian Credit Union v. Eddie Bauer*, LLC, 295 F. Supp. 3d 1140, 1155 (W.D. Wash. 2017) (data breach class action: "the place where the alleged conduct occurred which caused the injury is the most significant contact for purposes of the court's choice of law analysis ... The court gives greater weight to the location of the alleged wrongful conduct because the location of the alleged injury is in multiple states and is fortuitous."); Restatement (Second) of Conflict of Laws § 145 cmt. e (1971).[32]

Even if a state other than Illinois were deemed the "place of injury" for a Dealer, other relevant factors tip the balance in favor of Illinois law. For example, CDK admits that its challenged conduct occurred *in Illinois*, where it maintained its headquarters and principal place of business. *See, e.g.*, ECF 1398 at 10 (Decisions regarding data access policies "were … formulated or implemented … at the DMS providers' headquarters and principal places of business. For CDK, that was in the Northern

---

[32] Unlike CDK's cited cases (Opp. at 31-33), this case does not concern the purchase of physical product. *Cf. Daly v. Glanbia Performance Nutrition, Inc.*, 2023 WL 5647232, at *1 (N.D. Ill. Aug. 31, 2023) (plaintiff purchased Protein Bar at local store); *Adkins v. Nestle Purina Petcare Co.*, 973 F. Supp. 2d 905, 910, 915 (N.D. Ill. 2013) (plaintiffs purchased "treats and fed them to their pets in their home states" which causes injury); *Siegel*, 256 F.R.D. at 585 (consumer suit: "false representations were the 'price at the pumps,' which is where consumers received and relied upon these representations"). Instead, the claims here involve DIS or the ability for Vendors' applications to integrate with the DMS.

District of Illinois."); *id.* at 11 ("the CDK decisions that AutoLoop challenges would have been made at CDK's headquarters in the Northern District of Illinois") (internal citation omitted).[33] CDK's relationship with Dealers was centered in Illinois, as that is where the challenged conduct occurred. *See Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 31 (D.D.C. 2019) (applying District of Columbia law even though place of injury was Florida or Louisiana: "plaintiff's relationship with the defendants is centered in the District of Columbia, where the defendants have their primary place of business and where they make their policies and practices regarding advertising.").

CDK's MSA also featured an Illinois choice-of-law clause (*see* Opp. at 33, CDK's Ex. 20 § 11(B)) which supports treating Illinois as the center of the relationship. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 537 (7th Cir. 2011); *Micro Data Base Systems, Inc. v. Dharma Systems, Inc.*, 148 F.3d 649, 653 (7th Cir. 1998); *Miller UK Ltd. v. Caterpillar Inc.*, 2017 WL 1196963, at *7 (N.D. Ill. Mar. 31, 2017).

### B. Dealers' State Law Damages Class Should be Certified[34]

CDK argues that Dealers' State Law Damages Class[35] should not be certified because of alleged differences in state laws. Opp. at 34-36. However, multi-state, indirect purchaser class actions can have "some degree of variation" *Muir v. Nature's Bounty (DE), Inc.*, 2018 WL 3647115, at *8 (N.D.

---

[33] For Dealers not located in Illinois, the factor addressing the parties' domicile is a wash.

[34] CDK's App'x E cites purported variations in state laws, *almost all of which are not discussed in its brief.* For the Court's convenience, Dealers have consolidated their response to CDK's state law arguments in its opposition and App'x E in this reply. A more in-depth response is necessitated to App'x E because, for example, CDK should have raised some of these arguments in its motion to dismiss or at summary judgment (*e.g.*, **AK** and **WI** allegedly have "no indirect purchaser suits … in the first place", App'x E at 3). *See Silverman v. Motorola, Inc.*, 259 F.R.D. 163, 169 (N.D. Ill. 2009) ("Class certification is not a vehicle to raise issues that are properly raised in a Rule 12(b)(6) motion or during the summary judgment stage."). CDK is also incorrect about certain state law requirements (*e.g.* **CA, IL, MI and MN** do not provide a pass-on defense, App'x E at 4). And, Dealers have already prevailed on certain issues raised by CDK (*e.g.*, proof of intrastate conduct issue regarding **MS** (App'x E at 2). *See* ECF No. 1381 at 82-84 (summary judgment ruling in Dealers' favor on MS and several other states) clearly establishing that CDK exhibits anticompetitive behavior within those states, as it would with *all* of the states in this case.

[35] The Dealers' State Law Damages Class consists of "a single class of Dealerships seeking monetary relief in accordance with the laws of twenty-six separate jurisdictions." *See* Dealer Mot. at 2.

Ill. Aug. 1, 2018) (Pallmeyer, J.)) – especially in antitrust cases where certification is common. *See e.g.*, *Broiler Chicken*, 2022 WL 1720468, at *20 (rejecting defendants' arguments regarding state law variations and certifying indirect purchaser class under 31 states' laws).[36] Although CDK's App'x E notes certain purported "distinctions" between some state laws, CDK fails[37] to show that any of these are "material" and thus a basis to deny class certification. *See Namenda*, 338 F.R.D. at 571.

CDK ignores Dealers' appendices showing the harmonization of state antitrust and consumer protection laws with federal law under the Sherman Act and FTC Act. *See* Dealer Br. at App'x B & C. By failing to refute the proposition, CDK effectively concedes that proving the elements of federal antitrust law suffices to establish liability under Dealers' state antitrust and consumer protection laws. In *Namenda* the court undertook a detailed analysis of 25 states' antitrust laws and 14 states' consumer protection laws and determined that although minor differences existed between state laws, none were substantive enough to cause a predominance issue. *See* 338 F.R.D. at 571-75. The same analysis and ultimate conclusion are warranted here because that the purported differences alleged by CDK are not material and do not dominate over common questions regarding liability.

**Pass-On:** CDK argues that how states treat the pass-on defense should disrupt class treatment. Opp. at 34-35 and App'x E at 4. But courts have found this does not constitute a material difference and does not defeat class certification. *See e.g., Broiler Chicken*, 2022 WL 1720468 at *20; *see also In re Niaspan Antitrust Litig.*, 464 F.Supp.3d 678, 723 (E.D. Pa. 2020).

---

[36] *See also In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 571-77 (S.D.N.Y. 2021) (30 states); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 32-41 (E.D.N.Y. 2020) (32 states); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *27, 31 (N.D. Cal. Feb. 21, 2017) (17 states); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 175-76, 184 (D. Mass. 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015) (26 states); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *19-20, 22 (D. Mass. Oct. 16, 2017) (39 states); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608-14 (N.D. Cal. 2010), *amended in part by* 2011 WL 3268649 (N.D. Cal. Jul. 28, 2011) (23 states).

[37] *Stromberg*, 14 F.4th at 1064 (Opp. at 34) is inapposite. That case addressed certification of a single nationwide class under one state's law, *not* a class brought under the laws of 26 separate states. *See id.*

Moreover, CDK is incorrect in suggesting that California,[38] Illinois,[39] Michigan,[40] and Minnesota[41] provide a pass-on defense. *See* App'x E at 4. And states that arguably do provide a pass-on defense do not provide for one here.[42] Regardless, CDK is not entitled to the pass-on defense under *any* state law because Dealers are the end of the distribution chain for DIS and do not resell DIS to anyone. *See In re Broiler Chicken Antitrust Litig.*, 2018 WL 999899, at *5-6 (N.D. Ill. Feb. 21, 2018). Dealer testimony shows they **do not** pass on DIS fees, and Dr. Haider fails to rebut this. *See* Ex. 3 at 285:10-286:6; Ex. 14 at 214:11-24; Ex. 15 at 250:5-251:10; Ex. 11 at 259:11-260:14.

**Statutes of Limitations**: CDK wrongly argues (in one sentence) (Opp. at 35 citing App'x E) that some states' statutes of limitations differ from the Sherman Act. *See Namenda*, 338 F.R.D. at 573-

---

[38] **CA:** *see Clayworth v. Pfizer*, 233 P.3d 1066, 1086 (Cal. 2010) (pass-on defense precluded except "where multiple levels of purchasers have sued, or where a risk remains they may sue …."). *See also County of San Mateo v. CSL Ltd.*, 2014 WL 4100602, at *5 (N.D. Cal. Aug. 20, 2014) ("allowing a pass-on defense would hamper enforcement of California's antitrust laws …."). The narrow exception does not apply here where no pass-on occurred at the Dealer-to-consumer level. CDK's reliance on *TFT-LCD (Flat Panel) Antitrust Litig.*, (N.D. Cal. Dec. 26, 2012) is also misplaced because defendants were sued by multiple layers of *indirect* purchasers. *See id.* at *2.

[39] **IL:** does not indicate availability of a pass-on defense. Statute calls for courts to use discretion to avoid duplicative recovery by using *transfer and consolidation of actions*, but not by allowing defendant to assert pass-on defense. *See* 740 Ill. Comp. Stat. Ann. 10/7 § 7(2).

[40] **MI:** silent as to pass-on defense *and* avoiding duplicative recovery (*see* Mich. Comp. Law § 445.778(2)). *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 9 (D.D.C. 2003) (App'x E at 4) is distinguishable because it was a motion *in limine* brought by a *direct* purchaser to preclude evidence that it passed-on overcharge to its indirect purchaser customers.

[41] **MN:** intent is clear to "abolish the availability of the pass-on defense" by allowing indirect purchasers to sue. *See State by Humphrey v. Phillip Morris, Inc.*, 551 N.W.2d 490, 497 (Minn. 1996). CDK misinterprets *Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007)(App'x E at 4) which dealt with antitrust standing, not the availability of the pass-on defense. MN's antitrust statute is also silent on the pass-on defense: "*[i]n any subsequent action arising from the same conduct*, the court may take any steps necessary to avoid duplicative recovery against a defendant." *See* Minn. Stat. § 325D.57 (emphasis added).

[42] For example, CDK argues that **UT** (Utah Code § 76-10-3109(7)-(8)) provides a statutory presumption of pass on; however, like **HI** (Haw. Rev. Stat. § 480-13(c)(2)); **NE** (Neb. Rev. Stat. § 59-821.01(1)); **NM** (N.M. Stat. Ann. § 57-1-3) and **NY** (N.Y. Gen. Bus. Law § 340(6)), these states limit the pass-on defense to where there are additional parties, lower in the distribution chain, who would be able to recover damages for the alleged overcharge. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 3064462, at *4 (E.D. Va. Apr. 18, 2023) (finding pass-on defense under these statutes inapplicable to situation where no lower purchaser seeking recovery). Here, Dealers' customers are not entitled to recover DIS overcharges because they do not purchase DIS from Dealers and (even after five years of litigation) have not sued CDK.

74 (court admonished defendants for "simply rais[ing] the issue that different states may have different statutes of limitations under their antitrust laws" and concluded that such variations "are irrelevant to whether there exist common questions of law or fact that go to the heart of Defendants' potential liability as to the claims alleged."). This Court should similarly reject CDK's argument here.[43]

**Damages**: CDK next alleges (Opp. at 35 and App'x E) that some states' treatment of damages issues should preclude class certification.[44] CDK's main argument is that the laws differ on what is required for enhanced damages.[45] As an initial matter, CDK is incorrect about several states' rules on enhanced damages,[46] but more importantly, varying enhanced damages requirements do not warrant

---

[43] Differences in statutes of limitations do not defeat predominance. *See Ploss as Trustee for Harry Ploss Trust DTD 8/16/1993 v. Kraft Foods Group, Inc.*, 431 F.Supp.3d 1003, 1017 (N.D. Ill. 2020); Ex. 18, *In re HIV Antitrust Litig.*, 19-cv-02573-EMC, at 25 (N.D. Cal. Sept. 27, 2022) (differences "do[] not detract from the common issues on liability"); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002).

[44] CDK's App'x E raises the availability of offsets for duplicative recovery, but this provides no basis for denying certification "A class may be certified based on common issues 'even though other important matters will have to be tried separately, such as damages ....'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016)). "[A]ny differences in antitrust duplicative liability provisions are not material because most states have such provision, and the states' antitrust laws are harmonious with the Sherman [A]ct." *In re Pork Antitrust Litig.*, 665 F. Supp. 3d at 1009; *see also* Dealer Br. at App'x B & C (Dealers' state antitrust and consumer protection claims and harmonization provisions); *Carbajal v. Cap. One*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) ("[T]here is no reason to believe that [setoffs] would end up as a significant focus of the case; the setoff would likely involve nothing more than a mere calculation.").

[45] CDK's App'x E lists 17 states' (antitrust and/or consumer protection) legal requirements for enhanced damages (*e.g.*, no enhanced damages available, additional proof required for enhanced damages, enhanced damages are discretionary). However, in *In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022), the Court denied defendants' motion to decertify a class, including 15 of the 17 states CDK challenges here and found defendants' arguments "unpersuasive" regarding differing availability of enhanced damages, explaining: "[s]tate law requirements regarding enhanced damages are precisely the kind of variation that special verdict forms are designed to address." *Id.* at *11.

[46] Some of CDK's mistakes in its App'x E are inconsequential: **IA** only allows double (not treble) damages at the jury's discretion. *See* Iowa Code Ann. § 553.12. **CO** allows only actual damages for a class action. *See* Colo. Rev. Stat. Ann. § 6-1-113(2) (a)(III). App'x E at 1-2. Other CDK errors are significant. For example, CDK argues (App'x E at 1) that **NY**'s Donnelly Act has no enhanced damages. CDK is wrong and its citation to *Sperry v. Crompton*, 863 N.E.2d 102 (N.Y. 2007) is misplaced. The Donnelly Act allows treble damages. *See* NY Gen. Bus. § 340(5). CDK cites *Sperry* for the notion that seeking treble damages is disallowed as a "penalty" under New York's class action bar (§ 901(b)); however, as with other state class action bars in this case, it is inapplicable here in federal court. *See* ECF Nos. 1410 at 10 n.4; 1381 at 89 n.24; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 661 (E.D. Mich. 2011). CDK also incorrectly

denying certification. *See* Ex. 18, *In re HIV Antitrust Litig.*, 19-cv-02573-EMC at 25 (N.D. Cal. Sept. 27, 2022) (differences in state statutes concerning damages "can feasibly be managed at trial" and "does not overwhelm the common issues on liability.").[47] CDK's additional argument regarding the prejudicial nature of enhanced damages jury instructions can also be managed at trial.[48]

**Consumer Protection Laws**: CDK wrongly argues (Opp. at 35) that there are "stark" differences among Dealers' 11 state consumer protection claims. CDK cites *Siegel v. Shell Oil Co.*, 256 F.R.D. 580 (N.D. Ill. 2008), where the classes sought to be certified were brought under state law *exclusively* with no tether to common proof under federal law as is the case here. *See id.* at 582; *see also In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 1009 (D. Minn. 2023) (granting class certification for two separate indirect purchaser classes even where state consumer protection laws "differ greatly" because those differences "are irrelevant within the antitrust context because states provide a remedy under consumer protection laws for antitrust violations.")[49] "Reliance on federal law avoids the complications that can plague multi-state classes under state law." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Dealers have demonstrated, and CDK failed to address, that liability under each consumer protection law is established by common proof. *See* Dealer Br. at App'x C.

**Scope of Substantive Law:** CDK lists other supposed state law variations (App'x E at 2-3) – many of them are incorrect and none defeat predominance. For example:

---

argues (App'x E at 2) that under **IL** law, Dealers must prove "willful" conduct for treble damages; however, Dealers have asserted claims under 740 Ill. Comp. Stat. Ann. 10/7 § 3(1)(a) which, if proven, awards treble damages without the need to prove willful conduct. *See* 740 Ill. Comp. Stat. Ann. 10/7 § 7(2).

[47] *See also Lidoderm*, 2017 WL 679367, at *27 (differences concerning enhanced damages "do not appear to be material or even significant … [and] can be readily accommodated on a special verdict form or through other mechanisms routinely employed in complex litigations like this one."); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 292 (N.D. Ohio 2014) (same).

[48] CDK's citation to *Weiglus v. Ryobi Techs., Inc.,* 2012 WL 1853090 (N.D. Ill. May 21, 2012) (Opp. at 35) is misplaced. The issue there was whether evidence of defendants' financial status should be introduced at the liability phase, having nothing to do with state law enhanced damages provisions.

[49] CDK's citation to *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (Opp. at 35) is irrelevant because, unlike here, plaintiffs did not adequately address the variations in 44 state laws at issue.

- **CDK wrongly states that West Virginia's consumer protection statute does not cover antitrust conduct, specifically price-fixing.** App'x E at 2. CDK ignores the Court's earlier ruling (ECF No. 507 at 57-58) ("the WVCCPA prohibits anticompetitive conduct."). CDK's reliance on *In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) (App'x E at 2) is misplaced, as this Court noted that pre-2015 cases fail to account for the 2015 amendment to WV's statute as to its harmonization with the FTC Act. *See* ECF 507 at 57-58; Dealer Br. at App'x C at 8, ignored by CDK.

- **Scienter/Reliance is a non-issue that does not affect predominance.** CDK claims that several consumer protection laws have a scienter requirement. App'x E at 2-3. But scienter (like reliance) is irrelevant for the antitrust conspiracy here. *See Broiler Chicken*, 2022 WL 1720468, at *20 ("[T]he differences in consumer protection laws concerning reliance and intent are simply not relevant to a price-fixing claim."); *In re Restasis*, 335 F.R.D. at 38 (E.D.N.Y. 2020) ("the inclusion of a single jury question as to whether defendant possessed the requisite scienter would not defeat predominance") (citation omitted). In any event, Dealers have alleged CDK "knowingly" engaged in the illegal acts[50] and if the Court so requires, scienter/reliance questions could be added to the jury verdict form.

- **The "public interest" factor of Colorado and Nebraska statutes is satisfied and these are not "material differences."** Unlike cases addressing "a purely private wrong" such as a breach of contract (*see Rhino Linings USA v. Rocky Mountain Rhino Lining*, 62 P.3d 142, 144 (Colo. 2003)) (citation omitted) (CDK App'x E at 3) or "transactions in the context of flea markets or garage sales" (*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 142 (Neb. 2000) (App'x E at 3), this case vindicates the public interest. *See* 605 N.W.2d at 142 (NCPA was enacted as "an antitrust measure"). And under the CCPA, Dealers seek relief on behalf of themselves and others who are "actual or potential consumers" of CDK's "goods, services or other property." 62 P.3d at 149; *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *26 (D.N.J. July 20, 2017) (antitrust plaintiff satisfied CCPA).

**Indirect Purchaser Suits:** Lastly, under the guise of alleging another "variation," CDK argues

Alaska[51] and Wisconsin[52] do not permit indirect purchaser suits (Opp. App'x E at 3), but CDK's cited

cases do not involve denial of class certification of a multi-state class based on that argument. *Id.*

Moreover, CDK failed to raise this argument for these states in its 12(b)(6) or summary judgment

---

[50] *See* Compl. (ECF No. 198) at ¶ 571 (**CO**); ¶ 645 (**NV**); ¶ 657 (**NH**); ¶ 677 (**NM**); ¶ 720 (**WV**) ("Defendants have acted unlawfully by: (1) knowingly conspiring, contracting and or agreeing to restrain trade ….").

[51] *See* Dealer Br., App'x C at 1 (citing *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 2022 WL 1470272, at *5 (E.D. Pa. May 10, 2022) – ignored by CDK).

[52] *See* Dealer Br., App'x C at 9 (citing *Ín re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp.3d at 252 – also ignored by CDK).

motions. Accordingly, the Court should disregard CDK's inclusion of this issue on this basis alone.[53]

\* \* \* \*

The entirety of CDK's argument is premised on trivial (often incorrect) differences in state laws. Despite those differences, predominance is satisfied here, which is "readily met in certain cases alleging ... violations of the antitrust laws," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), and a single 26-state class should be certified.[54] Alternatively, the Court may certify 26 separate classes (*see* Dealer Mot. at 2); or refine the class definition (*see Messner v. Northshore University HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (citing cases)) and create subclasses based on groupings of certain states. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009) ("Courts have created subclasses to manage any potential conflicts among different state's laws.").

### C. In the Alternative, Individual State Law Classes Should be Certified

CDK advances meritless arguments (Opp. at 36-37) regarding Dealers' alternative request for certification of 26 individual State Law Classes. As shown below, these arguments should be rejected.

**States Without a Proposed Class Representative:** Although named Class representatives are not currently proposed for nine states,[55] as noted by Dealers, "the claims of the current and proposed named representatives … parallel those of the unrepresented states so that success on the merits of the represented states will dictate success on the merits of the unrepresented states." Dealer

---

[53] *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citation omitted); *see also supra* n.34.

[54] For its predominance argument (Opp. at 36), CDK cites two inapposite cases: *In re Fluidmaster, Inc., Water Connector Components Prod. Liability Litig.*, 2017 WL 1196990, at \*54 (N.D. Ill. Mar. 31, 2017) and *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 323-33 (S.D. Ill. 2009). In *Fluidmaster* (a products liability case), plaintiffs made no attempt to show predominance in the context of a 50-state consumer protection statute nationwide class. Here, Dealers bring claims under 11 states' consumer protection statutes. In *Cunningham* (another products liability case), the court found predominance unsatisfied where plaintiffs who were alleging a nationwide class did not endeavor to conduct any choice of law or conflict of law analysis and failed essential elements of those claims nonetheless.

[55] These states are **AK, CO, IA, ME, NH, RI, SD, UT** and **WI**. Dealer Mot. at 2 n.3.

Mot. at 2 n.3 citing *In re Pork Antitrust Litig.*, 2023 WL 2696497, at *17-18.[56] CDK ignores caselaw (including from this Court) that class representatives from each state are not required. *See* Dealer Br. at 6-7 (citing cases). CDK's two cases cited in alleged support (Opp. at 36) have no bearing here – *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) and *Beach v. JP Morgan Chase Bank, Nat'l Ass'n*, 2019 WL 2428631, at *6 (S.D.N.Y. 2019) involved named plaintiffs who were not proper class representatives, not a situation where a class representative was required for every state.

**CDK and Reynolds Purchases:** CDK asserts (Opp. at 36) that typicality issues arise for 14 states because there is not a proposed Class representative who used *both* CDK's and Reynolds' DMS.[57] CDK's sole case in support, *In re Fluidmaster*, 2017 WL 1196990, at *49, is an inapposite design defect case in which putative class representatives asserting one defect could not represent absent class members claiming a different defect. In a products liability case, like *Fluidmaster,* separate class representatives may be required where classes are based on different injuries under different theories; but here, drawing a distinction based on a Dealer's DMS provider (as CDK suggests) is unwarranted because Defendants engaged in a joint conspiracy to inflate DIS prices which affected all Class members regardless of whether a Dealer used CDK, Reynolds, or both. *See e.g., In re High-Tech Employee*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (court certified class of employees of six defendants finding typicality was met because of the existence of a single conspiracy, stating "[i]n this case, all class members, regardless of their individual employers, allege the same injuries arising from common

---

[56] *See also Saltzman*, 257 F.R.D. at 480, 487 (certifying six state subclasses with class representatives from two states); *Pella Corp. v. Saltzman*, 606 F.3d 391, 396 (7th Cir. 2010) (per curiam) (affirming same and noting "nearly identical elements" in state laws); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267-69 (D. Mass. 2004) (certifying plaintiffs who purchased drug in certain states to represent class members who purchased in other states); Ex. 18 at 10 ("'[i]f the laws are similar enough, or if they can be grouped into a small number of categories with named plaintiffs representing each category, it may be unnecessary to have a named plaintiff from every state.'" (quoting *Sultanis v. Champion Petfood USA, Inc.* 2021 WL 3373934 at *6 (N.D. Cal. Aug. 3, 2021).

[57] CDK refers to three states as having representatives for both CDK and Reynolds purchases (Opp. at 36), but CDK's App'x A correctly states that *four* states (CA, NY, NM *and AZ*) have such representatives.

conduct …"); *see also* Dealer Br. at 5-6 (Dealers' typicality argument/cases unchallenged by CDK). CDK attempts to muddy the waters further by throwing in a vague reference to the Reynolds' settlement and CDK's post-2019 initiatives (Opp. at 36); but as discussed herein, these are baseless arguments and, accordingly, do not create typicality issues.

**California Class Representative:** CDK makes a two-sentence adequacy challenge (Opp. at 36-37) against GSM Auto Group ("GSM"), citing the sale of its California dealerships during this litigation. CDK relies on an inapposite case, *S&S Forage & Equip. Co. v. Up N. Plastics*, 2002 WL 31718409, at *3 (D. Minn. Nov. 21, 2002), which involved a *sole* class representative who exited the silage bag industry *altogether*; the lawsuit thus reflected "plaintiff's entire business." *Id.* Here, GSM's principal, ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████ More importantly, GSM is an adequate Class representative because it had purchases *during the Class Period* and there is no concern it will not vigorously represent the Class. *See Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 609-10 (E.D. Wis. 2000) (finding adequate one class representative with purchases only during part of class period that dissolved *prior* to complaint being filed – former owner was aware of the "essential aspects of the litigation", and "there is no requirement that it have purchased from defendants throughout the entire class period"). Another representative in that case was also found adequate despite the sale of its interest because there was no "genuine worry that it would not vigorously represent the class." *Id.* at 610.

Here, GSM was a Reynolds *and* CDK Dealer during the Class Period (*see* Opp. App'x A) and, as Mr. Gunderson's testimony shows, he is familiar with the issues in this lawsuit and GSM's responsibilities as a Class representative. [58] GSM's interests are fully aligned with those of other Class

---

[58] *See, e.g.,* Ex. 7 at 71:15-19 ███████████████████████████████████████████
████████████████████████████████████████████████████████████████ 62:23-63:1

members and it is an adequate representative.

### D. The Injunctive Relief Class Should be Certified

CDK opposes Dealers' Rule 23(b)(2) class, claiming it is not "clear what injunctive relief is sought," (Opp. at 37) but there is no lack of clarity.[59] CDK also suggests that "changed circumstances", such as the Reynolds settlement and CDK initiatives, vitiate injunctive relief. *Id.* To the contrary, the challenged conduct and its effects persist to this day, warranting injunctive relief. As established by this Court "a jury could reasonably conclude that CDK conspired with Reynolds," *see* ECF No. 1381 at 57, and *nothing* occurring before or since that ruling – including the Reynolds settlement and CDK's "revamped" DIS offerings (Opp. at 37) – proves that the conspiracy terminated. *Wilk v. Am. Medical Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990) ("Courts require 'clear proof' that an unlawful practice has been abandoned") (quoting *U.S. v. Oregon State Medical Soc'y*, 343 U.S. 326, 333 (1952)).

Because the challenged conduct and its effects persist, injunctive relief is appropriate.[60] Simply put, CDK is still charging data integration fees. *See* Conver Decl. ¶ 37 ("CDK *plans to sunset* 3PA by



*See also* 25:14-16; 47:6-21; 51:8-20; 52:7-11; 54:17-20; 55:14-17; 57:1-4; 64:16-23; 65:10-66:6; 70:5-14; 90:18-22; 18:7-10; 26:2-16; 30:6-8; 46:16-22; 85:1-23; 87:10-88:15; 90:3-12; 92:1-18; 94:9-20; 101:16-23; 102:6-17.

[59] Dealers seek "final injunctive relief against CDK's ongoing anticompetitive conduct" (Dealer Br. at 9), including an order permanently enjoining CDK from "continuing, maintaining or renewing the contract, combination or conspiracy" alleged in this action, and requiring it "to take affirmative steps to dissipate the effects of the violation." ECF No. 198, Compl., Prayer for Relief, ¶ (g).

[60] CDK's cases are unpersuasive. Opp. at 37. In *Clark v. Bumbo Int'l. Trust*, 2017 WL 3704825 (N.D. Ill. Aug. 28, 2017) the court found injunctive relief moot in the face of overwhelming evidence that the challenged conduct had ceased and was unlikely to resume. The same is true for *Maher v. Int'l. Broth. of Elec. Workers/6th Dist.*, 1991 WL 268657 (N.D. Ill. Dec. 3, 1991), where the program being challenged was completely terminated. Here, CDK continues to charge integration fees to Dealers.

the end of 2024.") (emphasis added). 

█████ Williams Reply Rpt. ¶ 160 and § IV.B. Neither of CDK's initiatives (Fortellis or "Data Your Way") have been embraced by or improved Dealers' access to their data. *See supra* "Background" at p. 6. CDK should be permanently enjoined from continuing its unlawful conduct, including charging integration fees; otherwise, both CDK and Reynolds will continue to bear the fruit of the challenged conduct, and the damage to Dealers will continue. *See Wilk*, 895 F.2d at 366 (affirming injunction where antitrust conspiracy, although terminated, had "lingering effects").

### 4. The Proposed Class Period is Appropriate

The Court should reject CDK's request (Opp. at 37-40) to limit the Class Period.[61] A proper class period includes the full period "during which plaintiffs allege that the prices of the purchases in question were inflated due to anticompetitive behavior." *In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38, 47 (E.D. Pa. 2007). Even a terminated conspiracy can cause damages to the class. *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2020 WL 5016922, at *24 (D.D.C. Aug. 25, 2020) ("lingering effects of a completed conspiracy may be remediated upon successful proof of the underlying anticompetitive conduct") (collecting cases).[62]

Defendants point to nothing that eliminated the inflated prices (or, for that matter, the conspiracy itself). The Reynolds' settlement did not terminate the conspiracy. "To withdraw from a

---

[61] To the extent CDK's argument is based on "predominance" (Opp. at 39), it does not apply to the Injunctive Relief Class under Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 362-63.

[62] *See also Wilk*, 895 F.2d at 366 (affirming injunction where antitrust conspiracy, although terminated, had "lingering effects"); *Hess v. Inland Asphalt Co.*, 1990 WL 51164, at *10 (E.D. Wash. Feb. 20, 1990) ("Should plaintiffs be able to prove the existence of a conspiracy or concerted action that resulted in inflating prices …, they certainly can recover damages for [the lingering effects] of such injury.").

conspiracy, a defendant must show '[a]ffirmative acts inconsistent with the object of the conspiracy,' …." *Drug Mart Pharmacy Corp. v. Am. Home Prod. Corp.*, 288 F. Supp. 2d 325, 328-29 (E.D.N.Y. Oct. 23, 2003) (quoting *U.S. v. U.S. Gypsum Co.*, 328 U.S. 422, 464–65 (1978)). Here, Reynolds never agreed to end the conspiracy,[63] and the settlement does not enjoin Reynolds' conduct. *See* ECF No. 427-2.[64] In any event, as Dr. Williams has showed, inflated prices are still being charged notwithstanding the Reynolds settlement. Likewise, CDK initiatives, including fee waivers, have not eliminated the inflated prices; indeed, the vast majority of Dealers still pay inflated DIS fees due to the conspiracy. *See* Williams Rpt. §§ IV.E.i, ii & vii and Tables 6 & 7; Williams Reply Rpt. §§ IV.A.xiii & VIII. *See also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) (affirming class with expanded period: "a district court must admit expert testimony as long as it is based on a reliable methodology. It is then for the jury to evaluate the reliability of the underlying data, assumptions and conclusions."); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J. 1984) ("doubts regarding [factual issues] should be resolved in favor of extending the class period."); *accord W. Virginia Pipe Trades Health & Welfare Fund*, 325 F.R.D 280, 294 (D. Minn. 2018).

## **CONCLUSION**

For all of the foregoing reasons, as well as those in Dealers' opening brief, Dealers respectfully request that their Motion for Class Certification be granted in its entirety.

---

[63] CDK wrongly relies on a summary judgment ruling addressing a *different* settlement. Opp. at 38 (citing ECF 1381). Moreover, the party there, MVSC, waived the argument by not responding to it. *See* ECF 1381 at 125 ("Reynolds asserts that MVSC cannot claim damages suffered after MVSC settled with CDK in October 2019, and *MVSC has not responded to this argument*.") (emphasis added).

[64] *In re BNPD Antitrust Litig.*, No. 96-cv-897, ECF 3608 at 10-11 (N.D. Ill. Sept. 14, 1998) (*in limine* ruling) (Opp. at 38) is inapposite. In *BNPD*, the co-conspirators withdrew from the conspiracy by settlement. *BNPD* ECF 3608 at 10-11. While *BNPD* did not detail the settlement terms, another court, citing that settlement, explained that "these manufacturers made a 'firm commitment' to make discounts available to retail pharmacies and not to refuse to deal with these pharmacies on the basis of their retail status." *Drug Mart*, 288 F. Supp. 2d at 329. Thus, "the consideration supporting the settlement is the promise by the manufacturers that they will not engage in the activity complained of." *Id.* at 330-31. Here, Reynolds never agreed to end its challenged conduct.

Dated:  April 12, 2024                          Respectfully submitted,

*/s/  Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
Robert Wallner (*pro hac vice*)
John Hughes (*pro hac vice*)*
Michael Acciavatti (*pro hac vice*)**
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza
Garden City, NY 11530
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com
rwallner@milberg.com
jhughes@milberg.com
macciavatti@milberg.com

* *admitted in Michigan only*
**admitted in Pennsylvania only*

*Interim Lead Class Counsel for Dealership Class Plaintiffs*

## CERTIFICATE OF SERVICE

I, Peggy J. Wedgworth, an attorney, hereby certify that on April 12, 2024, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth