# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISON

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litig.*, MDL 2817<br><br>This Document Relates To:<br><br>*Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521<br><br>THE DEALERSHIP PUTATIVE CLASS ACTION | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Rebecca R. Pallmeyer |

### CDK GLOBAL, LLC'S MOTION FOR LEAVE TO FILE A
### SUR-REPLY IN OPPOSITION TO CLASS CERTIFICATION

CDK respectfully submits this motion for leave to file a sur-reply in light of the dramatic substantive changes introduced by Plaintiffs' reply filings. Those filings include new data, new expert reports, and briefs totaling 55 pages—far longer even than CDK's combined opposition brief—that addresses legal issues that Plaintiffs either skimmed over or failed to grapple with when first moving for class certification. Plaintiffs, having seen Defendants' arguments and having realized that class certification is substantially more problematic than they initially urged, are now attempting a re-do at the reply stage—filing over 400 pages of reply materials, including nearly 300 pages of new expert reports, as well as revising the Vendor class definition (with the result that Vendors now seek to certify an entirely new class with almost half fewer members), and with both sets of Plaintiffs employing new data from Authenticom that CDK has never seen before.

This is not typical reply briefing. Much of Plaintiffs' new expert work is not permissible rebuttal at all. *Ratcliff v. TranStewart Trucking Inc.*, 2023 WL 4866326, at *15 (S.D. Ind. July 31, 2023) ("Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief."); *Bowman v. IBM Corp.*, 2013 WL 1857192, at *7 (S.D. Ind.

May 2, 2013) ("A rebuttal report is not the time to change methodologies to account for noted deficiencies."). Nor is it typical practice for reply filings to outweigh either plaintiffs' own opening briefs or the opposition the plaintiffs purport to "reply" to. Basic fairness demands that CDK be permitted to address Plaintiffs' immense new filings before the Court makes a fully informed judgment on whether any class can be certified in this case. To assess and address Plaintiffs' new analyses and legal theories and Vendors' new class, CDK thus brings this motion seeking (i) a 25-page sur-reply brief and sur-rebuttal report from CDK's expert; and (ii) a modest two-week extension of its filing deadlines from May 20 to June 3, 2024.

## BACKGROUND

Merits discovery in this case closed over four years ago, on April 30, 2019. Dkt. No. 616-1. On August 4, 2023, after summary judgment was decided, Plaintiffs disclosed their intent to "update[]" their "expert damages model[s]" at class certification to account for the years since 2019, Dkt. No. 1394 at 15. The parties agreed that both CDK and Plaintiffs would produce additional information related to the 2019 through 2023 timeframe, which they did. Dkt. No. 1420-2. On November 21, 2023, Plaintiffs filed motions seeking certification of their proposed classes. *See* Dkt. Nos. 1422, 1425. With their motions, Plaintiffs filed short expert reports (18 pages from Vendors' expert and 82 pages from Dealers' expert) with new and revised damages models that purported to extend damages by more than four years beyond what Plaintiffs' claimed at summary judgment. *See* Dkt. No. 1423-2 ("Israel Initial Class Rpt."); Dkt. No. 1425-6 ("Williams Initial Class Rpt.").

CDK opposed both sets of Plaintiffs' motions in a single 40-page omnibus class opposition brief on February 23, 2024. *See* Dkt. No. 1456 ("CDK Class Opp.") at 17–23, 25–30. One argument CDK made was that Plaintiffs' class certification motions failed Rule 23's adequacy and

predominance requirements because numerous class members had agreed to enforceable class-waiver provisions. *Id.* at 12–16 (vendor class), 23–25 (dealer class). CDK also explained the non-viability of Plaintiffs' proposals to certify classes stretching all the way to the present, including by noting that Plaintiffs had made no effort to run many of their expert models for the past several years of the class period or account for the considerable changes in competitive conditions in that time span. *Id.* at 37–40. In a report filed with CDK's opposition, CDK's expert, Dr. Laila Haider, raised similar concerns and explained that Plaintiffs' experts' models could not reliably assess damages or injury classwide for numerous reasons. *See* Dkt. No. 1460-1 ("Haider Rpt."). Among her critiques was that both experts' difference-in-differences ("DID") regression models could not be used to calculate damages to the present because Plaintiffs did not have any data from their "control" groups, DIS providers Authenticom and SIS, beyond April 2019. *E.g.*, *id.* at ¶¶ 274-79.

On Saturday, March 23, 2024, one month *after* CDK's opposition filing, Vendors produced new sales data from Authenticom.[1] *See* Ex. 1, 3/23/24 Ltr. From D. Dorris; Ex. 2, 3/25/24 Ltr. From D. Dorris. Two days later, on March 25, 2024, Dealers requested 20 additional pages for their class reply, Dkt. No. 1463, and were ultimately allowed 15 additional pages or 30 pages total, Dkt. No. 1465. On April 2, 2024, three days before the original reply deadline, Vendors asked

---

[1] After repeated requests from CDK for information regarding the timing of the Authenticom data production and for any written communications surrounding the request and production of the data, on April 22 Vendors revealed that Vendor named plaintiff AutoLoop had requested the data from Authenticom on January 25, 2024, before CDK filed its class opposition and Dr. Haider's report. *See* Ex. 3, 4/22/24 Ltr. from D. Dorris re Authenticom Production, at 1. Vendors also disclosed that they received the data on March 5, but waited nearly two weeks before producing it. *Id.* at 2. Vendors' counsel refused to produce their communications with Authenticom about the data, maintaining that their communications with Authenticom on this topic are privileged. *Id.*; *see also* Ex. 4, 4/23/24 Eml. from D. Dorris. CDK disagrees that any privilege attaches to these communications. Ex. 5, 4/17/24 Ltr. from K. Katz to D. Dorris. CDK continues to confer with Vendors regarding their privilege claims and reserves all rights on this issue, including the right to move to strike the data and any analyses using the data.

3

CDK to agree to a last minute extension of the pages for their reply brief from 15 pages to 25 pages, and a one-week extension of time for both Plaintiffs' filings, neither of which CDK opposed. Ex. 6, Eml. From J. Hafenbrack to K. Katz; *see also* Dkt. No. 1467.

On April 12, 2024, Plaintiffs filed over 400 pages (not including hundreds of additional pages of appendices and exhibits or voluminous backup data) of class reply briefs, *Daubert* responses, and rebuttal expert reports. *See* Dkt. Nos. 1470-1481. Their reply briefs alone totaled 55 pages combined (30 for dealers, 25 for vendors). In response to CDK's argument that many members of the proposed classes were subject to enforceable class waiver agreements, ***Vendors revised their class definition in reply*** to exclude any Vendors who entered into agreements with CDK after June 5, 2018. *See* Dkt. No. 1472 ("Vendor Reply Br.") at 6.[2] This change reduced the number of proposed class members from 439 to 244, eliminated almost half of the proposed class, and led Vendor's expert to put forward new assessments to account for the new class definition. *Id*.; *see also* Dkt. No. 1474-1 ("Israel Reply Rpt.") at 88–92.

In addition, both sets of Plaintiffs advanced new legal theories, put forward numerous new analyses, and used new data in their reply briefs and expert materials.[3] *See* Dkt. Nos. 1472-1479. Among other things, Vendors' reply brief and supplemental expert report included the following:

- **New Legal Arguments And Theories.** In its opposition brief, CDK argued that Vendors' expert's core theory of injury—that a buyer purchased in a "monopolized market"—was wrong as a matter of law because "[a]n antitrust violation is not the same as an antitrust injury," and "an antitrust plaintiff must present evidence that, as a consumer, it paid a monopoly or above-the-market price." CDK Class Opp. at 17. In reply, Vendors pivoted and put forward entirely new theories of antitrust injury that they had not raised before, including: (1) the elimination

---

[2] Dealers, on the other hand, refused to make the same concession and instead argue that class waivers in their Master Services Agreements are enforceable. Dkt. No. 1478 ("Dealer Reply Br.") at 6–12.

[3] CDK is still working with its expert to assess these voluminous filings, as well as the equally voluminous backup materials, and its evaluation of Plaintiffs' new arguments and analyses is ongoing.

of an option to switch to a lower-priced competitor; (2) the elimination of downward pricing pressure on CDK and Reynolds; and (3) the elimination of an outside option to use in negotiations with CDK and Reynolds. *See* Vendor Reply Br. at 12 (citing new cases and new expert opinions).

- **New Data and Analyses.** In reply, Vendors' expert, Dr. Israel, ran new analyses based on the truncated class definition. *See, e.g.*, Israel Reply Rpt. at 88–98. He also used the newly produced Authenticom data to reconfigure his differences-in-differences model ("DID")—his primary overcharge model—and extend it to present, *see, e.g., id.* at ¶¶ 96-98, something he acknowledged that he could not do in his opening report where his DID analysis cut off at 2019, *see* Israel Initial Class Rpt., Ex. C ¶ 1.

Dealers' extensive reply materials also included brand new arguments and analyses in support of class certification, including:

- **New Legal Arguments and Theories.** Dealers incorporated new legal arguments and theories throughout their reply filings. For instance, in their opening motion and report, Dealers and their expert, Dr. Williams, completely ignored the emergence of "fee waivers," or free data integration services offered by CDK in certain circumstances starting in 2019. *See, e.g.*, Dkt. 1460-13 ("2/12/24 Williams Dep.") at 300:24–302:15 (admitting that he had not studied or assessed fee waivers). In reply, Dealers, for the first time, advanced theories and arguments regarding the impact of fee waivers on class certification, including how they should be accounted for in the but-for world. *See* Dealer Reply Br. at 5–6, 13–14; *see also, e.g.*, Williams Reply Rpt. at ¶¶ 15-28, 41, 86, 153, 168, 231–33 (similar). Dealers also cited to over a dozen new cases and included over 15 pages of new legal analysis related to their regression methods in reply—none of which was included in their opening materials. *See* Dealer Reply Br. at 12–13; Williams Reply Rpt. ¶¶ 57, 100-114, 161, 172-198, 230.

- **New Analyses Incorporating New Controls And Data.** Dr. Williams inserted over a dozen new regressions in his reply report. For instance, Williams ran new analyses that supposedly accounted for controls he admitted were absent from his initial report. *Compare* 2/12/24 Williams Dep. 209:23–210:1 (no control for time-varying effects), 211:6–10 (no control for inflation), 215:17–22 (no control for COVID-19 pandemic); *with* Williams Reply Rpt. at ¶¶ 78-83 (conducting new regressions regarding the effect of software PPI and COVID). He also changed the structure of his DID model to account for Dr. Haider's criticisms and the newly produced Authenticom data. *Compare* Williams Reply Rpt. at ¶ 90 *with id.* at ¶ 185 n.367 (changing from a "period fixed effects" approach to a "month fixed effects" analysis using the newly produced data). In effect, this created an entirely new model.

- **New Analyses Related To The Post 2019 Period.** Despite disclaiming its usefulness, Williams put forward an entirely new regression model in his reply report that could incorporate the zero-dollar transactions associated with fee waivers—something his prior models could not accommodate due to how they were constructed. *Compare* Williams Reply Rpt. at ¶¶ 15-28, Table 1 *with* Haider Rpt. ¶¶ 219-221. He also ran new regressions using market share data through 2023—another entirely new approach. *E.g.*, Williams Reply Rpt.

5

at ¶¶ 235-40, Figure 38. In addition, Williams ran new year-specific overcharge regressions for the years from 2015 through 2023 for the first time in reply. *Id.* at ¶ 84, Table 5.

After receiving Plaintiffs' substantially reworked materials, CDK reached out to Plaintiffs on April 17 and asked if they would oppose CDK filing a 25-page sur-reply and short sur-rebuttal report to respond to Plaintiffs' numerous new arguments and analyses. Ex. 7, 4/17/24 Ltr. From K. Katz to D. Dorris and P. Wedgworth. CDK also requested a "two-week extension of the current schedule to ensure CDK has sufficient opportunity to respond to these late disclosures." *Id.* On April 22, 2024, Plaintiffs responded that they would agree to allow CDK "one 7-page sur-reply and accompanying expert report *limited to* responding to arguments that concern the recently produced Authenticom data." Ex. 8, Eml. from P. Wedgworth to K. Katz (emphasis in original). Plaintiffs did not agree to CDK's request for a two-week extension, and insisted that they should be given yet more pages to rebut the limited 7-page sur-reply they had proposed. *Id.* CDK disagreed that this proposal was fair given Plaintiffs' expansive filings and numerous new analyses and theories, apart from those impacted by the Authenticom data, and accordingly seeks relief from the Court.

**ARGUMENT**

CDK's request for a 25-page sur-reply and two additional weeks is warranted and reasonable. It is well-accepted that "[n]ew arguments and evidence," like those described above, "may not be raised for the first time in a reply brief...." *PalatiumCare, Inc. v. Notify LLC,* 2023 WL 2929462, at *4 (E.D. Wis. Apr. 13, 2023) (citing *PSG Energy Grp., LLC v. Krynski*, 2020 WL 2059944, at *3 (S.D. Ind. Apr. 29, 2020)) (granting leave for sur-reply). And "[s]imilar to reply briefs, advocates cannot advance new arguments for the first time in a reply expert report," because reply reports are "not the appropriate vehicle for presenting new opinions." *Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 3147349, *1–4 (N.D. Ill. June 19, 2013); *see also Ready-Mixed*

6

*Concrete Antitrust Litig.*, 261 F.R.D. 154, 159 (S.D. Ind. 2009) (striking new arguments advanced by plaintiffs in their reply reports). "Where new evidence is presented in either a party's reply brief or affidavit in further support of its [] motion," district courts "permit the nonmoving party to respond to the new matters prior to disposition of the motion ... or else strike that new evidence." *PalatiumCare,* 2023 WL 2929462, at *4 (internal citation omitted).

Here, the fact that Vendors entirely changed their class definition in reply to exclude vendors with enforceable class waivers, Vendor Reply Br. at 6, alone warrants a sur-reply. *See Kwasniewski v. Medicredit, Inc.*, 2020 WL 7495578, at *2 n.1 (W.D. Wis. Dec. 21, 2020) (stating that the court would "obviously grant defendants' motion for leave to file" a sur-reply to address "plaintiff's proposed amendment to her class definition"). In addition, in circumstances like this, where parties improperly advance new legal theories and expert analyses in reply, courts, at minimum, allow responsive submissions and new reports.[4] *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637, Dkt. No. 4694 (N.D. Ill. May 21, 2021) (granting sur-reply and sur-rebuttal report so that defendants could respond to new law, new expert analysis, and new data in plaintiffs' class reply materials); *In re Opana ER Antitrust Litig.*, MDL No. 2580, Case No. 14-cv-10150, Dkt. No. 493 (N.D. Ill. Jan. 31, 2020) (similar); *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *8 (S.D.N.Y. Mar. 28, 2014) (similar). Respectfully, this Court should do the same.

---

[4] In many cases, Courts exclude such new material altogether. *See, e.g.*, *Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. at 158–61 (S.D. Ind. 2009) (striking rebuttal expert reports where those reports contained "a host of new detailed analyses" and "new arguments"); *Bowman*, 2013 WL 1857192, at *7 (similar); *Sloan Valve Co.*, 2013 WL 3147349, at *2–4 (similar); *Stanfield v. Dart,* 2013 WL 589222, at *3–4 (N.D. Ill. Feb. 14, 2013) (similar).

Plaintiffs' position that CDK should only be entitled to a 7-page sur-reply and supporting expert report limited to analyses involving the Authenticom data is patently unreasonable in light of their own extensive re-working of their class certification motions in lengthy reply filings. Ex. 8, 4/22/24 Eml. from P. Wedgworth. ***First***, the new issues addressed in Plaintiffs' reply filings go well beyond the use of new Authenticom data. For instance, as described above, Vendors entirely changed the make-up of their class, put forward new theories of injury, and used new data and the revised class definition to update their models and analyses. *See infra.* at 4-5. For their part, Dealers relied on new legal theories about the but-for world and the propriety of their regressions, introduced numerous new regression models using new data, controls, and methods, and addressed post-2019 market changes, like fee waivers and changes in market share, for the first time. *See infra.* at 5. These and other new arguments and analyses pervade Plaintiffs' reply filings and impact all of their Rule 23 arguments.

***Second***, CDK's request for 25 pages and two additional weeks is modest and appropriate under the circumstances. When combined, Plaintiffs opening motions and reply briefs total 85 pages, which is more than double the 40 pages that CDK has filed. And most of Plaintiffs' materials, arguments, and analyses came in *after* CDK's opposition—two-thirds of the pages that Plaintiffs filed in support of class certification (55 pages), were filed in reply to CDK's 40-page opposition brief. *See* Dkt. Nos. 1472, 1478. Dealers' reply was ***twice as long*** as their opening brief. *Compare* Dkt. No. 1425 (dealers' 15-page opening brief) *with* Dkt. No. 1478 (dealers' 30-page reply brief). The latest reports by Plaintiffs' experts also dwarf their opening reports. Dr. Israel submitted an 18-page expert report in support of Vendors' opening motion that cross-referenced and largely restated certain opinions from his prior reports. *See* Dkt. No. 1423-2. By contrast, Dr. Israel's new report is 85 pages long—nearly five times the length of his original

report. *See* Dkt. No. 1474-1. Similarly, when dealers moved for class certification, Dr. Williams submitted an 82-page report, whereas his latest report is **206 pages**, more than twice as long. *Compare* Dkt. No. 1425-6 *with* Dkt. No. 1479-1.

CDK should have an opportunity to file a 25-page sur-reply and short sur-rebuttal report in response to Plaintiffs' voluminous reply materials that rely on new arguments, analyses, and data.[5] *See, e.g.*, *Marine Travelift Inc. v. ASCOM SpA*, 2015 WL 9008254, at *3 (E.D. Wis. Dec. 15, 2015) (allowing sur-reply "in the interest of fairness" where reply brief was "unusually long"). A modest two-week extension is also warranted here given the complexities of the new issues raised by both groups of Plaintiffs in reply.

## CONCLUSION

For all of the reasons above, CDK respectfully requests that the Court grant CDK (i) leave to file a 25-page sur-reply and short sur-rebuttal report to respond to Plaintiffs' new arguments and analyses; and (ii) two additional weeks to do so, extending CDK's briefing deadline from May 20 to June 3, 2024.

Dated: April 26, 2024                                    Respectfully Submitted,

                                                         */s/ Mark Filip, P.C.*
                                                         Mark Filip, P.C.
                                                         Kevin M. Jonke
                                                         KIRKLAND & ELLIS LLP
                                                         300 North LaSalle
                                                         Chicago, IL 60654
                                                         Tel: (312) 862-2000
                                                         mark.filip@kirkland.com
                                                         kevin.jonke@kirkland.com

---

[5] For the same reason, it would be unfair for Plaintiffs to get the benefit of yet more pages in response to CDK's sur-reply.

9

Craig S. Primis, P.C.
Matthew J. Reilly, P.C.
K. Winn Allen, P.C.
Katherine Katz, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 389-5000
craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
katherine.katz@kirkland.com

*Counsel for Defendant CDK Global, LLC*

# CERTIFICATE OF SERVICE

I, Mark Filip, an attorney, hereby certify that on April 26, 2024, I caused a true and correct copy of the foregoing **MOTION FOR LEAVE TO FILE A SUR-REPLY IN OPPOSITION TO CLASS CERTIFICATION** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Mark Filip, P.C.*
Mark Filip, P.C.
