# EXHIBIT 5

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Katherine R. Katz
To Call Writer Directly:
+1 202 389 5184
katherine.katz@kirkland.com

1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
United States

+1 202 389 5000

www.kirkland.com

Facsimile:
+1 202 389 5200

April 17, 2024

**BY EMAIL**

Daniel V. Dorris
Kellogg, Hansen, Todd, Figel & Frederick P.L.L.C.
1615 M. Street, N.W., Suite 400
Washington, D.C. 20036-3215

Peggy J. Wedgworth
Milberg Coleman Bryson Phillips Grossman, LLC
100 Garden City Plaza, Suite 500
Garden City, NY 11350

Re: *In re Dealer Management System Antitrust Litig.*, MDL 2817 (N.D. Ill.)

Counsel:

On March 25, we requested information about the origin of the refreshed Authenticom data that we received for the first time on March 23, 2024. 03/25/24 Ltr. from K. Katz to D. Dorris. We specifically requested information about who requested the data from Authenticom, when it was requested, and when it was received, among other things. *Id.* Having reviewed your experts' analyses of the new data, we reiterate our questions and request your responses by **April 22, 2024**.

So far, vendors have confirmed only that the new Authenticom data was not produced in response to a subpoena and that Kellogg Hansen has "produced all new and discoverable Authenticom data in our possession." *Id.* Beyond that, however, vendors have claimed that because Kellogg Hansen previously "represented Authenticom in this case," "any communications between" Kellogg Hansen and Authenticom would be "protected by both the attorney-client privilege and the work product doctrine." *Id.*

As an initial matter, many of the categories of information we requested in our letter that we have not yet received are not entitled to any privilege protections at all. Indeed, the categories of information we requested would be the exact types of information that would be included on a privilege log: *who* sent the communication seeking the data, *when* it was sent, *how* the request was made (whether via email, phone call, etc.), *when* the data was received, and *who* sent the data to Kellogg Hansen. *See Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 374 (N.D. Ill. 2000) ("[E]ach document in a privilege log should contain details including: date, author and all recipients of the document, subject matter, purpose, and an explanation as to why the document should be privileged and not produced in discovery.").

## KIRKLAND & ELLIS LLP

Daniel V. Dorris
Peggy J. Wedgworth
April 17, 2024
Page 2

These categories of information establish a claim of privilege; they are not protected by it. *See id.* In addition, since Dr. Williams relies on the refreshed data in his reply report, please let us know the dates of and participants in any communications between vendors and dealers regarding the refreshed Authenticom data—*e.g.*, when did dealers' counsel first learn that Authenticom would produce additional data in this matter.

Beyond those categories, we also disagree that Authenticom's recent communications regarding refreshed data are protected by the attorney-client privilege and work product protections in this matter. All claims by and against Authenticom were dismissed with prejudice, at the very latest, by 12/12/2022. Dkt. 1365; *see also* Dkts. 1199 (stipulation of dismissal with prejudice between Authenticom and CDK), 1351 (stipulation of dismissal with prejudice between Authenticom and Reynolds). The court has thus made a final disposition of the entire Authenticom case. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 489 (7th Cir. 2020). As a result, Authenticom is no longer a party to either of the two putative class actions. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 406 (2015).

As a non-party to the case, Authenticom has no work-product protection to assert. *See, e.g., Cook v. City of Chi.*, 2010 WL 331737, at *1 (N.D. Ill. Jan. 26, 2010) ("Rule 26 of the Federal Rules of Civil Procedure and caselaw applying this Rule are clear: a non-party may not assert the work product doctrine to protect its files or documents" even if there is a "related" suit). The work product doctrine protects documents prepared by attorneys "in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The claims by and against Authenticom relating to CDK and Reynolds were settled and disposed of years ago; the recently produced data, including data from after Authenticom's settlements, thus could not have been collected and prepared in anticipation of any litigation involving Authenticom.

Similarly, "[t]he attorney-client privilege protects communications made in confidence by a client to his attorney in the attorney's professional capacity ***for the purpose of obtaining legal advice***." *Jenkins v. Bartlett,* 487 F.3d 482, 490 (7th Cir. 2007) (emphasis added). Again, we struggle to see how communications between Authenticom and Kellogg Hansen relating to the voluntary production of materials to be used in these ***other plaintiffs'*** cases could relate to providing Authenticom with legal advice.

Please respond to the requests in my March 25 letter by this coming Monday, April 22, so that CDK can assess whether relief is necessary with respect to the Authenticom data and any legal and expert analyses that rely on it.

# KIRKLAND & ELLIS LLP

Daniel V. Dorris
Peggy J. Wedgworth
April 17, 2024
Page 3

Sincerely,

*/s/ Katherine R. Katz*

Katherine R. Katz

CC:   MDL Counsel of Record