IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer |
| ALL ACTIONS | |

**PLAINTIFFS' OPPOSITION TO
DEFENDANT CDK'S MOTION FOR LEAVE TO FILE A SUR-REPLY**

CDK's motion for leave to file a sur-reply should be denied. In Plaintiffs' reply briefs in support of class certification, neither the putative Vendor Class nor the Dealer Class raised any new arguments. Rather, in response to CDK's opposition brief and 223-page report from a previously undisclosed expert, Plaintiffs addressed and refuted CDK's (and its new expert's) arguments. A sur-reply is thus unwarranted. CDK is attempting to further drag out this long-running MDL and capture additional pages and the final say on *Plaintiffs'* motions for class certification. The Court should deny CDK's request and proceed to rule on Plaintiffs' motions for class certification, which are fully briefed.

**BACKGROUND**

On November 21, 2023, Plaintiffs filed 15-page briefs in support of their respective motions for class certification (Dkts. 1422-1, 1425) with expert reports: Dr. Michael Williams submitted an 83-page report with 88 pages of appendices for Dealers (Dkt. 1426) and Dr. Mark Israel submitted a 19-page report with 24 pages of backup for Vendors (Dkt. 1422-2).[1]

---

[1] CDK's discussion of the length of Plaintiffs' expert reports is intentionally misleading. CDK *omits* the analysis and appendices when discussing Plaintiffs' *initial* class certification reports for the ostensible purpose of characterizing the reports as "short" (*see* Dkt. 1487 ("Mot.") at 2), but

Between December 29, 2023, and February 20, 2024, CDK produced over 900 documents (including data) in *seven* productions.² Among those productions, CDK produced *for the first time* a Fee Waiver Tracker, a document used to identify "fee waiver transactions" within the refreshed CDK transactional data produced four months earlier in October and November of 2023. *See* Dkt. 1456 at 26-27; Dkt. 1460-1, Haider Rep. ¶¶ 216-19, 359 & nn.404-05 & Figs. 21, 22, 45.

On February 23, 2024, after requesting and receiving a two-week extension, CDK filed a 40-page omnibus opposition brief plus 14 pages of appendices and 47 exhibits totaling over 1,800 pages, *see* Dkts. 1456, 1460-1, including a 223-page rebuttal report with 74 pages of appendices by Dr. Laila Haider, a previously undisclosed expert (*see* Dkt. 1460-1), and a 20-page declaration by CDK's Senior Director of Data Services which appended 460 pages of exhibits (Dkt. 1460-11).

In response to an argument made by CDK in its opposition brief, on March 23 and 25, 2024, Vendors produced refreshed Authenticom sales data (*see* Dkts. 1487-1 and 1487-2 (CDK Exs. 1 & 2)), similar to the data refresh productions by CDK and Reynolds. *See* Dkt. 1420-2. On March 25, 2024, CDK sent a letter with questions about the data and Vendors promptly responded on March 27, explaining that "Authenticom voluntarily produced data to refresh the invoice and connections data on which Dr. Israel relied in his August 26, 2019 expert report up to and including September 2023." *See* Pls.' Exs. 2 & 3.³ CDK waited *three weeks* to send another letter on April

---

*includes* the volume of analysis and appendices for Plaintiffs' *reply* expert reports in order to characterize those reports as "voluminous," thus warranting a sur-reply. *See id.* at 4, 8-9.

² *See* Pls.' Ex. 1 (production cover letters from CDK sent on Dec. 29, 2023, Jan. 8, 2024, Jan. 13, 2024, Jan. 20, 2024, Feb. 1, 2024, Feb. 18, 2024, and Feb. 20, 2024).

³ The letter also stated, "We note that CDK produced abundant data and other documents from its own files after Dr. Israel provided his class certification report and after Dr. Israel was deposed. Much of the data and documents that CDK produced (and relied on its briefing and expert report) were not even contemplated as part of the class certification discovery (unlike the Authenticom data which mirrors the data refresh productions provided by CDK and Reynolds)." Pls.' Ex. 3.

17, 2024. Dkt. 1487-5 (CDK Ex. 5). On April 22, in response, Vendors answered CDK's questions regarding the Authenticom data refresh, including addressing CDK's baseless requests for privileged communications. Dkt. 1487-3 (CDK Ex. 3).

On April 12, 2024, Plaintiffs filed class certification reply briefs and expert reply reports and exhibits in response to CDK's opposition brief and new expert report from Dr. Haider. Dkts. 1472-1479. Dealers also filed a motion to exclude the testimony of Dr. Haider. Dkt. 1477.

On April 17, 2024, CDK requested a 25-page sur-reply and sur-rebuttal report, along with yet another two-week extension of the current schedule (which already includes the week-and-a-half extension that Plaintiffs previously granted to CDK). *See* Dkt. 1487-7 (CDK Ex. 7); *see also* Dkt. 1467. Following a meet-and-confer, Plaintiffs proposed, as a compromise, a 7-page sur-reply with an accompanying supplemental expert report limited to arguments concerning the Authenticom data refresh, to be filed on May 20, 2024, along with CDK's *Daubert* briefing. *See* Dkt. 1487-8 (CDK Ex. 8).[4] As the movants on the class certification motions, Plaintiffs additionally proposed that Dealers and Vendors may each file a 7-page response to CDK's sur-reply on June 10, 2024, limited to the same topic with an accompanying expert report for each.[5] *Id.* CDK rejected Plaintiffs' counter-proposal and filed this motion. *See* Pls.' Ex. 4.

---

[4] CDK can address all the arguments it has raised in its motion in the three *Daubert* briefs it is filing on May 20, 2024: (1) two 15-page replies in support of its motions to exclude testimony from Plaintiffs' respective experts, Drs. Williams and Israel; and (2) a response to Dealers' 7-page brief to exclude testimony from CDK's expert, Dr. Haider. *See* Dkt. 1467.

[5] Should the Court permit CDK to file a sur-reply and sur-rebuttal report, Plaintiffs request the opportunity to each file a response and report. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1180550, at *5 (D. Kan. Mar. 10, 2020) (permitting defendants to file sur-reply in opposition to class certification, and plaintiffs to file response to defendants' sur-reply).

3

**ARGUMENT**

I.  **THE COURT SHOULD DENY CDK'S REQUEST FOR A SUR-REPLY**

CDK is not entitled to a sur-reply or a sur-rebuttal expert report because it fails to identify any "new" arguments in Plaintiffs' reply briefs or expert rebuttal reports. Plaintiffs, instead, merely responded to the arguments that CDK made in its opposition brief.

"[S]urreply briefs are rare and discouraged in most districts." *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017). Courts deny motions for a sur-reply where, as here, the reply brief "fairly responded to the arguments in the brief that preceded it." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 857 (N.D. Ill. 2015); *Destiny Health, Inc. v. Connecticut Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 904 (N.D. Ill. 2010) (denying sur-reply where defendant's "response brief thoroughly addresses all of the issues"). Similarly, courts routinely deny requests to file a sur-reply where, as here, the opposing party has made no new arguments in its reply brief. *See, e.g., Williams v. Anthony*, 2012 WL 6680320, at *2 n.* (N.D. Ill. Dec. 21, 2012) (striking plaintiff's sur-reply because defendant "made no new arguments in its reply brief").

None of CDK's authorities (at 6-7) is to the contrary. For example, in *PalatiumCare, Inc. v. Notify LLC*, 2023 WL 2929462 (E.D. Wis. Apr. 13, 2023), the defendants had "no good reason" for introducing "directly relevant evidence in support of a key argument" for the first time on reply. *Id.* at *4. Here, as explained further below, Plaintiffs simply responded to the arguments made by CDK in its opposition brief and expert report. Another of CDK's cited cases—*Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 3147349 (N.D. Ill. June 19, 2013)—supports Plaintiffs: that case held arguments advanced on reply are appropriate where they "refute" the "criticisms" of the opposing party's rebuttal expert. *Id.* at *2, *3. So too does *PSG Energy Grp., LLC v. Krynski*, 2020 WL 2059944 (S.D. Ind. Apr. 29, 2020): the court there *denied* defendants' motion to strike, where

4

plaintiffs' reply properly expanded upon previous briefing and "directly responded to argument in the Defendants' Response"—precisely the case here. *Id.* at *4.[6]

### A. <u>Vendor Class</u>: CDK is not entitled to a sur-reply or a sur-rebuttal report

CDK argues it is entitled to a sur-reply with respect to the Vendor Class to address (1) the modified class definition, and (2) purportedly new theories of antitrust injury. Neither provides a valid basis for a sur-reply.

**1.** *Modified class definition.* Autoloop modified the Vendor Class definition in its reply brief—a practice courts routinely endorse—to address and moot the point made in CDK's opposition brief that the presence of class-waiver provisions would create individualized issues for a subset of class members that first joined the 3PA program after June 5, 2018. *See* Dkt. 1472 ("AutoLoop Reply Br.") at 5-7. CDK admits that AutoLoop excluded these vendors "[i]n response to CDK's argument," Mot. at 4, and nowhere does CDK identify any way in which its class-waiver argument survives the class amendment. A sur-reply is therefore unwarranted.

CDK argues (at 7) that the revised class definition results in an "entirely new class," but that is hyperbole. The class is the exact same—vendors that purchased data integration from CDK and Reynolds—but only limited to those that first did so before June 5, 2018. CDK misleadingly says (at 4) that the revised definition "eliminated almost half of the proposed class," reducing the class size from 439 members to 244 members. But total damages fell only 7.5% (from $432

---

[6] In a footnote (at 7 n.4), CDK suggests courts sometimes exclude expert rebuttal reports that contain "new material." But tellingly, CDK does not seek that relief here. And for good reason: those cases are readily distinguishable—those courts excluded rebuttal reports that, unlike here, advanced completely new methodologies or did not rebut any conclusions from opposing expert reports. *See, e.g.*, *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 159-160 (S.D. Ind. 2009) (striking expert supplemental report that was an "entirely new expert opinion"); *Bowman v. Int'l Bus. Mach. Corp.*, 2013 WL 1857192, at *6 (S.D. Ind. May 2, 2013) (striking portions of expert rebuttal reports that "completely change[d] [the] methodology").

5

million to $399.5 million), because the eliminated vendors were newer and smaller vendors that purchased far fewer integration services. *See* AutoLoop Reply Br. at 6.

CDK's sole authority—*Kwasniewski v. Medicredit, Inc.*, 2020 WL 7495578 (W.D. Wis. Dec. 21, 2020)—is inapposite. There, the court allowed a sur-reply because the plaintiff "fundamentally" altered the class by *expanding* the class definition in a reply brief, thus giving rise to potential arguments opposing class certification that had not been previously made. *Id.* at \*2. That is not the case here where AutoLoop's *narrowing* of the class definition moots CDK's class-waiver argument and otherwise does not affect the analysis of common issues.

2.  *Theories of antitrust injury*. CDK's argument (at 4-5) that AutoLoop "pivoted" and "put forward entirely new theories of antitrust injury" in its reply brief is incorrect on two fronts. *First*, AutoLoop responded to arguments first raised in CDK's opposition brief about antitrust injury—precisely what reply briefs are meant to do. CDK argued in its opposition brief that the proposed Vendor Class included uninjured members, which it (wrongly, *see* AutoLoop Reply Br. at 7-12) argued creates individualized issues that preclude class treatment. AutoLoop replied by showing, among other things, that all vendors were injured because they were forced to purchase data integration services in monopolized markets, depriving them of the benefits of competition. *See* AutoLoop Reply Br. at 8, 12-14. No sur-reply is appropriate when a reply brief directly responds to the arguments made in the opposition brief. *See supra* p. 4.

*Second*, those responses were not even new. AutoLoop's expert Dr. Israel made the same points about antitrust injury in his opening class certification report. *See* Dkt. 1422-2, Israel. Supp. Report ¶ 31 ("And it is perhaps the most fundamental tenet of antitrust economics that, all else equal, a loss of competition has a market-wide effect harming all buyers."); *id.* ¶ 32 ("A loss of competition in each DIS market is the very definition of a common antitrust injury."). He also

made those points in his merits report from 2019. *See* Dkt. 889-1 (Israel Rep.) ¶ 192. AutoLoop relied on both of those reports in its motion for class certification, *see* Dkt. 1422-1 at 2, 7, giving CDK ample notice that it needed to address those arguments in its opposition brief. Any failure by CDK to do so should not result in CDK getting to file a sur-reply.

B. **Dealer Class: CDK is not entitled to a sur-reply or sur-rebuttal report**

As CDK's cited caselaw (at 1) states: "[r]eply briefs are for replying," *Ratcliff v. TranStewart Trucking Inc.*, 2023 WL 4866326, at *15 (S.D. Ind. July 31, 2023), and that is precisely what Dealers' reply brief has done. Dealers were not required to anticipate CDK's arguments (and meritless ones, at that) when they filed their opening papers. Instead, Dealers answered arguments raised by CDK in *its* opposition papers. CDK is not entitled to a sur-reply on issues it raises (at 5-6) as to Dealers:

1. *Fee Waivers.* Among CDK's principal arguments in opposition to Dealers' class certification motion is that CDK waived integration fees "in certain circumstances starting in 2019." Mot. at 5; *see* Dkt. 1456 at 7-8, 9, 26-27, 39-40; Dkt. 1458-1 at 6-8, 19; Dkt. 1460-1 at ¶¶ 214-18 & Figs. 21, 22, 45. CDK rightfully acknowledges (at 5) that Dealers' opening class certification brief did not address fee waivers. For good reason. CDK raised that issue *in its opposition briefing*; thus, Dealers properly responded to the issue in their reply papers.

2. *Additional Controls, Data and Analyses.* In response to criticisms by CDK and its expert, Dr. Haider (*see* Dkt. 1456 at 26, n.14 & App'x C; Dkt. 1458-1 at 2, 10; Dkt. 1460-1, § VII.C.3), Dealers' expert, Dr. Williams, submitted a reply report that accounted for controls deemed relevant by CDK (*e.g.*, COVID), and refreshed Authenticom data. His report was an appropriate vehicle to respond to those criticisms, *see Sloan Valve Co.*, 2013 WL 3147349, at *2 (expert's additional calculation using defendants' suggested variables was proper way to respond to criticism of his initial report), and does not warrant further submissions by CDK. CDK is also

7

simply wrong (at 5 citing ¶¶ 235-40 as an example) that Dr. Williams' reply report contains "new regressions using market share through 2023." No such new regressions are used. Dr. Williams continues to rely on his "differences-in-differences" ("DID") analysis and merely uses data provided with Dr. Haider's Report to rebut CDK's assertions (Dkt. 1456 at 3, 7, 38) that competition in the DMS market changed significantly after 2019. Dkt. 1479-1 ¶ 90.

3. **Caselaw.** The fact Dealers cite additional cases in their reply brief (Mot. at 5) in order to respond to CDK's arguments is no reason to allow CDK a sur-reply. *See, e.g., Courtland Co., Inc. v. Union Carbide Corp.*, 2022 WL 1300767, at *1 (S.D.W. Va. Apr. 29, 2022) (denying sur-reply where plaintiffs reliance on additional case law was in direct response to legal arguments raised in defendants' response brief). Even so, the paragraphs referenced by CDK in Dr. Williams' reply report refer, with few exceptions, to cases also cited in Dealers' *Daubert* opposition, permitting ample opportunity for CDK to respond in its forthcoming *Daubert* reply brief. *See* Dkt. 1476, Section III (citing cases where Dr. Williams' common impact and overcharge analysis have been accepted); *cf.* Dkt. 1479-1, ¶ 57 (same), ¶¶ 100-14 (same), ¶ 161 (same), ¶¶ 172-98 (same), ¶ 230 (same).

In any event, under the Court's scheduling order (Dkt. 1467), CDK will have ample opportunity to address in its *Daubert* briefing due on May 20, 2024, as appropriate, its arguments advanced in support of its instant motion, further warranting denial of the motion. *See supra* n.4.

C. **A Sur-reply on the Refreshed Authenticom Data Is Not Warranted**

CDK claims that it is entitled to a sur-reply to address the refreshed Authenticom pricing data, but Plaintiffs obtained that data in response to an argument made by CDK in opposition to class certification—making a sur-reply inappropriate.

In its opposition, CDK criticized both Dr. Israel and Dr. Williams for not updating their DID models at class certification with refreshed Authenticom data. *See* Dkt. 1456 at 18, 26. As

8

Plaintiffs explained in their reply briefs, updating their respective DID models was unnecessary for purposes of class certification. AutoLoop Reply Br. at 7-11; Dkt. 1478 (Dealers Reply Br.) at 13-16. But to moot CDK's argument, Vendors obtained the refreshed Authenticom data, which both Dr. Israel and Dr. Williams used to extend their DID models from the period for which data previously existed (2013 to 2019) to include data through September 2023. *See* Dkt. 889-1 (Israel Rep.) ¶ 198; Dkt. 889-7 (Williams Rep.) ¶ 163; Dkt. 1422-2 (Israel Supp. Rep.) ¶ 36; Dkt. 1426 (Williams Initial Class Rep.) ¶ 86.

Contrary to CDK's suggestion (at 5), Drs. Israel and Williams did not "reconfigure" their DID models—they merely plugged the refreshed data into the same models used at the merits stage. And CDK is foreclosed from challenging those models anyway because this Court already found both experts' DID regressions to be reliable (at the *Daubert* stage, Dkt. 1321 at 25-26, 44-47) and sufficient for the jury to credit as the basis for awarding damages (at the summary judgment stage, Dkt. 1381 at 69-70, 80-82). It is no longer up for debate that their DID methodologies are sound, and by obtaining the refreshed Authenticom data, Plaintiffs have mooted the only argument CDK made against those models at the class certification stage.[7]

Nonetheless, because CDK did not have this data prior to its opposition, in the spirit of compromise and to avoid burdening the Court with motion practice, Plaintiffs originally proposed a seven-page sur-reply limited to the refreshed Authenticom data to be filed without any delay to the existing briefing schedule. But CDK rejected that compromise, and given the foregoing, the Court should not resurrect it now.

---

[7] CDK's statement that it may move to strike the Authenticom refresh data and any analyses using it (Mot. at 3 n.1) is meritless and Plaintiffs will oppose any such motion.

## II. CDK'S REQUEST FOR AN ADDITIONAL 25 PAGES AND EXTENDED BRIEFING SCHEDULE IS UNWARRANTED

CDK has not demonstrated good cause for a *25*-page sur-reply. It does not identify what arguments it seeks to make or explain why it cannot make them in fewer pages. As for CDK's request for an additional two-week extension, CDK suggests that it needs more time because of the refreshed Authenticom data. But CDK will have had the data for eight weeks (since March 23, 2024) and will have had five weeks since Plaintiffs' class certification replies. CDK received the updated Authenticom data the same date as the Dealer Class, and the Dealer Class's expert analyzed that data and submitted an expert report relying on it within three weeks of receipt.[8]

## CONCLUSION

The Court should deny CDK's request for a sur-reply. In the alternative, should the Court permit CDK to file a sur-reply and sur-rebuttal report, Plaintiffs request the opportunity to each file a response and accompanying expert report as necessary.

---

[8] CDK's claim (at 3 n.1) that AutoLoop has not timely provided "information" regarding the Authenticom production is false. CDK misleadingly neglects to mention that it first sought information about that production on March 25, 2024. *See* Pls.' Ex. 2. AutoLoop provided information two days later. *See* Pls.' Ex. 3. CDK then did nothing for three weeks, until its April 17, 2024 letter. *See* Dkt. 1487-5 (CDK Ex. 5). After receiving that additional letter, AutoLoop conferred with CDK two days later to provide additional information, and then provided yet more information in an April 22, 2024 letter. *See* Dkt. 1487-3 (CDK Ex. 3). AutoLoop has answered *every* question posed by CDK (within 48 hours); AutoLoop's counsel merely refuses to produce privileged communications with Authenticom (which is another client of AutoLoop's counsel).

Dated:  April 30, 2024

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11350
Tel:  (212) 594-5300
Fax:  (212) 868-1229
pwedgworth@milberg.com

*MDL Co-Lead Counsel and Interim Lead Counsel representing the Dealership Class Plaintiffs*

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel and Interim Class Counsel representing Loop, LLC, d/b/a AutoLoop on behalf of itself and all others similarly situated*

11

**CERTIFICATE OF SERVICE**

        I, Derek T. Ho, an attorney, hereby certify that on April 30, 2024, I caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT CDK'S MOTION FOR LEAVE TO FILE A SUR-REPLY** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                                */s/ Derek T. Ho*
                                                Derek T. Ho
                                                **KELLOGG, HANSEN, TODD,**
                                                  **FIGEL & FREDERICK, P.L.L.C.**
                                                1615 M Street, N.W., Suite 400
                                                Washington, D.C. 20036
                                                (202) 326-7900
                                                dho@kellogghansen.com