**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litig.*, MDL 2817 | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer |
| THE VENDOR PUTATIVE CLASS ACTION | |
| THE DEALERSHIP PUTATIVE CLASS ACTION | |

**CDK GLOBAL, LLC'S
SUR-REPLY IN OPPOSITION TO CLASS CERTIFICATION**

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................................ 1

**ARGUMENT** .................................................................................................... 2

    **I.**     **Vendors Do Not Have A Valid Method To Establish Injury Or Damages On A Classwide Basis**............................................................. 2

    **II.**    **Dealers Cannot Satisfy Rule 23 For Any Class** ................................ 4

        A.     Dealers' Class Action Waivers Preclude Class Certification. ................... 4

        B.     Dealers Do Not Have A Valid Method To Establish Injury Or Damages On A Classwide Basis.................................................. 8

   **III.**   **Specific Dealer Classes Must Be Rejected** ...................................... 12

        A.     Dealers' Nationwide Class Fails Due To Distinctions In State Law ........ 12

        B.     Dealers' Injunctive Relief Class Cannot Be Certified. ............................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*200 E. 87th St. Assocs. v. MTS, Inc.*,
    793 F. Supp. 1237 (S.D.N.Y. 1992), *aff'd*, 978 F.2d 706 (2d Cir. 1992) ................................6

*Abellan v. Lavelo Prop. Mgmt., LLC*,
    948 F.3d 820 (7th Cir. 2019) ................................................................6

*In re Air Crash Disaster Near Chi., Ill., on May 25, 1979*,
    644 F.2d 594 (7th Cir. 1981) ..............................................................13

*Allgood v. Gen. Motors Corp.*,
    2007 WL 647496 (S.D. Ind. Feb. 2, 2007) ..........................................10

*AlliedSignal, Inc. v. B.F. Goodrich Co.*,
    183 F.3d 568 (7th Cir. 1999) ................................................................5

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).............................................................................7

*Am. Recovery Corp v. Computerized Thermal Imaging, Inc.*,
    96 F.3d 88 (4th Cir. 1996) ....................................................................6

*In re Automotive Parts Antitrust Litig.*,
    2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ..................................14

*Baehr v. Creig Northrop Team, P.C.*,
    953 F.3d 244 (4th Cir. 2020) ................................................................2

*In re Blood Reagents Antitrust Litig.*,
    783 F.3d 183 (3d Cir. 2015).................................................................9

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*,
    952 F.3d 887 (7th Cir. 2020) ................................................................6

*In re Broiler Chicken Antitrust Litig.*,
    2022 WL 1720468 (N.D. Ill. May 27, 2022) ......................................10

*Cates v. Whirlpool Corp.*,
    2017 WL 1862640 (N.D. Ill. May 9, 2017)..........................................9

*In re Checking Acct. Overdraft Litig.*,
    672 F.3d 1224 (11th Cir. 2012) ............................................................7

*Comcast v. Behrend*,
 569 U.S. 27 (2013)............................................................................................8

*Dodona I, LLC v. Goldman, Sachs & Co.*,
 300 F.R.D. 182 (S.D.N.Y. 2014) ......................................................................7

*Esser v. McIntyre*,
 661 N.E.2d 1138 (Ill. 1996).............................................................................13

*Flynn v. FCA US LLC*,
 39 F.4th 946 (7th Cir. 2022) .............................................................................8

*Gore v. Alltel Commc'ns, LLC*,
 666 F.3d 1027 (7th Cir. 2012) ..........................................................................5

*In re H & R Block Refund Anticipation Loan Litig.*,
 59 F. Supp. 3d 903 (N.D. Ill. 2014) ..................................................................7

*Hansen v. Country Mut. Ins. Co.*,
 2023 WL 6291629 (N.D. Ill. Sept. 25, 2023) (Pallmeyer, J.).....................3, 4

*Haynes v. Dart*,
 2009 WL 2355393 (N.D. Ill. July 29, 2009)...................................................15

*Ingersoll v. Klein*,
 262 N.E.2d 593 (Ill. 1970)...............................................................................13

*Jones v. Varsity Brands, LLC*,
 2023 WL 5662590 (W.D. Tenn. Aug. 31, 2023).......................................12, 13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
 3131 U.S. 487 (1941)........................................................................................13

*In re Korean Air Lines Co.*,
 642 F.3d 685 (9th Cir. 2011) ............................................................................7

*Krukas v. AARP, Inc.*,
 376 F. Supp. 3d 1 (D.D.C. 2019)......................................................................13

*Lawson v. Grubhub, Inc.*,
 13 F.4th 908 (9th Cir. 2021) .........................................................................5, 8

*Lombardi v. DirecTV, Inc.*,
 549 F. App'x 617 (9th Cir. 2013)......................................................................7

*In re Marriott Int'l, Inc.*,
 78 F.4th 677 (4th Cir. 2023) .............................................................................6

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ....................................................3

*Morrison v. YTB Int'l., Inc.*,
  649 F.3d 533 (7th Cir. 2011) ..................................................14

*Moss v. United Airlines, Inc.*,
  20 F.4th 375 (7th Cir. 2021) ....................................................3

*Mullins v. Direct Digit., LLC*,
  795 F.3d 654 (7th Cir. 2015) ....................................................3

*In re Niaspan Antitrust Litig.*,
  464 F. Supp. 3d 678 (E.D. Pa. 2020) ........................................9

*Patterson v. Howe*,
  96 F.4th 992 (7th Cir. 2024) ....................................................2

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ..................................................14

*PNC Bank, Nat'l Ass'n v. Boytor*,
  2021 WL 4133540 (N.D. Ill. Sept. 10, 2021) ...........................6

*Reed v. Advoc. Health Care*,
  268 F.R.D. 573 (N.D. Ill. 2009)..............................................11

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  299 F.R.D. 555 (E.D. Tenn. 2014).............................12, 13, 14

*Sloan Valve Co. v. Zurn Indus., Inc.*,
  2013 WL 3147349 (N.D. Ill. June 19, 2013) ..........................10

*Spotswood v. Hertz Corp.*,
  2019 WL 498822 (D. Md. Feb. 7, 2019) ...................................8

*In re Steel Antitrust Litig.*,
  2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ...........................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2014 WL 1395733 (N.D. Cal. Apr. 10, 2014) ...........................5

*In re Titanium Dioxide Antitrust Litig.*,
  962 F. Supp. 2d 840 (D. Md. 2013)............................................6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)...........................................................1, 3

*Trejo v. Adv. Am., Cash Adv. Ctrs. of Ill., Inc.*,
   2009 WL 10713823 (N.D. Ill. June 23, 2009) ........................................................................7

*In re Urethane Antitrust Litigation*,
   768 F.3d 1245 (10th Cir. 2014) ..........................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................................8

*Ward v. Hellerstedt*,
   753 F. App'x 236 (5th Cir. 2018) .........................................................................................15

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................1, 3, 4, 7, 8, 9, 11

Fed. R. Evid. 702 ...............................................................................................................12

**Other Authorities**

1 McLaughlin on Class Actions § 2:14 (20th ed. 2023) ...............................................................6

## INTRODUCTION

This Court should reject Plaintiffs' refrain that CDK seeks to relitigate summary judgment. Until now, there was no need to consider governing legal questions under Rule 23. Nor has the Court assessed the new expert models, and four years of additional damages, that Plaintiffs injected into the case after summary judgment. As Plaintiffs' reply briefs confirm, the Vendor class and the Dealer classes all fail under Rule 23—the only issue now before the Court.

***Vendors:*** Conceding a flaw CDK flagged in its opposition, AutoLoop dropped vendors with applicable class waivers in its reply. But Vendors still cannot show injury to the remaining class using common evidence: Dr. Israel concedes that his models ███████████ ███████████ and his vague theories of intangible harm cannot show "concrete" injury under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). ECF 1474-1 ("Israel Reply Rpt.") ¶ 81, n.131. As Israel concedes, and as Dr. Haider confirms using Israel's models, there is no reliable statistical evidence of injury here. This lack of common proof of injury defeats class certification.

***Dealers***: Although Vendors conceded the relevance of class waivers by shrinking their class, Dealers refused to acknowledge that the thousands of putative dealer class members with enforceable class waivers preclude class certification. Even sorting out which Dealers signed waivers, and when, requires individualized inquiries that defeat predominance for all Dealer classes. The Dealer classes also fail because they lack reliable proof of common injury or damages. Dealer's expert's failure to account for fee waivers renders his analysis so useless that even Vendors agree it is not "valid." ECF 1501 at 1. This and other errors (*e.g.*, his use of pass-through data from just ██ unrepresentative vendors from less than half the class period; his refusal to study facts after 2019) mean that Dealers cannot show common impact or damages for any class.

Dealers also fail to solve problems that undermine specific proposed classes. As to their proposed nationwide class, Dealers still incorrectly claim that Illinois law can override the law of

other states that have not repealed *Illinois Brick*—but in antitrust cases, the law of the place of injury controls. And Dealers' injunctive relief class fails because they still cannot say (1) what conduct they seek to enjoin, or (2) what ongoing or imminent harm they are allegedly suffering.

## ARGUMENT

## I.  VENDORS DO NOT HAVE A VALID METHOD TO ESTABLISH INJURY OR DAMAGES ON A CLASSWIDE BASIS.

In reply, Vendors maintain that "Dr. Israel's regression analysis" is "sufficient" to establish "antitrust injury[.]"  ECF 1472 ("V. Reply") 17.  But Israel concedes that his regressions ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Israel Reply Rpt. ¶ 81 & n.131, and Vendors are bound by that concession.  *See* ECF 1497 ("Israel Daubert Reply") 2-3 (citing cases).  That leaves Vendors with Israel's abstract hypotheses (*e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Israel Reply Rpt. ¶ 42), and his theories of intangible harm (*e.g.*, ▮▮▮▮▮ *id.* ¶ 45), which cannot show "concrete" and "particularized" injury as required under *TransUnion*. *See* Israel Daubert Reply 4-12; *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 253 (4th Cir. 2020) ("deprivation" of "competition" is not injury-in-fact); *Patterson v. Howe*, 96 F.4th 992, 998-1000 (7th Cir. 2024) ("altered behavior" and loss of "negotiating leverage" are not injuries-in-fact). Contrary to vendors' assertions, "CDK's claim" is not "that some class members will ultimately be shown to have suffered no harm."  V. Reply 10.  The point is that now, at class certification, Vendors have no common proof of harm.  That means no class can be certified.

Unable to overcome this fundamental problem, Vendors attempt to shift their burden.  They claim that class certification is warranted unless CDK shows that common impact is impossible— *i.e.*, that many vendors "***could not have been*** harmed."  ECF 1472 ("V. Reply") 2, 10 (emphasis in original).[1]  That assertion is incorrect, as their lead case demonstrates:  It is ***Vendors'*** burden to

---

[1] Unless otherwise noted, all emphases are added.

show that "antitrust impact is capable of proof at trial through evidence that is common to the class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 818 (7th Cir. 2012). *Messner* does not place the burden on defendants to identify class members that are immune from harm (as Vendors claim, *see* V. Reply at 2). There the plaintiff provided common proof of "antitrust injury" with a regression, whereas here Vendors do not offer *any* common proof of injury—this alone renders *Messner* inapplicable and is the end of the inquiry. 669 F.3d at 818.[2]

But even if one were to credit Vendors' misreading of *Messner*, "*TransUnion* sets the stage for a renewed examination of the intersection of the demands of Article III and the requirements of Rule 23." *Moss v. United Airlines, Inc.*, 20 F.4th 375, 379 n.7 (7th Cir. 2021). While Vendors are correct that, under *Moss*, a class "is too broad" when it "sweeps within it individuals who could not have suffered injury," *id.*, *Moss* did not hold that a class is only overbroad if it includes immune members. *TransUnion* and Rule 23 require a more practical analysis: "Every class member must have Article III standing [and thus concrete injury]," 594 U.S. at 431, so predominance is only met if "common evidence" can sort out members "who *in fact* suffered no injury[.]" *Hansen v. Country Mut. Ins. Co.*, 2023 WL 6291629, at *28 (N.D. Ill. Sept. 25, 2023) (Pallmeyer, J.).[3] This Court's post-*TransUnion* decision in *Hansen* is instructive. There, plaintiffs sought to certify a class of homeowners whose insurance claims were allegedly "underpaid" by their insurer. *Id.* at *1. This Court denied class certification because plaintiffs did not "present[] evidence of class-wide injury,"

---

[2] Even if Vendors proffered an impact model or other common evidence of harm (they did not), *Messner* simply held that a defendant cannot "disprove" a regression with a "bare-bones affidavit." 669 F.3d at 824. In so holding, the court stressed what the defendant *could have* done to defeat class certification: it "could have used its evidence" to "argue that [plaintiff's expert's] methodologies were flawed." *Id.* at 823. Thus, under *Messner*, it is enough for a defendant to demonstrate that the plaintiff's own proof does not show common impact—which, as CDK notes below, is what Dr. Haider has done.

[3] Despite Vendors' assertions, this case has nothing to do with "failsafe classes." No one proposes "defin[ing] the class in terms of success on the merits[.]" *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 660 (7th Cir. 2015).

prompting "serious predominance concerns," and did not "explain how the court could" identify uninjured class members "with common evidence." *Id.* Vendors have the same problems here.

Finally, even if Israel's models are accepted as proof of injury ████████████ ████████████ or the Court credited his other abstract theories of injury (which *TransUnion* does not permit), just like in *Hansen*, "Plaintiffs' own evidence" shows that many putative class members "suffered no injury" and the class thus cannot be certified. *Id.* Dr. Haider uses Israel's own regression models to show that (1) most vendors ████████ were not overcharged, and (2) any apparent overcharge is driven by a small fraction of the class. *See* ECF 1460-1 ("Haider Rpt.") ¶¶ 138-146; Ex. 51 ("Haider Supp. Rpt.") ¶¶ 16-17. Even for those vendors, she explains, the models inappropriately use ████████████████ ████████. *See* Haider Supp. Rpt. ¶¶ 33-37. And there is no merit to Israel's last-ditch responses to Haider's critiques. *See* Haider Supp. Rpt. ████████████ ████████████████████████████████████ ████████████████████████████ In sum, Vendors' class fails because they have not identified a reliable method to show class-wide injury using common evidence.

## II. DEALERS CANNOT SATISFY RULE 23 FOR ANY CLASS.

### A. Dealers' Class Action Waivers Preclude Class Certification.

CDK has explained that many Vendors and Dealers in the proposed classes are subject to enforceable class action waivers ("CAWs") that prevent class certification. ECF 1456 ("CDK Opp.") 12-16, 23-25. Vendors responded by changing their class definition and reducing the number of putative class members from 439 to 244, cutting the putative class by nearly 40 percent. *See* V. Reply 6. Dealers, however, argue that ████████████████████ ████████████████████████████ ECF 1478 ("D. Reply") 7. Their

arguments fail.





[4] ~~[redacted]~~ any such variance in contractual language is a predominance issue and defeats certification. *See, e.g.*, *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021).

█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
████████████████████████████████ [8]

Second, contrary to Dealers' argument (D. Reply 9-10), CDK has not waived the CAW in the MSAs. Waiver is a high bar. It requires an "intentional relinquishment of a known [contractual] right," *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 830 (7th Cir. 2019), more than "doubtful or equivocal acts or language," and "the burden of proof is on the person claiming" waiver—here, Dealers. *200 E. 87th St. Assocs. v. MTS*, 793 F. Supp. 1237, 1251 (S.D.N.Y. 1992), *aff'd*, 978 F.2d 706 (2d Cir. 1992); *see also PNC Bank, Nat'l Ass'n v. Boytor*, 2021 WL 4133540, at *23 (N.D. Ill. Sept. 10, 2021). Dealers have not met their burden. CDK raised its class waiver defense at the proper time—in response to Dealers' motion for class certification. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 853 (D. Md. 2013) ("Defendants could not have waived their rights to enforce the contractual clauses at issue until the class composition was final."); 1 McLaughlin on Class Actions § 2:14 (20th ed. 2023) ("prior to class certification the waiver is party-specific"); *In re Marriott Int'l, Inc.*, 78 F.4th 677, 685-88 (4th Cir. 2023) (CAW properly raised at class certification).[9] Nor did CDK waive its CAW argument merely by agreeing

---

[7]
[8]
█████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
creating predominance issues.
[9] CDK did not waive the defense by not raising it at summary judgment, either. D. Reply 10. The case dealers cite for this point, *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887 (7th Cir. 2020), is readily distinguishable. In *Brickstructures*, the defendant invoked an arbitration provision in a motion to dismiss, then **withdrew** its arbitration argument in response to a threat of sanctions, then waited to see how the dismissal motion resolved before invoking arbitration again. *Id.* The court noted that "taking certain

to the MDL. D. Reply 9-10. MDL courts enforce class waiver provisions unless "grounds … exist at law or in equity for [their] revocation," which is not the case here. *In re Checking Acct. Overdraft Litig.*, 672 F.3d 1224, 1226-30 (11th Cir. 2012) (enforcing class waiver); *Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 619-20 (9th Cir. 2013) (same**)**; *In re H & R Block Refund Anticipation Loan Litig.,* 59 F. Supp. 3d 903, 906-10 (N.D. Ill. 2014) (same). That makes sense. No defendant would agree to an MDL if the price was waiver of its contractual defenses.[10]

Dealers' other arguments are baseless. The CAWs, which were instituted *before* the class complaint was filed, are not a product of "improper communication," D. Reply 10-11, and there was nothing coercive about CDK maintaining "ongoing business relationships" and renewing contracts with CAWs while litigation was pending. *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 186–87 (S.D.N.Y. 2014).[11] Nor are the CAWs "unconscionable." D. Reply 11-12. A finding of "either procedural or substantive unconscionability … of class action waivers must be determined on a case-by-case basis." *Trejo v. Adv. Am., Cash Adv. Ctrs. of Ill., Inc.*, 2009 WL 10713823, at *2 (N.D. Ill. June 23, 2009). There is no procedural unconscionability where plaintiffs are "able to read the [relevant] [p]rovision," CDK Opp. 15 (citing cases), and there is no substantive unconscionability where claimed damages are large enough to warrant pursuing individual claims or arbitration, *id.* 15-16.[12]

---

actions, like filing a motion to dismiss …, does not automatically waive the right to arbitrate." *Id.* at 892.

[10] Agreeing to litigate cases "individually" is not incompatible with an MDL. Parties in an MDL do not act in a representative capacity. The constituent cases "remain fundamentally separate actions," temporarily brought together for pretrial proceedings. *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011).

[11] ████████████████████████████████████████████████████████████████████████████

[12] There is no merit to Dealers' remaining argument that Rule 23 "preempt[s]" a contractual provision they freely agreed to. D. Reply 8-9. Under the Rules Enabling Act, the Federal Rules cannot "abridg[e] … a substantive right" because the Act does not establish a "nonwaivable" "entitlement to class proceedings." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Where, as here, parties have contracted to waive class actions, a court may not "erase that expectation" to "vindicate federal policies[.]" *Id.*

At bottom, Dealers have provided no reason why the CAWs signed by thousands of dealers should not apply and prevent class certification. In any event, the types of individualized questions regarding enforceability that Plaintiffs raise, such as **which** dealers were bound by class waivers and **when**, defeat predominance. *See, e.g.*, *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021); *Spotswood v. Hertz Corp.*, 2019 WL 498822, *11, 13 (D. Md. Feb. 7, 2019) (similar).

### B. Dealers Do Not Have A Valid Method To Establish Injury Or Damages On A Classwide Basis.

Dealers also fail to show either that injury is subject to "common answers" with common proof, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), or that they have a valid method for calculating damages, *Comcast v. Behrend*, 569 U.S. 27, 34 (2013). Dealers try to dodge their Rule 23 burdens by claiming that Dealers' experts' methodology was already subjected to *Daubert* motions and the Court found Dr. Williams' approach "admissible for the purpose of proving [indirect purchaser] damages." D. Reply 12. But class issues were not litigated at summary judgment and Dealers' expert, Dr. Williams, offers new regression models to support class certification that expand the damages and injury period by almost five years. *Flynn v. FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022) (law of the case "does not apply at all where the precise issue presented differs from the one decided earlier"). Contrary to Dealers' contentions, D. Reply 12, and as CDK explained in its *Daubert* filing, ECF 1498 ("Williams Daubert Reply"), Williams' new analyses cannot establish classwide injury and damages for any Dealer class.

Williams' models are all unreliable because he does not account for fee waivers—instead, he drops ████████████████ of zero-dollar transactions from his overcharge, pass-through, and common impact models. Dealers claim that Williams declined to analyze fee waivers because ██████████████████████████████████ D. Reply 14. This argument is *post-hoc* and revisionist. Williams did not make a considered choice to exclude fee waivers; in fact, he did not

even know they existed when he filed his class report. *See* Williams Daubert Reply 3-4. But the argument is also wrong even according to the case Dealers cite. As discussed in CDK's Daubert Reply, *Contact Lens* permitted an expert to "hold … constant" discounts only where they were not "in any way connected" or "related" to the challenged conduct. *Id.* (citing *In re Disposable Contact Lens Antitrust.*, 329 F.R.D. at 386, 418-19 (M.D. Fla. 2018)). Here, the fee waivers related to the closure of CDK's DMS, which is what the alleged conspiracy is all about. Promoting a closed DMS (which would not have otherwise existed) was the entire point. *Id.*

Tellingly, Vendors' expert, Dr. Israel agrees with Dr. Haider that it is a fundamental econometric error to simply exclude these transactions. Israel included zero-dollar DIS prices in his analyses. ECF 1495-1 ("Israel Class Dep.") 196:12-197:22. He also testified that Williams' approach of excluding fee waivers leads to unreliable results. *Id*. at 201:21-202:1. Relatedly, Vendors told the Court that "***any valid method*** needs to include the fee waivers." ECF 1501. Caselaw is in accord: "[i]gnoring relevant data is not a scientifically valid method." *Cates v. Whirlpool Corp.,* 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017) (granting *Daubert* motion and denying class certification); *see also* Williams Daubert Reply 7 (collecting cases).

Williams' failure on this point renders his overcharge, pass-through, and common impact models irreparably flawed and inadequate to carry Dealers' burdens on injury or damages. *See In re Blood Reagents Antitrust Litig*., 783 F.3d 183, 187 (3d Cir. 2015) (inadmissible testimony cannot bear plaintiffs' burdens at Rule 23 stage); *see also In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 711–21 (E.D. Pa. 2020) (denying class certification, where even if admissible, model simply did not carry burden on predominance).[13] That is especially true where Williams'

---

[13] Williams calculates overcharges and estimates damages for a single period from 2015 through 2023. *See* Williams Class Rpt. 181–82 Tbls. A7, A8. His failure to account for fee waivers in several of those years thus throws off the entirety of his results.

overcharge models are constructed such that they *cannot* reliably account for fee waivers, as Dr. Haider explains.[14] *See* Haider Supp. Rpt. ¶¶ 71 & n.112.

Williams' pass-through model—which he uses to calculate damages—is infected by the fee waiver problem ***and additional inadequacies***. Dealers assert the model "uses representative transactional data," D. Reply 15, but that is wrong: Williams does nothing to show that the █ vendors that he studies ████—***the only ones for which he had sufficient data***—fairly represent the class as whole. *See* Williams Daubert Reply 8–11. That is not enough to carry Dealers' burdens or entitle them to five extra years of damages, particularly when the rates he does study vary from ████████.

Even setting these clear reliability issues aside, Dealers also do not have a way to prove injury with common proof, for any year of the class period. Dr. Williams' quantitative analyses all rely on averaging, which improperly glosses over distinctions within the class. Vendors and Dr. Israel are, again, more candid on this point: Israel admits that his average regressions cannot prove common injury. *See supra* 2. Dealers, for their part, do not grapple with the substance of this issue, but instead only cite inapposite cases and assert that averaging is sufficient. *E.g.*, D. Reply 12. But other cases find averaging ***in***sufficient, CDK Opp. 19-20, and Dealers ignore the different facts driving different results. Dealers' citations considered commodities, where all prices move in common, and where averaging may sometimes be more appropriate. *See* Williams Daubert Reply 11–15; *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *13-*15 (N.D. Ill. May 27, 2022) (stressing that "chicken is a commodity product").

---

[14] After filing three briefs and two expert reports, Dealers and Williams cannot pivot on sur-sur-reply to offer corrected opinions with a different but-for world and an approach to damages and injury that purportedly incorporates fee waivers. It is far too late for this change, especially since CDK has no opportunity left to respond. *See Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 3147349, at *1 (N.D. Ill. June 19, 2013) ("The reply report is not the appropriate vehicle for presenting new opinions."); *Allgood v. Gen. Motors Corp.,* 2007 WL 647496, at *3, *4 (S.D. Ind. Feb. 2, 2007) (similar).

CDK is not arguing that averaging is never sufficient at the Rule 23 stage or was not sufficient in other cases. *See* CDK Opp. 19. But CDK is arguing that averaging is not enough to carry Dealers' burdens of proof where it may "glide[] over" individualized differences, *Reed v. Advoc. Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009) (denying class certification), or ignore the "realities of the … industry," *In re Steel Antitrust Litig.*, 2015 WL 5304629, at \*9 (N.D. Ill. Sept. 9, 2015) (same). Dealers fail to show that averages do not "mask individualized injury" in *this case*, where Dr. Haider's analysis establishes that ███ of vendors are uninjured, *supra* 4, DIS is not a commodity that tracks a market price (and DIS markets are fractured as basic and complex DIS are not substitutes for each other), and even Dealers' own expert admits that pass-through rates vary from ██████. Williams Class Rpt. 51 Tbl. 3. Dealers address none of these problems. Nor do Williams' "common impact" regressions fix the problem—as discussed in the *Daubert* briefing, those models each incorporate the same average results, and so are only average models by another name. *See* Williams Daubert Reply 11-15.

Finally, at an absolute minimum, Dealers' 11-year class period must be pared back. *See* CDK Opp. 38–40. Williams' failure to account for fee waivers in any of his class models is reason enough to cut the class period back to ██████, when they were introduced. ECF 1460-11 ¶ 19. And Williams did not update his pass-through model at class certification, which means it does not include data after March 2019. CDK Opp. 10. Dealers give short shrift to other recent changes: Reynolds settled (and is not alleged to be conspiring); CDK introduced new products and services; and new competitors, who now take more rooftops each year than Reynolds does, energized competition. *See id.* 6-9, 38-39. Dealers downplay these changes, but the point is that Dealers (and their expert) did not study them. Dealers' assertion that "Dealers still pay inflated DIS fees due to the conspiracy," D. Reply 30, is thus unsupported, and cannot justify millions of dollars of

extra damages.[15]  The Court should deny Dealers' class certification motion in its entirety.  But if it does not, it should at least pare the class period back to October 2018 (when Reynolds settled) or ▮▮▮▮▮ (when fee waivers Williams failed to account for were introduced).[16]

## III.    SPECIFIC DEALER CLASSES MUST BE REJECTED.

### A.    Dealers' Nationwide Class Fails Due To Distinctions In State Laws.

Dealers do not dispute that if multiple state laws apply, the proposed nationwide class fails.  That is because some states allow indirect purchaser recovery (*Illinois Brick* repealer states) and others do not.  Dealers also agree that, under Illinois' choice-of-law ("COL") rules, the "most significant relationship test" governs which state's substantive law applies.  D. Reply 17.  However, Dealers contend that Illinois has the "most significant relationship" to this case such that its law should override the substantive law of 49 other states.  *Id*.  Dealers are wrong.

First, Dealers agree that the law of place of injury typically controls but argue that Dealers' locations are not the place of injury.  D. Reply 17-18.  Relying on personal injury and data-breach cases, Dealers claim that the "place of injury" is "indeterminate" and "fortuitous."  *Id*. 18.  But, in antitrust cases, courts are clear that the "place of injury" is not "fortuitous"—it is "where the plaintiffs were overcharged," *i.e.*, where they made their purchase, which is usually their home state.  *In re Skelaxin (Metaxalone) Antitrust Litig*., 299 F.R.D. 555, 586-89 (E.D. Tenn. 2014) ("most significant relationship" test pointed to indirect purchasers' home states, defeating nationwide class); *Jones v. Varsity Brands, LLC*, 2023 WL 5662590, at *14 (W.D. Tenn. Aug. 31,

---

[15] Dealers cite *In re Urethane Antitrust Litigation*, 768 F.3d 1245 (10th Cir. 2014) for the proposition that the "jury" must "evaluate the reliability of the underlying data, assumptions, and conclusions." *Id.* at *1263. But the Court, not the jury, must decide issues bearing on class certification. The Advisory Committee also recently rejected reasoning like *Urethane*'s: while "many courts have held that the critical questions of the sufficiency of an expert's basis … are questions of weight and not admissibility," "[t]hese rulings *are an incorrect application of Rules 702 and 104(a)*." Fed. R. Evid. 702 Adv. Comm. Note to 2023 Amendments.
[16] To the extent the Court allows post-2019 claims, CDK reserves its right to seek additional merits discovery for that period.

2023) (same).

Second, Dealers argue that—regardless of the place of injury—other factors "tip the balance in favor of Illinois law." D. Reply 18-19. For one, they claim that "CDK's relationship with Dealers was centered in Illinois" because CDK's "challenged conduct occurred in Illinois," and CDK's "headquarters" are in Illinois. *Id.* This ignores the weight of authority in antitrust cases holding that the place of injury (where the purchase was made) has the most significant relationship to the action. CDK Opp. 31-32.[17] Likewise, antitrust cases applying the most significant relationship test have refused to treat the place of the challenged conduct (or defendants' headquarters) as dispositive, *Jones*, 2023 WL 5662590, at *14 (denying nationwide class), especially where defendants are in "separate [s]tates," *Skelaxin*, 299 F.R.D. at 587-88 (same).[18] Dealers maintain that CDK has conceded Illinois substantive law applies merely by arguing that Illinois, as opposed to the Western District of Wisconsin, is the proper venue for the MDL, D. Reply 17 n.31—but venue raised a different question and the answer had nothing to do with which substantive law applied. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 3131 U.S. 487, 496 (1941). Dealers further claim that the fact that "CDK's MSA also featured an Illinois choice-of-law clause" further "supports treating Illinois as the center of the relationship." D. Reply 19. ███

████████████████████████████████████████████████████████████████████████████████

---

[17] Dealers' cases do not say otherwise. *See In re Air Crash Disaster Near Chi., Ill., on May 25, 1979*, 644 F.2d 594, 610 (7th Cir. 1981) (place of injury controlled when applying Illinois law to claims for wrongful death from airplane crash, not place of faulty aircraft design); *Esser v. McIntyre*, 661 N.E.2d 1138, 1142 (Ill. 1996) (applying Illinois law because (1) place of injury (Mexico) would leave plaintiff with "no remedy" and (2) plaintiff and defendant were both domiciled in Illinois); *Ingersoll v. Klein*, 262 N.E.2d 593, 594-95, 597 (Ill. 1970) (applying Illinois law because all parties were Illinois residents).

[18] In support, Dealers cite a single non-antitrust case—*Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 31 (D.D.C. 2019)—but there the court applied the law of defendants' headquarters (where advertising decisions were made) only because the "gravamen of the plaintiff's complaint [was based on] misrepresentation and false advertising"—not, as here, alleged overcharges based on transactions with vendors around the country.

███████████████████████.[19] ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

Finally, all of Dealers' arguments completely ignore the fact that Illinois has no obvious relationship to Reynolds—which is headquartered in Ohio—or to Reynolds dealers, who form a significant portion of the class. *Id.* 32; *In re Skelaxin*, 299 F.R.D. at 587-88 ("Where plaintiffs complain about the conduct of companies located in separate States …basing the choice-of-law on the defendant's headquarters is likely inappropriate."); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-47 (6th Cir. 2011) (similar). With no justifications left for applying Illinois law to override stated policy preferences of other states,[20] Dealers' nationwide class fails.[21]

### B. Dealers' Injunctive Relief Class Cannot Be Certified.

CDK's opposition brief explains that Dealers' injunctive relief class fails because Dealers do not explain what they want to enjoin and do not show a nonspeculative imminent injury. CDK Class Opp. 37. Dealers' reply brief cures neither problem. Dealers assert that "there is no lack of

---

[19] Dealers' use of *Morrison v. YTB Int'l., Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) is inapposite. Not only did the *Morrison* court explicitly hold "that a choice-of-law clause is *not dispositive*," there the court was considering a situation where the defendant uniformly "required all plaintiffs to assent to the application of Illinois law" in each of its choice-of-law clauses. *Id.* at 537-38. CDK did *not* uniformly select Illinois law in its MSAs with dealers and Reynolds' contracts did not feature Illinois law at all.

[20] *In re Automotive Parts Antitrust Litig.*, 2019 WL 7877812, at *2 (E.D. Mich. Dec. 20, 2019) is no help to Dealers. That decision allowed a nationwide class where plaintiffs brought claims under the law of their home states or "the place of purchase," which was not always the home state. *Id.* at *3. *In re Auto Parts* did not simply allow a nationwide class under any circumstances, and Dealers do not actually grapple with the facts of that case. Additionally, *In re Auto Parts* only certified a nationwide class for *settlement* purposes—the Court did not have occasion to grapple with a situation where material defenses under state law (including *Illinois Brick*) would actually be litigated. *In re Auto Parts*, notably, does not even mention *Illinois Brick*. Such inapposite authority does not support overruling the laws of all non-repealer states, especially where, as here, class members reside in and purchased and used DIS services in those states, and CDK is raising the *Illinois Brick* defense.

[21] Dealers' 26-state law class also fails. Dealers are incorrect in many of their assertions regarding state law, and cannot avoid the significant variation amongst the many states they seek to certify. *See* App'x G. Alaska and Wisconsin, for example, do not even permit indirect-purchaser suits at all. *Id.*

14

clarity," because, as they say in a footnote, they seek an injunction against "CDK's ongoing anticompetitive conduct." D. Reply 28 & n.59. But Dealers still never explain what this "ongoing anticompetitive conduct" is. Such vague and broad description is not enough to satisfy their burdens; "the injunctive relief sought must be described in reasonably particular detail to satisfy the requirements of Rules 23(b)(2) and 65(d)," *Haynes v. Dart*, 2009 WL 2355393, at *9 (N.D. Ill. July 29, 2009), and "[a] general request" that a defendant be restrained from some sort of unlawfulness "is insufficient," *Ward v. Hellerstedt*, 753 F. App'x 236, 249 (5th Cir. 2018). "Without a clear identification of the relief sought by plaintiffs, the court cannot determine the propriety of class certification." *Haynes*, 2009 WL 2355393, at *10.

Dealers also fail to show ongoing or imminent injury. They assert: "[s]imply put, CDK is still charging data integration fees." D. Reply 28. But that is beside the point. Plaintiffs do not explain how they can seek injunctive relief merely because defendants somehow fail to give their products or services away for free. Dealers have never argued that the mere act of charging an integration fee is unlawful (their claims are about a conspiracy causing an *overcharge*, not the fees themselves). Dealers' citation-free claim that "effects [of the conspiracy] persist to this day" is equally unavailing; Dealers offer no evidence for that proposition and do not explain how the Court could enjoin "effects" as opposed to ongoing conspiratorial conduct (which Dealers do not identify). This is especially true where Reynolds settled, withdrawing from the conspiracy, ECF 1381, 125, and Dealers neither contend that Reynolds is violating its settlement or explain how any injunctive relief sought (which is entirely undefined) would apply to Reynolds' dealers. Absent some description of ongoing conspiratorial conduct that the Court could actually enjoin, Dealers' injunctive-relief class should not be certified.

Dated:  May 31, 2024

Respectfully Submitted,

/s/ Mark Filip, P.C.
Mark Filip, P.C.
Kevin M. Jonke
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
mark.filip@kirkland.com
kevin.jonke@kirkland.com


Craig S. Primis, P.C.
Matthew J. Reilly, P.C.
K. Winn Allen, P.C.
Katherine Katz, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 389-5000
craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
katherine.katz@kirkland.com

*Counsel for Defendant CDK Global,
LLC*

## CERTIFICATE OF SERVICE

I, Mark Filip, an attorney, hereby certify that on May 31, 2024, I caused a true and correct copy of the foregoing **CDK Global LLC's Sur-Reply in Opposition to Class Certification** and accompanying exhibits to be filed in the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system. I caused a public version to be served on all registered participants via notice of electronic filing, and emailed copies of any documents filed under seal to plaintiffs' counsel of record.

*/s/ Mark Filip, P.C.*
Mark Filip, P.C.

# APPENDIX G

**Appendix G: State Law Responses[i]**

| | CDK Appendix E | Dealers' Reply | CDK's Response |
|---|---|---|---|
| **Statute of Limitations (Antitrust laws)** | **3 years**: Mississippi (Miss. Code. Ann. 15-1-49(1)).<br><br>**4 years**: Arizona (Ariz. Rev. Stat. Ann. § 44-1410), California (Cal. Bus. & Prof. Code § 16750.1), Hawaii (Haw. Rev. Stat. Ann. § 480-24), Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)), Iowa (Iowa Code Ann. § 553.16), Michigan (Mich. Comp. Laws Ann. § 445.781), Minnesota (Minn. Stat. Ann. § 325D.64), Nebraska (Neb. Rev. Stat. Ann. § 25-206), New Hampshire (N.H. Rev. Stat. Ann. § 356:12), New Mexico (N.M. Stat. Ann. § 57-1-12), New York (N.Y. Gen. Bus. Law § 340(5)), Oregon (Or. Rev. Stat. Ann. § 646.800), Rhode Island (R.I. Gen. Laws Ann. § 6-36-23), South Dakota (S.D. Codified Laws § 37-1-14.4), Utah (Utah Code Ann. § 76-10-3117), West Virginia (W. Va. Code Ann. § 47-18-11).<br><br>**6 years**: Vermont (12 Vt. Stat. Ann. tit. 12, § 511), Wisconsin (Wis. Stat. Ann. § 133.18). | **N/A** (Dealers do not dispute that state statute of limitations laws vary, *see* D. Reply 21-22 & n.43). | **N/A** |

| **Statute of Limitations (Consumer-protection laws)** | **2 years**: Alaska (Alaska Stat. Ann. § 45.50.531), West Virginia (W. Va. Code Ann. § 55-2-12).<br><br>**3 years**: Colorado (Colo. Rev. Stat. Ann. § 6-1-115), New Hampshire (N.H. Rev. Stat. Ann. § 358-A:3), South Carolina (S.C. Code Ann. § 39-5-150), Wisconsin (Wis. Stat. Ann. § 100.20).<br><br>**4 years**:  California (Cal. Bus. & Prof. Code § 17208), Florida (Fla. Stat. Ann. § 95.11), Nebraska (Neb. Rev. Stat. Ann. § 59-1612), Nevada (Nev. Rev. Stat. § 11.190(2)(d)), New Mexico (N.M. Stat. Ann. § 37-1-4). | **N/A** (Dealers do not dispute that state statute of limitations laws vary, *see* D. Reply 21-22 & n.43). | N/A |
| **Availability of Enhanced Damages (Antitrust laws)** | **No Enhanced Damages**: Mississippi (Miss. Code Ann. § 75-21-9), Nebraska (Neb. Rev. Stat. Ann. § 59-821), New York (*Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)).<br><br>**Additional Proof Required for Treble Damages**: Arizona (Ariz. Rev. Stat. Ann. § 44-1408(B)) ("flagrant"), Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)) ("willful"), Iowa (Iowa Code Ann. § 553.12) ("willful or flagrant"), Michigan (Mich. Comp. Laws Ann. § 445.778) ("flagrant"), New Hampshire (N.H. | **CDK misinterprets Iowa, New York, and Illinois rules on enhanced damages**.  (D. Reply 22-23 n.46).<br><br>**IA**: Iowa only allows double damages at jury's discretion. (Iowa Code Ann. § 553.12).<br><br>**NY**: New York allows treble damages in federal court because the "class action" bar under § 901(b) is inapplicable in federal court.  (ECF Nos. 1410 at 10 n.4; 1381 at 89 n.24; *In re Packaged Ice Antitrust Litig.*, | **IA:** While this argument might be true, (Iowa Code Ann. § 553.12 ("Recover, at the court's discretion, exemplary damages which do not exceed twice the actual damages awarded under subsection 2[.]")), it is irrelevant.  CDK does not cite the Iowa statute for the point that it offers treble damages. The key point is that availability of these enhanced damages is discretionary. *See* Iowa Code Ann. § 553.12. Even if Dealers were correct, it would not materially affect overall variation among states. |

| | | |
|---|---|---|
| Rev. Stat. Ann. § 356:11) ("willful or flagrant").<br><br>**Availability of Treble Damages Is Discretionary**: Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)) (court's discretion); Iowa (Iowa Code Ann. § 553.12) (court's discretion); Michigan (Mich. Comp. Laws Ann. § 445.778) (jury's discretion); New Hampshire (N.H. Rev. Stat. Ann. § 356:11) (jury's discretion); New Mexico (N.M. Stat. Ann. § 57-1-3) (jury's discretion). | 779 F. Supp. 2d 642, 661 (E.D. Mich. 2011)).<br><br>**IL:** Illinois does not require "willful" conduct for treble damages because they asserted a claim under 740 Ill. Comp. Stat. Ann. 10/7 § 3(1)(a). 740 Ill. Comp. Stat. Ann. 10/7 § 7(2). | **NY**: It is true that N.Y. Gen. Bus. Law § 901(b) is not a class action bar in federal court after *Shady Grove. Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400-01 (2010); *Id.* at 416 (Stevens, J., concurring). This does not materially affect overall variation among states.<br><br>**IL**: The statute provides for different remedies depending on under which statutory provision the plaintiff has sued. 740 Ill. Comp. Stat. Ann. 10/7 § 7(2). If the Plaintiff sues under § 7(1) or § 7(4), the plaintiff "shall be" awarded treble damages. *Id.* If they sue under § 7(2) or § 7(3), then the court "may, in its discretion" increase the amount to treble damages. *Id*. Plaintiffs say they are suing under § 3(1)(a), but that's not obvious in their compliant. ECF 198 (Class Action Compl.) ¶¶ 274-286. In fact, their allegations are best read as being asserted under 740 Ill. Comp. Stat. Ann. 10/7 § 3(2). *See id.* Even if Dealers were correct, it would not materially affect overall variation among states. |

| **Availability of Enhanced Damages (Consumer-protection laws)** | **No Enhanced Damages**: California (*Clark v. Super. Ct.*, 235 P.3d 171 (Cal. 2010)), Florida (Fla. Stat. Ann. § 501.211), Nebraska (Neb. Rev. Stat. Ann.§ 59-1609), Nevada (Nev. Rev. Stat. Ann.§ 598.0993), West Virginia (W. Va. Code Ann. § 46A-6-106).<br><br>**Enhanced Damages Limited to Double Damages**: Wisconsin (Wis. Stat. Ann. § 100.20(5)).<br><br>**Additional Proof Required for Treble Damages**: Colorado (Colo. Rev. Stat. Ann. § 6-1-113) ("clear and convincing evidence" of "bad faith conduct"), New Hampshire (N.H. Rev. Stat. Ann. § 358-A:10) ("willful or knowing"), New Mexico (N.M. Stat. Ann. § 57-12-10) ("willful"), South Carolina (S.C. Code Ann. § 39-5-140) ("willful or knowing").<br><br>**Availability of Treble Damages Is Discretionary**: New Hampshire (N.H. Rev. Stat. Ann. § 358-A:10) (court's discretion to award double or treble damages for "willful or knowing" violation); New Mexico (N.M. Stat. Ann. § 57-12-10) (court's discretion). | **CDK misinterprets Colorado rules on enhanced damages**. (D. Reply 22-23 n.46).<br><br>**CO:** Colorado allows only actual damages for a class action. (Colo. Rev. Stat. Ann. § 6-1-113(2) (a)(III)). | **CO**: It is true that Colorado limits damages "[i]n a case certified as a class action" to "actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs," Colo. Rev. Stat. Ann. § 6-1-113(2.9). But, because Colorado does not allow trebling, Colorado is still representative of variation among state laws. |

| Scope of Substantive Law (Antitrust laws) | **Requires Additional Elements:** Mississippi (requires proof of intrastate conduct) (*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y. 2019)). | N/A | N/A |
|---|---|---|---|
| Scope of Substantive Law (Consumer-protection laws) | **Proscribes Specific Enumerated Conduct Not Covering Antitrust Conduct:** West Virginia (W.Va. Code § 46A-6-102(7); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) (dismissing price-fixing allegations because "West Virginia's statute lists a number of unfair and deceptive practices in trade or commerce; price fixing is not among them").<br><br>**Requires Additional Proof of Reliance:** California (*Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172 (S.D. Cal. 2021)) ("[A]ctual reliance is a required element for standing to bring suit under the UCL.").<br><br>**Requires Additional Proof of Scienter:** Colorado (Colo. Rev. Stat. Ann. § 6-1-105(1)(rrr) (requires proof that defendant "knowingly or recklessly" engaged in unfair practice); Nevada (Nev. Rev. Stat. Ann. § 598.0923) (requires proof that | **CDK misinterprets the scope of West Virginia's consumer protection law.** (D. Reply 24).<br><br>**WV:** West Virginia's consumer protection statute covers antitrust conduct including price fixing. (*See* ECF 507 at 57-58; Dealer Br. at App'x C at 8). | **WV:** It is true that the Court has already ruled that West Virginia law covers anticompetitive conduct, ECF 507 at 57-58 (concluding that "the Court agrees with the reasoning of *In re Seafood* and concludes that the WVCCPA prohibits anticompetitive conduct."). This does not materially affect overall variation among states. |

|  |  |  |  |
|---|---|---|---|
|  | defendant "knowingly" violated statute); New Hampshire (*Kelton v. Hollis Ranch, LLC*, 927 A.2d 1243 (N.H. 2007)) ("The trial court properly construed the legislature's use of the words 'deceptive' and 'unfair' as requiring a degree of knowledge or intent."); New Mexico (N.M. Stat. Ann. § 57-12-2) (requires proof that act was "knowingly" made); West Virginia (W. Va. Code Ann. § 46A-6-102(7)(M) (requires proof that act was made "with intent that others rely upon such [act]").<br><br>**Requires Additional Proof of Other Elements:** Colorado (*Rhino Linings USA v. Rocky Mountain Rhino Lining*, 62 P.3d 142 (Colo. 2003)) (requires proof that conduct "significantly impacts the public as actual or potential customers of the defendant's goods, services, or property"); Nebraska (*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136 (Neb. 2000)) ("[T]he unfair or deceptive act or practice must have an impact upon the public interest."). |  |  |
| **Availability of Indirect Purchaser Suits** | **No Indirect Purchaser Suits Allowed In The First Place:** | **CDK ignores case law regarding Alaska and Wisconsin availability** | **AK:** The case cited by Dealers, *Generic Pharms. Pricing Antitrust Litig.*, 2022 WL 1470272, at *5, is inconsistent with Alaska statutes, |

| (Consumer-protection laws) | • **Alaska** (Alaska Stat. Ann. § 45.50.577(i)) ("Only the attorney general, in a suit brought under this section, may seek monetary relief for injury indirectly sustained for a violation."). *See In re Humira (Adalimumub) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020) ("No court has construed Alaska's consumer protection statute to permit claims based on alleged antitrust and monopolization conduct by indirect purchasers."); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155 (N.D. Cal. 2015) (similar); *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) (similar); *Miami Prods. & Chem. Co v. Olin Corp.*, 546 F. Supp. 3d 223 (W.D.N.Y. 2021) (similar).<br><br>• **Wisconsin** (Wis. Stat. Ann. § 100.20) ("Any person suffering pecuniary loss because of a violation by any other person of . . . any order issued under this section may sue for damages."). *See Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998) ("[N]o | **of indirect purchaser suits.** (D. Reply 24 & n.51, n.52).<br><br>**AK.** Dealer Br., App'x C at 1 (citing *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 2022 WL 1470272, at *5 (E.D. Pa. May 10, 2022).<br><br>**WI**. Dealer Br., App'x C at 9 (citing *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* 383 F. Supp. 3d 187, 252 (S.D.N.Y. 2019).). | Alaska Stat. Ann. § 45.50.577(i); Northern District of Illinois law, *In re Humira (Adalimumub) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020); and the weight of authority.<br><br>**WI:** *Keurig* says nothing of Wisconsin's consumer protection statute. *See Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* 383 F. Supp. 3d at 268 (listing state law claims under consumer protection statutes for "Arkansas, California, Massachusetts, Nebraska, New Mexico, and North Carolina"). |

| | | | |
|---|---|---|---|
| | private cause of action exists under § 100.20, except for violation of an order issued by the Department under this section."); *In re Photochromic Lens Antitrust Litig.*, 2011 WL 13141933 (M.D. Fla. Oct. 26, 2011) (similar). | | |
| **Availability of Duplicative Recovery** | **Mandatory Offset for Duplicative Recovery:** Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)), New York (N.Y. Gen. Bus. Law. § 340(6)), Rhode Island (R.I. Gen. Laws Ann. §§ 6-36-7, 6-36-11), Utah (Utah Code Ann. § 76-10-3109(6)), Vermont (9 Vt. Stat. Ann. tit. 9, § 2465(b)).<br><br>**Discretionary Offset for Duplicative Recovery:** Arizona (*Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003)), California (*Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010)), Hawaii (Haw. Rev. Stat. Ann. § 480-13(c)(2)), Minnesota (Minn. Stat. Ann. § 325D.57), Nebraska (Neb. Rev. Stat. Ann. § 59-821.01), South Dakota (S.D. Codified Laws §§ 37-1-25, 37-1-33), Wisconsin (Wis. Stat. Ann. § 133.18). | **N/A** (Dealers do not dispute that state availability of duplicate recovery laws vary, *see* D, Reply 22 n.44). | **N/A** |

| **Availability of Pass-On Defense** | **Presumes Overcharges Are Passed On to Downstream Purchasers:** Utah (Utah Code Ann. § 76-10-3109(7)).<br><br>**Permits Pass-On Defense Against Downstream Purchasers:** California (*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012)), Hawaii (Haw. Rev. Stat. Ann. § 480-13(c)(2)), Illinois (*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012)), Michigan (*In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1 (D.D.C. 2003)), Minnesota (*Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007)), Nebraska (Neb. Rev. Stat. Ann. § 59-821.01), New Mexico (N.M. Stat. Ann. § 57-1-3(C)), New York (N.Y. Gen. Bus. Law § 340(6)).<br><br>**At Least Some Courts Suggest Antitrust Statute Does Not Permit Pass-On Defense Against Downstream Purchasers:** Kansas (*Cox v. F. Hoffman-La-Roche*, 2003 WL 24471996 (Kan. Dist. Ct. Oct. 10, 2003)); Wisconsin (*K-S Pharms. Inc. v. Abbott Lab'ys.*, 1996 WL 33323859 (Wis. Cir. Ct. May 17, 1996)). | **California, Illinois, Michigan, and Minnesota Prohibit Pass-On Defense:** California, Illinois, Michigan, and Minnesota do not provide for a pass-on defense. (D. Reply 19 n.34, 21 n.38-41).<br><br>**CA:** *Clayworth v. Pfizer*, 233 P.3d 1066, 1086 (Cal. 2010); *County of San Mateo v. CSL Ltd.*, 2014 WL 4100602, at *5 (N.D. Cal. Aug. 20, 2014).<br><br>**IL:** 740 Ill. Comp. Stat. Ann. 10/7 § 7(2).<br><br>**MI:** Mich. Comp. Law § 445.778(2).<br><br>**MN:** *State by Humphrey v. Phillip Morris*, Inc., 551 N.W.2d 490, 497 (Minn. 1996).<br><br>**Hawaii, Nebraska, New Mexico, New York, and Utah Permit Pass-On Defense, but Not Under These Facts.** (D. Reply 21 n.42).<br><br>Utah (Utah Code Ann. § 76-10-3109(7)); Hawaii (Haw. Rev. Stat. § 480-13(c)(2)); Nebraska (Neb. Rev. Stat. § 59-821.01(1)); New Mexico (N.M. Stat. Ann. § 57-1-3) and New York (N.Y. Gen. Bus. Law § 340(6)). | **CA:** California plainly allows a pass-on defense in the exact circumstances identified by Dealers: "where multiple levels of purchasers have sued, or where a risk remains they may sue[.]" *Clayworth v. Pfizer*, 233 P.3d at 1086. Dealers do not cite any requirement in California law that pass-on has to occur form Dealers to consumers.<br><br>**IL.** The statute, 740 Ill. Comp. Stat. Ann. 10/7 § 7(2), does not mention pass-on. And case law suggests it is available. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6709621, at *4 (N.D. Cal. Dec. 26, 2012) ("The Court concludes that in the absence of any authority precluding the pass-on defense under Illinois law, it is appropriate under the circumstances of this MDL to permit defendants to assert a pass-on defense.").<br><br>**MI.** Dealers admit that Mich. Comp. Law § 445.778(2) is silent on pass-on. Their attempts to distinguish *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 9 (D.D.C. 2003) are unpersuasive; Dealers don't explain why the procedural posture of the case and the presence |

of a direct purchaser affects the court's conclusion that pass-on is available. *Id.* ("The Court finds that evidence of pass through may be relevant to an affirmative defense by defendants' that Kellogg did not suffer 'actual damages' as required under Michigan antitrust law.").

**MN**. It is true that Minnesota has abolished the pass-on defense. *Humphrey v. Philip Morris Inc.*, 551 N.W.2d at 497 (noting that Minnesota "abolish[ed] the availability of the pass through defense[.]"). This does not materially affect overall variation among states.

**HI, NE, NM, NY, and UT.** Dealers merely cite to *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 3064462, at *4 (E.D. Va. Apr. 18, 2023) to say that these states permit a pass-on defense but not under the circumstances in this case. Whether a pass-on defense is ultimately available under the circumstances here is a factual issue that does not affect the variability among the relevant statutes.

---

[i]     Dealers also argue that each of the relevant states have so-called harmonization provisions.  D. Reply 20.  According to Dealers, these harmonization provisions—which ostensibly harmonize state antitrust and consumer protection laws with federal law—make it so that "minor differences . . .between state laws. . . [are not] substantive enough to cause a predominance issue." *Id.*

     That's not quite right.  While state harmonization provisions certainly attempt to align the state law with federal law, they do not always do so.  *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *10 (N.D. Cal. Oct. 2, 2014) ("[S]imply because a state statute encourages reference to federal law does not impose a mandate on state courts to conform in fact to federal law.").  Dealers could have, but did not, engage in the "back-breaking labor" needed to determine the scope of these harmonization provisions.  *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 723 n.11 (E.D. Pa. 2020) ("[Plaintiffs'] references to generic federal antitrust harmonization provisions does not provide the Court with the individualized analysis of the applicable states' laws to determine whether each state would permit a pass-on defense . . . .");  *Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *10 ("[T]he question of how harmonious with federal antitrust law a state's harmonization statute requires state antitrust law to be is, itself, a complex question of state law not addressed by the parties.").  In fact, their own cites to statutory language and case law suggest that the harmonization provisions for many of these states do not do what Dealers think they do.  *See* ECF 1425-02 at 2 (explaining that Illinois law only looks to federal decisions as *persuasive* authority); ECF 1425-03.  In any event, harmonization provisions do not purport to override otherwise unambiguous case law or statutory language.  *Oliver v. Am. Express Co.*, 2020 WL 2079510, at *16 (E.D.N.Y. Apr. 30, 2020) ("A harmonization provision in a state's antitrust statute does not require a state's Supreme Court to find that state antitrust law must be analyzed under the federal standard." (emphasis omitted));  *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1153 (N.D. Cal. 2009) ("This Court, however, is reticent to adopt an across-the-board rule that a state's harmonization provision, whether created by statute or common law, is an appropriate means of predicting how a state's highest court would rule regarding [antitrust standing].").