# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 | **PUBLIC-REDACTED** |

## PLAINTIFF AUTOLOOP'S SUR-RESPONSE
## IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION

**INTRODUCTION**

In its sur-reply, CDK addresses only one issue with respect to the Vendor Class: whether antitrust injury is a common question. But CDK's arguments on this issue are meritless under Seventh Circuit precedent, which allows plaintiffs to demonstrate antitrust injury based on common evidence of marketwide consumer harm, and does not require proof of injury for every single class member at certification. *See* Dkt. 1472 ("Reply Br.") at 7-12. None of CDK's three sur-reply arguments can overcome that fundamental point. First, CDK points to a sentence in a footnote of Dr. Israel's reply report as a supposed "concession" that his regression analysis cannot prove antitrust injury on a classwide basis. CDK is truly grasping at straws. That sentence merely states what all economists agree on – that regression analyses establish statistical *association* rather than *causation*. Economists rely on other evidence to infer causation from that statistical association – and that is exactly what Dr. Israel did, in literally hundreds of pages of expert reports. Second, CDK argues that years of Seventh Circuit law were abrogated by the Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). But that is clearly wrong: *TransUnion* expressly declined to alter the standards for class certification under Rule 23(b)(3), as numerous post-*TransUnion* cases have held. And lastly, CDK reprises Dr. Haider's opinions that Dr. Israel's regressions – if modified to her specifications – would show that certain class members were not harmed. As an initial matter, the Court limited any sur-reply report to an analysis of Authenticom's refreshed data, *see* Dkt. 1489, but Dr. Haider instead went far afield from this instruction and instead repackaged her prior opinions. Even putting that procedural impropriety aside, under Seventh Circuit law, CDK's arguments are properly addressed to the jury. They do not justify denying class certification, which would significantly prolong this already long-running MDL by forcing class members to file a raft of new individual lawsuits to vindicate their claims. In the end,

all the ink spilled by CDK cannot change the fact that a direct-purchaser antitrust case alleging collusion by duopolists is a paradigm case for class certification under *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The Vendor Class's class-certification motion should be granted.

## ARGUMENT

**I.  Dr. Israel Did Not Concede That His Economic Analysis Is Incapable of Proving Antitrust Injury On A Classwide Basis**

CDK's lead argument (at 2) is that the Vendor Class has no common evidence of antitrust injury because Dr. Israel "conceded" in a footnote that his regression models cannot prove causation. That is nonsense. All economists (and courts) agree that a multiple regression model establishes statistical correlation (i.e., "association"), not causation. *See* Ex. A ("Israel Suppl. Sur-reply") ¶ 27; *see, e.g.*, *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1044 (7th Cir. 1988) (With regressions, "[c]orrelation is not causation."). CDK's effort (at 2) to twist that so-called "concession" into an argument that "Vendors have no common proof of harm" badly mischaracterizes Dr. Israel's report and misunderstands basic principles of economic analysis.

As Dr. Israel explains in the *very paragraph* to which CDK points, his opinion that the conspiracy caused antitrust injury to the entire Vendor Class is not based solely on the statistical association shown by his models. Instead, he explained, it is "the role of economic analysis" – in addition to statistical analysis – to determine whether the conduct at issue "caused injury." Dkt. 1474-1 ("Israel Suppl. Reply") ¶ 81; *see* Israel Suppl. Sur-reply ¶ 28. Indeed, that is a well-accepted point that a different CDK expert in this MDL (one whom CDK notably did *not* enlist to rebut Dr. Israel's analysis) has explained in the *Reference Manual on Scientific Evidence*,[1] and that Dr. Israel described in an authoritative text that he co-authored, and Dr. Haider herself relied on:

---

[1] *See* Daniel L. Rubinfeld, *Reference Guide on Multiple Regression*, in Federal Judicial Center, *Reference Manual on Scientific Evidence* 309-310 (3d ed. 2011) ("In interpreting the results of a multiple regression analysis, it is important to distinguish between correlation and

> The combination of: (1) a properly specified econometric model showing that an explanatory variable has a statistically significant partial effect on the dependent variable, holding constant other factors; and (2) a sound economic theory explaining why one would expect the explanatory variable to have a causal effect, can together provide evidence consistent with the existence of a causal relationship and an estimate of the magnitude of the effect.

Ex. B, ABA, *Proving Antitrust Damages* 131 (3d ed. 2017); *see also EEOC v. Sears*, 839 F.2d 302, 360 (7th Cir. 1988) (Cudahy, J., concurring in part and dissenting in part) ("Regression statistics by themselves only demonstrate correlations between variables; to move from correlation to causation, there must be some independent theory about the causal relationships of the variables.").

Dr. Israel's merits opinions provide both the statistical models (association) and the economic theory (causation). His difference-in-differences ("DID") and before-and-during ("B&D") models show a statistically significant correlation between higher data integration prices and the CDK-Reynolds conspiracy. And his merits reports offer an extensive causal explanation for that correlation grounded in economic theory: the conspiracy eliminated competing data integrators from the market, with the natural economic result of higher prices and reduced vendor choice. *See* Dkt. 1470 ("*Daubert* Opp.") at 3-4; *see* Israel Suppl. Reply ¶ 81 & n.130 (citing analysis in Israel Report §§ VI, VII.A and Israel Reply Report §§ VIII, IX).[2] CDK tries to dismiss

---

causality. . . . Causality cannot be inferred by data analysis alone; rather, one must infer that a causal relationship exists on the basis of an underlying causal theory that explains the relationship between the two variables.").

[2] The reason that Dr. Israel noted statistical regressions cannot prove causality was to explain a flaw in Dr. Haider's opinions – not to "retreat" from his prior opinions, as CDK has wrongly claimed elsewhere. *See* Dkt. 1497 at 3. Dr. Israel's point was that regressions – whether his or Dr. Haider's – cannot establish either the existence of causation or lack thereof by themselves. Rather, to negate causation,

(at 2) Dr. Israel's economic analysis as "abstract hypotheses" – but this Court has already held that Dr. Israel's economic analysis is reliable proof that a factfinder may reasonably rely upon to find that Defendants' collusion caused antitrust injury. *See* Dkt. 1321 (*Daubert* Op.) at 22-29; Dkt. 1381 (SJ Op.) at 68-74.³ All of CDK's lengthy protestations about antitrust injury cannot obscure the elephant in the room: it is hardly controversial that a conspiracy by two dominant duopolists to eliminate competition by lower-priced rivals would naturally lead to supracompetitive prices and a reduction in consumer choice in the affected market.

## II. *TransUnion* Did Not Alter The Standard For Class Certification

CDK next argues (at 3-4) that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), changed the Rule 23(b)(3) standard to require plaintiffs to "sort[] out" injured and uninjured class members at class certification. That is wrong: *TransUnion* held that members of a certified class must have Article III standing to prevail on the merits, but it expressly declined to address "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *Id.* at 431 n.4 (emphasis in original). CDK cites no authority supporting its contention that *TransUnion* altered the standards for class certification,⁴ and multiple courts have rejected it.⁵

---

³ Neither of CDK's cases (at 2) concerned antitrust claims or otherwise bears resemblance to the questions before the Court. *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 253-54 (4th Cir. 2020) (noting that the "deprivation of impartial and fair competition" was not the kind of "harm to consumers that Congress sought to prevent" in RESPA, unlike the Sherman Act); *Patterson v. Howe*, 96 F.4th 992, 998 (7th Cir. 2024) (an FDCPA plaintiff's "subjective beliefs or fears" were not concrete injury, unlike economic harms).

⁴ The court's comment in *Moss v. United Airlines, Inc.*, 20 F.4th 375, 379 n.7 (7th Cir. 2021), that *TransUnion* "sets the stage" for a "renewed examination" of the relationship between Article III and Rule 23 did not alter existing Seventh Circuit precedent.

⁵ *See, e.g.*, *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 155 (3d Cir. 2023) (under *TransUnion*, "at certification, . . . it is not necessary for each member to prove his or her standing for the class action to be justiciable"); *In re EpiPen Mktg., Sales Practices and Antitrust Litig.*, 2021 WL 5918912, at *9 (D. Kan. Dec. 15, 2021) ("*TransUnion* never holds or even implies that class certification requires every class member to demonstrate standing. To the contrary, the Supreme Court said explicitly that it wasn't addressing that question."); *In re AXA Equitable Life*

*TransUnion* thus leaves undisturbed preexisting Seventh Circuit law, including (but not limited to) *Kleen Products LLC v. Int'l Paper Co.*, 831 F.3d 919 (7th Cir. 2016), in which the Court held: "While we have no quarrel with the proposition that each and every class member would need to make such a showing in order ultimately to recover, we have not insisted on this level of proof at the class certification stage." *Id.* at 927; Reply Br. 7-12 (discussing additional cases). Like CDK, the Defendants in *Kleen* contended at class certification that "it is not enough for Purchasers to prove aggregate injury and one aggregate overcharge, without allocating how much of that overcharge was paid by each individual class member." *Id.* at 927. The Seventh Circuit's rejection of that argument applies equally here.[6]

This Court's decision in *Hansen v. Country Mutual Insurance Co.*, 2023 WL 6291629, at *28 (N.D. Ill. Sept. 25, 2023) (Pallmeyer, J.), does not help CDK. This Court's primary holding was that there was not even a single common question binding the class, thus flunking Rule 23(a) and obviating the need to address Rule 23(b)(3). In addressing predominance in *dicta*, the Court also noted, consistent with Seventh Circuit precedent, that evidence of classwide injury is "not strictly necessary at the class-certification stage." *Id.* It nevertheless observed that "in the insurance context," whether a compensable loss occurred raises "highly individualized questions

---

*Ins. Co. COI Litig.*, 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023) (similar); *Utne v. Home Depot USA, Inc.* 2022 WL 1443338, at *8 (N.D. Cal. May 6, 2022) (similar); 1 Newberg and Rubenstein on Class Actions § 2:3 (6th ed.) (collecting cases).

[6] Under Seventh Circuit law, the only problem for class certification would be the inclusion of many class members who "could not have been harmed" – a problem CDK does not even argue exists here. The Seventh Circuit's "critical" distinction "between class members who were not harmed and those who could not have been harmed," *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824-25 (7th Cir. 2012), has nothing to do with the burden of proof, contrary to CDK's claims (at 2-3). It merely clarifies what plaintiffs' burden is at class certification. And, contrary to CDK's attempt (at 3 n.3) to brush the problem aside, its position that every class member must prove injury at the class certification stage would require "fail-safe" classes because it would require the class to be "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Id.* at 825.

- 5 -

of fact" for which "[t]he class-action device is not appropriate." *Id.* at *29. That was the context for the Court's statement that the presence of many uninjured class members could raise predominance concerns. That concern does not exist here, because the Vendor Class has adduced reliable proof of marketwide harm of the kind the Seventh Circuit has repeatedly held to be sufficient to prove antitrust injury on a classwide basis. *See* Reply Br. 7-12. And again, the issue here is a cartel that extinguished competition in the market – conduct that would naturally lead to marketwide harm.

### III. Dr. Haider's Criticisms of Dr. Israel Do Not Show That Antitrust Injury Raises Individualized Issues

Finally, CDK repeats (at 4) Dr. Haider's opinions that Dr. Israel's DID and B&D regressions – if modified to her specifications – would show that certain class members were not harmed. But "[a]ll of this is at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification." *Messner*, 669 F.3d at 823. Indeed, Dr. Haider's critiques of Dr. Israel's regressions themselves rely on common methods that can be applied to all class members without consideration of individualized evidentiary issues. *See* Reply Br. 10-11. CDK makes no attempt to show that a trial would involve so many individualized evidentiary issues that class members should be forced to bring their own individual lawsuits in order to assert their claims – a result that would be highly inefficient given the already-protracted proceedings in this MDL.

In addition to being irrelevant to class certification, CDK's arguments lack merit. Dr. Haider's regressions for ▪▪▪ vendors do not prove lack of overcharge; they show lack of statistical significance due to smaller amounts of data. *See* Reply Br. 19; Israel Suppl. Sur-reply ¶¶ 18-21 (thin slicing of data). As CDK has conceded elsewhere, the use of "pooled data" is an accepted methodology, and Dr. Israel explains that it is appropriate for use in this case because it

- 6 -

provides more statistically robust results. *See* Daubert Opp. 9; Israel Suppl. Sur-reply ¶¶ 22-24 (inappropriateness of a non-pooling approach – that is, vendor-specific regressions). And finally, Dr. Israel has already responded to Dr. Haider's insistence on ▮▮▮▮▮▮▮▮ (which courts uniformly reject as a legal requirement) by showing that accounting for her criticism has no material effect on his results. *See* Daubert Opp. 10-11; *see also* Israel Suppl. Sur-reply ¶¶ 22-24 & n.42 (addressing ▮▮▮▮▮▮▮▮▮▮▮▮).

*     *     *

In short, basic economics and common sense establish that antitrust injury in this case presents a common question: CDK and Reynolds conspired to eliminate competing data integrators, thus driving up prices and depriving vendors of higher quality services. *See* Reply Br. 8-9. All consumers in the market were presumptively harmed by that conduct, as Dr. Israel's statistical models and economic analyses confirm empirically. In its *Daubert* and summary judgment rulings, this Court held that there was sufficient and reliable proof of AutoLoop's individual claims (including antitrust injury). That proof is common to all vendors; every class member could rely on that same evidence to make a *prima facie* showing of antitrust injury. *Id.* That is all that class-certification requires the Vendor Class to prove. CDK's attempts to rebut that evidence are for the jury, as they merely offer competing (but still common) methodologies. As has been shown now in multiple rounds of briefing, CDK's arguments cannot overcome those fundamental points.

## CONCLUSION

AutoLoop respectfully requests that the Court grant class certification, appoint AutoLoop as class representative, and appoint Kellogg Hansen and Prof. Samuel Issacharoff as class counsel.

Dated: June 10, 2024

Respectfully submitted,

*/s/ Derek T. Ho*

Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
Joshua Hafenbrack
Collin R. White
Bethan R. Jones
Ana N. Paul
Daren G. Zhang
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
(202) 326-7900
Washington, D.C. 20036
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com
cwhite@kellogghansen.com
bjones@kellogghansen.com
apaul@kellogghansen.com
dzhang@kellogghansen.com

*MDL Co-Lead Counsel and Interim Class Counsel representing Loop, LLC, d/b/a AutoLoop on behalf of itself and all others similarly situated*

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
si13@nyu.edu

*MDL Coordinating Counsel*

- 9 -

## CERTIFICATE OF SERVICE

      I, Derek T. Ho, an attorney, hereby certify that on June 10, 2024, I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S SUR-RESPONSE IN SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                    */s/ Derek T. Ho*
                                    Derek T. Ho
                                    **KELLOGG, HANSEN, TODD,**
                                     **FIGEL & FREDERICK, P.L.L.C.**
                                    1615 M Street, N.W., Suite 400
                                    Washington, D.C. 20036
                                    (202) 326-7900
                                    dho@kellogghansen.com