PUBLIC REDACTED VERSION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 <br> Case No. 18-cv-00864 |
| This Document Relates: <br> THE DEALERSHIP CLASS ACTION | Hon. Rebecca R. Pallmeyer |

## DEALERSHIP CLASS PLAINTIFFS' SUR-RESPONSE IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................................ii

GLOSSARY OF TERMS .........................................................................................................v

I.    Class Action Waivers Do Not Preclude Class Certification ..........................................1

    A.    Dealers' Claims are Outside the Scope of the Master Service Agreements ...................1

    B.    CDK Waived Class Action Waiver Defense ...................................................1

II.    Dealers Show Injury and Damages on a Classwide Basis ...........................................3

    A.    Dealers Show Classwide Injury Via Common Proof ......................................3

    B.    CDK's Arguments Concerning Fee Waivers are Wrong .................................3

    C.    CDK's Attacks on Pass-Through and Averaging Also Fail ..............................5

    D.    There is No Reason to Limit Dealers' Class Period .........................................7

III.    The Court Should Certify a Nationwide Class Under Illinois Antitrust Act ............................7

IV.    Dealers' State Law Damages Class Should be Certified ..............................................9

V.    The Court Should Certify the Injunctive Class .........................................................10

CONCLUSION .......................................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*200 E. 87th St. Assocs, v. MTS,*
  793 F. Supp. 1237 (S.D.N.Y. 1992) .......................................................................................................2

*Am. Exp. Co. v. Italian Colors Rest.,*
  570 U.S. 228 (2013) ...............................................................................................................................2

*B.K. v. Snyder,*
  922 F.3d 957 (9th Cir. 2019) .............................................................................................................10

*Brickstructures, Inc. v. Coaster Dynamix, Inc.,*
  952 F.3d 887 (7th Cir. 2020) ...............................................................................................................2

*D&M Farms v. Birdsong Corp.,*
  2020 WL 7074140 (E.D. Va. Dec. 2, 2020) ....................................................................................6

*Dodona I, LLC v. Goldman, Sachs & Co.,*
  300 F.R.D. 182 (S.D.N.Y. 2014) ..........................................................................................................2

*Esser v. McIntyre,*
  661 N.E.2d 1138 (Ill. 1996) ...............................................................................................................8

*Gore v. Allied Commc'ns, LLC,*
  666 F.3d 1027 (7th Cir. 2012) ...........................................................................................................1

*Hayes v. Dart,*
  2009 WL 2355393 (N.D. Ill. July 29, 2009) .................................................................................10

*In re Air Crash Disaster Near Chi. Ill.,*
  644 F.2d 594 (7th Cir. 1981) .............................................................................................................8

*In re Blood Reagents Antitrust Litig.,*
  783 F.3d 183 (3d Cir. 2015)................................................................................................................4

*In re Broiler Chicken Antitrust Litig.,*
  2022 WL 1720468 (N.D. Ill. May 27, 2022) ..................................................................................6

*In re Class 8 Transmission Indirect Purchaser Antitrust Litig.,*
  140 F.Supp.3d 339 (D. Del. 2015) ....................................................................................................4

*In re Google Assistant Privacy Litig.,*
  2024 WL 251407 (N.D. Cal. Jan. 23, 2024) ...................................................................................2

*In re Korean Ramen Antitrust Litig.,*
  2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ...................................................................................6

*In re Lithium Batteries Antitrust Litig.,*
  2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ........................................................................... 4

*In re Marriott Int'l Customer Data Sec. Breach Litig.,*
  345 F.R.D. 137 (D. Md. 2023) ............................................................................................. 2, 3

*In re Niaspan Antitrust Litig.,*
  464 F. Supp. 3d 678 (E.D. Pa. 2020) ..................................................................................... 4

*In re Skelaxin (Metaxalone) Antitrust Litig.,*
  299 F.R.D. 555 (E.D. Tenn. 2014) ........................................................................................ 8

*In re Titanium Dioxide Antitrust Litig.,*
  962 F. Supp. 2d 840 (D. Md. 2013) ....................................................................................... 2

*In re Vitamin C Antitrust Litig.,*
  279 F.R.D. 90 (S.D.N.Y. 2012) ........................................................................................... 10

*In re Disposable Contact Lens Antitrust,*
  329 F.R.D. 336 (M.D. Fla. 2018) ....................................................................................... 4, 6

*Ingersoll v. Klein,*
  262 N.E.2d  (Ill. 1970) ........................................................................................................ 8

*Jones v. BRG Sports, Inc.,*
  2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) ........................................................................... 2

*Jones v. Varsity Brands,*
  2023 WL 5662590 (W.D. Tenn. Aug. 31, 2023) ..................................................................... 8

*Krukas v. AARP, Inc.,*
  376 F. Supp. 3d 1 (D.D.C. 2019) .......................................................................................... 9

*Martrano v. Quizno's Franchise Co.,*
  2009 WL 1704469 (W.D. Pa. June 15, 2009) ......................................................................... 2

*Moehrl v. Nat'l Ass'n of Realtors,*
  2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) ........................................................................ 10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
  31 F.4th 651 (9th Cir. 2022) ................................................................................................ 6

*Pittway Corp. v. Lockheed Aircraft Corp.,*
  641 F.2d 524 (7th Cir. 1981) ............................................................................................... 8

*United States v. Alhaggagi,*
  978 F.3d 706 (2d Cir. 1992) ................................................................................................. 2

*Ward v. Hellerstedt,*
  753 Fed.Appx. 236 (5th Cir. 2018) ...................................................................................... 10

*Wilk v. Am. Medical Ass'n*,
  895 F.2d 352 (7th Cir. 1990) ........................................................................................................................10

**GLOSSARY OF TERMS**

| Term | Document |
|---|---|
| Conver Decl. | Declaration of Leigh Ann Conver attached as Ex. 11 to the Omnibus Declaration of Katherine R. Katz ("Katz Decl.") in Support of CDK Global, LLC's Opposition to Class Cert and Motions to Exclude Expert Opinions and Testimony (ECF No. 1460-11) (Feb. 23, 2024) |
| MSA | Master Services Agreement |
| Dealer Br. | Memorandum of Law in Support of Dealership Class Plaintiffs' Motion for Class Certification (ECF No. 1425) (Nov. 21, 2023) |
| Ex. __ | All Exhibits referenced herein are appended to the accompanying Wedgworth Decl. unless indicated otherwise. |
| Haider *Daubert* Reply | Dealership Class Plaintiffs' Reply in Support of Motion to Exclude the Expert Testimony of Dr. Laila Haider (ECF No. 1514) (June 10, 2024) |
| Haider Rpt. | Expert Rebuttal Report of Dr. Laila Haider attached as Ex. 1 to the Katz Decl. (ECF No. 1460-1) (Feb. 23, 2024) |
| Katz Decl. | Omnibus Declaration of Katherine R. Katz in Support of CDK Global, LLC's Opposition to Class Cert and Motions to Exclude Expert Opinions and Testimony (ECF No. 1462) (Feb. 23, 2024) |
| Murphy Rpt. | Expert Report of Dr. Kevin Murphy (ECF No. 875-11) (Nov. 15, 2019) |
| Opp. | CDK Global, LLC's Opposition to Motions for Class Certification (ECF No. 1456) (Feb. 23, 2024) |
| Sur-Reply | CDK Global, LLC's Sur-Reply in Opposition to Class Certification (ECF No. 1509) (May 31, 2024) |
| Wedgworth Decl. | Declaration of Peggy J. Wedgworth (June 14, 2024) |
| Williams *Daubert* Opp. | Dealership Class Plaintiffs' Opposition to CDK's Motion to Exclude Testimony of Dr. Michael A. Williams, Ph.D. (ECF No. 1476) (Apr. 12, 2024) |
| Williams *Daubert* Reply | Reply in Support of CDK Global LLC's Motion to Exclude the Testimony of Dr. Michael Williams (ECF No. 1498) |
| Williams Merits Rpt. | Expert Report of Michael A. Williams, Ph.D. (ECF No. 975-79) (Aug. 26, 2019) |
| Williams Rpt. | Expert Class Certification Report of Dr. Michael A. Williams, Ph.D. (ECF No. 1426) (Nov. 21, 2023) |
| Williams Reply Rpt. | Expert Class Certification Reply Report of Michael A. Williams, Ph.D. (ECF No. 1479-1) (Apr. 12, 2024) |
| Williams Suppl. Rpt. | Expert Sur-Reply Class Certification Report of Michael A. Williams, Ph.D. (Ex. A to Wedgworth Decl.) (June 14, 2024) |
| ECF No. 64 | Parties (Corrected) Joint Initial Status Report (Mar. 15, 2018) |

| Term | Document |
|------|----------|
| ECF No. 265 | Defendant CDK Global, LLC's Memorandum in Support of Motion to Compel Arbitration and Stay Claims Or, in the Alternative, to Dismiss the Dealership Consolidated Class Action Complaint (July 18, 2018) |
| ECF No. 767 | Stipulation and [Proposed] Order Regarding CDK Global, LLC's Third Party Access Agreements with Loop, LLC d/b/a Autoloop and Members of the Putative Vendor Class (Oct. 1, 2019) |
| ECF No. 973 | CDK Memorandum In Support Of Summary Judgment Motion in Dealership Class Action (May 20, 2020) |
| ECF No. 1146 | Transcript of Proceedings before the Honorable Chief Judge Rebecca R. Pallmeyer (Dec. 14, 2023) |
| ECF No. 1321 | Memorandum Opinion and Order on Daubert Motions (Jan. 21, 2022) |
| ECF No. 1381 | Memorandum Opinion and Order on Defendants' Motions for Summary Judgment (June 29, 2023) |
| ECF No. 1382 | Memorandum Opinion and Order on The Dealership Counter-Defendants' Motion for Summary Judgment on CDK's Counterclaims (June 29, 2023) |
| ECF No. 1462-38 | Exhibit 38 to the Katz Decl. (June 30, 2020 Addendum to Master Services Agreement between CDK Global LLC and Waconia Dodge) |
| ECF No. 1474-1 | Supplemental Reply Expert Report of Mark A. Israel, Ph.D. (Apr. 11, 2024) |
| ECF No. 1477 | Dealership Class Plaintiffs' Motion to Exclude the Opinions and Proposed Testimony of Dr. Laila Haider (Apr. 12, 2024) |
| ECF No. 1500 | Dealership Class Plaintiffs' Motion to Strike the Vendor Class's Statement of Interest and Supplemental Expert Report of Mark A. Israel Regarding Dealers' Motion to Exclude the Testimony of Dr. Laila Haider (May 23, 2024) |
| ECF No. 1501 | The Vendor Class's Response to Dealers' Motion to Strike (May 24, 2024) |
| ECF No. 1508 | Dealership Class Plaintiffs' Reply to CDK Global LLC's Opposition to Dealers' Motion to Strike the Vendor Class's Statement of Interest and Supplemental Expert Report (May 31, 2024) |

Dealers respectfully submit this Sur-Response in further support of class certification.

## I.     Class Action Waivers Do Not Preclude Class Certification

### A.     Dealers' Claims are Outside the Scope of the Master Service Agreements

Dealers' claims fall outside the scope of those MSAs with Class Action Waivers ("CAW"). Reply at 7-8. Under the Court's ruling (which accepted CDK's *Illinois Brick* argument), the claims concern CDK's fees to Vendors which were passed onto Dealers – not fees charged *for the DMS* under MSAs. *See* ECF 1381 at 67; *see also* Opp. at 34 ("CDK's DMS contracts … do not even govern the relevant transactions"). *Gore v. Allied Commc'ns, LLC*, 666 F.3d 1027 (7th Cir. 2012) does not aid CDK because, as viewed by the Court (and until now, CDK), the DIS fees, passed on by Vendors to Dealers, are not "inextricably linked to the services" Dealers received under the MSA. *See id.* at 1033 (quoted in Sur-Reply at 5). CDK's contention that MSAs "in many cases, regulate the price [CDK] may charge for its [DIS fees]" (Sur-Reply at 5 n.6 (brackets in original, citation omitted)), is belied by the record.[1]

The CAW also is not retroactive. Reply at 8. CDK asserts that "some Dealers started entering into CAWs in 2017 (before the class complaint)." Sur-Reply at 6 n.8. But CDK cites no evidence, including any MSA with a CAW prior to October 19, 2017, when the first Dealer complaint was filed. *See* ECF No. 64 at Ex. A.[2] Moreover, CDK references a stipulation (*see* Sur-Reply at 7 n.11 citing ECF No. 767) acknowledging its intention that its CAW with Vendors is *not retroactive*. ECF No. 767 ¶ 2. CDK has shown no different intention regarding the CAWs at issue here.

### B.     CDK Waived Class Action Waiver Defense

CDK waived the CAW defense by waiting over six years to raise it, with nary a word in its MDL petition, motion to dismiss, answer and affirmative defenses, and summary judgment motion. *See* Reply

---

[1] CDK's agreement with some Dealers to forbear on charging certain "third party vendor" fees (*see* Katz Decl. Ex 38 at -014) does not thereby render the *charging* of such fees part of the MSA. The claim here is not that CDK violated an agreement to *waive* fees; instead, it is that CDK wrongly *charged* fees that Dealers ended up paying. The MSA does not address those charges.

[2] The earliest CAW cited by CDK is in an MSA dated December 21, 2017, *i.e.*, after this lawsuit was filed. *See* Opp. App'x A, "Evidence of Class Action Waiver"; Katz Decl. Ex. 37 at -891, -893.

at 9-10. CDK's statement that it raised the "class waiver defense at the proper time" (Sur-Reply at 6) is wrong. To avoid waiver, CDK needed to raise it years earlier, and easily could have. It also could have moved to strike the class allegations. *See Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *1 (N.D. Ill. Aug. 1, 2019) (granting motion).[3] It did none of these things.[4] Instead, CDK played its hand, hoping to win its "dismissal arguments"[5] (*see Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 892 (7th Cir. 2020)) – including those based on state law class action bars. Only after "roll[ing] the dice" (*id.*) and losing, CDK raised its CAW defense. CDK should not be rewarded for its gamesmanship. *Cf. In re Google Assistant Privacy Litig.*, 2024 WL 251407, at *6 (N.D. Cal. Jan. 23, 2024) (finding waiver and rejecting argument that "motions to dismiss and motion for summary judgment were directed solely to the individual Plaintiffs' claims and in no way asked the Court to decide the merits of the class claims"; summary judgment "sought adjudication of issues going to the crux of the class claims").

CDK's responses to Dealers' remaining arguments also lack merit. As Dealers showed, the CAW reflects an improper communication with Class members, and its failure to disclose this litigation, impact on Class members, and one-sidedness render it unconscionable. Reply at 10-12.[6] CDK responds that CAWs "were instituted *before* the class complaint was filed", Sur-Reply at 7 (emphasis in original), but CDK cites no supporting evidence (*see* Reply at 7 & n.12), and it ignores Dealers' authorities.[7]

---

[3] Unlike here, plaintiffs in *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013) (Sur-Reply at 6) "suggested that th[e] issue be deferred until after the class opt-out period had expired." *Id.* at 853.

[4] *200 E. 87th St. Assocs, v. MTS*, 793 F. Supp. 1237 (S.D.N.Y. 1992), *aff'd*, 978 F.3d 706 (2d Cir. 1992) (Sur-Reply at 6) explained that waiver can be shown by prejudice which, in turn, "can be found 'when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay and expense.'" 793 F. Supp. at 1255 n.7. Here, CDK's belated invocation is prejudicial.

[5] *See, e.g.*, ECF No. 265 at 29-30, 43; ECF No. 973 at 30-32.

[6] CDK (at 7) wrongly relies on *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182 (S.D.N.Y. 2014). Unlike here, the communications in *Dodona* did not involve CAWs and were with large financial institutions typically represented by counsel. 300 F.R.D at 184, 186.

[7] CDK (at 7 n.12) disputes that Rule 23 bars the CAW, citing *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013), and the Rules Enabling Act. *Am. Exp.* is off-point because the CAW there was in the arbitration clause that, *under the Federal Arbitration Act*, must be "'rigorously enforce[d]'". 570 U.S. at 233. *See In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137, 144, 146 (D. Md. 2023) (distinguishing *Am. Exp.* and finding unenforceable CAW that "s[ought] to limit th[e] Court's own authority" to certify class), *appeal docketed*, Nos. 24-1064, 24-1065 (4th Cir. Jan. 19, 2024). Here, CDK invokes no arbitration provision, and the Rules Enabling Act does not save the CAW. *See Martrano v. Quizno's Franchise Co.*, 2009 WL 1704469, at *20 (W.D. Pa. June 15, 2009);

## II.    Dealers Show Injury and Damages on a Classwide Basis

### A.  <u>Dealers Show Classwide Injury Via Common Proof</u>

Dealers, through Dr. Williams, demonstrate that their classwide injury is subject to common proof with a valid damages calculation. Judge Dow found Dr. Williams's overcharge and pass-through analyses reliable and admissible to prove indirect purchaser damages,[8] and additional analysis does not warrant a different result. Reply at 2 citing ECF No. 1321 at 54; Williams Suppl. Rpt. ¶ 76 n.105. CDK's Sur-Reply makes four points regarding common impact and damages: (1) fee waivers; (2) pass-through; (3) "averaging;" and (4) "par[ing] back" the Class period. *See* Sur-Reply at 8-12.

### B.  <u>CDK's Arguments Concerning Fee Waivers are Wrong</u>

CDK is wrong (at 8-10)[9] that Dr. Williams's treatment of fee waiver transactions affects the reliability of his overcharge, common impact, and pass-through regression models.[10] CDK's expert, Dr. Haider, relies solely on a declaration by CDK's ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ Haider Rpt. ¶ 73

citing Conver Decl. ¶ 20. *See generally* ECF Nos. 1477, 1514. That statement, however, says absolutely nothing about *new* competitors, much less new competitors who emerged *as a result of* the alleged conspiracy and caused CDK to grant fee waivers. Instead, the Conver Declaration cites competition in

---

*Marriott*, 345 F.R.D. at 145.

[8] CDK claims (at 8) that Dr. Williams's models are all unreliable because he does not account for fee waivers - this is untrue. For time periods ending in 2019, Dr. Williams's overcharge, common impact, pass-through, and damages analyses are unaffected by fee waivers. *See* Williams Rpt., Table A5; Willams Merits Rpt., §§ V and VI.; and Williams Suppl. Rpt. ¶ 12 n.12. For the time period ending in September 2023, Dr. Williams's overcharge, common impact, pass-through, and damages analyses properly control for fee waivers reliably demonstrating common impact and quantifying damages. *See* Williams Reply Rpt. ¶¶ 15-26 and Williams Suppl. Rpt. ¶¶ 33-75.

[9] CDK's claim that Dr. Williams "did not make a considered choice to exclude fee waivers" is also untrue. Dr. Williams testified that ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

Wedgworth Decl., Ex. 1 at 222:14-19; Williams Suppl. Rpt. ¶ 40 n.52.

[10] *See* Williams Suppl. Rpt., § II (¶¶ 12-32) and § III (¶¶ 33-55).

place *before* the conspiracy (*i.e.*, competition *against Reynolds*) that caused CDK to grant fee waivers. *See* Conver Decl. ¶¶ 18-20. CDK does not show that its fee waiver program is "connected" or "tied" to its effort to close its DMS or part of the conspiracy, nor explain how a fee waiver program implemented ▮▮▮▮▮ *after* the conspiracy began is part of that conduct. Haider *Daubert* Reply at 2-3. This is inconsistent with the court's finding in *In re: Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 386, 418-19 (M.D. Fla. 2018), and CDK's evidence demonstrates the opposite.

CDK attempts (at 9) to bolster its argument by citing to the testimony of Vendors' expert,[11] which is irrelevant to the Dealers' case (where he is *not* an expert).[12] But Dr. Israel's inadmissible opinions, acknowledge that ▮▮▮▮▮▮▮▮. ECF No. 1474-1 at ¶ 61 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In addition, CDK's own expert, Dr. Kevin Murphy, also supports Dealers' description of the but-for world. Haider *Daubert* Reply at 3. The cases cited by CDK on this point are inapposite.[13] As Dr. Williams has demonstrated, even if he included fee waivers without "properly controlling for them" as Dr. Haider recommended, his conclusions regarding overcharge, common impact, pass-through, and damages analyses still hold. Williams Suppl.

---

[11] CDK asserts (at 9) that Dr. Israel agrees with Dr. Haider that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Wedgworth Decl., Ex. 2 at 198:9-20

[12] Vendors' withdrawn filing (*see* ECF No. 1501) is subject to a pending motion to strike (*see* ECF Nos. 1500 and 1508) and cannot be relied upon by CDK in the Dealers' case.

[13] *See* Sur-Reply at 9-10 citing *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) (inadmissible expert testimony could not be utilized to show classwide damages and impact where plaintiffs' expert had not been scrutinized under *Daubert*); *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 719–21 (E.D. Pa. 2020) (like CDK's failure to provide any actual analysis of the effect of Fortellis, the Reynolds Settlement, or new DMS competition, defendants' arguments failed where they did not "even attempt to quantify" the effect of variables they claimed would lead to uninjured class members. CDK's additional authority (incorporated from its Williams *Daubert* Reply at 7) is also unavailing. *In Re Lithium Batteries Antitrust Litig.*, 2017 WL 1391491, at *12 (N.D. Cal. Apr. 12, 2017) (plaintiffs' expert had "no methodology to account for factors that would affect the accuracy of cost data,); *In re Class 8 Transmission Indirect Purchaser Antitrust Litig.*, 140 F.Supp.3d 339, 354-55 (D. Del. 2015) (rebates were tied directly to agreements at the heart of defendants' alleged anti-competitive conduct).

Rpt., § II. Accordingly, CDK's fee-waiver related argument fails.

### C. CDK's Attacks on Pass-Through and Averaging Also Fail

One of the seven economic analyses Dr. Williams used[14] to support common impact is the pass-through of DIS fees from Vendors to Dealers. Williams Rpt., § IV.D. The pass-through data used by Dr. Williams is both representative and extensive. ██████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████. Williams Reply Rpt. ¶¶ 121-34. Moreover, as explained in response to CDK's *Daubert* motion, the Vendor data relied on by Dr. Williams is comparable to other antitrust cases. Williams *Daubert* Opp. § II.B. CDK ignores that the nature of the highly competitive Vendor market is additional economic evidence that pass-through is market-wide, affecting all Dealerships. Williams Reply Rpt. ¶¶ 249-56. Dealerships also contract with many Vendors who change over time, which massively increases the likelihood that each Dealer paid for applications subject to overcharge. *Id.* ¶¶ 46-49.

CDK claims (at 10): "Dr. Williams' quantitative analyses *all* rely on averaging, which improperly glosses over distinctions within the class." CDK is wrong. In fact, none of his seven separate economic analyses of common impact "rely on averaging" a fact which Dr. Williams proves mathematically in his supplemental report. Williams Suppl. Rpt. § VI.E.

CDK fails to distinguish this case from the nine other instances in which the methodology used by Dr. Williams was found to demonstrate common impact.[15] CDK asserts (at 10) that four of those nine cases involved "commodities" where "all prices move in common, and where averaging may sometimes be more appropriate." But CDK's own standardization of ████████ did create DIS prices

---

[14] Dr. Williams's other six analyses are: (1) the robustness and statistical significance of his overcharge regression; (2) common impact regression analysis; (3) correlation analysis; (4) analysis of market structure characteristics; (5) economic theory and empirical analysis of pass-through rates for different industries; and (6) the competitiveness of the Vendor market. Williams Rpt. ¶¶ 108-46, Williams Reply Rpt. ¶¶ 155-257; Williams Suppl. Rpt. ¶¶ 18-21. CDK ignores all but the first and second analyses.

[15] Williams Suppl. Rpt. ¶¶ 114-28.

that moved at the same time (*see* Murphy Rpt. ¶¶ 37-39 and Williams Rpt. ¶¶ 121-29) and the cases cited by Dealers are not limited to commodities.[16] In *Contact Lens*, defendants, like CDK, argued that "averages would be inappropriate in cases like this one, when the record shows that different contact lenses have different features rather than being sold as a commodity and that there is substantial pricing differentiation." *See* Wedgworth Decl., Ex. 3. The *Contact Lens* court was unconvinced, finding plaintiffs' experts, including Dr. Williams's use of "product fixed-effects" as to each contact lens product, controlled for those differences. *See* 329 F.R.D. at 393. Dr. Williams does the same for DIS products here. Williams Suppl. Rpt. ¶¶ 125-28.[17] CDK further ignores that commodities cases account for variation in products and other factors through fixed effects variables.[18]

CDK deceptively argues (at 11) that Dr. Williams cannot show common impact to Dealerships based on Dr. Haider's assessment that ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ (*see* Haider Rpt., Table 24), but Dr. Haider's analysis also perpetuates CDK's misguided emphasis on the number of Vendors, ignoring what matters for common impact – the number of Vendor DIS purchases which translates to the number of Dealerships impacted. Williams Reply Rpt. ¶¶ 58, 70-73. Likewise, CDK's critique that pass-through rates varied fails since the proper question as to common impact is not whether a single overcharge was passed on, but whether all or almost all Dealerships were subject to overcharge pass through from at least one Vendor. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 672 (9th Cir. 2022). Dr. Williams demonstrates this is so. Williams Reply Rpt. ¶¶ 133-41.

---

[16] *See* Williams *Daubert* Opp. at 16-17 n.27 (collecting cases); *see also In re Korean Ramen Antitrust Litig.,* 2017 WL 235052 at *12-13 (N.D. Cal. Jan. 19, 2017) (Expert opinions showed common impact despite critique that averages of widely varying overcharge and pass-through rates were used regarding a non-commodity product); *see also id.* at *19-20.

[17] *See also* Williams Rpt. ¶¶ 87 n.88, 95, 170, 304.

[18] *In re Broiler Chicken Antitrust Litig.,* 2022 WL 1720468, at *13-15 (N.D. Ill. May 27, 2022) (countering similar objections by accounting for variation in bird size and between whole birds, breasts, and wings). *See also D&M Farms v. Birdsong Corp.,* 2020 WL 7074140, at *8 (E.D. Va. Dec. 2, 2020) (Williams's regression model utilized fixed effect variables to account for variability in contracts defendants had with class members).

### D. There is No Reason to Limit Dealers' Class Period

CDK's argument to "pare[] back" the Class period (at 11) is baseless.[19] CDK's implementation of its fee waiver program says nothing about whether most Dealers did or did not pay CDK's inflated DIS fees after July 2019. ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Williams Reply Rpt. ¶ 160 n.247. Additionally, as stated above, even including fee waivers without "properly controlling for them" as Dr. Haider recommended, yields virtually the same percentage of CDK rooftops with at least one overcharged transaction. Williams Suppl. Rpt. ¶¶ 27-31, Figures 1-2. Nor can CDK support its claim (at 11) that the Reynolds settlement, new CDK products, or DMS competitors have any effect on injury to the Dealer Class. Indeed, Dr. Williams properly accounts for and analyzes each of these speculative factors in his Reply Rpt., Table 13, and none justify abbreviating the proposed Class period.[20]

## III. The Court Should Certify a Nationwide Class Under Illinois Antitrust Act

CDK argues (at 12) that Dealers do not dispute that "if multiple state laws apply, the proposed nationwide class fails," but Dealers cited cases arguing that "any argument that differing state laws preclude a nationwide class must fail. This Court properly follows the laws of the forum state (Illinois), including its choice-of law rules." *See* Dealer Br. at 14. CDK failed to rebut those cases.

CDK fares no better regarding Plaintiffs' argument that Dealers' locations are *not* the place of injury because – as admitted by CDK when strategically advantageous (*e.g.*, when attempting to maintain the Vendor class action in this District)[21] – Illinois has the most significant relationship to this case.

---

[19] Dealers oppose CDK's reservation of rights to seek additional merits discovery for post-2019 claims. Sur-Reply at 12 n.16. *See* ECF No. 1146 at 23:25: "Court: I am not reopening fact discovery."; 24:12-13: "I don't want to reopen discovery – merits discovery."

[20] Dr. Williams demonstrates positive and statistically significant pass-through rates after 2019. Williams Reply Rpt. ¶¶ 148-53.

[21] CDK has admitted that its challenged conduct "arose" and was "implemented" in Illinois, CDK maintains its headquarters and principal place of business in Illinois, decisions regarding access to CDK's DMS were made in the Northern District of Illinois, and this District "has a greater relationship to the controversy" than where

7

CDK provides no analysis of Dealers' cases on this issue (besides excerpting a few words from certain of Dealers' case parentheticals with no context). Sur-Reply at 12 citing Reply at 17-18. CDK ignores, for example, the key point in *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524 (7th Cir. 1981), that Georgia had the "most significant relationship" because, in this airplane defect case where the place of injury was not dispositive, the plane's designer and manufacturer had its principal place of business in Georgia where the "*conduct causing the injury occurred*" (*id.* at 527-29) (emphasis added) – like in this case. CDK relies on two out-of-circuit cases (Sur-Reply at 12-13) distinguishable from this one.[22]

In an effort to minimize Illinois's significant relationship to this case, CDK gives short shrift to the plethora of facts cited by Dealers that "tip the balance in favor of Illinois law." Sur-Reply at 13 citing Reply at 18-19. Although CDK alleges that Dealers "ignore[]" the authority it cited on this point (Sur-Reply at 13 citing Opp. at 31-32), in fact, Dealers did address CDK's caselaw as either being inapposite (*see* Reply at 17 n.30) or involving the purchase of a physical product, unlike here (*see id.* at 18 n.32). Moreover, Dealers' cases, contrary to CDK's assertion (Sur-Reply at 13 n.17) support their position.[23] As noted in those cases, the "most significant relationship test" weighs several factors based on the specific case facts and is not a mechanical test. *See* Reply at 17-18.

Accordingly, CDK's arguments about Reynolds's headquarters and the case involving Reynolds Dealers (Sur-Reply at 13-14) are not dispositive in CDK's favor and cannot erase the other factors

---

Authenticom (an alleged conspiracy target) (Vendor case) is located. *See* Reply at 17 n.31; *see also* Dealer Br. at 13-14; Reply at 18-19.

[22] In *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555 (E.D. Tenn. 2014), indirect purchasers attempted to certify a nationwide class under the Tennessee Trade Practices Act ("TTPA"). Unlike this case, the class definition had a specific exclusion for any plaintiffs operating a business *in Tennessee* (a factor in the court's denial of a nationwide class under the TTPA). Significantly, plaintiffs in that case *conceded* – unlike here – that the state where the injury occurred was *not* Tennessee. *Id.* at 587-88. *Cf.* Reply at 18. Similarly, in *Jones v. Varsity Brands*, 2023 WL 5662590 (W.D. Tenn. Aug. 31, 2023), plaintiffs failed to dispute that the injury for each individual plaintiff did not occur in Tennessee, the state at issue. *Id.* at *13.

[23] CDK misrepresents the court's reasoning in *In re Air Crash Disaster Near Chi. Ill., on May 25, 1979*, 644 F.2d 594 (7th Cir. 1981), stating that the "place of injury controlled …. not place of faulty aircraft design[.]" Sur-Reply at 13 n.17. However, the court noted Illinois was not "*merely* the place of injury", but had "many other contacts of significance[.]" *Id.* at 615, 616. CDK's analysis of *Esser v. McIntyre*, 661 N.E.2d 1138 (Ill. 1996) and *Ingersoll v. Klein*, 262 N.E.2d 595 (Ill. 1970) is similarly flawed. In both cases, despite the place of injury being in locations other than Illinois, the courts concluded that Illinois had the most significant relationship to the case.

favoring Illinois. *See supra* n.21.[24] Similarly, CDK's efforts to undermine the fact its MSAs with Dealers were not all governed by Illinois law by citing one October 16, 2023 MSA – signed six years after this case began (Sur-Reply at 13-14) – does not lessen the significance that, as the Court concluded at summary judgment: "[m]ost of the MSAs at issue include a choice-of-law provision stating that Illinois law governs the agreement." (citation omitted). *See* ECF No. 1382 at 12.

CDK also attempts to distance itself from its prior admissions concerning Illinois's substantial relationship with this case (Dealer Br. at 13-14; Reply at 17-19) by claiming those facts were cited in motions for other purposes. Sur-Reply at 13. But those are key facts pointing to Illinois as having the most significant relationship to this case, and the motions and purpose for which CDK conveyed those facts are irrelevant.[25] CDK cannot revoke its admissions concerning Illinois's significant relationship with this case simply because it is no longer beneficial to do so.

## IV. Dealers' State Law Damages Class Should be Certified

CDK's entire response to Dealers' arguments regarding the State Law Damages Class (Reply at 19-25) is confined to a single footnote (Sur-Reply at 14 n.21) referencing its Appendix G. Dealers have responded in attached Appendix A. Notably, neither CDK's Sur-Reply, nor Appendix G, addresses *any of* Dealers' arguments or extensive caselaw holding that multi-state purchaser class actions (particularly antitrust cases) can have some degree of variation, and this does not preclude class certification. *See* Reply at 19-20, 25. Instead, CDK's Appendix G is an attempted distraction from the weight of authority on that issue and focuses on CDK conceding incorrect statements of law and making irrelevant

---

[24] Reynolds is no longer a defendant in this case which is concerned with CDK's conduct giving rise to its liability. And Plaintiffs have acknowledged that "[f]or Dealers not located in Illinois, the factor addressing the parties' domicile is a wash." Reply at 19 n.33. *See also* Dealer Br. at 13 ("The fact that numerous Dealers are located outside Illinois does not bar application of Illinois law.") (citing cases).

[25] CDK's criticism of *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 31 (D.D.C. 2019) is meritless. Sur-Reply at 13 n.18. *Krukas* applied the law of defendants' headquarters, where advertising decisions were made, because the complaint allegations were based on misrepresentation/false advertising. Illinois law should similarly apply here because the Complaint allegations are based on CDK's anticompetitive behavior (including corporate-level decision-making regarding policies, and their application, on DMS access, that were formulated at CDK's headquarters/ principal place of business in this District.). Dealer Br. at 13-14; Reply at 17-19.

arguments regarding state law variations without ever justifying the import of such variations.

## V.     The Court Should Certify the Injunctive Class

Dealers' requested injunctive relief (enjoining CDK from charging data integration fees (*see* Reply at 28-29)) is sufficiently descriptive.[26] At class certification, antitrust plaintiffs need not specify details of an injunction. *See Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *22 (N.D. Ill. Mar. 29, 2023) (certifying class: "Plaintiffs hope to obtain an injunction barring Defendants from continuing to violate the antitrust laws by maintaining and enforcing the Challenged Restraints."); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 97 (S.D.N.Y. 2012).

CDK (at 15) cites two *non-antitrust* cases where the proposed relief was hopelessly vague. *Ward v. Hellerstedt*, 753 Fed.Appx. 236, 249 (5th Cir. 2018) ("A general request that Defendant be restrained from violating Plaintiffs' Fourteenth Amendment protections is insufficient."); *Hayes v. Dart*, 2009 WL 2355393, at *9 (N.D. Ill. July 29, 2009) (seeking injunction "to prevent further injury"). Here, Dealers' proposed relief is more specific than required. *See B.K. v. Snyder*, 922 F.3d 957, 972 (9th Cir. 2019) ("Plaintiffs do not need to specify the precise injunctive relief they will ultimately seek at the class certification stage."). CDK's argument is also foreclosed by the Court's summary judgment ruling sustaining Dealers' "conspiracy claim for injunctive relief." ECF No. 1381 at 126.

CDK's assertion that Reynolds withdrew from the conspiracy by settling with Dealers (Sur-Reply at 15) is wrong and irrelevant. There is no evidence of a withdrawal, and the settlement did not enjoin Reynolds. Even if the conspiracy ended (it did not), its "lingering effects" warrant injunctive relief. *See Wilk v. Am. Medical Ass'n*, 895 F.2d 352, 366 (7th Cir. 1990) (Reply at 29) (ignored by CDK).

## CONCLUSION

For these reasons, as well as those in Dealers' prior briefing, Dealers respectfully request that their Motion for Class Certification be granted in its entirety.

---

[26] *See also id.* at 29. CDK's claim that Dealers "never explain" the "ongoing anticompetitive conduct" (Sur-Reply at 15) is wrong. CDK *still* charges the unlawful fees. *See* Reply at 28.

Dated: June 14, 2024                    Respectfully submitted,

                                        */s/ Peggy J. Wedgworth*
                                        Peggy J. Wedgworth
                                        Elizabeth McKenna
                                        Robert A. Wallner
                                        John Hughes*
                                        Michael Acciavatti**
                                        **MILBERG COLEMAN BRYSON
                                        PHILLIPS GROSSMAN, PLLC**
                                        405 East 50th Street
                                        New York, NY 10022
                                        (212) 594-5300
                                        pwedgworth@milberg.com
                                        emckenna@milberg.com
                                        rwallner@milberg.com
                                        jhughes@milberg.com
                                        macciavatti@milberg.com
                                         *  *Admitted in Michigan only*
                                         ** *Admitted in Pennsylvania only*

                                        *MDL Co-Lead Counsel and Interim Lead Counsel
                                        representing the Dealership Class Plaintiffs*

## CERTIFICATE OF SERVICE

I, Peggy J. Wedgworth, an attorney, hereby certify that on June 14, 2024, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' SUR-RESPONSE IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth

**Appendix A**
**State Law Issues, Class Certification Briefing**

CDK grossly mischaracterizes Dealers' state law arguments. *See* CDK Sur-Reply, Appendix G (ECF No. 1509), addressing Dealers' Reply (ECF No. 1478) at 19-25. For the Court's convenience, and to consolidate the parties' arguments, Dealers include below the state law arguments from their Reply verbatim (including footnotes). CDK's arguments from its Appendices E & G (except for its "Dealers' Reply" column) are also verbatim. Notably, despite having a Sur-Reply, CDK fails to address *any* of the multitude of cases cited by Dealers for the crucial point that "multi-state purchaser class actions can have 'some degree of variation' … especially in antitrust cases where certification is common" (Reply at 19-20, citing cases), and that "[a]lthough CDK's App'x E notes certain purported 'distinctions' between some state laws, CDK fails to show that any of these are 'material' and thus a basis to deny class certification." (Reply at 20 & n.36, citing cases). *See also* Reply at 25 (additional cases CDK failed to address on this overarching issue, as well as alternatives presented by Dealers to the Court regarding state classes, which CDK also ignored in its Sur-Reply).

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| **Statute of Limitations (Antitrust laws)** | **3 years**: Mississippi (Miss. Code. Ann. 15-1-49(1)). <br><br> **4 years**: Arizona (Ariz. Rev. Stat. Ann. § 44-1410), California (Cal. Bus. & Prof. Code § 16750.1), Hawaii (Haw. Rev. Stat. Ann. § 480- 24), Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)), Iowa (Iowa Code Ann. § 553.16), Michigan (Mich. Comp. Laws Ann. § 445.781), Minnesota (Minn. Stat. Ann. § 325D.64), Nebraska (Neb. Rev. Stat. Ann. § 25-206), New Hampshire (N.H. Rev. Stat. Ann. § 356:12), New Mexico (N.M. Stat. Ann. § 57-1-12), New York (N.Y. Gen. Bus. Law § 340(5)), Oregon (Or. Rev. Stat. Ann. § 646.800), Rhode Island (R.I. Gen. Laws Ann. § 6-36-23), South Dakota (S.D. Codified Laws § 37-1-14.4), Utah (Utah Code Ann. § 76-10- 3117), | **Statutes of Limitations**: CDK wrongly argues (in one sentence) (Opp. at 35 citing App'x E) that some states' statutes of limitations differ from the Sherman Act. *See Namenda*, 338 F.R.D. at 573-74 (court admonished defendants for "simply rais[ing] the issue that different states may have different statutes of limitations under their antitrust laws" and concluded that such variations "are irrelevant to whether there exist common questions of law or fact that go to the heart of Defendants' potential liability as to the claims alleged."). This Court should similarly reject CDK's argument here.[43] <br><br> [43] Differences in statutes of limitations do not defeat predominance. *See Ploss as Trustee for Harry Ploss Trust DTD 8/16/1993 v. Kraft Foods Group, Inc.*, 431 F.Supp.3d 1003, 1017 (N.D. Ill. 2020); Ex. 18, *In re HIV Antitrust Litig.*, 19-cv-02573-EMC, at 25 (N.D. Cal. Sept. 27, 2022) (differences "do[] not detract from the common issues on liability"); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002). <br><br> **Reply at 21-22 & n.43.** | **N/A** (Dealers do not dispute that state statute of limitations vary, *see* D. Reply 21-22 & n.43). | CDK fails in its Sur-Reply to address – much less refute – *any* of the caselaw or arguments in Dealers' Reply that differences in states' statutes of limitations do not defeat predominance. *See* Reply at 21-22 & n.43. |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | West Virginia (W. Va. Code Ann. § 47-18-11).<br><br>**6 years**: Vermont (12 Vt. Stat. Ann. tit. 12, § 511), Wisconsin (Wis. Stat. Ann. § 133.18). | | | |
| **Statute of Limitations (Consumer-protection laws)** | **2 years**: Alaska (Alaska Stat. Ann. § 45.50.531), West Virginia (W. Va. Code Ann. § 55-2-12).<br><br>**3 years**: Colorado (Colo. Rev. Stat. Ann. § 6-1-115), New Hampshire (N.H. Rev. Stat. Ann. § 358-A:3), South Carolina (S.C. Code Ann. § 39- 5-150), Wisconsin (Wis. Stat. Ann. § 100.20).<br><br>**4 years**: California (Cal. Bus. & Prof. Code § 17208), Florida (Fla. Stat. Ann. § 95.11), Nebraska (Neb. Rev. Stat. § 59-1612), Nevada (Nev. Rev. Stat. § 11.190(2)(d)), New Mexico (N.M. Stat. Ann. § 37-1-4). | Same as above. | Same as above. | Same as above. |
| **Availability of Enhanced Damages (Antitrust laws)** | **No Enhanced Damages**: Mississippi (Miss. Code Ann. § 75-21-9), Nebraska (Neb. Rev. Stat. Ann. § 59- 821), New York (*Sperry v. Crompton Corp.*, 863 N.E.2d 1012 (N.Y. 2007)).<br><br>**Additional Proof Required for Treble Damages**: Arizona (Ariz. | **Damages**: CDK next alleges (Opp. at 35 and App'x E) that some states' treatment of damages issues should preclude class certification.[44] CDK's main argument is that the laws differ on what is required for enhanced damages.[45] As an initial matter, CDK is incorrect about several states' rules on enhanced damages,[46] but more importantly, varying enhanced damages requirements do not warrant denying | | CDK again fails to address Dealers' argument and supporting caselaw that states' treatment of enhanced damages questions, whether varying or not, does *not* present a predominance issue and does *not* defeat class certification because such |

| CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|
| Rev. Stat. Ann. § 44-1408(B)) ("flagrant"), Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)) ("willful"), Iowa (Iowa Code Ann. § 553.12) ("willful or flagrant"), Michigan (Mich. Comp. Laws Ann. § 445.778) ("flagrant"), New Hampshire (N.H. Rev. Stat. Ann. § 356:11) ("willful or flagrant").<br><br>**Availability of Treble Damages Is Discretionary**: Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)) (court's discretion); Iowa (Iowa Code Ann. § 553.12) (court's discretion); Michigan (Mich. Comp. Laws Ann. § 445.778) (jury's discretion); New Hampshire (N.H. Rev. Stat. Ann. § 356:11) (jury's discretion); New Mexico (N.M. Stat. Ann. § 57-1-3) (jury's discretion). | certification. *See* Ex. 18, *In re HIV Antitrust Litig.*, 19-cv-02573-EMC at 25 (N.D. Cal. Sept. 27, 2022) (differences in state statutes concerning damages "can feasibly be managed at trial" and "does not overwhelm the common issues on liability.").[47] CDK's additional argument regarding the prejudicial nature of enhanced damages jury instructions can also be managed at trial.[48]<br><br>[44] CDK's App'x E raises the availability of offsets for duplicative recovery, but this provides no basis for denying certification "A class may be certified based on common issues 'even though other important matters will have to be tried separately, such as damages ....'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016)). "[A]ny differences in antitrust duplicative liability provisions are not material because most states have such provision, and the states' antitrust laws are harmonious with the Sherman [A]ct." *In re Pork Antitrust Litig.*, 665 F. Supp. 3d at 1009; *see also* Dealer Br. at App'x B & C (Dealers' state antitrust and consumer protection claims and harmonization provisions); *Carbajal v. Cap. One*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) ("[T]here is no reason to believe that [setoffs] would end up as a significant focus of the case; the setoff would likely involve nothing more than a mere calculation.").<br><br>[45] CDK's App'x E lists 17 states' (antitrust and/or consumer protection) legal requirements for enhanced damages (*e.g.*, no enhanced damages available, additional proof required for enhanced damages, enhanced damages are discretionary). However, in *In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022), the Court denied defendants' motion to decertify a class, including 15 of | **IA**: While this argument might be true, (Iowa Code Ann. § 553.12 ("Recover, at the court's discretion, exemplary damages which do not exceed twice the actual damages awarded under subsection 2[.]")), it is irrelevant. CDK does not cite the Iowa statute for the point that it offers treble damages. The key point is that availability of these enhanced damages is discretionary. *See* Iowa Code Ann. § 553.12. Even if Dealers were correct, it would not materially affect overall variation among states.<br><br>**NY**: It is true that N.Y. Gen. Bus. Law § 901(b) is not a class action bar in federal court after *Shady Grove*. *Shady Grove Orthopedic Assocs., P.A. v.* | issues can be managed effectively at trial. Reply 22-23 & nn.44-48.<br><br>In reference to specific states:<br><br>**IA**: CDK concedes its inaccurate statement of Iowa law. CDK also concedes that the IL statute, as well as the other statutes in its Sur-Reply regarding availability of enhanced damages, "do[] not materially affect overall variation among states." Thus, CDK apparently agrees with Dealers' position that differing treatment of enhanced damages does not present a predominance issue.<br><br>**NY**: CDK concedes its inaccurate statement of New York law and also misstates Dealers' argument (Reply at 22 n.46). ***Significantly, CDK*** |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | | the 17 states CDK challenges here and found defendants' arguments "unpersuasive" regarding differing availability of enhanced damages, explaining: "[s]tate law requirements regarding enhanced damages are precisely the kind of variation that special verdict forms are designed to address." *Id.* at *11.<br><br>[46] Some of CDK's mistakes in its App'x E are inconsequential: **IA** only allows double (not treble) damages at the jury's discretion. *See* Iowa Code Ann. § 553.12. **CO** allows only actual damages for a class action. *See* Colo. Rev. Stat. Ann. § 6-1-113(2) (a)(III). App'x E at 1-2. Other CDK errors are significant. For example, CDK argues (App'x E at 1) that **NY**'s Donnelly Act has no enhanced damages. CDK is wrong and its citation to *Sperry v. Crompton*, 863 N.E.2d 102 (N.Y. 2007) is misplaced. The Donnelly Act allows treble damages. *See* NY Gen. Bus. § 340(5). CDK cites *Sperry* for the notion that seeking treble damages is disallowed as a "penalty" under New York's class action bar (§ 901(b)); however, as with other state class action bars in this case, it is inapplicable here in federal court. *See* ECF Nos. 1410 at 10 n.4; 1381 at 89 n.24; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 661 (E.D. Mich. 2011). CDK also incorrectly argues (App'x E at 2) that under **IL** law, Dealers must prove "willful" conduct for treble damages; however, Dealers have asserted claims under 740 Ill. Comp. Stat. Ann. 10/7 § 3(1)(a) which, if proven, awards treble damages without the need to prove willful conduct. *See* 740 Ill. Comp. Stat. Ann. 10/7 § 7(2).<br><br>[47] *See also Lidoderm*, 2017 WL 679367, at *27 (differences concerning enhanced damages "do not appear to be material or even significant … [and] can be readily accommodated on a special verdict form or through other mechanisms routinely employed in complex litigations like this one."); *In re Polyurethane Foam* | *Allstate Ins. Co.*, 559 U.S. 393, 400-01 (2010); *Id.* at 416 (Stevens, J., concurring). This does not materially affect overall variation among states.<br><br><br><br>**IL**: The statute provides for different remedies depending on under which statutory provision the plaintiff has sued. 740 Ill. Comp. Stat. Ann. 10/7 § 7(2). If the Plaintiff sues under § 7(1) or § 7(4), the plaintiff "shall be" | ***additionally makes an admission which contradicts its previous position and directly bears on CDK's pending 28 U.S.C. 1292(b) motion (ECF No. 1396).*** In its Sur-Reply, CDK *agrees* with Dealers that state law class action bars (here, N.Y. Gen Bus. Law § 901(b)) is *inapplicable* in federal court after *Shady Grove*. Yet, in support of its 1292(b) appeal of this Court's summary judgment decision, CDK argued the exact opposite regarding the purported effect class action bars of three other states (Illinois, South Carolina and Colorado) have in federal court. *See generally* ECF Nos. 1397 and 1415.<br><br>**IL**: Dealers, in their Reply (n. 46), simply noted that CDK misconstrued the section of Illinois law that Dealers' claim is brought under and does not fully explain that "willful" conduct is not always necessary for treble |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | | *Antitrust Litig.*, 314 F.R.D. 226, 292 (N.D. Ohio 2014) (same).<br><br>[48] CDK's citation to *Weiglus v. Ryobi Techs., Inc.*, 2012 WL 1853090 (N.D. Ill. May 21, 2012) (Opp. at 35) is misplaced. The issue there was whether evidence of defendants' financial status should be introduced at the liability phase, having nothing to do with state law enhanced damages provisions.<br><br>**Reply 22-23 & nn.44-48** | awarded treble damages. *Id.* If they sue under § 7(2) or § 7(3), then the court "may, in its discretion" increase the amount to treble damages. *Id.* Plaintiffs say they are suing under § 3(1)(a), but that's not obvious in their compliant. ECF 198 (Class Action Compl.) ¶¶ 274- 286. In fact, their allegations are best read as being asserted under 740 Ill. Comp. Stat. Ann. 10/7 § 3(2). *See* id. Even if Dealers were correct, it would not materially affect overall variation among states. | damages. In addition, CDK is wrong that the award of treble damages is discretionary. Dealers bring their claim under 740 Ill. Comp. Stat. Ann. 10/3 §3 which clearly entitles them to treble damages. |
| **Availability of Enhanced Damages (Consumer-protection laws)** | **No Enhanced Damages**: California (*Clark v. Super. Ct.*, 235 P.3d 171 (Cal. 2010)), Florida (Fla. Stat. Ann. § 501.211), Nebraska (Neb. Rev. Stat. Ann. § 59-1609), Nevada (Nev. Rev. Stat. Ann.§ 598.0993), West Virginia (W. Va. Code Ann. § 46A-6-106).<br><br>**Enhanced Damages Limited to Double Damages**: Wisconsin (Wis. Stat. Ann. § 100.20(5)).<br><br>**Additional Proof Required for Treble Damages**: Colorado (Colo. | See above. | | CDK again fails to address Dealers' argument and supporting caselaw that states' treatment of enhanced damages questions, whether varying or not, does *not* present a predominance issue and does *not* defeat class certification because such issues can be managed effectively at trial. Reply 22-23 & nn.44-48. |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | Rev. Stat. Ann. § 6-1-113) ("clear and convincing evidence" of "bad faith conduct"), New Hampshire (N.H. Rev. Stat. Ann. § 358-A:10) ("willful or knowing"), New Mexico (N.M. Stat. Ann. § 57-12-10) ("willful"), South Carolina (S.C. Code Ann. § 39-5-140) ("willful or knowing").<br><br>**Availability of Treble Damages Is Discretionary**: New Hampshire (N.H. Rev. Stat. Ann. § 358-A:10) (court's discretion to award double or treble damages for "willful or knowing" violation); New Mexico (N.M. Stat. Ann. § 57-12-10) (court's discretion). | | **CO**: It is true that Colorado limits damages "[i]n a case certified as a class action" to "actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs," Colo. Rev. Stat. Ann. § 6-1- 113(2.9). But, because Colorado does not allow trebling, Colorado is still representative of variation among state laws. | **CO**: The only argument CDK chooses to make in its Sur-Reply in this section is to concede its inaccurate statement of Colorado law. |
| **Scope of Substantive Law (Antitrust laws)** | **Requires Additional Elements:** Mississippi (requires proof of intrastate conduct) (*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187 (S.D.N.Y. 2019)). | Dealers have already prevailed on certain issues raised by CDK (*e.g.*, proof of intrastate conduct issue regarding **MS** (App'x E at 2). *See* ECF No. 1381 at 82-84 (summary judgment ruling in Dealers' favor on MS and several other states) clearly establishing that CDK exhibits anticompetitive behavior within those states, as it would with *all* of the states in this case.<br><br>**Reply at 19 n.34.** | **N/A** | CDK incorrectly states that Dealers ignored CDK's argument on Mississippi. Dealers, in fact, did respond to CDK's baseless argument (Reply at 19 n.34) – the Court already ruled in Dealers' favor on this issue.<br><br>Additionally, CDK's Sur-Reply simply has an "N/A" (an undefined term) in response to Dealers' Reply argument, thus conceding the issue. |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| **Scope of Substantive Law (Consumer-protection laws)** | **Proscribes Specific Enumerated Conduct Not Covering Antitrust Conduct**: West Virginia (W.Va. Code § 46A-6-102(7); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) (dismissing price-fixing allegations because "West Virginia's statute lists a number of unfair and deceptive practices in trade or commerce; price fixing is not among them").

**Requires Additional Proof of Reliance**: California (*Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172 (S.D. Cal. 2021)) ("[A]ctual reliance is a required element for standing to bring suit under the UCL.").

**Requires Additional Proof of Scienter**: Colorado (Colo. Rev. Stat. Ann. § 6-1-105(1)(rrr)) (requires proof that defendant "knowingly or recklessly" engaged in unfair practice); Nevada (Nev. Rev. Stat. Ann. § 598.0923) (requires proof that defendant "knowingly" violated statute); New Hampshire (*Kelton v. Hollis Ranch, LLC*, 927 A.2d 1243 (N.H. 2007)) ("The trial court properly construed the legislature's use of the words 'deceptive' and 'unfair' as requiring | **Scope of Substantive Law:** CDK lists other supposed state law variations (App'x E at 2-3) – many of them are incorrect and none defeat predominance. For example:

• **CDK wrongly states that West Virginia's consumer protection statute does not cover antitrust conduct, specifically price-fixing.** App'x E at 2. CDK ignores the Court's earlier ruling (ECF No. 507 at 57-58) ("the WVCCPA prohibits anticompetitive conduct."). CDK's reliance on *In re GPU Antitrust Litig.*, 527 F. Supp. 2d 1011 (N.D. Cal. 2007) (App'x E at 2) is misplaced, as this Court noted that pre-2015 cases fail to account for the 2015 amendment to WV's statute as to its harmonization with the FTC Act. *See* ECF 507 at 57-58; Dealer Br. at App'x C at 8, ignored by CDK.

• **Scienter/Reliance is a non-issue that does not affect predominance.** CDK claims that several consumer protection laws have a scienter requirement. App'x E at 2-3. But scienter (like reliance) is irrelevant for the antitrust conspiracy here. *See Broiler Chicken*, 2022 WL 1720468, at *20 ("[T]he differences in consumer protection laws concerning reliance and intent are simply not relevant to a price-fixing claim."); *In re Restasis*, 335 F.R.D. at 38 (E.D.N.Y. 2020) ("the inclusion of a single jury question as to whether defendant possessed the requisite scienter would not defeat predominance" (citation omitted). In any event, Dealers have alleged CDK "knowingly" engaged in the illegal acts[50] and if the Court so requires, | **WV**: It is true that the Court has already ruled that West Virginia law covers anticompetitive conduct, ECF 507 at 57-58 (concluding that "the Court agrees with the reasoning of *In re Seafood* and concludes that the WVCCPA prohibits anticompetitive conduct."). This does not | Dealers argue (and CDK ignores) that "scope of substantive law" arguments made by CDK do not defeat class certification because: (1) scienter and reliance are not relevant or required in this antitrust conspiracy, Dealers have alleged the requisite scienter requirements, and even if necessary, such individual questions could be effectively managed at trial; and (2) the "public interest" factors are not material variations that bear on predominance. *See* Reply at 23-24.

**WV**: CDK concedes that the Court already agreed with Dealers on this point. This is the only issue CDK chooses to address in its Sur-Reply in this section, ignoring the detailed arguments made by Dealers in their Reply at 23-24. |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | a degree of knowledge or intent."); New Mexico (N.M. Stat. Ann. § 57-12-2) (requires proof that act was "knowingly" made); West Virginia (W. Va. Code Ann. § 46A-6-102(7)(M) (requires proof that act was made "with intent that others rely upon such [act]").<br><br>**Requires Additional Proof of Other Elements**: Colorado (*Rhino Linings USA v. Rocky Mountain Rhino Lining*, 62 P.3d 142 (Colo. 2003)) (requires proof that conduct "significantly impacts the public as actual or potential customers of the defendant's goods, services, or property"); Nebraska (*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136 (Neb. 2000)) ("[T]he unfair or deceptive act or practice must have an impact upon the public interest."). | scienter/reliance questions could be added to the jury verdict form.<br><br>• **The "public interest" factor of Colorado and Nebraska statutes is satisfied and these are not "material differences."** Unlike cases addressing "a purely private wrong" such as a breach of contract (*see Rhino Linings USA v. Rocky Mountain Rhino Lining*, 62 P.3d 142, 144 (Colo. 2003)) (citation omitted) (CDK App'x E at 3) or "transactions in the context of flea markets or garage sales" (*Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 142 (Neb. 2000) (App'x E at 3), this case vindicates the public interest. *See* 605 N.W.2d at 142 (NCPA was enacted as "an antitrust measure"). And under the CCPA, Dealers seek relief on behalf of themselves and others who are "actual or potential consumers" of CDK's "goods, services or other property." 62 P.3d at 149; *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, 2017 WL 3131977, at *26 (D.N.J. July 20, 2017) (antitrust plaintiff satisfied CCPA).<br><br>[50] *See* Compl. (ECF No. 198) at ¶ 571 (**CO**); ¶ 645 (**NV**); ¶ 657 (**NH**); ¶ 677 (**NM**); ¶ 720 (**WV**) ("Defendants have acted unlawfully by: (1) knowingly conspiring, contracting and or agreeing to restrain trade ….").<br><br>**Reply at 23-24.** | materially affect overall variation among states. | |
| **Availability of Indirect Purchaser Suits** | **No Indirect Purchaser Suits Allowed In The First Place:** | **Indirect Purchaser Suits:** …[U]nder the guise of alleging another "variation," CDK argues Alaska[51] and Wisconsin[52] do not permit indirect purchaser suits (Opp. App'x E at 3), but CDK's | | CDK does not address, nor justify, why it failed to raise the arguments for Alaska and Wisconsin (as it |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| **(Consumer-protection laws)** | • **Alaska** (Alaska Stat. Ann. § 45.50.577(i)) ("Only the attorney general, in a suit brought under this section, may seek monetary relief for injury indirectly sustained for a violation."). *See In re Humira (Adalimumub) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020) ("No court has construed Alaska's consumer protection statute to permit claims based on alleged antitrust and monopolization conduct by indirect purchasers."); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155 (N.D. Cal. 2015) (similar); *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp. 2d 1072 (N.D. Cal. 2007) (similar); *Miami Prods. & Chem. Co v. Olin Corp.*, 546 F. Supp. 3d 223 (W.D.N.Y. 2021) (similar). <br><br> • **Wisconsin** (Wis. Stat. Ann. § 100.20) ("Any person suffering pecuniary loss because of a violation by any other person of ... any order issued under this section may sue for damages."). *See Emergency One, Inc. v. Waterous Co., Inc.*, 23 F. Supp. 2d 959 (E.D. Wis. 1998) ("[N]o private cause of action exists under § 100.20, except for violation of an order issued by the Department under this section."); *In re Photochromic Lens Antitrust Litig.*, | cited cases do not involve denial of class certification of a multi-state class based on that argument. *Id.* Moreover, CDK failed to raise this argument for these states in its 12(b)(6) or summary judgment motions. Accordingly, the Court should disregard CDK's inclusion of this issue on this basis alone. [53] <br><br> [51] *See* Dealer Br., App'x C at 1 (citing *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 2022 WL 1470272, at *5 (E.D. Pa. May 10, 2022) – ignored by CDK). <br><br> [52] *See* Dealer Br., App'x C at 9 (citing In *re Keurig Green Mountain Single- Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d at 252 – also ignored by CDK). <br><br> [53] *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,* 568 U.S. 455, 466 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.") (citation omitted); *see also supra* n.34. <br><br> **Reply at 24-25.** | **AK**: The case cited by Dealers, *Generic Pharms. Pricing Antitrust Litig.*, 2022 WL 1470272, at *5, is inconsistent with Alaska statutes, Alaska Stat. Ann. § 45.50.577(i); Northern District of Illinois law, *In re Humira (Adalimumub) Antitrust Litig.*, 465 F. Supp. 3d 811 (N.D. Ill. 2020); and the weight of authority. | did for other states) at the motion to dismiss or summary judgment stage. Reply at 24-25, n.34 & 53. *See Fulton v. Bartik*, 2024 WL 1242637, at *30 (N.D. Ill. Mar. 22, 2024) (waiver resulted where defendant failed to seek summary judgment on a claim previously opined upon by the court). <br><br> **AK**: Dealers bring their claim under the Alaska *consumer protection* statute (*see* Compl. (ECF No. 198) at ¶¶ 545-52 (bringing claim under Alaska Stat. Ann. § 45.50.471 - 45.50.561)), not under the *antitrust statute* (Alaska Stat. Ann. 45.50.562 - 45.50.598). Therefore, CDK's citation to Alaska Stat. Ann. § 45.50.577(i) – for the proposition that only the attorney general may bring an indirect purchaser claim – is wholly inapplicable to Dealers' consumer protection claim. In addition, as noted in Dealers' caselaw (*In re Generic Pharmaceuticals Pricing* |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | 2011 WL 13141933 (M.D. Fla. Oct. 26, 2011) (similar). | | | *Antitrust Litig.*, 2022 WL 1470272, at *5 (E.D. Pa. May 10, 2022)) no court *in Alaska* has opined as to whether the antitrust statute's provision has any bearing on the Alaska consumer protection statute. |
| | | **WI**: *Keurig* says nothing of Wisconsin's consumer protection statute. *See Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d at 268 (listing state law claims under consumer protection statutes for "Arkansas, California, Massachusetts, Nebraska, New Mexico, and North Carolina"). | | **WI**: Since CDK failed to raise this argument in its 12(b)(6) or summary judgment motion, it waived the argument and the Court should disregard CDK's inclusion of this issue at class certification. *See* above waiver argument. |
| **Availability of Duplicative Recovery** | **Mandatory Offset for Duplicative Recovery**: Illinois (740 Ill. Comp. Stat. Ann. 10/7 § 7(2)), New York (N.Y. Gen. Bus. Law. § 340(6)), Rhode Island (R.I. Gen. Laws Ann. §§ 6-36-7, 6-36-11), Utah (Utah Code Ann. § 76-10-3109(6)), Vermont (9 Vt. Stat. Ann. tit. 9, § 2465(b)). | *See supra* n.44 | **N/A** | CDK again fails to address Dealers' arguments, merely noting "N/A" (an undefined term). Dealers argued that varying laws on duplicative recovery provides no basis to deny class certification because common issues (including the harmonization of state antitrust laws with the Sherman Act) dominate |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | **Discretionary Offset for Duplicative Recovery**: Arizona (*Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99 (Ariz. 2003)), California (*Clayworth v. Pfizer, Inc.*, 233 P.3d 1066 (Cal. 2010)), Hawaii (Haw. Rev. Stat. Ann. § 480-13(c)(2)), Minnesota (Minn. Stat. Ann. § 325D.57), Nebraska (Neb. Rev. Stat. Ann. § 59-821.01), South Dakota (S.D. Codified Laws §§ 37-1- 25, 37-1-33), Wisconsin (Wis. Stat. Ann. § 133.18). | | | over the easily-handled issue of damages apportionment. *See* Reply at 22 n.44. |
| **Availability of Pass-On Defense** | **Presumes Overcharges Are Passed On to Downstream Purchasers**: Utah (Utah Code Ann. § 76-10- 3109(7)).<br><br>**Permits Pass-On Defense Against Downstream Purchasers**: California (*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012)), Hawaii (Haw. Rev. Stat. Ann. § 480- 13(c)(2)), Illinois (*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6709621 (N.D. Cal. Dec. 26, 2012)), Michigan (*In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1 (D.D.C. 2003)), Minnesota (*Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007)), Nebraska (Neb. Rev. Stat. Ann. § 59-821.01), New Mexico (N.M. | **Pass-On:** CDK argues that how states treat the pass-on defense should disrupt class treatment. Opp. at 34-35 and App'x E at 4. But courts have found this does not constitute a material difference and does not defeat class certification. *See e.g., Broiler Chicken*, 2022 WL 1720468 at *20; *see also In re Niaspan Antitrust Litig.*, 464 F.Supp.3d 678, 723 (E.D. Pa. 2020).<br><br>Moreover, CDK is incorrect in suggesting that California,[38] Illinois,[39] Michigan,[40] and Minnesota[41] provide a pass-on defense. *See* App'x E at 4. And states that arguably do provide a pass-on defense do not provide for one here.[42] Regardless, CDK is not entitled to the pass-on defense under *any* state law because Dealers are the end of the distribution chain for DIS and do not resell DIS to anyone. *See In re Broiler Chicken Antitrust Litig.*, 2018 WL 999899, at *5-6 (N.D. Ill. Feb. 21, 2018). Dealer testimony shows they do not pass on DIS fees, and Dr. Haider fails to | | CDK (again) fails to respond to Dealers' caselaw which holds that states' differing treatment of the pass-on defense is not a material difference defeating class certification. *See* Reply at 20. Additionally, CDK did not rebut the undisputed evidence that the "pass-on" defense in the *Dealer Action* is inapplicable because there is no evidence of any pass on from Dealers to consumers – in fact there is substantial evidence to the contrary. *See* Reply at 21. |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | Stat. Ann. § 57-1-3(C)), New York (N.Y. Gen. Bus. Law § 340(6)). **At Least Some Courts Suggest Antitrust Statute Does Not Permit Pass-On Defense Against Downstream Purchasers**: Kansas (*Cox v. F. Hoffman-La-Roche*, 2003 WL 24471996 (Kan. Dist. Ct. Oct. 10, 2003)); Wisconsin (*K-S Pharms. Inc. v. Abbott Lab'ys.*, 1996 WL 33323859 (Wis. Cir. Ct. May 17, 1996)). | rebut this. *See* Ex. 3 at 285:10-286:6; Ex. 14 at 214:11-24; Ex. 15 at 250:5-251:10; Ex. 11 at 259:11-260:14. [38] **CA**: *see Clayworth v. Pfizer*, 233 P.3d 1066, 1086 (Cal. 2010) (pass-on defense precluded except "where multiple levels of purchasers have sued, or where a risk remains they may sue …."). *See also County of San Mateo v. CSL Ltd.*, 2014 WL 4100602, at *5 (N.D. Cal. Aug. 20, 2014) ("allowing a pass-on defense would hamper enforcement of California's antitrust laws …."). The narrow exception does not apply here where no pass-on occurred at the Dealer-to-consumer level. CDK's reliance on *TFT-LCD (Flat Panel) Antitrust Litig.*, (N.D. Cal. Dec. 26, 2012) is also misplaced because defendants were sued by multiple layers of *indirect* purchasers. *See id.* at *2. [39] **IL**: does not indicate availability of a pass-on defense. Statute calls for courts to use discretion to avoid duplicative recovery by using *transfer and consolidation of actions*, but not by allowing defendant to assert pass-on defense. *See* 740 Ill. Comp. Stat. Ann. 10/7 § 7(2). [40] **MI**: silent as to pass-on defense *and* avoiding duplicative recovery (*see* Mich. Comp. Law § 445.778(2)). *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 9 (D.D.C. 2003) (App'x E at 4) is distinguishable because it was a motion *in limine* brought by a *direct* purchaser to preclude evidence that it passed-on overcharge to its indirect purchaser customers. [41] **MN**: intent is clear to "abolish the availability of the pass-on defense" by allowing indirect purchasers to sue. *See State by Humphrey v. Phillip Morris, Inc.*, 551 | **CA**: California plainly allows a pass-on defense in the exact circumstances identified by Dealers: "where multiple levels of purchasers have sued, or where a risk remains they may sue[.]" *Clayworth v. Pfizer*, 233 P.3d at 1086. Dealers do not cite any requirement in California law that pass-on has to occur form Dealers to consumers. | **CA**: To be clear, California forbids the pass-on defense save for a few exceptions, none of which are applicable here. *Clayworth*, 233 P.3d 1086 ("a pass-on defense generally may not be asserted."). *Clayworth* is clear that where multiple levels of *injured purchasers* have sued (or could sue), the defendant can bring all of those potential parties before the court for adjudication and allocation of damages between injured parties to avoid duplicative recovery. *Id.* CDK, however, makes a critical mistake and conflates the Vendor Action with the Dealer Action. The former may present a case where pass-on would be allowed under California law whereas the latter would not because consumers (those people who purchase *cars* from Dealers) are not *injured purchasers* of DIS in any capacity. *See* Reply at 21, n.38 & 42; *see also County of San Mateo v. CSL Ltd.*, 2014 WL 4100602, at *5 (N.D. |

| | CDK App'x E<br>("Opp.", ECF No. 1456) | Dealers' Reply<br>("Reply", ECF No. 1478 at 19-25) | CDK App'x G<br>("Sur-Reply",<br>ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | | N.W.2d 490, 497 (Minn. 1996). CDK misinterprets *Lorix v. Crompton Corp.*, 736 N.W.2d 619 (Minn. 2007)(App'x E at 4) which dealt with antitrust standing, not the availability of the pass-on defense. MN's antitrust statute is also silent on the pass-on defense: "*[i]n any subsequent action arising from the same conduct*, the court may take any steps necessary to avoid duplicative recovery against a defendant." *See* Minn. Stat. § 325D.57 (emphasis added).<br><br>[42] For example, CDK argues that **UT** (Utah Code § 76-10-3109(7)-(8)) provides a statutory presumption of pass on; however, like **HI** (Haw. Rev. Stat. § 480-13(c)(2)); **NE** (Neb. Rev. Stat. § 59-821.01(1)); **NM** (N.M. Stat. Ann. § 57-1-3) and **NY** (N.Y. Gen. Bus. Law § 340(6)), these states limit the pass-on defense to where there are additional parties, lower in the distribution chain, who would be able to recover damages for the alleged overcharge. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 3064462, at *4 (E.D. Va. Apr. 18, 2023) (finding pass-on defense under these statutes inapplicable to situation where no lower purchaser seeking recovery). Here, Dealers' customers are not entitled to recover DIS overcharges because they do not purchase DIS from Dealers and (even after five years of litigation) have not sued CDK.<br><br>**Reply at 21.** | **IL**. The statute, 740 Ill. Comp. Stat. Ann. 10/7 § 7(2), does not mention pass-on. And case law suggests it is available. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6709621, at *4 (N.D. Cal. Dec. 26, 2012) ("The Court concludes that in the absence of any authority precluding the pass-on defense under Illinois law, it is appropriate under the circumstances of this MDL to permit defendants to assert a pass-on defense.").<br><br>**MI**. Dealers admit that Mich. Comp. Law § 445.778(2) is silent on pass-on. Their attempts to distinguish *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1, 9 (D.D.C. 2003) are unpersuasive; Dealers don't explain why the procedural posture of | Cal. Aug. 20, 2014) (ignored by CDK).<br><br>**IL**: The fact that Illinois is silent on the availability of the pass-on defense *but includes* other mechanisms to mitigate duplicative recovery does not support CDK's position. CDK is asking the Court to read into the Illinois statute a pass-on defense which, the statute itself, "does not mention". *TFT-LCD.*, 2012 WL 6709621, at *4 is unpersuasive for the reasons stated previously by Dealers (Reply at 21 n.38) (*i.e.*, multiple levels of indirect purchasers in *TFT-LCD* whereas here, Dealers are the end of the line for DIS overcharge).<br><br>**MI**: As with Illinois, Michigan's silence on whether a defendant may submit pass-on as a defense is not helpful to CDK. *See* IL discussion, *supra*. Moreover, the procedural posture in *In re Vitamins*, 259 F. Supp. 2d at 9 is important where |

| | CDK App'x E ("Opp.", ECF No. 1456) | Dealers' Reply ("Reply", ECF No. 1478 at 19-25) | CDK App'x G ("Sur-Reply", ECF No. 1509) | Dealer Sur-Response |
|---|---|---|---|---|
| | | | the case and the presence of a direct purchaser affects the court's conclusion that pass-on is available. Id. ("The Court finds that evidence of pass through may be relevant to an affirmative defense by defendants' that Kellogg did not suffer 'actual damages' as required under Michigan antitrust law."). | evidence had already been accumulated by defendants regarding the pass-on of overcharges to downstream purchasers and plaintiffs were seeking to exclude such evidence at trial. *Id.* Here, however, as already argued by Dealers (Reply at 21), there is a complete lack of *any* evidence of pass-on of DIS overcharge from Dealers to consumers. In fact, there is affirmative evidence to the contrary. *See* Reply at 21 (citing Dealer testimony that no pass-on of overcharges for DIS occurs from Dealers to consumers). |
| | | | **MN**. It is true that Minnesota has abolished the pass-on defense. *Humphrey v. Philip Morris Inc.*, 551 N.W.2d at 497 (noting that Minnesota "abolish[ed] the availability of the pass through defense[.]"). This does not materially affect overall variation among states. | **MN**: CDK concedes its inaccurate statement of Minnesota law. |

| | **CDK App'x E** ("Opp.", ECF No. 1456) | **Dealers' Reply** ("Reply", ECF No. 1478 at 19-25) | **CDK App'x G** ("Sur-Reply", ECF No. 1509) | **Dealer Sur-Response** |
|---|---|---|---|---|
| | | | **HI, NE, NM, NY, and UT**. Dealers merely cite to *In re Zetia (Ezetimibe) Antitrust Litig.*, 2023 WL 3064462, at *4 (E.D. Va. Apr. 18, 2023) to say that these states permit a pass-on defense but not under the circumstances in this case. Whether a pass-on defense is ultimately available under the circumstances here is a factual issue that does not affect the variability among the relevant statutes. | **HI, NE, NM, NY, and UT**: None of these state laws permit a pass-on defense where an alleged lower purchaser is not before the court or entitled to recovery. *See In re Zetia*, 2023 WL 3064462, at *4 ("Here, the individual consumers to whom Defendants believe the EPPs' passed on their overcharges are not before the court or entitled to recover themselves because they did not purchase the ezetimibe for which the EPP class seeks damages.") The same is true here. Dealers are suing for overcharges on DIS, but Dealers are the end of the distribution chain for DIS and consumers did not purchase DIS from Dealers. *See* Reply at 21 n.42. |

**Response to CDK Endnote 1 in App'x G: Harmonization Provisions**

As commonly done in antitrust cases regarding state laws, Dealers submitted appendices with their motion for class certification. *See* Dealer Br. at App'x B (Antitrust) & C (Consumer Protection) ("Harmonization Charts"). These Harmonization Charts show that the state laws invoked by Dealers are harmonized with federal law and that minor variations do not defeat Rule 23's predominance requirement. *See id.* at 7 ("The vast majority of the antitrust and consumer protection laws in the relevant 26 states are harmonized with federal law, and materially uniform across jurisdictions. *See* Appendix B and Appendix C hereto."); *id.* at 9-10 ("Plaintiffs seek certification under the antitrust and consumer protection statutes of twenty-six states. The essential similarities of those statutes and proof requirements are far more significant than the slight variations. *See* Appendices B and C. In fact, at the summary judgment stage, 'identifying authority from every relevant state, CDK explained that the vast majority of these claims track the substantive standards applicable to the federal antitrust claims.' (citing ECF No. 1131 at 10-11).").

CDK's Opposition failed to address and thus *waived any arguments* concerning the Harmonization Charts. Dealers noted CDK's failure to do so in their Reply at 20 ("CDK ignores Dealers' appendices showing the harmonization of state antitrust and consumer protection laws with federal law under the Sherman Act and FTC Act. *See* Dealer Br. at App'x B & C. By failing to refute the proposition, CDK effectively concedes that proving the elements of federal antitrust law suffices to establish liability under Dealers' state antitrust and consumer protection laws.").

Now, *in an endnote to an appendix to its Sur-Reply*, CDK belatedly proffers **a *new legal argument*** concerning the Harmonization Charts. The argument, having been waived, should be disregarded. *See Abbott Laboratories v. Qiagen Gaithersburg, Inc.*, 2010 WL 1539952, at * 3 (N.D. Ill. Apr. 15, 2010) (party waived argument raised in sur-reply); *see also Howell v. Motorola, Inc.*, 2007 WL 9811107, at *4 n.2 (N.D. Ill. Sept. 28, 2007) (Pallmeyer, J.) (declining to address undeveloped argument made in footnote).

But CDK's substantive argument is also erroneous. Numerous courts have found that **at class certification**, the presence of state harmonization provisions work to smooth over minor variations in a state's law and mitigate any concern that such variations would dominate over common questions. *See, e.g., In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 292-93 (N.D. Ohio 2014); *In re HIV Antitrust Litig.*, 2022 WL 22609107, at * 15 (N.D. Cal. Sept. 27, 2022); *In re Zetia (Ezetimibe) Antitrust Litig.*, 2020 WL 5778756, at * 26 (E.D. Va. Aug. 14, 2020); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 33 (E.D.N.Y. May 5, 2020); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 574-75 (S.D.N.Y. 2021); *see also* Reply at 20. In support of its position, CDK cites three motion to dismiss decisions which addressed harmonization provisions in the context of antitrust standing. *See In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *10-11 (N.D. Cal. Oct. 2, 2014); *Oliver v. Am. Express Co.*, 2020 WL 2079510, at *15-16 (E.D.N.Y. Apr. 30, 2020); *In re Flash Memory Antitrust Litig.*, 643 F.Supp.2d 1133, 1152-53 (N.D. Cal. 2009)). Indeed, the only class certification decision cited by CDK is *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678 (E.D. Pa. 2020), which, in a footnote, addresses the plaintiffs' lack of adequate analysis, and reliance on, harmonization provisions regarding the pass-on defense. *Id.* at 722 n. 11. The court went on, however, to reject defendants' argument and find that variation in state law regarding the pass-on defense does not preclude class certification. *Id.* at 723. Contrary to the *Niaspan* plaintiffs, Dealers provided a detailed analysis concerning pass-on, *supra* at 11-15, (as well as the other purported variations presented by CDK) and, nonetheless, the issue is not one that defeats predominance. Reply at 20 (citing *Broiler Chicken*, 2022 WL 1720468 at *20 (N.D. Ill. May 27, 2022)).