**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Rebecca R. Pallmeyer |
| THE DEALERSHIP CLASS ACTION | |

**DEALERSHIP CLASS PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH**
**DEFENDANT CDK GLOBAL, LLC AND FOR CONDITIONAL**
**CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

I. INTRODUCTION.................................................................................... 1

II. BACKGROUND .................................................................................... 2

III. SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS...................... 3

IV. THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY
APPROVAL ......................................................................................... 5

    A. The Proposed Settlement Falls "Within the Range of Possible Approval"
    and Should Be Preliminarily Approved.................................................. 5

    B. The Settlement is Fair and Resulted from Arm's Length Negotiations ............ 6

V. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS ........ 6

    A. The Requirements of Rule 23(a) are Satisfied.......................................... 7

        1. Numerosity............................................................................. 7

        2. Commonality .......................................................................... 8

        3. Typicality .............................................................................. 8

        4. Adequacy .............................................................................. 8

    B. The Proposed Settlement Class Satisfies Rule 23(b)(3) ............................ 9

        1. Predominance ......................................................................... 9

        2. Superiority ............................................................................. 9

VI. THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ................ 10

    A. Individual Notice .......................................................................... 10

    B. Media Plan Summary ..................................................................... 11

    C. Informational Release ..................................................................... 11

    D. Settlement Website ........................................................................ 11

VII. THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE
SCHEDULE.......................................................................................... 12

VIII. CONCLUSION ................................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Intern. Group, Inc. v. ACE INA Holdings, Inc.*,
2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................................5

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................7, 9

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ................................................................................................5

*Goldsmith v. Tech Solutions Co.*,
1995 WL 17009594 n.2 (N.D. Ill. Oct. 10, 1995) ..............................................................6

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ..................................................................................5, 6, 7

*In re Broiler Chicken Antitrust Litig.*,
2022 WL 1720468 (N.D. Ill. May 27, 2022) .....................................................................7, 9

*In re Cmty. Bank of N. Va.*,
418 F.3d 277 (3d Cir. 2005) ................................................................................................7

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ..............................................................................................12

*In re Mexico Money Transfer Litig. (W. Union & Valuta)*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .............................................................................5, 6

*In re Steel Antitrust Litig.*,
2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ......................................................................8

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...................................................................5, 10, 11

*In re Visa Check/MasterMoney Antitrust Litig.*,
2002 WL 31528478 (E.D.N.Y. June 21, 2002) .................................................................11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...............................................................................................5

*Kleen Prod. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ...............................................................................................9

*Kohen v. Pacific Inv. Mgmt.*,
571 F.3d 672 (7th Cir. 2009) ...............................................................................................8

*Lucas v. Vee Pak, Inc.*,
    2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) .................................................................6

*Orr v. Shicker*,
    953 F.3d 490 (7th Cir. 2020).................................................................................7

*Schulte v. Fifth Third Bank*,
    2010 WL 8816289 (N.D. Ill. Sept. 10, 2010).................................................6, 10

*Zollicoffer v. Gold Standard Baking, Inc.*,
    335 F.R.D. 126 (N.D. Ill. 2020) ...........................................................................8

## **Rules**

Fed. R. Civ. P. 23 ...........................................................................................*passim*

## **Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) ................................................5

William B. Rubenstein, NEWBERG AND RUBENSTEIN ON CLASS ACTIONS (6th ed. 2022).........5

## I.  INTRODUCTION

Dealership Class Plaintiffs ("Dealership Plaintiffs") respectfully move this Court for preliminary approval of their settlement ("Settlement") with Defendant CDK Global, LLC ("CDK"), and to certify the proposed settlement class ("CDK Settlement Class"). Pursuant to the Settlement, CDK will pay $100 million in settlement consideration and up to $250,000 for notice and claims administration costs. This Settlement was reached as the result of arms-length, hard-fought negotiations following years of litigation, with an impending trial set for September 2024. Interim Lead Class Counsel ("Lead Counsel") believes the Settlement is in the best interest of the CDK Settlement Class. *See* Declaration of Peggy J. Wedgworth ("Wedgworth Decl.") ¶¶ 4, 8, 9, 10 filed contemporaneously herewith.

Dealership Class Plaintiffs previously settled with The Reynolds and Reynolds Company ("Reynolds") for $29.5 million.[1] The Reynolds Settlement funds have been in an interest-bearing escrow account, and if this Settlement is approved, the claims submission and distribution process will include both CDK and Reynolds settlement funds. Dealership Plaintiffs intend to file a motion for distribution at a later date. *See* Section VII, *infra.*

Dealership Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement and permit class notice pursuant to a proposed notice plan ("Notice Plan")[2] that is plainly adequate and even more robust than the notice plan implemented for the Reynolds Settlement. Accordingly, Dealership Plaintiffs respectfully request entry of an Order (1) preliminarily approving the Settlement; (2) provisionally certifying the proposed CDK Settlement Class; (3) appointing Peggy J. Wedgworth and Milberg, Coleman, Bryson Phillips

---

[1] The Court granted final approval of the Reynolds settlement ("Reynolds Settlement") in January 2019. *See* ECF No. 502.

[2] *See* Section VI, *infra*; *see also* the accompanying Declaration of Cameron R. Azari Regarding Settlement Notice Plan and Notices, Senior Vice President of Epiq Class Action and Claim Solutions, Inc. and the Director of Legal Notice of Hilsoft Notifications ("Epiq" or "Settlement Administrator") ("Azari Decl."), filed contemporaneously herewith.

Grossman, PLLC as Lead Settlement Class Counsel and Leonard A. Bellavia and Bellavia Blatt, PC; Daniel Hedlund and Michelle Looby and Gustafson Gluek PLLC; James Barz and Frank Richter and Robbins Geller Rudman & Dowd LLP; and Robert A. Clifford and Clifford Law Offices, P.C. as Settlement Class Counsel; (4) directing notice to the CDK Settlement Class pursuant to the proposed manner and form of notice; (5) appointing the twenty-three dealerships ("Class Representatives") listed in Appendix ("App'x) as representatives for the proposed CDK Settlement Class for the purpose of class notice; (6) authorizing retention of Epiq as Settlement Administrator; (7) approving the proposed Schedule in Section VII, *infra*, for final approval of the Settlement; and (8) approving the Allocation Plan and Claim form (*see* Wedgworth Decl. Exhs. B and C).

## II.    BACKGROUND

This antitrust class action was brought on behalf of retail automobile dealerships in the United States who purchased Dealer Management Systems ("DMS") from Reynolds and/or CDK. Dealership Plaintiffs allege, *inter alia*, that Defendants conspired to restrain and/or eliminate competition in the related Data Integration Services ("DIS") market, in violation of the Sherman Act, and various state antitrust and consumer protection laws. This Court is familiar with the allegations and evidence in this case, having decided motions for summary judgment motion last year (ECF Nos. 1381, 1382), and was about to issue class certification and *Daubert* decisions when Dealership Plaintiffs and CDK reached a settlement.

Dealership Plaintiffs' counsel have been diligently litigating this case for almost seven years. Interim Lead Class Counsel and the Plaintiffs' Steering Committee have spent tens of thousands of hours advancing Dealership Plaintiffs' claims through extensive discovery of CDK and Reynolds and their experts, which included numerous rounds of briefing and oral argument. Wedgworth Decl. ¶¶ 8, 9.

Discovery has been considerable and far-reaching. Defendants produced over 1.2

million documents. Class Counsel took or defended over one hundred depositions, including those of Defendants' employees and expert witnesses, and subpoenaed at least thirty non-parties for data and information (taking several of their depositions). Class Representatives produced over 81,000 documents and almost all were deposed. There were multiple rounds of interrogatories and requests for production on both sides, as well as extensive motion practice. *Id.* ¶ 9.

On June 29, 2023, the Court granted in part and denied in part CDK's summary judgment motion to dismiss Dealership Plaintiffs' claims (ECF No. 1381) and granted in its entirety Dealership Plaintiffs' motion for summary judgment dismissing CDK's counterclaims (ECF No. 1382). The parties had recently completed class certification and *Daubert* briefing (ECF Nos. 1424, 1425, 1456, 1458, 1476-78, 1499, 1510, 1514, 1516),[3] and the Court held oral argument on July 2, 2024 (ECF No. 1520). Dealership Plaintiffs' class certification motion, the parties' latest *Daubert* motions and a fully briefed request for an interlocutory appeal related to the Court's summary judgment decision were *sub judice* when CDK and Dealers reached an agreement to settle the case, and trial was set to begin in September 2024.

## III.    SUMMARY OF SETTLEMENT NEGOTIATIONS AND TERMS

The Settlement, which was reached through extensive arm's length settlement negotiations, provides for CDK's payment of $100 million in cash and up to $250,000 for notice and claims administration costs. *See* Wedgworth Decl. ¶ 6; *see also id.*, Exh. A, Settlement Agreement ¶¶ 1(z), 1(gg), 12, & 13. The Settlement resolves Dealership Plaintiffs' claims against CDK. *Id.*, Exh. A ¶ 37. The Settlement also resolves CDK's claims against the Counterclaim Named Plaintiffs. *Id.* ¶ 7.

The Settlement, however, does not affect, release, or alter any contractual obligations

---

[3] By Order dated July 22, 2024, the Court granted class certification in the related vendor class action. *See* ECF No. 1525.

between that CDK Settlement Class Members and CDK including, for CDK, any obligation to provide products or services to any CDK Settlement Class Member, and for the CDK Settlement Class Member, any obligation to pay for those products or services. Additionally, the Settlement preserves any claims of the Class members arising out of the cybersecurity incident against CDK publicly reported in June 2024 and CDK's defenses to those claims, and does not affect or release any claims, defenses, counterclaims asserted as of the Effective Date in the action entitled *Asbury Automotive Group, Inc. v. CDK Global, LLC*, Civ. No. 24-A-04939-3 (Superior Court of Gwinnett County, State of Georgia). *Id.* ¶¶ 1(l), 33.

Subject to the approval and direction of the Court, the CDK and Reynolds settlement funds, including interest thereon, will be used to (1) pay taxes and tax-related costs; (2) make a distribution to class members in accordance with the proposed Allocation Plan filed with this Motion (*see* Wedgworth Decl. Exh. B); and (3) pay attorneys' fees not to exceed 33.3% of the combined CDK and Reynolds settlement funds; unreimbursed costs and expenses not to exceed $7.5 million (subject to a separate motion ("Fee and Expense Application") to be filed in accordance with the Schedule (*see* Section VII, *infra*));[4] and class representative service awards up to $10,000 for each of the twenty-three Class Representatives (*see* App'x) (subject to the Fee and Expense Application).[5]

---

[4] Dealership Class Counsel may also seek reimbursement of additional limited expenses related to this Settlement and settlement administration. Notwithstanding the foregoing, CDK is not liable for any amount above the $100 million plus up to $250,000 for notice and administration costs as described above.

[5] The Settlement Agreement (Wedgworth Decl. Exh. A, ¶ 26) provides that CDK shall have the option, but not the obligation, to terminate the Settlement Agreement if a specified number of class members elect to "opt-out" of the proposed CDK Settlement Class. In accordance with Fed. R. Civ. P. 23(e)(3), counsel discloses that the specified number is set forth in a separate confidential agreement, a copy of which will be provided to the Court *in camera* upon request.

## IV.    THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

### A.    The Proposed Settlement Falls "Within the Range of Possible Approval" and Should Be Preliminarily Approved

Public policy strongly supports the settlement of class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (Pallmeyer, J.) ("Courts favor the resolution of a class action by way of settlement and will approve such a settlement if it is fair, reasonable, and adequate when viewed in its entirety.").

Generally, before directing that notice be given to the class members, the court makes a preliminary fairness evaluation of the proposed settlement. As explained in the MANUAL FOR COMPLEX LITIGATION (Fourth):

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness   evaluation. * * * The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* § 21.632.  *See also* NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, §13:12 (6d ed. 2022); *Gautreaux  v.  Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval'"). A preliminary approval hearing "is not a 'fairness hearing'; its purpose is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (citation omitted).

A proposed settlement falls within the "range of possible approval" when it is conceivable that the proposed settlement will meet the criteria of Rule 23(e)(2). *In re TikTok,*

*Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). At preliminary approval a "full-fledged inquiry" into Rule 23(e)'s standards is not required (*see id.* (citing *Am. Intern. Group, Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011)) – that ultimate determination awaits the final hearing.

> **B.     The Settlement is Fair and Resulted from Arm's Length Negotiations**

Where, as here, the proposed settlement is the result of arm's length negotiations between experienced counsel, there is a presumption that the settlement is fair and reasonable. *See Goldsmith v. Tech Solutions Co.*, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995). The Settlement was reached after years of discovery, motion practice (including summary judgment motions, a fully-briefed and argued class certification motion, and *Daubert* challenges), and other significant proceedings, enabling Dealership Plaintiffs to fully understand the strengths and weakness of the case and achieve the best possible result on behalf of the Class. Wedgworth Decl. ¶¶ 8, 9. Courts routinely look to the judgment of the attorneys for the parties when determining if the proposed settlement is fair. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 346; *In re Mexico Money Transfer*, 164 F. Supp. 2d at 1020 ("The court places significant weight on the unanimously strong endorsement of these settlements by Plaintiffs' well-respected attorneys."). Here, it is the opinion of Lead Counsel that the Settlement is fair, reasonable, and adequate. Wedgworth Decl. ¶ 10.

Furthermore, the proposed Allocation Plan (*see id.*, Exh. B) provides a reasonable and equitable method to compensate CDK Settlement Class members for their alleged injuries. *See Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *13 (N.D. Ill. Dec. 20, 2017) (collecting cases); *see also Schulte v. Fifth Third Bank*, 2010 WL 8816289, at *3-4 (N.D. Ill. Sept. 10, 2010) (evaluating reasonableness of allocation plan at preliminary approval).

## V.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must determine whether the class should

be certified for settlement purposes. Class actions may be certified for settlement purposes only. *See, e.g., In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 340. Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997); *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry"). Dealership Plaintiffs seek certification of a nationwide CDK Settlement Class consisting of:

> All persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from September 1, 2013 through the date of this executed Settlement Agreement.

> Excluded from the CDK Settlement Class are Defendants, including any entity or division in which any Defendant has a controlling interest, as well as Defendants' joint ventures, subsidiaries, affiliates, assigns, and successors.

*See* Wedgworth Decl. Ex. A, Settlement Agreement ¶ 1(g). As detailed below, the proposed Settlement Class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A.    The Requirements of Rule 23(a) are Satisfied

#### 1.    Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." "[A] forty-member class is often regarded as sufficient to meet the numerosity requirement." *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir. 2020) (citation omitted). Here, the proposed CDK Settlement Class consists of thousands of automobile dealerships located across the United States, thus satisfying the numerosity requirement. *See* ECF No. 502 at 3 (final order approving Reynolds Settlement); *In re Broiler Chicken Antitrust Litig.*, 2022 WL 1720468, at *3 (N.D. Ill. May 27, 2022).

### 2. Commonality

Fed. R. Civ. P. 23(a)(2) requires "questions of law or fact common to the class." "[C]ourts within the Seventh Circuit have repeatedly held that 'the question of the existence of a conspiracy in restraint of trade is one that is common to all potential plaintiffs.'" ECF No. 1525 at 18 (certifying vendor class, citations omitted). Dealership Plaintiffs' conspiracy allegations easily satisfy the commonality requirement. *See* ECF No. 502 at 3.

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *In re Steel Antitrust Litig.,* 2015 WL 5304629, at *3 (N.D. Ill. Sept. 9, 2015) (citations omitted). Here, the typicality requirement is satisfied, as all class members have been damaged by the same alleged conspiracy. *See* ECF No. 502 at 3; ECF No. 1425 at 5-6.

### 4. Adequacy

Fed. R. Civ. P 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." *Id.* To satisfy the requirement, "Plaintiffs must show that: 1) they do not have interests that conflict with the class as a whole, 2) they are 'sufficiently interested in the case outcome to ensure vigorous advocacy,' and 3) class counsel is competent and willing to vigorously litigate the case." *Zollicoffer v. Gold Standard Baking, Inc.*, 335 F.R.D. 126, 158 (N.D. Ill. 2020) (citation omitted); *see also Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Here, the interests of Class Representatives (*see* App'x), requesting appointment as representatives for the proposed CDK Settlement Class for the purpose of class notice, are aligned, and do not conflict with those of the CDK Settlement Class. *See* ECF No. 502 at 3. Through their vigorous prosecution of this litigation over many years, Class Representatives and their counsel have demonstrated an unwavering commitment to the favorable resolution of

this case. *Id.* As this Court recognized when it appointed Peggy J. Wedgworth and Milberg to lead the case on an interim basis, as well as the firms comprising the Plaintiffs' Steering Committee and Liaison Counsel, Dealership Class Counsel has extensive experience in prosecuting antitrust cases, class actions, and other complex cases to successful resolution. *See* ECF Nos. 122, 123 (Order appointing Dealership leadership), and ECF Nos. 644, 944, 1285, 1343, 1379, 1484 (annual reappointments through 2024); *see also* ECF Nos. 94, 96-98, & 1425-9. Accordingly, the adequacy requirement is satisfied.

### B. The Proposed Settlement Class Satisfies Rule 23(b)(3)

In addition to Rule 23(a)'s prerequisites, Dealership Plaintiffs also satisfy Rule 23(b)(3)'s predominance and superiority requirements.

#### 1. Predominance

"Predominance is satisfied when common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication." *Broiler Chicken*, 2022 WL 1720468, at *6 (citing *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016)). "Given the importance of the conspiracy element to an antitrust action, courts and commentators regularly accept that common questions here will predominate over individual questions." ECF No. 1525 at 23; *see also Amchem Prods.*, 521 U.S. at 625; ECF 502 at 3. Here, the existence of the alleged conspiracy and its resultant antitrust injury to class members clearly predominates over any individual issues. *See* ECF No. 502 at 3.

#### 2. Superiority

Fed. R. Civ. P. 23(b)(3) also requires that a class action be "superior to other available methods" for adjudicating the case. *Id.* When courts "find[] that common questions predominate, they generally also find that superiority is also met." ECF No. 1525 at 32 (citation omitted). As this Court stated in approving the Reynolds Settlement: "a class action is superior to other available methods for the fair and efficient adjudication of this controversy." ECF No.

502 at 3. The alternative here – potentially *thousands* of individual cases addressing the *same* alleged conspiracy – would be an enormous waste of the Court's and the parties' resources. The superiority requirement is thus satisfied.

## VI.      THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Class notice is warranted where, as here, the Court "likely will be able to" approve the Settlement and certify the class. Fed. R. Civ. P. 23(e)(1)(B); *see In re TikTok, Inc. Consumer Priv. Litig.*, 565 F. Supp. 3d at 1083-84. For a class proposed under Rule 23(b)(3), Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Schulte*, 805 F. Supp. 2d at 595 (N.D. Ill. 2010). The Rule also specifies that "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). "What comprises the best notice possible depends on various elements, including the size of the class, whether the class members can be easily identified, and the probability notice will reach the intended audience." *Schulte*, 805 F. Supp. 2d at 595.

As with the previous Reynolds's settlement, Dealership Plaintiffs have retained Epiq as Settlement Administrator, an industry leader in class action administration. *See* Azari Decl. ¶ 4 and Attachment ("Att.") 1. In consultation with Epiq, Dealership Plaintiffs have developed a Notice Plan that is even more robust than the successful notice plan implemented in the Reynolds' Settlement, which was approved by this Court. Epiq expects the proposed Notice Plan will reach approximately 90% of the CDK Settlement Class. Azari Decl. ¶¶ 18, 42.

### A.      Individual Notice

Epiq will send Email Notice and/or Postcard Mail Notice to identified CDK Settlement Class Members ("Individual Notice"). *See id.*, Att. 2 and 3. Epiq will utilize detailed customer lists to send Individual Notice, obtained from both CDK and Reynolds, containing information

for their dealership customers in the United States that purchased DMS from September 1, 2013 to July 20, 2024. *See* Azari Decl. ¶¶ 23-28. Use of defendants' customer lists for notice purposes is commonplace in antitrust cases. *See e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1088-3 (N.D. Ill. 2021) (emails sent through "analysis of class data records" contributed to meeting standard for adequate notice); *In re Visa Check/MasterMoney Antitrust Litig.*, 2002 WL 31528478 at *2-3 (E.D.N.Y. June 21, 2002) ("For purposes of providing notice, the best way to identify individual merchant class members is … through merchant contact information.").

### B. Media Plan Summary

To supplement the Individual Notice efforts, Epiq's Media Plan includes various forms of notice including publication notice in a national newspaper for the automotive industry, digital/internet notice, and an information press release ("Publication Notice"). Azari Decl. ¶ 29. A 4" x 9" page ad will appear in *Automotive News*, a premier resource for the auto industry with a national circulation of approximately 64,547. *See id.* ¶ 30 and Att. 4. There will also be targeted "Digital Notice advertising on *AutoNews.com* for two weeks and *CBT News – Homepage Banner* Sponsorship for one to four weeks. *See id.* ¶¶ 31-35 and Att. 5.

### C. Informational Release

To build additional reach and extend exposure, a party-neutral press release ("Informational Release") will be issued nationwide over the Auto Wire and Automotive microlist to media outlets including local and national newspapers, magazines, and national wire services across the United States, as well as websites, online databases, internet networks, blogs and social networking media. *See id.* ¶¶ 36-37 and Att. 6.

### D. Settlement Website

Epiq will update the existing website www.dealershipclassDMSsettlement.com (where periodic case updated are posted) with information regarding this Settlement. The Settlement

website will allow potential CDK Settlement Class Members to access the Long-Form Posted Notice (*id.* ¶¶ 24, 26, 32, 38 and Att. 7), relevant court documents, including the Settlement Agreement (*see* Wedgworth Decl. Exh. A), review "Frequently Asked Questions," review the Allocation Plan (*id.* Exh. B), submit a Claim Form via an online claim portal on the website (*id.* Exh. C), follow instructions for opting-out or objecting to the Settlement, Fee and Expense Application and/or Allocation Plan, and find any updates concerning the Settlement. Azari Decl. ¶ 38. The Settlement website, Settlement postal mailing address, and the toll-free number (*see id.* ¶ 39) will be listed in the Email Notice, Postcard Mail Notice, Publication Notice, Long-Form Posted Notice and the Informational Release. The Notice Plan schedule will afford enough time to provide full and proper notice to the CDK Settlement Class Members before any opt out or objection deadlines. *Id.* ¶ 45.

A very similar Notice Plan was successfully implemented for the earlier Reynolds settlement which the Court found satisfied Rules 23(c)(2) and (e). ECF No. 432 at 5-6. Accordingly, the Notice Plan is the "best notice that is practicable under the circumstances" and is similar to notice programs approved in other cases. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 109-10 (D.N.J. 2012).

## VII.   THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE SCHEDULE

Dealership Plaintiffs and CDK propose that the Court adopt the following deadlines governing the Settlement:

| EVENT | DATE |
|---|---|
| Order granting preliminary approval of CDK Settlement and directing notice to CDK Settlement Class Members | TBD ("Preliminary Approval Date") |
| Notice campaign begins through direct email and U.S. mail to CDK and Reynolds Settlement Class Members, and implementation of publication notice ("Notice Date") | Within 30 days of Preliminary Approval Date |
| Last day for CDK to file with Court proof, by | 28 days after Preliminary Approval Date |

| EVENT | DATE |
|---|---|
| affidavit or declaration, regarding CAFA compliance | |
| Last day for CDK Settlement Class Members to request exclusion from the CDK Settlement Class or to object to the CDK Settlement, including notifying the Court if want to speak at final approval hearing | 45 days from Notice Date |
| Last day for Settlement Administrator to provide CDK and Dealership Class Plaintiffs with a list, and supporting documentation, of all persons and entities who have timely and adequately requested exclusion from the CDK Settlement Class | 55 days from Notice Date |
| CDK Class Plaintiffs shall submit: (1) motion for final approval of CDK settlement; and (2) motion for approval of fees & expenses, and class representative service awards | 66 days from Notice Date |
| Last day for CDK or Reynolds Settlement Class Members to object to Dealership Class Plaintiffs' motion for approval of fees & expenses, and class representative service awards | 80 days from Notice Date |
| Last day for CDK and Reynolds Settlement Class Members to submit a claim(s) and supporting documentation | 108 days from Notice Date |
| Last day for Class Counsel to provide to the Court a supplemental declaration from the settlement administrator regarding notice campaign, opt-outs and claim rate | 122 days from Notice Date |
| Last day for CDK to notify Class Counsel of exercise of option to terminate Settlement, if conditions are met under Supplemental Agreement (subject to waiver by CDK) | 10 days before final approval / fairness hearing |
| Last day for Dealership Class Plaintiffs to file responses to all objections | 7 days before final approval / fairness hearing |
| Final approval / fairness hearing, and hearing on request for approval of fees & expenses, and class representative service awards[6] | TBD |
| Order granting final approval of CDK Settlement | TBD |

---

[6] Objections, claims, or issues which relate exclusively to the Reynolds Settlement (Reynolds Settlement Class Members may not object or opt-out of that Settlement as the deadline has passed but may object to the Fee and Expense Application and/or the Allocation Plan) do not impact the CDK Settlement, and objections and/or claims which relate exclusively to the CDK Settlement do not impact the Reynolds Settlement.

| EVENT | DATE |
|---|---|
| Dealership Class Plaintiffs shall submit motion for distribution of settlement funds | TBD |
| Distribution to CDK Settlement Class Members | TBD |

*\* "Days" means calendar days unless otherwise indicated. If any deadline above should fall on a weekend or holiday, the deadline shall be the next business day.*

## VIII.   CONCLUSION

For all the foregoing reasons, Dealership Plaintiffs respectfully request that their motion for preliminary settlement approval and certification of the proposed CDK Settlement Class be granted.

Dated August 16, 2024                                 Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
Elizabeth McKenna
Robert A. Wallner
John Hughes*
Michael Acciavatti**
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
(212) 594-5300
pwedgworth@milberg.com
emckenna@milberg.com
rwallner@milberg.com
jhughes@milberg.com
macciavatti@milberg.com
*\*   Admitted in Michigan only*
*\*\* Admitted in Pennsylvania only*

*MDL Co-Lead Counsel and Interim Lead Counsel representing the Dealership Class Plaintiffs*

14

## APPENDIX

Lead Counsel will be requesting service awards up to $10,000 in their Fee and Expense Application for each of the following Class Representatives:

1. Baystate Ford Inc.

2. Cherry Hill Jaguar

3. Cliff Harris Group (Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram)

4. Continental Motors Group (including Continental Autos, Inc. d/b/a/ Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports)

5. Duteau Chevrolet Co. d/b/a DuTeau Chevrolet

6. Gregoris Motors, Inc.

7. GSM Auto Group (GSM Auto Group, LLC d/b/a Infiniti Mission Viejo; GSM Auto Group II, LLC d/b/a Audi Mission Viejo; GSM Auto Group III, LLC d/b/a Volvo Cars Mission Viejo)

8. Henry Brown Buick GMC LLC d/b/a Henry Brown Buick GMC

9. Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville

10. Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra

11. John O'Neil Johnson Toyota, LLC; Inc.

12. Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota

13. L&S Toyota of Beckley

14. Landmark Ford

15. Pitre Group (Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC)

16. Rochester Hills Chrysler Jeep Dodge Ram

17. Sandy Sansing Chevrolet, Inc. d/b/a Sandy Sansing Chevrolet Pensacola

18. Stevens Group (including Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; JCF Autos LLC d/b/a Stevens Jersey City Ford; Patchogue 112 Motors LLC d/b/a Stevens Ford)

19. Teterboro Automall d/b/a Teterboro Chrysler Dodge Jeep Ram

20. The Automaster (including Automaster BMW; Automaster Honda; Automaster Mercedes-Benz; Mini of Burlington)

21. Tony Group (including Tony Automotive Group LLC d/b/a (i) Tony Volkswagen, (ii) Tony Hyundai, (iii) Genesis of Waipio, and (iv) Tony Hyundai Honolulu; Tony Hawaii LLC d/b/a Tony Honda; Pacific Nissan LLC d/b/a Tony Nissan; Tony Hawaii Hilo LLC d/b/a Tony Honda Hilo; Tony Hawaii Kona LLC d/b/a Tony Honda Kona)

22. Toyota or Ann Arbor

23. Waconia Dodge, Inc. d/b/a Waconia Dodge

16

## CERTIFICATE OF SERVICE

I, Peggy J. Wedgworth, an attorney, hereby certify that on August 16, 2024, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT CDK GLOBAL, LLC AND FOR CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth