# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18-cv-00864 |
| **This Document Relates To:** | Honorable Rebecca R. Pallmeyer |
| **THE DEALERSHIP CLASS ACTION** | |

### SETTLEMENT AGREEMENT BETWEEN THE DEALERSHIP CLASS AND CDK

This Settlement Agreement ("Agreement")[1] is made and entered into on August 15, 2024 by and between the Dealership Class Plaintiffs, both individually and on behalf of the CDK Settlement Class, and CDK Global, LLC ("CDK"), through their respective counsel. This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Dealership Released Claims and the CDK Released Claims, upon and subject to the terms and conditions set forth in this Agreement and subject to the approval of the Court.

WHEREAS, the Dealership Class Plaintiffs are prosecuting the Dealership Class Action ("Action") on their own behalf and on behalf of the Dealership Class against CDK; and

WHEREAS, the Dealership Class Plaintiffs allege, among other things, that CDK and The Reynolds and Reynolds Company ("Reynolds")[2] unlawfully colluded to restrain and/or eliminate competition by charging supracompetitive prices in the markets for Dealer Management System

---

[1] Unless otherwise noted, capitalized terms not immediately defined have the meanings set forth in the Definitions section of this Agreement.

[2] Reynolds settled the Action in 2019. *See* Settlement Agreement Between the Dealership Class and Reynolds (ECF No. 427-2) ("Reynolds Settlement"); Final Approval Order and Judgment for Settlement between the Dealership Class and Reynolds (ECF No. 502).

("DMS") software services and Data Integration Services ("DIS"), in violation of Sections 1 and 2 of the Sherman Act and certain state antitrust and consumer protection laws; and

WHEREAS, the Dealership Class Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with CDK according to the terms of this Agreement is fair, reasonable, and adequate, and beneficial to and in the best interests of the Dealership Class Plaintiffs and the CDK Settlement Class; and

WHEREAS, CDK denies Dealership Class Plaintiffs' allegations and claims in the Action[3] and any wrongdoing or liability to Dealership Class Plaintiffs and members of the CDK Settlement Class; and is entering in this Agreement for settlement purposes only and solely to avoid the inconvenience, distraction and disruption of burdensome litigation and to reach certain and final resolution with CDK's customers, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims known or unknown asserted against CDK based on the allegations of the Action, as more particularly set out below; and

WHEREAS, Dealership Class Plaintiffs deny any allegations and counterclaims brought by CDK against certain Dealership Class Plaintiffs in the Action[4] and deny any wrongdoing or liability to CDK; and are entering in this Agreement for settlement purposes only and to avoid the further expense, risk, inconvenience, distraction and disruption of burdensome litigation, and to obtain the releases, orders and judgment contemplated by this Agreement, and to put to rest with finality all claims known or unknown asserted against the Counterclaim Named Plaintiffs, as more particularly set out below; and

---

[3] Certain claims brought by Dealership Class Plaintiffs were dismissed by this Court on January 25, 2019 (ECF 507) and June 29, 2023 (ECF No. 1382).

[4] All Counterclaims brought by CDK were dismissed by this Court on September 3, 2019 (ECF No. 749) and June 29, 2023 (ECF No. 1382).

WHEREAS, Dealership Class Lead Counsel and CDK's Counsel have engaged in arm's-length settlement negotiations;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to CDK and, except as provided by this Agreement, without costs to the Dealership Class Plaintiffs, the CDK Settlement Class, or CDK, subject to the approval of the Court, following Notice to the CDK Settlement Class, on the following terms and conditions:

A.    **Definitions**

1.    These terms, as used in this Agreement, have the following meanings:

(a)    "Action" means The Dealership Class Action, *In Re Dealer Management Systems Antitrust Litigation*, MDL No. 2817, 18-cv-00864 (N.D. Ill.).

(b)    "CDK Released Claims" means any and all claims and causes of action (whether class, representative, individual or otherwise), existing as of or prior to the Effective Date, whether asserted or unasserted, known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, against the Counterclaim Named Plaintiffs that (i) CDK Releasors asserted against the Counterclaim Named Plaintiffs in MDL Litigation 2817; or (ii) that arise out of the facts asserted in CDK's counterclaims against the Counterclaim Named Plaintiffs for (a) breach of contract due to any provision of login credentials to Authenticom, Inc. and/or other third parties to enable those third parties to access CDK's DMS, (b) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*., and (c) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq*., including claims for damages (whether actual, punitive, treble, compensatory, or otherwise), costs, fees, expenses, penalties, and attorneys' fees.

(c)     "CDK Releasees" and "CDK Releasors" mean CDK, and all of their respective current and former, direct and indirect parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, assigns, insurers, and shareholders; and all respective current and former officers, directors, principals, partners, members, heirs, attorneys, representatives, agents, and employees of each of the foregoing entities.

(d)     "CDK Settlement Class," for purposes of settlement only, means all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds ("Defendants"), or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from September 1, 2013 through August 15, 2024 ("CDK Settlement Class Period"). Excluded from the CDK Settlement Class are Defendants, including any entity or division in which any Defendant has a controlling interest, as well as Defendants' joint ventures, subsidiaries, affiliates, assigns, and successors. Subject to Court approval, the parties agree that the CDK Settlement Class shall be certified pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes only as to CDK.

(e)     "CDK Settlement Class Member" means each member of the CDK Settlement Class who does not timely elect to be excluded from the Dealership Settlement Class.

(f)     "CDK Settlement Class Period" means the period from September 1, 2013 through the Effective Date which is defined as August 15, 2024.

(g)      "Counsel for CDK" refers to the law firm of Kirkland & Ellis LLP.

(h)     "Counterclaim Named Plaintiffs" are those named counter-defendants in CDK's counterclaims (ECF No. 522): (1) ACA Motors, Inc. d/b/a Continental Acura; (2) Baystate Ford Inc.; (3) Cherry Hill Jaguar; (4) Cliff Harris Ford, LLC d/b/a Warrensburg Ford; (5) Continental Autos, Inc. d/b/a/ Continental Toyota; (6) Continental Classic

Motors, Inc. d/b/a Continental Autosports; (7) 5800 Countryside, LLC d/b/a/ Continental Mitsubishi; (8) HDA Motors, Inc. d/b/a Continental Honda; (9) H & H Continental Motors, Inc. d/b/a Continental Nissan; (10) JCF Autos LLC d/b/a Stevens Jersey City Ford; (11) Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; (12) Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; (13) Naperville Zoom Cars, Inc. d/b/a/ Continental Mazda; (14) NV Autos, Inc. d/b/a Continental Audi; (15) Patchogue 112 Motors LLC d/b/a Stevens Ford; (16) Waconia Dodge, Inc. d/b/a Waconia Dodge; and (17) Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat. Counterclaim Named Plaintiffs, and all of their current and former, direct and indirect parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, assigns, insurers, and shareholders, and all respective current and former officers, directors, principals, partners, members, heirs, attorneys, representatives, agents, and employees of each of the foregoing entities are collectively referred to as "Plaintiff Releasees."

(i)     "Dealership Class Counsel" means the law firms of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"); Bellavia Blatt, P.C.; Gustafson Gluek PLLC; Robbins Geller Rudman & Dowd LLP; and Clifford Law Offices, P.C.

(j)     "Dealership Class Lead Counsel" means Milberg.

(k)     "Dealership Class Plaintiffs" means each of the named plaintiffs in the Consolidated Class Action Complaint (ECF No. 184) (the "Complaint"): (1) ACA Motors, Inc. d/b/a Continental Acura; (2) Baystate Ford Inc.; (3) Cherry Hill Jaguar; (4) Cliff Harris Ford, LLC d/b/a Warrensburg Ford; (5) Continental Autos, Inc. d/b/a/ Continental Toyota; (6) Continental Classic Motors, Inc. d/b/a Continental Autosports; (7) 5800 Countryside, LLC d/b/a/ Continental Mitsubishi; (8) HDA Motors, Inc. d/b/a Continental Honda; (9) H & H Continental Motors, Inc.

d/b/a Continental Nissan; (10) Gregoris Motors, Inc.; (11) Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville; (12) JCF Autos LLC d/b/a Stevens Jersey City Ford; (13) Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; (14) Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra; (15) John O'Neil Johnson Toyota, LLC; (16) Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota; (17) Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; (18) Naperville Zoom Cars, Inc. d/b/a/ Continental Mazda; (19) NV Autos, Inc. d/b/a Continental Audi; (20) Patchogue 112 Motors LLC d/b/a Stevens Ford; (21) Pitre Imports, LLC d/b/a Pitre Kia; (22) Pitre, Inc. d/b/a Pitre Buick GMC; (23) Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram; (24) Waconia Dodge, Inc. d/b/a Waconia Dodge; and (25) Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat; as well as additional class representatives added in the Motion for Class Certification (ECF No. 1424): (1) Henry Brown Buick GMC, LLC d/b/a Henry Brown Buick GMC; (2) Tony Automotive Group LLC d/b/a (i) Tony Volkswagen; (ii) Tony Hyundai; (iii) Genesis of Waipio; and (iv) Tony Hyundai Honolulu; (3) Tony Hawaii LLC d/b/a Tony Honda; (4) Pacific Nissan LLC d/b/a Tony Nissan; (5) Tony Hawaii Hilo LLC d/b/a Tony Honda Hilo; (6) Tony Hawaii Kona LLC d/b/a Tony Honda Kona; (7) GSM Auto Group, LLC d/b/a Infiniti Mission Viejo; (8) GSM Auto Group II, LLC d/b/a Audi Mission Viejo; (9) GSM Auto Group III, LLC d/b/a Volvo Cars Mission Viejo; (10) Sandy Sansing Chevrolet, Inc. d/b/a Sandy Sansing Chevrolet Pensacola; (11) Duteau Chevrolet Co. d/b/a DuTeau Chevrolet; (12) Landmark Ford; (13) Automaster BMW; (14) Automaster Honda; (15) Automaster Mercedes-Benz; (16) Mini of Burlington; (17) L&S Motors of Beckley, Inc. d/b/a L&S Toyota of Beckley; (18) Toyota of Ann Arbor; and (19) Rochester Hills Chrysler Jeep Dodge Ram.

(l)     "Dealership Released Claims" means any and all claims and causes of action (whether class, representative, individual or otherwise), existing as of or prior to the Effective Date whether asserted or unasserted, known or unknown, suspected or unsuspected, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that CDK Settlement Class members ("CDK Settlement Class Releasors") have against CDK Releasees (i) that were asserted in Dealership Class Plaintiffs' complaints previously filed in MDL Litigation 2817 (including the Complaint), or (ii) that arise out of or relate to the facts, agreements, conspiracies, communications, or announcements alleged in such complaints under any antitrust, unjust enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, contract, civil conspiracy or consumer protection law, whether under federal, state, local or foreign law, including claims for damages (whether actual, punitive, treble, compensatory, or otherwise), costs, fees, expenses, penalties, and attorneys' fees; provided, however, that nothing herein shall release any claim involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities, or other claims relating to CDK's DMS. For clarity, Dealership Released Claims do not include any and all claims, demands, and causes of action that CDK Settlement Class Releasors have against CDK Releasees, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, that relate in any way to any data breach, cyberattack, or cybersecurity incident, including but not limited to any data breach, cyberattack, and/or security incident publicly reported in June 2024 involving CDK's DMS.

(m)     "Defendants" means CDK and Reynolds.

(n) "DIS" or "Data Integration Services," for purposes of this Agreement only, means the programs and services for extracting, formatting, integrating, and/or organizing data from DMSs.

(o) "DMS," for purposes of this Agreement only, means Dealer Management System, which is an enterprise software system and computing platform designed for automobile dealers.

(p) "Effective Date" shall mean the Execution Date of this Agreement.

(q) "Escrow Account" means the separate escrow account at a banking institution into which the Settlement Consideration will be deposited for the benefit of the Dealership Settlement Class.

(r) "Escrow Agent" means the Settlement Administrator.

(s) "Execution Date" means the date of the last signature on the signature pages set forth below. On the Execution Date, the Dealership Class Plaintiffs and CDK are bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with their Rescission Rights, including CDK's Opt-Out Termination Right.

(t) "Fee and Expense Order" means an order by the Court approving the request for an award of attorneys' fees and litigation expenses and class representative awards.

(u) "Final," with respect to the Final Approval Order and Judgment or an alternative judgment, means: (a) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal from the Court's Judgment approving the Settlement; i.e., thirty (30) calendar days after entry of the Judgment; or (b) if there is an appeal, the date of final dismissal of any appeal from the Judgment, or the final dismissal of any proceeding on *certiorari* to review the Judgment; or (c) the date of final affirmance on an appeal of the Judgment, the expiration of the

time to file a petition for a writ of *certiorari*, or the denial of a writ of *certiorari* to review the Judgment, and, if *certiorari* is granted, the date of final affirmance of the Judgment following review under that grant. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times. Any proceeding or order, or any appeal or petition for a writ of *certiorari* pertaining solely to any distribution plan and/or application for attorneys' fees, class representative service awards, costs, or expenses, shall not delay or preclude the Judgment from becoming Final.

(v) "Final Approval Order and Judgment" means the order and final judgment to be entered by the Court approving the Agreement, as approved by the Settling Parties and substantially in the form submitted with the Motion for Preliminary Approval.

(w) "MDL" means the multidistrict litigation, *In Re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.).

(x) "Notice" means the forms of notice as approved by the Settling Parties and submitted with the Motion for Preliminary Approval, including the email, mail, publication, digital, and long form notices, and information release to be disseminated by the Settlement Administrator to the CDK Settlement Class.

(y) "Notice and Claims Costs" means actual class notice and claims administration costs up to a maximum limit of two hundred and fifty thousand dollars ($250,000) in U.S. dollars.

(z) "Opt-Out Deadline" means the deadline for a Class Member to submit a Request for Exclusion as set forth in the Preliminary Approval Order and which will be no more than 45 days from Notice sent to Dealership Settlement Class Members about this Agreement.

(aa) "Preliminary Approval Order" means the proposed order preliminarily approving the Agreement and directing Notice to the CDK Settlement Class as approved by the Settling Parties and substantially in the form submitted to the Court with the Motion for Preliminary Approval.

(bb) "Released Claims" means the Dealership Released Claims and the CDK Released Claims.

(cc) "Request for Exclusion" means the letter that must be written, completed with all information required, signed under penalty of perjury and returned in the manner and within the time frame specified in this Agreement for a CDK Settlement Class Member to request exclusion from the Class.

(dd) "Settlement" means the settlement contemplated by this Agreement.

(ee) "Settlement Administrator" means the firm of Epiq Class Action & Claims Solutions, Inc., which shall administer the Settlement, subject to the Court's approval.

(ff) "Settlement Consideration" means one hundred million dollars ($100,000,000) in U.S. dollars.

(gg) "Settlement Fund" means the funds in the Escrow Account, including the Settlement Consideration and Notice and Claims Costs, and any interest accrued thereon. The Settlement Fund does not include monies paid by Reynolds in connection with the Reynolds Settlement, nor any interest earned on the Reynolds settlement, nor any expenses paid from the Reynolds settlement amount as authorized by the Court.

(hh) "Settling Parties" means the Dealership Class Plaintiffs and CDK.

**B.    Approval of this Agreement, Notice, and Dismissal of Claims Against CDK**

2.    <u>Reasonable Best Efforts to Effectuate this Settlement</u>. The Dealership Class Plaintiffs and CDK will use their best efforts to effectuate this Agreement, including

cooperating in seeking Court approval of the Settlement and securing both the Court's certification of the CDK Settlement Class and the Court's approval of procedures (including issuing class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and Final dismissal with prejudice of the Action as to CDK. The parties shall use their best efforts to stay litigation of the Released Claims of CDK Settlement Class Members pending the Final Approval Order and Judgment.

3.  <u>Motion for Preliminary Approval</u>. On August 16, 2024, Class Counsel will submit a motion for preliminary approval of the Settlement by the Court and for authorization to disseminate Notice to the CDK Settlement Class.

4.  <u>Notice to the CDK Settlement Class</u>. As ordered by the Court in the Preliminary Approval Order, consistent with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, Notice shall be disseminated to the CDK Settlement Class, which shall be provided with the opportunity to request to be excluded from the CDK Settlement Class and the opportunity to object to the Settlement, or any attorneys' fees, costs and expenses, distribution plan, or class representative service award[5] sought by Dealership Class Counsel. On the timetable and in the manner set by the Court in the Preliminary Approval Order, the Settlement Administrator shall disseminate Notice to the CDK Settlement Class. CDK will provide reasonable assistance with Notice to CDK Settlement Class members, including by providing, for Notice purposes only, email and mailing addresses for current CDK dealers and mailing addresses for prior CDK dealers from 2013 to present, that are presently available and accessible in CDK's records.

---

[5] Class representatives are listed in Paragraph A.1.(k).

5.          Motion for Final Approval and Entry of Final Judgment. Prior to the date set by the Court to consider whether this Settlement should be finally approved, Dealership Class Counsel will submit a motion for final approval of the Settlement by the Court. The Settling Parties shall jointly seek entry of a Final Approval Order and Judgment, substantially in the form submitted with the Motion for Preliminary Approval.

C.     **Releases, Discharge, and Covenants Not to Sue**

6.          Release of Claims Against CDK Releasees. Upon entry of the Final Approval Order and Judgment, CDK Settlement Class Releasors release Dealership Released Claims against each CDK Releasee, irrespective of whether any such claim has been asserted against such releasee.

7.          Release of Claims Against Plaintiff Releasees. Upon entry of the Final Approval Order and Judgment, CDK Releasors release CDK Released Claims against each Plaintiff Releasee, irrespective of whether any such claim has been asserted against such releasee.

8.          No Future Actions Following Releases. CDK Settlement Class Releasors and CDK Releasors covenant and agree that they will not, after the Effective Date, seek to recover from any releasee on account of the claims released by such releasors.

9.          Covenant Not to Sue. CDK Settlement Class Releasors and CDK Releasors hereby covenant not to sue CDK Releasees and Plaintiff Releasees, respectively, with respect to any Released Claims. Dealership Settlement Class Releasors and CDK Releasors shall be permanently barred and enjoined from instituting, commencing, or prosecuting against the CDK Releasees and Plaintiff Releasees, respectively, any claims based in whole or in part on the Released Claims.  The Settling Parties contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated

or maintained in any case sought to be prosecuted by or on behalf of any Dealership Class Releasor or CDK Releasor with respect to the Released Claims.

10.      <u>Waiver of California Civil Code § 1542 and Similar Laws</u>. CDK Settlement Class Releasors and CDK Releasors expressly waive, upon Final Approval of the Agreement, any and all provisions, rights and benefits conferred by (i) Section 1542 of the California Civil Code, which provides, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."); or (ii) any law of any state or territory of the United States, or principle of common law that is similar, or equivalent to Section 1542 of the California Civil Code.

**D.    Motion Practice**

11.      After the Effective Date, neither CDK nor Dealership Class Plaintiffs shall file any further motions against the other. In the event this Settlement does not become Final, both CDK and Dealership Class Plaintiffs shall retain the right to reinstate and pursue any motions that were previously stayed or taken off calendar.

**E.    Payments**

12.      <u>Settlement Consideration</u>. CDK shall pay or cause to be paid the Settlement Consideration. CDK's sole monetary obligation under the Settlement shall be for CDK to pay the Settlement Consideration, and CDK shall not be obligated to pay any other amounts (except for the Notice and Claims Costs). Dealership Class Lead Counsel will establish an Escrow Account. CDK shall fund the Settlement Consideration into the Escrow Account no later than thirty (30) days after the Court's preliminary approval of the settlement. All interest on the funds in the Escrow Account shall accrue to the benefit of the CDK Settlement Class. There shall be no

disbursements from the Escrow Account with the exception of Notice and Claims Costs unless and until the Court enters the Final Approval Order and Judgment.

13. <u>Notice and Claims Costs</u>. In addition to the Settlement Consideration, CDK agrees to pay Notice and Claims Costs. The Notice and Claims Costs shall be paid into the Escrow Account no later than thirty (30) days after the Court's preliminary approval of the settlement. All interest on the funds in the Escrow Account shall accrue to the benefit of the CDK Settlement Class.

**F.     Settlement Fund**

14. <u>Settlement Fund</u>. Dealership Class Lead Counsel will provide complete and accurate payment instructions and a W-9 for payment of the Settlement Consideration and Notice and Claims Costs into the Escrow Account.

(a)     <u>Escrow Account</u>. All funds required to be held in escrow for the purposes of this Settlement shall be held by the Escrow Agent. All funds required to be held in the Escrow Account are deemed to be in the custody of the Court and will remain subject to the jurisdiction of the Court until the funds are distributed pursuant to this Agreement and/or further order of the Court.

(b)     The Escrow Agent or any independent entity designated by the Escrow Agent will invest any funds held in the Escrow Account in short-term United States Agency or Treasury Securities (or a mutual fund invested solely in such instruments) or in a fully US Government-insured account, and will collect and reinvest any interest accrued thereon, except that any residual cash balances or funds needed for short-term placement up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC and held in cash.

(c) All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Fund, and the CDK Releasees shall have no responsibility for, interest in, or liability regarding investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

(d) The Settling Parties and their counsel shall treat, and shall cause the Settlement Administrator or its designee to treat, the Settlement Fund as at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. In addition, the Settlement Administrator or its designee and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements in such regulations. It shall be the responsibility of the Escrow Agent, the Settlement Administrator or its designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.

(e) For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Fund shall be the Escrow Agent, the Settlement Administrator or its designee, who shall timely and properly file or cause to be filed, all tax returns necessary or advisable regarding the Settlement Fund (including, without limitation, all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2).

(f)     The Escrow Agent or its designee will file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund.

(g)     The Escrow Agent or any independent entity designated by the Escrow Agent will pay out of the Settlement Fund: (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon CDK with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this Paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph ("Tax Expenses").

(h)     CDK Releasees shall have no liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (and any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)). The Settling Parties, through their counsel, agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Paragraph.

## G. Administration and Distribution of Net Settlement Fund

15. <u>Net Settlement Fund</u>. The Settlement Fund, net of any Taxes and Tax Expenses shall be used to pay (i) any attorneys' fees, litigation expenses and class representative service awards approved by the Court; and (ii) any Court-approved administration expenses involved in distributing funds to CDK Settlement Class Members. The balance of the Settlement Fund after the above payments shall be the "Net Settlement Fund." CDK Settlement Class Releasors shall look solely to the Net Settlement Fund for settlement and satisfaction against the CDK Releasees of all Released Claims and shall have no other recovery against CDK or any other CDK Releasee for such Released Claims.

16. <u>Distribution of Net Settlement Fund</u>. Upon further orders of the Court, the Settlement Administrator, subject to such supervision and direction of the Court and/or Dealership Class Lead Counsel as may be necessary or as circumstances may require, will distribute the Net Settlement Fund to CDK Settlement Class Members pursuant to a distribution plan to be approved by the Court. Dealership Class Lead Counsel, either before or after final settlement approval, shall propose to the Court a reasonable distribution plan for the Net Settlement Fund designed to effectuate the Settlement and will require CDK Settlement Class Members to submit claim forms and supporting documentation to the Settlement Administrator. In no event shall any CDK Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the costs and expenses of such distribution and administration, with the sole exception of the Notice and Claims Costs Paragraph. CDK's Counsel shall have no involvement in reviewing or challenging claim forms. CDK shall be dismissed from the Action prior to any distribution of this Net Settlement Fund and shall have no involvement in the distribution of the Net Settlement Fund.

17.	Distribution Plan. A distribution plan is not a necessary term of this Agreement and it is not a condition of this Agreement that any particular distribution plan be approved. A distribution plan will be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement in this Agreement, and any order or proceedings relating to any distribution plan shall not operate to terminate or cancel this Agreement or affect the finality of the Final Approval Order and Judgment, or any other orders entered pursuant to this Agreement. The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Final Approval Order and Judgment or an alternative judgment, regardless of whether either any distribution plan or application for attorneys' fees and expenses has been submitted to the Court or approved.

18.	No Reversion. This is not a claims-made settlement. The Net Settlement Fund shall be distributed to CDK Settlement Class Members pursuant to a Court-approved distribution plan or as otherwise ordered by the Court. CDK shall not be entitled to the return of any of the settlement monies except as set forth in the Status Quo Ante Paragraph below.

**H.	Dealership Class Counsel's Attorneys' Fees, Class Representative Service Awards and Reimbursement of Expenses**

19.	Fee and Expense Application. Subject to Court approval, Dealership Class Lead Counsel may apply to the Court for an award of fees, reimbursement of expenses and class representative service awards; provided, however, that (i) any fees, expenses and service awards approved by the Court in respect of this Settlement shall be paid solely out of the Settlement Fund and CDK shall have no other liability for payment of any such fees and expenses and service awards, and (ii) CDK agrees not to take any position on any application of Dealership Class Counsel for such fees, expenses and service awards so long as the attorney fee award does not

exceed one-third of all settlement monies collected on behalf of the dealerships in the Action, plus interest thereon.

20.     The CDK Releasees shall not have any liability for any costs, fees, or expenses of any of Dealership Class Plaintiffs' or the CDK Settlement Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees and expenses as approved by the Court shall be paid out of the Settlement Fund.

21.     <u>Payment of a Fee and Expense Award</u>. Upon entry of an order by the Court approving the request for an award of attorneys' fees and litigation expenses and class representative awards ("Fee and Expense Order"), attorneys' fees and litigation expenses and class representative awards may be paid from the Settlement Fund pursuant to the terms of the Fee and Expense Order, subject to Dealership Class Lead Counsel's obligations to make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as earned by the Settlement Fund, if, because of any appeal and/or further proceedings on remand, or successful collateral attack, the Settlement is terminated or the Fee and Expense Order is modified or reversed.

22.     Dealership Class Lead Counsel shall receive attorneys' fees, costs, expenses, and funds for class representative service awards when such Fee and Expense Order is signed by the district court, regardless of whether approval of the Settlement or the Fee and Expense Order is appealed. Dealership Class Lead Counsel shall refund any award under the Fee and Expense Order to the extent that it is reversed or reduced by an appellate court.

23.     Dealership Class Lead Counsel shall allocate the attorneys' fees amongst counsel that worked on the case in a manner in which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action. CDK has no

liability or obligation to Dealership Class Plaintiffs, the other CDK Settlement Class Members, or Dealership Class Counsel for any type of attorneys' fees or service award other than CDK's obligation to pay or cause to be paid the Settlement Consideration.

24.     Nothing contained herein shall affect any application to the Court for an award of attorneys' fees, reimbursement of expenses and class representative service awards from the Reynolds Settlement.

25.     <u>Award of Fees, Class Representative Service Awards and Expenses Not Part of Settlement</u>. The procedure for and the allowance or disallowance by the Court of any fee and expense application are not part of the Settlement, and are separate from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to any fee and expense application, including without limitation an award of attorneys' fees or expenses less than the amount requested by Dealership Class Counsel, or any appeal from or reversal or modification of any order relating to attorneys' fees or expenses, shall not operate to terminate this Agreement, or affect or delay the finality of the Judgment approving the Settlement, including, but not limited to, the release, discharge, and relinquishment of the Released Claims against the CDK Releasees, or any other orders entered pursuant to the Settlement. Neither CDK nor any CDK Releasee shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Dealership Class Counsel of any fee or expense award in the Action. The Dealership Class Plaintiffs and Dealership Class Counsel have no right to terminate this Settlement based on the Court's or any appellate court's ruling regarding fees and expenses or class representative awards.

### I.     Opt-Out Termination Right

26.     <u>CDK's Opt-Out Termination Right</u>. Simultaneously herewith, Dealership Class Lead Counsel and CDK's Counsel are executing a "Supplemental Agreement"

setting forth certain conditions under which CDK has the option, but not the obligation, to terminate this Agreement if a certain number of CDK Settlement Class Members exclude themselves from the CDK Settlement Class. The Supplemental Agreement will not be filed unless a dispute arises as to its terms. In the event of termination of the Settlement pursuant to the Supplemental Agreement, this Agreement shall become null and void and of no further force and effect and the Status Quo Ante Provisions, set forth in Paragraph 31, shall apply.

### J. Dealership Class Plaintiffs' Right of Exclusion/Inclusion

27.     <u>Request for Exclusion</u>. A CDK Settlement Class Member may request exclusion from the CDK Settlement Class until the Opt-Out Deadline. To request exclusion, the CDK Settlement Class Member must send a signed letter by U.S. mail to the Settlement Administrator. The Request for Exclusion must be signed by the Class Member seeking exclusion under penalty of perjury. So-called "mass" or "class" optouts shall not be allowed. To be valid, a Request for Exclusion must be postmarked on or before the Opt-Out Deadline. Any CDK Settlement Class Member who submits by U.S. mail a valid and timely Request for Exclusion shall not be entitled to relief under, and shall not be affected by, this Agreement or any relief provided by this Agreement. For a Request for Exclusion to be considered by the Court, it must set forth all of the following: (i) the specific statement that the person or entity is a member of the CDK Settlement Class and wants to be excluded from the Settlement with CDK in the Dealership Class Action, *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817, 18-cv-00864 (N.D. Ill.); (ii) the person's or entity's full name, address, email address and telephone number; (iii) all trade names or business names and addresses used by the person or entity; (iv) the number of and physical addresses in the state or U.S. territory for each of the rooftops requesting exclusion; (v) the identity of the person's or entity's counsel for each rooftop, if represented; (vi) the date(s) from September 1, 2013 to August 15, 2024 the person or entity entered into a contract for DMS

services for each rooftop and with whom (*i.e.*, CDK and/or Reynolds) the person or entity entered into the contract; and (vii) the person's or entity's authorized representative's signature (under penalty of perjury) and title; and (vii) the date on which the Exclusion Request was signed.

28.     An Exclusion Request shall not be valid unless it provides the required information and is made within the time stated above. The Settling Parties shall have the right to challenge the timeliness and validity of any Request for Exclusion. The Court shall determine whether any contested Exclusion Request is valid.

29.     Within ten (10) days after the Opt-Out Deadline, the Settlement Administrator will provide the Settling Parties with a list of persons or entities who opted out by validly requesting exclusion along with all documentation supporting the determination. At or before the fairness hearing, Dealership Lead Class Counsel shall file or cause to be filed with the Court, under seal, a list of all persons and entities who have timely and validly requested exclusion from the CDK Settlement Class.

### K.     Settling Parties' Rescission Rights

30.     CDK and the Dealership Class Plaintiffs may each elect to terminate the Settlement and this Agreement ("Rescission Rights") by providing written notice to the other party within thirty (30) days after any of the following events: (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Agreement or any material part of it; (c) the Court's declining to enter the Final Approval Order and Judgment in any material respect; (d) the date upon which the Final Approval Order and Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (e) the date upon which an alternative judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

### L. Effect of Termination, Rescission, or Failure to Become Final

31.　　Status Quo Ante. Except as otherwise provided in this Agreement, if the Settlement is terminated, rescinded, or otherwise does not become Final, then the following provisions ("Status Quo Ante Provisions") shall be applicable: (i) the Settling Parties shall be deemed to have reverted to their respective status in the Action as of July 21, 2024, (ii) except as otherwise provided, the Settling Parties shall proceed as if this Agreement and any related orders had not been entered, (iii) this Agreement will be inadmissible for any purpose, (iv) the following amounts shall be returned to CDK within fourteen (14) calendar days of termination or rescission of this Agreement, or failure of this Agreement to become Final: (a) the Settlement Consideration, with any interest earned thereon, less any paid or accrued taxes and (b) the Notice and Claims Costs, less any expenses paid or payable therefrom, (v) CDK reserves the right to seek full recovery of all Taxes and Tax Expenses paid prior to the termination, rescission, or failure of this Agreement to become Final, as the case may be, and (vi) Dealership Class Plaintiffs and CDK expressly reserve all of their respective claims, rights, and defenses.

### M. No Admission of Wrongdoing

32.　　The Dealership Class Plaintiffs and CDK agree this Agreement, whether or not it shall become Final, and any negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by CDK or the Dealership Class Plaintiffs or of the truth of the claims or allegations in any complaint or any other pleading filed in the MDL, and evidence thereof shall not be discoverable or used directly or indirectly in the MDL or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the Settling Parties shall be referred to, offered as evidence or received in

evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

### N. Miscellaneous Provisions

33. Notwithstanding anything contained herein to the contrary, this Agreement (a) does not affect, release, or alter any contractual obligation between CDK and any CDK Settlement Class Member including (i) for CDK, any obligation to provide products or services to any CDK Settlement Class Member, and (ii) for the CDK Settlement Class Member, any obligation to pay for those products or services; (b) does not affect or release any claims or counterclaims asserted as of the Effective Date, in the action entitled *Asbury Automotive Group, Inc. v. CDK Global, LLC*, Civ. No. 24-A-04939-3 (Superior Court of Gwinnett County, State of Georgia); and (c) does not relate in any way to, and does not affect or release claims, defenses, or counterclaims related to, any data breach, cyberattack, or cybersecurity incident, including but not limited to any data breach, cyberattack, and/or security incident publicly-reported in June 2024 involving CDK's DMS.

34. For the avoidance of doubt, the Agreement shall not constitute a final and complete resolution of all disputes asserted or which could be asserted with respect to the Released Claims, until each of the following conditions has been satisfied: (i) final approval of the settlement by the Court, and entry of the Final Approval Order and Judgment in the form agreed to by the parties, with such approval becoming final after the resolution of objections and any appeal or through the absence of any further right of appeal (if any); and (ii) waiver of the maximum opt-out number agreed to by the parties—if reached—by CDK.

35. <u>Solvency Warranty</u>. CDK warrants that, as to the payments to be made by and/or on behalf of it, at the time that such payment was made or caused to be made pursuant

to this Agreement, it was not insolvent, nor did the payment required to be made by or on behalf of it render it insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof. This warranty is made by CDK and not by its counsel.

36.     If a case is commenced with respect to CDK (or any insurer contributing funds to the Settlement Fund on behalf of it) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of CDK to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund by others, then, at the election of Dealership Class Lead Counsel, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and Judgment entered in favor of CDK pursuant to this Agreement, which releases and Judgment shall be null and void, and the Settling Parties shall be restored to their respective positions in the Action as of July 21, 2024 and any cash amounts in the Settlement Fund shall be returned as provided by this Agreement.

37.     Incorporation of Notice and Orders. The Notice to CDK Class Members, Order for Preliminary Approval, and Final Order and Judgment are incorporated by reference as though set forth in this Agreement.

38.     Final and Complete Resolution; Rule 11 Compliance; Voluntary Settlement. The Settling Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted with respect to the Released Claims. Accordingly, the Dealership Class Plaintiffs and CDK agree not to assert in any forum that the litigation was

brought, litigated, or settled by the Dealership Class Plaintiffs or CDK, or defended by CDK or the Dealership Class Plaintiffs in bad faith or without a reasonable basis. The Settling Parties will assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or any similar rules or statutes relating to the prosecution, defense, or settlement of the Action. Each of the Settling Parties represents that it negotiated this Settlement Agreement in good faith and at arm's length, and the Settling Parties agree that the Settlement was reached voluntarily and after consultation with experienced legal counsel.

39. <u>Amendment; Waiver</u>. This Agreement may not be modified or amended, except by a writing signed by or on behalf of all Settling Parties or their successors-in-interest. The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any Settling Parties of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

40. <u>Retention of Exclusive Jurisdiction; Resolution of Disputes; Choice of Law</u>. The United States District Court for the Northern District of Illinois shall retain exclusive jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute between the Settling Parties arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by the Dealership Class Plaintiffs and CDK. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Illinois without regard to its choice of law or conflict of laws principles.

41. <u>Integrated Agreement</u>. This Agreement supersedes any and all prior and contemporaneous agreements and undertakings of the Dealership Class Plaintiffs and CDK in

connection with this Settlement. This Agreement may be modified or amended only by a writing executed by the Dealership Class Plaintiffs and CDK, through their respective counsel, and approved by the Court.

42. <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Dealership Class Plaintiffs and CDK. Without limiting the generality of the foregoing: (a) every covenant and agreement made in this Agreement by the Dealership Class Plaintiffs shall be binding upon all CDK Settlement Class Releasors; and (b) every covenant and agreement made by CDK shall be binding upon all CDK Releasors. The Dealership Class Releasees and the CDK Releasees (other than the Dealership Class Plaintiffs and CDK, who are parties to this Agreement) are third party beneficiaries of this Agreement and may enforce its terms applicable to them. With the exception of the Dealership Class Releasees and the CDK Releasees, there are no other third-party beneficiaries of any provision of this Agreement, including without limitation the Releases set forth herein. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than the CDK Settlement Class Releasors, Dealership Releasees, CDK Releasors, and CDK Releasees any right or remedy under or from this Agreement. For clarity, Reynolds is not a third-party beneficiary of this Agreement, and nothing contained herein shall affect or release any claim against Reynolds, or alter any contractual obligation between Reynolds and any other person.

43. <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts by Dealership Class Lead Counsel and CDK's Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered as an original signature for purposes of execution of this Agreement.

44.     Headings. The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

45.     No Party Deemed to be the Drafter. Neither the Dealership Class Plaintiffs nor CDK are considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

46.     No Tax Advice. No opinion or advice concerning the tax consequences of the proposed Settlement to individual Dealership Class Members is being given or will be given by Dealership Class Counsel or CDK's Counsel; nor is any representation or warranty made by this Agreement. Each Dealership Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Dealership Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Dealership Class Member.

47.     Changes of Address. Either Settling Party may change the address for notice delivery by giving notice in the manner set forth in this Agreement.

48.     Authorization to Enter into this Agreement. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

49.     Notice to Settling Parties Under This Agreement. Where this Agreement requires either Settling Party to provide notice or any other communication or document to the other Settling Party, this notice, communication, or document must be in writing and provided by email or letter by overnight delivery to the party being notified as follows:

For the Dealership Class Plaintiffs and
Dealership Settlement Class:

Peggy J. Wedgworth
Elizabeth McKenna
Robert A. Wallner
John Hughes*
Michael Acciavatti**
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
pwedgworth@milberg.com
emckenna@milberg.com
rwallner@milberg.com
jhughes@milberg.com
macciavatti@milberg.com

*admitted in Michigan only*
**admitted in Pennsylvania only*

For Settling Defendant CDK:

Craig S. Primis, P.C.
Matthew J. Reilly, P.C.
K. Winn Allen, P.C.
Katherine Katz, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 389-5000
craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
katherine.katz@kirkland.com

DATED: August 15, 2024

_Peggy J. Wedgworth_

Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
Robert A. Wallner (*pro hac vice*)
John Hughes (*pro hac vice*)*
Michael Acciavatti (*pro hac vice*)**
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
Tel: (212) 594-5300
pwedgworth@milberg.com
emckenna@milberg.com
rwallner@milberg.com
jhughes@milberg.com
macciavatti@milberg.com

*admitted in Michigan only
**admitted in Pennsylvania only

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
lbellavia@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
RAC@cliffordlaw.com

*MDL Liaison Counsel*

DATED: August 15, 2024

*Katherine Katz*

Mark Filip, P.C.
Kevin M. Jonke
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
Tel: (312) 862-2000
mark.filip@kirkland.com
kevin.jonke@kirkland.com

Craig S. Primis, P.C.
Matthew J. Reilly, P.C.
K. Winn Allen, P.C.
Katherine Katz, P.C.
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel: (202) 389-5000
craig.primis@kirkland.com
matt.reilly@kirkland.com
winn.allen@kirkland.com
katherine.katz@kirkland.com

*Counsel for Defendant CDK Global, LLC*