**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 |
| | Case No. 18-cv-00864 |
| This Document Relates To: | |
| | Hon. Rebecca R. Pallmeyer |
| THE DEALERSHIP CLASS ACTION | |

**DEALERSHIP CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
SETTLEMENT WITH DEFENDANT CDK GLOBAL, LLC**

# TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................................................1

II.   SETTLEMENT BACKGROUND AND TERMS ...............................................................3

III.  THE SETTLEMENT SATISFIES THE STANDARD FOR
FINAL APPROVAL ...........................................................................................................4

    A.    The CDK Settlement Class Satisfies Rule 23(e)(1)(B) ...........................................4

    B.    The CDK Settlement Class was Given Adequate Court-Approved Notice .........................4

    C.    The Settlement Satisfies Rule 23(e)(2) Factors ......................................................7

        1.    Class Counsel and Class Representatives Adequately
Represented the Class ..................................................................................8

        2.    The Settlement was Negotiated at Arm's Length ........................................8

        3.    The Proposed Settlement Treats Class Members Equitably ...........................9

        4.    The Relief Provided by the Settlement is Adequate ..................................10

    D.    The Settlement Satisfies Additional Seventh Circuit Factors .............................11

        1.    The Strength of the Case Compared to the Settlement Offer....................12

        2.    The Class Faced Complex, Lengthy, and Expensive Litigation
Absent the Settlement.................................................................................13

        3.    The Response of Class Members and Absence of
Opposition to the Settlement .....................................................................13

        4.    The Opinion of Competent Counsel Supports Final Approval...................14

        5.    The Stage of the Proceedings and the Amount of Discovery Completed
at the Time of the Settlement Supports Final Approval.............................15

IV.  CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................. 14

*Bills v. TLC Homes*,
2020 WL 5982880 (E.D. Wis. Oct. 8, 2020) ............................................................. 9

*Charvat v. Valente*,
2019 WL 5576932 (N.D. Ill. Oct. 29, 2019) .........................................................7, 11

*Gehrich v. Chase Bank USA, N.A.*,
316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................ 12

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) .............................................................. 13, 15

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (E.D. Ill. 2021) ................................................................... 14

*In re TikTok, Inc., Consumer Priv. Litig.*,
617 F. Supp. 3d 904 (N.D.Ill. 2022) ...............................................................4, 5, 11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ............................................................. 7, 12, 13, 14

*Kleen Products LLC, et al., v. International Paper Company, et al.*,
2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) ............................................................. 9

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) ............................................................................ 10

*Linnear v. Illinicare Health Plan, Inc.*,
2019 WL 13072750 (N.D. Ill. Dec. 17. 2019) ......................................................... 14

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806 (E.D. Wis. 2009) ................................................................... 10

*Reynolds v. Beneficial Nat'l Bank*,
288 F.3d 277 (7th Cir. 2002) ................................................................................ 7

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................ 8

ii

*Sanchez v. Roka Akor Chicago LLC*,
2017 WL 1425837 (N.D. Ill. Apr. 20, 2017) .............................................................. 15

*Schulte v. Fifth Third Bank*,
805 F.Supp.2d 560 (N.D. Ill. 2011) .................................................................. 12, 15

*Summers v. UAL Corp. ESOP Comm.*,
2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ............................................................ 9

*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*,
463 F.3d at 653 (7th Cir. 2006) ............................................................................ 12

*T.K. v. Bytedance Tech. Co.*,
2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................... *passim*

*Wilk v. Am. Med Ass'n*,
895 F.2d 352 (7th Cir. 1990) ................................................................................ 12

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ........................................................................... 3, 12

**Rules**

Fed R. Civ. P. 23 .................................................................................................. *passim*

## I. INTRODUCTION

Dealership Class Plaintiffs ("Dealership Plaintiffs") respectfully move for final approval of the settlement ("Settlement") with Defendant CDK Global, LLC ("CDK"). The Settlement is fair, reasonable and adequate, and satisfies the standard for the Court's approval pursuant to Fed. R. Civ. P. 23(e). Dealership Counsel[1] obtained substantial monetary relief for the CDK Settlement Class[2] in settling with CDK for an immediate, $100 million cash settlement, and an additional $250,000 towards notice and claims administration costs. The CDK Settlement Class has agreed to release claims against CDK as specified in the Settlement Agreement. *See* ECF No. 1528-2 ¶¶ A.1(l), C. The Settlement also resolves CDK's claims against certain Dealership Plaintiffs. *Id.* ¶¶ A.1(b), C. Dealership Plaintiffs previously settled with Defendant The Reynolds and Reynolds Company ("Reynolds") for $29.5 million in 2019,[3] which brings the total settlement amount to $129.5 million, plus interest – an exceptional result for CDK and Reynolds Class Members when weighed against the substantial litigation risks in this case.

This lawsuit, filed over seven years ago, has been complex and hard-fought, with extensive fact discovery and significant motion practice, including motions to dismiss, summary judgment, *Daubert*, and class certification motions. The case involved multiple rounds of interrogatories and requests for production on both sides, approximately 1.2 million documents produced by defendants

---

[1] "Dealership Counsel" refers to Lead Counsel Peggy J. Wedgworth and Milberg Coleman Bryson Phillips Grossman, PLLC and Plaintiffs' Steering Committee members Leonard A. Bellavia and Bellavia Blatt, PC; Daniel Hedlund and Michelle Looby and Gustafson Gluek PLLC; James Barz and Frank Richter and Robbins Geller Rudman & Dowd LLP; and Liaison Counsel Robert A. Clifford and Clifford Law Offices. *See* ECF No. 123; *see also* ECF No. 1531 ¶¶ 9-10.

[2] "CDK Settlement Class" (or "Class Members" or "The Class") refers to "All persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds … during the period from September 1, 2013 through the date of the executed Agreement …." ECF No. 1531 ¶ 6.

[3] The Court granted final approval of the Reynolds settlement ("Reynolds Settlement") in January 2019. *See* ECF No. 502. The Reynolds Settlement funds have been in an interest-bearing escrow account. If the CDK Settlement is approved, the distribution process will include both CDK and Reynolds Settlement funds.

and thousands of documents produced by third parties, over 81,000 documents produced by class representatives, approximately 30 third-party subpoenas, over 115 depositions, and eight economic and industry experts (five defense experts and three plaintiff experts).[4] Factual and legal issues were vigorously contested throughout this case.

The Court preliminarily approved the Settlement, preliminarily finding it fair, reasonable and adequate, and in the best interest of the CDK Settlement Class. *See* ECF No. 1531 ¶ 11; *see id generally.* The Settlement is the result of arm's-length, intensive and protracted negotiations undertaken in good faith between competent and experienced attorneys. In settling this action spanning seven years, Dealership Counsel have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in this lawsuit; analyzed the strength of the Dealership Plaintiffs' case compared to the terms of the proposed Settlement; and evaluated the expense, risks and delays associated with the continued prosecution of this complex litigation and trial (previously scheduled for September 2024), as well as likely appeals of any rulings in favor of either party.

Dealership Counsel believe the Settlement is in the best interest of the CDK Settlement Class. The reaction of CDK Settlement Class members has been overwhelmingly positive with over 7,300 unique visitor sessions to the settlement website, 1,095 claims submitted, and significantly, *not one* objection or exclusion request received.[5] As set forth in more detail below, in addition to the provision of adequate notice, the CDK Settlement Class satisfies the standards of Rule 23(e)(1) and the

---

[4] *See* accompanying Declaration of Peggy J. Wedgworth in Support of Dealership Class Plaintiffs' Motion for Final Approval of Settlement with Defendant CDK Global, LLC ("Wedgworth Final Approval Decl."), ¶ 12. *See also* Declaration of Peggy J. Wedgworth in Support of Dealership Class Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards ("Wedgworth Fee Decl."), filed contemporaneously herewith, ¶ 18.

[5] *See* the accompanying Declaration of Cameron R. Azari, Esq. Regarding Implementation and Adequacy of Settlement Notice Plan and Notices ("Azari Decl.") ¶¶ 30, 33, 35.

Settlement is fair, adequate and reasonable under Fed. R. Civ P. 23(e)(2) and the factors the Seventh Circuit has enumerated. *See, e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859 (7th Cir. 2014).

## II.   SETTLEMENT BACKGROUND AND TERMS[6]

Dealership Counsel and CDK conducted extensive arms-length negotiations both in-person and telephonically over an extended period of time in the latter part of 2023 with no success. Settlement negotiations resumed following the class certification hearing held on July 2, 2024, and a settlement in principle was reached on July 12, 2024, with the parties' counsel executing the proposed Settlement Agreement on August 15, 2024. *See* Wedgworth Final Approval Decl. ¶¶ 16, 17.

Dealership Plaintiffs and CDK entered into a Settlement Agreement that provides for CDK's payment of $100 million plus up to $250,000 for notice and administration costs. *See* ECF No. 1528-2 ¶¶ A.1(y), 1(ff), F. The Settlement resolves Dealership Plaintiffs' claims against CDK as well as CDK's claims against certain Counterclaim Named Plaintiffs. *Id.* ¶¶ C.6 & 7. The Settlement, however, does not affect, release, or alter any contractual obligations between any Dealership Plaintiffs and CDK, including any obligation for CDK to provide products or services to any CDK Settlement Class member, and any obligation for CDK Settlement Class Members to pay for those products or services. Additionally, the Settlement preserves any claims of the class members arising out of the cybersecurity incident reported in June 2024 involving CDK's DMS. *Id.* ¶¶ A.1(l), N.33.

Dealership Plaintiffs filed their Motion for Preliminary Approval (ECF No. 1528) on August 16, 2024. Following an August 22, 2024 hearing, the Court granted preliminary approval of the Settlement on August 23, 2024 (ECF No. 1531). The Court preliminarily found that the Settlement satisfied all the requirements of Fed R. Civ. P. 23. *Id.* The Court's Preliminary Approval Order, *inter alia*, certified the CDK Settlement Class, appointed Dealership Class Lead Counsel, Settlement Class

---

[6] The facts of this case have been summarized in several of the Court's opinions, including its June 2023 summary judgment opinion (ECF No. 1381 at 1-7). *See also* ECF No. 1382 at 1-10; ECF No. 1528 at 2-3.

Counsel, Dealership Class Representatives and Epic Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator, and approved the Notice Plan. *Id.* ¶¶ 1, 6, 8-14. CDK transferred $100.25 million to Epiq on or about September 20, 2024, with $100 million currently in an interest-bearing escrow account and $250,000 in a checking account from which Epiq is paid on a quarterly basis for notice and claims administration costs. *See* Azari Decl. ¶ 36; Wedgworth Final Approval Decl. ¶ 8. A Final Settlement Hearing is scheduled for February 25, 2025. ECF No. 1531 ¶ 31.

## III. THE SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL

The "court may approve a class action settlement if: (1) it is able to certify the settlement class; (2) the class was provided adequate notice and a public hearing; and (3) it determines that the settlement is 'fair, reasonable, and adequate.'" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 921 (N.D. Ill. 2022) (quoting Fed. R. Civ. P. (1)-(2)).

### A. The CDK Settlement Class Satisfies Rule 23(e)(1)(B)

The CDK Settlement Class satisfies Rule 23(e)(1)(B), as demonstrated in Dealership Plaintiffs' preliminary approval briefing. *See* ECF No. 1528 at 6-10; *see also* ECF No. 1425 at 3-12; ECF No. 1533 at 3:10-14 (THE COURT: "I think it's very likely that the class would have been certified. So I think certifying a settlement class makes sense under Rules 23(a) and 23(b)(3).").

### B. The CDK Settlement Class was Given Adequate Court-Approved Notice

The Court has already determined that the Notice Plan in this case "complies [with Fed. R. Civ. P.] 23 and due process and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to class members." *See* ECF No. 1531 ¶ 12. The Court-approved settlement administrator, Epiq, provided direct notice ("Individual Notice") through electronic mail and/or mailed postcards, that reached approximately 98.4% of Class Members (24,829 of 25,235 Class

members), using customer lists provided by CDK and Reynolds.[7] *See* Azari Decl., ¶¶ 8, 11-20. The content of the Court-approved Email/Mail Notice, Long-Form Posted Notice, and Publication Notice (Azari Decl. Att. 2-4, 6-8) complies with the requirements of Rule 23(c)(2)(b), including notification of the Court's Fairness Hearing to be held on February 25, 2024. *See In re TikTok*, 617 F. Supp. 3d at 927 ("Neither Rule 23 nor due process requires that every class member actually receives notice. Instead, notice suffices if it is reasonably calculated to reach the absent parties. According to the Federal Judicial Center, notice to at least seventy percent of the class generally meets this standard.") (internal quotes and citation omitted); *see also* Azari Decl., ¶¶ 39-42.

Individual Notice was further enhanced by Epiq's Media Plan, which included additional and various forms of notice: an ad in *Automotive News*, a premier resource for the auto industry with a national circulation of approximately 64,547; targeted digital notice advertising on *Auto.News*.com for two weeks; and a *CBT News- Homepage Banner* sponsored for one week. *Id.* ¶¶ 21-27. Epiq also issued a party-neutral informational release nationwide over the Auto Wire and Automotive microlist to media outlets, including local and national newspapers, magazines, and national wire services across the United States, as well as websites, online databases, internet networks, blogs and social networking media. *Id.* ¶¶ 28-29. Epiq additionally updated the existing website www.dealershipclassDMSsettlemement.com with information regarding the Settlement, allowing Class Members to access the Long-Form Posted Notice, relevant Court documents, submit a claim form via an online claim portal, follow instructions for opting out or objecting to the Settlement, Fee Application and/or Allocation Plan, and find any updates and deadlines concerning the Settlement. There have been 7,316 visitor sessions to the website and 23,388 web pages presented. *Id.* ¶ 30.

---

[7] Reynolds Settlement Class Members also received notice of the claim submission and distribution process, as well as information on deadlines by which to object to the Fee Application and Allocation Plan. Dealership Plaintiffs will file a motion for distribution at a later date. *See* ECF No. 1531 at 11.

Lastly, Epiq maintains a toll-free telephone number with recorded answers to Frequently Asked Questions (also posted on the website), which is available 24 hours a day/seven days a week, where Class Members may request a Claim Form or Long Form Notice. As of November 25, 2024, the automated telephone line has received 163 calls. *Id.* ¶ 31. A post office box address and monitored email address (info@DealershipClassDMSSettlement.com) are also available for Class Members to contact Epiq with specific questions or requests. *Id.* ¶ 32. CDK, in coordination with Epiq, also provided notice of the Settlement to all appropriate federal and state officials, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(a)(2). *See* ECF No. 1535; Azari Decl. ¶ 9.

Dealership Counsel provided additional notice (and assistance) to Class Members beyond that required by the Court. Counsel has operated and staffed a "settlement hotline" for four hours every weekday starting September 23, 2024 (when notice was sent out and claim forms became available) and will continue to do so until the claims submission process concludes on January 9, 2025. To date, Dealership Counsel has answered approximately 37 calls from CDK (and Reynolds) Class Members and responded to dozens of emails. Dealership Counsel also discussed the Settlement in an interview with "Inside Automotive" on *CBT News* (https://www.youtube.com/watch?v=GSXjI19mjeE) and made a presentation, as well as staffed a booth in October 2024, to answer questions about the Settlement at the National Association of Dealer Counsel's fall conference, a professional organization comprised of over 600 attorneys representing auto and other vehicle dealers. *See* Wedgworth Final Approval Decl. ¶ 10.

The claims submission process began on September 23, 2024. To date, approximately 1,095 claims have been filed by CDK and Reynolds Class Members. Azari Decl. ¶ 35. The reaction of Class Members has been exceedingly positive, and no Class Member objected to nor excluded itself from the CDK Settlement by the November 7, 2024 deadline (or to date). *Id.* ¶ 33; *see also* Wedgworth Final

Approval Decl. ¶ 11. This process confirms the CDK Settlement is fair, reasonable, and adequate and should be granted final approval by the Court. *See* Section III.D.3 below.

The Notice Plan approved by the Court, and implemented by Epiq, successfully provided notice to all parties, and satisfies the requirements of Fed. R. Civ. P. 23 and due process. Azari Decl. ¶¶ 8, 40-41.

## C. The Settlement Satisfies Rule 23(e)(2) Factors[8]

"Federal courts naturally favor the settlement of class action litigations." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Even so, courts must "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279 (7th Cir. 2002). In so doing, the court should "not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness and consider the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199. Dealership Plaintiffs will first address the settlement factors under Fed. R. Civ P. 23(e)(2), and then address the specific factors the Seventh Circuit has applied in evaluating settlements.

In determining whether a settlement is fair, reasonable, and adequate under Rule 23(e)(2), a court must consider whether and to what extent (1) the class representatives and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed R. Civ. P. 23(e)(2); *see also Charvat v. Valente*, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 29, 2019). Each of these factors shows that Rule 23(e)(2) is satisfied.

---

[8] In 2018, Rule 23 was amended to enumerate "core concerns" for courts to consider when deciding whether to approve a class action settlement. *See* Fed. R. Civ. P. 23(e)(2), advisory committee note to 2018 amendment. According to the committee note, the amendment did not explicitly "displace" the traditional test for fairness, reasonableness, and adequacy of a class action settlement as enumerated by the Circuit Courts; instead, it addressed "procedural considerations and substantive qualities" that should "always matter" when judging the reasonableness of a settlement. *See id.*

1. **Class Counsel and Class Representatives Adequately Represented the Class**

At final approval, the Court must evaluate "the actual performance of counsel acting on behalf of the class." *T.K. v. Bytedance Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022), *appeal dismissed*, 2022 WL 19575674 (7th Cir. Aug. 22, 2022). As set forth in class certification and preliminary approval briefing (*see* ECF No. 1425 at 6-8; ECF No. 1528 at 8-9), and as this Court recognized in its preliminary approval order (ECF No. 1531 at 3-4), Dealership Counsel and class representatives have zealously represented the Class in the prosecution of this case. Counsel have spent over seven years and expended over 69,000 hours aggressively litigating all aspects of this complex antitrust matter, ultimately securing a combined recovery of $129.5 million for the CDK and Reynolds Settlement Classes.[9] The 23 class representatives have also meaningfully contributed to the successful outcome of this case by continuously consulting with counsel, answering interrogatories and producing documents, and 16 representatives sat for deposition. Class representatives also assumed significant risk in becoming involved with this case, most of them litigating against their current DMS provider and risking retaliation from a crucial service supplier. In fact, CDK filed counterclaims against certain class representatives (which were ultimately dismissed; *see* ECF No. 749 at 24), seeking millions of dollars in damages under the Digital Millennium Copyright Act damages. *See* ECF No. 1382 at 17. *See* Fee Application, Section V for a detailed discussion of class representative contributions.

2. **The Settlement was Negotiated at Arm's Length**

Courts "put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the Settlement was the result of extensive, protracted negotiations, undertaken in good faith, between highly experienced

---

[9] A detailed discussion of the work performed by counsel in this case is discussed in the Wedgworth Fee Decl. and attached appendices. Wedgworth Fee Decl. Appendices A & B contain the cumulative hours of all counsel who worked on this case. *See also* Wedgworth Final Approval Decl. ¶¶ 12, 13.

and capable attorneys for both sides. *See* Wedgworth Final Approval Decl. ¶ 16; Section II above; ECF No. 1531 at 11 (Court's preliminary approval order stating: "the Agreement resulted from arm's-length negotiations conducted without collusion and in good faith by the Settling Parties and reflects a Settlement that was reached voluntarily after consultation with experienced legal counsel").[10]

### 3. The Proposed Settlement Treats Class Members Equitably

Rule 23 emphasizes that "the apportionment of relief among class members takes appropriate account of difference among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *See* Fed. R. Civ. P. 23(e)(2), advisory committee note to 2018 amendment. Where the settlement is administered and relief is apportioned on a *pro rata* basis, this factor is routinely held to be satisfied. *See Bytedance,* 2022 WL 888943, at *15; *Kleen Prod. LLC v. Int'l Paper Co.*, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017).[11] At preliminary approval, Dealership Class Lead Counsel filed an Allocation Plan with the Court which provides that each Reynolds or CDK Settlement Class Member that submits a valid and timely claim will be entitled to its *pro rata* share of the settlement funds. *See* ECF No. 1528-3 at 2-3 ("[the Allocation Plan] awards each Settlement Class Member its *pro rata* share of the available Settlement Funds based on the estimated damages applicable to the period the Class Member used a Reynolds and/or CDK DMS.").[12] The Allocation Plan represents a reasonable and equitable method to effectively distribute funds to CDK (and Reynolds) Class Members.

---

[10] *See also* the Court's statement at the August 22, 2024 preliminary approval hearing: "[I]t looks to me as though it's an arm's length transaction and provides good relief for the plaintiff class." ECF No. 1533 at 3:7-9.

[11] *See also Summers v. UAL Corp. ESOP Comm.,* 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving *pro rata* share allocation plan as reasonable); *Bills v. TLC Homes,* 2020 WL 5982880, at *4 (E.D. Wis. Oct. 8, 2020) (same).

[12] Dealership Plaintiffs continue to consult with previously-retained economic expert, Dr. Michael Williams, regarding the implementation of the Settlement. ECF No. 1528-1 ¶ 12; *see also* Azari Decl. ¶ 37.

#### 4. The Relief Provided by the Settlement is Adequate

When determining the adequacy of the relief provided by a settlement, courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)…." Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

##### a. Costs, Risks and Delay of Trial and Appeal

This factor overlaps with the Seventh Circuit's factor discussed below in Section III.D.2.

##### b. Effectiveness of Claim and Distribution Process

This factor considers the burdens on class members' ability to participate in and receive benefits of a settlement. *See Bytedance,* 2022 WL 888943, at *14 ("Of particular concern are methods of processing claims so complex that they discourage class members from pursuing valid claims."). Here, Dealership Counsel has implemented a straightforward and streamlined claim submission process for claimants to fill out and submit forms documenting their use of Reynolds or CDK's DMS. *See* ECF No. 1528-3 at 1-2. The process permits filing a claim form through an online submission portal[13] or by mail. And the required documentation to substantiate a claim is minimal. *Id.* Courts have upheld such a process and found it reasonable. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 (N.D. Ill. 2015) (finding that the requirement to submit a short and direct claim form, verifying their status as a member of the class was not unreasonable); *Bytedance,* 2022 WL 888943, at *14; *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. Wis. 2009).

---

[13] Individual Notice to Class Members includes a Unique ID and PIN which CDK and Reynolds Settlement Class Members can use to access a partially prepopulated claim form in the online claim portal, making filing a claim even more streamlined.

### c. Proposed Award of Attorneys' Fees

As discussed in the accompanying Fee Application, the requested attorneys' fees are reasonable given, *inter alia*, the market value of Dealership Counsel's legal services and the enormous risks they faced in this case. *See* Fee Application, Section III.A-C. Additionally, the fact that fees are entirely separate from Settlement approval, ensuring that any fee order does not affect final approval of the Settlement, is another hallmark of adequate relief. *See Bytedance,* 2022 WL 888943, at *15.

### d. Agreements Under Rule 23(e)(3)

The executed CDK Settlement Agreement, along with other important documents in this case, are available on the settlement website at https://dealershipclassdmssettlement.com/Home/Documents. As disclosed in the Settlement Agreement (ECF 1528-2 at ¶ I.26), a Supplemental Agreement gave CDK the right to terminate the Settlement if a certain number of class members opted out of the CDK Settlement Class. As noted above, there have been no opt outs and the opt-out date has expired; accordingly, CDK may not terminate the settlement under the Supplemental Agreement.

### D.    The Settlement Satisfies Additional Seventh Circuit Factors

Although there is overlap between factors articulated by the Seventh Circuit and those added by the 2018 amendment (*see Charvat v. Valente* , 2019 WL 5576932, at *6 (N.D. Ill. Oct. 29, 2019) ("the factors articulated by the Seventh Circuit subsume most of these factors")), a number of post-amendment decisions have continued to cite the Circuit's factors. *See, e.g., In re TikTok*, 617 F. Supp. 3d at 933 (citing *Wong*). The Seventh Circuit has looked to the following factors: "'(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage

of the proceedings and the amount of discovery completed.'" *Wong*, 773 F.3d at 863 (citation omitted); *accord Synfuel*, 463 F.3d at 653; *Isby*, 75 F.3d at 1196. Each factor supports approval of the Settlement.

### 1.  The Strength of the Case Compared to the Settlement Offer

The "most important factor relevant to the fairness of a class action settlement" is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653. In analyzing this factor, the Court should weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class's claims. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 579 (N.D. Ill. 2011). However, where other reliable indicators of reasonableness exist (*e.g.*, arms' length negotiations by highly experienced counsel after in-depth investigation of the merits), as they do here, the court may not need to engage in a formulaic quantifying of the range of other possible outcomes. *See Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017) ("We have also taught that the [] evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case.").

The risk of loss or non-recovery associated with continued litigation and the trial scheduled for September 2024 weighs in favor of final approval. As extensively discussed in the Fee Application, Section III.C, the risks are significantly heightened in antitrust cases. *See, e.g.*, *Wilk v. Am. Med Ass'n*, 895 F.2d 352, 355 (7th Cir. 1990). The parties agreed to the Settlement in mid-August 2024, shortly before trial was scheduled to begin. Courts have routinely recognized that trials are risky and could end with no recovery for the class. *See Schulte*, 805 F. Supp. 2d at 582 ("Absent settlement, Class Members would face the real risk that they would win little or no recovery"); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 229 (N.D. Ill. 2016). In this case, trial risks included, *inter alia*, whether Dealers could prove (i) the alleged antitrust conspiracy, (ii) vendors were overcharged by Defendants (and by how much), and (iii) vendors then passed the overcharges onto the Dealers. Whether a jury

would have found Dealers' evidence persuasive and, if so, awarded *more* than $100 million raised enormous risks obviated by the Settlement. *See* Wedgworth Final Approval Decl. ¶ 14.

Other risks include (among many others) which Dealer Class(es), if any, would have been certified and whether such certification extended through 2023, whether CDK's *Daubert* motion to exclude the classwide damages model proffered by Dealers' economist would have been granted (potentially resulting in the denial of class certification), and how CDK's argument that certain Class Members were subject to a class action waiver requiring individual claims adjudications may have affected the case. *See* Fee Application, Section III.C; *see also* Wedgworth Final Approval Decl. ¶ 15.

## 2. The Class Faced Complex, Lengthy, and Expensive Litigation Absent the Settlement

The complexity, length, and expense of continued litigation against CDK, absent the Settlement, also warrants final approval. *See Isby*, 75 F.3d at 1199-200. Although trial was imminent at the time of Settlement, considerable risk, complexity, and expense was associated with bringing this indirect purchaser, antitrust class action case – replete with complex liability and damages questions requiring expert testimony – to verdict. Moreover, the Class would likely need to defend any verdict through a lengthy (and costly) appeals process. Final approval is warranted where "continued litigation would require resolution of complex issues at considerable expense[.]" *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (Pallmeyer, J.); *aff'd*, 267 F.3d 743 (7th Cir. 2001).

## 3. The Response of Class Members and Absence of Opposition to the Settlement

The reaction of Class Members to the Settlement supports final approval. District courts should evaluate the amount of opposition, if any, from affected parties when deciding if the settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. As discussed above (*see* Section III.B), since the Settlement was preliminarily approved, the Notice Program has been fully implemented. Individual Notice advised Class Members of their right to object to the Settlement, how to exclude themselves

from the Class, the implications of both options, and that any such exclusions or objections must be received by November 7, 2024. Individual Notice directed Class Members to the settlement website where the Long Form Notice described these options in greater detail. Azari Decl. ¶¶ 13-19. Significantly, not a single Class Member has objected to nor excluded itself from the CDK Settlement. *Id.* ¶ 33.

The absence of objections supports final approval. *See Isby*, 75 F.3d at 1200 ("Only thirteen per cent of the class submitted written objections in response to the notice of settlement."); *Linnear v. Illinicare Health Plan, Inc.*, 2019 WL 13072750, at *2 (N.D. Ill. Dec. 17. 2019) (Pallmeyer, J.) ("The minute number of any objections to the Settlement by Settlement Class Members … supports approval of the Settlement."); *Bytedance*, 2022 WL 888943, at *16 ("the fact that so few members of the Proposed Settlement Class objected to or opted out of the Proposed Settlement suggests strong support."). This factor is particularly significant here because the Dealership Class consists of auto dealerships that are sophisticated businesses fully capable of analyzing the Settlement and objecting, if they believe warranted. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012); Wedgworth Final Approval Decl. ¶ 11. The Class's overwhelmingly positive reaction fully supports final approval.

### 4. The Opinion of Competent Counsel Supports Final Approval

The opinion of competent counsel is another factor to be considered by the Court. *Isby*, 75 F.3d at 1200. Dealership Counsel have substantial experience and knowledge of the relevant antitrust and class action law, and have developed expertise in applying that knowledge effectively and efficiently to prosecute complex class actions. *See* Fee Application, Section III.C.4; Wedgworth Fee Decl. ¶ 18; ECF No. 1425 at 6-8; ECF No. 1528 at 8-9. Dealership Counsel are of the opinion that the Settlement is a fair, reasonable, and adequate recovery for the Class. *See, e.g., TikTok*, 565 F. Supp. 3d 1076, 1091 (N.D. Ill. 2021) (Plaintiffs' "well-qualified" Co-Lead Counsel … have attested to their

belief that the proposed settlement is fair, reasonable, and adequate.") *Schulte*, 805 F. Supp. 2d at 586-87 (The opinion of counsel with "extensive experience in … class actions and complex litigation" weighed in favor of approval); *see also Mexico Money Transfer*, 164 F. Supp. 2d at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). *See also* Wedgworth Final Approval Decl. ¶¶ 17-18. Accordingly, this factor weighs in favor of supporting final approval.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed at the Time of the Settlement Supports Final Approval

The stage of the proceedings and the amount of discovery completed up to the point of settlement is also relevant because they are indicators of class counsel's ability to negotiate a fair settlement. *See Bytedance*, 2022 WL 888943, at *11. As Settlement was reached within two months of trial, Dealership Counsel was well-informed of the facts, benefits, risks, and consequences of the proposed Settlement after having spent over almost seven years advancing Dealership Plaintiffs' claims. Counsel thoroughly evaluated the strengths and weaknesses of the parties' respective litigation positions in relation to the Settlement through investigation, fact discovery (which closed in 2019), motion practice (including motions to dismiss, and summary judgment, *Daubert*, and class certification motions). Counsel also balanced the immediate $100 million cash recovery against the substantial risks of trial and post-trial motions and appeals. *See Sanchez v. Roka Akor Chicago LLC*, 2017 WL 1425837, at *2 (N.D. Ill. Apr. 20, 2017) (approving class settlement reached on the "verge of trial" because "the litigation had progressed to a stage where the Court and the Parties could fully and completely evaluate the merits of the case, potential damages, and the probable course of future litigation"); *see also* Wedgworth Final Approval Decl. ¶¶ 12-18.

## IV. CONCLUSION

For the foregoing reasons, Dealership Plaintiffs respectfully request that the Court grant final approval of the CDK Settlement.

Dated: November 27, 2024

Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
Robert A. Wallner (*pro hac vice*)
John Hughes (*pro hac vice*)*
Michael Acciavatti (*pro hac vice*)**
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
(212) 594-5300
pwedgworth@milberg.com
emckenna@milberg.com
rwallner@milberg.com
jhughes@milberg.com
macciavatti@milberg.com
*   *Admitted in Michigan only*
** *Admitted in Pennsylvania only*

***Dealership Class Lead Counsel***

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
(516) 873-3000
lbellavia@dealerlaw.com

***Dealership Class Plaintiffs' Steering Committee***

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
(612) 333-8844
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

***Dealership Class Plaintiffs' Steering Committee***

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN
& DOWD LLP**

200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
(312) 674-4674
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

***Dealership Class Plaintiffs' Steering Committee***

Robert A. Clifford
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
(312) 899-9090
RAC@cliffordlaw.com

***MDL Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I, Peggy J. Wedgworth, an attorney, hereby certify that on November 27, 2024, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT CDK GLOBAL, LLC** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth